UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

**LARYSSA JOCK, JACQUELYN**
**BOYLE,CHRISTY CHADWICK, KELLY**
**CONTRERAS, LISA FOLLETT, MARIA**
**HOUSE, DENISE MADDOX, LISA**
**McCONNELL, GLORIA PAGAN,  JUDY**
**REED, LINDA RHODES,  KHRISTINA**
**RODRIGUES, NINA SHAHMIRZADI,**
**LEIGHLA SMITH, DAWN SOUTO-**
**COONS, and MARIE WOLF,**

      Plaintiffs,

   -against-

**STERLING JEWELERS INC.,**

     Defendant.

------------------------------------- X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.  08-cv-2875 (JSR)

**PLAINTIFFS' FIRST AMENDED CLASS**
**ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

  Plaintiffs Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Kelly Contreras, Lisa

Follett, Maria House, Denise Maddox, Lisa McConnell, Gloria Pagan, Judy Reed, Linda Rhodes,

Khristina Rodrigues, Nina Shahmirzadi, Leighla Smith, Dawn Souto-Coons, and Marie Wolf,

(collectively referred to as "Plaintiffs") on behalf of themselves and all similarly situated

persons, by their attorneys, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren Law

Offices, P.L., and Burr & Smith, LLP, allege as follows:

<u>**INTRODUCTION**</u>

  1.  Plaintiffs bring this action to challenge a pattern and practice of sex

discrimination in promotion and compensation committed against current and former female

employees by Sterling Jewelers Inc.  Sterling Jewelers Inc. operates more than 1300 stores in

all 50 states under at least 12 retail brand names, including but not limited to, Jared The

Galleria of Jewelry ("Jared"), Kay Jewelers ("Kay"), Belden Jewelers ("Belden"), JB Robinson

Jewelers ("JB Robinson"), Marks & Morgan Jewelers, Weisfield Jewelers, Osterman Jewelers, Shaw's Jewelers, Rogers Jewelers, LeRoy's Jewelers, Goodman Jewelers and Friedlanders Jewelers (collectively referred to as "Sterling").

2.      Sterling's promotion and compensation policies and practices caused female employees with retail sales responsibilities, which includes store-based employees up to and including district managers, (collectively referred to as "Retail Sales Employees") to be (a) denied promotional opportunities for which they were qualified, and (b) paid less than men performing the same work.  The employment policies and practices of Sterling have had the effect and have been undertaken with the purpose of denying promotional opportunities and equal compensation to qualified female employees because of their gender.

3.      This action is brought by current and former female Sterling Retail Sales Employees on behalf of themselves and all other similarly situated women as a class action challenging pay and promotion discrimination under Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.*  Plaintiffs also bring this action on their own behalf and pursuant to 29 U.S.C. § 216(b) as representatives of a proposed collective action of similarly situated employees who have been willfully denied equal pay for equal work under the Equal Pay Act, 29 U.S.C. § 206.

## JURISDICTION, VENUE AND EXHAUSTION OF REMEDIES

4.      Plaintiffs' class claims arise under Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000(e), *et seq*. and the Civil Rights Act of 1991, 42 U.S.C. § 1981 and the Equal Pay Act, 29 U.S.C. § 206(d).  This Court has jurisdiction over Plaintiffs' class claims pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§1331 and 1343(a)(4), and supplemental jurisdiction over Plaintiffs Denise Maddox, Lisa McConnell, Judy Reed, and Nina Shahmirzadi's individual claims.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) & (c) and 42

U.S.C. § 2000e-5(f)(3).  The claims of four of the named Plaintiffs Laryssa Jock, Christy

Chadwick, Lisa Follett, and Linda Rhodes arose in the state of New York, and a substantial part

of the unlawful acts set forth below occurred within the State of New York.  Sterling operates

approximately 67 stores within New York.  Sterling operates at least nine stores within the

Southern District of New York.

6.      Plaintiffs have exhausted administrative remedies pursuant to 42 U.S.C. §

2000e-5(f)(3).  Each of the Plaintiffs, except for Kelly Contreras, has filed a charge of

discrimination with the Equal Employment Opportunity Commission, ("EEOC") on behalf of

themselves and all other similarly situated current and former female employees of Sterling.

On January 3, 2008, the EEOC issued a Determination Letter finding there was reasonable

cause to believe Sterling has engaged in a pattern or practice of discrimination as alleged in the

charges, in violation of Title VII and the Equal Pay Act.  A copy of this Determination is

attached hereto as Exhibit 1. All Plaintiffs named in the complaint have timely exhausted any

administrative prerequisites to filing this action. Plaintiff Contreras participates as a named

Plaintiff pursuant to the single-filing rule.  Plaintiffs also received notices of their right to sue

dated March 18, 2008.

7.      Sterling maintains a three stage alternative dispute resolution ("ADR") program

in which it compels its employees to participate.  Employees are required to file an

administrative complaint in order to initiate the first stage of the ADR program.  The first

administrative complaints, each of which alleges a pattern or practice of sex discrimination in

promotions and pay on behalf of the complainant and others similarly situated, were filed on

February 27, 2006, by Laryssa Jock, Jacquelyn Boyle, Lisa Follet, Judy Reed, Dawn Souto-

Coons, and Maria Wolf.  The first stage of the ADR process has concluded.

8.      The second stage, which provides an opportunity for the parties to engage in mediation, has also been completed.

9.      The third stage of the ADR program provides that unresolved claims be submitted to arbitration pursuant to rules prescribed by the American Arbitration Association. As terms of the arbitration program impose excessive expenses as a condition of arbitration and restrict the discretion of the arbitrator to award relief expressly permitted by Title VII the agreement is unenforceable.

10.     Written Consents To Join this Equal Pay Act collective action are attached hereto for Plaintiffs Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Kelly Contreras, Maria House, Denise Maddox, Lisa McConnell, Judy Reed, Linda Rhodes, Nina Shahmirzadi, Leighla Smith, Dawn Souto-Coons, and Marie Wolf, as Exhibit 2.

**<u>PARTIES</u>**

**Plaintiffs**

11.     Plaintiff Laryssa Jock is a female resident of Bombay, New York in Franklin County and has been employed by Sterling from approximately May 15, 1995 to the present as a sales associate in the Kay Jewelers and Belden stores in Massena, New York.

12.     Jacquelyn Boyle is a female resident of Tampa, Florida in Hillsborough County and was employed by Sterling from September 2004 to June 1, 2005 as a sales associate in the Jared store in Brandon, Florida.

13.     Christy Chadwick (formerly Christy Davies) is a female resident of Massena, New York in St. Lawrence County and was employed by Sterling from approximately November 2005 until approximately March 2006 as a sales associate at the Belden store in Massena, New York.

14.     Kelly Contreras is a female resident of Ramsey, Minnesota in Anoka County. During her employment with Sterling from approximately March of 1993 until approximately June 2005, Contreras was a manager in waiting in Madison, Wisconsin, a store manager in St. Cloud, Minnesota, Maplewood, Minnesota, and in Cincinnati, Ohio, and a district manager in the Dayton, Ohio area.

15.     Lisa Follett is a female resident of Massena, New York in St. Lawrence County and was employed by Sterling from approximately October 2004 until approximately June 2005 as a sales associate at the Belden store in Massena, New York.

16.     Maria House is a female resident of Bakersfield, California in Kern County and was employed by Sterling as a sales associate at a Kay Jewelers store in Bakersfield, California from approximately June 2005 through August 2006.

17.     Denise Maddox is a female resident of Plano, Texas in Collin County and was employed with Sterling from approximately 1997 through January of 2007.  During her employment with Sterling at various Jared stores, Maddox was a sales associate and diamond department manager in Westminster, Colorado, an assistant manager in Roseville, California, a sales associate in Englewood, Colorado, and a store manager in Dallas, Texas.

18.     Lisa McConnell is a female resident of Elkhart, Indiana in Elkhart County and was employed by Sterling at a Kay Jewelers store from July 2001 until August 30, 2006 in Elkhart, Indiana.  During her employment with Sterling, McConnell was a sales associate, assistant manager, and store manager in Elkhart, Indiana.

19.     Gloria Pagan (formerly Gloria Huff) is a female resident of Lake St. Louis, Missouri in St. Charles County and was employed by Sterling as a sales associate at the JB Robinson Jewelers store in Saint Peters, Missouri from approximately August 2005 until

December 26, 2005.

20.    Judy Reed is a female resident of Palm Harbor, Florida in Pinellas County and has been employed by Sterling from October 2000 until the present.  During her employment with Sterling, Reed was an assistant manager in Appleton, Wisconsin, a diamond department manager and assistant manager in Tampa, Florida at Jared.

21.    Linda Rhodes is a female resident of Massena, New York in St. Lawrence County and was employed by Sterling from approximately November 2005 until November 14, 2006 as sales associate at the Belden store in Massena, New York.

22.    Khristina Rodrigues is a female resident of Fall River, Massachusetts in Bristol County and was employed by Sterling from 2001 to 2003.  Rodrigues was rehired by Sterling in June 2004 and is currently employed by Sterling.  During her employment with Sterling, Rodrigues was a sales associate and assistant manager at Kay stores in Swansey, Massachusetts and Taunton, Massachusetts.

23.    Nina Shahmirzadi is a female resident of Henderson, Nevada in Clark County and was employed by Sterling as a sales associate from approximately October 10, 1997 until November 1, 2006 at a Kay store and Jared store in Henderson, Nevada.

24.    Leighla Smith is a female resident of Mt. Holly, New Jersey  in Burlington County and was employed by Sterling as a sales associate from approximately August 2004 until April 2005 at Kay stores in Burlington, New Jersey and Cupertino, California.

25.    Dawn Souto-Coons is a female resident of Wimauma, Florida in Hillsborough County and was employed with Sterling from approximately September 1991 until approximately May 27, 2005.  During her employment with Sterling, Souto-Coons was a sales associate, assistant manager, and store manager in the JB Robinson store in Waldorf, Maryland,

store manager in Gaithersburg, Maryland, and assistant manager in Brandon, Florida.

26.     Marie Wolf is a female resident of Riverview, Florida in Hillsborough County and has been employed by Sterling as a sales associate at a Jared store in Brandon, Florida from approximately 2002 until the present.

**Defendant**

27.     Defendant Sterling is the largest specialty jeweler in the United States, with at least 1,300 stores doing business under various brands in all 50 states.  Sterling is a nationwide company, with its headquarters in Akron, Ohio.

## COMPANY WIDE PRACTICES CHALLENGED

28.     Sterling has subjected female Retail Sales Employees to a pattern or practice of sex discrimination in its promotion and compensation decisions.  These practices reflect that discrimination is the standard operating procedure - the regular, rather than the unusual practice at Sterling.

29.     Sterling's pattern or practice of sex discrimination in its promotion and compensation decisions have had a disparate impact adverse to women.

30.     Pursuant to the EEOC's investigation of Plaintiffs' charges, the EEOC issued a determination that Sterling "subjected charging parties and a class of female employees with retail sales responsibilities nationwide to a pattern or practice of sex discrimination in regard to promotion and compensation.  Statistical analysis of pay and promotion data provided by Respondent reveals that Respondent promoted male employees at a statistically significant, higher rate than similarly situated female employees and that Respondent compensated male employees at a statistically significant, higher rate than similarly situated female employees.  Witness testimony further corroborates the allegations." EEOC Determination Letter, Ex. 1.

31.     Sterling's promotion and compensation policies, centrally issued, apply to all

stores throughout the company, regardless of brand and are substantially similar, if not identical, throughout the Sterling stores.

32.     **Discrimination in Promotions**: The Plaintiffs challenge the following practices, and any others with similar purpose or effect, which have encouraged, permitted or had the effect of discriminating against female Retail Sales Employees by denying them equal access to promotions:

a.     Throughout the period covered by this action, Sterling has refused to publicize jobs when they become vacant.  Nor does Sterling provide a system by which employees can apply for particular vacancies or be assured of consideration for selection.  Absent a system for announcing vacancies and for permitting applications for particular positions from interested candidates, Sterling has allowed managers to notify and recruit for selection employees whom they personally favor in what has historically been known as a "tap on the shoulder" system.  Nor has Sterling provided its managers with merit-based guidance about who should be selected to fill the vacant positions.  Accordingly, Sterling has granted its managers virtually unfettered discretion to identify and select candidates using personal preferences and stereotypes, without any assurance the criteria used to make promotion selections are based on merit.

b.     Prior to April 2007, Sterling even lacked a system by which employees could express an interest in promotions generally.   Only after Plaintiffs filed charges with the EEOC in 2005 did Sterling announce a process

permitting its employees to register their interest in promotion
opportunities generally. Still Sterling has refused to publicize job
vacancies, nor does it provide employees with the opportunity to apply for
particular vacancies.

c. As a consequence of these policies and practices, women working in store-
based jobs and as district managers at Sterling have been denied equal
opportunity to obtain promotions into and within management jobs.

33. **Discrimination in Compensation**: The Plaintiffs challenge the following
practices, and any others with similar purpose or effect, which have encouraged, permitted or
had the effect of discriminating against Retail Sales Employees by causing them to be paid less
than male employees performing the same work, at the same levels, in the same area, and at the
same time period.

a. Sterling's compensation policy offers little or no guidance on setting wage
rates. Pursuant to these policies, Sterling provides its managers with broad
discretion to set compensation pursuant to personal biases and stereotypes
rather than merit-based criteria.

b. As a result, women are paid less than men performing the same work, at
the same levels, in the same area, and at the same time period.

34. Sterling has a policy or practice barring employees from discussing their wages
with other employees. This policy or practice has prevented some Plaintiffs and some members
of the proposed class and collective action from making a fully-informed comparison of their
compensation with the pay of similarly-situated male employees.

35. Sterling has permitted or encouraged other workplace conduct that may

exacerbate the discrimination in promotions and compensation alleged above.

        a.      Sterling managers have subjected female employees to sexual harassment and other discriminatory comments based upon their sex.

        b.      Sterling has failed to take prompt and effective remedial action in response to complaints of discrimination and to comments demeaning to women made in the workplace.

36.      Sterling has entrusted its supervisors with broad discretion that is unguided in its exercise, affording them opportunities to apply personal preferences and biases in making promotion and compensation decisions.  Sterling knew or should have known that its promotion and compensation practices were being used with the purpose and having the effect of denying qualified women employees equal opportunities to obtain promotions and to be paid at the same levels as similarly-situated male employees.   Accordingly, the practices identified above are being challenged under systemic disparate treatment and disparate impact theories of discrimination.

37.      Sterling's pay and promotion policies and practices applicable to Retail Sales Employees have adversely affected women employees throughout the company.

38.      Similarly, the structure of the workforce comprised of employees with retail responsibilities and the work performed in those positions are similar throughout the more than 1,300 Sterling stores at which members of the proposed class have worked.

39.      Sterling's stores have three primary job positions, and each position involves performance of the same or similar duties.

40.      The entry level sales job is the sales associate position, above which is the entry level management position known as assistant manager and the highest level position in

management within Sterling stores is designated as the store or general manager.

41.     Management of sales and personnel actions with Sterling stores are overseen by district managers, who supervise operations at several stores within a district, and by regional vice presidents, who oversee the operations of stores located in multiple districts.

42.     The essential duties of each in-store position are the same throughout the Sterling stores, regardless of store brand.

43.     As the duties for each position are nearly identical throughout the Sterling stores, employees may and frequently do transfer between Sterling stores with different brand names, and across geographic areas within and between states.

## COLLECTIVE ACTION ALLEGATIONS

44.     With respect to their Equal Pay Act claim, Plaintiffs bring this action pursuant to 29 U.S.C. §§ 206(d), *et seq*., on behalf of themselves and all other women similarly situated. The members of the class are all female Retail Sales Employees employed in the United States by Sterling on or any time after February 27, 2003 until the end of the period provided by law.

45.     Plaintiffs have satisfied the requirements of a collective action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

46.     With respect to the claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Plaintiffs bring this action pursuant to 42 U.S.C. § 2000(e), *et seq*. and seek certification of a class pursuant to Rule 23, Fed. R. Civ. P., comprised of all female Retail Sales Employees who worked in the United States from the beginning of the illegal practice challenged here through the first day of trial in this action.  Plaintiffs are members of the class they seek to represent.

47.     Sterling's policy, pattern, or practice of discrimination in pay and promotion

operated within 300 days of the first charge of discrimination and unlawfully denied promotions to one or more named Plaintiffs and caused one or more named Plaintiffs to be paid less than similarly situated men.

48.     This action is properly maintainable as a class action because the requirements of  Rule 23(a) and Rule 23(b) are met.

49.     The class members are sufficiently numerous to make joinder of all members impracticable.  Upon information and belief, more than 20,000 current and former employees would qualify as members of the proposed class.

50.     The claims alleged on behalf of the named Plaintiffs as class representatives raise questions of law or fact common to the class.  These common questions include, but are not limited to:

      a.     whether Sterling's common operating practices and procedures discriminate against its female employees;

      b.     whether Sterling's common policies have had an adverse impact upon the class, and if so, whether such impact can be justified by business necessity;

      c.     whether Sterling has acted  intentionally to deny equal opportunities to female employees to obtain promotions into and within management jobs and to compensate female employees less than similarly situated male employees in violation of Title VII;

      d.     whether Sterling invests its managers with excessive discretion  in making promotion and compensation decisions; and

      e.     whether the class may obtain an award of damages and obtain injunctive

and other equitable remedies.

51.    The claims of the class representatives are typical of the class they seek to represent.

52.    The class representatives and counsel will adequately and fairly protect the interest of the class.

53.    This action is properly maintainable as a class action under Rule 23(b)(2), Fed. R. Civ. P., because the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

54.    The class action is also properly maintainable pursuant to Rule 23(b)(3) because the questions of law and fact common to members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

## ALLEGATIONS OF NAMED PLAINTIFFS

### Laryssa Jock

55.    Laryssa Jock has been employed by Sterling from approximately May 15, 1995 to the present for a total of nearly 13 years.

56.    She began her employment with Sterling as a part-time sales associate at the Kay store located in Massena, New York.

57.    Within approximately five months, Jock was promoted to full-time sales associate in approximately October 1995.

58.    She also held an Assistant Manager position from the fall of 1996 through February 1997, and as a sales associate was appointed the third key title between the summer of 1997 and fall of 1998 in the Massena, New York Kay store.

59.    The third key title is responsible for assisting management employees in opening and closing the store and is placed in charge of the store when the assistant manager and store manager are absent.

60.    The third key title is typically a gateway position to higher management positions.

61.    On approximately December 18, 1998, Jock transferred to the Massena, New York Belden's store as a sales associate.

62.    In approximately 2002, a Sterling manager again asked her to hold the third key title; however, Jock stepped down from this position because Sterling refused to compensate her for performing these additional duties.

63.    Jock continues to be employed in the Belden store located in Massena, New York as a full-time sales associate.

64.    During her tenure at Sterling, Jock has received numerous merit awards and gifts from Sterling in recognition of her superior sales performance.

65.    During Jock's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

66.    Upon information and belief, in approximately March 2005, Troy Lawler, a male, was hired as a part-time sales associate in the Belden's store located in Massena, New York and paid $8.75 per hour.

67.    At the time Lawler was hired, Jock was paid only approximately $8.65 per hour as a full-time sales associate in the same store.  Jock was paid less than Lawler in spite of the fact that Lawler had no prior retail jewelry industry experience, and she had approximately ten

years of experience at Sterling, including working as an assistant manager and in the third key title.  Although Jock received a raise to $8.85 per hour shortly after Lawler was hired, several other female employees who were employed in the same store in the same position as Lawler continued to be paid less than Lawler.  Jock's store manager explained to the female employees including Jock that Lawler needed to be paid more than the females because he had a child to support.

68.     But for Sterling's policy prohibiting employees from discussing their wages, Jock would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

69.     On May 18, 2005, Jock filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

70.     Jock received notice of her right to sue from the EEOC on March 18, 2008.

**Jacquelyn Boyle**

71.     Jacquelyn Boyle worked for Sterling from September, 2004 to June 1, 2005, as a sales associate in the Jared store in Brandon, Florida.

72.     Prior to working for Sterling, Boyle obtained a B.A. degree in Legal Studies and obtained jewelry sales experience working for service merchandise.

73.     Boyle started at Sterling as a seasonal sales associate, making $9.50 per hour. She excelled in this job such that she generated a large volume of jewelry sales in December 2004.

74.     In February 2005, Boyle became a full-time employee making $10.25 per hour.

75.     In or around February 2005, Boyle's store manager, Eric Wolff told her she was

an excellent sales associate and an asset to Jared's.

76.    During Boyle's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

77.    Upon information and belief, Sterling paid similarly-situated male employees including Grant "Billy" Laing, Alan Mong, and Michael Duggan more than Boyle for performing equal work. Laing, who was hired in August 2004 was paid $14.50 per hour as a full-time sales associate; Mong, who was hired in July 2004, was paid $13.50 per hour as a full-time sales associate; and Duggan, who was hired in May 2005, was paid $11.50 per hour as a full-time sales associate.

78.    But for Sterling's policy prohibiting employees from discussing their wages, Boyle would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

79.    In addition to the pay discrimination described above, Boyle also experienced sexual harassment while employed at Sterling. Jason May, a male Manager-in-Training, repeatedly called her and sent her text messages expressing his desire to be alone with her.

80.    May made unwelcome overtures to Boyle, such as telling her he wanted to kiss her, which caused her discomfort and distress at work.

81.    Boyle complained to her managers, Eric Wolf and Erin Scott, about this harassment but to her knowledge her complaints were not investigated nor was any corrective action taken against May.

82.    Shortly after Boyle's complaint, May was promoted to a general manager

position.

83.     On September 15, 2005, Boyle filed a timely charge of discrimination with the EEOC.

84.     Boyle received notice of her right-to-sue from the EEOC on March 18, 2008.

**Christy Chadwick**

85.     Christy Chadwick (formerly Christy Davies) was employed by Sterling from approximately November 2005 until approximately March 2006.

86.     Throughout Chadwick's employment with Sterling she was employed as a seasonal part-time sales associate at the Belden store located in Massena, New York.

87.     Chadwick excelled in this position and was recognized for her outstanding sales volume.

88.     In approximately March 2005, Sterling hired Troy Lawler, a male, to be a part-time sales associate in the Belden store located in Massena, New York.

89.     Upon information and belief, Lawler was hired by Sterling in March 2005 and he was paid $8.75 per hour as a part-time sales associate.

90.     When Chadwick was hired approximately six months later, she was paid only approximately $7.00 per hour as a part-time sales associate in the same store.  Chadwick was paid less than Lawler in spite of the fact that she had three years of retail customer service and commission sales experience when she was hired by Sterling and Lawler only had approximately three months of sales experience at the time he was hired.

91.     Sterling failed to correct the inequities in Lawler's and Chadwick's pay notwithstanding that Chadwick was recognized by Sterling as an outstanding sales producer.

92.     But for Sterling's policy prohibiting employees from discussing their wages,

Chadwick would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

93.    On April 24, 2006, Chadwick filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

94.    Chadwick received notice of her right to sue from the EEOC on March 18, 2008.

**Kelly Contreras**

95.    Kelly Contreras was employed by Sterling from approximately March 1993 through approximately June 2005.

96.    Contreras was hired as a Manager in Training in Madison, Wisconsin.

97.    In 1994, Contreras was a store manager of a Goodman Jewelers store in St. Cloud, Minnesota, and then transferred shortly thereafter to serve as store manager of another Goodman store in Maplewood, Minnesota.

98.    In 1997, Contreras transferred to store manager of an Ostermans Jewelers in Cincinnati, Ohio.

99.    In 1998, Contreras became the district manager of the Dayton, Ohio area, and was in charge of 12 stores under the Kay and Ostermans brands.

100.    Contreras was a district manager from 1998 until she left Sterling in approximately June 2005.

101.    At the end of Contrera's employment with Sterling, her district consisted of 13 stores.

102.    Throughout her employment with Sterling, Contreras won several awards for her performance at Sterling.

-18-

103.    Contreras won the Manager of the Year award in 1995, the Pinnacle Manager of the Year award in 1997, the Sales Profitability award in 1997, the Training District Manager of the Year award in 2004, and was twice nominated for District Manager of the Year.

104.    During Contreras' employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

105.    In 1995, Contreras made approximately $35,000 a year as a store manager.  Her husband, Chris Contreras, who was also a store manager for Sterling, made approximately $55,000 per year, notwithstanding that they had similar experience within the industry and at Sterling.

106.    When Contreras was promoted to district manager in 1998, her husband, who had been promoted to district manager one year prior, made approximately $10,000 a year more than she.

107.    But for Sterling's policy prohibiting employees from discussing their wages, Contreras would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

108.    Contreras was interested in a promotion to a Vice President position.

109.    In approximately February 2005, a Vice President position came open.

110.    Although Contreras was both interested in and well-qualified for this position, it was given to a male, Joe Maisano, who was less qualified or no more qualified than she.

111.    During Contreras' tenure, Sterling did not post job vacancies or provide a consistent or standard means for employees to express an interest in promotions.

112.    Employees became aware of job vacancies via word of mouth.

113.    Accordingly, there are likely other promotional opportunities that Contreras was interested in and qualified for that were awarded to less qualified male employees.

**Lisa Follett**

114.    Lisa Follett was employed by Sterling from approximately November 2004 until approximately May or June 2005.

115.    Throughout her employment with Sterling she was employed as a part-time sales associate at the Belden store located in Massena, New York.

116.    Follett excelled in this position.

117.    In approximately March 2005, Sterling hired Troy Lawler, a male, to be a part-time sales associate in the Belden store located in Massena, New York.

118.    On approximately May 5, 2005, Lawler was promoted to a full-time sales associate position.

119.    Sterling failed to post the availability of this position and did not conduct interviews of Follett or other female part-time sales associates who were interested in full-time positions.

120.    Follett was more qualified than Lawler for the full-time sales associate position because she had seven months of jewelry sales experience with Sterling and had produced substantial sales for Sterling.

121.    Upon information and belief, Lawler had no prior jewelry experience and had no record of past performance to support his promotion.

122.    During Follett's employment with Sterling, Sterling failed to post additional full-time positions and did not provide a consistent or standard means for employees to express

an interest in promotions.

123.     Sterling relied on a "tap on the shoulder" promotion system.

124.     Follett was interested in being promoted to full-time positions, but was unaware of promotional opportunities for which she was qualified that may have been provided to less qualified male employees at Sterling as a result of these practices.

125.     When Lawler was hired by Sterling in March 2005, he was paid $8.75 per hour as a part-time sales associate.

126.     At the time Lawler was hired, Follett was paid approximately $7.50 per hour as a part-time sales associate in the same store.

127.     Follett was paid less than Lawler in spite of the fact that she had approximately seven months of proven sales experience at Sterling and Lawler had no prior retail jewelry industry experience.

128.     But for Sterling's policy prohibiting employees from discussing their wages, Follett would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

129.     On February 8, 2006, Follett filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

130.     Follett received notice of her right to sue from the EEOC on March 18, 2008.

**Maria House**

131.     Maria House worked for Sterling at a Kay Jewelers store in Bakersfield, California from approximately June 2005 through August 2006.

132.     Sterling hired House as a full-time sales associate and was paid $12.50 per hour.

133.    Prior to working for Sterling, House had obtained approximately 20 years of jewelry sales and management experience working for Macy's, Zales, and Michaels Jewelers.

134.    Shortly after starting with Sterling, House was selected for the third key title.

135.    The third key is responsible for assisting management employees in opening and closing the store and is placed in charge of the store when the assistant manager and store manager are absent.

136.    The third key title is typically a gateway position to higher management positions.

137.    Despite having performed the third key duties exceptionally well, House was not selected for an assistant manager position in approximately late 2005.

138.    Instead, Shaun McCullough, a less qualified male was selected for the assistant manager position.

139.    Sterling was aware that House was interested and qualified for this position and she had discussed the possibility of being promoted into this position with her store manager and district manager.

140.    McCullough's lack of qualifications was confirmed in 2006 when Sterling terminated him.

141.    House's exceptional job performance continued into 2006 when she became the highest sales producer in her district.

142.    As a result, House became a member of Sterling's President Club.

143.    The President Club is an organization Sterling created to recognize and reward outstanding performance of its top sales associates throughout the country.

144.    In approximately May 2006, the store manager of the Bakersfield, California

-22-

Kay's Jeweler store was terminated.

145.    Because there was no assistant manager as a result of McCullough's termination, House was required to take over acting manager duties.

146.    House performed the store manager's duties for several weeks.

147.    Although House was interested in the store manager position and had competently performed the store manager duties, Sterling selected Ben Fox, a less qualified male sales associate from a different store as the new store manager.

148.    During House's employment with Sterling, Sterling did not post management vacancies or provide a consistent or standard means for employees to express an interest in promotions.

149.    Instead, Sterling relied on a "tap on the shoulder" promotion system.

150.    House was interested in being promoted, but was unaware of many other promotional opportunities for which she was qualified that may have been provided to less qualified male employees at Sterling as a result of these practices.

151.    During the time McCullough was House's assistant manager, McCullough sexually harassed House.  He made inappropriate and unwelcome comments about her chest on several occasions.  For example, he told her "I would like to suck on your boobs."

152.    House immediately reported this harassment to her district manager, who told House to stop overreacting and get back to work.

153.    House then made a formal complaint through Sterling's internal complaint process, however no disciplinary action was taken against McCullough.  House later made yet another follow-up complaint to Sterling's Employee Relations Department.

154.    To House's knowledge, no action was taken in response to her complaints.

155.    On October 10, 2006, House filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

156.    House received her Right to Sue notice from the EEOC on March 18, 2008.

**Denise Maddox**

157.    Denise Maddox was employed with Sterling from 1997 through January of 2007.

158.    Maddox was hired as a sales associate at a Jared store in Westminster, Colorado.

159.    Maddox excelled in this job and was the highest performing salesperson in her store.

160.    Maddox also worked as a diamond department manager at the Jared store in Westminster, Colorado.

161.    In 2000, Maddox was transferred to a Jared store in Englewood, Colorado.

162.    Around 2001 or 2002, Maddox briefly transferred to a Sterling store in Roseville, California, where she was an assistant manager.

163.    After a short period of time in California, Maddox transferred back to Colorado, in a sales associate position.

164.    Shortly thereafter, in 2002, Maddox was promoted to assistant manager at a Jared store in Lakewood, Colorado.

165.    In August of 2005, Maddox was transferred to Dallas, Texas and was promoted to store manager of a Jared store.

166.    On October 31, 2006, Sterling informed Maddox that she was being demoted to diamond department manager.

167.    Rather than take the demotion and stay in Texas, she transferred back to

Colorado where she worked as a sales associate until she resigned from the company in January 2007.

168.    In 2003, the store manager position at the Lakewood, Colorado store became vacant.

169.    Although Maddox informed her district manager that she was interested in the position, Sterling selected a less-qualified male who had no prior experience with Sterling.

170.    In June or July of 2006, a store manager position at a higher volume store in the Dallas, Texas area became vacant.

171.    Maddox was interested in a promotion to this store, and informed her district manager of her interest.  However, again the position was given to a male, John Costello, who had no previous experience at Sterling.

172.    During Maddox's tenure, Sterling did not post job vacancies or provide any consistent or standard means for employees to express an interest in promotions.

173.    Employees became aware of openings via word of mouth.

174.    Accordingly, there are likely numerous other promotional opportunities that Maddox was interested in and qualified for that she was not given the opportunity to apply for and that were awarded to less qualified male employees.

175.    During Maddox's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

176.    When Maddox began at Sterling, she earned $8.00 an hour.  Although she was the highest performing salesperson in her store, upon information and belief, male employees were being hired at rates several dollars an hour more than she.

177.    Similarly, when her store manager, Melinda Small, requested a raise for Maddox from the district manager, the request was denied.

178.    As a store manager, Maddox observed Sterling pay male employees in her store more than their similarly situated female counterparts.

179.    Upon information and belief, these pay discrepancies were implemented by the district manager and vice president or more senior company officials.

180.    Upon information and belief, Maddox believes she was also paid less than her similarly situated male counterparts employed in assistant manager and store manager positions.

181.    But for Sterling's policy prohibiting employees from discussing their wages, Maddox would likely be able to identify male employees who were paid higher wages in these positions than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

182.    Sterling has a policy or practice of preventing its employees from discussing their wages with other employees.

183.    Sterling's policy preventing the discussion of wages has prevented Maddox from identifying male employees who were paid higher wages than she was for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

184.    Maddox was also subjected to comments and other treatment that were demeaning and disparaging of women.  For example, in approximately 2000, when Maddox first became a diamond department manager, she was demoted back to a sales position because her district manager told her he wanted to place a male in the position who had "the Jared

look."

185.    Maddox was demoted from the store manager position she held in Dallas, Texas due to her age and sex.

186.    Maddox was demoted from her position as store manager in October 2006 because a male district manager needed to be placed in a store manager position in her area. There were several stores that could have been chosen.  However, the store managers in each of these stores were younger than Maddox, who was 51 at the time.  Maddox was demoted to diamond department manager instead of one of the younger store managers in spite of the fact that sales for her store were better than the stores managed by the younger store managers.

187.    On November 8, 2006, Maddox filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

188.    Maddox received her Right to Sue notice from the EEOC on March 18, 2008.

**Lisa McConnell**

189.    Lisa McConnell worked for Sterling at a Kay Jewelers store from approximately July, 2001 until August 30, 2006 in Elkhart, Indiana.

190.    McConnell was hired as a part-time sales associate for Sterling and was paid $8.50 per hour.

191.    Within a year, she became a full-time sales associate and was paid $10.00 per hour.

192.    McConnell was an outstanding employee.  Her high sales record earned her membership in the President's Club from January 2003 until she became store manager in 2005.

193.    In October, 2002, she became assistant manager at a salary of $12.00 per hour.

Brad Bartl, her store manager at the time, informed her that she was earning approximately $2.00 to $3.00 less per hour than similarly-situated male assistant managers and that her salary was also less than male managers-in-training.

194.    McConnell served as assistant manager for approximately two and one-half years during which her personal average annual sales ranged from approximately $400,000 to $600,000, one of the highest in her district.  She received the highest bonus in her district in 2005.

195.    Despite McConnell's exceptional performance and strong personal sales record, she received only a $1 per hour raise each year that she served as assistant manager.  This resulted in her earning approximately $14.00 per hour immediately before she became store manager.

196.    Upon information and belief, in stark contrast, Richard Swiental became assistant manager of the Elkhart, Indiana Kay's store in April 2006 at a starting salary of $15.33 per hour, $3.33 per hour more than her starting salary three years prior despite the fact that Swiental was less qualified for the position than McConnell had been when she became assistant manager.

197.    In early 2005, McConnell was promoted to store manager with an annual salary of approximately $34,000.

198.    Brad Bartl, her former store manager who had worked for Sterling Jewelers for at least a decade, again informed McConnell that she was receiving a significantly lower salary than other male store managers employed by Sterling Jewelers, especially given her training experience and high sales record.  Bartl informed her that her situation was not unique because he was aware of many other women that were paid less than similarly situated men in the same

job positions. According to Bartl, Bartl's wife, Donna Bartl, had been a store manager with Sterling, and she too had been paid less than similarly-situated male store managers.

199. Although McConnell earned the highest bonus in her district in 2005, she did not receive an annual salary increase in 2006.

200. But for Sterling's policy prohibiting employees from discussing their wages, McConnell would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

201. McConnell's career goal was to obtain at least a district manager position.

202. In 2005, during a meeting for managers in her district, the then district manager Tim Chmiel asked store managers in attendance (approximately 14 managers) about their future goals.

203. When Chmiel asked McConnell about her professional goals, she responded that she wanted to be a district manager.

204. Despite her strong qualifications and interest, Sterling never offered her that position.

205. During McConnell's tenure at Sterling, Sterling did not advertise or post job vacancies or have a consistent or standard application process for job vacancies.

206. Instead, Sterling used a "tap on the shoulder" system for promotion to management positions.

207. Even though McConnell was interested in obtaining a district manager position, due to Sterling's failure to post job openings, McConnell was not made aware of district manager opportunities available to her during her employment. She believes there have been

district manager job vacancies filled by males who were less qualified or no more qualified than she.  She would have pursued and applied for any such positions, but she was not informed of such vacancies nor was she given the opportunity to apply.

208.    McConnell also experienced sexual harassment while employed by Sterling.

209.    On April 8, 2006, district manager John Braunsdorf placed manager-in-training Richard Swiental in her store as assistant manager.

210.    Swiental was rude and disruptive.  He made inappropriate sexual comments about women.  He commented on the anatomy of females who walked by the store and even asked McConnell, the store manager, to inquire if a young woman who walked by the store in a short skirt was wearing underwear.  He commented on female co-workers "PMSing" and bragged about affairs he had on his wife.  When helping sales associate, Stephanie Reinhardt, change a store sign, he said "I can always get it up" when he saw she was having trouble reaching the letters on the sign.  He addressed McConnell as "sweetheart" and refused to show her respect or treat her in a professional manner.

211.    Shortly after Swiental was transferred to her store, McConnell made verbal and written complaints about his behavior to her district manager Braunsdorf.

212.    Upon information and belief, no corrective action was taken against Swiental.

213.    In response to McConnell's complaints about Swiental's inappropriate sexual comments against women, inappropriate treatment of women and poor managerial performance, Swiental filed an internal complaint against her accusing her of gender discrimination.  Even though Swiental's claim had no merit, Sterling took his side and McConnell was written-up for discriminatory "comments" she never made.  She informed the human resource office about Swiental's inappropriate treatment towards women and his

disruptive behavior.  However, this information was ignored, and on August 31, 2006, McConnell was terminated from Sterling even though she had received the largest bonus in her district that same year and was an effective manager who sought to protect her employees and customers from a male employee's discriminatory behavior.

214.    On or about July 25, 2006 McConnell timely filed a charge of discrimination with the EEOC.

215.    On or about May 12, 2007, McConnell filed an amended charge of discrimination with the EEOC asserting her claims on behalf of herself and female employees of Sterling who are similarly situated.

216.    McConnell received a notice of right to sue from the EEOC dated March 18, 2008.

**<u>Gloria Pagan</u>**

217.    Gloria Pagan was employed with Sterling from approximately August 2005 until December 26, 2005.  During this time period, Pagan worked as a full-time sales associate at the JB Robinson Jewelers store located in Saint Peters, Missouri.

218.    When Pagan was hired by Sterling, she had prior experience working in the jewelry industry.

219.    Pagan excelled in her sales associate position and in October 2005, she was promised the third key title.

220.    The third key is the title given to a sales associate who assists the assistant manager and general manager in the performance of their duties, including opening and closing the store and supervising the store in their absence, and which provides training for promotional opportunities.  In approximately November 2005, Sterling hired Christopher Sutmoler as a sales

associate in the Saint Peters, Missouri JB Robinson Jewelers store.  Sutmoler was given the third key title that had been promised to Pagan in spite of the fact that Pagan had more tenure with Sterling and similar jewelry industry experience.

221.    During Pagan's employment with Sterling, Sterling failed to post open management positions and did not provide a consistent or standard means for employees to express an interest in promotions.

222.    Instead, Sterling relied on a "tap on the shoulder" promotion system.

223.    Pagan was interested in being promoted, but was unaware of promotional opportunities for which she was qualified, which may have been provided to less qualified male employees at Sterling as a result of these practices.

224.    During Pagan's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

225.    Upon information and belief, Sutmoler, a male with similar jewelry experience as Pagan, was hired at approximately the same time frame in the same sales associate job, and in the same store as Pagan; however, he was paid $11.50 per hour and Pagan was paid only $8.50 per hour.

226.    But for Sterling's policy prohibiting employees from discussing their wages, Pagan would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

227.    On or about July 16, 2006, Pagan timely filed a charge of discrimination with the EEOC.

228.    Pagan received a notice of right to sue from the EEOC on March 18, 2008.

**Judy Reed**

229.    Judy Reed began working at Sterling in October 2000 as an assistant manager at a Jared store in Appleton, Wisconsin.

230.    In July 2001 Reed transferred to Sterling's Jared Citrus Park store in Tampa, Florida and took a diamond department manager position.

231.    In July 2002, she was promoted to assistant manager of the Citrus Park store. Reed is currently a sales associate at the Citrus Park Store in Tampa, Florida.

232.    Reed has over 30 years experience in the jewelry industry that includes more than five years as an assistant manager for Sterling.

233.    Reed was denied promotions on at least four separate occasions in favor of males who were less qualified or no more qualified than she.

234.    In 2003, the general manager position at Sterling's Clearwater, Florida Jared store became vacant.

235.    Despite being well-qualified for the position, Reed was not granted an interview.

236.    The position was given to David Dion, a less-qualified male with only three years' tenure at Sterling and less jewelry industry experience than Reed.

237.    In January 2005, the general manager position at Sterling's Brandon, Florida Jared store became vacant.

238.    Again, Reed was not interviewed for the general manager position.

239.    Instead, the general manager position was given to a less-qualified male, Eric Wolff, who had only two years tenure at Sterling.

240.    In March 2005, the general manager position at Sterling's Citrus Park Jared

store became vacant.

241.    Reed had been assistant manager at this location for approximately four years, and during the course of her tenure, she had on several occasions performed the duties of general manager for the store when the general manager was unavailable.

242.    Although Reed was interviewed for the position, Sterling gave the position to a less-qualified male, Avind Mohip, who had only two years of jewelry industry experience.

243.    In approximately May 2007, Reed applied for the assistant manager position at Sterling's Citrus Park Jared store but the position was instead given to a less experienced male employee who was the timepiece department manager of a lower volume Jared store.

244.    During Reed's employment at Sterling, which is ongoing, Sterling has not posted job vacancies or provided a consistent or standard means for employees to express an interest in promotions.

245.    Employees become aware of openings via word of mouth.

246.    Accordingly, there are likely numerous other promotional opportunities that Reed was interested in and qualified for, which she was not given the opportunity to apply for, that were awarded to less qualified male employees.

247.    During Reed's employment at Sterling, which is ongoing, male employees have been paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

248.    When Reed was promoted to assistant manager of the Citrus Park store, she was paid a salary of $32,600.

249.    In the summer of 2005, a male, Jason May, obtained a position as an assistant manager at Sterling's Jacksonville, Florida store despite having only two years' experience at

Sterling and no prior jewelry industry experience.

250.    Upon information and belief, May was paid a salary of more than $36,000 per year.

251.    But for Sterling's policy prohibiting employees from discussing their wages, Reed would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

252.    On November 23, 2005, Reed filed a timely charge of discrimination with the EEOC.

253.    After filing her charge of discrimination, Reed learned that she was not considered for several management opportunities in retaliation for filing a charge of discrimination and her participation in this matter, including, but not limited to, the assistant manager position she applied for in approximately May 2007.

254.    Reed received notice of her right-to-sue from the EEOC dated March 18, 2008.

**Linda Rhodes**

255.    Linda Rhodes was employed by Sterling from approximately November 2005 until approximately November 14, 2006.

256.    Rhodes was hired as a seasonal part-time sales associate at the Belden store located in Massena, New York.

257.    Shortly after being hired, Sterling modified Rhodes' employment and classified her as a part-time sales associate, but did not increase her pay.

258.    Rhodes excelled in the part-time sales associate position.

259.    In approximately March 2005, Sterling hired Troy Lawler, a male, to be a part-

time sales associate in the Belden store in Massena, New York.

260.     Upon information and belief, when Lawler was hired by Sterling in March 2005, he was paid $8.75 per hour as a part-time sales associate.

261.     When Rhodes was hired approximately six months later, she was paid only approximately $7.00 per hour as a seasonal and regular part-time sales associate in the same store.

262.     Rhodes was paid less than Lawler in spite of the fact that she had approximately 15 years of customer service and sales experience in the restaurant industry when she was hired by Sterling, and Lawler had approximately three months of sales experience.

263.     Rhodes also had substantial prior management experience while Lawler had no management experience.

264.     Rhodes' store manager explained to the female employees including Rhodes that Lawler needed to be paid more than the females because he had a child to support.

265.     Sterling failed to correct the inequities in Lawler's and Rhodes' pay in spite of the fact that Rhodes was recognized by Sterling as an outstanding sales producer.

266.     Even after Rhodes was designated third key in the store, she still did not receive a raise.

267.     But for Sterling's policy prohibiting employees from discussing their wages, Rhodes would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

268.     On April 6, 2006, Rhodes filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

269.    Rhodes received notice of her right to sue from the EEOC on March 18, 2008.

**Khristina Rodrigues**

270.    Khristina Rodrigues began working for Sterling in 2001 as a sales associate.

271.    She left Sterling as an employee in good standing in 2003, and was rehired by Sterling in June 2004.

272.    In July 2005, Rodrigues was promoted to assistant manager.

273.    In March 2006, Rodrigues stepped down to a sales associate position.

274.    Rodrigues currently works as a part-time sales associate at a Kay Jewelers in Swansey, Massachusetts.

275.    When Rodrigues was rehired by Sterling in 2004, her rate of pay was $10.00 per hour.

276.    At the time of her rehire, Rodrigues had three years' jewelry industry experience, including approximately one year of experience working as an assistant manager.

277.    During Rodrigues' employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

278.    Upon information and belief, in approximately April 2005, Luis Cortes**,** a male with no prior jewelry experience was hired at a rate of $10.50 per hour.  Rodrigues was making $10.00 per hour at the time.

279.    When Rodrigues was promoted to assistant manager in July 2005, her rate of pay was increased to $11.00 per hour.

280.    When she stepped down from the assistant manager position, her rate of pay was reduced to $10.00 per hour.

281.    Upon information and belief, in approximately November 2005, Endhir "Andy" Bonilla, a male with no previous jewelry experience, was hired as a sales associate at a rate of $14.00 per hour.  This was considerably more than Rodrigues was making as an assistant manager, yet Sterling still reduced her pay even further when she stepped down to a sales position in 2006.

282.    But for Sterling's policy prohibiting employees from discussing their wages, Rodriques would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

283.    In addition to the pay discrimination described above, Rodrigues also experienced sexual harassment while employed at Sterling.  On or about January 31, 2006, while working at a Kay store in Taunton, Massachusetts, a male store manager from another store made a sexually suggestive comment to her while visiting her store.

284.    Rodrigues immediately reported this harassment to her store manager and then to her district manager.

285.    The district manager defended the actions of the store manager and blamed Rodrigues for misunderstanding the store manager.

286.    When Rodrigues asked the district manager who else she should contact about this, he suggested she call Sterling's TIPS Line, which she did.

287.    Even though she was told she would be notified of the outcome of the investigation, Rodrigues has not received information from Sterling on the status of her complaints and any consequent investigation.

288.    On July 18, 2006, Rodrigues filed a timely charge of discrimination with the

EEOC.

289.    Rodrigues received notice of her right-to-sue from the EEOC dated March 18, 2008.

**Nina Shahmirzadi**

290.    Nina Shahmirzadi was employed with Sterling from approximately October 10, 1997 until November 1998 at a Kay Jewelers' store in Henderson, Nevada.

291.    In 1998, she transferred to the Kay store in Las Vegas, Nevada. In approximately 2001, Shahmirzadi transferred to the Jared store in Henderson, Nevada as a part-time sales associate.

292.    In approximately the beginning of 2002, Shahmirzadi became a full-time sales associate in that store.

293.    Shahmirzadi resigned from her position with Sterling on approximately November 1, 2006.

294.    Shahmirzadi was 56 years old when she resigned.

295.    When Shahmirzadi joined Sterling, she had significant prior experience managing a jewelry store from approximately 1994 to 1997.

296.    During her employment at Sterling, Shahmirzadi was a significant sales producer.

297.    Shahmirzadi was recognized by Sterling as a top sales producer by being designated as a member of the President's Club for years 2003, 2004, and 2005.

298.    During her tenure at Sterling, Shahmirzadi was interested in being promoted to management positions and informed her district manager that she was willing to transfer to obtain a promotion.

299.    In spite of her strong qualifications, Shahmirzadi was passed over for promotional opportunities that were provided to less qualified and younger male employees.

300.    In 2005, Darren Desylvia, a male sales associate in his late teens or early twenties was promoted to watch department manager in the Jared store in Henderson, Nevada where Shahmirzadi was employed.

301.    In August 2006, Desylvia was promoted to diamond department manager.

302.    Upon information and belief, prior to receiving these promotions, Desylvia had little experience in the jewelry industry and had mostly worked on a part-time basis for Sterling.

303.    Unlike Desylvia, Shahmirzadi had several years of management experience and approximately nine years of sales experience with Sterling when these promotions occurred. Shahmirzadi was qualified for and interested in both of these promotions.

304.    Shahmirzadi was also passed over for promotions in September and November 2006.

305.    In September 2006, Andy Goldslam, an approximately 20-year-old male, was given the third key title in the Henderson, Nevada Jared store.

306.    Upon information and belief, Goldslam had no prior management experience when Goldslam was promoted to the third key title.  Meanwhile, Shahmirzadi had years of management experience and had been a top sales performer for years.

307.    During Shahmirzadi's employment with Sterling, Sterling failed to post open management positions and did not provide any consistent or standard means for employees to express an interest in promotions.

308.    Instead, Sterling relied on a "tap on the shoulder" promotion system.

309.    Because promotions were made pursuant to this tap on the shoulder system, Shahmirzadi is unable to identify all of the promotional opportunities that she was denied access to during her tenure at Sterling in spite of her interest in advancement.

310.    On or about January 18, 2007, Shahmirzadi timely filed a charge of discrimination with the EEOC.

311.    Shahmirzadi received a notice of right to sue from the EEOC on March 18, 2008.

**Leighla Smith**

312.    Leighla Smith began working for Sterling in Burlington, New Jersey at a Kay Jewelers store as a part-time sales associate starting and was paid $8.75 per hour beginning in approximately August, 2004.

313.    In approximately April, 2005 Smith transferred to a Kay store in Cupertino, California, as a full-time sales associate.

314.    Sterling had agreed to pay her $10.75 an hour at the California Kay's, but once she arrived there, Sterling would only pay her $9.75 per hour.

315.    During Smith's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.  For example, male sales associates with equal or less experience and responsibility in the Cupertino, California Kay store, including Cesar Navero and J.P. (last name unknown) were paid more than Smith.

316.    But for Sterling's policy prohibiting employees from discussing their wages, Smith would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

317.    Smith was also interested in obtaining higher paying jobs at Sterling, however her opportunity was limited because Sterling did not post promotional opportunities nor did it provide formal means for employees, like Smith, to apply for promotional opportunities.

318.    Smith believes there were promotional opportunities at Sterling that she was qualified for and interested in that were given to males who were less qualified or no more qualified than she, and because of Sterling's practices, she was not considered for them.

319.    On June 7, 2006 Smith filed a timely charge of discrimination with the EEOC.

320.    Smith received her right-to-sue notice on March 18, 2008.

**Dawn Souto-Coons**

321.    Dawn Souto-Coons was employed with Sterling from approximately September 1991 until approximately May 27, 2005.

322.    Souto-Coons began her employment as a sales associate in a JB Robinson store in Waldorf, Maryland.

323.    In approximately June 1992, Souto-Coons was promoted to assistant manager in that store.

324.    In approximately December 1992, Souto-Coons was promoted to store manager at the JB Robinson store in Gaithersburg, Maryland.

325.    In approximately January 1994, Souto-Coons was transferred as a store manager to the Waldorf, Maryland JB Robinson, which was a higher volume store than the Gaithersburg, Maryland store.

326.    In the summer of 1998 until approximately June 1999, Souto-Coons worked part-time.

327.    Souto-Coons was a full-time store manager at the Waldorf JB Robinson from

approximately June 1999 until July 2001.

328.    In approximately July 2001, Souto-Coons transferred to Florida as an assistant manager at the Jared store located in Brandon, Florida.

329.    On May 27, 2005, Souto-Coons felt compelled to resign her employment with Sterling after more than thirteen years of service because of Sterling's continued policy, pattern and practice of discriminating against her and other female employees in promotion and pay practices.

330.    Souto-Coons was a successful store manager in Maryland.

331.    She was recognized as one of Sterling's top ten managers and received seven incentive trips and numerous merit bonuses.

332.    When Souto-Coons transferred to Florida, she was qualified for and interested in promotions to general manager or district manager positions.

333.    In January 2005, two general manager positions became available, one at the Brandon, Florida Jared, and one at the Citrus Park, Florida Jared.

334.    Although Souto-Coons expressed interest in these positions and had frequently served in an acting manager role in the Brandon, Florida Jared, Souto-Coons was not granted an interview for either general manager position.

335.    Instead, in approximately February 2005, Eric Wolff, a less-qualified male employee with approximately two years experience with Sterling was given the Brandon, Florida Jared general manager position, and Avind Molhip, a less-qualified male employee with only two years of jewelry experience, was given the Citrus Park, Florida Jared general manager position.

336.    At the time of these promotions, Souto-Coons had over 13 years of experience

with Sterling, including approximately nine years of prior experience working as a store manager.

337.    During Souto-Coons' employment with Sterling, Sterling failed to post vacancies for management positions and did not provide a consistent or standard means for employees to express an interest in promotions.

338.    Instead, Sterling relied on a "tap on the shoulder" promotion system.

339.    Because promotions were made pursuant to this tap on the shoulder system, Souto-Coons is unable to identify all of the promotional opportunities that she was denied access to during her tenure at Sterling in spite of her interest in advancement.

340.    On October 3, 2005, Souto-Coons timely filed a charge of discrimination with the EEOC.

341.    Souto-Coons received a notice of right to sue from the EEOC on March 18, 2008, 2008.

**Marie Wolf**

342.    Marie Wolf has been employed by Sterling as a sales representative at a Jared store in Brandon, Florida from 2002 to the present.

343.    Prior to starting at Sterling, Wolf had several years of jewelry sales experience during which she sold over a million dollars in jewelry for her former employer.

344.    Wolf continued this success at Sterling, selling over a million dollars worth of jewelry every year since 2003.  This entitled her to membership in the President's Club for each of those years.

345.    During Wolf's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that

were performed under similar working conditions.

346.    Wolf's starting wage at Sterling was $12.00 per hour.

347.    Three years later her wage was $13.47.

348.    Upon information and belief, similarly situated male employees, including Grant Laing, Steven Harrington, and Alan Mong were paid higher base hourly rates even though Wolf had greater sales and longer seniority at Sterling.  This unequal pay between her and her male co-workers occurred even though the males were performing substantially equal work that required equal skill, effort, and responsibility under similar working conditions.

349.    But for Sterling's policy prohibiting employees from discussing their wages, Wolf would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

350.    On September 13, 2005, Wolf filed a timely charge of discrimination with the EEOC.

351.    Wolf received her right-to-sue from the EEOC on March 18, 2008.

## CLASSWIDE COUNT I
### Violation of Title VII - Disparate Impact

352.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 351.

353.    This claim is brought on behalf of all Plaintiffs and the class they represent.

354.    The foregoing conduct described above violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e), *et. seq*. and constitutes a continuing violation of that Act.

355.    Sterling has maintained a system for making promotion and compensation

decisions that is excessively subjective the operation of which has a disparate impact adverse to female employees, and which is not consistent with business necessity, or if it could be so justified, less discriminatory alternatives exist that could equally serve said necessity.

356.    Sterling's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits to Plaintiffs and members of the class.

357.    Plaintiffs request relief as provided in the Prayer for Relief below.

## CLASSWIDE COUNT II
### Violation of Title VII - Disparate Treatment

358.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 351.

359.    Sterling has intentionally discriminated against the Plaintiffs and the members of the proposed class by maintaining a system for making promotion and compensation decisions that is excessively subjective and through which Sterling has permitted or encouraged managers to deny female employees equal access to promotion opportunities and the same compensation paid to similarly situated male employees.

360.    Sterling's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits to Plaintiffs and members of the class.

361.    The foregoing conduct described above violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.* and constitutes a continuing violation of that Act.

362.    The foregoing conduct described above caused the Plaintiffs and members of the proposed class emotional harm and other forms of harm proximately caused by Sterling's

discriminatory conduct.

363. The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq*.

364. Plaintiffs request relief as provided in the Prayer for Relief below.

## CLASSWIDE COUNT III
### Violation of Equal Pay Act, 29 U.S.C. § 206(d)

365. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 351.

366. Sterling required Plaintiffs and the other members of the collective action to perform the same or substantially similar work as other male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment and paid Plaintiffs and the other female retail employees lower wages than similarly situated male employees. The difference in pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than gender.

367. By the conduct described above Sterling has willfully violated the Equal Pay Act, 29 U.S.C. §206(d). As a direct result of Sterling's unlawful and discriminatory conduct in willful violation of the Equal Pay Act, Plaintiffs and other female retail employees have been and continue to be paid less than similarly-situated men.

368. Plaintiffs request relief as provided in the Prayer for Relief below.

## COUNT IV ON BEHALF OF PLAINTIFF DENISE MADDOX
### Violation of Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

369. Plaintiff Maddox repeats and realleges the allegations contained in paragraphs 1

through 10, and paragraphs 17, 27, and 157 through 188.

370.    The foregoing conduct, among others, violates the Age Discrimination in

Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and constitutes a willful violation of the

ADEA.

371.    Plaintiff Maddox requests relief as provided in the Prayer for Relief below.

## COUNT V ON BEHALF OF PLAINTIFF LISA MCCONNELL
### For Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3.

372.    Plaintiff McConnell repeats and realleges the allegations contained in paragraphs

1 through 10, and paragraphs 18, 27, and 189 through 216.

373.    The foregoing conduct, among others, violates Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-3(a).

374.    Plaintiff McConnell requests relief as provided in the Prayer for Relief below.

## COUNT VI ON BEHALF OF PLAINTIFF JUDY REED
### For Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3.

375.    Plaintiff Reed repeats and realleges the allegations contained in paragraphs 1

through 10, and paragraphs 20, 27, and 229 through 254.

376.    The foregoing conduct, among others, violates Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-3(a).

377.    Plaintiff Reed requests relief as provided in the Prayer for Relief below.

## COUNT VII ON BEHALF OF PLAINTIFF NINA SHAHMIRZADI
### Violation of Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

378.    Plaintiff Shahmirzadi repeats and realleges the allegations contained in paragraphs

1 through 10, and paragraphs 23, 27, and 290 through 311.

379.    The foregoing conduct, among others, violates the Age Discrimination in

Employment Act, 29 U.S.C. § 621, *et seq.* and constitutes a willful violation of the ADEA.

380.    Plaintiff Shahmirzadi requests relief as provided in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs respectfully request this Court

**As to the Class Claims:**

A.    Declare that the practices described in this complaint exist at Sterling and that they are unlawful;

B.    Grant certification of this action as a class action on behalf of the proposed Plaintiff class and designation of Plaintiffs as representatives of the class and their counsel of record as Class Counsel;

C.    Grant certification of this action as a collective action and designation of Plaintiffs as representatives of the class and their counsel of record as Class Counsel;

D.    Issue a permanent injunction prohibiting the Defendant, its officers, agents, employees and successors, from engaging in the discriminatory employment practices complained of herein in violation of Title VII of the Civil Rights Act of 1964, as amended;

E.    Issue a permanent mandatory injunction requiring that Defendant adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.;

F.    Award liquidated damages pursuant to 29 U.S.C. § 201, *et seq*.;

G.    Award back pay and other job benefits sufficient to make the Plaintiffs and the class whole;

H.    Award compensatory damages and pre-judgment interest, and punitive damages appropriate to the proof at trial;

I.      Award reasonable attorneys' fees and costs, including expert fees, pursuant to 42 U.S.C. § 2000e and 42 U.S.C. § 1988; 29 U.S.C. § 216(b); 29 U.S.C. § 201, *et seq.*; and

J.      Order such other and further relief as the Court deems just and proper.

**As to Plaintiffs Maddox, McConnell, Reed, and Shahmirzadi's Individual Claims:**

K.      Award back pay and other job benefits sufficient to make Plaintiffs Maddox, McConnell, Reed, and Shahmirzadi whole;

L.      Award Plaintiffs Maddox and Shahmirzadi liquidated damages and pre-judgment interest pursuant to 29 U.S.C. § 626(b);

M.      Award Plaintiffs Maddox and Shahmirzadi reasonable attorneys' fees and costs, including expert fees, pursuant to 29 U.S.C. § 621, *et seq.*; 29 U.S.C. § 216(b);

N.      Award Plaintiffs McConnell and Reed compensatory damages and pre-judgment interest, injunctive relief, and punitive damages appropriate to the proof at trial;

O.      Award Plaintiffs McConnell and Reed reasonable attorneys' fees and costs, including expert fees, pursuant to 42 U.S.C. § 2000e and 42 U.S.C. § 1988; and,

P.      Order such other and further relief for Plaintiffs Maddox, McConnell, Reed, and Shahmirzadi as the Court deems just and proper.

## **JURY TRIAL DEMAND**

The Plaintiffs hereby demand a jury trial.


Dated: New York, New York
          April 23, 2008


                              Respectfully submitted,

                              **COHEN, MILSTEIN, HAUSFELD**
                               **& TOLL, P.L.L.C.**

_____/s/ Jenny Yang_____
Joseph M. Sellers
Jenny R. Yang (JY-9667)
Sahar F. Aziz
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
jsellers@cmht.com
jyang@cmht.com
saziz@cmht.com


Lynda J. Grant (LG-4784)
150 East 52nd Street, 30th Floor
New York, N.Y.  10022
Telephone:  (212) 838-7797
Facsimile:  (212) 838-7745
lgrant@cmht.com

Sam J. Smith
Loren B. Donnell
Burr & Smith, LLP
442 W. Kennedy Boulevard
Suite 300, Tampa, FL  33606
Telephone:  (813) 253-2010
Facsimile:  (813) 254-8391
ssmith@burrandsmithlaw.com
ldonnell@burrandsmithlaw.com

Thomas A. Warren
Thomas A. Warren Law Offices, P.L.
2032-D Thomasville Blvd.
Tallahassee, FL 32308
Telephone:  (850) 385-1551
Facsimile:  (850) 385-6008
tw@nettally.com

**_Counsel for Plaintiffs_**

# Exhibit 1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

Charge No:

Marie Wolf
c/o Burr & Smith                              151-2005-03638

                                       Charging Party

Jacquelyn Boyle
c/o Burr & Smith                              151-2005-03639

                                       Charging Party

Carol King
c/o Burr & Smith                              151-2005-03709

                                       Charging Party

Dawn Soto-Coons
c/o Burr & Smith                              151-2006-00087

                                       Charging Party

Judy Reed
c/o Burr & Smith                              151-2006-00488

                                       Charging Party

Laryssa Jock                                  165-2005-00714

                                       Charging Party

Lisa Follett                                  525-2006-00197

                                       Charging Party

Linda Rhodes                                  525-2006-00570

                                       Charging Party

Carolyn Morse                                 525-2006-00571

                                       Charging Party

Christy Davies                                525-2006-00644

                                       Charging Party

Letter of Determination
Sterling Jewelers, Inc.
Page 2

|  |  | Charge No: |
|---|---|---|
| Tana Shriver | | 525-2006-00789 |
| | Charging Party | |
| Leighla Smith | | 525-2006-00956 |
| | Charging Party | |
| Khristina Rodrigues | | 525-2006-01138 |
| | Charging Party | |
| Gloria Pagan | | 525-2006-01139 |
| | Charging Party | |
| Marie House | | 525-2007-00071 |
| | Charging Party | |
| Lisa L. McConnell | | 470-2006-04239 |
| | Charging Party | |
| Denise Maddox | | 525-2007-00253 |
| c/o Law Offices of Thomas A. Warren | | |
| | Charging Party | |
| Sharon Scroggins | | 525-2007-00290 |
| | Charging Party | |
| Nina Shahmirzadi | | 525-2007-00419 |
| | Charging Party | |
| Sterling Jewelers, Inc. | | |
| 375 Ghent Road | | |
| Akron, OH 44333 | Respondent | |

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination on the merits of this charge filed under the Equal Pay Act of 1963 (Equal Pay Act) and/or Title VII of the Civil Rights Act of 1964 as amended (Title VII) and the Civil Rights Act of 1991. Timeliness, deferral and all other requirements for coverage have been met.

Letter of Determination
Sterling Jewelers, Inc.
Page 3

Charging Parties collectively allege that Respondent has discriminated against a class of female employees with retail sales responsibilities in regard to promotion and compensation.

Respondent denies the allegations of discrimination in their entirely and asserts that legitimate, non-discriminatory reasons support its decisions. Respondent also disputes the Buffalo Area's jurisdiction over several of the individual charges, and asserts timeliness claims in regard to several individual charges.

The investigation determined that Respondent subjected Charging Parties and a class of female employees with retail sales responsibilities nationwide to a pattern or practice of sex discrimination in regard to promotion and compensation. Statistical analysis of pay and promotion data provided by Respondent reveals that Respondent promoted male employees at a statistically significant, higher rate than similarly situated female employees and that Respondent compensated male employees at a statistically significant, higher rate than similarly situated female employees. Witness testimony further corroborates the allegations. As such, I find reasonable cause to believe that Respondent has engaged in a pattern or practice of discrimination as alleged, in violation of Title VII and the Equal Pay Act.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices through informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in a collective effort toward a just resolution to this matter. The confidentiality provisions of Title VII, the Equal Pay Act, and the Commission Regulations apply to information obtained during conciliation.

When the Respondent declines to discuss settlement or when, for any reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

JAN 0 3 2008
_____
Date

Elizabeth Cadle, Director
Buffalo Local Office

Copy:

Loren B. Donnell, Esq
Burr & Smith
Suite 300
442 W. Kennedy Blvd.
Tampa, Florida 33606

Joseph M. Sellers, Esq.
Cohen Milstein
Suite 500 West
1100 New York Ave. N.W.
Washington, D.C. 20005

Thomas A. Warren, Esq.
Law Offices
2032-D Thomasville Road
Tallahassee, Florida 32308

Jacqueline E. Kalk, Esq.
Littler Mendelson
Suite 1100
3348 Peachtree Road, N.E.
Atlanta, Georgia 30326

Stephen S. Zashin, Esq.
Zashin & Rich Co., L.P.A.
55 Public Square
Cleveland, Ohio 44113

# Exhibit 2

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3-11-07

_Larissa E Jock_
Signature

_Larissa E. Jock_
Printed Name

_Current - Belden Jewelers,_
Current/Former Employee of Sterling Store (Name/Location)

Massena
New York

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3|17|08

_Jacquelyn Boyle_
Signature

_Jacquelyn Boyle_
Printed Name

_Jared (Brandon, FL)_
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.    I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.    I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.    I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.    I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.    I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/17/08

Christy Chadwick
Signature

Christy Chadwick
Printed Name

Christy Chadwick, Hassina, N.Y.
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 4/11/08

_Kelly Contreras_
Signature

_Kelly Contreras_
Printed Name

_Former District Manager, Dayton, Oh._
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: _3/11/08_

_____
Signature

_Maria House_
Printed Name

_Kay Jewelers_    _2701 Ming Ave Bakersfield, CA_
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.    I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.    I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.    I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.    I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.    I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 03-17-08

_____
Signature

Denise T Maddox
_____
Printed Name

Jared 2401
_____
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.    I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.    I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.    I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.    I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.    I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/12/2008

Lisa L. McConnell
Signature

LISA  L.  McCONNELL
Printed Name

KAY  JEWELERS  ELKHART  INDIANA
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*., for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/11/2008

Dawn E. Souto-Coons
Signature

Dawn E. Souto-Coons
Printed Name

Jared the Galleria of Jewelry, Brandon FL
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/13/08

_____
Signature

_____
Printed Name

_____
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3, 12, 08

_____
Signature

NINA SHAHMIRZADI
Printed Name

_____
Current/Former Employee of Sterling Store (Name/Location)

**CONSENT TO JOIN**
**PURSUANT TO 29 U.S.C. §216(b)**

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/11/08

_____
Signature

Linda Rhodes
_____
Printed Name

Belden's · Massena N.Y
_____
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.     I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.     I have worked for Sterling during the time period after February 2003.  I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.     I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.  I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.     I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.     I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/17/08

Signature _Judy A Reed_

Printed Name _Judy A Reed_

Current/Former Employee of Sterling Store (Name/Location) _Current Jared - Citrus Town Cter. Tampa, Fl_

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.        I hereby consent and agree and opt-in to become a plaintiff in a lawsuit
brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et
seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former
employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations,
subsidiaries, joint employers and representatives (collectively "Sterling").

2.        I have worked for Sterling during the time period after February 2003.  I
believe I may have been paid less than men in similar positions; and therefore, consent to
join the suit.

3.        I hereby agree to be bound by any adjudication of this action by the
Court, whether it is favorable or unfavorable.  I further agree to be bound by any
collective action settlement herein approved by my attorneys and approved by this
Court as fair, adequate, and reasonable.

4.        I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A.
Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.        I agree to be represented by those plaintiffs who have been or will be
named in the litigation that my counsel has filed, to the fullest extent possible under
applicable laws, to make decisions on my behalf concerning the litigation, including the
method and manner of conducting and resolving the litigation, the terms of representation
by the attorneys for the named plaintiffs and others who join the action, and all other
matters pertaining to this lawsuit.

Date: 3·10·08

Signature

MARIe WoIF
Printed Name

Jared Brandon Fl.
Current/Former Employee of Sterling Store (Name/Location)