**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X
                                          :

**LARYSSA JOCK, et al.,**          :

            Plaintiffs,          :

            on behalf of themselves and   :   Index No.  1:08-cv-02875 (JSR)
            others similarly situated,    :

        -against-           :

**STERLING JEWELERS INC.,**     :

            Defendant.        :

------------------------------------- X

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION TO REFER TO ARBITRATION AND STAY THE**
**LITIGATION**

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)........................................................................5, 10

*AT&T Techs., Inc. v. Commc'ns Workers of America*,
    475 U.S. 643 (1986)........................................................................7

*Bressette v. Int'l Talc Co.*,
    527 F.2d 211 (2d Cir. 1975)........................................................12

*Conticommodity Servs., Inc. v. Philipp & Lion*,
    613 F.2d 1222 (2d Cir. 1980)......................................................12

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)........................................................................7

*First Options of Chicago v. Kaplan*,
    514 U.S. 938 (1995)........................................................................6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)........................................................................5, 9

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003)........................................................4, 8, 11, 13

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001)........................................................7

*John Wiley & Sons, Inc., v. Livingston*,
    376 U.S. 543 (1964)........................................................................12

*Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)........................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)........................................................................6

*Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*,
    88 F.3d 129 (2d Cir. 1996)........................................................7, 8

*Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace &*
    *Agric. Implement Workers of Am.*,
    29 F.3d 83 (2d Cir. 1994)........................................................12

**STATUTES**

9 U.S.C. §3 .................................................................................................................9

9 U.S.C. § 4 ................................................................................................................6

42 U.S.C. § 2000e-5(g)(1) .......................................................................................10

42 U.S.C. § 2000(e), *et seq.* ...........................................................................4, 5, 8, 10

42 U.S.C. § 1981 ...............................................................................................4, 5, 8, 10

## I.     INTRODUCTION

It is now undisputed that the claims at issue in the instant litigation fall within the scope of an enforceable arbitration agreement.  The parties' disagreements, therefore, concern issues of contract interpretation and arbitration procedures, which the Supreme Court has squarely held are issues to be decided by the arbitrator in the first instance.  *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003). Accordingly, Plaintiffs respectfully request that the Court refer the pending action to arbitration and stay this case in accordance with the strong federal policy favoring arbitration.

## II.     FACTUAL BACKGROUND

Plaintiffs are current and former employees of Sterling Jewelers Inc. ("Sterling") alleging a company-wide pattern or practice of gender discrimination in pay and promotion decisions in violation of Title VII and the Equal Pay Act.  Sterling requires new employees to sign a contractual agreement to resolve employment disputes, including claims of employment discrimination, through the RESOLVE Program.  *See* Sample Sterling Jewelers Inc. Job Application, attached hereto as Ex. A. The RESOLVE Program is a three-step alternative dispute resolution system in which the final step provides for arbitration before the American Arbitration Association ("AAA").  *See* Sample Arbitration Agreement, attached hereto as Ex. B.

Prior to filing this lawsuit, Plaintiffs identified two provisions of the Arbitration Agreement that they believed would have rendered the arbitration agreement unenforceable.  First, Sterling's RESOLVE Arbitration Rules, which are intended to supplement those promulgated by the AAA, state, "in reaching a decision, the arbitrator may not modify Company rules, policies and procedures." *See* RESOLVE Program

Arbitration Rules, attached hereto as Ex. C.  On its face, this provision would prohibit the arbitrator from awarding injunctive relief, as such relief in this case would certainly involve changes to Sterling personnel rules, policies, or procedures governing pay and promotion decisions and other related actions.  *See* First Amended Complaint, ¶ 9, Dkt. No. 11.  Thus, a bar to the award of injunctive relief would constitute an impermissible waiver of Plaintiffs' statutory rights under Title VII.  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) ("[T]here can be no prospective waiver of an employee's rights under Title VII.").  Second, the Arbitration Agreement was ambiguous as to whether Plaintiffs would bear costs that exceed those charged in federal court.[1]  As a result, Plaintiffs had reason to believe that part or all of the Arbitration Agreement was unenforceable, and thus brought their claims in this Court, noting the grounds on which they challenged enforceability of the Arbitration Agreement.  *See* Complaint, ¶¶ 7-9, Dkt. No. 1 (setting forth the grounds on which Plaintiffs allege the RESOLVE Program is unenforceable); First Amended Complaint, ¶¶ 7-9, Dkt. No. 11; *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (questions as to the validity of an arbitration agreement are decided by the court).  By filing their Complaint, Plaintiffs sought to preserve their Title VII and EPA rights in the event the Court determined that the RESOLVE Program was unenforceable.

---

[1] Prior to filing the Complaint, in an attempt to further assess the enforceability of the RESOLVE Program, Plaintiffs asked the RESOLVE Program Administrator to provide "any and all applicable documents that provide the grounds rules for the Resolve Program, Step 1 through Step 3, including, but not limited to, the specific rules for Step 3 arbitration."  *See* Smith Letter to Spagnola, dated March 6, 2008, attached hereto as Ex. D.  Sterling failed to respond to this letter, and Plaintiffs proceeded with the filing of their Complaint on March 18, 2008 to toll the running of any statutes of limitations on their claims.  Indeed, Sterling has yet to respond to Plaintiffs' repeated requests to obtain copies of the RESOLVE agreements signed by each of the named Plaintiffs.

To preserve their rights under the RESOLVE Program in the event it was enforceable, Plaintiffs asked the AAA to initiate the arbitration process but to stay appointment of an arbitrator until this Court ruled on the enforceability of the Arbitration Agreement.[2]  *See* Joseph Sellers' Letter to AAA accompanying Plaintiffs' Demand for Arbitration, dated March 24, 2008, attached hereto as Ex. E.  Since the filing of the Complaint, Sterling has made representations that have led Plaintiffs to conclude the Arbitration Agreement is indeed enforceable.  The Court should refer the pending action to arbitration based on the following points and authorities.

## III.    AN ORDER COMPELLING ARBITRATION IS APPROPRIATE PURSUANT TO §4 OF THE FEDERAL ARBITRATION ACT

Whether the arbitration agreement is enforceable must be determined by the court in the first instance.  *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943-44 (1995).  Section 4 of the Federal Arbitration Act ("FAA") authorizes a district court to compel arbitration of any matter that is the subject of a written agreement for arbitration.  9 U.S.C. § 4.[3]  The Supreme Court has held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . . whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l*

---

[2] In a letter dated April 29, 2008, the AAA concluded that Plaintiffs had met the requirement for initiating arbitration with the AAA and, accordingly, stayed the matter until further instruction from the parties or a court of law.  *See* AAA Letter to Parties, dated April 29, 2008, attached hereto as Ex. F.

[3] The Federal Arbitration Act states, in pertinent part, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (noting the strong federal policy in favor of arbitration); *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d 219, 226 (2d Cir. 2001). The Act "leaves no room for the exercise of discretion by a district court, but instead mandates that the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds,* 470 U.S. at 218.

In deciding whether to compel arbitration, courts employ a two-step inquiry. First, the court should determine whether the parties entered into a valid and enforceable agreement to arbitrate. *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986). Second, the court should ascertain whether the claims asserted fall within the scope of the arbitration agreement. *Id; Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir. 1996). Where both prerequisites have been met, the case should be referred to arbitration.

Here, the parties have entered into an agreement to arbitrate that, as a result of information Sterling has provided after this action was filed, appears to be enforceable. Sterling has represented that 1) Plaintiffs may be awarded the same remedies through arbitration that are available in court under applicable law and; 2) the cost to Plaintiffs of arbitration will not exceed the cost of proceeding before a judicial forum. In a letter dated April 18, 2008, Sterling, through its counsel, stated "RESOLVE does not impose a financial burden upon a claimant that is any greater than the financial burdens of a judicial proceeding." *See* Letter from Gerald Maatman to Joseph Sellers, dated April 18, 2008, attached hereto as Ex. G. In response to Plaintiffs' concerns that the language in the RESOLVE Arbitration Rules precluded an arbitrator from awarding injunctive

relief, Sterling cited a provision in the Arbitration Agreement, that states "[t]he Arbitrator shall have the power to award any types of legal or **equitable** relief that would be available in a court of competent jurisdiction including, but not limited to, the costs of arbitration, attorney fees and punitive damages for causes of action when such damages are available under law" (emphasis in original). *Id.* Sterling stated that the discretion of the arbitrator was not restricted as Plaintiffs' believed. *Id.* As these representations demonstrate that the grounds on which Plaintiffs challenged the Arbitration Program no longer exist, the Plaintiffs no longer challenge the enforceability of the Arbitration Agreement. Likewise, Sterling concedes that an enforceable arbitration agreement exists.[4]

Moreover, the claims the Plaintiffs have brought in this action fall within the subject matter encompassed by the Arbitration Agreement. The Arbitration Agreement expressly states it encompasses disputes arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and the Equal Pay Act. *See* Ex. B. As these comprise the statutory grounds of the Plaintiffs' claims, the subject of this action plainly falls within the scope of the Agreement. *See* Complaint, ¶ 3 Dkt. No. 1.

As there is evidence of a valid, enforceable agreement to arbitrate and evidence that the claims at issue here fall within the scope of that agreement, the pending action

---

[4] In its answer to the Complaint, Sterling admitted that the RESOLVE Program was enforceable against the Plaintiffs. *See* Answer, ¶¶ 9, 403, 414 (raising the affirmative defense that the claims are subject to mandatory arbitration), Dkt. No. 19; Counterclaim ¶ 39 (citing Sterling's confirmation that RESOLVE is enforceable), Dkt. No. 19. Instead, Sterling contends that Plaintiffs may only submit to arbitration their individual claims and not assert claims on behalf of themselves and others. Counterclaim ¶¶ 10-25, 51, Dkt. No. 19. While Plaintiffs disagree with Sterling's position, the dispute should not affect the susceptibility of the claims to arbitration. Instead, the determination whether Plaintiffs may pursue claims in arbitration on behalf of themselves and others should be determined by an arbitrator in the first instance. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003).

should be referred to arbitration before the AAA and the instant litigation stayed.   *See* 9 U.S.C. §3.[5]

### A.      Defendant Has Represented It Will Pay Costs of Arbitration in Excess of the Costs to Proceed Before a Judicial Forum

An arbitration agreement, to be enforceable, may not impose on the employee costs that exceed those that the employee would assume in a judicial forum.  *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 218.  In response to Plaintiffs' concerns that the costs of the RESOLVE Program shouldered by the Plaintiffs might exceed those incurred in a judicial forum, Sterling recently represented in correspondence between counsel that the RESOLVE Program shifts to Sterling any costs associated with initiating and maintaining the arbitration, beyond those equal to the court filing fee.  *See* Ex. G. Relying upon these representations made by Sterling, the Plaintiffs are prepared to withdraw their objection, on this ground, to the Arbitration Agreement, as their understanding is that the Arbitration Agreement does not impose costs upon employees that exceed those they would assume in a court of law.  Hence the issue of cost does not bar the enforceability of the Arbitration Agreement.[6]

---

[5] The Federal Arbitration Act states, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C.A. §3.

[6] Despite Sterling's representations to AAA that Plaintiffs were precluded from initiating arbitration before AAA because they had not completed the prerequisites to arbitration in the RESOLVE Program, AAA has found that Plaintiffs have met the requirements to initiate arbitration.  *See* Ex. F.

**B.    Defendant has Represented that the Arbitration Agreement Authorizes the Arbitrator to Award the Same Remedies That are Available Under Title VII and the Equal Pay Act**

Arbitration must also afford parties a forum that is comparable to the judiciary for the adjudication of their statutory rights. Arbitration agreements whose terms would undermine, or work a prospective waiver of, any of the underlying statutory rights may not be enforced. *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum"); *Alexander v. Garnder-Denver Co.*, 415 U.S. 36, 51 (1974) ("[T]here can be no prospective waiver of an employee's rights under Title VII."). Title VII of the Civil Rights Act of 1964, which Plaintiffs invoke, authorizes the award of injunctive relief and, if Plaintiffs prevail, they will seek equitable relief that would constitute a modification, change, or elimination of some of Sterling's personnel rules, policies, or procedures at issue in this case. *See* 42 U.S.C. § 2000e-5(g)(1).

In recent correspondence responding to Plaintiffs' concerns about the remedies available under the RESOLVE Program, Sterling has stated "[Claimants' contentions regarding the costs of arbitration and the arbitrator's authority] are in direct contradiction to the RESOLVE Program itself. RESOLVE has a nominal filing fee and the arbitrator is free to make any award that comports with applicable law." *See* Letter from Joseph Spagnola to Joseph Sellers, dated April 1, 2008, attached hereto as Ex. H. Two weeks later, Sterling reiterated its position by citing the Arbitration Agreement that states "[t]he Arbitrator shall have the power to award any types of legal or **equitable** relief that would be available in a court of competent jurisdiction including,

-7-

but not limited to, the costs of arbitration, attorney fees and punitive damages for causes of action when such damages are available under law" *See* Ex. G (emphasis in original).

As Plaintiffs have been assured through written correspondence from Sterling that the RESOLVE Program affords them a forum in which the same statutory remedies are available as could be awarded by this Court, the Plaintiffs withdraw their objection on this ground to enforcement of the RESOLVE Program Arbitration Rules.

## IV.    PROCEDURAL QUESTIONS ARE DECIDED BY THE ARBITRATOR

The Supreme Court has made clear that while questions regarding whether an arbitration agreement is an enforceable contract should be determined by the court, questions regarding "contract interpretation and arbitration procedures" are the exclusive providence of the arbitrator. *See e.g., Green Tree Fin. Corp.,* 539 U.S. at 453. While the parties disagree over the interpretation of two features of the RESOLVE Program Arbitration Rules, the *Bazzle* decision dictates that resolution of these issues should be referred to arbitration and the existence of these disputes does not affect the susceptibility of the pending case to adjudication in arbitration.

The dispute between the parties entails the issues regarding: 1) whether Claimants have effectively exhausted the RESOLVE Program's procedural prerequisites, and whether they have done so within the timeframe required by the Program, such that they may proceed to arbitration; and 2) whether the Plaintiffs may pursue their pattern or practice claims in a class action. *See* Ex. G. Both issues should be decided in arbitration in the first instance, not in this Court.

### A.    Whether Prerequisites to Arbitration Have Been Satisfied is an Issue to be Determined by the Arbitrator

An arbitrator is the proper authority to decide whether contractual prerequisites to arbitration have been satisfied. *See John Wiley & Sons, Inc., v. Livingston*, 376 U.S. 543, 557 (1964). In *John Wiley & Sons*, the Supreme Court held whether a party had properly invoked two steps of a union grievance procedure that were prerequisites to arbitration was a procedural issue properly decided by the arbitrator. *Id.* That ruling has consistently been applied in this Circuit to leave the types of procedural issues Sterling has raised to adjudication by an arbitrator in the first instance. *See Bressette v. Int'l Talc Co.*, 527 F.2d 211, 215 (2d Cir. 1975) (whether the failure of union to seek mediation, which preceded arbitration in the grievance procedure, barred arbitration was an issue for the arbitrator); *Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 29 F.3d 83, 88 (2d Cir. 1994) (whether time requirements within collective bargaining agreement were met, as well as interpretation of the CBA, were questions for the arbitrator); *Conticommodity Servs., Inc. v. Philipp & Lion*, 613 F.2d 1222, 1226 (2d Cir. 1980).

Sterling asserts that Plaintiffs' demand for arbitration is premature based on its contention that none of the Plaintiffs have completed the procedural prerequisites to arbitration, and that some of the Plaintiffs have not initiated the RESOLVE Program in a timely manner. Plaintiffs disagree with Sterling; however, this motion need not address arguments in support of Plaintiffs' position as the law plainly states that such procedural issues are properly decided by the arbitrator.

**B.**      **The Arbitrator Decides if the Claims May Proceed as a Class**

Questions whether an arbitration agreement permits claimants to proceed as a class fall squarely within the arbitrator's authority.  *See Green Tree Fin. Corp.*, 539 U.S. at 453 (holding that when an arbitration agreement is silent as to whether class arbitration is permissible, an arbitrator determines in the first instance whether case can proceed as a class action).  In fact, when the plaintiffs plead a class claim, the AAA requires the parties to complete the Clause Construction phase where an arbitrator determines whether the arbitration agreement permits pursuit of a class claim before proceeding to determine whether class certification is warranted in the particular case. *See* Supplemental Rules for Class Arbitration, attached hereto as Ex. I.

Here, Sterling contends that the RESOLVE Program precludes class arbitration. *See* Counterclaim ¶ 51, Dkt. No. 19.  Nowhere in the RESOLVE Program are class claims mentioned, much less barred.  The dispute between the parties over this issue should be referred to an arbitrator for determination.

**V.**      **<u>CONCLUSION</u>**

For the reasons stated above, this Court should order the parties to proceed to arbitration and stay the instant proceedings pending the outcome of arbitration.

Dated: New York, New York
         May 5, 2008

Respectfully submitted,

**COHEN, MILSTEIN, HAUSFELD & TOLL
P.L.L.C.**

By: */s/ Joseph M. Sellers*
     Joseph M. Sellers
     Jenny R. Yang (JY-9667)
     Sahar F. Aziz
     1100 New York Avenue, N.W.
     Suite 500, West Tower
     Washington, DC 20005
     Telephone:  (202) 408-4600
     Facsimile:  (202) 408-4699
     jsellers@cmht.com
     jyang@cmht.com
     saziz@cmht.com

     Lynda J. Grant (LG-4784)
     150 East 52nd Street, 30th floor
     New York, NY 10022
     Telephone:  (212) 838-7797
     Facsimile:  (212) 838-7745
     lgrant@cmht.com

     Sam J. Smith
     Loren B. Donnell
     Burr & Smith, LLP
     442 W. Kennedy Boulevard, Suite 300
     Tampa, FL 33606
     Telephone:  (813) 253-2010
     Facsimile:  (813) 254-8391
     ssmith@burrandsmithlaw.com
     ldonnell@burrandsmithlaw.com

     Thomas A. Warren
     Thomas A. Warren Law Offices, P.L.
     2032-D Thomasville Blvd.
     Tallahassee, FL  32308
     Telephone:  (850) 385-1551
     Facsimile:  (850) 385-6008
     tw@nettally.com

     ***Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2008, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO REFER TO ARBITRATION AND STAY THE LITIGATION with the Clerk of the United States District Court, Southern District of New York, using the CM/ECF system, which sent notification of such filing to the following:

Gerald L. Maatman, Jr. (GM-3201)
gmaatman@seyfarth.com

Lorie E. Almon (LA-4937)
lalmon@seyfarth.com

David Bennet Ross (DR-8613)
dross@seyfarth.com

Richard I. Scharlat (RS-5127)
rscharlat@seyfarth.com

620 Eighth Avenue, 32nd floor
New York, New York 10018-1405
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

I hereby certify that on May 5, 2008, I sent the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS via first class mail to the following:

ZASHIN & RICH CO., L.P.A.
Stephen S. Zashin
ssz@zrlaw.com
55 Public Square, 4th floor
Cleveland, Ohio 44113
Telephone:  (216) 696-4441
Facsimile:  (216) 696-1618

Attorneys for Defendant Sterling Jewelers Inc.

_____*/s/ Sahar Aziz*_____ _____
            Sahar Aziz

# Exhibit A

# STERLING
## Jewelers Inc.

Revised 2/99

**Employment Application**

APPLICANTS ARE CONSIDERED FOR POSITIONS FOR WHICH THEY ARE QUALIFIED AND EMPLOYEES ARE TREATED DURING EMPLOYMENT WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS, MENTAL OR PHYSICAL DISABILITY, OR ANY OTHER LEGALLY PROTECTED STATUS, AS REQUIRED BY LAW.

### PERSONAL

| LAST NAME | FIRST | MIDDLE | SOCIAL SECURITY NUMBER |
|---|---|---|---|

STREET ADDRESS | CITY | STATE | ZIP | HOW LONG?

PREVIOUS STREET ADDRESS | CITY | STATE | ZIP | HOW LONG?

HOME PHONE | BUSINESS PHONE | ALTERNATE PHONE WHERE MESSAGE CAN BE LEFT

### JOB INTEREST

POSITION APPLYING FOR | SALARY REQUIRED: | ARE YOU 18 YEARS OF AGE OR OVER?

HAVE YOU EVER APPLIED TO OR BEEN EMPLOYED BY STERLING BEFORE? ☒ YES ☐ NO   IF YES, GIVE DATE AND LOCATION

AVAILABILITY: ☒ FULL-TIME ☐ PART-TIME ☐ TEMPORARY ☐ NIGHTS ☐ WEEKENDS ☐ OVERTIME

ARE YOU LAID-OFF AND SUBJECT TO RECALL? ☐ YES ☐ NO   HOW DID YOU LEARN OF OUR ORGANIZATION? ☐ NEWSPAPER ☐ AGENCY ☐ EMPLOYEE REFERRAL ☐ WALK-IN

PLEASE LIST ANY RELATIVES OR FRIENDS EMPLOYED BY US. | PERSON WHO REFERRED YOU

HAVE YOU EVER BEEN CONVICTED OF A FELONY? IF YES, PLEASE EXPLAIN: ☐ YES ☒ NO

HAVE YOU EVER BEEN REFUSED OR DO YOU BELIEVE YOU MIGHT BE REJECTED FOR BONDING?

ARE YOU A U.S. CITIZEN? IF NO, WHAT IS YOUR CURRENT STATUS? | EXPIRATION DATE (IF ANY):

IF CURRENTLY EMPLOYED, WHY DO YOU WISH TO LEAVE YOUR PRESENT POSITION?

### EDUCATION

| SCHOOL | NAME AND LOCATION OF SCHOOL | COURSE OF STUDY | NO. OF YEARS COMPLETED | DID YOU GRADUATE? | DEGREE OR DIPLOMA |
|---|---|---|---|---|---|
| COLLEGE | | | | ☐ YES ☒ NO | |
| HIGH | | | | ☐ YES ☐ NO | |
| OTHER | | | | ☐ YES ☐ NO | |

LIST OTHER SPECIAL TRAINING RELATED TO THE EMPLOYMENT YOU ARE SEEKING, INCLUDING SPECIAL COURSES AND/OR CERTIFICATES.

### EMPLOYMENT

PLEASE GIVE ACCURATE, COMPLETE FULL-TIME AND PART-TIME EMPLOYMENT RECORD. START WITH PRESENT OR MOST RECENT EMPLOYER

| | |
|---|---|
| COMPANY NAME | TELEPHONE ( ) |
| ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR) FROM        TO |
| NAME OF SUPERVISOR | PAY RATE START        LAST |
| STATE JOB TITLE AND DESCRIBE YOUR WORK | |
| REASON FOR LEAVING: | |

| COMPANY NAME | TELEPHONE |
| --- | --- |
| | ( ) |
| ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR) |
| | FROM                    TO |
| 2  NAME OF SUPERVISOR | PAY RATE |
| | START                   LAST |
| STATE JOB TITLE AND DESCRIBE YOUR WORK | |
| | |
| | |
| REASON FOR LEAVING: | |

| COMPANY NAME | TELEPHONE |
| --- | --- |
| | ( ) |
| ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR) |
| | FROM                    TO |
| 3  NAME OF SUPERVISOR | PAY RATE |
| | START                   LAST |
| STATE JOB TITLE AND DESCRIBE YOUR WORK | |
| | |
| | |
| REASON FOR LEAVING: | |

| COMPANY NAME | TELEPHONE |
| --- | --- |
| | ( ) |
| ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR) |
| | FROM                    TO |
| 4  NAME OF SUPERVISOR | PAY RATE |
| | START                   LAST |
| STATE JOB TITLE AND DESCRIBE YOUR WORK | |
| | |
| | |
| REASON FOR LEAVING: | |

| WE MAY CONTACT THE EMPLOYERS LISTED ABOVE UNLESS YOU INDICATE THOSE YOU DO NOT WANT US TO CONTACT. | DO NOT CONTACT |
| --- | --- |
| | EMPLOYER NUMBER _____   REASON _____ |

IF YOU WERE EMPLOYED UNDER ANOTHER NAME AT ANY OF YOUR PREVIOUS JOBS, PLEASE STATE YOUR NAME AT THE TIME AND FOR WHICH EMPLOYER. _____

PLEASE EXPLAIN ANY PERIODS OF UNEMPLOYMENT OR OTHER PERIODS NOT ACCOUNTED FOR ABOVE. _____

_____

_____

IF EMPLOYED BY THE COMPANY, YOU AGREE TO ABIDE BY ITS RULES AND REGULATIONS. FURTHER, YOU UNDERSTAND THAT THE EMPLOYMENT, WHICH IS ENTERED INTO VOLUNTARILY, IS NOT FOR A STATED PERIOD OF TIME AND YOU ARE FREE TO RESIGN AT ANY TIME. SIMILARLY, THE COMPANY MAY TERMINATE THE EMPLOYMENT RELATIONSHIP WHEN IT BELIEVES IT IS IN THE COMPANY'S BEST INTERESTS. NO MANAGER OR REPRESENTATIVE OF STERLING JEWELERS INC., OTHER THAN THE CHAIRMAN OF THE COMPANY, HAS AUTHORITY TO MAKE ANY AGREEMENT FOR EMPLOYMENT FOR ANY SPECIFIC PERIOD OF TIME OR TO MAKE ANY AGREEMENT CONTRARY TO THE FOREGOING.

IF EMPLOYED BY THE COMPANY, YOU AND THE COMPANY AGREE TO UTILIZE THE COMPANY'S BINDING AND MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROGRAM TO RESOLVE CERTAIN WORKPLACE DISPUTES. BY SIGNING THIS APPLICATION, AND IN EXCHANGE FOR BEING HIRED BY THE COMPANY, YOU KNOWINGLY AND VOLUNTARILY WAIVE YOUR APPLICABLE STATUTORY RIGHTS TO FILE A LAWSUIT AGAINST THE COMPANY FOR A COVERED CLAIM.

BY SIGNING THIS APPLICATION, YOU AUTHORIZE THE COMPANY TO MAKE ANY INVESTIGATION OF EDUCATION, EMPLOYMENT, PERSONAL HISTORY AND FINANCIAL AND CREDIT RECORDS THROUGH INVESTIGATIVE AND CREDIT AGENCIES AND BUREAUS OF THE COMPANY'S CHOICE. THE SIGNATURE ALSO INDICATES AN AWARENESS THAT FALSE STATEMENTS OR FAILURE TO DISCLOSE INFORMATION MAY DISQUALIFY YOU FROM EMPLOYMENT OR, IF EMPLOYED, MAY RESULT IN YOUR DISMISSAL.

SIGNATURE OF APPLICANT _____   DATE _____

STERLING
Jewelers Inc.

0200-200-0000
687452

# Exhibit B

Sterling Jewelers Inc.
# RESOLVE PROGRAM
Alternative Dispute Resolution

## Arbitration Agreement

I hereby agree to utilize the Sterling RESOLVE Program to pursue any dispute, claim, or controversy ("claim") against Sterling, its predecessors, successors, affiliates, parent, subsidiaries, divisions, related companies, current and former directors, officers, shareholders, representatives, employees, insureds, members and servants regarding any alleged unlawful act regarding my employment or the termination of my employment which could have otherwise been brought before an appropriate government administrative agency or in an appropriate court including, but not limited to, claims under the Age Discrimination in Employment Act of 1967; The Older Workers Benefit Protection Act; Title VII of the Civil Rights Act of 1964; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States code; the Employee Retirement income Security Act of 1974; The Immigration Reform and Control Act; the Americans with Disabilities Act of 1990; The Fair Labor Standard Act; The Occupational Safety and Health Act; The Family and Medical Leave Act; any state Human Rights/Civil Rights Statutes; Minimum Wage Act; Equal Pay Law; any other federal, state or municipal civil or human rights law or any other municipal, state or federal law, regulation or ordinance; or any public policy, contract, tort or common law. I understand that by signing this Agreement I am waiving my right to obtain any legal or equitable relief (e.g., monetary, injunctive or reinstatement) through any government agency or court, and I am also waiving my right to commence any court action. I may, however, seek and be awarded equal remedy through the RESOLVE Program. I retain the right to file a charge or complaint with governmental administrative agencies such as the National Labor Relations Board or the Equal Employment Opportunity Commission and to assist or cooperate with such agencies in their investigation or prosecution of charges, although I waive my right to any remedy or relief as a result of such charges or complaints brought by such governmental administrative agencies.

I agree to follow the multi-step process outlined in the RESOLVE Program which culminates in the use of arbitration. In this event the claim shall be arbitrated by one Arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") as amended by the Sterling RESOLVE Program. I understand that I will be required to pay the first $250 of the costs of commencing an arbitration with the AAA and that the remainder of these costs will be paid by Sterling. The decision or award of the Arbitrator shall be final and binding upon the parties. The Arbitrator shall have the power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to, the costs of arbitration, attorney fees and punitive damages for causes of action when such damages are available under law. An arbitration award may be entered as a judgment or order in any court of competent jurisdiction. I agree that any relief or recovery to which I am entitled from any claims

arising out of my employment or cessation of employment shall be limited to that awarded by the Arbitrator.

I understand that this Agreement is being made under the provision of the Federal Arbitration Act (9 U.S.C., Section 1-14) and will be construed and governed accordingly.

I understand that a copy of the RESOLVE Program Guidelines and the AAA Employment Dispute Resolution Rules are available for my review.

I understand that neither the terms nor conditions described in the Agreement are intended to create a contract of employment for a specific duration of time. Since employment with Sterling is voluntarily entered into, I am free to resign at any time. Similarly, Sterling may terminate the employment relationship with me at any time.

This Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Ohio.

If for any reason this Agreement is declared unenforceable, I agree to waive any right I may have to a jury trial with respect to any dispute or claim against Sterling relating to my employment, my termination, or any terms and conditions of my employment with Sterling.

If any term or provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such term or provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

The terms of this Agreement cannot be orally modified. Sterling reserves the right to modify this Agreement, if done so in writing, and only by the Sterling Executive Committee and the employee.

**I understand that I would not be or remain employed by Sterling absent of signing this Agreement.** I have been advised of my right to consult with an attorney of my choice, at my expense, regarding this Agreement. My agreement to accept arbitration can be revoked any time within fourteen (14) days of my signing this Agreement. Such revocation must be made in writing. My revocation of this agreement will result in immediate separation from Sterling. I have had an opportunity to consider this Agreement and have decided to sign knowingly, voluntarily, and free from duress or coercion.

_Lisa McConnell_

Employee Signature

_6/20/01_

Date

_LISA McCONNELL_

Print Name

_1642_

Store Number

SKU # 0269-100-0000
HR - Revision 8/98

Exhibit C

Sterling Jewelers Inc.
RESOLVE Program
Arbitration Rules

## JURISDICTION

The jurisdiction of the Arbitrator shall be limited to complaints regarding alleged unlawful activity relating to employment, which includes unlawful harassment or termination. The arbitrator shall determine whether the conduct complained of constitutes unlawful activity under applicable federal, state or local laws/statues/common law where the dispute arose.

In reaching a decision, the arbitrator may not modify Company rules, policies and procedures.

## ARBITRATOR SELECTION

The first list of available, eligible, and neutral arbitrators shall contain nine (9) names. Each eligible arbitrator must be licensed to practice law in the applicable state of dispute. Each party strikes alternately a name until the arbitrator is chosen. The employee shall strike first. A second list may be requested.

## BURDEN OF PROOF

The burden of proof shall be in accordance with applicable federal, state or local law/statutes/common law. The Federal Rules of Evidence shall apply.

## COURT REPORTER – (STENOGRAPHIC RECORD)

The request for a court reporter during deposition will be approved but must be paid for by the requesting party. The Company will pay for the cost of a court reporter during arbitration, but the requesting party will be responsible for cost of the arbitration transcript.

## INFORMATION EXCHANGE

At least 21 days prior to the arbitration hearing, the parties must submit to the arbitrator and each other a position brief, witness list with brief summary of subject testimony, and all potential hearing exhibits.

## DISCOVERY

The parties may engage in any method of discovery as outlined in the Federal Rules of Civil Procedure (exclusive of Rule 26(a)). Such discovery includes discovery sufficient to arbitrate adequately a claim, including access to essential and relevant documents and witnesses. Discovery disputes are subject to the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Discovery closes 75 calendar days prior to the hearing date unless a showing of good cause to the arbitrator. Any exhibits or witnesses not disclosed prior to the discovery deadline will be excluded from the hearing except upon a showing of good cause to the arbitrator.

## DISPOSITIVE MOTIONS

On or before 70 calendar days prior to the hearing date, either party may file a dispositive motion with the arbitrator pursuant to the Federal Rules of Civil Procedure. The party opposing said Motion must file a response within 14 calendar days. The party filing the dispositive motion will then have 5 calendar days (excluding weekends and holidays) to file a reply. The arbitrator will then draft a written decision concerning whether the motion disposes of the case. That decision will be sent to the parties at least 30 calendar days before the scheduled arbitration and will set forth the factual and legal bases for the decision.

## WITNESSES

Except for good cause, witnesses shall be limited to (5) per party. Non-witnesses are barred from attendance at the arbitration. Witnesses can be sequestered.

## FORM OF AWARD

The arbitrator shall submit to the parties a written award signed by the arbitrator within 30 calendar days of the close of arbitration. The award shall specify the elements of and basis for any award, along with a written opinion, which includes findings of fact and conclusions of law. Damages and the award of attorney fees are not restricted but are to be in compliance with applicable law. If the Arbitrator finds that an adverse employment action was lawful, the arbitrator shall have no authority to reduce the action, or to make decisions based upon alleged "unfairness".

## ARBITRATOR FEES

Arbitrator fees are covered by the employer.

## GENERAL PROVISIONS/AUTHORITY

The parties have the right to be represented by legal counsel. RESOLVE is subject to the Federal Arbitration Act and The National Rules for the Resolution of Employment Disputes of the American Arbitration Association. In the event of a conflict between the RESOLVE Program Arbitration Rules and the AAA Employment Dispute Resolution Rules, RESOLVE Program Arbitration Rules will control. Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator. Likewise, procedural questions, which grow out the dispute and bear on the final disposition, are also matters for the arbitrator. However, where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

# Exhibit D

LAW OFFICES

442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

# BURR & SMITH

LIMITED LIABILITY PARTNERSHIP

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

March 6, 2008

Sterling Jewelers, Inc.                                    **VIA FACSIMILE**
Att: Joseph L. Spagnola
RESOLVE Program Administrator
375 Ghent Road
Akron, OH 44333

Re: Request for RESOLVE Program Rules

Dear Mr. Spagnola:

On behalf of Laryssa Jock, who initiated a claim through Sterling's Resolve
Program on May 2, 2006, please provide any and all applicable documents that provide
the grounds rules for the Resolve Program, Step 1 through Step 3, including, but not
limited to, the specific rules for Step 3 arbitration. Please indicate if the Resolve
documents you provide to us are applicable to all individuals, including Ms. Jock, who
were employed by Sterling Jewelers, Inc. during the period from February 2003 to the
present.

Please send information responsive to this request by facsimile at (813) 254-8391
and/or by electronic mail to ssmith@burrandsmithlaw.com. We appreciate your prompt
attention to this matter.

Sincerely,

Sam J. Smith

cc:    Joseph M. Sellers
       Thomas A. Warren

# Exhibit E



**COHEN MILSTEIN**
HAUSFELD & TOLL ᴾ.ᴸ.ʟ.ᴄ

Joseph M. Sellers
(202) 408-4600
jsellers@cmht.com

March 24, 2008

**VIA OVERNIGHT DELIVERY**

American Arbitration Association
1633 Broadway, 10th Floor
New York, NY 10019

Re:    Sterling Jewelers, Inc.
       Claims of **Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett,**
       **Maria House, Carol King, Denise Maddox, Lisa McConnell, Carolyn**
       **Morse, Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina**
       **Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-**
       **Coons and Marie Wolf**

To Whom It May Concern:

        We represent the women named above ("Charging Parties"), each of whom are current or
former female employees of Sterling Jewelers, Inc. ("Sterling"). Sterling has imposed the
RESOLVE Program, an alternative dispute resolution process, on its employees through which
complaints in connection with employment are to be adjudicated in three stages. The Charging
Parties have each submitted complaints in accordance with the RESOLVE Program alleging a
pattern or practice of sex discrimination in promotion and compensation decisions at Sterling
Jewelers stores in violation of Title VII of the Civil Rights Act of 1964, and 15 of the Charging
Parties have also alleged violations of the Equal Pay Act on behalf of themselves and all other
similarly-situated women.

        After Sterling and the Charging Parties completed the first stage of the RESOLVE
Program, they proceeded with multiple sessions of mediation in an attempt to resolve all of the
claims of the Charging Parties and the classes they seek to represent, thus satisfying the second
stage of the RESOLVE Program. On February 26, 2008, the parties agreed that the mediation
process, which was ongoing for more than a year, had failed. The third stage of the RESOLVE
Program provides for formal arbitration in accordance with AAA's National Rules for the
Resolution of Employment Disputes. In order to initiate this stage, employees are required to
file a RESOLVE Step 3 Form, in addition to the American Arbitration Association Submission
to Dispute Resolution form, within 30 days of the impasse of mediation. Although we have

American Arbitration Association
March 24, 2008
Page 2

requested from Sterling all documents relating to the RESOLVE program, including those necessary to initiate Step 3 arbitration, we have not received them. As such, we are filing the enclosed Demand for Arbitration, obtained via AAA's website, in order to ensure the arbitration is initiated within the required 30 day period following failure of mediation.[1]

Although the RESOLVE Program provides for arbitration of claims not resolved in the earlier stages of the process, we believe that several features of the RESOLVE arbitration program may render it unenforceable. Because it is unclear as to whether the RESOLVE arbitration program is enforceable, Charging Parties have also filed a complaint in the United States District Court for the Southern District of New York. A copy of the Complaint, *Jock, et al. v. Sterling Jewelers, Inc.* (March 18, 2008 S.D.N.Y.), is attached hereto.

In an effort to preserve our clients' rights and prevent any waiver of rights to arbitration, we request that you initiate a class arbitration case for this matter and suspend it while we determine whether the RESOLVE arbitration program is enforceable. Two copies of the Demand Arbitration Agreement documents and Complaint are enclosed. Furthermore, while we maintain that Sterling is required by law and/or the terms of the arbitration agreement to pay all fees and costs associated with arbitration, we are nonetheless including $3250.00, the filing fee required to initiate a class arbitration. We reserve the right to request that Sterling reimburse us for all or part of this fee, and to pay for any future fees or costs associated with this arbitration.

Please do not hesitate to contact me if you need additional information or have any questions regarding this matter.

Very truly yours,

*Jm Sellers /*

*for Sam Smith and Thomas Warren*

Sam J. Smith                    Joseph M. Sellers                    Thomas A. Warren

Enclosures

cc:    Gerald Maatman, Esq.

---

[1] While we are aware that a copy of the arbitration agreement itself must be filed with the demand for arbitration, Sterling has failed to provide us with copies of the arbitration agreements signed by our clients. Nevertheless, in an effort to satisfy this requirement, we have enclosed a sample of Sterling's standard arbitration agreement, which is substantially similar, if not identical, to the one signed by our clients. We are also enclosing a copy of the RESOLVE Program Description.

# Exhibit F

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
*Vice President*
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

April 29, 2008

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

**VIA FACSIMILE AND E-MAIL**

Joseph M. Sellers, Esq.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005

Sam J. Smith, Esq.
Burr & Smith
442 W. Kennedy Boulevard, Suite 300
Tampa, FL  33606

Thomas A. Warren, Esq.
Thomas A. Warren Law Offices, P.L.
2032-D Thomasville Boulevard
Tallahassee, FL  32308

Sahar F. Aziz
Cohen Milstein Hausfeld & Toll PLLC
1100 New York Avenue
Washington, DC  20005

Gerald L. Maatman, Esq.
Seyfarth Shaw, LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL  60603-5577

Stephen S. Zashin, Esq.
Zashin & Rich Co., L.P.A.
55 Public Square, 4th Floor
Cleveland, OH  44113

Re: 11 160 00655 08
    Laryssa Jock, Jacquelyn Boyle, Christy Chadwick,
    Lisa Follett, Maria House, Denise Maddox, Lisa
    McConnell, Gloria Pagan, Judy Reed, Linda Rhodes,
    Khristina Rodrigues, Nina Shahmirzadi, Leighla
    Smith, Dawn Souto-Coons, and Marie Wolf,
    individually and on behalf of all others similarly
    situated
    and
    Sterling Jewelers, Inc.

Dear Counsel:

This will acknowledge receipt of a letter dated April 28, 2008 from Mr. Sellers, a copy of which we note
has been exchanged with the other party.

As indicated in the Association's letter dated April 11, 2008, Claimants have met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or a court order dismissing this matter, the Association will continue to hold this matter in abeyance.

Please do not hesitate to contact me with any questions or concerns.

Sincerely,


Jonathan J. Weed
Case Manager
401 431 4721
WeedJ@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

Exhibit G



131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
fax (312) 460-7000
www.seyfarth.com

Writer's direct phone
(312) 460-5964

Writer's e-mail
gmaatman@seyfarth.com

April 18, 2008

**BY FAX AND REGULAR MAIL**

Joseph M. Sellers
Cohen Milstein Hausfeld & Toll PLLC
1100 New York Ave. NW, Suite 500
Washington, D.C. 20005

Re:  Jock, et al. v. Sterling Jewelers Inc.

Dear Joe:

I am writing in response to your letter of March 24, 2008, and as a result of our subsequent telephone calls.

As Sterling Jewelers Inc. ("Sterling") recently explained to the American Arbitration Association ("AAA"), none of your clients have completed Step 2 of RESOLVE, some have only recently begun Step 1, and some have never initiated a RESOLVE claim. Your clients that have attempted to initiate RESOLVE have already received communications from Sterling advising them of the steps they each must complete to proceed through RESOLVE.

It is Sterling's position that your clients are not free to abandon these preliminary steps in RESOLVE and proceed immediately to arbitration or court merely because they may believe – in the words of your letter – that "no further purpose would be served" by completing the RESOLVE requirements.

Your statement that RESOLVE is supposedly unenforceable because it "cost[s] more to a plaintiff than the cost of proceeding in a judicial forum" is inaccurate. RESOLVE does not impose a financial burden upon a claimant that is any greater than the financial burdens of a judicial proceeding. Your clients must pay a nominal filing fee, if any, to initiate arbitration had they simply complied with the RESOLVE program rules. Step 3 of RESOLVE occurs not by filing a demand directly with the AAA, but by submitting a completed Step 3 Claim Form along with a completed arbitration demand form directly to the RESOLVE Administrator. The RESOLVE Program Administrator then submits this completed paperwork directly to the AAA along with any required filing fee. Had your clients not abandoned the RESOLVE process, your clients would have received this information at the time they received their respective Step 2 determinations.

BRUSSELS  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA



The expenses to which you refer in your letter are not relevant to these issues. Nonetheless, Sterling will write to the AAA and request that it refund any money paid by your clients with respect to the initiation of the arbitration, given that the initiation of the arbitration was premature and not in compliance with the RESOLVE program.

Finally, with respect to the final point in your letter, RESOLVE provides that an arbitrator is free to award any relief that a claimant could achieve in a court of law. Specifically, RESOLVE provides that "[t]he Arbitrator shall have the power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to, the costs of arbitration, attorney fees and punitive damages for causes of action when such damages are available under law" (emphasis added). As a result, your statement that RESOLVE is unconscionable because it restricts the discretion of the arbitrator is contradicted by the terms of the RESOLVE Program.

Please advise me if you have any questions concerning any of the foregoing.

Very truly yours,

SEYFARTH SHAW LLP

Gerald L. Maatman, Jr.

GLM:hla

cc:     Sam Smith / Burr & Smith
        Thomas Warren / Law Offices of Thomas Warren
        Sterling Jewelers Inc.

CHI 11461445.2

# Exhibit H

# THE RESOLVE PROGRAM
## Alternative Dispute Resolution (ADR)

April 1, 2008                                                    Via Fascimile and US Mail

Joseph M. Sellers, Esq.
Cohen, Milstein, Hausfeld & Toll, PLLC
1100 New York Ave., N.W.
Suite 500, West Tower
Washington, D.C. 20005

    **RE:   Claims of Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett,
        Maria House, Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse,
        Gloria Pagan, Judy Reed, Linda Rhodes, Kristina Rodriguez, Nina
        Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-
        Coons and Marie Wolf**

Dear Mr. Sellers:

Thank you for your letter of March 19, 2008. However, Sterling respectfully disagrees with the contentions in your letter.

First, the private mediation took place outside of RESOLVE. That private mediation process did not replace the Step 2 requirements of RESOLVE. In fact, in conjunction with that private mediation, the parties entered into a tolling agreement to suspend all dates of the RESOLVE Program. As a result, Sterling does not agree with your contention that the private mediation process "replaced" any part of the RESOLVE Program. You reviewed and signed the tolling agreement and are fully familiar with its terms including page 2, item 1.

Second, Sterling disagrees with your contention that RESOLVE is unenforceable. The issues raised in your letter (i.e., the cost of arbitration and the arbitrator's authority) are in direct contradiction to the RESOLVE Program itself. RESOLVE has a nominal filing fee and the arbitrator is free to make any award that comports with applicable law. You have misrepresented the program details and obviously did not fully read the materials supplied to you. Further, courts throughout the country have enforced RESOLVE.

Third, your letter stands in direct contradiction to the letters sent by your co-counsel Sam Smith dated March 12, March 18 and March 19, 2008. In those letters, Mr. Smith has just now filed Step 1 claim forms on behalf of Lisa McConnell, Nina Shahmirzadi, Sharon Scroggins, Gloria Pagan and Denise Maddox. In those letters, Mr. Smith states that "[t]o the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program...we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program."

Sam J. Smith
April 1, 2008
Page 2 of 2


        Finally, Sterling rejects your contention that your above named clients can "elect"
to prosecute their claims in a judicial forum.  Nevertheless, Sterling received your letter
from Mr. Smith and therefore, Sterling considers your letter a waiver of any rights set
forth in RESOLVE by your above mentioned clients.

        If you have any questions concerning the foregoing, please do not hesitate to
contact me.

                        Very truly yours,

                        *Joseph J. Spagnola*

                        **Joseph Spagnola**
                        **Manager, RESOLVE Program**

Search ®
Checkout ®

ABOUT US          DISPUTE RESOLUTION SERVICES          FILE A CASE          EDUCATION          NEUTRALS

CONTACT US
PRINT VERSION

## Supplementary Rules for Class ARBITRATIONS
Effective Date October 8, 2003

1. Applicability
2. Class Arbitration Roster and Number of Arbitrators
3. Construction of the Arbitration Clause
4. Class Certification
5. Class Determination Award
6. Notice of Class Determination
7. Final Award
8. Settlement, Voluntary Dismissal, or Compromise
9. Confidentiality; Class Arbitration Docket
10. Form and Publication of Awards
11. Administrative Fees and Suspension for Nonpayment
12. Applications to Court and Exclusion of Liablility

### 1. Applicability

(a) These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that
provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute
to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These
Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or
when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

(b) Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary
Rules will govern. The arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and
these Supplementary Rules, and in doing so shall endeavor to avoid any prejudice to the interests of absent members of a class or
purported class.

(c) Whenever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these
Supplementary Rules, the arbitrator shall follow the order of the court.

### 2. Class Arbitration Roster and Number of Arbitrators

(a) In any arbitration conducted pursuant to these Supplementary Rules, at least one of the arbitrators shall be appointed from the AAA's
national roster of class arbitration arbitrators.

(b) If the parties cannot agree upon the number of arbitrators to be appointed, the dispute shall be heard by a sole arbitrator unless the AAA,
in its discretion, directs that three arbitrators be appointed. As used in these Supplementary Rules, the term "arbitrator" includes
both one and three arbitrators.

### 3. Construction of the Arbitration Clause

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration
clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction

# Exhibit I

Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

4. Class Certification

(a) Prerequisites to a Class Arbitration

If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration. For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration. In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described. The arbitrator shall permit a representative to do so only if each of the following conditions is met:

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class;

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.

(b) Class Arbitrations Maintainable

An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and

(4) the difficulties likely to be encountered in the management of a class arbitration.

5. Class Determination Award

(a) The arbitrator's determination concerning whether an arbitration should proceed as a class arbitration shall be set forth in a reasoned, partial final award (the "Class Determination Award"), which shall address each of the matters set forth in Rule 4.

(b) A Class Determination Award certifying a class arbitration shall define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses. A copy of the proposed Notice of Class Determination (see Rule 6), specifying the intended mode of delivery of the Notice to the class members, shall be attached to the award.

(c) The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration. If an arbitrator concludes that some exceptional circumstance, such as the need to resolve claims seeking injunctive relief or claims to a limited fund, makes it inappropriate to allow class members to request exclusion, the Class Determination Award shall explain the reasons for that conclusion.

(d) The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Class Determination Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Class Determination Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

(e) A Class Determination Award may be altered or amended by the arbitrator before a final award is rendered.

6. Notice of Class Determination

(a) In any arbitration administered under these Supplementary Rules, the arbitrator shall, after expiration of the stay following the Class Determination Award, direct that class members be provided the best notice practicable under the circumstances (the "Notice of Class Determination"). The Notice of Class Determination shall be given to all members who can be identified through reasonable effort.

(b) The Notice of Class Determination must concisely and clearly state in plain, easily understood language:

(1) the nature of the action;

(2) the definition of the class certified;

(3) the class claims, issues, or defenses;

(4) that a class member may enter an appearance through counsel if the member so desires, and that any class member may attend the hearings;

(5) that the arbitrator will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded;

(6) the binding effect of a class judgment on class members;

(7) the identity and biographical information about the arbitrator, the class representative(s) and class counsel that have been approved by the arbitrator to represent the class; and

(8) how and to whom a class member may communicate about the class arbitration, including information about the AAA Class Arbitration Docket (see Rule 9).

7. Final Award

The final award on the merits in a class arbitration, whether or not favorable to the class, shall be reasoned and shall define the class with specificity. The final award shall also specify or describe those to whom the notice provided in Rule 6 was directed, those the arbitrator finds to be members of the class, and those who have elected to opt out of the class.

8. Settlement, Voluntary Dismissal, or Compromise

(a) (1) Any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of an arbitration filed as a class arbitration shall not be effective unless approved by the arbitrator.

(2) The arbitrator must direct that notice be provided in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(3) The arbitrator may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(b) The parties seeking approval of a settlement, voluntary dismissal, or compromise under this Rule must submit to the arbitrator any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(c) The arbitrator may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(d) Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires approval under this Rule. Such an objection may be withdrawn only with the approval of the arbitrator.

9. Confidentiality; Class Arbitration Docket

(a) The presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations. All class arbitration hearings and filings may be made public, subject to the authority of the arbitrator to provide otherwise in special circumstances. However, in no event shall class members, or their individual counsel, if any, be excluded from the arbitration hearings.

(b) The AAA shall maintain on its Web site a Class Arbitration Docket o f arbitrations filed as class arbitrations. The Class Arbitration Docket will provide certain information about the arbitration to the extent known to the AAA, including:

(1) a copy of the demand for arbitration;

(2) the identities of the parties;

(3) the names and contact information of counsel for each party;

(4) a list of awards made in the arbitration by the arbitrator; and

(5) the date, time and place of any scheduled hearings.

10. Form and Publication of Awards

(a) Any award rendered under these Supplementary Rules shall be in writing, shall be signed by the arbitrator or a majority of the arbitrators, and shall provide reasons for the award.

(b) All awards rendered under these Supplementary Rules shall be publicly available, on a cost basis.

11. Administrative Fees and Suspension for Nonpayment

(a) A preliminary filing fee of $3,250 is payable in full by a party making a demand for treatment of a claim, counterclaim, or additional claim as a class arbitration. The preliminary filing fee shall cover all AAA administrative fees through the rendering of the Clause Construction Award. If the arbitrator determines that the arbitration shall proceed beyond the Clause Construction Award, a supplemental filing fee shall be paid by the requesting party. The supplemental filing fee shall be calculated based on the amount claimed in the class arbitration and in accordance with the fee schedule contained in the AAA's Commercial Arbitration Rules.

(b) Disputes regarding the parties' obligation to pay administrative fees or arbitrator's compensation pursuant to applicable law or the parties' agreement may be determined by the arbitrator. Upon the joint application of the parties, however, an arbitrator other than the arbitrator appointed to decide the merits of the arbitration, shall be appointed by the AAA to render a partial final award solely related to any disputes regarding the parties' obligations to pay administrative fees or arbitrator's compensation.

(c) If an invoice for arbitrator compensation or administrative charges has not been paid in full, the AAA may so inform the parties in order that one of them may advance the required deposit. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

(d) If an arbitration conducted pursuant to these Supplementary Rules is suspended for nonpayment, a notice that the case has been

suspended shall be published on the AAA's Class Arbitration Docket.

12. Applications to Court and Exclusion of Liability

(a) No judicial proceeding initiated by a party relating to a class arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a class arbitration or potential class arbitration under these Supplementary Rules is a necessary or proper party in or to judicial proceedings relating to the arbitration. It is the policy of the AAA to comply with any order of a court directed to the parties to an arbitration or with respect to the conduct of an arbitration, whether or not the AAA is named as a party to the judicial proceeding in which the order is issued.

(c) Parties to a class arbitration under these Supplementary Rules shall be deemed to have consented that judgment upon each of the awards rendered in the arbitration may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these Supplementary Rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action seeking damages or injunctive relief for any act or omission in connection with any arbitration under these Supplementary Rules.

FILE A CASE    CONTACT US

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED