UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

**LARYSSA JOCK, et al.,**
                    Plaintiffs,

        v.

**STERLING JEWELERS INC.,**
                    Defendant.

-------------------------------------------------------- x

Index No. 1:08 CV 2875 (JSR)

U.S. District Judge Jed S. Rakoff

**ANSWER, AFFIRMATIVE DEFENSES,
AND COUNTERCLAIM OF
DEFENDANT STERLING JEWELERS
INC.**

### ANSWER

Defendant Sterling Jewelers Inc., improperly named in the caption as "Sterling Jewelers, Inc." ("Sterling"), for its Answer to Plaintiffs' First Amended Complaint, states as follows:

### Answer To "Introduction"

1.      Sterling denies the allegations in paragraph 1 of the Complaint, but admits that it operates more than 1,300 retail stores in all fifty states under at least 12 retail brand names.

2.      Sterling denies the allegations in paragraph 2 of the Complaint.

3.      Sterling denies that it violated any federal, state or local laws or ordinances. Sterling denies the remaining allegations in paragraph 3 of the Complaint, except admits that Plaintiffs purport to bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, the Equal Pay Act, 29 U.S.C. § 206, and 29 U.S.C. § 216(b).

### Answer To "Jurisdiction, Venue And Exhaustion Of Remedies"

4.      Sterling denies that it violated any federal, state or local laws or ordinances. Sterling further denies the remaining allegations in paragraph 4 of the Complaint, except admits that Plaintiffs purport to bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. §1981a, and the Equal Pay Act, 29 U.S.C. § 206. Sterling further admits that this Court has jurisdiction only for the purpose

1

of determining the claims identified in the First, Second, and Third Causes Of Action of Sterling's Counterclaim.

5.    Sterling denies the allegations in paragraph 5 of the Complaint, except admits that it operates stores within the state of New York and within this Court's territorial jurisdiction. Sterling further admits that venue is proper in this Court only for the purpose of determining the claims identified in the First, Second, and Third Causes Of Action of Sterling's Counterclaim.

6.    Sterling denies the allegations in paragraph 6 of the Complaint, except admits that the named Plaintiffs, except for Kelly Contreras, filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"); that the EEOC issued a determination letter on January 3, 2008; that Plaintiffs attached a copy of the EEOC's January 3, 2008 determination letter as Exhibit 1 to the Complaint; that the EEOC's January 3, 2008 determination letter speaks for itself; and that the EEOC issued notice of right to sue letters dated March 18, 2008, for the named Plaintiffs, except Kelly Contreras.

7.    Sterling denies the allegations in paragraph 7 of the Complaint, except admits only that agreements exist between Sterling and its employees to use an alternative dispute resolution program called RESOLVE to resolve disputes between them; that employees are required to file a claim form in order to initiate that program; and that Plaintiffs Laryssa Jock, Jacquelyn Boyle, Lisa Follett, Judy Reed, Dawn Souto-Coons and Maria Wolf filed Complaint forms with the RESOLVE Program Administrator.

8.    Sterling denies the allegations in paragraph 8 of the Complaint.

9.    Sterling denies the allegations in paragraph 9 of the Complaint, except admits only that the third stage of RESOLVE provides for binding arbitration in accordance with the rules set forth by the American Arbitration Association, as modified by the RESOLVE program.

10.    Sterling admits the allegations contained in Paragraph 10 of the Complaint.

## Answer To "Parties"

11.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 11 of the Complaint, except admits only that it has employed Plaintiff Laryssa Jock since May 15, 1995; and that Jock has worked at a Belden Jewelers in Massena, New York.

12.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 12 of the Complaint, except admits only that it employed Plaintiff Jacqueline Boyle between September 19, 2004, and March 27, 2005, as a seasonal sales associate; that it employed Boyle between March 27, 2005, and October 12, 2005 as a full-time sales associate; and that at all times, Boyle worked for Sterling at a Jared store in Brandon, Florida.

13.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 13 of the Complaint, except admits only that it employed Plaintiff Christy Chadwick between October 25, 2005, and May 20, 2006; and that Chadwick worked at a Belden Jewelers store in Massena, New York.

14.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 14 of the Complaint, except admits only that Plaintiff Kelly Contreras worked for Sterling between March 20, 1995, and June 20, 2005; that Contreras worked as an assistant manager at a Goodman Jewelers store in Madison, Wisconsin; that Contreras worked as a store manager at Goodman Jewelers store in St. Cloud, Minnesota, and Burnsville, Minnesota; that Contreras worked as a store manager at an Osterman Jewelers store in Loveland, Ohio; and that Contreras worked as a District Manager in the Dayton, Ohio area.

15.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 15 of the Complaint, except admits only that it employed Plaintiff Lisa Follett between October 25, 2004, and June 17, 2005; and that Follett worked at a Belden Jewelers store in Massena, New York.

16.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 16 of the Complaint, except admits only that it employed Plaintiff Maria House between June 13, 2005, and October 17, 2006; and that House worked at a Kay Jewelers store in Bakersfield, California.

17.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 17 of the Complaint, except admits only that it employed Plaintiff Denise Maddox between October 5, 1997 and December 30, 1997, and again between January 21, 1998 and November 1, 2006; that Maddox worked as a sales associate and a diamond department manager at a Jared store in Englewood, Colorado; that Maddox worked as a sales associate and diamond department manager at a Jared store in Westminster, Colorado; that Maddox worked as an assistant manager at a Jared store in Roseville, California; that Maddox worked as an assistant manager at a Jared store in Lakewood, Colorado; and that Maddox worked as a store manager at a Jared store in Dallas, Texas.

18.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 18 of the Complaint, except admits only that it employed Plaintiff Lisa McConnell between June 29, 2001, and August 30, 2006; and that McConnell was at various times a seasonal sales associate, full-time sales associate, assistant manager, and manager at a Kay Jewelers store in Elkhart, Indiana.

19.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 19 of the Complaint, except admits only that it employed Plaintiff Gloria Pagan between August 9, 2005, and December 27, 2005; and that Pagan worked as a sales associate at a JB Robinson Jewelers store in St. Peters, Missouri.

20.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 20 of the Complaint, except admits only that it has employed Plaintiff Judy Reed since October 1, 2000; and that Reed has worked at a Jared store in Tampa, Florida, and Appleton, Wisconsin.

21.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 21 of the Complaint, except admits only that it employed Plaintiff Linda Rhodes between November 1, 2005, and November 14, 2006; and that Rhodes worked at a Belden Jewelers store in Massena, New York.

22.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 22 of the Complaint, except admits only that it employed Plaintiff Khristina Rodrigues between November 26, 2001 and May 31, 2003; that it rehired Rodrigues on June 18, 2004; that Rodrigues has worked for Sterling as a sales associate and assistant manager; and that Rodrigues has worked at a Kay Jewelers store in Swansea, Massachusetts, and Taunton, Massachusetts.

23.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 23 of the Complaint, except admits only that it employed Plaintiff Nina Shahmirzadi within the time period between October 1997 and November 2006; and that Shahmirzadi worked at a Jared store and a Kay Jewelers store in Henderson, Nevada..

24.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 24 of the Complaint, except admits only that it employed Plaintiff Leighla Smith between July 25, 2004, and September 10, 2005; and that Smith worked at a Kay Jewelers store in Cupertino, California, and Burlington, New Jersey.

25.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 25 of the Complaint, except admits only that it employed Plaintiff Dawn Souto-Coons between September 11, 1991, and May 27, 2005; and that Souto-Coons worked at a JB Robinson Jewelers store in Brandon, Florida; Gaithersburg, Maryland; and Waldorf, Maryland.

26.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 26 of the Complaint, except admits only that it has employed Plaintiff Marie Wolf since April 14, 2002; and that Wolf has worked at a Jared store in Brandon, Florida.

27.    Sterling admits the allegations in paragraph 27 of the Complaint.

### Answer To "Company Wide Practices Challenged"

28.    Sterling denies the allegations in paragraph 28 of the Complaint.

29.    Sterling denies the allegations in paragraph 29 of the Complaint.

30.    Sterling denies the allegations in paragraph 30 of the Complaint, except admits the EEOC issued a determination letter on January 3, 2008; that Plaintiffs attached a copy of the EEOC's January 3, 2008 determination letter as Exhibit 1 to the Complaint; and that the EEOC's January 3, 2008 determination letter speaks for itself.

31.    Sterling denies the allegations in paragraph 31 of the Complaint.

32.    Paragraph 32 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 32 of the Complaint, including every allegation in every subparagraph of paragraph 32.

33.    Paragraph 33 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 33 of the Complaint, including every allegation in every subparagraph of paragraph 33.

34.    Sterling denies the allegations in paragraph 34 of the Complaint.

35.    Paragraph 35 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 35 of the Complaint, including every allegation in every subparagraph of paragraph 35.

36.    Paragraph 36 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 36 of the Complaint.

37.    Paragraph 37 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 37 of the Complaint.

38.    Sterling denies the allegations in paragraph 38 of the Complaint.

39.    Sterling denies the allegations in paragraph 39 of the Complaint.

40.    Sterling denies the allegations in paragraph 40 of the Complaint, except admits only that the position of "sales associate" is an entry level position; that assistant manager is the entry level management position within a store; and that store manager is the highest level of management within a store.

41.    Sterling denies the allegations in paragraph 41 of the Complaint, except admits only that district mangers supervise operations at several stores within a district; and that regional vice presidents oversee the operations of stores located in multiple districts.

42.    Sterling denies the allegations in paragraph 42 of the Complaint.

43.    Sterling denies the allegations in paragraph 43 of the Complaint, except admits only that some of its employees have transferred between Sterling stores.

### Answer To "Collective Action Allegations"

44.    Sterling denies that it violated any federal, state or local laws or ordinances. Sterling denies the remaining allegations in paragraph 44 of the Complaint, except admits only that Plaintiffs purport to bring the Equal Pay Act claim pursuant to 29 U.S.C. §§ 206(d), *et seq.*

45.    Paragraph 45 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 45 of the Complaint.

### Answer To "Class Action Allegations"

46.    Sterling denies that it violated any federal, state or local laws or ordinances, and further denies that certification of a class pursuant to Fed. R. Civ. P. 23, or any other rule, statute, or law is appropriate. Sterling denies the remaining allegations in paragraph 46 of the Complaint, except admits only that Plaintiffs purport to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.*, and that they seek certification of a class pursuant to Fed. R. Civ. P. 23.

47.    Paragraph 47 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 47 of the Complaint.

48.     Paragraph 48 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 48 of the Complaint.

49.     Paragraph 49 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 49 of the Complaint.

50.     Paragraph 50 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 50 of the Complaint, including every allegation in every subparagraph of paragraph 50.

51.     Paragraph 51 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 51 of the Complaint.

52.     Paragraph 52 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 52 of the Complaint.

53.     Paragraph 53 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 53 of the Complaint.

54.     Paragraph 54 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 54 of the Complaint.

## Answer To "Allegations Of Named Plaintiffs"

55.    Sterling denies the allegations in paragraph 55 of the Complaint, except admits only that it hired Plaintiff Laryssa Jock on May 15, 1995 and that Sterling currently employs Jock.

56.    Sterling denies the allegations in paragraph 56 of the Complaint, except admits only that Jock's initial position was as a part-time sales associate at a Kay Jewelers store in Massena, New York.

57.    Sterling denies the allegations in paragraph 57 of the Complaint, except admits only that Sterling promoted Jock to a full-time sales associate position in October of 1995.

58.    Sterling denies the allegations in paragraph 58 of the Complaint, except admits only that Sterling promoted Jock to an Assistant Manager position on October 13, 1996; and that Jock was demoted to a full-time sales associate position on February 9, 1997 at a Kay Jewelers store in Massena, New York.

59.    Sterling denies the allegations in paragraph 59 of the Complaint.

60.    Sterling denies the allegations in paragraph 60 of the Complaint.

61.    Sterling denies the allegations in paragraph 61 of the Complaint, except admits only that it transferred Jock to a Belden Jewelers store in Massena, New York on October 18, 1998; and that Jock was a sales associate before and after her transfer.

62.    Sterling denies the allegations in Paragraph 62 of the Complaint.

63.    Sterling admits the allegations in Paragraph 63 of the Complaint.

64.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 64 of the Complaint.

65.    Paragraph 65 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 65 of the Complaint.

66.    Sterling denies the allegations in Paragraph 66 of the Complaint, except admits only that it hired Troy Lawler on March 14, 2005, to work in a Belden Jewelers store in Massena, New York; that Lawler has worked for Sterling as a sales associate; and that Lawler's initial base rate of compensation was $8.75 per hour.

67.    Sterling denies the allegations in Paragraph 67 of the Complaint, except admits only that as of March 14, 2005, Jock had worked for Sterling since May 15, 1995.

68.    Paragraph 68 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 68 of the Complaint.

69.    Paragraph 69 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 69 of the Complaint, except admits only that on or about May 18, 2005, Jock filed a charge with the EEOC.

70.    For lack of knowledge or information sufficient to form a belief as to its truth, Sterling denies the allegation in paragraph 70 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

71.    Sterling denies the allegations in Paragraph 71 of the Complaint, except admits only that Sterling hired Plaintiff Jacqueline Boyle in September 2004 as a seasonal sales associate; and that Boyle worked at a Jared store in Brandon, Florida until October 12, 2005.

72.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 72 of the Complaint.

73.    Sterling denies the allegations in paragraph 73 of the Complaint, except admits only that it hired Boyle on September 2004, as a seasonal sales associate; and that Boyle's initial base rate of compensation was $9.50 per hour.

74.    Sterling denies the allegations in paragraph 74 of the Complaint, except admits only that on March 27, 2005, Boyle became a full-time employee; and that Boyle's base rate of compensation at that time was $10.25 per hour.

75.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 75 of the Complaint.

76.    Paragraph 76 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 76 of the Complaint.

77.    Paragraph 77 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, for lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 77 of the Complaint, except admits only that it hired Grant Laing as a sales associate in August of 2004; that it hired Alan Mong as a sales associate in July of 2004; that it hired Michael Duggan as a sales associate in May of 2005; and that Duggan's initial base rate of compensation was $11.50 per hour.

78.    Paragraph 78 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 78 of the Complaint.

79.    Paragraph 79 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 79 of the Complaint.

80.    Sterling denies the allegations contained in paragraph 80 of the Complaint.

81.    Paragraph 81 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, for lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 81 of the Complaint.

82.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 82 of the Complaint.

83.    Paragraph 83 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 83 of the Complaint, except admits only that on or about May 18, 2005, Boyle filed a charge with the EEOC.

84.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 84 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

85.    Sterling denies the allegations in paragraph 85 of the Complaint, except admits only that it employed Plaintiff Christy Chadwick from October 25, 2005 until May 20, 2006.

86.    Sterling denies the allegations in paragraph 86 of the Complaint, except admits only that Chadwick's position was as a sales associate; that Chadwick worked at a Belden Jewelers store in Massena, New York; and that from October 25, 2005, to January 27, 2006, Chadwick was employed as a seasonal employee.

87.    Sterling denies the allegations in paragraph 87 of the Complaint.

88.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 88 of the Complaint, except admits only that it hired Troy Lawler on March 14, 2005, to work in a Belden Jewelers store in Massena, New York; and that Lawler is male.

89.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 89 of the Complaint, except admits only that it hired Lawler on March 14, 2005; and that Lawler's initial base rate of compensation was $8.75 per hour.

90.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 90 of the Complaint, except admits only that Chadwick's initial base rate of compensation was $7.00 per hour.

91.    Sterling denies the allegations in paragraph 91 of the Complaint.

92.    Paragraph 92 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 92 of the Complaint.

93.    Paragraph 93 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 93 of the Complaint, except admits only that on or about April 24, 2006, Chadwick filed a charge with the EEOC.

94.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 94 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

95.    Sterling denies the allegations in paragraph 95 of the Complaint, except admits only that Plaintiff Kelly Contreras worked for Sterling between March 20, 1995, and June 20, 2005.

96.    Sterling denies the allegations in paragraph 96 of the Complaint, except admits only that Contreras was hired to work as an assistant manager at a Goodman Jewelers store in Madison, Wisconsin.

97.    Sterling denies the allegations in paragraph 97 of the Complaint, except admits only that on February 6, 1994, Contreras began working as a store manager at Goodman Jewelers store in St. Cloud, Minnesota; and that on August 23, 1996, Contreras transferred to the position of store manager at a Goodman Jewelers store in Burnsville, Minnesota.

98.    Sterling denies the allegations in paragraph 98 of the Complaint, except admits only that on March 12, 1997, Contreras transferred to the position of store manager at an Osterman Jewelers store in Loveland, Ohio.

99.    Sterling denies the allegations in paragraph 99 of the Complaint, except admits only that on February 15, 1998, Contreras began working as a district manager for the district including the Dayton, Ohio, metropolitan area; that the specific stores under Contreras's supervision were realigned each year; and that the stores under Contreras's supervision included stores under the Kay Jewelers and Osterman Jewelers brands.

100.    Sterling admits the allegations in paragraph 100 of the Complaint.

101.    For lack of knowledge or information concerning their truth, Sterling denies the allegations in paragraph 101 of the Complaint.

102.    Sterling denies that Contreras ever received any awards during her service as district manager.  For lack of knowledge or information concerning their truth, Sterling denies the remaining allegations in paragraph 102 of the Complaint.

103.    Sterling denies that Contreras ever received any awards or was nominated for any awards during her service as district manager.  For lack of knowledge or information concerning their truth, Sterling denies the remaining allegations in paragraph 103 of the Complaint.

104.    Paragraph 104 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 104 of the Complaint.

105.    Sterling denies the allegations in paragraph 105 of the Complaint, except admits only that in 1995, Contreras worked as a store manager.

106.    Sterling denies the allegations in paragraph 106 of the Complaint, except admits only that in 1998, Contreras began working as a district manager.

107.    Paragraph 107 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 107 of the Complaint.

108.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 108 of the Complaint.

109.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 109 of the Complaint.

110.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 110 of the Complaint.

111.    Sterling denies the allegations contained in paragraph 111 of the Complaint.

112.    Sterling denies the allegations contained in paragraph 112 of the Complaint.

113.    Sterling denies the allegations contained in paragraph 113 of the Complaint.

114.    Sterling denies the allegations in paragraph 114 of the Complaint, except admits only that it employed Plaintiff Lisa Follett between October 25, 2004, and June 17, 2005.

115.    Sterling denies the allegations in paragraph 115 of the Complaint, except admits only that Follett was employed as a seasonal sales associate between October 25, 2004, and April 22, 2005; that Follett was employed as a part-time sales associate between April 22, 2005, and June 17, 2005, and that Follett worked at a Belden Jewelers store in Massena, New York.

116.    Sterling denies the allegations in paragraph 116 of the Complaint.

117.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 117 of the Complaint, except admits only that it hired Troy Lawler on March 14, 2005, to work in a Belden Jewelers store in Massena, New York; and that Lawler is male.

118.    Sterling admits the allegations in paragraph 118 of the Complaint.

119.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 119 of the Complaint.

120.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 120 of the Complaint.

121.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 121 of the Complaint.

122.    Sterling denies the allegations contained in paragraph 122 of the Complaint.

123.    Sterling denies the allegations contained in paragraph 123 of the Complaint.

124.    Sterling denies the allegations contained in paragraph 124 of the Complaint.

125.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 125 of the Complaint, except admits only that it hired Lawler on March 14, 2005; and that Lawler's initial base rate of compensation was $8.75 per hour.

126.    Sterling denies the allegations in paragraph 126 of the Complaint, except admits only that Lawler's initial base rate of compensation was $8.75 per hour; and that Follett's initial base rate of compensation was $7.50 per hour.

127.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 127 of the Complaint.

128.    Paragraph 128 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 128 of the Complaint.

129.    Paragraph 129 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 129 of the Complaint, except admits only that on or about February 8, 2006, Follett filed a charge with the EEOC.

130.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 130 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

131.    Sterling denies the allegations in paragraph 131 of the Complaint, except admits only that it employed Plaintiff Maria House between June 13, 2005 and October 17, 2006.

132.    Sterling denies the allegations in paragraph 132 of the Complaint, except admits only that it employed House as a sales associate and that House's initial base rate of compensation was $12.50 per hour.

133.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 133 of the Complaint.

134.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 134 of the Complaint.

135.    Sterling denies the allegations in paragraph 135 of the Complaint.

136.    Sterling denies the allegations in paragraph 136 of the Complaint.

137.    Sterling denies the allegations in paragraph 137 of the Complaint, except admits only that House was not selected for an assistant manager position in 2005.

138.    Sterling denies the allegations in paragraph 138 of the Complaint, except admits only that Shaun McCullough was selected for an assistant manager position in 2005.

139.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 139 of the Complaint.

140.    Sterling denies the allegations contained in paragraph 140 of the Complaint.

141.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies that House was the highest sales producer in her district in 2006.  Sterling denies the remaining allegations in paragraph 141 of the Complaint.

142.    Sterling denies the allegations in paragraph 142 of the Complaint.

143.    Sterling denies the allegations in paragraph 143 of the Complaint, except admits only that President's Club recognizes sales associates throughout the country with significant sales.

144.    Sterling denies the allegations in paragraph 144 of the Complaint.

145.    Sterling denies the allegations in paragraph 145 of the Complaint.

146.    Sterling denies the allegations in paragraph 146 of the Complaint.

147.    Sterling denies the allegations in paragraph 147 of the Complaint, except admits only that there was a vacancy in the position of store manager at a Kay Jewelers store in Bakersfield, California in May of 2006; that this vacancy was filled by Ben Fox; and that Fox is male.

148.    Sterling denies the allegations contained in paragraph 148 of the Complaint.

149.    Sterling denies the allegations contained in paragraph 149 of the Complaint.

150.    Paragraph 151 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 150 of the Complaint.

151.    Paragraph 151 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations contained in paragraph 151 of the Complaint.

152.    Paragraph 152 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations contained in paragraph 152 of the Complaint.

153.    Sterling denies the allegations contained in paragraph 153 of the Complaint, except admits only that on February 28, 2006, April 28, 2006, and September 26, 2006, House spoke with employees of Sterling's Employee Relations Department.

154.    Sterling denies the allegations contained in paragraph 154 of the Complaint.

155.    Paragraph 155 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 155 of the Complaint, except admits only that on or about October 10, 2006, House filed a charge with the EEOC.

156.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 156 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

157.    Sterling denies the allegations in paragraph 157 of the Complaint, except admits only that it employed Plaintiff Denise Maddox between October 5, 1997 and December 30, 1997, and January 21, 1998 and October 31, 2006.

158.    Sterling admits the allegations in paragraph 158 of the Complaint.

159.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies that Maddox was the highest performing sales person in her store. Sterling denies the remaining allegations in paragraph 159 of the Complaint

160.    Sterling admits the allegations in Paragraph 160 of the Complaint.

161.    Sterling denies the allegations in paragraph 161 of the Complaint, except admits only that on March 10, 2002, Souto-Coons began working as a diamond department manager at a Jared store in Englewood, Colorado.

162.    Sterling denies the allegations in paragraph 162 of the Complaint, except admits only that that Maddox worked as an assistant manager at a Jared store in Roseville, California.

163.    Sterling denies the allegations in paragraph 163 of the Complaint, except admits only that in August 2003, Maddox transferred from an assistant manager position at a Jared in Roseville, California, to a sales associate position at a Jared store in Englewood, Colorado.

164.    Sterling denies the allegations in paragraph 164 of the Complaint, except admit that Maddox was promoted to assistant manager in Lakewood, Colorado in October 2003.

165.    Sterling denies the allegations in paragraph 165 of the Complaint, except admits only that on July 31, 2005, Sterling transferred Maddox to a Jared store in Dallas, Texas; and that on this date, Sterling promoted Maddox to the position of Store Manager.

166.    Sterling admits the allegations in paragraph 166 of the Complaint.

167.    Sterling denies the allegations in paragraph 167 of the Complaint.

168.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 168 of the Complaint.

169.    Sterling denies the allegations in paragraph 169 of the Complaint.

170.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegation in paragraph 170 of the Complaint.

171.    Sterling denies the allegations in paragraph 171 of the Complaint, except admits only that it hired John Costello; and that Costello is male.

172.    Sterling denies the allegations in paragraph 172 of the Complaint.

173.    Sterling denies the allegations in paragraph 173 of the Complaint.

174.    Sterling denies the allegations in paragraph 174 of the Complaint.

175.    Paragraph 175 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 175 of the Complaint.

176.    Sterling denies the allegations in paragraph 176 of the Complaint, except admits only that Maddox's initial base rate of compensation was $8.00 per hour.

177.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 177, except admits only that it has employed Melinda Small.

178.    Paragraph 178 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 178 of the Complaint.

179.    Sterling denies the allegations contained in paragraph 179 of the Complaint.

180.    Paragraph 180 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 180 of the Complaint.

181.    Paragraph 181 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 181 of the Complaint.

182.    Sterling denies the allegations in paragraph 182 of the Complaint.

183.    Paragraph 183 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 183 of the Complaint.

184.    Sterling denies the allegations in paragraph 184 of the Complaint.

185.    Paragraph 185 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 185 of the Complaint.

186.    Sterling denies the allegations in paragraph 186 of the Complaint.

187.    Paragraph 187 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 187 of the Complaint, except admits only that on or about November 15, 2006, Maddox filed a charge with the EEOC.

188.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 188 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

189.    Sterling denies the allegations in paragraph 189 of the Complaint, except admits only that it employed Plaintiff Lisa McConnell between June 29, 2001, and August 31, 2006; and that McConnell's positions were at a Kay Jewelers store in Elkhart, Indiana.

190.    Sterling admits the allegations in paragraph 190 of the Complaint.

191.    Sterling denies the allegations in paragraph 191 of the Complaint, except admits only that in October 2002, McConnell became a full-time sales associate, and that in October 2002, her base rate of compensation became $10.00 per hour.

192.    Sterling denies the allegations contained in paragraph 192 of the Complaint, except admits only that McConnell became a store manager on January 16, 2005; and that McConnell was a member of the President's Club in 2004 and in 2005.

193.    Paragraph 193 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 193 of the Complaint, except admits only that it employed McConnell as an assistant manager; that it has employed Brad Bartl; and that Bartl at one time was employed as a store manager.

194.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 194 of the Complaint, except admits only that it employed McConnell as an assistant manager.

195.    Sterling denies the allegations in paragraph 195 of the Complaint.

196.    Sterling denies that Richard Swiental was less qualified than McConnell.  For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the remaining allegations in paragraph 196 of the Complaint, except admits only that it employed Richard Swiental as an assistant manager; and that Swiental worked at a Kay Jewelers store in Elkhart, Indiana.

197.    Sterling denies the allegations contained in paragraph 197 of the Complaint, except admits only that McConnell began working as a store manager in January of 2005; and that after McConnell began working as a store manager her base salary was $34,000 per year.

198.    Paragraph 198 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 198 of the Complaint.

199.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 199 of the Complaint, except admits only that McConnell received no salary increase in 2006.

200.    Paragraph 200 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 200 of the Complaint.

201.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 201 of the Complaint.

202.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 202 of the Complaint, except admits only that Tim Chmiel was, at one time, a district manager.

203.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 203 of the Complaint.

204.    Sterling denies that McConnell had "strong qualifications."    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the remaining allegations in paragraph 204 of the Complaint.

205.    Sterling denies the allegations in paragraph 205 of the Complaint.

206.    Sterling denies the allegations in paragraph 206 of the Complaint.

207.    Sterling denies the allegations in paragraph 207 of the Complaint.

208.    Paragraph 208 of the Complaint states a legal conclusion to which a responsive pleading is not required.    To the extent that it does, Sterling denies the allegations in paragraph 208 of the Complaint.

209.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 209 of the Complaint.

210.    Sterling denies the allegations in paragraph 210 of the Complaint.

211.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 211 of the Complaint, except admits only that John Braunsdorf was, at one time, a district manager.

212.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 212 of the Complaint.

213.    Sterling denies the allegations in paragraph 213 of the Complaint, except admits only that Swiental filed an internal complaint against McConnell; that, after McConnell learned of Swiental's complaint, McConnell for the first time raised a non-specific allegation that Swiental had engaged in "sexually inappropriate behavior and speech"; that, after an investigation by Sterling in response to Swiental's complaint, McConnell was counseled in writing; and that Sterling terminated McConnell's employment on August 31, 2006.

214.    Paragraph 214 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 214 of the Complaint, except admits only that on or about July 25, 2006, McConnell filed a charge with the EEOC.

215.    Sterling denies the allegations in paragraph 215 of the Complaint, except admits only that on or about May 12, 2007, McConnell filed an amended charge with the EEOC.

216.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 216 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

217.    Sterling denies the allegations in paragraph 217 of the Complaint, except admits only that it employed Plaintiff Gloria Pagan between August 9, 2005, and December 27, 2005; and that Pagan worked as a sales associate at a JB Robinson Jewelers store in St. Peters, Missouri.

218.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 218 of the Complaint.

219.    Sterling denies that Pagan excelled in her sales associate position.  For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the remaining allegations in paragraph 219 of the Complaint

220.    Sterling denies the allegations in paragraph 220 of the Complaint, except admits only that it employed Christopher Suttmoller; and that Suttmoller worked as a sales associate at a JB Robinson Jewelers store in St. Peters, Missouri.

221.    Sterling denies the allegations in paragraph 221 of the Complaint.

222.    Sterling denies the allegations in paragraph 222 of the Complaint.

223.    Sterling denies the allegations in paragraph 223 of the Complaint.

224.    Paragraph 224 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 224 of the Complaint.

225.    Sterling denies the allegations in paragraph 225 of the Complaint.

226.    Sterling denies the allegations in paragraph 226 of the Complaint.

227.    Paragraph 227 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 227 of the Complaint, except admits only that on or about July 19, 2006, Pagan filed a charge with the EEOC.

228.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 228 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

229.    Sterling denies the allegations in paragraph 229 of the Complaint, except admits only that it has employed Plaintiff Judy Reed since October 1, 2000; and that Reed initially worked as an assistant manager at a Jared store in Appleton, Wisconsin.

230.    Sterling denies the allegations in paragraph 230 of the Complaint, except admits only that Reed transferred to a Jared store in Tampa, Florida on July 15, 2001; and that on February 10, 2002, Reed was promoted to the position of diamond department manager.

231.    Sterling denies the allegations in paragraph 231 of the Complaint, except admits only that on June 22, 2003, Reed was promoted to the position of assistant manager; and that Reed is currently employed as a sales associate at a Jared store in Tampa, Florida.

232.    Sterling denies that Reed has more than five years of experience working as an assistant manager for Sterling.  For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the remaining allegations in paragraph 232 of the Complaint. Sterling admits that it has employed Reed as an assistant manager.

233.    Sterling denies the allegations in paragraph 233 of the Complaint.

234.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 234 of the Complaint.

235.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 235 of the Complaint.

236.    Sterling denies the allegations in paragraph 236 of the Complaint, except admits only that David Dion began working as a general manager at a Jared store in Clearwater, Florida in 2003; and that Dion is male.

237.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 237 of the Complaint.

238.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 238 of the Complaint.

239.    Sterling denies the allegations in paragraph 239 of the Complaint, except admits only that Eric Wolff began working as a general manager at a Jared store in Brandon, Florida in 2005; and that Wolff is male.

240.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 240 of the Complaint.

241.    Sterling denies the allegations in paragraph 241 of the Complaint, except admits only that Reed had, for some period of years, worked as an Assistant Manager of a Jared store in Citrus Park, Florida.

242.    Sterling denies the allegations in paragraph 242 of the Complaint, except admits only that Avind Mohip began working as a general manager at a Jared store in Tampa, Florida in 2005; and that Mohip is male.

243.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 243 of the Complaint, except admits only that Sterling did not promote Reed to the position of Assistant Manager in May of 2007.

244.    Sterling denies the allegations in paragraphs 244 of the Complaint.

245.    Sterling denies the allegations in paragraphs 245 of the Complaint.

246.    Sterling denies the allegations in paragraph 246 of the Complaint.

247.    Paragraph 247 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 247 of the Complaint.

248.    Sterling denies the allegations in paragraph 248 of the Complaint.

249.    Sterling denies the allegations in paragraph 249 of the Complaint, except admits only that Jason May began working as an assistant manager at a Jared store in Tampa, Florida in 2005; and that May is male.

250.    Sterling denies the allegations in paragraph 250 of the Complaint, except admits only that after May began working as an assistant manager at a Jared store in Tampa, Florida, his base salary was more than $36,000 per year.

251.    Paragraph 251 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 251 of the Complaint.

252.    Paragraph 252 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 252 of the Complaint, except admits only that on or about November 23, 2005, Reed filed a charge with the EEOC.

253.    Paragraph 253 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 253 of the Complaint.

254.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 254 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

255.    Sterling denies the allegations in paragraph 255 of the Complaint, except admits only that it employed Plaintiff Linda Rhodes between November 1, 2005, and November 14, 2006.

256.    Sterling denies the allegations in paragraph 256 of the Complaint; except admits only that Rhodes was hired as a seasonal sales associate at a Belden Jewelers store in Massena, New York.

257.    Sterling denies the allegations in paragraph 257 of the Complaint, except admits only that on January 25, 2006, Rhodes's position was changed to part-time sales associate; and that this modification did not result in a change of her base rate of compensation.

258.    Sterling denies the allegations in paragraph 258 of the Complaint.

259.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 259 of the Complaint, except admits only that it hired Troy Lawler on March 14, 2005, to work in a Belden Jewelers store in Massena, New York; and that Lawler is male.

260.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 260 of the Complaint, except admits only that it hired Lawler on March 14, 2005; and that Lawler's initial base rate of compensation was $8.75 per hour.

261.    Sterling denies the allegations in paragraph 261 of the Complaint, except admits only that Rhodes's initial base rate of compensation at the time of her date of hire as a seasonal sales associate was $7.00 per hour.

262.    Sterling denies the allegations in paragraph 262 of the Complaint, except only to admit that Rhodes's base rate of compensation at the time of her date of hire was less than Lawler's base rate of compensation at the time of his date of hire.

263.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 263 of the Complaint.

264.    Sterling denies the allegations in paragraph 264 of the Complaint.

265.    Sterling denies the allegations in paragraph 265 of the Complaint.

266.    Sterling denies the allegations in paragraph 266 of the Complaint, except only to admit that Rhodes did not receive any increase to her base rate of compensation.

267.    Paragraph 267 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 267 of the Complaint.

268.    Paragraph 268 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 268 of the Complaint, except admits only that on or about April 6, 2006, Rhodes filed a charge with the EEOC.

269.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 269 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

270.    Sterling denies the allegations in paragraph 270 of the Complaint, except admits only that it hired Plaintiff Khristina Rodrigues on November 26, 2001 as a sales associate.

271.    Sterling denies the allegations in paragraph 271 of the Complaint, except admits only that Rodrigues resigned in May 2002; and that Sterling rehired Rodrigues on June 18, 2004.

272.    Sterling admits that it promoted Rodrigues to assistant store manager on July 10, 2005.

273.    Sterling denies the allegations in paragraph 273, except Sterling admits that Rodrigues transferred back to the position of sales associate at her own request on February 26, 2006.

274.    Sterling denies the allegations in paragraph 274 of the Complaint, except Sterling admits that Rodrigues currently works as a part-time sales associate in Swansea, Massachusetts.

275.    Sterling denies the allegations in paragraph 275 of the Complaint, except admits only that upon Rodrigues' rehire, her initial base rate of compensation was $10.00 per hour.

276.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 276 of the Complaint.

277.    Paragraph 277 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 277 of the Complaint.

278.    Sterling denies the allegations in paragraph 278 of the Complaint, except admits only that on February 28, 2005, it hired Luis Cortes, and that at the time Cortes began working for Sterling, Rodrigues' base rate of compensation was $10.00 per hour.

279.    Sterling denies the allegations in paragraph 279 of the Complaint.

280.    Sterling denies the allegations in paragraph 280 of the Complaint, except admits only that after Rodrigues ceased working as an assistant manager, her base rate of compensation returned to $10.00 per hour.

281.    Sterling denies the allegations in paragraph 281 of the Complaint, except admits only that it hired Endhir Bonilla as a sales associate in November of 2005; and that Bonilla is male.

282.    Paragraph 282 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 282 of the Complaint.

283.    Paragraph 283 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 283 of the Complaint.

284.    Paragraph 284 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 284 of the Complaint.

285.    Sterling denies the allegations in paragraph 285 of the Complaint.

286.    Sterling denies the allegations in paragraph 286 of the Complaint, except it admits that Rodrigues' manager referred Rodrigues to Sterling's anti-harassment hotline (TIPS); and that Rodrigues called TIPS in February 2006 and reported receiving a note that allegedly read, "When can I have you?"

287.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 287 of the Complaint.

288.    Paragraph 288 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 288 of the Complaint, except admits only that on or about July 18, 2006, Rodrigues filed a charge with the EEOC.

289.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 289 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

290.    Sterling denies the allegations in paragraph 290 of the Complaint, except admits only that it hired Plaintiff Nina Shahmirzadi on October 10, 1997, as a sales associate at a Kay

Jewelers store in Henderson, Nevada; and that Shahmirzadi continued working at this location until August 8, 1999.

291.    Sterling denies the allegations in paragraph 291 of the Complaint, except admits only that effective August 8, 1999, Shahmirzadi transferred to a Kay Jewelers store in Las Vegas, Nevada; and that on or about November 16, 2000, Sterling rehired Shahmirzadi as a sales associate at a Jared store in Henderson, Nevada.

292.    Sterling denies the allegations in paragraph 292 of the Complaint.

293.    Sterling denies the allegations in paragraph 293 of the Complaint, except admits only that Shahmirzadi resigned on November 10, 2006.

294.    Sterling admits the allegations in paragraph 294 of the Complaint.

295.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 295 of the Complaint.

296.    Sterling denies the allegations in paragraph 296 of the Complaint.

297.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 297 of the Complaint, except admits only that Shahmirzadi was a member of the President's Club in 2004 and in 2005.

298.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 298 of the Complaint.

299.    Sterling denies the allegations in paragraph 299 of the Complaint.

300.    Sterling denies the allegations in paragraph 300 of the Complaint, except admits only that Daren DeSilvia began working as timepiece manager at a Jared store in Henderson, Nevada, on September 18, 2005; and that DeSilvia is male.

301.    Sterling denies the allegations in paragraph 301 of the Complaint, except admits only that DeSilvia began working as diamond department manager at a Jared store in Henderson, Nevada, on October 8, 2006.

302.    Sterling denies the allegations contained in paragraph 302 of the Complaint.

303.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 303 of the Complaint.

304.    Sterling denies the allegations in paragraph 304 of the Complaint, except admits that it did not promote Shahmirzadi in either September or November of 2006.

305.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 305 of the Complaint, except admits only that it employed Andrew Goldflam at a Jared store in Henderson, Nevada; and that Goldflam is male.

306.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies that Goldflam had "no prior management experience" and that Shahmirzadi had "years of management experience." Sterling denies the remaining allegations in paragraph 306 of the Complaint.

307.    Sterling denies the allegations in paragraph 307 of the Complaint.

308.    Sterling denies the allegations in paragraph 308 of the Complaint.

309.    Sterling denies the allegations in paragraph 309 of the Complaint.

310.    Paragraph 310 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 310 of the Complaint, except admits only that on or about January 5, 2007, Shahmirzadi filed a charge with the EEOC.

311.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 311 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

312.    Sterling denies the allegations in paragraph 312 of the Complaint, except admits only that it hired Plaintiff Leighla Smith on July 25, 2004; that Smith's initial base rate of compensation was $8.75 per hour; and that Smith worked as a sales associate at a Kay Jewelers store in Burlington, New Jersey.

313.    Sterling denies the allegations in paragraph 313 of the Complaint, except admits only that Smith transferred to a Kay Jewelers store in Cupertino, California, on April 17, 2005.

314.    Sterling denies the allegations in paragraph 314 of the Complaint, except admits only that upon her transfer to the Kay Jewelers store in Cupertino, California, Smith's base rate of compensation became $9.75 per hour.

315.    Paragraph 315 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 315 of the Complaint, except admits only that it employed Cesar Navarro at a Kay Jewelers store in Cupertino, California.

316.    Paragraph 316 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 316 of the Complaint.

317.    Sterling denies the allegations in paragraph 317 of the Complaint.

318.    Sterling denies the allegations in paragraph 318 of the Complaint.

319.    Paragraph 319 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph

319 of the Complaint, except admits only that on or about June 14, 2006, Smith filed a charge with the EEOC.

320. For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 320 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

321. Sterling denies the allegations in paragraph 321 of the Complaint, except admits only that it employed Plaintiff Dawn Souto-Coons between September 11, 1991, and May 27, 2005.

322. Sterling admits the allegations in paragraph 322 of the Complaint.

323. Sterling denies the allegations in paragraph 323 of the Complaint, except admits only that Souto-Coons was promoted to Assistant Manager at the JB Robinson Jewelers store in Waldorf, Maryland, on July 5, 1992.

324. Sterling denies the allegations in paragraph 324 of the Complaint, except admits only that Souto-Coons was promoted to Store Manager at the JB Robinson Jewelers store in Gaithersburg, Maryland on December 6, 1992.

325. Sterling denies the allegations in paragraph 325 of the Complaint, except admits only that Souto-Coons was transferred from the JB Robinson Jewelers store in Gaithersburg, Maryland, to the JB Robinson store in Waldorf, Maryland, on March 27, 1994.

326. Sterling denies the allegations in paragraph 326 of the Complaint, except admits only that Souto-Coons worked in a part-time sales associate position between February 9, 1997, and September 7, 1997.

327.    Sterling denies the allegations in paragraph 327 of the Complaint, except admits only that Souto-Coons was employed as Store Manager at a JB Robinson Jewelers store in Waldorf, Maryland, from June 6, 1999, until July 29, 2001.

328.    Sterling denies the allegations in paragraph 328 of the Complaint, except admits only that, on July 29, 2001, Sterling transferred Souto-Coons to an Assistant Manager position at a Jared store in Brandon, Florida.

329.    Paragraph 329 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 329 of the Complaint, except admits only that Souto-Coons resigned on May 27, 2005.

330.    Sterling denies the allegations in paragraph 330 of the Complaint.

331.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 331 of the Complaint, except it admits that Sterling gave her multiple raises throughout her employment.

332.    Sterling denies the allegations in paragraph 332 of the Complaint.

333.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 333 of the Complaint.

334.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 334 of the Complaint.

335.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies that Eric Wolff was "a less qualified male employee", and that Avind Mohip was "a less qualified male employee with only two years of jewelry experience." Sterling denies the remaining allegations in paragraph 335 of the Complaint, except admits only that Eric Wolff began working as a general manager at a Jared store in Brandon, Florida in 2005; that Avind

Mohip began working as a general manager at a Jared store in Tampa, Florida in 2005; and that Wolff and Mohip are male.

336.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 336 of the Complaint.

337.    Sterling denies the allegations in paragraph 337 of the Complaint.

338.    Sterling denies the allegations in paragraph 338 of the Complaint.

339.    Sterling denies the allegations in paragraph 339 of the Complaint.

340.    Paragraph 340 of the Complaint states a legal conclusion to which a responsive pleading is not required.  To the extent that it does, Sterling denies the allegations in paragraph 340 of the Complaint, except admits only that on or about October 4, 2005, Souto-Coons filed a charge with the EEOC.

341.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 341 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

342.    Sterling denies the allegations in paragraph 342 of the Complaint, except admits only that it hired Plaintiff Marie Wolf on April 15, 2002; and that Wolf has been and is currently employed as a sales associate at a Jared store in Brandon, Florida.

343.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 343 of the Complaint.

344.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 344 of the Complaint, except admits only that Wolf was a member of the President's Club in 2004, in 2005, in 2006, and in 2007.

345.    Paragraph 345 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 345 of the Complaint.

346.    Sterling denies the allegations in paragraph 346 of the Complaint, except admits only that Wolf's initial base rate of compensation was $12.00 per hour.

347.    Sterling admits the allegations in paragraph 347 of the Complaint.

348.    Paragraph 349 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 348 of the Complaint, except admits only that during the three years after Wolf's starting date, Grant Laing, Steven Harrington, and Alan Mong were paid a higher base rate of compensation than was Wolf.

349.    Paragraph 349 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 349 of the Complaint.

350.    Paragraph 350 of the Complaint states a legal conclusion to which a responsive pleading is not required. To the extent that it does, Sterling denies the allegations in paragraph 350 of the Complaint, except admits only that on or about September 13, 2005, Wolf filed a charge with the EEOC.

351.    For lack of knowledge or information sufficient to form a belief as to their truth, Sterling denies the allegations in paragraph 351 of the Complaint, except admits only that the EEOC issued a notice of right to sue dated March 18, 2008.

### Answer To "CLASSWIDE COUNT I – Violation Of Title VII – Disparate Impact"

352.    In response to paragraph 352 of the Complaint, Sterling restates and incorporates by reference all other paragraphs of this Answer.

353.    Paragraph 353 of the Complaint contains no factual allegations to which a responsive pleading is required. To the extent that it does, they are each denied.

354.    Sterling denies the allegations in paragraph 354 of the Complaint.

355.    Sterling denies the allegations in paragraph 355 of the Complaint.

356.    Sterling denies the allegations in paragraph 356 of the Complaint.

357.    Paragraph 357 of the Complaint contains no factual allegations to which a responsive pleading is required. To the extent that it does, they are each denied.

### Answer To "CLASSWIDE COUNT II – Violation Of Title VII – Disparate Treatment"

358.    In response to paragraph 358 of the Complaint, Sterling restates and incorporates by reference all other paragraphs of this Answer.

359.    Sterling denies the allegations in paragraph 359 of the Complaint.

360.    Sterling denies the allegations in paragraph 360 of the Complaint.

361.    Sterling denies the allegations in paragraph 361 of the Complaint.

362.    Sterling denies the allegations in paragraph 362 of the Complaint.

363.    Sterling denies the allegations in paragraph 363 of the Complaint.

364.    Paragraph 364 of the Complaint contains no factual allegations to which a responsive pleading is required. To the extent that it does, they are each denied.

### Answer To "CLASSWIDE COUNT III – Violation Of Equal Pay Act, 29 U.S.C. § 206(d)"

365.    In response to paragraph 365 of the Complaint, Sterling restates and incorporates by reference all other paragraphs of this Answer.

366.    Sterling denies the allegations in paragraph 366 of the Complaint.

367.    Sterling denies the allegations in paragraph 367 of the Complaint.

368.    Paragraph 368 of the Complaint contains no factual allegations to which a responsive pleading is required. To the extent that it does, they are each denied.

**Answer To "COUNT IV ON BEHALF OF PLAINTIFF DENISE MADDOX – Violation Of Age Discrimination In Employment Act, 29 U.S.C. § 621 et seq."**

369.    In response to paragraph 369 of the Complaint, Sterling restates and incorporates by reference all other paragraphs of this Answer.

370.    Sterling denies the allegations in paragraph 370 of the Complaint.

371.    Paragraph 371 of the Complaint contains no factual allegations to which a responsive pleading is required.  To the extent that it does, they are each denied.

**Answer To "COUNT V ON BEHALF OF PLAINTIFF LISA MCCONNELL For Retaliation In Violation Of Title VII, 42 U.S.C. § 2000e-3"**

372.    In response to paragraph 372 of the Complaint, Sterling restates and incorporates by reference all other paragraphs of this Answer.

373.    Sterling denies the allegations in paragraph 373 of the Complaint.

374.    Paragraph 374 of the Complaint contains no factual allegations to which a responsive pleading is required.  To the extent that it does, they are each denied.

**Answer To "COUNT VI ON BEHALF OF PLAINTIFF JUDY REED For Retaliation In Violation Of Title VII, 42 U.S.C. § 2000e-3"**

375.    In response to paragraph 375 of the Complaint, Sterling restates and incorporates by reference all other paragraphs of this Answer.

376.    Sterling denies the allegations in paragraph 376 of the Complaint.

377.    Paragraph 377 of the Complaint contains no factual allegations to which a responsive pleading is required.  To the extent that it does, they are each denied.

**Answer To "COUNT VII ON BEHALF OF PLAINTIFF NINA SHAHMIRZADI – Violation Of Age Discrimination In Employment Act, 29 U.S.C. § 621, et seq."**

378.    In response to paragraph 378 of the Complaint, Sterling restates and incorporates by reference all other paragraphs of this Answer.

379.    Sterling denies the allegations in paragraph 379 of the Complaint.

380.    Paragraph 380 of the Complaint contains no factual allegations to which a responsive pleading is required. To the extent that it does, they are each denied.

## AFFIRMATIVE DEFENSES

381.    Pursuant to Fed. R. Civ. P. 8(c), Sterling alleges the following affirmative and other defenses without assuming any burden of production or proof that it would not otherwise have assumed. Sterling further avers that Plaintiffs' claims are so vague as to render it impossible to identify every possible affirmative or other defense, and thus expressly reserves its right to assert additional defenses should the precise nature of Plaintiffs' claims become clear.

### First Affirmative Defense -- Failure To State Facts Sufficient To State A Claim

382.    Plaintiffs' Complaint, and each purported claim contained therein, fails to allege facts sufficient to state a claim upon which relief can be granted.

### Second Affirmative Defense -- Failure To State A Claim Upon Which Relief Can Be Granted

383.    Plaintiffs' Complaint, and each purported claim contained therein, fails to state a claim upon which relief can be granted.

### Third Affirmative Defense -- Lack Of Venue

384.    Plaintiffs and putative class members who do not work for, or did not work for, Sterling in the Southern District of New York, are barred from pursuing their claims in the Southern District of New York because they lack venue and should be dismissed under Fed. R. Civ. P. 12(b)(3).

### Fourth Affirmative Defense -- Statute Of Limitations

385.    Some or all of Plaintiffs' claims and/or the putative class members' claims under Title VII and/or the Equal Pay Act are barred in whole or in part by the applicable limitation periods.

**Fifth Affirmative Defense -- Sterling's Legitimate Non-discriminatory Decisions**

386.    Plaintiffs' Complaint, and each purported claim contained therein, is barred in whole or in part because all decisions with respect to Plaintiffs' employment and the putative class members' employment were made by Sterling for legitimate, non-discriminatory, and non-pretextual reasons.

**Sixth Affirmative Defense -- Doctrine Of Unclean Hands**

387.    Plaintiffs' Complaint, and each purported claim contained therein, is barred in whole or in part by the doctrine of unclean hands.

**Seventh Affirmative Defense -- Doctrine Of Estoppel**

388.    Plaintiffs' Complaint, and each purported claim contained therein, is barred in whole or in part by the doctrine of estoppel, quasi-estoppel, and/or equitable estoppel.

**Eighth Affirmative Defense -- Doctrine Of Laches**

389.    Plaintiffs' Complaint, and each purported claim contained therein, is barred by the doctrine of laches, or barred in whole or in part by the doctrine of laches because such claims have been waived, discharged, and/or abandoned.

**Ninth Affirmative Defense -- Doctrine Of Waiver**

390.    Plaintiffs and the putative class members have waived their right, if any, to pursue the claims in the Complaint, and each purported claim contained therein, by reason of their own acts and course of conduct.

**Tenth Affirmative Defense -- Mixed Motive**

391.    Sterling did not commit the acts or omissions as alleged in Plaintiffs' Complaint for discriminatory motives, but assuming it did, such acts or omissions would have been taken in any event for legitimate, non-discriminatory, non-pretextual reasons.

### Eleventh Affirmative Defense -- Sterling's Reasonable Care

392.    The Complaint, and each purported claim therein, is barred, in whole or in part, because Sterling exercised reasonable care to prevent and correct promptly any alleged discriminatory behavior.

### Twelfth Affirmative Defense -- Plaintiffs Failed To Provide Sterling With Notice And Unreasonably Failed To Take Advantage Of Any Corrective Opportunities Or To Avoid Harm Otherwise

393.    Plaintiffs cannot sustain their claims because Sterling exercised reasonable care to prevent and promptly correct any inappropriate behavior in the workplace. Further, Plaintiffs did not provide Sterling with notice of the alleged inappropriate behavior, and Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by Sterling and/or to avoid harm otherwise.

### Thirteenth Affirmative Defense -- Equal Pay Act Affirmative Defenses

394.    Sterling is not liable on Plaintiffs' claims under the Equal Pay Act as it determines its employees' compensation based on a seniority system; a merit system; a system which measures earnings by quantity or quality of production; or on differentials based upon any other factor other than sex.

### Fourteenth Affirmative Defense -- Sterling's Good Faith Efforts Preclude Punitive Damages

395.    Sterling has acted in good faith and established and complied with policies, programs, and procedures for the prevention and detection of unlawful discriminatory practices as required by law.

### Fifteenth Affirmative Defense -- Sterling's Policies Preclude Punitive Damages And Plaintiffs' Failure To Take Advantage Of Corrective Opportunities

396.    Plaintiffs' claims for punitive damages are barred, in whole or in part, because Sterling promulgated firm policies against discrimination and otherwise exercised reasonable

care to prevent and correct promptly any alleged discrimination, and Plaintiffs unreasonably failed to promptly take advantage of the preventative or corrective opportunities provided or to avoid harm otherwise.

### Sixteenth Affirmative Defense -- Failure To Mitigate Damages

397.    The Complaint, and each purported claim therein, is barred, in whole or in part, because Plaintiffs and/or the putative class members failed to mitigate or reasonably attempt to mitigate his or her damages, if any, as required by law.

### Seventeenth Affirmative Defense -- Punitive Damages Would Constitute Denial Of Due Process

398.    Plaintiffs and putative class members are not entitled to recover any punitive damages as prayed for in the Complaint, and any allegations with respect thereto should be stricken, because applicable state law(s) regarding the alleged conduct in question are too vague to permit the imposition of punitive damages, and because any award of punitive damages as applied to the facts of this case would violate Sterling's constitutional rights under the U.S. Constitution, including but not limited to the due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution, and the excessive fines and cruel and unusual punishment clauses of the Eighth Amendment to the U.S. Constitution.

### Eighteenth Affirmative Defense -- Subsequent Remedial Measures

399.    The Complaint, and each purported claim therein, is barred, in whole or in part, to the extent it would impermissibly require for proof the admission into evidence of subsequent remedial measures not admissible to prove culpable conduct in connection with the event under Fed. R. Evid. 407.

### Nineteenth Affirmative Defense -- Advice Of Counsel

400.    To the extent any of the alleged wrongs were committed after Sterling reasonably relied in good faith on the advice of counsel, and any all claims are barred as against Sterling in their entirety.

### Twentieth Affirmative Defense -- Prior Settlement And Release

401.    To the extent a named Plaintiff, or any putative class member, has entered into a settlement and release with Sterling and received consideration therefore, any and all claims he or she purports to bring against Sterling, including, without limitation, the claims alleged herein, are barred in their entirety.

### Twenty-First Affirmative Defense -- The Complaint Violates The RESOLVE Agreements

402.    To the extent that a named Plaintiff, or any putative class member, has agreed to submit to RESOLVE (including Step 3 arbitration) any and all claims which are asserted in the Complaint, the Complaint violates their agreements to arbitrate and should be stayed.

### Twenty-Second Affirmative Defense -- All Claims Are Subject To Mandatory Arbitration

403.    The claims of a named Plaintiff, or any putative class member, are subject to mandatory arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and must be brought, if at all, through Sterling's mandatory RESOLVE program.

### Twenty-Third Affirmative Defense -- Failure To Exhaust Federal Administrative Remedies

404.    The Title VII claims of Plaintiffs and the putative class members are barred because Plaintiffs and the putative class members failed, in whole or in part, to exhaust all available administrative remedies, and/or otherwise failed to comply with the statutory prerequisites to the bringing of this action pursuant to Title VII.

**Twenty-Fourth Affirmative Defense -- Untimely EEOC Charges**

405.    To the extent that Plaintiffs and putative class members make allegations or claims under Title VII with respect to a time period more than 300 days before Plaintiffs and putative class members allegedly filed a charge with the EEOC, or which were not made the subject of a timely EEOC charge, such allegations or claims are barred.

**Twenty-Fifth Affirmative Defense -- Failure To File A Timely Civil Action On Title VII Claims**

406.    To the extent that Plaintiffs and/or putative class members make allegations or claims under Title VII, and failed to file a civil action within 90 days after receiving notice of a right to sue from the EEOC, such allegations or claims are barred.

**Twenty-Sixth Affirmative Defense -- Title VII Claims Outside The Scope Of Administrative Charges**

407.    Plaintiffs' Title VII claims and the putative class members' Title VII claims are barred to the extent that the allegations contained therein do not reasonably fall within the scope of claims made in any administrative EEOC charges timely filed by any Plaintiffs or putative class members with the EEOC.

**Twenty-Seventh Affirmative Defense -- Title VII Claims Outside The Scope Of The EEOC's Administrative Investigation**

408.    Plaintiffs' Title VII claims and the putative class members' Title VII claims are barred to the extent that the allegations contained therein do not reasonably fall within the scope of the EEOC's administrative investigation of their charges.

**Twenty-Eighth Affirmative Defense -- Lack Of Venue; Special Venue Provision Of Title VII**

409.    Plaintiffs and putative class members who do not work for, or did not work for, Sterling in the Southern District of New York are barred from pursing their Title VII claims in

the Southern District of New York because they cannot satisfy the special venue requirements of
42 U.S.C. § 2000e-5(f)(3).

### Twenty-Ninth Affirmative Defense -- Sterling's Practices Are Consistent With Business Necessity

410.    Insofar as any of Sterling's compensation or promotion policies, or any other
employment policy or procedure utilized by Sterling, has had a statistically adverse impact on
females, such policies or practices nevertheless are lawful because they are job-related and
consistent with business necessity.

### Thirtieth Affirmative Defense -- Differential Treatment Based On Bona Fide Factors

411.    Plaintiffs' Title VII claims and the putative class members' Title VII claims are
barred because any alleged differential treatment of Plaintiffs and putative class members by
Sterling was undertaken pursuant to a bona fide merit system, bona fide seniority system, or
bona fide factors other than gender per 42 U.S.C. § 2000e-2(h).

### Thirty-First Affirmative Defense -- Lack Of Standing

412.    Plaintiffs have failed to satisfy the prerequisite for class certification and,
therefore, lack standing and cannot represent the interest of others.

### Thirty-Second Affirmative Defense -- Class Conflicts

413.    Class or sub-class certification would be inappropriate herein due to conflicts of
interest between Plaintiffs and purported class or sub-class members, or between and among
purported class or sub-class members.

### Thirty-Third Affirmative Defense -- Failure To Satisfy Prerequisite Under Fed. R. Civ. P. 23 Due To Arbitration Venue

414.    Plaintiffs cannot satisfy the prerequisites of Rule 23 because some or all of the
claims of the named Plaintiffs and putative class members are covered by arbitration agreements
that require Plaintiffs and putative class members to resolve their disputes with Sterling through

arbitration in the state where the Plaintiff or putative class member worked or most recently worked for Sterling.

### Thirty-Fourth Affirmative Defense -- Failure To Satisfy Prerequisite Under Fed. R. Civ. P. 23 Due To Collective Bargaining Agreement

415.    Plaintiffs cannot satisfy the prerequisites of Rule 23 because some or all of the claims of the named Plaintiffs and putative class members are governed by the terms of an applicable collective bargaining agreement.

### Thirty-Fifth Affirmative Defense -- Statutory Damages

416.    Plaintiffs' claims for damages (and certain categories of damages, and the amounts thereof recoverable) are limited by the applicable limits on statutory damages, including but not limited to those limits set forth in 42 U.S.C. § 1981a(b)(3) for claims under Title VII.

### Thirty-Sixth Affirmative Defense -- Legal Remedy Precludes Injunctive And Equitable Relief

417.    The claims for injunctive and other equitable relief asserted by Plaintiffs and putative class members are barred because they have an adequate and complete remedy at law.

### Thirty-Seventh Affirmative Defense -- After-Acquired Evidence Doctrine

418.    Plaintiffs and putative class members may be barred, in whole or in part, from recovery of damages as alleged and prayed for in the Complaint by the after-acquired evidence doctrine.

### Thirty-Eighth Affirmative Defense -- Absence Of Intentional Discrimination And/Or Malice Precludes Punitive Damages

419.    Sterling alleges that it has not engaged in intentional discrimination with respect to Plaintiffs, and Sterling therefore cannot be liable for punitive damages. Alternatively, Sterling alleges that it has not acted with malice or reckless indifference toward Plaintiffs and putative class members and, therefore, Sterling cannot be liable for punitive damages.

### Thirty-Ninth Affirmative Defense -- Failure To Plead Facts Sufficient To Support Punitive Damages

420.    Plaintiffs and putative class members are not entitled to receive punitive damages because Plaintiffs have not plead facts sufficient to support such an award.

### Fortieth Affirmative Defense -- Sterling's Policies Preclude Punitive Damages

421.    Plaintiffs and putative class members are barred from recovering punitive damages because Sterling had in place a policy to prevent discrimination in its workplace and made good faith efforts to implement and enforce that policy.

### Forty-First Affirmative Defense -- Punitive Damages Precluded; Individual Decision-Makers

422.    Plaintiffs and putative class members are not entitled to receive punitive damages because, even if they were able to establish that any individual manager allowed unlawful bias to affect any employment decision, which Sterling expressly denies, Sterling is not liable for punitive damages based on any such individual decision in light of its good faith efforts to prevent bias.

WHEREFORE, Sterling prays that Plaintiffs' Complaint be dismissed in its entirety and at Plaintiffs' sole cost, that judgment be entered in Sterling's favor on all of Plaintiffs' claims, and that Sterling be awarded all of its costs, expenses, and attorneys' fees incurred in the defense of this action.

## COUNTERCLAIM

For its counterclaim against all Plaintiffs, including, but not limited to, Kelly Contreras, Maria House, Denise Maddox, Lisa McConnell, and Gloria Pagan, (hereinafter, all Plaintiffs referred to as the "Counterclaim Defendants"), Sterling alleges as follows:

## Jurisdiction And Venue

1.    The Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 2201, *et seq.* and 28 U.S.C. § 1367(a).

2.    Venue for this Counterclaim is proper in this Court.

## Parties

3.    Counterclaim Defendants were each former employees of Sterling, which is engaged in the retail jewelry business under various trade names, such as Kay Jewelers and Jared Jewelers. Sterling has a principal place of business located at 375 Ghent Road, Akron, Ohio, 44333.

4.    Upon information and belief, Counterclaim Defendant Kelly Contreras resides in Ohio. Sterling employed Contreras between March 20, 1995, and June 20, 2005. Contreras worked for Sterling as an assistant manager and store manager at Goodman Jewelers store in Minnesota; as a store manager at an Osterman Jewelers store in Loveland, Ohio; and as a district manager in Ohio.

5.    Upon information and belief, Counterclaim Defendant Maria House resides in California. Sterling employed House as a sales associate at a Kay Jewelers store in Bakersfield, California, from June 13, 2005, until October 17, 2006.

6.    Upon information and belief, Counterclaim Defendant Denise Maddox resides in Colorado. Sterling employed Maddox between October 5, 1997, and December 30, 1997, and again between January 21, 1998, and November 1, 2006. Maddox worked for Sterling as a sales associate, diamond department manager, and assistant manager at Jared store in Colorado; as an assistant manager at a Jared store in Roseville, California; and as a store manager at a Jared store in Dallas, Texas.

7.      Upon information and belief, Counterclaim Defendant Lisa McConnell resides in Indiana.   Sterling employed McConnell as a sales associate, assistant manager, and store manager at a Kay Jewelers store in Elkhart, Indiana, from June 29, 2001, until August 30, 2006.

8.      Upon information and belief, Counterclaim Defendant Gloria Pagan resides in Missouri.   Sterling employed Pagan as a sales associate at a JB Robinson Jewelers store in St. Peters, Missouri, from August 9, 2005, until December 27, 2005.

## Facts Applicable To The First And Second Causes Of Action In The Counterclaim

9.      This Counterclaim arises out of Counterclaim Defendants' agreements to arbitrate, which Counterclaim Defendants agreed to prior to and/or made at the inception of their employment with Sterling.

10.     In June 1998, for the purpose of addressing disputes which may arise with its employees, Sterling instituted a mandatory alternative dispute resolution program known as "RESOLVE."

11.     Under RESOLVE, Sterling and each of its employees agreed that the American Arbitration Association (the "AAA") would administer all disputes covered by RESOLVE.

12.     When RESOLVE was instituted in 1998, the AAA had no rules to deal with class arbitrations.

13.     Counterclaim Defendant Maria House signed a RESOLVE agreement on or about June 20, 2005.   She also signed an Employment Application in which she agreed to use RESOLVE to resolve disputes with Sterling.   True and accurate copies of these documents are attached as Exhibits A and B, respectively.

14.     Counterclaim Defendant Gloria (Huff) Pagan signed Employment Applications on July 7, 2005 and August 9, 2005 in which she agreed to use RESOLVE to resolve disputes

with Sterling. True and accurate copies of these documents are attached as Exhibits C and D, respectively.

15.    Counterclaim Defendant Kelly Contreras began working at Sterling on March 20, 1995, worked at Sterling on June 1, 1998, and continued her employment until June 20, 2005. By continuing her employment and by Sterling's agreement to use RESOLVE, Counterclaim Defendant Contreras became bound to RESOLVE.

16.    Counterclaim Defendant Denise Maddox began working at Sterling on October 15, 1997, worked at Sterling on June 1, 1998, and continued her employment until November 1, 2006. By continuing her employment and by Sterling's agreement to use RESOLVE, Counterclaim Defendant Maddox became bound to RESOLVE.

17.    Counterclaim Defendant Lisa McConnell signed a RESOLVE agreement on or about June 20, 2001. She also signed an Employment Application in which she agreed to use RESOLVE to resolve disputes with Sterling. True and accurate copies of these documents are attached as Exhibits E and F, respectively.

18.    Counterclaim Defendants each agreed to submit to use RESOLVE for the resolution of "any pre-employment, employment, or post-employment dispute, claim or controversy ... against Sterling ...." (Exhibits A, C, and E, attached hereto.)

19.    Counterclaim Defendant House, in her Employment Application, further agreed that she would use RESOLVE "to resolve covered disputes that [she] may have against the Company" and that she "knowingly and voluntarily waive[d] [her] applicable statutory rights to file a lawsuit against the Company for a covered claim and [her] constitutional right to a jury trial." (Exhibit B, attached hereto and incorporated herein.)

20.     Counterclaim Defendant Pagan, in her Employment Applications, further agreed that she would use RESOLVE "to resolve covered disputes that [she] may have against the Company" and that she "knowingly and voluntarily waive[d] [her] applicable statutory rights to file a lawsuit against the Company for a covered claim and [her] constitutional right to a jury trial." (Exhibits C and D, attached hereto and incorporated herein.)

21.     Counterclaim Defendant McConnell, in her Employment Application, further agreed that she would use RESOLVE "to resolve covered disputes that [she] may have against the Company" and that she "knowingly and voluntarily waive[d] [her] applicable statutory rights to file a lawsuit against the Company for a covered claim and [her] constitutional right to a jury trial." (Exhibit F, attached hereto and incorporated herein.)

22.     The causes of action advanced by Counterclaim Defendants in their Complaint allege claims which are within the scope of RESOLVE.

23.     The stated purpose of RESOLVE is to provide "employees with a fast, fair, private and inexpensive way to handle employment disputes." (Exhibit G, attached hereto and incorporated herein.)

24.     Each of the individual RESOLVE agreements provide that Sterling and each individual employee "waive their right to commence any court action to the extent permissible under law ..." (Exhibits A, C, and E, attached hereto and incorporated herein.)

25.     Instead, RESOLVE affords each individual employee "all the remedies and awards otherwise available through the judicial system," and provides for use of the "the RESOLVE Program Administrator" to administer claims submitted by each employee. (Exhibit G, attached hereto and incorporated herein.)

26.     RESOLVE sets forth the following process for resolution of Sterling employees'
claims, like those alleged in the Complaint by Counterclaim Defendants:

1.     The first step in the program is for the employee to "contact the RESOLVE
Program Administrator and arrange to complete a RESOLVE Program Claim
Form" within one year of the alleged wrongful action;

2.     Sterling then investigates the claim and proposes a resolution. If the employee is
not satisfied with the proposed resolution, only the employee may appeal to the
second step of the RESOLVE process within thirty (30) days, and Sterling will
assign an outside mediator or review panel consider the claim;

3.     If the employee still is unsatisfied with the decision of the mediator (or the panel),
only the employee may appeal to the third step of the RESOLVE process within
thirty (30) days, which involves final and binding arbitration by a single
arbitrator. (Exhibit G, attached hereto and incorporated herein.)

27.     There are several express terms of RESOLVE which govern the individual
arbitrations to which Sterling and the individual employees agreed:

(a)     Sterling and the individual employee must jointly select the arbitrator licensed to
practice law in the state in which the dispute arose;

(b)     The arbitration must take place at or near where the employee worked;

(c)     The parties in RESOLVE are identified as "I" and the "Company" throughout the
agreement;

(d)     Sterling and the individual employee will use a "jointly selected outside/neutral
arbitrator from the American Arbitration Association" who will be chosen
"[t]hrough an elimination process";

(e)  The arbitration "will take place at a mutually convenient time and location near the site where the complaint arose ...";

(f)  The arbitration will "be governed by ... the substantive law of the jurisdiction in which the complaint arose ...." (Exhibit G, attached hereto and incorporated herein.)

28.  Each of the individual RESOLVE agreements signed by the Counterclaim Defendants provide that:

> Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator. Likewise, procedural questions which grow out of the dispute and bear on the final disposition are also matters for the arbitrator. **However, where a party already has initiated a judicial proceeding** [like each of the Counterclaim Defendants], **a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter** (e.g., one (1) year for filing a claim). (Exhibit G, attached hereto and incorporated herein, emphasis added).

29.  The RESOLVE arbitration rules also state that:

> Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator. Likewise, procedural questions which grow out of the dispute and bear on the final disposition are also matters for the arbitrator. **However, where a party already has initiated a judicial proceeding** [like each of the Counterclaim Defendants], **a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter** (e.g., one (1) year for filing a claim). (Exhibit G, attached hereto and incorporated herein, emphasis added).

30.  Each of the Counterclaim Defendants has "initiated a judicial proceeding" within the meaning of RESOLVE by filing their Complaint in this lawsuit.

31.  On March 19, 2008, counsel for the Counterclaim Defendants sent Sterling a letter in which counsel indicated that the Counterclaim Defendants had "elect[ed] to prosecute their claims ... in a judicial forum.". A true and accurate copy of this letter is attached hereto as Exhibit H.

32.    On or about March 24, 2008, notwithstanding their previously filed lawsuit, Counterclaim Defendants tendered a Demand for Arbitration with the AAA. In the letter accompanying their demand, Counterclaim Defendants stated that they wish to initiate arbitration and that they have each submitted complaints to Sterling "in accordance with the RESOLVE Program," but requested the AAA to stay the arbitration proceeding. True and accurate copies of Counter Defendants' Demand for Arbitration and accompanying letters to the AAA and to Sterling's counsel (without exhibits) is attached hereto as Exhibit I.

33.    On April 1, 2008, the AAA notified Sterling of Counterclaim Defendants' Demand for Arbitration, and scheduled an Administrative Conference for April 15, 2008. A true and accurate copy of the AAA April 1, 2008 notification is attached hereto as Exhibit J.

34.    On April 2, 2008, Sterling responded by letter to Counterclaim Defendants' Demand for Arbitration and the AAA's April 1, 2008 notification, advising the AAA that Counterclaim Defendants' Demand for Arbitration was premature and inappropriate because: (1) Counterclaim Defendants had not satisfied Steps 1 and 2 of RESOLVE; and (2) this Court must determine the parties' respective rights under RESOLVE before any form of arbitration could ever proceed -- if and when the Counter Defendants exhaust the prerequisites of RESOLVE applicable to each of them. A true and accurate copy of Sterling's April 2, 2008 letter to the AAA is attached hereto as Exhibit K.

35.    On April 9, 2008, Counterclaim Defendants responded to Sterling's April 2, 2008 letter. Counterclaim Defendants enclosed a copy of an April 1, 2008 letter from Joseph Spagnola, Manager, RESOLVE Program, with their April 9 AAA submission. True and accurate copies of Counterclaim Defendants' April 9, 2008 letter to the AAA and Mr. Spagnola's April 1, 2008 letter attached hereto as Exhibits L and M, respectively.

36.    Mr. Spagnola's April 1, 2008 letter was in response to a March 19, 2008 letter from Counterclaim Defendants' counsel, Joseph M. Sellers. In his letter, Mr. Spagnola noted that Mr. Sellers' March 19, 2008 letter was in direct contradiction to letters of Counterclaim Defendants' co-counsel, Sam Smith, dated March 12, 18 and 19, 2008. True and accurate copies of Mr. Smith's letters dated March 12, 18, and 19, 2008, and Mr. Seller's letter dated March 19, 2008 are attached hereto as Exhibits N and O, respectively.

37.    On April 11, 2008, the AAA advised the Counterclaim Defendants and Sterling that it had canceled the April 15, 2008 Administrative Conference, and further advised that "the Association is suspending administration of this matter as requested by the parties;" and that "The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome of any related court actions." A true and accurate copy of the AAA's April 11, 2008 letter is attached hereto as Exhibit P.

38.    On April 18, 2008, Sterling again advised the AAA that Counterclaim Defendants' claims were premature and inappropriate, and that the AAA inappropriately accepted Counterclaim Defendants' AAA filing fee. As such, Sterling requested the AAA immediately retract its April 10, 2008 letter and refund Counterclaim Defendants' AAA filing fee. A true and accurate copy of Sterling's April 18, 2008 letter to the AAA is attached hereto as Exhibit Q.

39.    On April 18, 2008, Sterling also advised Counterclaim Defendants' counsel that (1) Counterclaim Defendants could not abandon Steps 1 and 2 of RESOLVE; (2) contrary to Counterclaim Defendants' representations, RESOLVE is enforceable; and (3) RESOLVE provides than an arbitrator may award any relief that a claimant could achieve in a court of law

and, therefore, RESOLVE is not unconscionable. A true and accurate copy of Sterling's April 18, 2008 letter to counsel for Counterclaim Defendants is attached hereto as Exhibit R.

40.    On April 28, 2008, Counterclaim Defendants responded to Sterling's April 18, 2008 letter to AAA, which asserted that Counterclaim Defendants' claims were premature and inappropriate. Therein, Counterclaim Defendants request that the AAA continue to suspend the arbitration until this Court determines the legal implications of the RESOLVE program and asserts that the RESOLVE rules are operative. A true and accurate copy of Counterclaim Defendants' April 28, 2008 letter is attached hereto as Exhibit S.

41.    On April 29, 2008, the AAA advised the Counterclaim Defendants and Sterling that "in absence of an agreement by the parties or a court order dismissing this matter, the Association will continue to hold this matter in abeyance." A true and accurate copy of the AAA's April 29, 2008 letter is attached hereto as Exhibit T.

## Facts Applicable To The Third Cause Of Action In The Counterclaim

42.    On March 18, 2008, fifteen (15) named Plaintiffs filed the Complaint, styled as a collective and class action with over 20,000 putative class members for alleged gender discrimination under Title VII of the Civil Rights Act of 1964 and a collective action for alleged unequal pay under the Equal Pay Act.

43.    On March 18, 2008, named Plaintiffs Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Maria House, Denise Maddox, Lisa McConnell, Judy Reed, Linda Rhodes, Nina Shahmirzadi, Dawn Souto-Coons, and Marie Wolf filed written consents to join the Equal Pay Act collective action. (Complaint ¶ 10, Ex. 2).

44.    On April 23, 2008, Plaintiffs filed an Amended Complaint, naming an additional Plaintiff and again styling their lawsuit as a collective and class action with over 20,000 putative

class members for alleged gender discrimination under Title VII of the Civil Rights Act of 1964 and a collective action for alleged unequal pay under the Equal Pay Act.

45.    On April 23, 2008, named Plaintiffs Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Kelly Contreras, Maria House, Denise Maddox, Lisa McConnell, Judy Reed, Linda Rhodes, Nina Shahmirzadi, Dawn Souto-Coons, and Marie Wolf filed written consents to join the Equal Pay Act collective action. (Am. Compl., Ex. 2).

46.    On May 2, 2006, named Plaintiffs Jock, Boyle, Reed, Souto-Coons, Wolf, and Lisa Follett filed claims under RESOLVE, alleging, *inter alia*, a pattern or practice of sex discrimination in pay on behalf of themselves and other similarly situated individuals. (Am. Compl. ¶ 7; Exhibit U, attached hereto and incorporated herein).

47.    The named Plaintiffs allege that RESOLVE is unenforceable. (Am. Compl. ¶ 9).

48.    As to the Equal Pay Act collective action, the named Plaintiffs allege "[t]he members of the class are all female Retail Sales Employees employed in the United States by Sterling on any time after February 27, 2003 until the end of the period provided by law." (Am. Compl. ¶ 44).

49.    Thus, the named Plaintiffs purport to bring an Equal Pay Act collective action with an alleged liability period beginning *more than five years* before the filing of the Complaint and written consents by named Plaintiffs Jock, Boyle, Chadwick, House, Maddox, McConnell, Reed, Rhodes, Shahmirzadi, Souto-Coons, and Wolf per 29 U.S.C. § 216(b). *See* 29 U.S.C. § 255(a).

### FIRST CAUSE OF ACTION – Declaratory Judgment

50.    Sterling repeats, realleges, and incorporates herein by reference each and every allegation contained in all preceding paragraphs of its Counterclaim as if fully set forth herein.

51.    Sterling seeks a judgment from the Court declaring that any arbitrations conducted under RESOLVE must be conducted on an individual basis and not as a class or collective action.

WHEREFORE Sterling demands judgment on the First Cause of Action against Counterclaim Defendants and prays for the following relief:

(a)    A declaration that, as expressly agreed by the parties, "where a party [individual employee who agreed to RESOLVE] already initiated a judicial proceeding [like each of the Counterclaim Defendants], a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter," this Court, should decide that Counterclaim Defendants' claims cannot be adjudicated on a class or collective action;

(b)    A declaration that Counterclaim Defendants' claims must be adjudicated under RESOLVE on an individual basis, and not as a class or collective action;

(c)    A declaration that Counterclaim Defendants are precluded from bringing or participating in any action under RESOLVE on behalf of a putative class or collective, pursuant to the terms of RESOLVE; and

(d)    Such other relief that the Court may deem just and proper.

### SECOND CAUSE OF ACTION – Declaratory Judgment

52.    Sterling repeats, realleges, and incorporates herein by reference each and every allegation contained in all preceding paragraphs of its Counterclaim as if fully restated herein.

53.    Counterclaim Defendant Contreras's time to initiate the first step in the RESOLVE program expired on June 19, 2006. Contreras has never initiated the first step of RESOLVE.

54.    Counterclaim Defendant House's time to initiate the first step in the RESOLVE program expired on October 18, 2007. Although House initiated the first step in the RESOLVE program on October 6, 2006 (See Exhibit V), she failed to comply with the second step of the RESOLVE program within 30 days of the response date. House received a determination from the RESOLVE Program Administrator on November 6, 2006 (See Exhibit W). Counterclaim Defendant House's time to initiate the second step in the RESOLVE program expired in December 6, 2006. House never initiated Step 2 of RESOLVE and her claim is now time-barred.

55.    Counterclaim Defendant Maddox's time to initiate the first step in the RESOLVE program expired on November 1, 2007. Maddox did not initiate the first step in the RESOLVE program until March 19, 2008. (See Exhibit X).

56.    Counterclaim Defendant McConnell's time to initiate the first step in the RESOLVE program expired on August 30, 2006. McConnell did not initiate the first step in the RESOLVE program until March 18, 2008.

57.    Counterclaim Defendant Pagan's time to initiate the first step in the RESOLVE program expired on December 26, 2006. Pagan did not initiate the first step in the RESOLVE program until March 12, 2008.

58.    Sterling seeks a judgment from the Court declaring that the Court decide whether or not Counterclaim Defendants' claims are time-barred pursuant to the terms of RESOLVE.

WHEREFORE, Sterling demands judgment on the Second Cause of Action against Counterclaim Defendants Contreras, House, Maddox, McConnell, and Pagan and prays for the following relief:

(a)     A declaration that, as expressly agreed by the parties, "where a party [individual employee who agreed to RESOLVE] already initiated a judicial proceeding [like each of the Counterclaim Defendants], a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim)," this Court, and not an arbitrator, should decide whether or not the Counterclaim Defendants Contreras, House, Maddox, McConnell, and Pagan's claims are time barred pursuant to the terms of RESOLVE; and

(b)     Such other relief that the Court may deem just and proper.

### THIRD CAUSE OF ACTION – Declaratory Judgment

59.     Sterling repeats, realleges, and incorporates herein by reference each and every allegation contained in all preceding paragraphs of its Counterclaim as if fully set forth herein.

60.     Sterling seeks a judgment from the Court declaring that the appropriate limitations period and/or period of liability for claims of alleged violations of the Equal Pay Act set forth in Count III of Plaintiffs' Amended Complaint does not begin on February 27, 2003, based on plaintiffs' reliance on the alleged submittal of an individual RESOLVE claim by an individual employee on February 27, 2006, but rather begins two (2) years (for an alleged non-willful violation) or three (3) years (for an alleged willful violation) from the date that each employee filed her own action or appropriately filed an opt-in notice of consent to any existing action based on the period of liability as provided by the Equal Pay Act.

WHEREFORE, Sterling demands judgment on the Third Cause of Action against Counterclaim Defendants and prays for the following relief:

(a)     A declaration that the appropriate limitations period and/or period of liability for claims of alleged violations of the Equal Pay Act set forth in Count III of

Plaintiffs' Amended Complaint does not begin on February 27, 2003, based on plaintiffs' reliance on the alleged submittal of an individual RESOLVE claim by an individual employee on February 27, 2006, but rather begins two (2) years (for an alleged non-willful violation) or three (3) years (for an alleged willful violation) from the date that each employee filed her own action or appropriately filed an opt-in notice of consent to any existing action based on the period of liability as provided by the Equal Pay Act; and

(b)    Such other relief that the Court may deem just and proper.

Dated: New York, New York
         April 30, 2008

Respectfully submitted,

SEYFARTH SHAW LLP

By:  /s/ Gerald L. Maatman, Jr.
     Gerald L. Maatman, Jr. (GM-3201)
     gmaatman@seyfarth.com
     Lorie E. Almon (LA-4937)
     lalmon@seyfarth.com
     David Bennet Ross (DR-8613)
     dross@seyfarth.com
     Richard I. Scharlat (RS-5127)
     rscharlat@seyfarth.com
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

ZASHIN & RICH CO., L.P.A.
     Stephen S. Zashin
       *(petition for admission pending)*
     ssz@zrlaw.com
55 Public Square, 4th Floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Facsimile:    (216) 696-1618

*Attorneys for Defendant Sterling Jewelers Inc.*

## EXHIBITS TO COUNTERCLAIMS

| Exhibit | Description of Document |
| --- | --- |
| A | RESOLVE agreement of Maria House, dated June 20, 2005 |
| B | Employment Application of Maria House, dated June 4, 2005 |
| C | Employment Application of Gloria (Huff) Pagan, dated July 7, 2005 |
| D | Employment Application of Gloria (Huff) Pagan, dated August 9, 2005 |
| E | RESOLVE agreement of Lisa McConnell, dated June 20, 2001 |
| F | Employment Application of Lisa McConnell, dated May 15, 2001 |
| G | RESOLVE guidelines |
| H | Letter from Counterclaim Defendants' counsel to RESOLVE Manager, dated March 19, 2008 |
| I | Counterclaim Defendants' Demand for Arbitration and accompanying letters to AAA and Sterling's counsel (without exhibits). |
| J | Notification from AAA, dated April 1, 2008 |
| K | Sterling's letter to AAA, dated April 2, 2008 |
| L | Counterclaim Defendants' letter to AAA, dated April 9, 2008 |
| M | Letter from Joseph Spagnola, Manager, RESOLVE program, dated April 1, 2008. |
| N | Letters from Counterclaim Defendants' counsel, Sam Smith, dated March 12,18, and 19, 2008 |
| O | Letter from Counterclaim Defendants' counsel, Joseph Sellers, dated March 19, 2008 |
| P | Letter from AAA to the parties, dated April 11, 2008 |
| Q | Sterling's letter to the AAA, dated April 18, 2008 |
| R | Sterling's letter to counsel for Counterclaim Defendants, dated April 18, 2008 |
| S | Counterclaim Defendants' letter to AAA, dated April 28, 2008 |
| T | AAA's letter to parties, dated April 29, 2008 |

| U | May 2, 2006 RESOLVE claims of named Plaintiffs, Jock, Boyle, Reed, Souto-Coons, Wolf and Follett |
|---|---|
| V | Counterclaim Defendant House's RESOLVE claim, dated October 6, 2006 |
| W | Determination from RESOLVE on House's first step in RESOLVE program |
| X | Counterclaim Defendant Maddox's RESOLVE claim, dated March 19, 2008 |

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2008, I electronically filed the foregoing ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM OF DEFENDANT STERLING JEWELERS INC. with the Clerk of the United States District Court, Southern District of New York using the CM/ECF system, which sent notification of such filing to the following

Joseph M. Sellers
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005

Sam J. Smith
Burr & Smith, LLP
442 West Kennedy Blvd., Suite 300
Tampa, FL 33606

Thomas A. Warren
The Law Offices of Thomas A. Warren
2032-D Thomasville Road
Tallahassee, FL 32308
P.O. Box 1657
Tallahassee, FL 32302

Attorney for Plaintiffs And On Behalf
Of All Counsel for Plaintiffs


 /s/ Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.

# EXHIBIT A

**RESOLVE agreement of Maria House, dated June 20, 2005**

# CALIFORNIA
# RESOLVE PROGRAM
Alternative Dispute Resolution

---

## Arbitration Agreement

I, my heirs, spouse, successors, assigns, agents and representatives (collectively called "Employee"), hereby agree to utilize the Sterling RESOLVE Program to pursue any pre-employment, employment or post-employment dispute, claim, or controversy (collectively called "claim") against Sterling Jewelers Inc., its predecessors, successors, affiliates, parents, subsidiaries, divisions, related companies, current and former directors, officers, shareholders, representatives, employees, insureds, members and attorneys (collectively called "Sterling") regarding any alleged unlawful act regarding my application for employment, employment or the termination of my employment which could have otherwise been brought before an appropriate court including, but not limited to, claims under the Age Discrimination in Employment Act; Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act; the Americans with Disabilities Act; The Fair Labor Standard Act; The Family and Medical Leave Act; any state anti-discrimination statutes; wage and hour laws; equal pay laws; any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance; or any public policy, contract, tort or common law.

In consideration for signing this Agreement, Sterling agrees to: 1) utilize the RESOLVE Program for any claims against Employee (e.g., theft, embezzlement, restitution, trade secrets/propriety information, other willful misconduct, etc.); and 2) pay all costs of arbitration imposed by the American Arbitration Association ("AAA") including filing fees as set forth by AAA.

This Agreement waives the parties rights to obtain any legal or equitable relief (e.g., monetary, injunctive or reinstatement) through any court, and they also waive their right to commence any court action to the extent that is permissible under law provided that either party may seek equitable relief to preserve the status quo pending final disposition under the RESOLVE Program. The parties may seek and be awarded any remedy through the RESOLVE Program that they could receive in a court of law. Nothing in this Agreement precludes either party from filing a charge or complaint with appropriate governmental administrative agencies and to assist or cooperate with such agencies in their investigation or prosecution of charges or complaints, although the parties waive their right to any remedy or relief as a result of such charges or complaints brought by such governmental administrative agencies to the extent that is permissible under law.

The parties agree to follow the multi-step process outlined in the RESOLVE Program, which culminates in the use of arbitration. In such an event, the claim shall be arbitrated by one arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") as amended by the Sterling RESOLVE Program. The arbitrator's decision shall be final and binding. The arbitrator shall have the power to award any types of legal or equitable relief that would be available under applicable law.

Unless prohibited by law, a demand to use the RESOLVE Program must be made in writing and must be postmarked or delivered to the RESOLVE Program Administrator no later than one (1) year after the alleged unlawful conduct has occurred. Failure expressly to demand use of RESOLVE, in writing, within that time limitation shall serve as a waiver and release with respect to all such claims.

This Agreement is being made under the provision of the Federal Arbitration Act (9 U.S.C., Section 1-14) and will be construed and governed accordingly. Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator. Likewise, procedural questions, which grow out of the dispute and bear on the final disposition, are also matters for the arbitrator. However, where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

A copy of the RESOLVE Program Arbitration Rules are attached, and the AAA Employment Dispute Resolution Rules ("National Rules for the Resolution of Employment Disputes") are available for review on AAA's web site at www.adr.org. In the event of a conflict between the RESOLVE Program Arbitration Rules and the AAA Employment Dispute Resolution Rules, the RESOLVE Program Arbitration Rules will control.

Employment with Sterling is at-will and may be terminated at any time for any reason by either party with or without prior notice.

Any claim under this Agreement shall be governed by the law of the jurisdiction in which the claim arose. This Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Ohio. Absent an undue hardship as determined by arbitrator, the arbitration shall occur near where Employee worked for Sterling.

If any term or provision of this Agreement is declared illegal or unenforceable and cannot be modified to be enforceable, such term or provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

The terms of this Agreement cannot be orally modified. This Agreement may not be modified unless the Agreement is altered in writing and signed by Sterling's Executive Committee and Employee.

The parties understand and agree that this Agreement contains adequate consideration, the receipt and sufficiency of which is hereby acknowledged. Employee has been advised of his/her right to consult with an attorney of his/her choice regarding this Agreement.

Employee acknowledges that he/she has the right to opt out of this Agreement by sending a letter to RESOLVE Program Administration, c/o RESOLVE Program Administrator at 375 Ghent Road, Akron, Ohio 44333, and postmarked within 30 calendar days, stating Employee wishes to "opt-out" of this Agreement. Employee also acknowledges that he/she has an affirmative duty to report to the RESOLVE Program Administrator in writing if he/she has in any manner been threatened or coerced to enter into this Agreement.

_Maria Hause_      _6/20/05_

Employee Signature        Date

_MARIA HOUSE_      _2198_

Print Name        Store Number

_____

For Sterling Jewelers Inc.

# EXHIBIT B

**Employment Application of Maria House, dated June 4, 2005**

REDACTED

Rev. 5/04


**STERLING JEWELERS Inc.**

California
**Employment Application**

APPLICANTS ARE CONSIDERED FOR POSITIONS FOR WHICH THEY ARE QUALIFIED AND EMPLOYEES ARE TREATED DURING EMPLOYMENT WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS, MENTAL OR PHYSICAL DISABILITY, OR ANY OTHER LEGALLY PROTECTED STATUS, AS REQUIRED BY LAW.

**PERSONAL**

LAST NAME House   FIRST Maria   MIDDLE Esther   SOCIAL SECURITY NUMBER

STREET ADDRESS   CITY BKFLD   STATE CA   ZIP   HOW LONG? 3 yrs

PREVIOUS STREET ADDRESS   CITY BKFLD   STATE CA   ZIP   HOW LONG? 4 yrs

HOME PHONE   BUSINESS PHONE (661) 832-5550   ALTERNATE PHONE WHERE MESSAGE CAN BE LEFT

**JOB INTEREST**

POSITION APPLYING FOR Jewelry Sales   SALARY REQUIRED $13.00/hr. + Com.   ARE YOU 18 YEARS OF AGE OR OVER? Yes

HAVE YOU EVER APPLIED TO OR BEEN EMPLOYED BY STERLING BEFORE   ☐ YES ☒ NO   IF YES, GIVE DATE AND LOCATION

AVAILABILITY: ☒ FULL-TIME   ☐ PART-TIME   ☐ TEMPORARY   ☐ NIGHTS   ☐ WEEKENDS   ☐ OVERTIME

ARE YOU LAID-OFF AND SUBJECT TO RECALL? ☐ YES ☒ NO   HOW DID YOU LEARN OF OUR ORGANIZATION? ☐ NEWSPAPER ☐ AGENCY ☒ EMPLOYEE REFERRAL ☒ WALK-IN

PLEASE LIST ANY RELATIVES OR FRIENDS EMPLOYED BY US N/A   PERSON WHO REFERRED YOU

HAVE YOU EVER BEEN CONVICTED OF, OR PLEAD GUILTY TO, A CONVICTION WITHIN THE LAST SEVEN YEARS? (applicants need not disclose felony convictions for marijuana-related offenses that are more than two years old.) ☒ NO
IF YES, PLEASE EXPLAIN:

HAVE YOU EVER BEEN REFUSED OR DO YOU BELIEVE YOU MIGHT BE REJECTED FOR BONDING? ☐ YES ☒ NO

ARE YOU A U.S.CITIZEN? Yes   IF NO, WHAT IS YOUR CURRENT STATUS?   EXPIRATION DATE (IF ANY):

IF CURRENTLY EMPLOYED, WHY DO YOU WISH TO LEAVE YOUR PRESENT POSITION? in Jewelry business.
① Limited earning Potential. ② At home in Jewelry business.

**EDUCATION**

| SCHOOL | NAME AND LOCATION OF SCHOOL | COURSE OF STUDY | NO. OF YEARS COMPLETED | DID YOU GRADUATE? | DEGREE OR DIPLOMA |
|---|---|---|---|---|---|
| COLLEGE | | | | ☐ YES ☐ NO | |
| HIGH | Delano High School Garces Hwy Delano, CA 93215 | Gen. Ed. | 4 | ☒ YES ☐ NO | Diploma |
| OTHER | Various Professional Management & Sales Training Seminars | Short term only | ☐ YES ☐ NO | Cert-ification |

LIST OTHER SPECIAL TRAINING RELATED TO THE EMPLOYMENT YOU ARE SEEKING, INCLUDING SPECIAL COURSES AND/OR CERTIFICATES. 20 years of experience in the Jewelry industry, as well as managing 2 Jewelry stores. Diamond certified. Professional development Mgt. & Sales training.

**EMPLOYMENT**

PLEASE GIVE ACCURATE, COMPLETE FULL-TIME AND PART-TIME EMPLOYMENT RECORD. START WITH PRESENT OR MOST RECENT EMPLOYER

**1**

COMPANY NAME Macy's West   TELEPHONE (661) 832-5550

ADDRESS (STREET / CITY / STATE / ZIP) 2701 Ming Ave BKFLD, CA   EMPLOYED (MONTH AND YEAR) FROM April 2003 TO Present

NAME OF SUPERVISOR Julie Mellon   PAY RATE START $12.00 hr.   LAST $12.50 hr.

STATE JOB TITLE AND DESCRIBE YOUR WORK I.N.C. Product Specialist. Personal shopper for VIP's. Previous employee of the year and ranked 48th out of 24,000 employees

REASON FOR LEAVING: in express credits Want more earning Potential. Used to much more income

COMPANY NAME *Michaels Jewelers*
TELEPHONE ( ) *No Longer in business*

ADDRESS (STREET / CITY / STATE / ZIP) *2701 Ming Ave*
EMPLOYED (MONTH AND YEAR) FROM *Nov. 2001* TO *April 2003*

NAME OF SUPERVISOR *John Sarin*
PAY RATE START *$3,000⁰⁰/mo.* LAST *$3,000/mo.*

**2**

STATE JOB TITLE AND DESCRIBE YOUR WORK *Store Manager. Responsible for all store operations.*

REASON FOR LEAVING: *Company went Chapter 11 & Closed location*

---

COMPANY NAME *Zales*
TELEPHONE *(661) 835 - 7000*

ADDRESS (STREET / CITY / STATE / ZIP) *2701 Ming Ave*
EMPLOYED (MONTH AND YEAR) FROM *March 1999* TO *November 2001*

NAME OF SUPERVISOR *Todd Lovus*
PAY RATE START *2,500⁰⁰/mo.* LAST *$2,700/mo.*

**3**

STATE JOB TITLE AND DESCRIBE YOUR WORK *Store Manager. Responsible for all store operations*

REASON FOR LEAVING: *Recruited by Michaels for better pay & Benefits*

---

COMPANY NAME *Radio Shack*
TELEPHONE *(661) 393-2512*

ADDRESS (STREET / CITY / STATE / ZIP) *Airport Rd. (Olive Dr. Now)*
EMPLOYED (MONTH AND YEAR) FROM *Nov. 1992* TO *March 1995*

NAME OF SUPERVISOR *Rick Fruge*
PAY RATE START *$1,500/mo.* LAST *$1,900⁰⁰/mo.*

**4**

STATE JOB TITLE AND DESCRIBE YOUR WORK *Store Manager. Responsible for for all store Operations*

REASON FOR LEAVING: *Left due to Pregnancy and stayed home*

---

WE MAY CONTACT THE EMPLOYERS LISTED ABOVE UNLESS YOU INDICATE THOSE YOU DO NOT WANT US TO CONTACT

DO NOT CONTACT EMPLOYER NUMBER *1* REASON *currently employed there*

IF YOU WERE EMPLOYED UNDER ANOTHER NAME AT ANY OF YOUR PREVIOUS JOBS, PLEASE STATE YOUR NAME AT THE TIME AND FOR WHICH EMPLOYER: *Radio Shack, Maria Urias*

PLEASE EXPLAIN ANY PERIODS OF UNEMPLOYMENT OR OTHER PERIODS NOT ACCOUNTED FOR ABOVE: *In 1995, I left Radio Shack and had a daughter in January 1996 and anothe in October 1997. Stayed at home with them.*

IF EMPLOYED BY THE COMPANY, YOU AGREE TO ABIDE BY ITS RULES AND REGULATIONS. FURTHER, YOU UNDERSTAND THAT THE EMPLOYMENT, WHICH IS ENTERED INTO VOLUNTARILY, IS NOT FOR A STATED PERIOD OF TIME AND YOU ARE FREE TO RESIGN AT ANY TIME. SIMILARLY, THE COMPANY MAY TERMINATE THE EMPLOYMENT RELATIONSHIP WHEN IT BELIEVES IT IS IN THE COMPANY'S BEST INTERESTS. NO MANAGER OR REPRESENTATIVE OF STERLING JEWELERS INC., OTHER THAN THE CHAIRMAN OF THE COMPANY, HAS AUTHORITY TO MAKE ANY AGREEMENT FOR EMPLOYMENT FOR ANY SPECIFIC PERIOD OF TIME OR TO MAKE ANY AGREEMENT CONTRARY TO THE FOREGOING.

IN CONSIDERATION OF THE COMPANY'S REVIEW OF YOUR EMPLOYMENT APPLICATION AND THE COMPANY'S AGREEMENT TO UTILIZE THE COMPANY'S BINDING AND MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROGRAM ("RESOLVE") TO RESOLVE COVERED DISPUTES YOU AGREE TO USE RESOLVE TO RESOLVE COVERED DISPUTES THAT YOU MAY HAVE AGAINST THE COMPANY. BY SIGNING THIS APPLICATION, IN EXCHANGE FOR THE COMPANY'S CONSIDERATION OF YOUR EMPLOYMENT APPLICATION AND THE COMPANY'S AGREEMENT TO USE RESOLVE, YOU KNOWINGLY AND VOLUNTARILY WAIVE YOUR APPLICABLE STATUTORY RIGHTS TO FILE A LAWSUIT AGAINST THE COMPANY FOR A COVERED CLAIM AND YOUR CONSTITUTIONAL RIGHT TO A JURY TRIAL. YOU HAVE THE RIGHT TO OPT OUT OF THIS MANDATORY ARBITRATION PROGRAM BY SENDING A LETTER TO **RESOLVE PROGRAM ADMINISTRATION**, C/O RESOLVE PROGRAM ADMINISTRATOR AT 375 GHENT ROAD, AKRON, OHIO 44333, AND POSTMARKED WITHIN 30 CALENDAR DAYS, STATING THAT YOU WISH TO "OPT-OUT" OF THIS PROGRAM. YOU ALSO ACKNOWLEDGE THAT YOU HAVE AN AFFIRMATIVE DUTY TO REPORT TO THE RESOLVE PROGRAM ADMINISTRATOR IN WRITING IF YOU HAVE BEEN THREATENED OR COERCED TO ENTER INTO THIS PROGRAM IN ANY MANNER. IF YOU WOULD LIKE A COPY OF THE ADR PROGRAM PRIOR TO EXECUTING THIS APPLICATION, PLEASE CONTACT 1-800-394-4205 AND REQUEST A COPY.

BY SIGNING THIS APPLICATION, YOU AUTHORIZE THE COMPANY TO MAKE ANY INVESTIGATION OF EDUCATION, EMPLOYMENT, PERSONAL HISTORY AND FINANCIAL AND CREDIT RECORDS THROUGH INVESTIGATIVE AND CREDIT AGENCIES AND BUREAUS OF THE COMPANY'S CHOICE. THE SIGNATURE ALSO INDICATES AN AWARENESS THAT FALSE STATEMENTS OR FAILURE TO DISCLOSE INFORMATION MAY DISQUALIFY YOU FROM EMPLOYMENT OR, IF EMPLOYED, MAY RESULT IN YOUR DISMISSAL.

SIGNATURE OF APPLICANT *Maria Aruse*     DATE *6-4-05*

Sterling Jewelers

0200-200-call
687452

**EXHIBIT C**

**Employment Application of Gloria (Huff) Pagan, dated July 7, 2005**

**REDACTED**


**STERLING JEWELERS** Inc.

# 250599    Rev. 5/04

**Employment Application**

APPLICANTS ARE CONSIDERED FOR POSITIONS FOR WHICH THEY ARE QUALIFIED AND EMPLOYEES ARE TREATED DURING EMPLOYMENT WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS, MENTAL OR PHYSICAL DISABILITY, OR ANY OTHER LEGALLY PROTECTED STATUS, AS REQUIRED BY LAW.

## PERSONAL

LAST NAME: Huff   FIRST: Gloria (maggie)   MIDDLE: Juliana   SOCIAL SECURITY NUMBER:

STREET ADDRESS:   CITY: St Louis   STATE: MO   ZIP:   HOW LONG? 2 months

PREVIOUS STREET ADDRESS:   CITY: Barnhart   STATE: MO   ZIP:   HOW LONG? 1 year

HOME PHONE:   BUSINESS PHONE: ( )   ALTERNATE PHONE WHERE MESSAGE CAN BE LEFT:

## JOB INTEREST

POSITION APPLYING FOR:   SALARY REQUIRED:   ARE YOU 18 YEARS OF AGE OR OVER? Yes

HAVE YOU EVER APPLIED TO OR BEEN EMPLOYED BY STERLING BEFORE? ☐ YES ☑ NO   IF YES, GIVE DATE AND LOCATION

AVAILABILITY: ☑ FULL-TIME ☐ PART-TIME ☐ TEMPORARY ☑ NIGHTS ☑ WEEKENDS ☑ OVERTIME

ARE YOU LAID-OFF AND SUBJECT TO RECALL? ☐ YES   HOW DID YOU LEARN OF OUR ORGANIZATION? ☐ NEWSPAPER ☐ AGENCY ☑ EMPLOYEE REFERRAL ☐ WALK-IN

PLEASE LIST ANY RELATIVES OR FRIENDS EMPLOYED BY US   PERSON WHO REFERRED YOU: Joseph Pagan

HAVE YOU EVER BEEN CONVICTED OF A FELONY? ☐ YES ☑ NO
IF YES, PLEASE EXPLAIN:

HAVE YOU EVER BEEN REFUSED OR DO YOU BELIEVE YOU MIGHT BE REJECTED FOR BONDING? ☐ YES ☑ NO

ARE YOU A U.S. CITIZEN? Yes   IF NO, WHAT IS YOUR CURRENT STATUS?   EXPIRATION DATE (IF ANY):

IF CURRENTLY EMPLOYED, WHY DO YOU WISH TO LEAVE YOUR PRESENT POSITION?

## EDUCATION

| SCHOOL | NAME AND LOCATION OF SCHOOL | COURSE OF STUDY | NO. OF YEARS COMPLETED | DID YOU GRADUATE? | DEGREE OR DIPLOMA |
|---|---|---|---|---|---|
| COLLEGE | | | | ☐ YES ☐ NO | |
| HIGH | Home School | | | ☑ YES ☐ NO | GED |
| OTHER | | | | ☐ YES ☐ NO | 2005 |

LIST OTHER SPECIAL TRAINING RELATED TO THE EMPLOYMENT YOU ARE SEEKING, INCLUDING SPECIAL COURSES AND/OR CERTIFICATES.

## EMPLOYMENT

PLEASE GIVE ACCURATE, COMPLETE FULL-TIME AND PART-TIME EMPLOYMENT RECORD, START WITH PRESENT OR MOST RECENT EMPLOYER

**1**

COMPANY NAME: K-mart   TELEPHONE: (210) 240-1095

ADDRESS (STREET / CITY / STATE / ZIP):   EMPLOYED (MONTH AND YEAR) FROM June 29 05 to July 05

NAME OF SUPERVISOR: Anne   PAY RATE START 7.25   LAST 7.25

STATE JOB TITLE AND DESCRIBE YOUR WORK: Customer Service

REASON FOR LEAVING:

| | | |
|---|---|---|
| **2** | COMPANY NAME _Fashion Bug_ | TELEPHONE (836 2916-5056 |
| | ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR) FROM Nov 12-04  TO May 23-05 |
| | NAME OF SUPERVISOR _Donna Helton_ | PAY RATE START 6.50   LAST 6.50 |
| | STATE JOB TITLE AND DESCRIBE YOUR WORK _Sales associate. Customer survise, working registers, stock, General organization of store, Charges._ | |
| | REASON FOR LEAVING: _moved_ | |

| | | |
|---|---|---|
| **3** | COMPANY NAME _Ciscos_ | TELEPHONE (626) 931-7373 |
| | ADDRESS (STREET / CITY / STATE / ZIP) N/A | EMPLOYED (MONTH AND YEAR) FROM July 14-04  TO Nov 16-04 |
| | NAME OF SUPERVISOR _Rick Dohack_ | PAY RATE START 5.50   LAST 5.50 |
| | STATE JOB TITLE AND DESCRIBE YOUR WORK _Hostess, Greeting people at door, seating them, Answering phones, Customer survise._ | |
| | REASON FOR LEAVING: _Not enough hours._ | |

| | | |
|---|---|---|
| **4** | COMPANY NAME | TELEPHONE ( ) |
| | ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR) FROM  TO |
| | NAME OF SUPERVISOR | PAY RATE START   LAST |
| | STATE JOB TITLE AND DESCRIBE YOUR WORK | |
| | REASON FOR LEAVING: | |

| | |
|---|---|
| WE MAY CONTACT THE EMPLOYERS LISTED ABOVE UNLESS YOU INDICATE THOSE YOU DO NOT WANT US TO CONTACT | DO NOT CONTACT EMPLOYER NUMBER _____ REASON _____ |

IF YOU WERE EMPLOYED UNDER ANOTHER NAME AT ANY OF YOUR PREVIOUS JOBS, PLEASE STATE YOUR NAME AT THE TIME AND FOR

WHICH EMPLOYER: _____

PLEASE EXPLAIN ANY PERIODS OF UNEMPLOYMENT OR OTHER PERIODS NOT ACCOUNTED FOR ABOVE: _____

_____

IF EMPLOYED BY THE COMPANY, YOU AGREE TO ABIDE BY ITS RULES AND REGULATIONS. FURTHER, YOU UNDERSTAND THAT THE EMPLOYMENT, WHICH IS ENTERED INTO VOLUNTARILY, IS NOT FOR A STATED PERIOD OF TIME AND YOU ARE FREE TO RESIGN AT ANY TIME. SIMILARLY, THE COMPANY MAY TERMINATE THE EMPLOYMENT RELATIONSHIP WHEN IT BELIEVES IT IS IN THE COMPANY'S BEST INTERESTS. NO MANAGER OR REPRESENTATIVE OF STERLING JEWELERS INC., OTHER THAN THE CHAIRMAN OF THE COMPANY, HAS AUTHORITY TO MAKE ANY AGREEMENT FOR EMPLOYMENT FOR AT SPECIFIC PERIOD OF TIME OR TO MAKE ANY AGREEMENT CONTRARY TO THE FOREGOING.

IN CONSIDERATION OF THE COMPANY'S REVIEW OF YOUR EMPLOYMENT APPLICATION AND THE COMPANY'S AGREEMENT TO UTILIZE THE COMPANY'S BINDING AND MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROGRAM ("RESOLVE") TO RESOLVE COVERED DISPUTES, YOU AGREE TO USE RESOLVE TO RESOLVE COVERED DISPUTES THAT YOU MAY HAVE AGAINST THE COMPANY. BY SIGNING THIS APPLICATION, IN EXCHANGE FOR THE COMPANY'S CONSIDERATION OF YOUR EMPLOYMENT APPLICATION AND THE COMPANY'S AGREEMENT TO USE RESOLVE, YOU KNOWINGLY AND VOLUNTARILY WAIVE YOUR APPLICABLE STATUTORY RIGHTS TO FILE A LAWSUIT AGAINST THE COMPANY FOR A COVERED CLAIM AND YOUR CONSTITUTIONAL RIGHT TO A JURY TRIAL. IF YOU WOULD LIKE A COPY OF THE ADR PROGRAM PRIOR TO EXECUTING THIS APPLICATION, PLEASE CONTACT 1-800-394-4205 AND REQUEST A COPY.

BY SIGNING THIS APPLICATION, YOU AUTHORIZE THE COMPANY TO MAKE ANY INVESTIGATION OF EDUCATION, EMPLOYMENT, PERSONAL HISTORY AND FINANCIAL AND CREDIT RECORDS THROUGH INVESTIGATIVE AND CREDIT AGENCIES AND BUREAUS OF THE COMPANY'S CHOICE. THE SIGNATURE ALSO INDICATES AN AWARENESS THAT FALSE STATEMENTS OR FAILURE TO DISCLOSE INFORMATION MAY DISQUALIFY YOU FROM EMPLOYMENT OR, IF EMPLOYED, MAY RESULT IN YOUR DISMISSAL.

SIGNATURE OF APPLICANT _Gloria Huff_ _____ DATE 7-7-05

STERLING JEWELERS

0200-200-0000
687452

# EXHIBIT D

**Employment Application of Gloria (Huff) Pagan,
dated August 9, 2005**

**REDACTED**

Rev. 5/04


**STERLING JEWELERS Inc.**

**Employment Application**

APPLICANTS ARE CONSIDERED FOR POSITIONS FOR WHICH THEY ARE QUALIFIED AND EMPLOYEES ARE TREATED DURING EMPLOYMENT WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS, MENTAL OR PHYSICAL DISABILITY, OR ANY OTHER LEGALLY PROTECTED STATUS, AS REQUIRED BY LAW.

## PERSONAL

| LAST NAME Huff | FIRST Gloria | MIDDLE Juliana | SOCIAL SECURITY NUMBER |
| STREET ADDRESS | CITY St.louis | STATE MO | ZIP | HOW LONG? 8 months |
| PREVIOUS STREET ADDRESS | CITY Barnhart mo. | STATE | ZIP | HOW LONG? |
| HOME PHONE | BUSINESS PHONE ( ) | ALTERNATE PHONE WHERE MESSAGE CAN BE LEFT |

## JOB INTEREST

POSITION APPLYING FOR  Sales Assoc.    SALARY REQUIRED 9.00    ARE YOU 18 YEARS OF AGE OR OVER? yes

HAVE YOU EVER APPLIED TO OR BEEN EMPLOYED BY STERLING BEFORE    ☐ YES  ☒ NO    IF YES, GIVE DATE AND LOCATION

AVAILABILITY:  ☒ FULL-TIME  ☐ PART-TIME  ☐ TEMPORARY  ☒ NIGHTS  ☒ WEEKENDS  ☒ OVERTIME

ARE YOU LAID-OFF AND SUBJECT TO RECALL?  ☐ YES  ☒ NO    HOW DID YOU LEARN OF OUR ORGANIZATION?  ☐ NEWSPAPER  ☐ AGENCY  ☒ EMPLOYEE REFERRAL  ☐ WALK-IN

PLEASE LIST ANY RELATIVES OR FRIENDS EMPLOYED BY US    PERSON WHO REFERRED YOU  Beth Dugan

HAVE YOU EVER BEEN CONVICTED OF A FELONY?  ☐ YES  ☒ NO
IF YES, PLEASE EXPLAIN:

HAVE YOU EVER BEEN REFUSED OR DO YOU BELIEVE YOU MIGHT BE REJECTED FOR BONDING?  ☐ YES  ☒ NO

ARE YOU A U.S.CITIZEN?  yes    IF NO, WHAT IS YOUR CURRENT STATUS?    EXPIRATION DATE (IF ANY):

IF CURRENTLY EMPLOYED, WHY DO YOU WISH TO LEAVE YOUR PRESENT POSITION?

## EDUCATION

| SCHOOL | NAME AND LOCATION OF SCHOOL | COURSE OF STUDY | NO. OF YEARS COMPLETED | DID YOU GRADUATE? | DEGREE OR DIPLOMA |
|---|---|---|---|---|---|
| COLLEGE | | | | ☐ YES<br>☐ NO | |
| HIGH | Home school | Gen. | 12 | ☒ YES<br>☐ NO | GED |
| OTHER | | | | ☐ YES<br>☐ NO | |

LIST OTHER SPECIAL TRAINING RELATED TO THE EMPLOYMENT YOU ARE SEEKING, INCLUDING SPECIAL COURSES AND/OR CERTIFICATES.

## EMPLOYMENT

PLEASE GIVE ACCURATE, COMPLETE FULL-TIME AND PART-TIME EMPLOYMENT RECORD. START WITH PRESENT OR MOST RECENT EMPLOYER

**1**

COMPANY NAME  K-mart    TELEPHONE (636) 240-6995

ADDRESS (STREET / CITY / STATE / ZIP)  N/A    EMPLOYED (MONTH AND YEAR) FROM June 28th 06 TO now

NAME OF SUPERVISOR  Anne Williams    PAY RATE START 7.25  LAST 7.25

STATE JOB TITLE AND DESCRIBE YOUR WORK  Customer survise, working registers, stock, layaway, General organization of store, Customer survise, Cash handling

REASON FOR LEAVING:

| | | |
|---|---|---|
| | COMPANY NAME  *Fashion Bug* | TELEPHONE  (186) 290-5056 |
| 2 | ADDRESS (STREET / CITY / STATE / ZIP)  *N/A* | EMPLOYED (MONTH AND YEAR)  FROM *Nov-12-2004* TO *May-27-2005* |
| | NAME OF SUPERVISOR  *Donna Helton* | PAY RATE  START *6.50*    LAST *6.50* |
| | STATE JOB TITLE AND DESCRIBE YOUR WORK  *Sales Assoc — stock, working floor, & registers, Customer service* | |
| | REASON FOR LEAVING:  *moved* | |

| | | |
|---|---|---|
| | COMPANY NAME | TELEPHONE  ( ) |
| 3 | ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR)  FROM     TO |
| | NAME OF SUPERVISOR | PAY RATE  START     LAST |
| | STATE JOB TITLE AND DESCRIBE YOUR WORK | |
| | REASON FOR LEAVING: | |

| | | |
|---|---|---|
| | COMPANY NAME | TELEPHONE  ( ) |
| 4 | ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR)  FROM     TO |
| | NAME OF SUPERVISOR | PAY RATE  START     LAST |
| | STATE JOB TITLE AND DESCRIBE YOUR WORK | |
| | REASON FOR LEAVING: | |

| | |
|---|---|
| WE MAY CONTACT THE EMPLOYERS LISTED ABOVE UNLESS YOU INDICATE THOSE YOU DO NOT WANT US TO CONTACT | DO NOT CONTACT  EMPLOYER NUMBER _____ REASON _____ |

IF YOU WERE EMPLOYED UNDER ANOTHER NAME AT ANY OF YOUR PREVIOUS JOBS, PLEASE STATE YOUR NAME AT THE TIME AND FOR

WHICH EMPLOYER: _____

PLEASE EXPLAIN ANY PERIODS OF UNEMPLOYMENT OR OTHER PERIODS NOT ACCOUNTED FOR ABOVE: _____

_____

IF EMPLOYED BY THE COMPANY, YOU AGREE TO ABIDE BY ITS RULES AND REGULATIONS. FURTHER, YOU UNDERSTAND THAT THE EMPLOY-MENT, WHICH IS ENTERED INTO VOLUNTARILY, IS NOT FOR A STATED PERIOD OF TIME AND YOU ARE FREE TO RESIGN AT ANY TIME. SIMI-LARLY, THE COMPANY MAY TERMINATE THE EMPLOYMENT RELATIONSHIP WHEN IT BELIEVES IT IS IN THE COMPANY'S BEST INTERESTS. NO MANAGER OR REPRESENTATIVE OF STERLING JEWELERS INC., OTHER THAN THE CHAIRMAN OF THE COMPANY, HAS AUTHORITY TO MAKE ANY AGREEMENT FOR EMPLOYMENT FOR AT SPECIFIC PERIOD OF TIME OR TO MAKE ANY AGREEMENT CONTRARY TO THE FOREGOING.

IN CONSIDERATION OF THE COMPANY'S REVIEW OF YOUR EMPLOYMENT APPLICATION AND THE COMPANY'S AGREEMENT TO UTILIZE THE COM-PANY'S BINDING AND MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROGRAM ("RESOLVE") TO RESOLVE COVERED DISPUTES, YOU AGREE TO USE RESOLVE TO RESOLVE COVERED DISPUTES THAT YOU MAY HAVE AGAINST THE COMPANY. BY SIGNING THIS APPLICATION, IN EXCHANGE FOR THE COMPANY'S CONSIDERATION OF YOUR EMPLOYMENT APPLICATION AND THE COMPANY'S AGREEMENT TO USE RESOLVE, YOU KNOW-INGLY AND VOLUNTARILY WAIVE YOUR APPLICABLE STATUTORY RIGHTS TO FILE A LAWSUIT AGAINST THE COMPANY FOR A COVERED CLAIM AND YOUR CONSTITUTIONAL RIGHT TO A JURY TRIAL. IF YOU WOULD LIKE A COPY OF THE ADR PROGRAM PRIOR TO EXECUTING THIS APPLICATION, PLEASE CONTACT 1-800-394-4205 AND REQUEST A COPY.

BY SIGNING THIS APPLICATION, YOU AUTHORIZE THE COMPANY TO MAKE ANY INVESTIGATION OF EDUCATION, EMPLOYMENT, PERSONAL HIS-TORY AND FINANCIAL AND CREDIT RECORDS THROUGH INVESTIGATIVE AND CREDIT AGENCIES AND BUREAUS OF THE COMPANY'S CHOICE. THE SIGNATURE ALSO INDICATES AN AWARENESS THAT FALSE STATEMENTS OR FAILURE TO DISCLOSE INFORMATION MAY DISQUALIFY YOU FROM EMPLOYMENT OR, IF EMPLOYED, MAY RESULT IN YOUR DISMISSAL.

SIGNATURE OF APPLICANT *Gloria Huff*     DATE *08-09-05*

**EXHIBIT E**

**RESOLVE agreement of Lisa McConnell, dated June 20, 2001**

<div align="center">

Sterling Jewelers Inc.
# RESOLVE PROGRAM
Alternative Dispute Resolution

</div>

---

## Arbitration Agreement

I hereby agree to utilize the Sterling RESOLVE Program to pursue any dispute, claim, or controversy ("claim") against Sterling, its predecessors, successors, affiliates, parent, subsidiaries, divisions, related companies, current and former directors, officers, shareholders, representatives, employees, insureds, members and servants regarding any alleged unlawful act regarding my employment or the termination of my employment which could have otherwise been brought before an appropriate government administrative agency or in an appropriate court including, but not limited to, claims under the Age Discrimination in Employment Act of 1967; The Older Workers Benefit Protection Act; Title VII of the Civil Rights Act of 1964; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States code; the Employee Retirement income Security Act of 1974; The Immigration Reform and Control Act; the Americans with Disabilities Act of 1990; The Fair Labor Standard Act; The Occupational Safety and Health Act; The Family and Medical Leave Act; any state Human Rights/Civil Rights Statutes; Minimum Wage Act; Equal Pay Law; any other federal, state or municipal civil or human rights law or any other municipal, state or federal law, regulation or ordinance; or any public policy, contract, tort or common law. I understand that by signing this Agreement I am waiving my right to obtain any legal or equitable relief (e.g., monetary, injunctive or reinstatement) through any government agency or court, and I am also waiving my right to commence any court action. I may, however, seek and be awarded equal remedy through the RESOLVE Program. I retain the right to file a charge or complaint with governmental administrative agencies such as the National Labor Relations Board or the Equal Employment Opportunity Commission and to assist or cooperate with such agencies in their investigation or prosecution of charges, although I waive my right to any remedy or relief as a result of such charges or complaints brought by such governmental administrative agencies.

I agree to follow the multi-step process outlined in the RESOLVE Program which culminates in the use of arbitration. In this event the claim shall be arbitrated by one Arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") as amended by the Sterling RESOLVE Program. I understand that I will be required to pay the first $250 of the costs of commencing an arbitration with the AAA and that the remainder of these costs will be paid by Sterling. The decision or award of the Arbitrator shall be final and binding upon the parties. The Arbitrator shall have the power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to, the costs of arbitration, attorney fees and punitive damages for causes of action when such damages are available under law. An arbitration award may be entered as a judgment or order in any court of competent jurisdiction. I agree that any relief or recovery to which I am entitled from any claims

arising out of my employment or cessation of employment shall be limited to that awarded by the Arbitrator.

I understand that this Agreement is being made under the provision of the Federal Arbitration Act (9 U.S.C., Section 1-14) and will be construed and governed accordingly.

I understand that a copy of the RESOLVE Program Guidelines and the AAA Employment Dispute Resolution Rules are available for my review.

I understand that neither the terms nor conditions described in the Agreement are intended to create a contract of employment for a specific duration of time. Since employment with Sterling is voluntarily entered into, I am free to resign at any time. Similarly, Sterling may terminate the employment relationship with me at any time.

This Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Ohio.

If for any reason this Agreement is declared unenforceable, I agree to waive any right I may have to a jury trial with respect to any dispute or claim against Sterling relating to my employment, my termination, or any terms and conditions of my employment with Sterling.

If any term or provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such term or provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

The terms of this Agreement cannot be orally modified. Sterling reserves the right to modify this Agreement, if done so in writing, and only by the Sterling Executive Committee and the employee.

**I understand that I would not be or remain employed by Sterling absent of signing this Agreement.** I have been advised of my right to consult with an attorney of my choice, at my expense, regarding this Agreement. My agreement to accept arbitration can be revoked any time within fourteen (14) days of my signing this Agreement. Such revocation must be made in writing. My revocation of this agreement will result in immediate separation from Sterling. I have had an opportunity to consider this Agreement and have decided to sign knowingly, voluntarily, and free from duress or coercion.

_Lisa McConnell_

Employee Signature

_6/20/01_

Date

_LISA McCONNELL_

Print Name

_1642_

Store Number

SKU # 0269-100-0000
HR - Revision 8/98

# EXHIBIT F

**Employment Application of Lisa McConnell, dated May 15, 2001**

*MTW ... Non Hand ... ahia ＋ ＆ F, S, L, Mglns*
*＆ Mon tg savings*
*＊ and ＊ the 2008*

# STERLING
## Jewelers Inc.

**REDACTED**

**Employment Application**

APPLICANTS ARE CONSIDERED FOR POSITIONS FOR WHICH THEY ARE QUALIFIED AND EMPLOYEES ARE TREATED DURING EMPLOYMENT WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS, MENTAL OR PHYSICAL DISABILITY, OR ANY OTHER LEGALLY PROTECTED STATUS, AS REQUIRED BY LAW.

## PERSONAL

| LAST NAME McConnell | FIRST Lisa | MIDDLE Lynn | SOCIAL SECURITY NUMBER |
|---|---|---|---|

| STREET ADDRESS | CITY Elkhart | STATE IN | ZIP | HOW LONG? 6 yrs |
|---|---|---|---|---|

| PREVIOUS STREET ADDRESS | CITY | STATE | ZIP | HOW LONG? |
|---|---|---|---|---|

| HOME PHONE | BUSINESS PHONE ( ) | ALTERNATE PHONE WHERE MESSAGE CAN BE LEFT ( ) |
|---|---|---|

## JOB INTEREST

POSITION APPLYING FOR: **Sales**
SALARY REQUIRED:
ARE YOU 18 YEARS OF AGE OR OVER? **Yes**

HAVE YOU EVER APPLIED TO OR BEEN EMPLOYED BY STERLING BEFORE?  ☐ YES  ☑ NO   IF YES, GIVE DATE AND LOCATION

AVAILABILITY:  ☐ FULL-TIME  ☑ PART-TIME  ☐ TEMPORARY  ☐ NIGHTS  ☑ WEEKENDS  ☐ OVERTIME

ARE YOU LAID-OFF AND SUBJECT TO RECALL?  ☐ YES  ☑ NO
HOW DID YOU LEARN OF OUR ORGANIZATION?  ☐ NEWSPAPER  ☐ AGENCY  ☐ EMPLOYEE REFERRAL  ☐ WALK-IN

PLEASE LIST ANY RELATIVES OR FRIENDS EMPLOYED BY US.   PERSON WHO REFERRED YOU

HAVE YOU EVER BEEN CONVICTED OF A FELONY?
IF YES, PLEASE EXPLAIN:   ☐ YES  ☑ NO

HAVE YOU EVER BEEN REFUSED OR DO YOU BELIEVE YOU MIGHT BE REJECTED FOR BONDING?  No

ARE YOU A U.S. CITIZEN? Yes   IF NO, WHAT IS YOUR CURRENT STATUS?   EXPIRATION DATE (IF ANY):

IF CURRENTLY EMPLOYED, WHY DO YOU WISH TO LEAVE YOUR PRESENT POSITION?

## EDUCATION

| SCHOOL | NAME AND LOCATION OF SCHOOL | COURSE OF STUDY | NO. OF YEARS COMPLETED | DID YOU GRADUATE? | DEGREE OR DIPLOMA |
|---|---|---|---|---|---|
| COLLEGE | Ball State University | Music Education | | ☑ YES  ☐ NO | |
| HIGH | Triton High School | | | ☑ YES  ☐ NO | |
| OTHER | Ivy Tech State | CMA, Insurance, Transcription | 1 yr done 1 yr to go | ☐ YES  ☐ NO | |

LIST OTHER SPECIAL TRAINING RELATED TO THE EMPLOYMENT YOU ARE SEEKING, INCLUDING SPECIAL COURSES AND/OR CERTIFICATES.
Was an assistant manager in clothing store

## EMPLOYMENT

PLEASE GIVE ACCURATE, COMPLETE FULL-TIME AND PART-TIME EMPLOYMENT RECORD. START WITH PRESENT OR MOST RECENT EMPLOYER

**1**

COMPANY NAME Dutchman Mfg.   TELEPHONE

ADDRESS (STREET / CITY / STATE / ZIP)
EMPLOYED (MONTH AND YEAR) FROM Aug 1999   TO Mar 2000

NAME OF SUPERVISOR Sherri Barrett
PAY RATE START $9.00   LAST $9.50

STATE JOB TITLE AND DESCRIBE YOUR WORK
Vender Charge Back Program: I was in charge of charging back venders for warranty work on Dutchmen Products and then kept track of money paid/owed to Dutchmen and then wrote monthly report for corporate.

REASON FOR LEAVING:
Wanted career change.

| COMPANY NAME *COUNTY SEAT* | TELEPHONE ( ) *OUT OF BUSINESS* |
|---|---|
| ADDRESS (STREET / CITY / STATE / ZIP) *OUT OF BUSINESS* | EMPLOYED (MONTH AND YEAR) FROM *AUG 1998* TO *April 3 1999* |
| **2** NAME OF SUPERVISOR | PAY RATE START *8.50* LAST *9.00* |

STATE JOB TITLE AND DESCRIBE YOUR WORK
*ASSISTANT MANAGER*

REASON FOR LEAVING: *STORE CLOSED*

| COMPANY NAME *WILLIAMSBORG FURNITURE* | TELEPHONE ( ) |
|---|---|
| ADDRESS (STREET / CITY / STATE / ZIP) *NAPPANEE IN* | EMPLOYED (MONTH AND YEAR) FROM *1995* TO *1997* |
| **3** NAME OF SUPERVISOR *BEV CARTER* | PAY RATE START *10.00* LAST *12.00* |

STATE JOB TITLE AND DESCRIBE YOUR WORK
*HOME SEWER — CONTRACT WORK — RESPONSIBLE FOR SEWING THE INTERIOR*
*FURNITURE FOR FLEETWOOD RV's.*
REASON FOR LEAVING:
*THE SEWING WAS MAKING ME HAVE BACK PAIN.*

| COMPANY NAME *MILES LABS — CONTRACT COMPUTER WORK* | TELEPHONE ( ) |
|---|---|
| ADDRESS (STREET / CITY / STATE / ZIP) | EMPLOYED (MONTH AND YEAR) FROM *1988* TO *1990* |
| **4** NAME OF SUPERVISOR *SANDY LITTLE* | PAY RATE START *8.00* LAST *10.00* |

STATE JOB TITLE AND DESCRIBE YOUR WORK
*RESPONSIBLE FOR TESTING GLUCOMETERS AND THEN WRITING THE INFO IN*
*DOCUMENT FORM FOR SOFTWARE SPECIALISTS.*
REASON FOR LEAVING:
*THEY DID AWAY WITH CONTRACT WORK*

| WE MAY CONTACT THE EMPLOYERS LISTED ABOVE UNLESS YOU INDICATE THOSE YOU DO NOT WANT US TO CONTACT. | DO NOT CONTACT |
|---|---|
| | EMPLOYER NUMBER _____ REASON _____ |

IF YOU WERE EMPLOYED UNDER ANOTHER NAME AT ANY OF YOUR PREVIOUS JOBS, PLEASE STATE YOUR NAME AT THE TIME AND FOR WHICH EMPLOYER. _____

PLEASE EXPLAIN ANY PERIODS OF UNEMPLOYMENT OR OTHER PERIODS NOT ACCOUNTED FOR ABOVE. _____
*WAS A STAY AT HOME MOM IN BETWEEN TIMES*

IF EMPLOYED BY THE COMPANY, YOU AGREE TO ABIDE BY ITS RULES AND REGULATIONS. FURTHER, YOU UNDERSTAND THAT THE EMPLOYMENT, WHICH IS ENTERED INTO VOLUNTARILY, IS NOT FOR A STATED PERIOD OF TIME AND YOU ARE FREE TO RESIGN AT ANY TIME. SIMILARLY, THE COMPANY MAY TERMINATE THE EMPLOYMENT RELATIONSHIP WHEN IT BELIEVES IT IS IN THE COMPANY'S BEST INTERESTS. NO MANAGER OR REPRESENTATIVE OF STERLING JEWELERS INC., OTHER THAN THE CHAIRMAN OF THE COMPANY, HAS AUTHORITY TO MAKE ANY AGREEMENT FOR EMPLOYMENT FOR ANY SPECIFIC PERIOD OF TIME OR TO MAKE ANY AGREEMENT CONTRARY TO THE FOREGOING.

IF EMPLOYED BY THE COMPANY, YOU AND THE COMPANY AGREE TO UTILIZE THE COMPANY'S BINDING AND MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROGRAM TO RESOLVE CERTAIN WORKPLACE DISPUTES. BY SIGNING THIS APPLICATION, AND IN EXCHANGE FOR BEING HIRED BY THE COMPANY, YOU KNOWINGLY AND VOLUNTARILY WAIVE YOUR APPLICABLE STATUTORY RIGHTS TO FILE A LAWSUIT AGAINST THE COMPANY FOR A COVERED CLAIM.

BY SIGNING THIS APPLICATION, YOU AUTHORIZE THE COMPANY TO MAKE ANY INVESTIGATION OF EDUCATION, EMPLOYMENT, PERSONAL HISTORY AND FINANCIAL AND CREDIT RECORDS THROUGH INVESTIGATIVE AND CREDIT AGENCIES AND BUREAUS OF THE COMPANY'S CHOICE. THE SIGNATURE ALSO INDICATES AN AWARENESS THAT FALSE STATEMENTS OR FAILURE TO DISCLOSE INFORMATION MAY DISQUALIFY YOU FROM EMPLOYMENT OR, IF EMPLOYED, MAY RESULT IN YOUR DISMISSAL.

SIGNATURE OF APPLICANT *Lisa McConnell*    DATE *5-15-01*

STERLING
Jewelers Inc.

0200-200-0000
687452

**EXHIBIT G**

**RESOLVE guidelines**



# THE RESOLVE PROGRAM

### Alternative Dispute Resolution (ADR)

## RESOLVE
## 1-800-394-4205

STERLING JEWELERS Inc.



# STERLING JEWELERS

Sterling's success and momentum is due in part to the continuous improvements made within all facets of our business. As such, Sterling is pleased to offer a program designed to assist both the Company and you in resolving workplace misunderstandings, problems and/or disputes.

Workplace disputes occasionally occur and can lead to lawsuits. Lawsuits are disruptive, involve enormous expense, can take years to resolve and often result in disappointing outcomes.

For these reasons, the "RESOLVE" Program was designed to provide a more efficient way to deal with workplace disputes without going to court. This program involves a multi-step approach for dealing with disagreements over employment actions that an employee believes are unlawful.

This program has many benefits, including:

➤ a fast, private, economical process;

➤ introduction of the RESOLVE Program Administrator;

➤ opportunity for dispute review by a skilled Mediator or Review Panel;

➤ the ability to appeal to an outside Arbitrator; and

➤ provides all the remedies and awards otherwise available through the judicial system.

On the following pages, you'll find a description of the program, how it works and how to use it.

# THE RESOLVE PROGRAM ✓

## *RESOLVE*

### ALTERNATIVE DISPUTE RESOLUTION (ADR) PROGRAM HIGHLIGHTS

➤ Effective June 1, 1998

➤ Applicable to all employees

➤ Provides employee with a fast, fair, private, inexpensive way to handle employment disputes that involve alleged unlawful actions

➤ Involves 3 Steps:

## STEP 1

### Filing a Complaint

An employee who believes he/she has been subjected to an unlawful employment action, harassment or termination must contact the **RESOLVE** Program Administrator and complete a *RESOLVE Program Complaint Form.*

The employee must specify in the form how he/she has been subjected to an unlawful action and the specific relief sought. This must be done within 300 days of the alleged unlawful action unless prohibited by law.

After a full investigation, including personal interviews, a response (answer) will be postmarked to the employee no later than 30 days after receipt of the complaint form.

If the employee is satisfied with the response, no further action is required.

# ◢ THE RESOLVE PROGRAM

A written agreement containing the terms of any settlement will be signed by the parties who will be legally bound by the terms of the agreement.

If not satisfied by the outcome of Step 1, an employee may appeal to Step 2 within 30 days of receipt of the Step 1 response.

## STEP 2

### Appeal For Further Review

Step 2 allows the employee to appeal for further review if he/she is not satisfied with the outcome of Step 1.

In Step 2, the case is assigned by the RESOLVE Program Administrator to:

➤ a skilled outside *Mediator*

or

➤ a 5-member *Review Panel*.

As in Step 1, if the employee is satisfied with the response, no further action is required. A written agreement containing the terms of any settlement will be signed by the parties who will be legally bound by the terms of the agreement.

If not satisfied by the outcome of Step 2, an employee may appeal to Step 3 within 30 days of the receipt of the Step 2 response.



## THE RESOLVE PROGRAM

### STEP 3

#### Arbitration

**Step 3** allows the employee to file for outside **Arbitration** if they are dissatisfied with the decision or proposed resolution in **Step 2**.

**Step 3** involves a formal hearing where both the employee and the Company may desire legal representation. This step utilizes a jointly selected outside/neutral Arbitrator from the American Arbitration Association. This independent, not-for-profit agency was founded in 1926 and helps to resolve over 60,000 disputes a year.



The Arbitration will take place at a mutually convenient time and location near the site where the complaint arose and shall be governed by the Federal Arbitration Act, the substantive law of the jurisdiction where the complaint arose, the National Rules for the Resolution of Employment Disputes of the American Arbitration Association, and the Resolve Program Arbitration rules.

*Specific rules for Step 3 Arbitration will be provided upon request or at the time the employee invokes the Step 3 process.*

## ◢ THE RESOLVE PROGRAM

Except for the $125 application fee paid by the employee, the Company will pay for the Arbitrator's fees.

The Arbitrator will hear the case and render a decision. The Arbitrator can award all remedies available as provided by law. The decision of the Arbitrator will be final and binding upon the employee and the Company.

Arbitration is the final step. An employee may not successfully file a lawsuit instead of using the RESOLVE Program, or accepting the Arbitrator's final decision.

➤ If you utilize this program as an active employee, the Company prohibits any retaliation against you for using the program.

➤ Specific rules, time limitations and other program details apply.

### RESOLVE
### 1-800-394-4205

## THE RESOLVE PROGRAM

### WHAT IS COVERED UNDER THE RESOLVE PROGRAM

The *RESOLVE* Program applies to only these types of claims:

- Discrimination or harassment on the basis of race, sex, religion, national origin, age, disability or other protected basis.

- Retaliation for filing a protected claim (such as Workers' Compensation) or exercising protected rights under any statute.

- Violations of federal, state, county, municipal or other government constitution, statute, ordinance, regulation, public policy or common law affecting economic terms of employment.

- Personal injuries arising from an employment decision or action except those covered by Workers' Compensation.

- Breach of any express or implied contract, breach of a covenant of good faith and fair dealing, claims of wrongful termination or constructive discharge, or claims for incentives/bonuses.

### WHAT IS NOT COVERED

- Claims for Workers' Compensation benefits.

- Criminal charges.

## ▼ THE RESOLVE PROGRAM

➢ Matters involving the National Labor Relations Board.

➢ Claims for unemployment compensation benefits.

➢ Claims for employment decisions/actions NOT related to discrimination, harassment or violations of any law.

## QUESTIONS AND ANSWERS

**If my dispute is covered, is it necessary that I use this program?**
After June 1, 1996, all employees are required to use the program to resolve applicable disputes.

**If I am terminated, can I use the RESOLVE Program?**
Yes, but only claims involving alleged unlawful actions are subject to the RESOLVE Program.

**If I quit because I've been sexually harassed, do I have to use the program?**
Absolutely. The RESOLVE Program covers harassment.

**What is the first step? How do I get started with a claim?**
Within 300 days of any action, you must call 1-800-394-4205 to contact the RESOLVE Program Administrator and arrange to complete a *RESOLVE Program Claim Form*. In **Step 1**, an Employee Relations Specialist will interview you and investigate your claim. The faster you call, the faster the resolution.

# THE RESOLVE PROGRAM

**What if I don't like the outcome of Step 1?**
Appeal to Step 2 within 30 days and the
RESOLVE Program Administrator will assign
your claim to either a Mediator or Review
Panel. A skilled Mediator will meet with you and
a Company official to attempt to resolve the
claim (or) your case will be assigned for review
by a 5-member Review Panel.

**Does Step 2 cost me money?**
It shouldn't. If applicable, reasonable,
pre-approved travel expenses for you will be
paid by Sterling for Mediation purposes.

**May I bring a lawyer to Mediation or the
Review Panel?**
If you so desire, you may bring an attorney with
you for mediation. The Review Panel is an
internal function and personal appearances are
not required.

**How does the Review Panel work?**
From a pool of trained panel members
representing employees from all levels of
Sterling, four (4) employees will be chosen to
join an employment attorney to form a review
panel to hear your case. The panel is
specifically charged with reviewing evidence
and rendering an impartial decision. The
panel's decision will be binding on the
Company.

**OK, if Step 3 doesn't satisfy me, what do I do?**
Contact the RESOLVE Program Administrator
within 30 days. You will be mailed an application
for Arbitration. You submit the completed
application along with a $125 fee to the
American Arbitration Association (AAA).

# THE RESOLVE PROGRAM

AAA will send you and the Company a list of approved/available Arbitrators. Through an elimination process, you and the Company agree on one Arbitrator who will conduct the hearing, listen to both sides and render a decision. This process will include witness testimony, production of evidence, etc. and is subject to The Federal Rules of Evidence. If the decision is in your favor, you may be awarded remedies which may include reinstatement, back pay, damages, payment of reasonable attorney fees, or any other remedy that a court could provide. The Arbitrator's decision is final and binding on both the employee and the Company.

**Do I need a lawyer for Step 3?**
Bringing a lawyer is encouraged, though not required. An arbitration hearing is similar to a court trial with a set of rules and procedures that must be followed. A Company lawyer will normally be present.

**How are the decisions communicated in Steps 2 and 3?**
A written document examining the claim and its merit or lack of merit will be provided to both the employee and the Company. If the decision is for the employee and the remedies are awarded, a claim settlement agreement may be required.

**How long does it take to resolve a dispute using this program?**
That depends on how many steps you take. However, even if you go all the way to Arbitration, a decision can be reached in months, rather than years, as through the judicial (court) system.

| | Judicial System Courtroom | ADR Resolve Program |
|---|---|---|
| **Average time to resolve the case** | Resolution can take years. Average time to resolve: 36 months. | Resolution can be completed in 3-4 months or sooner. |
| **Typical time spent in court or personal testimony** | 1 to 4 weeks | 1 to 3 days |
| **Location of hearing** | Wherever court is located. | In a location convenient to you. |
| **Rules and procedures** | Very technical and varies between courts. Cases can be dismissed before you've had a chance to present your case. | Simple process controlled by minimal rules. All proceedings are clearly outlined. |
| **Costs** | Multiple thousands of dollars. | Minimal costs, if any, dependent upon steps taken. |
| **Selection of person judging the case** | A judge who may not have employment law experience. A possible jury (of unknown people) selected by the judge and lawyers. | In Step 3 you and the Company select a skilled, experienced employment law Arbitrator. |
| **Decisions** | Decisions can be appealed and overturned. | Decision is protected if for you. The Company cannot appeal. |

**RESOLVE**
**1-800-394-4205**

The RESOLVE Program became effective 6/1/98 and is a
mandatory and binding Alternative Dispute Resolution (ADR)
process applicable to all Sterling Jewelers Inc. employees.

The RESOLVE Program is subject to the Federal Arbitration Act.

The RESOLVE Program does not restrict potential remedies.

The RESOLVE Program does not alter the terms of
employment as established within the Sterling Jewelers Inc.
Employee Handbook.

**EXHIBIT H**

**Letter from Counterclaim Defendants' counsel to
RESOLVE Manager, dated March 19, 2008**

03/20/2008 16:12 FAX 3306685184        HUMAN RESOURES                      ☑002





**COHEN MILSTEIN**
HAUSFELD & TOLL ᴾᴸᴸᶜ



Joseph M. Sellers
(202) 408-4600
jsellers@cmht.com

March 19, 2008

**VIA OVERNIGHT DELIVERY**

Sterling Jewelers, Inc.
Att: Joseph L. Spagnola
RESOLVE Program Administrator
375 Ghent Road
Akron, OH 44333

> **Re:   Claims of Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett,**
> **Maria House, Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse,**
> **Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina**
> **Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-**
> **Coons and Marie Wolf**

Dear Mr. Spagnola:

        We represent the women named above, each of whom has submitted EEOC charges
alleging a pattern or practice of sex discrimination in promotion and compensation decisions at
Sterling Jewelers stores in violation of Title VII of the Civil Rights Act of 1964. At your
insistence, each of these women also filed a complaint in accordance with RESOLVE Program
requirements, alleging the same claims previously filed with the EEOC and fifteen of them also
alleged violations of the Equal Pay Act on behalf of themselves and all other similarly-situated
women. As you know, the parties agreed to suspend proceedings in the RESOLVE Program in
order to explore the possibility of resolving the claims of the charging parties and others
similarly situated. On February 26, 2008, the parties agreed that the mediation process, which
was ongoing for more than a year, has failed.

        Accordingly, on behalf of each of the women named above and all others similarly
situated, we hereby provide notice of their intention to proceed with litigation of their claims.
As Sterling Jewelers and the charging parties on behalf of themselves and all other similarly-
situated women have engaged in multiple sessions of mediation, before two different mediators,
and engaged in an extensive Early Neutral Evaluation of the same claims already pending in the

03/20/2008 16:12 FAX 3306685184          HUMAN RESOURES                    ☒003

Mr. Joseph L. Spagnola
March 19, 2008
Page 2

RESOLVE Program, no further purpose would be served by utilizing the mediation process prescribed by the RESOLVE Program.

Although the RESOLVE Program provides for arbitration of claims not resolved in the earlier stages of the process, we believe that at least two features of the arbitration program offered to participants in the RESOLVE Program render it unenforceable. First, the Program fails to shift to Sterling Jewelers the costs associated with initiating the arbitration process. *See* Sterling Jewelers, Inc. RESOLVE Program Guidelines and Supplementary Arbitration Rules. Those costs include a requirement to pay the AAA filing fee of $3,250 and another required payment to the AAA that will likely exceed $50,000 as the amount increases with the monetary value of the filed claims. *See* American Arbitration Association, Supplementary Rules for Class Arbitrations, Rule 11; Employment Arbitration Rules; and Commercial Arbitration Rules, www.adr.org. As each of these costs greatly exceeds the filing fee required by the federal courts, the arbitral forum cannot serve as an equivalent forum in which to pursue these claims. *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Moreover, the terms of arbitration that Sterling has imposed prohibit an arbitrator to modify a company rule, policy, or procedure in making his decision. *See* Sterling Jewelers Inc. RESOLVE Program Arbitration Rules. As that term bars an arbitrator from awarding injunctive relief, the centerpiece of the relief Courts normally consider awarding under Title VII of the Civil Rights Act of 1964, it too would preclude the arbitration from serving as a forum equivalent to the courts. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (U.S. 1985) ("by agreeing to arbitrate statutory claims, a party does not forgo the substantive rights afforded by the statute"). As such, these terms, among others, render unenforceable Sterling's requirement that the charging parties confine enforcement of their discrimination claims to arbitration.

In the absence of an enforceable requirement that the charging parties named above adjudicate their claims in arbitration, they elect to prosecute their claims of sex discrimination on behalf of themselves and all others similarly situated in a judicial forum.

Very truly yours,

Sam Smith                    Joseph M. Sellers                    Thomas Warren

**EXHIBIT I**

**Counterclaim Defendants' Demand for Arbitration and
accompanying letters to AAA and Sterling's counsel
(without exhibits)**



COHEN MILSTEIN
HAUSFELD & TOLL PLLC

Joseph M. Sellers
(202) 408-4600
jsellers@cmht.com

March 24, 2008

**VIA OVERNIGHT DELIVERY**

American Arbitration Association
1633 Broadway, 10th Floor
New York, NY 10019

> Re:    Sterling Jewelers, Inc.
> Claims of **Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House, Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse, Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-Coons and Marie Wolf**

To Whom It May Concern:

　　We represent the women named above ("Charging Parties"), each of whom are current or former female employees of Sterling Jewelers, Inc. ("Sterling"). Sterling has imposed the RESOLVE Program, an alternative dispute resolution process, on its employees through which complaints in connection with employment are to be adjudicated in three stages. The Charging Parties have each submitted complaints in accordance with the RESOLVE Program alleging a pattern or practice of sex discrimination in promotion and compensation decisions at Sterling Jewelers stores in violation of Title VII of the Civil Rights Act of 1964, and 15 of the Charging Parties have also alleged violations of the Equal Pay Act on behalf of themselves and all other similarly-situated women.

　　After Sterling and the Charging Parties completed the first stage of the RESOLVE Program, they proceeded with multiple sessions of mediation in an attempt to resolve all of the claims of the Charging Parties and the classes they seek to represent, thus satisfying the second stage of the RESOLVE Program. On February 26, 2008, the parties agreed that the mediation process, which was ongoing for more than a year, had failed. The third stage of the RESOLVE Program provides for formal arbitration in accordance with AAA's National Rules for the Resolution of Employment Disputes. In order to initiate this stage, employees are required to file a RESOLVE Step 3 Form, in addition to the American Arbitration Association Submission to Dispute Resolution form, within 30 days of the impasse of mediation. Although we have

American Arbitration Association
March 24, 2008
Page 2

requested from Sterling all documents relating to the RESOLVE program, including those necessary to initiate Step 3 arbitration, we have not received them. As such, we are filing the enclosed Demand for Arbitration, obtained via AAA's website, in order to ensure the arbitration is initiated within the required 30 day period following failure of mediation.[1]

Although the RESOLVE Program provides for arbitration of claims not resolved in the earlier stages of the process, we believe that several features of the RESOLVE arbitration program may render it unenforceable. Because it is unclear as to whether the RESOLVE arbitration program is enforceable, Charging Parties have also filed a complaint in the United States District Court for the Southern District of New York. A copy of the Complaint, *Jock, et al. v. Sterling Jewelers, Inc.* (March 18, 2008 S.D.N.Y.), is attached hereto.

In an effort to preserve our clients' rights and prevent any waiver of rights to arbitration, we request that you initiate a class arbitration case for this matter and suspend it while we determine whether the RESOLVE arbitration program is enforceable. Two copies of the Demand Arbitration Agreement documents and Complaint are enclosed. Furthermore, while we maintain that Sterling is required by law and/or the terms of the arbitration agreement to pay all fees and costs associated with arbitration, we are nonetheless including $3250.00, the filing fee required to initiate a class arbitration. We reserve the right to request that Sterling reimburse us for all or part of this fee, and to pay for any future fees or costs associated with this arbitration.

Please do not hesitate to contact me if you need additional information or have any questions regarding this matter.

Very truly yours,

*Jm Sellers /*
*for Sam Smith and Thomas Warren*

Sam J. Smith                Joseph M. Sellers                Thomas A. Warren

Enclosures

cc:    Gerald Maatman, Esq.

---

[1] While we are aware that a copy of the arbitration agreement itself must be filed with the demand for arbitration, Sterling has failed to provide us with copies of the arbitration agreements signed by our clients. Nevertheless, in an effort to satisfy this requirement, we have enclosed a sample of Sterling's standard arbitration agreement, which is substantially similar, if not identical, to the one signed by our clients. We are also enclosing a copy of the RESOLVE Program Description.



**COHEN MILSTEIN**
HAUSFELD & TOLL<sup>PLLC</sup>

Joseph M. Sellers
(202) 408-4600
jsellers@cmht.com

March 24, 2008

**VIA CERTIFIED MAIL**

Gerald L. Maatman, Jr., Esquire
Seyfarth Shaw
131 South Dearborn Street
Suite 2400
Chicago, IL 60603-5577

Re:   *Jock et al. v. Sterling Jewelers, Inc.*—Reimbursement for Arbitration Filing Fees

Dear Jerry,

As you know, Sterling and the Plaintiffs have engaged in multiple mediations before two different mediators as well as an Early Neutral Evaluation, all of which were unsuccessful. It is the position of the Plaintiffs that no further purpose would be served by utilizing the mediation process prescribed by the RESOLVE Program, and that the previous mediations effectively satisfy Step 2 of Resolve. Accordingly, by letter to RESOLVE Program Director Joseph Spagnola on March 6, 2008, we requested all documents relating to RESOLVE Steps 1-3, so that we could ascertain the next steps in the RESOLVE Process. We have not received a response to that letter to date.

The Plaintiffs also contend that there are numerous provisions that are unenforceable in the RESOLVE Arbitration Agreement. In particular, the agreement fails to shift to Sterling all costs associated with initiating and maintaining the arbitration. In order for an arbitration agreement to be enforceable, it cannot cost more to a plaintiff than the cost of proceeding in a judicial forum. *See Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Through documents provided by our clients, we have learned that per the requirements of the RESOLVE Program, arbitration must be initiated within 30 days of the failure of mediation. While Plaintiffs do not concede that the RESOLVE Arbitration Agreement is enforceable or binding, in an effort to preserve the Plaintiffs' rights, we have today filed with AAA a Demand for Arbitration. Enclosed please find the arbitration demand, accompanying exhibits and letter to AAA, in which we request that they initiate the arbitration but stay the case until we can reach a

Gerald L. Maatman, Jr. Esq.
March 24, 2008
Page 2

decision on the enforceability of the arbitration agreement.  As the final mediation concluded on February 26, 2008, this filing is sufficiently within the time period prescribed by RESOLVE for initiating arbitration.

In order to initiate the arbitration, Plaintiffs were required to pay the $3,250 class arbitration filing fee.  Pursuant to *Green Tree* and its progeny, Sterling will be required to pay any costs associated with arbitration above those a plaintiff would be required to pay in court.  The fee for filing Plaintiffs' Complaint in the Southern District of New York was $350.  As such, Plaintiffs request that Sterling reimburse them for the cost in excess of this amount required to initiate arbitration, $2,900.

Please feel free to contact me if you wish to discuss this issue further.

Very truly yours,

Joseph M. Sellers

JMS/th

## Employment Arbitration Rules and Mediation Procedures

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐ There is no additional administrative fee for this service.*

| Name of Respondent<br>**Sterling Jewelers, Inc.** | | | Name of Representative<br>**Gerald Maatman** | | |
|---|---|---|---|---|---|
| Address:<br>**375 Ghent Rd.** | | | Name of Firm:<br>**Seyfarth Shaw, LLP** | | |
| | | | Representative's Address:<br>**131 South Dearborn Street, Suite 2400** | | |
| City:<br>**Akron** | State:<br>**OH** | Zip Code:<br>**44333** | City:<br>**Chicago** | State:<br>**IL** | Zip Code:<br>**60603-5577** |
| Phone No.:<br>**(330) 668-5000** | | Fax No.:<br>**(330) 668-5052** | Phone No.:<br>**(312) 460-5000** | | Fax No.:<br>**(312) 460-7000** |
| Email Address: | | | Email Address:<br>**gmaatman@seyfarth.com** | | |

The named claimant, a party to an arbitration agreement dated **(various)**, which provides for arbitration under the Employment Arbitration and Mediation Procedures of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE:
**Claimants allege Respondent discriminated against them and a class of similarly situated female employees in pay and promotions in violation of Title VII and the Equal Pay Act.**

| Dollar Amount of Claim:<br>**Unknown at this time** | Other Relief Sought: ☒ Attorneys' Fees  ☒ Interest<br>☒ Arbitration Costs  ☒ Punitive/Exemplary  ☒ Other: Injunctive<br>☒ Class Certification |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) **$3,250**

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THE DISPUTE:
**Arbitrator should have experience in employment-related class actions.**

Hearing locale: New York City (check one)  ☒ Requested by Claimant  ☐ Locale provision included in the contract

| Estimated time needed for hearings overall:<br>___**?**___ hours or ___**?**___ days<br>**Unknown at this time** | Claimant | ☒ Employee | ☐ Employer |
|---|---|---|---|
| | Respondent | ☐ Employee | ☒ Employer |

Does this dispute arise out of an employment relationship?   ☒ Yes   ☐ No
What was/is the employee's annual wage range?   ***The Claimants' salaries varied but were**
Note: This question is required by California law.   **all under $100,000. However, some putative**
☒ Less than $100,000*   ☐ $100,000 - $250,000   ☐ Over $250,000   **class members' salaries could be over $100,000.**

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in  ☐ Atlanta, GA  ☐ Dallas, TX  ☐ East Providence, RI  ☐ Fresno, CA  ☒ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within 15 days after notice from the AAA.

| Signature (may be signed by a representative)     Date:<br>*M Sellers*                3/24/08 | Name of Representative:<br>**Joseph M. Sellers** |
|---|---|
| Name of Claimant:<br>**Laryssa Jock, et al. (see attached complaint for names of all Claimants)** | Name of Firm:<br>**Cohen, Milstein, Hausfeld, & Toll, PLLC** |
| Address (to be used in connection with this case):<br>**See representative's contact information** | Representative's Address:<br>**1100 New York Ave., NW**<br>**West Tower, Suite 500** |

| City: | State: | Zip Code: | City:<br>**Washington** | State:<br>**D.C.** | Zip Code:<br>**20005** |
|---|---|---|---|---|---|
| Phone No.: | | Fax No: | Phone No:<br>**(202) 408-4600** | | Fax No:<br>**(202) 408-4699** |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879.

**EXHIBIT J**

**Notification from AAA, dated April 1, 2008**



# American Arbitration Association

*Dispute Resolution Services Worldwide*

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
http://www.adr.org

| | |
|---|---|
| DATE | 04/01/2008 5:18:37 PM |
| TO | Gerald L. Maatman |
| COMPANY | Seyfarth Shaw, LLP |
| ADDRESS | 312-460-7000 |
| FROM | Jonathan J. Weed |
| NUMBER OF PAGES | 6 (Including cover page) |
| RE | Case number: 11 160 00655 08 |
| RECIPIENTS | Thomas A. Warren Esq.; Gerald L. Maatman; Sam J. Smith Esq.; |

NOTES:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

April 1, 2008

**VIA FACSIMILE AND E-MAIL**

Joseph M. Sellers, Esq.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Sam J. Smith, Esq.
Burr & Smith
442 W. Kennedy Boulevard, Suite 300
Tampa, FL 33606

Thomas A. Warren, Esq.
Thomas A. Warren Law Offices, P.L.
2032-D Thomasville Boulevard
Tallahassee, FL 32308

Gerald L. Maatman, Esq.
Seyfarth Shaw, LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603-5577

Re: 11 160 00655 08
Laryssa Jock, Jacquelyn Boyle, Christy Chadwick,
Lisa Follett, Maria House, Denise Maddox, Lisa
McConnell, Gloria Pagan, Judy Reed, Linda Rhodes,
Khristina Rodrigues, Nina Shahmirzadi, Leighla
Smith, Dawn Souto-Coons, and Marie Wolf,
individually and on behalf of all others similarly
situated
and
Sterling Jewelers, Inc.

Dear Counsel:

This will acknowledge receipt on March 26, 2008, of a Demand for Arbitration dated March 24, 2008, providing for administration of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by the American Arbitration Association (the Association). We understand that a copy was sent to Respondent. We note that the claim involves a potential class action. Copies of our Employment Arbitration Rules and Mediation Procedures, as amended and in effect July 1, 2006, as well as the Supplementary Rules for Class Arbitrations as amended and effective October 8, 2003, may be obtained from our website at www.adr.org.

I have included the Class Arbitration Information Sheet, which provides you with some basic information about the AAA's arbitration process and set forth some initial dates by which certain steps should be completed by the parties.

Claimant has requested that the hearing be held in New York, NY. Please review the Rules regarding the locale of hearings. Also, in accordance with the Rules, if Respondent does not answer on or before April 16, 2008, we will assume that the claim is denied. If Respondent wishes to counterclaim, file two copies, together with the administrative fee, to my attention. A copy should also be directly sent to Claimant.

This will confirm an Administrative Conference is scheduled on April 15, 2008 at 11:00 AM via conference call. The Association will initiate this call. For your convenience, the enclosed Class Arbitration Information Sheet covers items to be discussed on the call.

We note that Claimants have requested that the administration of this matter be suspended pending the outcome of a related litigation. The parties should be prepared to discuss this request during the above conference call. Respondent may file a written response in the meantime, if desired.

In order to assist the arbitrator(s) with providing full disclosures, I have enclosed a Checklist for Conflicts to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. The checklist should only be sent to the AAA and should not be exchanged between the parties. The Conflicts Checklist is due on or before April 16, 2008.

In closing, we call your attention to Section 9 of the Supplementary Rules for Class Arbitrations, which states in part:

*All class arbitration hearings and filings may be made public.*

The administration of the case shall be conducted by the AAA with the appropriate party representatives. We shall direct all other inquiries to the AAA Class Action Docket on our website (www.adr.org).

Please feel free to contact me, should you have any questions or concerns. We look forward to assisting you in this matter.

Sincerely,


Jonathan J. Weed
Case Manager
401 431 4721
WeedJ@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

## Class Arbitration Information Sheet

This document provides information about your upcoming arbitration and the expectations concerning each party's conduct throughout the process. Please save this information sheet so that you may refer to it throughout the arbitration.

Both the Employment Arbitration Rules and Mediation Procedures, as amended and in effect July 1, 2006, and the Supplementary Rules for Class Arbitrations (SRCA), as amended and in effect October 8, 2003, govern this matter; where inconsistencies exist between the Supplementary Rules and the other AAA rules that apply to the dispute, the Supplementary Rules will govern.

Please also note that the SRCA consist of the following phases:

1. Clause Construction Phase: During this phase the arbitrator will decide whether the parties' arbitration agreement allows for class action. If the arbitrator determines the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class, the arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. If the arbitrator determines that the agreement does not allow for class action, this matter will be closed after the stay period. See SRCA Section 3.

2. The Class Certification Phase: During this phase the arbitrator will determine whether to certify the class or not. If the arbitrator finds certification of the class is not warranted, the matter will be closed. If Claimant wishes to pursue individual claims, he/ she must re-file the individual dispute. However, if the arbitrator certifies the class, the case will move to the Class Determination Phase.. See SRCA Section 4.

3. The Class Determination Phase: During this phase the arbitrator will define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses. The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration. If an arbitrator concludes that some exceptional circumstance, such as the need to resolve claims seeking injunctive relief or claims to a limited fund, makes it inappropriate to allow class members to request exclusion, the Class Determination Award shall explain the reasons for that conclusion. The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. See SRCA Section 5.

Once the above phases have been completed, hearings will be scheduled and held for the purpose of determining the merits of the issues.

### Administrative Conference

The AAA may conduct an administrative conference with the parties to identify and establish expectations of this process. The conference may be used for parties to agree on ways to tailor the process to meet the needs of the specific case and ask questions. Please be prepared to discuss the following:

- Review of the SRCA provisions
- Applicability of any other Procedures set forth in the rules

- Arbitrator Selection Process
- Due date for Answer/ Counterclaim
- Costs
- Verification of party and representative information
- Guidelines for communication
- Accelerated Exchange Program
- Class Arbitration Docket

## Exchange of Correspondence and Documents

It is also important to note that, unless specifically directed otherwise, the parties must exchange copies of all correspondence during the course of the arbitration. The two exceptions are the Checklist for Conflicts mentioned above and the party's arbitrator ranking list, which you will receive further information on during the course of the arbitrator appointment process. The parties only need to send copies of documents, such as discovery, to the AAA if the document is to be transmitted to the arbitrator for a determination.

## Timeliness of Filings

Please pay particular attention to response dates included on any correspondence. If you need an extension to any deadline, please contact the other party to reach an agreement. In the event you are unable to agree, the AAA or the arbitrator will determine if an extension will be granted. Requests for extensions must be received prior to the expiration of any existing deadline.

## AAA WebFile

We invite the parties to visit our website to learn more about how to file and manage your cases online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- Review, modify, or add new claims
- Complete the Checklist for Conflicts form
- View invoices and submit payment
- Share and manage documents
- Strike and rank list of neutrals
- Review case status or hearing dates and times

AAA WebFile provides flexibility because it allows you to work online as your schedule permits - day or night. Cases originally filed in the traditional offline manner may also be viewed and managed online. If the case does not show up when you log in, you may request access to the case through WebFile. Your request will be processed within one business day after review by your case manager.

# AMERICAN ARBITRATION ASSOCIATION
## CHECKLIST FOR CONFLICTS

In the Matter of the Arbitration between:

Re: 11 160 00655 08

Laryssa Jock, Jacquelyn Boyle, Christy Chadwick,
Lisa Follett, Maria House, Denise Maddox, Lisa
McConnell, Gloria Pagan, Judy Reed, Linda Rhodes,
Khristina Rodrigues, Nina Shahmirzadi, Leighla
Smith, Dawn Souto-Coons, and Marie Wolf,
individually and on behalf of all others similarly
situated
and
Sterling Jewelers, Inc.

CASE MANAGER: Jonathan J. Weed
DATE: April 1, 2008

To avoid the possibility of a last-minute disclosure and/or disqualification of the arbitrator pursuant to the rules, we must advise the arbitrator of the names of all persons, firms, companies or other entities involved in this matter. Please list below all interested parties in this case, including, but not limited to, witnesses, consultants, and attorneys. In order to avoid conflicts of interest, parties are requested to also list subsidiary and other related entities. This form will only be used as a list for conflicts, not a preliminary or final witness list. Please note that the AAA will not divulge this information to the opposing party, and the parties are not required to exchange this list. This form will, however, be submitted to the arbitrator, together with the filing papers. You should be aware that arbitrators will need to divulge any relevant information in order to make appropriate and necessary disclosures in accordance with the applicable arbitration rules.

For the convenience of clients using AAA's WebFile, this form may be completed online and submitted as part of the WebFile case record.

NAME                      AFFILIATION                  ADDRESS

DATED: _____   PARTY: _____

                                            Please Print

**EXHIBIT K**

**Sterling's letter to AAA, dated April 2, 2008**

# SEYFARTH
### ATTORNEYS SHAW LLP

131 South Dearborn Street

Suite 2400

Chicago, Illinois 60603

(312) 460-5000

fax (312) 460-7000

www.seyfarth.com

Writer's direct phone
(312) 460-5965

Writer's e-mail
gmaatman@seyfarth.com

April 2, 2008

**SENT VIA FEDERAL EXPRESS & FACSIMILE**

American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

> *Re:*  *Claims of Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House, Laryssa Jock, Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse, Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-Coons and Marie Wolf*
> *AAA No.: 11-160-00655-08*

Dear Sir or Madam:

The undersigned is lead counsel for Sterling Jewelers Inc. ("Sterling"). I am writing in regard to the purported arbitration demand that the above referenced individuals tendered to the American Arbitration Association ("AAA") on March 24, 2008 through their counsel Joe Sellers of Cohen Milstein.

In the letter accompanying this demand, the Claimants state that they wish to initiate arbitration "in accordance with the RESOLVE Program." However, as reflected by the materials accompanying their submission, none of the Claimants' claims are ripe for arbitration in accordance with the specific contractual terms of RESOLVE.

Specifically, RESOLVE requires its participants to complete two steps prior to initiating arbitration. In Step 1, participants are to contact the RESOLVE Program Administrator, obtain and complete a complaint form, and submit the completed form to the Administrator. If the participant is dissatisfied with the initial response in Step 1, the participant must proceed through Step 2 by requesting an appeal, participating in either a co-worker review panel or a mediation in the state in which the employee worked for Sterling, and receiving a response from RESOLVE. Only when all of these steps have been completed may the participant initiate Step 3, which provides for an individual arbitration before the AAA.

<u>None</u> of the referenced Claimants have completed the first two steps of RESOLVE.

CHI 11450376.1

BRUSSELS

WASHINGTON, D.C.

SAN FRANCISCO

SACRAMENTO

NEW YORK

LOS ANGELES

HOUSTON

CHICAGO

BOSTON

ATLANTA



None of the Claimants have participated in either the panel review or a mediation in the state in which the employee worked under Step 2. Some of them just recently filed and have not *completed* Step 1 of the RESOLVE Program (attachments 1-3). Some have just recently filed to pursue Step 2 (attachment 4).

As a consequence, the Claimants have not satisfied the prerequisites to arbitration under RESOLVE. The claimants must exhaust Steps 1 and 2 before any demand for arbitration is ripe through the AAA.

Further, as Mr. Sellers has already advised, the disputes which claimants purport to submit to arbitration are the subject of a previously filed class/collective action complaint in Laryssa Jock, et al. v. Sterling Jewelers, Inc., 08-CV-02875, filed on March 18, 2008 before Judge Jed Rakoff in the United States District Court for the Southern District of New York (attachment 5). Mr. Sellers candidly states in his cover letter to the AAA that the present application for arbitration has been brought "to preserve our clients' rights and prevent any waiver of rights to arbitration," notwithstanding their contention that the applicable ADR procedure is unenforceable. Their complaint in Jock, et al. v. Sterling Jewelers, Inc. expressly puts this question of enforceability before the Court (Compl. ¶9). Accordingly, Claimants have asked that the AAA "initiate" arbitration in this matter, but "suspend it" while the Court determines the parties' respective rights and obligations under the ADR program. We agree with claimants, in part, that the United States District Court must determine the parties' respective rights before any form of arbitration in this matter could ever proceed if and when the Claimants exhaust the prerequisites of RESOLVE applicable to each of them.

AAA Case Manager Jonathon Weeds letter of April 1, 2008 was premature and inappropriate based upon the above circumstances. As a result, the AAA should suspend any further administration of these claims and must cancel the April 15, 2008 Conference.

This letter is without waiver of, or prejudice to, any of Sterling's rights.

Please feel free to contact me at (312) 460-5965 if you have any questions concerning the foregoing.

Very truly yours,

SEYFARTH SHAW LLP

Gerald L. Maatman, Jr.

GLM:ntk

cc:    Joseph Sellers, Esq. / Counsel for claimants
       Stephen Zashin, Esq. / Co-counsel for Sterling
       Sterling Jewelers Inc.

CHI 11450376.1

# Attachment 1

LAW OFFICES

# BURR & SMITH

LIMITED LIABILITY PARTNERSHIP

442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

March 12, 2008          RECEIVED MAR 1 3 2008

RESOLVE Program          **VIA FACSIMILE/FEDERAL EXPRESS**
Sterling Jewelers, Inc.
375 Ghent Rd
Akron, OH 44333

Re:     RESOLVE Program Step 1

Dear RESOLVE Program Administrator:

We represent Nina Shahmirzadi, Sharon Scroggins and Gloria Pagan regarding claims of sex discrimination they have made on behalf of themselves and others similarly situated against Sterling Jewelers, Inc. and/or any of the companies that are owned or controlled in whole or in part by Sterling Jewelers, Inc. We enclose a copy of the charge that each has timely filed with the EEOC.

We understand that, as of 1998, Sterling Jewelers implemented an alternative dispute resolution program, known as RESOLVE. We do not believe that the terms of the RESOLVE Program supercede or limit the rights that Title VII of the Civil Rights Act of 1964, as amended, conferred on our clients. To the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program, however, we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program.

Feel free to contact me should you have any questions about the claims that our clients have initiated.

Very truly yours,

Sam J. Smith

Enclosures

# Attachment 2

LAW OFFICES

442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

# BURR & SMITH

LIMITED LIABILITY PARTNERSHIP

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

March 18, 2008

RESOLVE Program
Sterling Jewelers, Inc.
375 Ghent Rd
Akron, OH 44333

<u>VIA FACSIMILE/FEDERAL EXPRESS</u>

Re:     RESOLVE Program Step 1

Dear RESOLVE Program Administrator:

We represent Lisa McConnell regarding claims of sex discrimination they have made on behalf of herself and others similarly situated against Sterling Jewelers, Inc. and/or any of the companies that are owned or controlled in whole or in part by Sterling Jewelers, Inc. We enclose a copy of the charge that each has timely filed with the EEOC.

We understand that, as of 1998, Sterling Jewelers implemented an alternative dispute resolution program, known as RESOLVE. We do not believe that the terms of the RESOLVE Program supercede or limit the rights that Title VII of the Civil Rights Act of 1964, as amended, conferred on our clients. To the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program, however, we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program.

Feel free to contact me should you have any questions about the claims that our clients have initiated.

Very truly yours,

Sam J. Smith

Enclosures

RECEIVED
MAR 20 2008
Employee Relations

# Attachment 3

LAW OFFICES

442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

# BURR & SMITH
LIMITED LIABILITY PARTNERSHIP

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

March 19, 2008

RESOLVE Program
Sterling Jewelers, Inc.
375 Ghent Rd
Akron, OH 44333

**VIA FACSIMILE/FEDERAL EXPRESS**

Re:     RESOLVE Program Step 1

Dear RESOLVE Program Administrator:

We represent Denise Maddox regarding claims of sex discrimination they have made on behalf of herself and others similarly situated against Sterling Jewelers, Inc. and/or any of the companies that are owned or controlled in whole or in part by Sterling Jewelers, Inc. We enclose a copy of the charge that each has timely filed with the EEOC.

We understand that, as of 1998, Sterling Jewelers implemented an alternative dispute resolution program, known as RESOLVE. We do not believe that the terms of the RESOLVE Program supersede or limit the rights that Title VII of the Civil Rights Act of 1964, as amended, conferred on our clients. To the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program, however, we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program.

Feel free to contact me should you have any questions about the claims that our clients have initiated.

Very truly yours,

Sam J. Smith

Enclosures

RECEIVED
MAR 20 2008
Employee Relations

# Attachment 4

LAW OFFICES

# BURR & SMITH

LIMITED LIABILITY PARTNERSHIP

442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

March 6, 2008

RECEIVED MAR 1 2 2008

Sterling Jewelers, Inc.
Att: Joseph L. Spagnola
RESOLVE Program Administrator
375 Ghent Road
Akron, OH 44333

<u>**VIA FACSIMILE**</u>

Re: Request for RESOLVE Program Rules

Dear Mr. Spagnola:

On behalf of Laryssa Jock, who initiated a claim through Sterling's Resolve Program on May 2, 2006, please provide any and all applicable documents that provide the grounds rules for the Resolve Program, Step 1 through Step 3, including, but not limited to, the specific rules for Step 3 arbitration. Please indicate if the Resolve documents you provide to us are applicable to all individuals, including Ms. Jock, who were employed by Sterling Jewelers, Inc. during the period from February 2003 to the present.

Please send information responsive to this request by facsimile at (813) 254-8391 and/or by electronic mail to ssmith@burrandsmithlaw.com. We appreciate your prompt attention to this matter.

Sincerely,

Sam J. Smith

cc:    Joseph M. Sellers
       Thomas A. Warren

# Attachment 5

JUDGE RAKOFF

08 CV 02875

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

LARYSSA JOCK, JACQUELYN
BOYLE, CHRISTY CHADWICK, LISA
FOLLETT, MARIA HOUSE, DENISE
MADDOX, LISA McCONNELL, GLORIA
PAGAN, JUDY REED, LINDA RHODES,
KHRISTINA RODRIGUES, NINA
SHAHMIRZADI, LEIGHLA SMITH
DAWN SOUTO-COONS, and MARIE
WOLF,

      Plaintiffs,

  -against-

STERLING JEWELERS, INC.,

      Defendant.

------------------------------------ X

RECEIVED
MAR 18 2008
U.S.D.C. S.D.N.Y.
CASHIERS

Civil Action No.

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

    Plaintiffs Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House,

Denise Maddox, Lisa McConnell, Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues,

Nina Shahmirzadi, Leighla Smith, Dawn Souto-Coons and Marie Wolf, (collectively referred to

as "Plaintiffs") on behalf of themselves and all similarly situated persons, by their attorneys,

Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren Law Offices, P.L., and Burr &

Smith LLP allege as follows:

### INTRODUCTION

    1.    Plaintiffs bring this action to challenge a pattern and practice of sex

discrimination in promotion and compensation committed against current and former female

employees by Sterling Jewelers, Inc. Sterling Jewelers, Inc. operates more than 1300 stores in

all 50 states under at least 12 retail brand names, including but not limited to, Jared The

Galleria of Jewelry ("Jared"), Kay Jewelers ("Kay"), Belden Jewelers ("Belden"), JB Robinson

Jewelers ("JB Robinson"), Marks & Morgan Jewelers, Weisfield Jewelers, Osterman Jewelers, Shaw's Jewelers, Rogers Jewelers, LeRoy's Jewelers, Goodman Jewelers and Friedlanders Jewelers (collectively referred to as "Sterling").

    2.    Sterling's promotion and compensation policies and practices caused female employeès with retail sales responsibilities, which includes store-based employees up to and including district managers, (collectively referred to as "Retail Sales Employees") to be (a) denied promotional opportunities for which they were qualified, and (b) paid less than men performing the same work. The employment policies and practices of Sterling have had the effect and have been undertaken with the purpose of denying promotional opportunities and equal compensation to qualified female employees because of their gender.

    3.    This action is brought by current and former female Sterling Retail Sales Employees on behalf of themselves and all other similarly situated women as a class action challenging pay and promotion discrimination under Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.* Plaintiffs also bring this action on their own behalf and pursuant to 29 U.S.C. § 216(b) as representatives of a proposed collective action of similarly situated employees who have been willfully denied equal pay for equal work under the Equal Pay Act, 29 U.S.C. § 206.

### JURISDICTION, VENUE AND EXHAUSTION OF REMEDIES

    4.    Plaintiffs' class claims arise under Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.* and the Civil Rights Act of 1991, 42 U.S.C. § 1981a and the Equal Pay Act, 29 U.S.C. § 206(d). This Court has jurisdiction over Plaintiffs' class claims pursuant to 42 U.S.C. § 2000e5(f), 28 U.S.C. §§1331 and 1343(a)(4), and supplemental jurisdiction over Plaintiffs Dennis Maddox's and Nina Shahmirzadi's individual claims.

    5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) & (c) and 42

U.S.C. § 2000e-5(f)(3): The claims of four of the named Plaintiffs Laryssa Jock, Christy

Chadwick, Lisa Follett, and Linda Rhodes arose in the state of New York, and a substantial part

of the unlawful acts set forth below occurred within the State of New York. Sterling operates

approximately 67 stores within New York. Sterling operates at least nine stores within the

Southern District of New York.

      6.    Plaintiffs have exhausted administrative remedies pursuant to 42 U.S.C. §

2000e-5(f)(3). Each of the Plaintiffs has filed a charge of discrimination with the Equal

Employment Opportunity Commission, ("EEOC") on behalf of themselves and all other

similarly situated current and former female employees of Sterling. On January 3, 2008, the

EEOC issued a Determination Letter finding there was reasonable cause to believe Sterling has

engaged in a pattern or practice of discrimination as alleged in the charges, in violation of Title

VII and the Equal Pay Act. A copy of this Determination is attached hereto as Exhibit 1. All

Plaintiffs named in the complaint have timely exhausted any administrative prerequisites to

filing this action. Plaintiffs also received notices of their right to sue dated March 18, 2008.

      7.    Sterling maintains a three stage alternative dispute resolution ("ADR") program

in which it compels its employees to participate. Employees are required to file an

administrative complaint in order to initiate the first stage of the ADR program. The first

administrative complaints, each of which alleges a pattern or practice of sex discrimination in

promotions and pay on behalf of the complainant and others similarly situated, were filed on

February 27, 2006, by Laryssa Jock, Jacquelyn Boyle, Lisa Follet, Judy Reed, Dawn Souto-

Coons, and Maria Wolf. The first stage of the ADR process has concluded.

      8.    The second stage, which provides an opportunity for the parties to engage in

mediation, has also been completed.

9.    The third stage of the ADR program provides that unresolved claims be submitted to arbitration pursuant to rules prescribed by the American Arbitration Association. As terms of the arbitration program impose excessive expenses as a condition of arbitration and restrict the discretion of the arbitrator to award relief expressly permitted by Title VII the agreement is unenforceable.

10.    Written consent to join this Equal Pay Act collective action are attached hereto for Plaintiffs Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Maria House, Denise Maddox, Lisa McConnell, Judy Reed, Linda Rhodes, Nina Shahmirzadi, Dawn Souto-Coons, and Marie Wolf, as Exhibit 2.

### PARTIES

**Plaintiffs**

11.    Plaintiff Laryssa Jock is a female resident of Bombay, New York in Franklin County and has been employed by Sterling from approximately May 15, 1995 to the present as a sales associate in the Kay Jewelers and Belden stores in Massena, New York.

12.    Jacquelyn Boyle is a female resident of Tampa, Florida in Hillsborough County and was employed by Sterling from September 2004 to June 1, 2005 as a sales associate in the Jared store in Brandon, Florida.

13.    Christy Chadwick (formerly Christy Davies) is a female resident of Massena, New York in St. Lawrence County and was employed by Sterling from approximately November 2005 until approximately March 2006 as a sales associate at the Belden store in Massena, New York.

14.    Lisa Follett is a female resident of Massena, New York in St. Lawrence County and was employed by Sterling from approximately October 2004 until approximately June 2005 as a sales associate at the Belden store in Massena, New York.

-4-

15.    Maria House is a female resident of Bakersfield, California in Kern County and was employed by Sterling as a sales associate at a Kay Jewelers store in Bakersfield, California from approximately June 2005 through August 2006.

16.    Denise Maddox is a female resident of Plano, Texas in Collin County and was employed with Sterling from approximately 1997 through January of 2007. During her employment with Sterling at various Jared stores, Maddox was a sales associate and diamond department manager in Westminster, Colorado, an assistant manager in Roseville, California, a sales associate in Englewood, Colorado, and a store manager in Dallas, Texas.

17.    Lisa McConnell is a female resident of Elkhart, Indiana in Elkhart County and was employed by Sterling at a Kay Jewelers store from July 2001 until August 30, 2006 in Elkhart, Indiana. During her employment with Sterling, McConnell was a sales associate, assistant manager, and store manager in Elkhart, Indiana.

18.    Gloria Pagan (formerly Gloria Huff) is a female resident of Lake St. Louis, Missouri in St. Charles County and was employed by Sterling as a sales associate at the JB Robinson Jewelers store in Saint Peters, Missouri from approximately August 2005 until December 26, 2005.

19.    Judy Reed is a female resident of Palm Harbor, Florida in Pinellas County and has been employed by Sterling from October 2000 until the present. During her employment with Sterling, Reed was an assistant manager in Appleton, Wisconsin, a diamond department manager and assistant manager in Tampa, Florida at Jared.

20.    Linda Rhodes is a female resident of Massena, New York in St. Lawrence County and was employed by Sterling from approximately November 2005 until November 14, 2006 as sales associate at the Belden store in Massena, New York.

21.    Khristina Rodrigues is a female resident of Fall River, Massachusetts in Bristol County and was employed by Sterling from 2001 to 2003. Rodrigues was rehired by Sterling in June 2004 and is currently employed by Sterling. During her employment with Sterling, Rodrigues was a sales associate and assistant manager at Kay stores in Swansey, Massachusetts and Taunton, Massachusetts.

22.    Nina Shahmirzadi is a female resident of Henderson, Nevada in Clark County and was employed by Sterling as a sales associate from approximately October 10, 1997 until November 1, 2006 at a Kay store and Jared store in Henderson, Nevada.

23.    Leighla Smith is a female resident of Mt. Holly, New Jersey in Burlington County and was employed by Sterling as a sales associate from approximately August 2004 until April 2005 at Kay stores in Burlington, New Jersey and Cupertino, California.

24.    Dawn Souto-Coons is a female resident of Wimauma, Florida in Hillsborough County and was employed with Sterling from approximately September 1991 until approximately May 27, 2005. During her employment with Sterling, Souto-Coons was a sales associate, assistant manager, and store manager in the JB Robinson store in Waldorf, Maryland, store manager in Gaithersburg, Maryland, and assistant manager in Brandon, Florida.

25.    Marie Wolf is a female resident of Riverview, Florida in Hillsborough County and has been employed by Sterling as a sales associate at a Jared store in Brandon, Florida from approximately 2002 until the present.

**Defendant**

26.    Defendant Sterling is the largest specialty jeweler in the United States, with at least 1,300 stores doing business under various brands in all 50 states. Sterling is a nationwide company, with its headquarters in Akron, Ohio.

## COMPANY WIDE PRACTICES CHALLENGED

27.    Sterling has subjected female Retail Sales Employees to a pattern or practice of sex discrimination in its promotion and compensation decisions. These practices reflect that discrimination is the standard operating procedure - the regular, rather than the unusual practice at Sterling.

28.    Sterling's pattern or practice of sex discrimination in its promotion and compensation decisions have had a disparate impact adverse to women.

29.    Pursuant to the EEOC's investigation of Plaintiffs' charges, the EEOC issued a determination that Sterling "subjected charging parties and a class of female employees with retail sales responsibilities nationwide to a pattern or practice of sex discrimination in regard to promotion and compensation. Statistical analysis of pay and promotion data provided by Respondent reveals that Respondent promoted male employees at a statistically significant, higher rate than similarly situated female employees and that Respondent compensated male employees at a statistically significant, higher rate than similarly situated female employees. Witness testimony further corroborates the allegations." EEOC Determination Letter, Ex. 1.

30.    Sterling's promotion and compensation policies, centrally issued, apply to all stores throughout the company, regardless of brand and are substantially similar, if not identical, throughout the Sterling stores.

31.    **Discrimination in Promotions:** The Plaintiffs challenge the following practices, and any others with similar purpose or effect, which have encouraged, permitted or had the effect of discriminating against female Retail Sales Employees by denying them equal access to promotions:

      a.    Throughout the period covered by this action, Sterling has refused to publicize jobs when they become vacant. Nor does Sterling provide a

system by which employees can apply for particular vacancies or be assured of consideration for selection. Absent a system for announcing vacancies and for permitting applications for particular positions from interested candidates, Sterling has allowed managers to notify and recruit for selection employees whom they personally favor in what has historically been known as a "tap on the shoulder" system. Nor has Sterling provided its managers with merit-based guidance about who should be selected to fill the vacant positions. Accordingly, Sterling has granted its managers virtually unfettered discretion to identify and select candidates using personal preferences and stereotypes, without any assurance the criteria used to make promotion selections are based on merit.

b. Prior to April 2007, Sterling even lacked a system by which employees could express an interest in promotions generally. Only after Plaintiffs filed charges with the EEOC in 2006 did Sterling announce a process permitting its employees to register their interest in promotion opportunities generally. Still Sterling has refused to publicize job vacancies, nor does it provide employees with the opportunity to apply for particular vacancies.

c. As a consequence of these policies and practices, women working in store-based jobs and as district managers at Sterling have been denied equal opportunity to obtain promotions into and within management jobs.

32. **Discrimination in Compensation:** The Plaintiffs challenge the following

-8-

practices, and any others with similar purpose or effect, which have encouraged, permitted or had the effect of discriminating against Retail Sales Employees by causing them to be paid less than male employees performing the same work, at the same levels, in the same area, and at the same time period.

      a.    Sterling's compensation policy offers little or no guidance on setting wage rates. Pursuant to these policies, Sterling provides its managers with broad discretion to set compensation pursuant to personal biases and stereotypes rather than merit-based criteria.

      b.    As a result, women are paid less than men performing the same work, at the same levels, in the same area, and at the same time period.

33.    Sterling has a policy barring employees from discussing their wages with other employees. This policy has prevented some Plaintiffs and some members of the proposed class and collective action from making a fully-informed comparison of their compensation with the pay of similarly-situated male employees.

34.    Sterling has permitted or encouraged other workplace conduct that may exacerbate the discrimination in promotions and compensation alleged above.

      a.    Sterling managers have subjected female employees to sexual harassment and other discriminatory comments based upon their sex.

      b.    Sterling has failed to take prompt and effective remedial action in response to complaints of discrimination and to comments demeaning to women made in the workplace.

35.    Sterling has entrusted its supervisors with broad discretion that is unguided in its exercise, affording them opportunities to apply personal preferences and biases in making

-9-

promotion and compensation decisions. Sterling knew or should have known that its promotion and compensation practices were being used with the purpose and having the effect of denying qualified women employees equal opportunities to obtain promotions and to be paid at the same levels as similarly-situated male employees. Accordingly, the practices identified above are being challenged under systemic disparate treatment and disparate impact theories of discrimination.

36.    Sterling's pay and promotion policies and practices applicable to Retail Sales Employees have adversely affected women employees throughout the company.

37.    Similarly, the structure of the workforce comprised of employees with retail responsibilities and the work performed in those positions are similar throughout the more than 1,300 Sterling stores at which members of the proposed class have worked. Sterling's stores have three primary job positions, and each position involves performance of the same or similar duties. The entry level sales job is the sales associate position, above which is the entry level management position known as assistant manager and the highest level position in management within Sterling stores is designated as the store or general manager. Management of sales and personnel actions with Sterling stores are overseen by district managers, who supervise operations at several stores within a district, and by regional vice presidents, who oversee the operations of stores located in multiple districts.

38.    The essential duties of each in-store position are the same throughout the Sterling stores, regardless of store brand.

39.    As the duties for each position are nearly identical throughout the Sterling stores, employees may and frequently do transfer between Sterling stores with different brand names, and across geographic areas within and between states.

## COLLECTIVE ACTION ALLEGATIONS

40.    With respect to their Equal Pay Act claim, Plaintiffs bring this action pursuant to 29 U.S.C. §§ 206(d), *et seq.*, on behalf of themselves and all other women similarly situated. The members of the class are all female Retail Sales Employees employed in the United States by Sterling on or any time after February 27, 2003 until the end of the period provided by law.

41.    Sterling's policy, pattern, or practice of discrimination in pay and promotion operated within 300 days of the first charge of discrimination and unlawfully denied promotions to one or more named plaintiffs and caused one or more named plaintiffs to be paid less than similarly situated men.

42.    Plaintiffs have satisfied the requirements of a collective action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

43.    With respect to the claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Plaintiffs bring this action pursuant to 42 U.S.C. § 2000(e), *et seq.* and seek certification of a class pursuant to Rule 23, Fed. R. Civ. P, comprised of all female Retail Sales Employees who worked in the United States from the beginning of the illegal practice challenged here through the first day of trial in this action.  Plaintiffs are members of the class they seek to represent.

44.    Sterling's policy, pattern, or practice of discrimination in pay and promotion operated within 300 days of the first charge of discrimination and unlawfully denied promotions to one or more named plaintiffs and caused one or more named plaintiffs to be paid less than similarly situated men.

45.    This action is properly maintainable as a class action because the requirements of Rule 23(a) and Rule 23 (b) are met.

46.    The class members are sufficiently numerous to make joinder of all members impracticable. Upon information and belief, more than 20,000 current and former employees would qualify as members of the proposed class.

47.    The claims alleged on behalf of the Plaintiffs raise questions of law or fact common to the class. These common questions include, but are not limited to:

    a.    whether Sterling's common operating practices and procedures discriminate against its female employees;

    b.    whether Sterling's policies have had an adverse impact upon the class, and if so, whether such impact can be justified by business necessity;

    c.    whether Sterling has acted intentionally to deny equal opportunities to female employees to obtain promotions into and within management jobs and to compensate female employees less than similarly situated male employees in violation of Title VII;

    d.    whether Sterling invests its managers with excessive discretion in making promotion and compensation decisions;

    e.    whether the class may obtain an award of damages and obtain injunctive and other equitable remedies.

48.    The claims of the class representatives are typical of the class they seek to represent.

49.    The class representatives and counsel will adequately and fairly protect the interest of the class.

50.    This action is properly maintainable as a class action under Rule 23(b)(2), Fed. R. Civ. P., because the party opposing the class has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

51.    The class action is also properly maintainable pursuant to Rule 23(b)(3) because the questions of law and fact common to members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

### ALLEGATIONS OF NAMED PLAINTIFFS

#### Laryssa Jock

52.    Laryssa Jock has been employed by Sterling from approximately May 15, 1995 to the present for a total of nearly 13 years. She began her employment with Sterling as a part-time sales associate at the Kay store located in Massena, New York. Within approximately five months, Jock was promoted to full-time sales associate in approximately October 1995. She also held an Assistant Manager position from the fall of 1996 through February 1997, and as a sales associate was appointed the third key position between the summer of 1997 and fall of 1998 in the Massena, New York Kay store. The third key position is responsible for assisting management employees in opening and closing the store and is placed in charge of the store when the assistant manager and store manager are absent. This position is typically a gateway position to higher management positions.

53.    On approximately December 18, 1998, Jock transferred to the Massena, New York Belden's store as a sales associate. In approximately 2002, a Sterling manager again asked her to hold the third key position; however, Jock stepped down from this position because Sterling refused to compensate her for performing these additional duties. Jock continues to be employed in the Belden store located in Massena, New York as a full-time sales associate.

54.    During her tenure at Sterling, Jock has received numerous merit awards and gifts from Sterling in recognition of her superior sales performance.

55.    During Jock's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions. For example, in approximately March 2005, Troy Lawler, a male, was hired as a part-time sales associate in the Belden's store located in Massena, New York and paid $8.75 per hour. At the time Lawler was hired, Jock was paid only approximately $8.65 per hour as a full-time sales associate in the same store. Jock was paid less than Lawler in spite of the fact that Lawler had no prior retail jewelry industry experience, and she had approximately ten years of experience at Sterling, including working as an assistant manager and in the third key position. Although Jock received a raise to $8.85 per hour shortly after Lawler was hired, several other female employees who were employed in the same store in the same position as Lawler continued to be paid less than Lawler. Jock's store manager explained to the female employees including Jock that Lawler needed to be paid more than the females because he had a child to support.

56.    But for Sterling's policy prohibiting employees from discussing their wages, Jock would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

57.    On May 18, 2005, Jock filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

Jock received notice of her right to sue from the EEOC on March 18, 2008.

**Jacquelyn Boyle**

-14-

58.    Jacquelyn Boyle worked for Sterling from September, 2004 to June 1, 2005 as a sales associate in the Jared store in Brandon, Florida.

59.    Prior to working for Sterling, Boyle obtained a B.A. degree in Legal Studies and obtained jewelry sales experience working for service merchandise.

60.    Boyle started at Sterling as a seasonal sales associate, making $9.50 per hour. She excelled in this job such that she generated a large volume of jewelry sales in December 2004. In February 2005, she became a full-time employee making $10.25 per hour. At that time, her store manager, Eric Wolff told her she was an excellent sales associate and an asset to Jared's.

61.    During Boyle's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions. For example, Sterling paid similarly-situated male employees including Grant "Billy" Laing, Alan Mong, and Michael Duggan more than Boyle for performing equal work. Laing, who was hired in August 2004 was paid $14.50 per hour as a full-time sales associate; Mong, who was hired in July 2004, was paid $13.50 per hour as a full-time sales associate; and Duggan, who was hired in May 2005, was paid $11.50 per hour as a full-time sales associate.

62.    But for Sterling's policy prohibiting employees from discussing their wages, Boyle would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

63.    In addition to the pay discrimination described above, Boyle also experienced sexual harassment while employed at Sterling. Jason May, a male Manager-in-Training,

-15-

repeatedly called her and sent her text messages expressing the desire to be alone with her. May made unwelcome overtures to Boyle, such as telling her he wanted to kiss her, which caused her discomfort and distress at work. Boyle complained to her managers, Eric Wolf and Erin Scott, about this harassment but to her knowledge her complaints were not investigated nor was any corrective action taken against May. In fact, shortly after her complaint, May was promoted to a general manager position.

64.     On September 15, 2005, Boyle filed a timely charge of discrimination with the EEOC.

65.     Boyle received notice of her right-to-sue from the EEOC on March 18, 2008.

**Christy Chadwick**

66.     Christy Chadwick (formerly Christy Davies) was employed by Sterling from approximately November 2005 until approximately March 2006. Throughout her employment with Sterling she was employed as a seasonal part-time sales associate at the Belden store located in Massena, New York. Chadwick excelled in this position and was recognized for her outstanding sales volume.

67.     In approximately March 2005, Sterling hired Troy Lawler, a male, to be a part-time sales associate in the Belden's store located in Massena, New York. When Lawler was hired by Sterling in March 2005, he was paid $8.75 per hour as a part-time sales associate. When Chadwick was hired approximately six months later, she was paid only approximately $7.00 per hour as a part-time sales associate in the same store. Chadwick was paid less than Lawler in spite of the fact that she had three years of retail customer service and commission sales experience when she was hired by Sterling and Lawler only had approximately three months of sales experience at the time he was hired.

-16-

68.    Sterling failed to correct the inequities in Lawler's and Chadwick's pay in spite of the fact that Chadwick was recognized by Sterling as an outstanding sales producer.

69.    But for Sterling's policy prohibiting employees from discussing their wages, Chadwick would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

70.    On April 24, 2006, Chadwick filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

71.    Chadwick received notice of her right to sue from the EEOC on March 18, 2008.

**Lisa Follett**

72.    Lisa Follett was employed by Sterling from approximately November 2004 until approximately May or June 2005. Throughout her employment with Sterling she was employed as a part-time sales associate at the Belden store located in Massena, New York. Follett excelled in this position.

73.    In approximately March 2005, Sterling hired Troy Lawler, a male, to be a part-time sales associate in the Belden's store located in Massena, New York. On approximately May 5, 2005, Lawler was promoted to a full-time sales associate position. Sterling failed to post the availability of this position and did not conduct interviews of Follett or other female part-time sales associates who were interested in full-time positions. Follett was more qualified than Lawler for the full-time sales associate position because she had seven months of jewelry sales experience with Sterling and had produced substantial sales for Sterling. Lawler had no prior jewelry experience and had no record of past performance to support his promotion.

74.    During Follett's employment with Sterling, Sterling failed to post additional

-17-

full-time positions and did not provide any formal way for employees to express an interest in promotions. Instead, Sterling relied on a "tap on the shoulder" promotion system. Follett was interested in being promoted to full-time positions, but was unaware of promotional opportunities for which she was qualified, that may have been provided to less qualified male employees at Sterling due to these practices.

75.     When Lawler was hired by Sterling in March 2005, he was paid $8.75 per hour as a part-time sales associate. At the time Lawler was hired, Follett was paid only approximately $7.50 per hour as a part-time sales associate in the same store. Follett was paid less than Lawler in spite of the fact that she had approximately seven months of proven sales experience at Sterling and Lawler had no prior retail jewelry industry experience.

76.     But for Sterling's policy prohibiting employees from discussing their wages, Follett would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

77.     On February 8, 2006, Follett filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

78.     Follett received notice of her right to sue from the EEOC on March 18, 2008.

**Maria House**

79.     Maria House worked for Sterling at a Kay Jewelers store in Bakersfield, California from approximately June 2005 through August 2006.

80.     Sterling hired House as a full-time sales associate and was paid $12.50 per hour.

81.     Prior to working for Sterling, House had obtained approximately 20 years of jewelry sales and management experience working for Macy's, Zales, and Michaels Jewelers.

-18-

82.    Shortly after starting with Sterling, House was selected for the third key position. The third key is responsible for assisting management employees in opening and closing the store and is placed in charge of the store when the assistant manager and store manager are absent. This position is typically a gateway position to higher management positions.

83.    Despite House having performed the third key duties exceptionally well, she was not selected for an assistant manager position in approximately late 2005. Instead, Shaun McCullough, a less qualified male was selected. Sterling was aware that House was interested and qualified for this position and had discussed the possibility of being promoted into this position with her store manager and district manager. McCullough's lack of qualifications was confirmed in 2006 when Sterling terminated him.

84.    House's exceptional job performance continued into 2006 when she became the highest sales producer in her district. Sterling rewarded her for this accomplishment by granting her membership in Sterling's President Club. The President Club is an organization Sterling created to recognize and reward outstanding performance of its top sales associates throughout the country.

85.    In approximately May 2006 the store manager of the Bakersfield, California Kay's Jeweler store was terminated. Because there was no assistant manager as a result of McCullough's termination, House was required to take over acting manager duties. House performed the store manager's duties for several weeks. Although House was interested in the store manager position and had competently performed the store manager duties, Sterling selected Ben Fox, a less qualified male, sales associate from a different store, as the new store manager.

-19-

86.    During House's employment with Sterling, Sterling did not post open management positions or provide any formal way for employees to express an interest in promotions. Instead, Sterling relied on a "tap on the shoulder" promotion system. House was interested in being promoted, but was unaware of many other promotional opportunities for which she was qualified, that may have been provided to less qualified male employees at Sterling due to these practices.

87.    During the time McCullough was House's assistant manager, McCullough sexually harassed House. He made inappropriate and unwelcome comments about her chest on several occasions. For example, he told her "I would like to suck on your boobs." House immediately reported this to her district manager, who told House to stop overreacting and get back to work. House then made a formal complaint through Sterling's internal complaint process, yet still no disciplinary action was taken against McCullough. House later made yet another follow-up complaint to Sterling's Employee Relations Department, but to her knowledge, no action was taken.

88.    On October 10, 2006, House filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

89.    House received her Right to Sue notice from the EEOC on March 18, 2008.

**Denise Maddox**

90.    Denise Maddox was employed with Sterling from 1997 through January of 2007. She was hired as a sales associate at a Jared store in Westminster, Colorado. She excelled in this job and was the number one salesperson in her store. She also worked as a diamond department manager at this store. In 2000, Maddox was transferred to a Jared store in Englewood, Colorado. Around 2001 or 2002, Maddox briefly transferred to a Sterling store in

Roseville, California, where she was an assistant manager. After a short period of time in California, Maddox transferred back to Colorado, in a sales associate position. Shortly thereafter, in 2002, she was promoted to assistant manager at a Jared store in Lakewood, Colorado. In August of 2005, Maddox was transferred to Dallas, Texas and was promoted to store manager of a Jared store there. On October 31, 2006, Sterling informed her that she was being demoted to diamond department manager. Rather than take the demotion and stay in Texas, she transferred back to Colorado where she worked as a sales associate until she left the company in January 2007.

91.    In 2003, the store manager position at the Lakewood, Colorado store became vacant. Maddox informed her district manager that she was interested in the position, however, Sterling instead selected a less-qualified male who had no prior experience with Sterling. In June or July of 2006, a store manager position at a higher volume store in the Dallas, Texas area became vacant. Maddox was also interested in a promotion to this store, and informed her district manager of her interest. However, again the position was given to a male, John Costello, who had no previous experience at Sterling.

92.    During Maddox's tenure, Sterling did not post job vacancies nor provide any formal way for employees to express an interest in promotions. The only way employees were aware of openings was via word of mouth. Accordingly, there are likely numerous other promotional opportunities that Maddox was interested in and qualified for which she was not given the opportunity to apply for, that were awarded to less qualified male employees.

93.    During Maddox's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions. For example, when

-21-

Maddox began at Sterling, she made $8.00 an hour. Although she was the number one salesperson in her store, male employees were being hired at rates several dollars an hour more than she. When her store manager, Melinda Small, requested a raise for Maddox from the district manager, the request was denied.

94.     As a store manager, Maddox observed Sterling pay male employees in her store more than their similarly situated female counterparts. Upon information and belief, these pay discrepancies were implemented by the district manager and vice president or company officials above them.

95.     Based on information and belief, Maddox believes she was also paid less than her similarly situated male counterparts employed in assistant manager and store manager positions. But for Sterling's policy prohibiting employees from discussing their wages, Maddox would likely be able to identify male employees who were paid higher wages in these positions than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

96.     Sterling has a policy or practice of preventing its employees from discussing their wages with other employees. Sterling's policy preventing the discussion of wages has prevented Maddox from identifying male employees who were paid higher wages than she was for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

97.     Maddox was also subjected to comments and other treatment that were demeaning and disparaging of women. For example, in approximately 2000, when Maddox first became a diamond department manager, she was demoted back to a sales position because her district manager told her he wanted to place a male in the position who had "the Jared

-22-

look."

98.     Maddox also was demoted from the store manager position she held in Dallas, Texas due to her age and sex. She was demoted from her position as store manager in October 2006 because a male district manager needed to be placed in a store manager position in her area. There were several stores that could have been chosen. However, the store managers in each of these stores were younger than Maddox, who was 51 at the time. Maddox was demoted to diamond department manager instead of one of the younger store managers in spite of the fact that sales for her store were better than the stores run by the younger store managers.

99.     On November 8, 2006, Maddox filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

100.    Maddox received her Right to Sue notice from the EEOC on March 18, 2008.

**Lisa McConnell**

101.    Lisa McConnell worked for Sterling at a Kay Jewelers store from approximately July, 2001 until August 30, 2006 in Elkhart, Indiana.

102.    McConnell was hired as a part-time sales associate for Sterling and was paid $8.50 per hour. Within a year, she became a full-time sales associate and was paid $10.00 per hour. McConnell was an outstanding employee. Her high sales record earned her membership in the President's Club from January 2003 until she became store manager in 2005.

103.    In October, 2002, she became assistant manager at a salary of $12.00 per hour. Brad Bartl, her store manager at the time, informed her that she was earning approximately $2.00 to $3.00 less per hour than similarly-situated male assistant managers and that her salary was also less than male managers-in-training.

104.    McConnell served as assistant manager for approximately two and one-half

-23-

years during which her personal average annual sales ranged from approximately $400,000 to $600,000, one of the highest in her district. She received the highest bonus in her district in 2005.

105.    Despite McConnell's exceptional performance and strong personal sales record, she received only a $1 per hour raise each year that she served as assistant manager. This resulted in her earning approximately $14.00 per hour immediately before she became store manager. In stark contrast, Richard Swiental became assistant manager of the Elkhart, Indiana Kay's store in April 2006 at a starting salary of $15.33 per hour, $3.33 per hour more than her starting salary three years prior despite the fact that Swiental was less qualified for the position than McConnell had been when she became assistant manager.

106.    In early 2005, McConnell was promoted to store manager with an annual salary of approximately $34,000. Brad Bartl, her former store manager who had worked for Sterling Jewelers for at least a decade, again informed McConnell that she was receiving a significantly lower salary than other male store managers employed by Sterling Jewelers, especially given her training experience and sales record. Bartl informed her that her situation was not unique because he was aware of many other women that were paid less than men in the same job positions. For instance, Bartl's wife, Donna Bartl, had been a store manager with Sterling, and she too had been paid less than similarly-situated male store managers according to Bartl.

107.    Although McConnell earned the highest bonus in her district in 2005, she did not receive an annual salary increase in 2006.

108.    But for Sterling's policy prohibiting employees from discussing their wages, McConnell would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were

-24-

performed under similar working conditions.

109.    McConnell's career goal was to obtain at least a district manager position. In 2005, during a meeting for managers in her district, the then district manager Tim Chmiel asked each store manager in attendance (approximately14 managers) about their future goals. When Chmiel asked McConnell about her professional goals, she responded that she wanted to be a district manager. However, despite her strong qualifications and interest, Sterling never offered her that position.

110.    During McConnell's tenure at Sterling, Sterling did not advertise or post job vacancies or have a formal application process for these jobs. Instead, Sterling used a "tap on the shoulder" system for promotion to management positions. Even though McConnell was interested in obtaining a district manager position, due to Sterling's failure to post openings, McConnell was not made aware of any district manager opportunities available to her during her employment. She believes there have been district manager job vacancies filled by males who were less qualified or no more qualified than she. She would have pursued and applied for any such positions, but the jobs were not offered to her nor was she made aware of such vacancies.

111.    McConnell also experienced sexual harassment while employed by Sterling. On April 8, 2006, district manager John Braunsdorf placed manager-in-training Richard Swiental in her store as assistant manager. Swiental was rude and disruptive. He made inappropriate sexual comments about women. He commented on the anatomy of females who walked by the store and even asked McConnell, the store manager, if she would find out if a young woman who walked by the store in a short skirt was wearing underwear. He commented on female co-workers "PMSing" and bragged about affairs he had on his wife. When helping sales associate,

-25-

Stephanie Reinhardt, change a store sign, he said "I can always get it up" when he saw she was having trouble reaching the letters on the sign. He addressed McConnell as "sweetheart" and refused to show her respect or treat her in a professional manner because she was a female manager.

112. Shortly after Swiental was transferred to her store, McConnell made verbal and written complaints about his behavior to her district manager Braunsdorf. No corrective action was taken against Swiental.

113. In response to McConnell's complaints about Swiental's inappropriate sexual comments against women, inappropriate treatment of women and poor managerial performance, Swiental filed an internal complaint against her accusing her of gender discrimination. Even though Swiental's claim had no merit, Sterling took his side and McConnell was written-up for discriminatory "comments" she never made. She informed the human resource office about Swiental's inappropriate treatment towards women and his disruptive behavior. However, this information was ignored, and on August 31, 2006, McConnell was terminated from Sterling even though she had received the largest bonus in her district that same year and was an effective manager who sought to protect her employees and customers from a male employee's discriminatory behavior.

114. On or about July 25, 2006 McConnell timely filed a charge of discrimination with the EEOC.

115. On or about May 12, 2007, McConnell filed an amended charge of discrimination with the EEOC asserting her claims on behalf of herself and female employees of Sterling who are similarly situated.

116. McConnell received a notice of right to sue from the EEOC dated March 18,

2008.

### Gloria Pagan

117.    Gloria Pagan was employed with Sterling from approximately August 2005 until December 26, 2005. During this time period, Pagan worked as a full-time sales associate at the JB Robinson Jewelers store located in Saint Peters, Missouri.

118.    When Pagan was hired by Sterling, she had prior experience working in the jewelry industry. She excelled in her sales associate position and in October 2005, she was promised the third key position, which is the title given to a sales associate who assists the assistant manager and general manager in the performance of their duties, including opening and closing the store and supervising the store in their absence, and which provides training for promotional opportunities. In approximately November 2005, Sterling hired Christopher Sutmoler as a sales associate in the Saint Peters, Missouri JB Robinson Jewelers store. Sutmoler was given the third key position that had been promised to Pagan in spite of the fact that Pagan had more tenure with Sterling and similar jewelry industry experience.

119.    During Pagan's employment with Sterling, Sterling failed to post open management positions and did not provide any formal way for employees to express an interest in promotions. Instead, Sterling relied on a "tap on the shoulder" promotion system. Pagan was interested in being promoted, but was unaware of promotional opportunities for which she was qualified, which may have been provided to less qualified male employees at Sterling due to these practices.

120.    During Pagan's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions. For example, Sutmoler, a

male with similar jewelry experience as Pagan, was hired at approximately the same time frame in the same sales associate job, and in the same store as Pagan; however, he was paid $11.50 per hour and Pagan was paid only $8.50 per hour.

121. But for Sterling's policy prohibiting employees from discussing their wages, Pagan would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

122. On or about July 16, 2006, Pagan timely filed a charge of discrimination with the EEOC.

123. Pagan received a notice of right to sue from the EEOC on March 18, 2008.

Judy Reed

124. Judy Reed began working at Sterling in October 2000 as an assistant manager at a Jared store in Appleton, Wisconsin. In July 2001 Reed transferred to Sterling's Jared Citrus Park store in Tampa, Florida and took a diamond department manager position. In July 2002, she was promoted to assistant manager of the Citrus Park store. Reed is currently a sales associate at the Citrus Park Store in Tampa, Florida.

125. Reed has over 30 years experience in the jewelry industry, more than five of which was as an assistant manager for Sterling.

126. Reed was denied promotions on at least three separate occasions in favor of males who were less qualified or no more qualified than she. In 2003, the general manager position at Sterling's Clearwater, Florida Jared store came open. Despite being well-qualified for the position, Reed was not granted an interview. The position was given to David Dion, a less-qualified male with only three years' tenure at Sterling and less jewelry industry

experience than Reed. In January 2005, the general manager position at Sterling's Brandon, Florida Jared store became open. Again, Reed was not interviewed for the position. Instead, the position was given to a less-qualified male, Eric Wolff, who had only two years tenure at Sterling. Finally, in March 2005, the general manager position at Sterling's Citrus Park Jared store became open. Reed had been assistant manager at this location for approximately four years, and during the course of her tenure had on several occasions performed the duties of general manager for the store when the general manager was unavailable. Although she was interviewed for the position, Sterling gave the position to a less-qualified male, Avind Mohip, who had only two years of jewelry industry experience.

127.    During Reed's employment at Sterling, which is ongoing, Sterling has not posted job vacancies or provided any formal way for employees to express an interest in promotions. The only way employees have become aware of openings has been via word of mouth. Accordingly, there are likely numerous other promotional opportunities that Reed was interested in and qualified for, which she was not given the opportunity to apply for, that were awarded to less qualified male employees.

128.    During Reed's employment at Sterling, which is ongoing, male employees have been paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions. For example, when Reed was promoted to assistant manager of the Citrus Park store, she was paid a salary of $32,600. In the summer of 2005, a male, Jason May, obtained a position as an assistant manager at Sterling's Jacksonville, Florida store despite having only two years' experience at Sterling and no prior jewelry industry experience. On information and belief, Reed believes that May was paid a salary of more than $36,000 per year.

129.    But for Sterling's policy prohibiting employees from discussing their wages, Reed would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under·similar working conditions.

130.    On November 23, 2005, Reed filed a timely charge of discrimination with the EEOC.

131.    Reed received notice of her right-to-sue from the EEOC dated March 18, 2008.

**Linda Rhodes**

132.    Linda Rhodes was employed by Sterling from approximately November 2005 until approximately November 14, 2006. Rhodes was hired as a seasonal part-time sales associate at the Belden store located in Massena, New York. Shortly after being hired, Sterling modified Rhodes' employment and classified her as a part-time sales associate, but did not increase her pay. Rhodes excelled in the part-time sales associate position.

133.    In approximately March 2005, Sterling hired Troy Lawler, a male, to be a part-time sales associate in the Belden's store located in Massena, New York. When Lawler was hired by Sterling in March 2005, he was paid $8.75 per hour as a part-time sales associate. When Rhodes was hired approximately six months later, she was paid only approximately $7.00 per hour as a seasonal and regular part-time sales associate in the same store. Rhodes was paid less than Lawler in spite of the fact that she had approximately 15 years of customer service and sales experience in the restaurant industry when she was hired by Sterling, and Lawler had approximately three months of sales experience. In addition, Rhodes had substantial prior management experience while Lawler had no management experience. Rhodes' store manager explained to the female employees including Rhodes that Lawler

-30-

needed to be paid more than the females because he had a child to support.

134.    Sterling failed to correct the inequities in Lawler's and Rhodes' pay in spite of the fact that Rhodes was recognized by Sterling as an outstanding sales producer. Even after Rhodes was designated third key in the store, she still did not receive a raise.

135.    But for Sterling's policy prohibiting employees from discussing their wages, Rhodes would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

136.    On April 6, 2006, Rhodes filed a timely charge of discrimination with the Equal Employment Opportunity Commission.

137.    Rhodes received notice of her right to sue from the EEOC on March 18, 2008.

**Khristina Rodrigues**

138.    Khristina Rodrigues began working for Sterling in 2001 as a sales associate. She left Sterling as an employee in good standing in 2003, and was rehired by Sterling in June 2004. In July 2005, she was promoted to assistant manager. In March 2006, she stepped down to a sales associate position. She currently works as a part-time sales associate at a Kay Jewelers in Swansey, Massachusetts.

139.    When Rodrigues was rehired by Sterling in 2004, her rate of pay was $10.00 per hour. At the time of her rehire, she had three years' jewelry industry experience, including approximately one year of experience working as an assistant manager.

140.    During Rodrigues' employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions. For example, in

approximately April 2005, Luis Cortes, a male with no prior jewelry experience was hired at a rate of $10.50 per hour. Rodrigues was making $10.00 per hour at the time.

141.    When Rodrigues was promoted to assistant manager in July 2005, her rate of pay was increased to $11.00 per hour. When she stepped down from the assistant manager position, her rate of pay was reduced to $10.00 per hour. In approximately November 2005, Endhir "Andy" Bonilla, a male with no previous jewelry experience, was hired as a sales associate at a rate of $14.00 per hour. This was considerably more than Rodrigues was making as an assistant manager, yet Sterling still reduced her pay even further when she stepped down to a sales position in 2006.

142.    But for Sterling's policy prohibiting employees from discussing their wages, Rodriques would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

143.    In addition to the pay discrimination described above, Rodrigues also experienced sexual harassment while employed at Sterling. On or about January 31, 2006, while working at a Kay store in Taunton, Massachusetts, a male store manager from another store made a sexually suggestive comment to her while visiting her store. She immediately reported this to her store manager and then to her district manager. The district manager defended the actions of the store manager and acted as if Rodrigues misunderstood him. When she asked him who else she should contact about this, he suggested she call Sterling's TIPS Line, which she did. No one from the TIPS Line ever notified her as to the results of the investigation into her complaint, even though she was told she would be notified of the outcome of the investigation.

-32-

144. On July 18, 2006, Rodrigues filed a timely charge of discrimination with the EEOC.

145. Rodrigues received notice of her right-to-sue from the EEOC dated March 18, 2008.

### Nina Shahmirzadi

146. Nina Shahmirzadi was employed with Sterling from approximately October 10, 1997 until November 1998 at a Kay Jewelers' store in Henderson, Nevada. In 1998, she transferred to the Kay store in Las Vegas, Nevada. In approximately 2001, Shahmirzadi transferred to the Jared store in Henderson, Nevada as a part-time sales associate. In approximately the beginning of 2002, Shahmirzadi became a full-time sales associate in that store. Shahmirzadi terminated her employment with Sterling on approximately November 1, 2006. When she resigned her employment with Sterling, Shahmirzadi was 56 years old.

147. When she joined Sterling, Shahmirzadi had significant prior experience managing a jewelry store from approximately 1994 to 1997. During her employment at Sterling, Shahmirzadi was a significant sales producer. In fact, Shahmirzadi was recognized by Sterling as a top sales producer by being designated as a member of the President's Club for years 2003, 2004, and 2005.

148. During her tenure at Sterling, Shahmirzadi was interested in being promoted to management positions and informed her district manager that she was willing to transfer to obtain a promotion.

149. In spite of her significant qualifications, Shahmirzadi was passed over for promotional opportunities that were provided to less qualified and younger male employees. For example, in 2005, Darren Desylvia, a male sales associate in his late teens or early twenties

was promoted to watch department manager in the Jared store in Henderson, Nevada where Shahmirzadi was employed. In August 2006, Desylvia was promoted to diamond department manager. Prior to receiving these promotions, Desylvia had very little experience in the jewelry industry and had mostly worked on a part-time basis for Sterling. Unlike Desylvia, Shahmirzadi had several years of management experience and approximately nine years of sales experience with Sterling when these promotions occurred. Shahmirzadi was qualified for and interested in both of these promotions.

150.    Shahmirzadi was also passed over for promotions in September and November 2006. In September 2006, Andy Goldslam, an approximately 20-year-old male, was given the third key position in the Henderson, Nevada Jared store. When he was promoted to the third key position, Goldslam had no prior management experience. Shahmirzadi had years of management experience and had been a top sales performer for years.

151.    During Shahmirzadi's employment with Sterling, Sterling failed to post open management positions and did not provide any formal way for employees to express an interest in promotions. Instead, Sterling relied on a "tap on the shoulder" promotion system. Because promotions were made pursuant to this tap on the shoulder system, Shahmirzadi is unable to identify all of the promotional opportunities that she was denied access to during her tenure at Sterling in spite of her interest in advancement.

152.    On or about January 18, 2007, Shahmirzadi timely filed a charge of discrimination with the EEOC.

153.    Shahmirzadi received a notice of right to sue from the EEOC on March 18, 2008.

**Leighla Smith**

154.    Leighla Smith began working for Sterling in Burlington, New Jersey at a Kay

Jewelers store as a part-time sales associate starting and was paid $8.75 per hour beginning in approximately August, 2004.

155.    In approximately April, 2005 Smith transferred to a Kay store in Cupertino, California, as a full-time sales associate. Sterling had agreed to pay her $10.75 an hour at the California Kay's, but once she arrived there, Sterling would only pay her $9.75 per hour.

156.    During Smith's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions. For example, male sales associates with equal or less experience and responsibility in the Cupertino, California Kay store, including Cesar Navero and J.P. (last name unknown) were paid more than Smith.

157.    But for Sterling's policy prohibiting employees from discussing their wages, Smith would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

158.    Smith was also interested in obtaining higher paying jobs at Sterling, however her opportunity was limited because Sterling did not post promotional opportunities nor did it provide any formal means for employees, like Smith, to apply for promotional opportunities. Smith, upon information and belief, believes there were promotional opportunities at Sterling that she was qualified for and interested in that males received who were less qualified or no more qualified than she, but because of Sterling's illegal selection system she was not considered for them.

159.    On June 7, 2006 Smith filed a timely charge of discrimination with the EEOC.

160.    Smith received her right-to-sue notice on March 18, 2008.

-35-

**Dawn Souto-Coons**

161.    Dawn Souto-Coons was employed with Sterling from approximately September 1991 until approximately May 27, 2005.  Souto-Coons began her employment as a sales associate in a JB Robinson store in Waldorf, Maryland.  In approximately June 1992, Souto-Coons was promoted to assistant manager in that store.  In approximately December 1992, Souto-Coons was promoted to store manager at the JB Robinson store in Gaithersburg, Maryland.  In approximately January 1994, Souto-Coons was transferred as a store manager to the Waldorf, Maryland JB Robinson, which was a higher volume store than the Gaithersburg, Maryland store.  In the summer of 1998 until approximately June 1999, Souto-Coons worked part-time during a pregnancy and the birth of her child.  She again became a store manager at the Waldorf JB Robinson from approximately June 1999 until July 2001.  In approximately July 2001, Souto-Coons transferred to Florida as an assistant manager at the Jared store located in Brandon, Florida.  On May 27, 2005, Souto-Coons was felt compelled to resign her employment with Sterling after more than thirteen years of service because of Sterling's continued policy, pattern and practice of discriminating against her and other female employees in promotion and pay practices.

162.    As a store manager in Maryland, Souto-Coons was extremely successful.  She was recognized as one of Sterling's top ten managers and received seven incentive trips and numerous merit bonuses.  .

163.    When Souto-Coons transferred to Florida, she was qualified for and interested in promotions to general manager or district manager positions.  For example, in January 2005, two general manager positions became available, one at the Brandon, Florida Jared, and one at the Citrus Park, Florida Jared.  Although Souto-Coons expressed interest in these positions and had

frequently served in an acting manager role in the Brandon, Florida Jared, Souto-Coons was not granted an interview for either general manager position. Instead, in approximately February 2005, Eric Wolff, a less-qualified male employee with approximately two years experience with Sterling was given the Brandon, Florida Jared general manager position, and Avind Molhip, a less-qualified male employee with only two years of jewelry experience, was given the Citrus Park, Florida Jared general manager position. At the time of these promotions, Souto-Coons had over 13 years of experience with Sterling, including approximately nine years of prior experience working as a store manager.

164.    During Souto-Coons' employment with Sterling, Sterling failed to post open management positions and did not provide any formal way for employees to express an interest in promotions. Instead, Sterling relied on a "tap on the shoulder" promotion system. Because promotions were made pursuant to this tap on the shoulder system, Souto-Coons is unable to identify all of the promotional opportunities that she was denied access to during her tenure at Sterling in spite of her interest in advancement.

165.    On October 3, 2005, Souto-Coons timely filed a charge of discrimination with the EEOC.

166.    Souto-Coons received a notice of right to sue from the EEOC on March 18, 2008, 2008.

**Marie Wolf**

167.    Marie Wolf has been employed by Sterling as a sales representative at a Jared store in Brandon, Florida from 2002 to the present.

168.    Prior to starting at Sterling, Wolf had several years of jewelry sales experience. As part of that experience, she sold over a million dollars in jewelry for her former employer.

She continued this success at Sterling, selling over a million dollars worth of jewelry every year since 2003. This entitled her to membership in the President's Club for each of those years.

169.    During Wolf's employment at Sterling, male employees were paid higher wages than female employees for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions. For example, Wolf's starting wage at Sterling was $12.00 per hour. Three years later her wage was $13.47. Similarly situated male employees, including Grant Laing, Steven Harrington, and Alan Mong were paid higher base hourly rates even though Wolf had greater sales and longer seniority at Sterling. This unequal pay between her and her male co-workers occurred even though the males were performing substantially equal work that required equal skill, effort, and responsibility under similar working conditions.

170.    But for Sterling's policy prohibiting employees from discussing their wages, Wolf would likely be able to identify additional male employees who were paid higher wages than her for equal work in jobs requiring equal skill, effort, and responsibility that were performed under similar working conditions.

171.    On September 13, 2005, Wolf filed a timely charge of discrimination with the EEOC.

172.    Wolf received her right-to-sue from the EEOC on March 18, 2008.

### CLASSWIDE COUNT I
#### Violation of Title VII - Disparate Impact

173.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 171.

174.    This claim is brought on behalf of all Plaintiffs and the class they represent.

175.    The foregoing conduct described above violates Title VII of the Civil Rights Act

-38-

of 1964, as amended, 42 U.S.C. 2000(e), *et. seq.* and constitutes a continuing violation of that act.

176.    Sterling has maintained a system for making promotion and compensation decisions that is excessively subjective the operation of which has a disparate impact adverse to female employees, and which is not consistent with business necessity, or if it could be so justified, less discriminatory alternatives exist that could equally serve said necessity.

177.    Sterling's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits to Plaintiffs and members of the class.

178.    Plaintiffs request relief as provided in the Prayer for Relief below.

### CLASSWIDE COUNT II
### Violation of Title VII - Disparate Treatment

179.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 171.

180.    Sterling has intentionally discriminated against the Plaintiffs and the members of the proposed class by maintaining a system for making promotion and compensation decisions that is excessively subjective and through which Sterling has permitted or encouraged managers to deny female employees equal access to promotion opportunities and the same compensation paid to similarly situated male employees.

181.    Sterling's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits to Plaintiffs and members of the class.

182.    The foregoing conduct described above violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.* and constitutes a continuing violation.

-39-

183.    The foregoing conduct described above caused the Plaintiffs and members of the proposed class emotional harm and other forms of harm proximately caused by Sterling's discriminatory conduct.

184.    The foregoing conduct described above was undertaken with malice or reckless disregard of the rights protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq*.

185.    Plaintiffs request relief as provided in the Prayer for Relief below.

### CLASSWIDE COUNT III
### Violation of Equal Pay Act, 29 U.S.C. § 206(d)

186.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 171.

187.    Sterling required Plaintiffs and the other members of the collective action to perform the same or substantially similar work as other male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment and paid Plaintiffs and the other female retail employees lower wages than similarly situated male employees. The difference in pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than gender.

188.    By the conduct described above Sterling has willfully violated the Equal Pay Act, 29 U.S.C. §206(d). As a direct result of Sterling's unlawful and discriminatory conduct in willful violation of the Equal Pay Act, Plaintiffs and other female retail employees have been and continue to be paid less than similarly-situated men.

189.    Plaintiffs request relief as provided in the Prayer for Relief below.

-40-

### COUNT IV ON BEHALF OF PLAINTIFF DENISE MADDOX
#### Violation of Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

190.    Plaintiff Maddox repeats and realleges the allegations contained in paragraphs 1

through 10, and paragraphs 16, 26, and 89 through 99.

191.    The foregoing conduct, among others, violates the Age Discrimination in

Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and constitutes a willful violation of the

ADEA.

192.    Plaintiff Maddox requests relief as provided in the Prayer for Relief below.

### COUNT V ON BEHALF OF PLAINTIFF NINA SHAHMIRZADI
#### Violation of Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

193.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through

10, and paragraphs 22, 26, and 145 through 152.

194.    The foregoing conduct, among others, violates the Age Discrimination in

Employment Act, 29 U.S.C. § 621, *et seq.* and constitutes a willful violation of the ADEA.

195.    Plaintiff Shahmirzadi requests relief as provided in the Prayer for Relief below.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs respectfully request this Court

**As to the Class Claims:**

A.    Declare that the practices described in this complaint exist at Sterling and that

they are unlawful;

B.    Grant certification of this action as a class action on behalf of the proposed

Plaintiff class and designation of Plaintiffs as representatives of the class and their counsel of

record as Class Counsel;

-41-

C.    Grant certification of this action as a collective action and designation of Plaintiffs as representatives of the class and their counsel of record as Class Counsel;

D.    Issue a permanent injunction prohibiting the Defendant, its officers, agents, employees and successors, from engaging in the discriminatory employment practices complained of herein in violation of Title VII of the Civil Rights Act of 1964, as amended;

E.    Issue a permanent mandatory injunction requiring that Defendant adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*;

F.    Award liquidated damages pursuant to 29 U.S.C. § 201, *et seq.*;

G.    Award back pay and other job benefits sufficient to make the Plaintiffs and the class whole;

H.    Award compensatory and punitive damages appropriate to the proof at trial;

I.    Award reasonable attorneys' fees and costs, including expert fees, pursuant to 42 U.S.C. § 2000e and 42 U.S.C. § 1988; 29 U.S.C. § 216(b); 29 U.S.C. § 201, *et seq.*; and

J.    Order such other and further relief as the Court deems just and proper.

**As to Plaintiff Maddox and Plaintiff Shahmirzadi's Individual Claims:**

K.    Award monetary damages and any other relief sufficient to make Plaintiff Maddox and Plaintiff Shahmirzadi whole;

L.    Award reasonable attorneys' fees and costs, including expert fees, pursuant to 29 U.S.C. § 621, *et seq.*; 29 U.S.C. § 216(b) and

M.    Order such other and further relief as the Court deems just and proper.

<u>**JURY TRIAL DEMAND**</u>

The Plaintiffs hereby demand a jury trial.

-42-

Dated: New York, New York
     March 18, 2008

                Respectfully submitted,

                **COHEN, MILSTEIN, HAUSFELD**
                **& TOLL, P.L.L.C.**

                Lynda J. Grant (LG-4784)
                150 East 52nd Street, 30th Floor
                New York, N.Y. 10022
                Telephone: (212) 838-7797
                Facsimile: (212) 838-7745
                lgrant@cmht.com

                Joseph M. Sellers
                Jenny R. Yang (JY-9667)
                Sahar F. Aziz
                1100 New York Avenue, N.W.
                West Tower, Suite 500
                Washington, D.C. 20005
                Telephone: (202) 408-4600
                Facsimile: (202) 408-4699
                jsellers@cmht.com
                jyang@cmht.com
                saziz@cmht.com

                Sam J. Smith
                Loren B. Donnell
                Burr & Smith
                442 W. Kennedy Boulevard
                Suite 300, Tampa, FL 33606
                Telephone: (813) 253-2010
                Facsimile: (813) 254-8391
                ssmith@burrandsmithlaw.com
                ldonnell@burrandsmithlaw.com

                Thomas A. Warren
                Thomas A. Warren Law Offices, P.L.
                2032-D Thomasville Blvd.
                Tallahassee, FL 32308
                Telephone: (850) 385-1551
                Facsimile: (850) 385-6008
                tw@nettally.com

                *Counsel for Plaintiffs*

                -43-

# Exhibit 1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Buffalo Local Office

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

Charge No:

Marie Wolf                                          151-2005-03638
c/o Burr & Smith
442 W. Kennedy Blvd, Ste 300
Tampa, Florida  33606          Charging Party

Jacquelyn Boyle                                     151-2005-03639
c/o Burr & Smith
442 W Kennedy Blvd., Ste 300
Tampa, Florida  33606          Charging Party

Carol King                                          151-2005-03709
c/o Burr & Smith
442 W Kennedy Blvd., Ste 300
Tampa, Florida  33606          Charging Party

Dawn Soto-Coons                                     151-2006-00087
c/o Burr & Smith
442 W Kennedy Blvd., Ste 300
Tampa, Florida  33606          Charging Party

Judy Reed                                           151-2006-00488
c/o Burr & Smith
442 W Kennedy Blvd., Ste 300
Tampa, Florida  33606          Charging Party

Laryssa Jock                                        165-2005-00714
438 Scanlon Road
Bombay, New York  12914        Charging Party

Lisa Follett                                        525-2006-00197
14679 State Hwy 37
Massena, New York  13662       Charging Party

Linda Rhodes                                        525-2006-00570
61 Dexter Road
St. Regis Falls, New York  12980   Charging Party

Carolyn Morse                                       525-2006-00571
14430 Pepperpine Drive
Tampa, Florida  33626          Charging Party

Christy Davies                                      525-2006-00644
158 Highlands Rd., Apt. 32
Massena, New York  13662       Charging Party

Letter of Determination
Sterling Jewelers, Inc.
Page 2

Charge No:

Tana Shriver                                                      525-2006-00789
8930 Ehren Cutoff
Land O' Lakes, Florida  34639            Charging Party

Leighla Smith                                                    525-2006-00956
133A Caley Ave.
Mt. Holly, New Jersey  08060             Charging Party

Khristina Rodrigues                                              525-2006-01138
621 3rd Street
River Falls, Massachusetts  02721        Charging Party

Gloria Pagan                                                     525-2006-01139
323 Bentoak Drive
Lake Saint Louis, Missouri  63367        Charging Party

Marie House                                                     525-2007-00071
8501 Eakens Drive
Bakersfield, California  93311-1212      Charging Party

Lisa L. McConnell                                               470-2006-04239
58744 Oxbow Drive
Elkhart, Indiana  46516                  Charging Party

Denise Maddox                                                   525-2007-00253
c/o Law Offices of Thomas A. Warren
2032-D Thomasville Road
Tallahassee, Florida  32308              Charging Party

Sharon Scroggins                                                525-2007-00290
7601 Tamarind Avenue
Tampa, Florida  33625                    Charging Party

Nina Shahmirzadi                                                525-2007-00419
35 Casa Del Fuego
Henderson, Nevada  89012                 Charging Party

Sterling Jewelers, Inc.
375 Ghent Road
Akron, OH  44333                         Respondent

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following
determination on the merits of this charge filed under the Equal Pay Act of 1963 (Equal Pay Act) and/or
Title VII of the Civil Rights Act of 1964 as amended (Title VII) and the Civil Rights Act of 1991.
Timeliness, deferral and all other requirements for coverage have been met.

Letter of Determination
Sterling Jewelers, Inc.
Page 3

Charging Parties collectively allege that Respondent has discriminated against a class of female
employees with retail sales responsibilities in regard to promotion and compensation.

Respondent denies the allegations of discrimination in their entirely and asserts that legitimate, non-
discriminatory reasons support its decisions. Respondent also disputes the Buffalo Area's jurisdiction
over several of the individual charges, and asserts timeliness claims in regard to several individual
charges.

The investigation determined that Respondent subjected Charging Parties and a class of female
employees with retail sales responsibilities nationwide to a pattern or practice of sex discrimination in
regard to promotion and compensation. Statistical analysis of pay and promotion data provided by
Respondent reveals that Respondent promoted male employees at a statistically significant, higher rate
than similarly situated female employees and that Respondent compensated male employees at a
statistically significant, higher rate than similarly situated female employees. Witness testimony further
corroborates the allegations. As such, I find reasonable cause to believe that Respondent has engaged in a
pattern or practice of discrimination as alleged, in violation of Title VII and the Equal Pay Act.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to
eliminate the alleged unlawful practices through informal methods of conciliation. Therefore, the
Commission now invites the parties to join with it in a collective effort toward a just resolution to this
matter. The confidentiality provisions of Title VII, the Equal Pay Act, and the Commission Regulations
apply to information obtained during conciliation.

When the Respondent declines to discuss settlement or when, for any reason, a settlement acceptable to
the office Director is not obtained, the Director will inform the parties and advise them of the court
enforcement alternatives available to aggrieved persons and the Commission. A Commission
representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

JAN 0 3 2008
_____
Date

Elizabeth Cadle, Director
Buffalo Local Office

Copy:

| | | |
|---|---|---|
| Loren B. Donnell, Esq | Joseph M. Sellers, Esq. | Thomas A. Warren, Esq. |
| Burr & Smith | Cohen Milstein | Law Offices |
| Suite 300 | Suite 500 West | 2032-D Thomasville Road |
| 442 W. Kennedy Blvd. | 1100 New York Ave. N.W. | Tallahassee, Florida 32308 |
| Tampa, Florida 33606 | Washington, D.C. 20005 | |
| | | |
| Jacqueline E. Kalk, Esq. | Stephen S. Zashin, Esq. | |
| Littler Mendelson | Zashin & Rich Co., L.P.A. | |
| Suite 1100 | 55 Public Square | |
| 3348 Peachtree Road, N.E. | Cleveland, Ohio 44113 | |
| Atlanta, Georgia 30326 | | |

# Exhibit 2

## CONSENT TO JOIN
### PURSUANT TO 29 U.S.C. §216(b)

1.     I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.     I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.     I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.     I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.     I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3-11-07

Signature

Printed Name   Laryssa E. Jock

Current/Former Employee of Sterling Store (Name/Location)   Current – Belden Jewelers,

Massena New York

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/17/08

Signature: *Jacquelyn Boyle*

Printed Name: Jacquelyn Boyle

Current/Former Employee of Sterling Store (Name/Location): Jared (Brandon, FL)

CONSENT TO JOIN
PURSUANT TO 29 U.S.C. §216(b)

1.    I hereby consent and agree and opt-in to become a plaintiff in a lawsuit
brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, et
seq., for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former
employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations,
subsidiaries, joint employers and representatives (collectively "Sterling").

2.    I have worked for Sterling during the time period after February 2003. I
believe I may have been paid less than men in similar positions, and therefore, consent to
join the suit.

3.    I hereby agree to be bound by any adjudication of this action by the
Court, whether it is favorable or unfavorable. I further agree to be bound by any
collective action settlement herein approved by my attorneys and approved by this
Court as fair, adequate, and reasonable.

4.    I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A.
Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.    I agree to be represented by those plaintiffs who have been or will be
named in the litigation that my counsel has filed, to the fullest extent possible under
applicable laws, to make decisions on my behalf concerning the litigation, including the
method and manner of conducting and resolving the litigation, the terms of representation
by the attorneys for the named plaintiffs and others who join the action, and all other
matters pertaining to this lawsuit.

Date: 3/17/08

Signature: Christy Chadwick

Printed Name: Christy Chadwick

Current/Former Employee of Sterling Store (Name/Location): Christy Chadwick  Havana, N.Y.

## CONSENT TO JOIN
### PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. §206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/11/08

Signature: *Maria House*

Printed Name: *Maria House*

Current/former Employee of Sterling Store (Name/Location): *Kay Jewelers 2701 Ming Ave Bakersfield, CA*

**CONSENT TO JOIN**
**PURSUANT TO 29 U.S.C. §216(b)**

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.


Date: 03-17-08

_____
Signature

Denise J Maddox
Printed Name

Tared 2401
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.        I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.        I have worked for Sterling during the time period after February 2003.  I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.        I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.  I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.        I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.        I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws; to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/12/2008

_Lisa L. McConnell_
Signature

_LISA L. MCCONNELL_
Printed Name

_KAY JEWELERS ELKHART INDIANA_
Current/Former Employee of Sterling Store (Name/Location)

**CONSENT TO JOIN**
**PURSUANT TO 29 U.S.C. §216(b)**

1.    I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.    I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions, and therefore, consent to join the suit.

3.    I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.    I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.    I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/17/08

Signature: *Judy A Reed*

Printed Name: *Judy A Reed*

Current/Former Employee of Sterling Store (Name/Location): *Current Jared - Citrus Town Ctr. Tampa, Fl*

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.    I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.    I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions, and therefore, consent to join the suit.

3.    I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.    I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P., to represent me in this action.

5.    I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/17/08

Signature: _Linda Rhodes_

Printed Name: _Linda Rhodes_

_Beldon's - MASSENA N.Y_
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3, 12, 08

_____
Signature

NINA SHAHMIRZADI
Printed Name

_____
Current/Former Employee of Sterling Store (Name/Location)

## CONSENT TO JOIN
## PURSUANT TO 29 U.S.C. §216(b)

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3/11/2008

_Dawn E. Souto-Coons_
Signature

_Dawn E. Souto-Coons_
Printed Name

_Jared the Galleria of Jewelry Brandon FL_
Current/Former Employee of Sterling Store (Name/Location)

**CONSENT TO JOIN**
**PURSUANT TO 29 U.S.C. §216(b)**

1.      I hereby consent and agree and opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for violations of the Equal Pay Act, 29 U.S.C. § 206(d), against my current/former employer, Sterling Jewelers, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives (collectively "Sterling").

2.      I have worked for Sterling during the time period after February 2003. I believe I may have been paid less than men in similar positions; and therefore, consent to join the suit.

3.      I hereby agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable. I further agree to be bound by any collective action settlement herein approved by my attorneys and approved by this Court as fair, adequate, and reasonable.

4.      I hereby designate Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Thomas A. Warren, P.L., and Burr & Smith, L.L.P. to represent me in this action.

5.      I agree to be represented by those plaintiffs who have been or will be named in the litigation that my counsel has filed, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, including the method and manner of conducting and resolving the litigation, the terms of representation by the attorneys for the named plaintiffs and others who join the action, and all other matters pertaining to this lawsuit.

Date: 3·10·08

Signature

MARie WolF
Printed Name

Jared Brandon Fl.
Current/Former Employee of Sterling Store (Name/Location)

**EXHIBIT L**

**Counterclaim Defendants' letter to AAA, dated April 9, 2008**



**COHEN MILSTEIN**
HAUSFELD & TOLL P.L.L.C.

Joseph M. Sellers
(202) 408-4604
jsellers@cmht.com

April 9, 2008

**VIA EMAIL AND FIRST CLASS MAIL**

Jonathan J. Weed
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:    11 160 00655 08
Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House,
Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse, Gloria Pagan,
Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina Shahmirzadi, Leighla
Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-Coons and Marie Wolf,
individually and on behalf of all others similarly
situated and Sterling Jewelers, Inc.

Dear Mr. Weed:

I am writing to respond to Mr. Maatman's letter dated April 2, 2008. As noted in my earlier correspondence dated March 24, 2008, several features of Sterling's RESOLVE arbitration program may render it unenforceable. As it is unclear whether the RESOLVE arbitration program is enforceable, Claimants filed a complaint in the United States District Court for the Southern District of New York. *Jock, et al. v. Sterling Jewelers, Inc.*, 08-cv-02875 (filed March 18, 2008). Whether the arbitration agreement is enforceable must be determined by the court in the first instance. *See First Options of Chicago v. Kaplan*, 514 U.S. 938, 943-44 (1995). Should the agreement be enforceable, the parties also disagree as to whether Claimants have effectively exhausted RESOLVE's administrative prerequisites to proceed to arbitration. That issue should be decided by an arbitrator in the first instance. *See Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 452 (2003).

Jonathan Weed
April 9, 2008
Page 2

**1. Whether the arbitration agreement is valid must be resolved by the court at the outset.**

While there are others, the two most salient defects in the RESOLVE Program are the prohibitively high cost it imposes on employees and its prohibition on injunctive relief. An arbitration agreement, to be enforceable, may not impose on the employee costs that exceed those that the employee would assume in a judicial forum. *See Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). The RESOLVE Program fails to shift to Sterling costs associated with initiating and maintaining the arbitration, beyond those equal to the court filing fee and, therefore, should not be enforced, at least on those terms. Indeed, Claimants asked Sterling to pay the difference between the AAA's initial filing fee in the amount of $3250 and the court filing fee of $350 but Sterling has yet to respond. Plainly, Sterling should pay the supplemental filing fee that AAA charges which, because of the value of the claims advanced by Claimants and others similarly situated, could amount to $65,000. Nor does the RESOLVE Program provide that Sterling will pay the case service fee of approximately $6000 should the arbitration proceed to a merits hearing. *See* National Rules for Resolution of Employment Disputes. Even the threat to pay such large costs would penalize the Claimants and members of the putative class for vindicating their statutory rights.

Arbitration must also afford parties a forum that is comparable to the judiciary for the adjudication of their statutory rights. Arbitration agreements whose terms would undermine, or work a prospective waiver of, any of the underlying statutory rights may not be enforced. *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum); *see also Alexander v. Garnder-Denver Co.*, 415 U.S. 36, 51 (1974) ("[T]here can be no prospective waiver of an employee's rights under Title VII."). In addition to the high cost of arbitration, the RESOLVE program requires specific rules that supplement the AAA arbitration rules. One RESOLVE Program rule states that "in reaching a decision, the arbitrator may not modify Company rules, policies, or procedures." Title VII of the Civil Rights of 1964, which Claimants invoke, authorizes the award of injunctive relief and such relief would include modification, change, or elimination of any number of Sterling's rules, policies, or procedures at issue in this case. *See* 42 U.S.C. 2000e-5(g)(1). As a result, the RESOLVE Program would deprive the arbitrator of a remedy central to Title VII, relegating the arbitral forum to an inferior status. The RESOLVE Program cannot be enforced with that prohibition in place.

By letter sent April 1, 2008, Sterling seems to have agreed to remove these impediments to arbitration. In particular, Joseph Spagnola, the RESOLVE Program Director states:

> Claimants contentions regarding the costs of arbitration and the arbitrator's authority] are in direct contradiction to the RESOLVE Program itself. RESOLVE has a nominal filing fee and the arbitrator is free to make any award that comports with applicable law.

Jonathan Weed
April 9, 2008
Page 3

*See* Letter from Joseph Spagnola to Joseph Sellers, dated April 1, 2008, attached herein. Even then, it is far from clear from this letter whether Sterling has agreed to pay all costs associated with the arbitration above those that the Claimants would bear in court. Merely acknowledging that the arbitrator is "free to make any award that comports with applicable law," as Mr. Spagnola has stated, does not reflect Sterling's agreement to pay the costs of arbitration. As those costs are unaffordable to the Claimants, the determination whether Sterling will pay those costs must be made at the outset of this proceeding, as it is integral to an assessment whether arbitration offers a forum that is comparable to the judiciary.

    2.    **Whether Claimants exhausted all prerequisites to arbitration under the RESOLVE Program must be determined by the arbitrator.**

It is axiomatic that the arbitrator determines whether the preconditions to arbitration have been satisfied, *See John Wiley & Sons, Inc., v. Livingston,* 376 U.S. 543, 557 (1964) (an arbitrator should decide whether a party seeking arbitration had properly completed a grievance procedure that served as a prerequisite to arbitration). As Mr. Maatman's letter indicates, Sterling believes that the Claimants have failed to exhaust the preconditions to arbitration, as they have not engaged in mediation of their claims. Having just concluded months of mediation which included an early neutral evaluation of the Claimants' claims, there should be no question that the parties have exhaustively explored resolution of their claims at this juncture. Should the Court rule that the arbitration agreement is enforceable, the parties should brief this matter for the arbitrator once one is assigned.

    3.    **Claimants' suggested procedural steps**.

Although we disagree with Mr. Maatman's characterization of Claimants' legal rights and the procedural posture of Claimants' claims in the RESOLVE Program, we agree that the AAA should suspend administration of these claims pending a decision by the Court on the enforceability of the arbitration agreement at issue, or, in the alternative, pending unequivocal written confirmation from Sterling that it will reimburse Claimants for all costs of arbitration in excess of the court filing fee and grant the arbitrator the authority to issue an award for injunctive relief, including but not limited to the authority to order changes to Sterling rules, policies, and procedures.

Please do not hesitate to contact me if you have any questions.

Jonathan Weed
April 9, 2008
Page 4

Very truly yours,


Joseph M. Sellers

cc: Gerald Maatman, Esq.
    Stephen Zashin, Esq.

**EXHIBIT M**

**Letter from Joseph Spagnola, Manager, Resolve program,
Dated April 1, 2008**

# *THE* RESOLVE PROGRAM

## Alternative Dispute Resolution (ADR)

# FACSIMILE COVER SHEET

**DATE:**    April 1, 2008                    **PAGES TO FOLLOW:** Two

**TO:**    Joseph M. Sellers, Esq.          **FAX:**    (202) 408-4699

**FROM:**    Joseph Spagnola                **PHONE:**  (800) 394-4205
                                            **FAX:**    (330) 670-6723

**RE:**    Claims of Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House,
           Laryssa Jock, Carol King, Denise Maddox, Lisa McConnell, Carolyn
           Morse, Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues,
           Nina Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn
           Souto-Coons and Marie Wolf.

**NOTICE:**   This communication may contain information, which is confidential and/or legally privileged and is intended only for the addressee named above. If you are not the named addressee, the communication has been sent to you in error and you are asked not to read, use or disclose it. We would be grateful if you would contact us immediately so that we can arrange for its return. Thank you.

# THE RESOLVE PROGRAM
## Alternative Dispute Resolution (ADR)

April 1, 2008                                              Via Fascimile and US Mail

Joseph M. Sellers, Esq.
Cohen, Milstein, Hausfeld & Toll, PLLC
1100 New York Ave., N.W.
Suite 500, West Tower
Washington, D.C. 20005

     RE:    **Claims of Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House, Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse, Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-Coons and Marie Wolf**

Dear Mr. Sellers:

Thank you for your letter of March 19, 2008. However, Sterling respectfully disagrees with the contentions in your letter.

First, the private mediation took place outside of RESOLVE. That private mediation process did not replace the Step 2 requirements of RESOLVE. In fact, in conjunction with that private mediation, the parties entered into a tolling agreement to suspend all dates of the RESOLVE Program. As a result, Sterling does not agree with your contention that the private mediation process "replaced" any part of the RESOLVE Program. You reviewed and signed the tolling agreement and are fully familiar with its terms including page 2, item 1.

Second, Sterling disagrees with your contention that RESOLVE is unenforceable. The issues raised in your letter (i.e., the cost of arbitration and the arbitrator's authority) are in direct contradiction to the RESOLVE Program itself. RESOLVE has a nominal filing fee and the arbitrator is free to make any award that comports with applicable law. You have misrepresented the program details and obviously did not fully read the materials supplied to you. Further, courts throughout the country have enforced RESOLVE.

Third, your letter stands in direct contradiction to the letters sent by your co-counsel Sam Smith dated March 12, March 18 and March 19, 2008. In those letters, Mr. Smith has just now filed Step 1 claim forms on behalf of Lisa McConnell, Nina Shahmirzadi, Sharon Scroggins, Gloria Pagan and Denise Maddox. In those letters, Mr. Smith states that "[t]o the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program…we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program."

---

Sterling Jewelers Inc.
375 GHENT ROAD • AKRON, OH 44333-4600

Sam J. Smith
April 1, 2008
Page 2 of 2

Finally, Sterling rejects your contention that your above named clients can "elect" to prosecute their claims in a judicial forum. Nevertheless, Sterling received your letter from Mr. Smith and therefore, Sterling considers your letter a waiver of any rights set forth in RESOLVE by your above mentioned clients.

If you have any questions concerning the foregoing, please do not hesitate to contact me.

Very truly yours,

Joseph Spagnola
Manager, RESOLVE Program

**EXHIBIT N**

**Letters from Counterclaim Defendants' counsel, Sam Smith,
Dated March 12, 18 and 19, 2008**

LAW OFFICES

442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

# BURR & SMITH

LIMITED LIABILITY PARTNERSHIP

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

March 12, 2008                RECEIVED MAR 1 2 2008

RESOLVE Program                **VIA FACSIMILE/FEDERAL EXPRESS**
Sterling Jewelers, Inc.
375 Ghent Rd
Akron, OH 44333

Re:    RESOLVE Program Step 1

Dear RESOLVE Program Administrator:

We represent Nina Shahmirzadi, Sharon Scroggins and Gloria Pagan regarding claims of sex discrimination they have made on behalf of themselves and others similarly situated against Sterling Jewelers, Inc. and/or any of the companies that are owned or controlled in whole or in part by Sterling Jewelers, Inc. We enclose a copy of the charge that each has timely filed with the EEOC.

We understand that, as of 1998, Sterling Jewelers implemented an alternative dispute resolution program, known as RESOLVE. We do not believe that the terms of the RESOLVE Program supercede or limit the rights that Title VII of the Civil Rights Act of 1964, as amended, conferred on our clients. To the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program, however, we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program.

Feel free to contact me should you have any questions about the claims that our clients have initiated.

Very truly yours,

Sam J. Smith

Enclosures

442 W. Kennedy Boulevard
Suite 300
Tampa, Florida 33606

Law Offices
# BURR & SMITH
Limited Liability Partnership

Telephone (813) 253-2010
Facsimile (813) 254-8391
www.burrandsmithlaw.com

March 18, 2008

RESOLVE Program
Sterling Jewelers, Inc.
375 Ghent Rd
Akron, OH 44333

<u>**VIA FACSIMILE/FEDERAL EXPRESS**</u>

Re:    RESOLVE Program Step 1

Dear RESOLVE Program Administrator:

We represent Lisa McConnell regarding claims of sex discrimination they have made on behalf of herself and others similarly situated against Sterling Jewelers, Inc. and/or any of the companies that are owned or controlled in whole or in part by Sterling Jewelers, Inc. We enclose a copy of the charge that each has timely filed with the EEOC.

We understand that, as of 1998, Sterling Jewelers implemented an alternative dispute resolution program, known as RESOLVE. We do not believe that the terms of the RESOLVE Program supercede or limit the rights that Title VII of the Civil Rights Act of 1964, as amended, conferred on our clients. To the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program, however, we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program.

Feel free to contact me should you have any questions about the claims that our clients have initiated.

Very truly yours,

*Sam Smith /cp*

Sam J. Smith

Enclosures

RECEIVED MAR 20 2008 Employee Relations

LAW OFFICES
# BURR & SMITH
LIMITED LIABILITY PARTNERSHIP

442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

March 19, 2008

RESOLVE Program                          **VIA FACSIMILE/FEDERAL EXPRESS**
Sterling Jewelers, Inc.
375 Ghent Rd
Akron, OH 44333

    Re:   RESOLVE Program Step 1

Dear RESOLVE Program Administrator:

    We represent Denise Maddox regarding claims of sex discrimination they have made on behalf of herself and others similarly situated against Sterling Jewelers, Inc. and/or any of the companies that are owned or controlled in whole or in part by Sterling Jewelers, Inc. We enclose a copy of the charge that each has timely filed with the EEOC.

    We understand that, as of 1998, Sterling Jewelers implemented an alternative dispute resolution program, known as RESOLVE. We do not believe that the terms of the RESOLVE Program supersede or limit the rights that Title VII of the Civil Rights Act of 1964, as amended, conferred on our clients. To the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program, however, we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program.

    Feel free to contact me should you have any questions about the claims that our clients have initiated.

Very truly yours,

Sam Smith / cp

Sam J. Smith

Enclosures

RECEIVED
MAR 20 2008
Employee Relations

**EXHIBIT O**

**Letter from Counterclaim Defendants' counsel,
dated March 19, 2008**



**COHEN MILSTEIN**
HAUSFELD & TOLL PLLC



Joseph M. Sellers
(202) 408-4600
jsellers@cmht.com

March 19, 2008

**VIA OVERNIGHT DELIVERY**

Sterling Jewelers, Inc.
Att: Joseph L. Spagnola
RESOLVE Program Administrator
375 Ghent Road
Akron, OH 44333

> Re: **Claims of Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House, Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse, Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-Coons and Marie Wolf**

Dear Mr. Spagnola:

We represent the women named above, each of whom has submitted EEOC charges alleging a pattern or practice of sex discrimination in promotion and compensation decisions at Sterling Jewelers stores in violation of Title VII of the Civil Rights Act of 1964. At your insistence, each of these women also filed a complaint in accordance with RESOLVE Program requirements, alleging the same claims previously filed with the EEOC and fifteen of them also alleged violations of the Equal Pay Act on behalf of themselves and all other similarly-situated women. As you know, the parties agreed to suspend proceedings in the RESOLVE Program in order to explore the possibility of resolving the claims of the charging parties and others similarly situated. On February 26, 2008, the parties agreed that the mediation process, which was ongoing for more than a year, has failed.

Accordingly, on behalf of each of the women named above and all others similarly situated, we hereby provide notice of their intention to proceed with litigation of their claims. As Sterling Jewelers and the charging parties on behalf of themselves and all other similarly-situated women have engaged in multiple sessions of mediation, before two different mediators, and engaged in an extensive Early Neutral Evaluation of the same claims already pending in the

Mr. Joseph L. Spagnola
March 19, 2008
Page 2

RESOLVE Program, no further purpose would be served by utilizing the mediation process prescribed by the RESOLVE Program.

Although the RESOLVE Program provides for arbitration of claims not resolved in the earlier stages of the process, we believe that at least two features of the arbitration program offered to participants in the RESOLVE Program render it unenforceable. First, the Program fails to shift to Sterling Jewelers the costs associated with initiating the arbitration process. *See* Sterling Jewelers, Inc. RESOLVE Program Guidelines and Supplementary Arbitration Rules. Those costs include a requirement to pay the AAA filing fee of $3,250 and another required payment to the AAA that will likely exceed $50,000 as the amount increases with the monetary value of the filed claims. *See* American Arbitration Association, Supplementary Rules for Class Arbitrations, Rule 11; Employment Arbitration Rules; and Commercial Arbitration Rules, www.adr.org. As each of these costs greatly exceeds the filing fee required by the federal courts, the arbitral forum cannot serve as an equivalent forum in which to pursue these claims. *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Moreover, the terms of arbitration that Sterling has imposed prohibit an arbitrator to modify a company rule, policy, or procedure in making his decision. *See* Sterling Jewelers Inc. RESOLVE Program Arbitration Rules. As that term bars an arbitrator from awarding injunctive relief, the centerpiece of the relief Courts normally consider awarding under Title VII of the Civil Rights Act of 1964, it too would preclude the arbitration from serving as a forum equivalent to the courts. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (U.S. 1985) ("by agreeing to arbitrate statutory claims, a party does not forgo the substantive rights afforded by the statute"). As such, these terms, among others, render unenforceable Sterling's requirement that the charging parties confine enforcement of their discrimination claims to arbitration.

In the absence of an enforceable requirement that the charging parties named above adjudicate their claims in arbitration, they elect to prosecute their claims of sex discrimination on behalf of themselves and all others similarly situated in a judicial forum.

Very truly yours,

Sam Smith                Joseph M. Sellers              Thomas Warren

**EXHIBIT P**

**Letter from AAA to the parties, dated April 11, 2008**

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

April 11, 2008

**VIA FACSIMILE AND E-
MAIL**

Joseph M. Sellers, Esq.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005

Sam J. Smith, Esq.
Burr & Smith
442 W. Kennedy Boulevard, Suite 300
Tampa, FL  33606

Thomas A. Warren, Esq.
Thomas A. Warren Law Offices, P.L.
2032-D Thomasville Boulevard
Tallahassee, FL  32308

Gerald L. Maatman, Esq.
Seyfarth Shaw, LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL  60603-5577

Stephen S. Zashin, Esq.
Zashin & Rich Co., L.P.A.
55 Public Sq., 4th Floor
Cleveland, Ohio  44113

Re: 11 160 00655 08
 Laryssa Jock, Jacquelyn Boyle, Christy Chadwick,
 Lisa Follett, Maria House, Denise Maddox, Lisa
 McConnell, Gloria Pagan, Judy Reed, Linda Rhodes,
 Khristina Rodrigues, Nina Shahmirzadi, Leighla
 Smith, Dawn Souto-Coons, and Marie Wolf,
 individually and on behalf of all others similarly
 situated
 and
 Sterling Jewelers, Inc.

Dear Counsel:

This will acknowledge receipt of Mr. Sellers' letter dated April 9, 2008 in response to Mr. Maatman's letter of April 2, 2008.  We note a copy was sent to the opposing party.

The Association has carefully reviewed the positions and contentions of the parties as set forth in their correspondence.  The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, the Association is suspending administration of this matter as requested by the parties. The administrative conference scheduled for April 15, 2008 has been postponed pending the continuation of the arbitration. The parties may wish to raise the issues addressed in the aforementioned correspondence upon appointment of the arbitrator.

The AAA will abide by an order issued by the courts and the parties are requested to keep us informed as to the outcome of any related court actions. The AAA serves as a neutral administrative agency and does not generally appear or participate in judicial proceedings relating to arbitration. The AAA should not be named as a party-defendant. The Rules state that the AAA is not a "necessary party".

Please do not hesitate to contact me with any questions or concerns.

Sincerely,


Jonathan J. Weed
Case Manager
401 431 4721
WeedJ@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

**EXHIBIT Q**

**Sterling's letter to the AAA, dated April 18, 2008**

# SEYFARTH
### ATTORNEYS SHAW LLP

131 South Dearborn Street

Suite 2400

Chicago, Illinois 60603

(312) 460-5000

fax (312) 460-7000

www.seyfarth.com

Writer's direct phone
312) 460-5965

Writer's e-mail
gmaatman@seyfarth.com

April 18, 2008

**BY FAX AND REGULAR MAIL**

Jonathan Weed
American Arbitration Association
1663 Broadway, 10th Floor
New York, New York 10019

Re:    Claim No. 11 160 00655 08; claims of Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House, Laryssa Jock, Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse, Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn Souto-Coons, and Marie Wolf

Dear Mr. Weed:

My client and I have received your letter dated April 10, 2008. We believe your letter was issued in error for a number of reasons and the American Arbitration Association ("AAA") must retract it immediately.

As the AAA is aware, Sterling Jewelers Inc. has an employer promulgated mandatory arbitration program called RESOLVE. AAA has agreed to administer that program only when a claimant has reached the third and final step of RESOLVE (i.e., final and binding arbitration). In your letter dated April 10, 2008, you wrote "[t]he claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under **its** rules" (emphasis added). This assertion is wholly inaccurate and does not comport with the employer promulgated program that AAA agreed to administer.

First, RESOLVE operates "in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") **as amended by the Sterling RESOLVE Program**." (emphasis added). As explained in my previous correspondence to the AAA dated April 2, 2008, Claimants have failed to satisfy necessary prerequisites to the initiation of arbitration under RESOLVE. Therefore, no Claimant has met the filing requirements under RESOLVE.

Second, AAA never should have accepted Claimants' purported filing fee. RESOLVE requires each Claimant to pay a nominal filing fee, if any, to initiate Step 3 of the RESOLVE

BRUSSELS    WASHINGTON, D.C.    SAN FRANCISCO    SACRAMENTO    NEW YORK    LOS ANGELES    HOUSTON    CHICAGO    BOSTON    ATLANTA



program.  Further, to the extent that any person is unable, for financial reasons, to pay this nominal filing fee, then upon appropriate verification of this fact, Sterling will waive such fee.  Sterling has contractually agreed with each Claimant to bear any additional cost of arbitration beyond the nominal initial filing fee, if any.  Therefore, Sterling demands that AAA refund to Claimants any fee that Claimants tendered or remitted along with their filing.

As a result of the above, Sterling requests that AAA immediately retract the letter dated April 10, 2008 and refund to the Claimants the purported filing fee.

Please confirm your receipt and acknowledgement of these facts relative to RESOLVE .  Should you have any questions regarding the foregoing, please let me know.

Very truly yours,

SEYFARTH SHAW LLP

Gerald L. Maatman, Jr.

GLM:hla

cc:     Joseph Sellers / Cohen Milstein
        Sam Smith / Burr & Smith
        Thomas Warren / Law Offices of Thomas Warren
        Stephen Zashin / Zashin & Rich
        Sterling Jewelers Inc.

CHI 11461447.2

**EXHIBIT R**

**Sterling's letter to counsel for Counterclaim Defendants,
dated April 28, 2008**

# SEYFARTH
ATTORNEYS SHAW LLP

131 South Dearborn Street

Suite 2400

Chicago, Illinois 60603

(312) 460-5000

fax (312) 460-7000

www.seyfarth.com

Writer's direct phone
(312) 460-5964

Writer's e-mail
gmaatman@seyfarth.com

April 18, 2008

**BY FAX AND REGULAR MAIL**

Joseph M. Sellers
Cohen Milstein Hausfeld & Toll PLLC
1100 New York Ave. NW, Suite 500
Washington, D.C. 20005

     Re:    Jock, et al. v. Sterling Jewelers Inc.

Dear Joe:

    I am writing in response to your letter of March 24, 2008, and as a result of our subsequent telephone calls.

    As Sterling Jewelers Inc. ("Sterling") recently explained to the American Arbitration Association ("AAA"), none of your clients have completed Step 2 of RESOLVE, some have only recently begun Step 1, and some have never initiated a RESOLVE claim. Your clients that have attempted to initiate RESOLVE have already received communications from Sterling advising them of the steps they each must complete to proceed through RESOLVE.

    It is Sterling's position that your clients are not free to abandon these preliminary steps in RESOLVE and proceed immediately to arbitration or court merely because they may believe – in the words of your letter – that "no further purpose would be served" by completing the RESOLVE requirements.

    Your statement that RESOLVE is supposedly unenforceable because it "cost[s] more to a plaintiff than the cost of proceeding in a judicial forum" is inaccurate. RESOLVE does not impose a financial burden upon a claimant that is any greater than the financial burdens of a judicial proceeding. Your clients must pay a nominal filing fee, if any, to initiate arbitration had they simply complied with the RESOLVE program rules. Step 3 of RESOLVE occurs not by filing a demand directly with the AAA, but by submitting a completed Step 3 Claim Form along with a completed arbitration demand form directly to the RESOLVE Administrator. The RESOLVE Program Administrator then submits this completed paperwork directly to the AAA along with any required filing fee. Had your clients not abandoned the RESOLVE process, your clients would have received this information at the time they received their respective Step 2 determinations.

CHI 11461445.2

BRUSSELS  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA



The expenses to which you refer in your letter are not relevant to these issues. Nonetheless, Sterling will write to the AAA and request that it refund any money paid by your clients with respect to the initiation of the arbitration, given that the initiation of the arbitration was premature and not in compliance with the RESOLVE program.

Finally, with respect to the final point in your letter, RESOLVE provides that an arbitrator is free to award any relief that a claimant could achieve in a court of law. Specifically, RESOLVE provides that "[t]he Arbitrator shall have the power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to, the costs of arbitration, attorney fees and punitive damages for causes of action when such damages are available under law" (emphasis added). As a result, your statement that RESOLVE is unconscionable because it restricts the discretion of the arbitrator is contradicted by the terms of the RESOLVE Program.

Please advise me if you have any questions concerning any of the foregoing.

Very truly yours,

SEYFARTH SHAW LLP

Gerald L. Maatman, Jr.

GLM:hla

cc:     Sam Smith / Burr & Smith
        Thomas Warren / Law Offices of Thomas Warren
        Sterling Jewelers Inc.

CH1 11461445.2

**EXHIBIT S**

**Counterclaim Defendants' letter to AAA, dated April 28, 2008**



**COHEN MILSTEIN**
HAUSFELD & TOLL PLLC

Joseph M. Sellers
(202) 408-4600
jsellers@cmht.com

April 28, 2008

**VIA EMAIL AND OVERNIGHT MAIL**

Jonathan J. Weed
Case Manager
American Arbitration Association
950 Warren Avenue
East Providence, RI 02914

Re:    **Claim No.: 11 160 00655 08**
       Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria
       House, Carol King, Denise Maddox, Lisa McConnell, Carolyn Morse,
       Gloria Pagan, Judy Reed, Linda Rhodes, Khristina Rodrigues, Nina
       Shahmirzadi, Leighla Smith, Sharon Scroggins, Tana Shiver, Dawn
       Souto-Coons and Marie Wolf, individually and on behalf of all others
       similarly situated and Sterling Jewelers Inc.

Dear Mr. Weed:

On April 10, 2008, the American Arbitration Association ("AAA") made the
following determination:

> The Association has carefully reviewed the positions and contentions of
> the parties as set forth in their correspondence. The claimant has met the
> filing requirements of the rules by filing a demand for arbitration
> providing for administration by the American Arbitration Association
> under its rules.

The AAA also suspended administration of this matter until the United
States District Court for the Southern District of New York determines whether
Sterling Jewelers Inc.'s ("Sterling's") alternative dispute RESOLVE program is
enforceable.

Jonathan Weed
April 28, 2008
Page 2

On April 18, 2008, Sterling, through its counsel, Gerald L. Maatman, Jr., requested that the AAA retract its April 10, 2008 letter and refund the filing fee paid by the Claimants. In his letter, Mr. Maatman asserts that Claimants have not satisfied the prerequisites under the RESOLVE program for a claimant to file an arbitration demand. Mr. Maatman provides the AAA with no evidence to support these assertions. Claimants have satisfied the prerequisites to filing an arbitration demand and are prepared to establish that they have complied with the RESOLVE program prerequisites to arbitration once this matter has been assigned to an arbitrator.

Accordingly, the Claimants request that the AAA continue to hold this matter in suspension until the United States District Court determines whether the RESOLVE program is enforceable or the parties reach an agreement on this issue. If the Court rules that this matter is properly before the AAA, an arbitrator should be appointed to resolve the issue of whether the Claimants have met the RESOVLE program's prerequisites to arbitration. Questions regarding "contract interpretation and arbitration procedures" are the exclusive providence of the arbitrator. *See e.g., Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 453 (2003); *see also, John Wiley & Sons, Inc., v. Livingston,* 376 U.S. 543, 557 (1964) (an arbitrator should decide whether a party seeking arbitration had properly completed a grievance procedure that served as a prerequisite to arbitration) *Conticommodity Services, Inc. v. Philipp & Lion,* 613 F.2d 1222, 1226 (2d Cir. N.Y. 1980) (whether a party's demand to arbitrate was barred by the one year provision in the contract is an issue for the arbitrator to decide). Sterling's RESOLVE Program Arbitration Rules recognize this is an issue for an arbitrator. *See* Sterling Jewelers Inc. RESOLVE Program Arbitration Rules, p. 2, attached hereto. "Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator."

Please do not hesitate to contact us if we can provide any additional information.

Very truly yours,

Joseph M. Sellers

cc: Gerald L. Maatman, Jr., Esq.
    Stephen S. Zashin, Esq.

Sterling Jewelers Inc.
RESOLVE Program
Arbitration Rules

---

## JURISDICTION

The jurisdiction of the Arbitrator shall be limited to complaints regarding alleged unlawful activity relating to employment, which includes unlawful harassment or termination.    The arbitrator shall determine whether the conduct complained of constitutes unlawful activity under applicable federal, state or local laws/statues/common law where the dispute arose.

In reaching a decision, the arbitrator may not modify Company rules, policies and procedures.

## ARBITRATOR SELECTION

The first list of available, eligible, and neutral arbitrators shall contain nine (9) names. Each eligible arbitrator must be licensed to practice law in the applicable state of dispute. Each party strikes alternately a name until the arbitrator is chosen.    The employee shall strike first.  A second list may be requested.

## BURDEN OF PROOF

The burden of proof shall be in accordance with applicable federal, state or local law/statutes/common law.  The Federal Rules of Evidence shall apply.

## COURT REPORTER – (STENOGRAPHIC RECORD)

The request for a court reporter during deposition will be approved but must be paid for by the requesting party.  The Company will pay for the cost of a court reporter during arbitration, but the requesting party will be responsible for cost of the arbitration transcript.

## INFORMATION EXCHANGE

At least 21 days prior to the arbitration hearing, the parties must submit to the arbitrator and each other a position brief, witness list with brief summary of subject testimony, and all potential hearing exhibits.

## DISCOVERY

The parties may engage in any method of discovery as outlined in the Federal Rules of Civil Procedure (exclusive of Rule 26(a)).  Such discovery includes discovery sufficient to arbitrate adequately a claim, including access to essential and relevant documents and witnesses.  Discovery disputes are subject to the Federal Rules of Evidence and the Federal Rules of Civil Procedure.  Discovery closes 75 calendar days prior to the hearing date unless a showing of good cause to the arbitrator. Any exhibits or witnesses not disclosed prior to the discovery deadline will be excluded from the hearing except upon a showing of good cause to the arbitrator.

## DISPOSITIVE MOTIONS

On or before 70 calendar days prior to the hearing date, either party may file a dispositive motion with the arbitrator pursuant to the Federal Rules of Civil Procedure. The party opposing said Motion must file a response within 14 calendar days. The party filing the dispositive motion will then have 5 calendar days (excluding weekends and holidays) to file a reply. The arbitrator will then draft a written decision concerning whether the motion disposes of the case. That decision will be sent to the parties at least 30 calendar days before the scheduled arbitration and will set forth the factual and legal bases for the decision.

## WITNESSES

Except for good cause, witnesses shall be limited to (5) per party. Non-witnesses are barred from attendance at the arbitration. Witnesses can be sequestered.

## FORM OF AWARD

The arbitrator shall submit to the parties a written award signed by the arbitrator within 30 calendar days of the close of arbitration. The award shall specify the elements of and basis for any award, along with a written opinion, which includes findings of fact and conclusions of law. Damages and the award of attorney fees are not restricted but are to be in compliance with applicable law. If the Arbitrator finds that an adverse employment action was lawful, the arbitrator shall have no authority to reduce the action, or to make decisions based upon alleged "unfairness".

## ARBITRATOR FEES

Arbitrator fees are covered by the employer.

## GENERAL PROVISIONS/AUTHORITY

The parties have the right to be represented by legal counsel. RESOLVE is subject to the Federal Arbitration Act and The National Rules for the Resolution of Employment Disputes of the American Arbitration Association. In the event of a conflict between the RESOLVE Program Arbitration Rules and the AAA Employment Dispute Resolution Rules, RESOLVE Program Arbitration Rules will control. Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator. Likewise, procedural questions, which grow out the dispute and bear on the final disposition, are also matters for the arbitrator. However, where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

**EXHIBIT T**

**AAA's letter to parties, dated April 29, 2008**


**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

April 29, 2008

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

## VIA FACSIMILE AND E-MAIL

Joseph M. Sellers, Esq.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Sam J. Smith, Esq.
Burr & Smith
442 W. Kennedy Boulevard, Suite 300
Tampa, FL 33606

Thomas A. Warren, Esq.
Thomas A. Warren Law Offices, P.L.
2032-D Thomasville Boulevard
Tallahassee, FL 32308

Sahar F. Aziz
Cohen Milstein Hausfeld & Toll PLLC
1100 New York Avenue
Washington, DC 20005

Gerald L. Maatman, Esq.
Seyfarth Shaw, LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603-5577

Stephen S. Zashin, Esq.
Zashin & Rich Co., L.P.A.
55 Public Square, 4th Floor
Cleveland, OH 44113

Re: 11 160 00655 08
      Laryssa Jock, Jacquelyn Boyle, Christy Chadwick,
      Lisa Follett, Maria House, Denise Maddox, Lisa
      McConnell, Gloria Pagan, Judy Reed, Linda Rhodes,
      Khristina Rodrigues, Nina Shahmirzadi, Leighla
      Smith, Dawn Souto-Coons, and Marie Wolf,
      individually and on behalf of all others similarly
      situated
      and
      Sterling Jewelers, Inc.

Dear Counsel:

This will acknowledge receipt of a letter dated April 28, 2008 from Mr. Sellers, a copy of which we note
has been exchanged with the other party.

As indicated in the Association's letter dated April 11, 2008, Claimants have met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or a court order dismissing this matter, the Association will continue to hold this matter in abeyance.

Please do not hesitate to contact me with any questions or concerns.

Sincerely,


Jonathan J. Weed
Case Manager
401 431 4721
WeedJ@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

April 29, 2008

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

## VIA FACSIMILE AND E-MAIL

Joseph M. Sellers, Esq.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005

Sam J. Smith, Esq.
Burr & Smith
442 W. Kennedy Boulevard, Suite 300
Tampa, FL  33606

Thomas A. Warren, Esq.
Thomas A. Warren Law Offices, P.L.
2032-D Thomasville Boulevard
Tallahassee, FL  32308

Sahar F. Aziz
Cohen Milstein Hausfeld & Toll PLLC
1100 New York Avenue
Washington, DC  20005

Gerald L. Maatman, Esq.
Seyfarth Shaw, LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL  60603-5577

Stephen S. Zashin, Esq.
Zashin & Rich Co., L.P.A.
55 Public Square, 4th Floor
Cleveland, OH  44113

Re: 11 160 00655 08
    Laryssa Jock, Jacquelyn Boyle, Christy Chadwick,
    Lisa Follett, Maria House, Denise Maddox, Lisa
    McConnell, Gloria Pagan, Judy Reed, Linda Rhodes,
    Khristina Rodrigues, Nina Shahmirzadi, Leighla
    Smith, Dawn Souto-Coons, and Marie Wolf,
    individually and on behalf of all others similarly
    situated
    and
    Sterling Jewelers, Inc.

Dear Counsel:

This will acknowledge receipt of a letter dated April 28, 2008 from Mr. Sellers, a copy of which we note
has been exchanged with the other party.

As indicated in the Association's letter dated April 11, 2008, Claimants have met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.

Accordingly, in the absence of an agreement by the parties or a court order dismissing this matter, the Association will continue to hold this matter in abeyance.

Please do not hesitate to contact me with any questions or concerns.

Sincerely,


Jonathan J. Weed
Case Manager
401 431 4721
WeedJ@adr.org

*Supervisor Information: Heather Santo, 401 431 4702, SantoH@adr.org*

**EXHIBIT U**

**May 2, 2006 RESOLVE claims of named Plaintiffs, Jock, Boyle, Reed, Souto-Coons, Wolf and Follet**

| Step 1 | | CLAIM FORM |
|---|---|---|

Directions:    You must submit your claim in this format in order for it to be accepted.
Once completed (please print or type), return to Sterling Jewelers Inc. in the
enclosed envelope postmarked within one (1) year of the date of the alleged
unlawful activity/conduct. For assistance call **1-800-394-4205**

---

**EMPLOYEE DATA**

| Laryssa Jock | 756847 | May 15, 1995 |
|---|---|---|
| Name | Employee Number | Date of Hire |
| Sales Associate | #331 | |
| Position (last) | Location Number | Last Date Worked (If applicable) |

---

**A.    EXPLAIN CLAIM**

1.  Describe the unlawful activity/conduct that you allege you have been subjected to:

I, and other female employees similarly-situated, have been discriminated against because of our gender. I believe Sterling has a continuing policy or pattern and practice of paying its female sales associates, including myself, less than their male comparators and has denied female employees promotion opportunities in favor of less qualified male employees. To the extent information is not provided for in this response, please see Exh. G, Laryssa Jock, Charge of Discrimination.

2.  What laws were violated?

Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, the New York Human Rights Law, Article 15, Section 296(1)(a).

3.  When did this begin?   May 15, 1995                    #331

                                Date       Time        Location

4.    When did this end?    <u>Present</u>                                    <u>#331</u>
                            Date                    Time        Location

**B.    Identify witnesses and what they have personally observed or experienced:**

<u>Name</u>                        <u>Address</u>              Phone #

_____<u>Linda Rhodes</u>_____

Observation/Experiences:    <u>Female  sales  associates  were  and  continue  to  be  paid  a  lower</u>

<u>hourly wage than male comparators and were and continue to be denied promotion opportunities</u>

<u>based on gender.</u>_____

_____<u>Lisa Follett</u>_____

Observation/Experiences:    <u>Female  sales  associates  were  and  continue  to  be  paid  a  lower</u>

<u>hourly wage than male comparators and were and continue to be denied promotion opportunities</u>

<u>based on gender.</u>_____

_____<u>Christy Davies</u>_____

Observation/Experiences:    <u>Female  sales  associates  were  and  continue  to  be  paid  a  lower</u>

<u>hourly wage than male comparators and were and continue to be denied promotion opportunities</u>

<u>based on gender.</u>_____

_____<u>Denise Smith</u>_____

Observation/Experiences:    <u>Female  sales  associates  were  and  continue  to  be  paid  a  lower</u>

<u>hourly wage than male comparators and were and continue to be denied promotion opportunities</u>

<u>based on gender.</u>_____

**C.**    **Did you report your claim to any member of Sterling Jewelers Inc. management?**
**(If yes, cite to whom, when, and where your reported the unlawful activity.)**

| Name and Title | Date Reported | Where |
|---|---|---|

No.

**D.**    **Provide names of employees (current or ex-employees) who have experienced**
**similar activity/conduct (if applicable).**

| Name and Title | What did they experience? |
|---|---|
| Marie Wolf – sales assoc. | gender wage discrimination |
| Jacqueline Boyle – sales assoc. | gender wage discrimination |
| Carol King – sales assoc. | gender wage discrimination |
| Dawn Souto-Coons – asst. mgr. | denied promotion based on gender |
| Judy Reed – asst. mgr. | denied promotion based on gender |
| Carolyn Morse – sales assoc. | gender wage discrimination |
| Lisa Follett – sales assoc. | gender wage discrimination/ denied promotion |
| Linda Rhodes – sales assoc. | gender wage discrimination |

**E.**    **Provide names of employees (current or ex-employees) who have been treated**
**"differently" than you (if applicable).**

| Name and Title | Describe different treatment |
|---|---|
| Troy Lawler | pay rate |

F.   List your current address and phone number:

Address:                          Telephone Number:

Burr & Smith, LLP _____       Phone: 813/253-2010 _____

442 West Kennedy Blvd., Suite     Fax:   813/254-8391 _____

Tampa, FL  33606 _____

G.   Describe the remedy that you are seeking:

Seeking class certification regarding remedies provided by Title VII and the Equal Pay Act, _____

including, back pay, compensatory and punitive damages, injunctive relief, reasonable attorney _____

fees and costs, and pre-post judgment interest. _____

H.   EVIDENCE

Do you have any documents/recordings/photographs/statements or other evidence to
support your allegations?  If so, please submit copies with this claim and list them below.

Please see Exhibit G, Laryssa Jock Charge of Discrimination. _____

_____

_____

_____

_____

I.   SIGN

Under penalty of perjury, I do hereby attest that the information I have provided is true.  I
understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will
occur and my cooperation is required.  I may be asked to provide additional information.
I will receive a written response within 30 day of Sterling Jewelers Inc.'s receipt of my
claim.

_____          4-20-06
Claimant's Signature                       Date

**REDACTED**

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 165-2005-00714 |

| New York State Division of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Laryssa Jock | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | Bombay, NY |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| BELDEN JEWELERS | Under 15 | (315) 769-0264 |
| Street Address | | |
| P.O. Box 6010, Massena, NY 13662 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Sterling Inc. | 500 or More | (800) 877-8812 |
| Street Address | | |
| 375 Ghent Road, Akron, OH 44333 | | |

RECEIVED
1 8 MAY 2005
E.E.O.C. BULO

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☒ OTHER (Specify below.)
Equal Pay

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 03-15-2005 | 04-05-2005 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with the above named Respondent on May 15, 1995. I am currently classified as a full-time Sales Associate.

In mid-March 2005, a part-time male Sales Associate was hired. We perform work that requires the same skill, effort and responsibility. If anything, my work requires more skill, effort and responsibility based on the fact I am a more senior and full-time Associate. The male has no previous retail jewelry experience. He is the only male Associate in the store. He was hired in at a pay rate substantially higher than any other part-time female Associate, and he was hired at a higher rate of pay than I was making after ten years experience on the job. On March 31, 2005, I was given a raise which increased my hourly rate to $ .10 more per hour than the newly hired male.

I believe that I, and my female co-workers, are being paid less based on our gender, female, in violation of the Equal Pay Act and Title VII of the Civil Rights Act of 1964, as amended.

MELODY A. TIBBETTS
Notary Public, State of New York
No. 01TI6122243
Qualified in Franklin County
Commission Expires February 7, 2009

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | Melody A. Tibbetts |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>Laryssa E. Jock |
| Date | Charging Party Signature |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

| Step 1 | CLAIM FORM |
|--------|------------|

Directions:   · You must submit your claim in this format in order for it to be accepted. Once completed (please print or type), return to Sterling Jewelers Inc. in the enclosed envelope postmarked within one (1) year of the date of the alleged unlawful activity/conduct. For assistance call 1-800-394-4205

---

**EMPLOYEE DATA**

Jacquelyn Boyle
Name

Employee Number

September  2004
Date of Hire

Sales Associate
Position (last)

#444
Location Number

Last Date Worked
(If applicable)

---

**A.    EXPLAIN CLAIM**

1.    Describe the unlawful activity/conduct that you allege you have been subjected to:

I, and other female employees similarly-situated, have been discriminated against because of our gender.  I believe Sterling has a continuing policy or pattern and practice of paying its female sales associates, including myself, less than their male comparators and has denied female employees promotion opportunities in favor of less qualified male employees.  To the extent information is not provided for in this response, please see Exh. C. Jacquelyn Boyle Charge of Discrimination.

2.    What laws were violated?

Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and the Florida Civil Rights Act, Chp. 760, Florida Statutes.

3.    When did this begin? September 2004            #444
                            Date         Time        Location

Page 1 of 5

4.    When did this end?    June 2005                                    #444
                            Date                    Time                Location

**B.    Identify witnesses and what they have personally observed or experienced:**

   Name                          Address                Phone #

   Marty Perry

Observation/Experiences:    Believes there is no justifiable reason why female sales associates,

including Marie Wolf, Carol King, Carolyn Morse, and Jacqueline Boyle, were earning a lower

hourly wage than male comparators.

   Name                          Address                Phone #

   Alan Mong

Observation/Experiences:    Believes there is no justifiable reason why female sales associates,

including Marie Wolf, Carol King, and Jacqueline Boyle, were earning a lower hourly wage than

male comparators.

   Name                          Address                Phone #

   Marie Wolf

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

   Name                          Address                Phone #

   Dawn Souto-Coons

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

| Name | Address | Phone # |
|------|---------|---------|
| Carol King | | |

Observation/Experiences:    Female sales associates were and continue to be paid a lower hourly wage than male comparators and were and continue to be denied promotion opportunities based on gender.

**C.**    **Did you report your claim to any member of Sterling Jewelers Inc. management? (If yes, cite to whom, when, and where your reported the unlawful activity.)**

| Name and Title | Date Reported | Where |
|----------------|---------------|-------|
| No. | | |

**D.**    **Provide names of employees (current or ex-employees) who have experienced similar activity/conduct (if applicable).**

| Name and Title | What did they experience? |
|----------------|---------------------------|
| Marie Wolf – sales assoc. | gender wage discrimination |
| Carol King – sales assoc. | gender wage discrimination |
| Carolyn Morse – sales assoc. | gender wage discrimination |
| Dawn Souto-Coons – asst. mgr. | denied promotion based on gender |
| Judy Reed – asst. mgr. | denied promotion based on gender |
| Laryssa Jock – sales assoc. | gender wage discrimination |

| Lisa Follett – sales assoc. | gender wage discrimination/ denied promotion |
| Linda Rhodes – sales assoc. | gender wage discrimination |

E. **Provide names of employees (current or ex-employees) who have been treated "differently" than you (if applicable).**

| Name and Title | Describe different treatment |
| Alan Mong | pay rate |
| Grant Laing | pay rate |
| Marty Perry | pay rate |

F. **List your current address and phone number:**

Burr & Smith, LLP                         Phone: 813/253-2010

442 West Kennedy Blvd., Suite          Fax:   813/254-8391

Tampa, FL  33606

G. **Describe the remedy that you are seeking:**

Seeking class certification regarding remedies provided by Title VII and the Equal Pay Act,

including, back pay, compensatory and punitive damages, injunctive relief, reasonable attorney

fees and costs, and pre-post judgment interest.

H. **EVIDENCE**

Do you have any documents/recordings/photographs/statements or other evidence to support your allegations? If so, please submit copies with this claim and list them below.

Please see Exhibit C, Jacquelyn Boyle Charge of Discrimination and Exhibit J, Declaration of

Alan Mong.

I. **SIGN**

Under penalty of perjury, I do hereby attest that the information I have provided is true. I understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will occur and my cooperation is required. I may be asked to provide additional information.

I will receive a written response within 30 day of Sterling Jewelers Inc.'s receipt of my claim.

_Jacquelyn Boyle_                          _April 28th, 2006_
Claimant's Signature                        Date

**REDACTED**

## CHARGE OF DISCRIMINATION

| CHARGING PARTY INFORMATION | CHARGE NO. |
|---|---|

<u>Florida Commission on Human Relations</u> and EEOC
(State or Local Agency, if any)

Name (Indicate Mr., Ms. or Mrs.)
Ms. Jacquelyn Boyle

| Address | Telephone Number |
|---|---|
| c/o Burr & Smith, LLP<br>442 W. Kennedy Blvd., Suite 300<br>Tampa, Florida 33606-1495 | (813) 253-2010 |

| SSN | Date of Birth |
|---|---|

| Dates of Discrimination | Supervisor (Name and Title) |
|---|---|
| Earliest    September 2004<br>Latest    June 2005 | Aaron Scott, Store Manager<br>Eric Wolff, Store Manager |

Discrimination Based On

☐ Race  ☐ Color  ☐ National Origin  ☒ Sex  ☐ Age  ☐ Religion  ☐ Retaliation  ☐ Disability

Other:

### RESPONDENT INFORMATION

Company Name
Jared The Galleria Of Jewelry

Company Address (where claimant worked)
Regency Square
2206 W. Brandon Blvd.
Brandon, FL 33511

| Telephone Number | No. of Employees |
|---|---|
| 13) 657-5913 | 15+ |

Company Name
Sterling Jewelers, Inc.

Company Address (where claimant worked)
375 Ghent Road
Akron, OH 44333

| Telephone Number | No. of Employees |
|---|---|
| ( 800 ) 877-8812<br>(800) 877- 3616 | 15+ |

Company Name
Signet Group, plc

Company Address (where claimant worked)
Zenith House
The Hyde
London NW9 6EW
United Kingdom

*Charge of Discrimination of Jacquelyn Boyle*
*Initials _____*

| Telephone Number | No. of Employees |
|---|---|
| +44 (0) 870 909-0301 | 15+ |

Iss Where Charge to Be Served (if different than above)
Sterling Jewelers, Inc.
375 Ghent Road
Akron, OH 44333

---

## STATEMENT

### I.    Statement of Personal Harm

I began working for Jared The Galleria Of Jewelry a division of Sterling Jewelers, Inc. and a wholly-owned subsidiary of Signet Group (hereinafter, collectively, "Jared's") at the end of September 2004 as a seasonal sales representative in Brandon, Florida. I worked forty (40) hours per workweek as a seasonal sales representative at a starting hourly rate of $9.50 per hour plus commission and bonuses.

Prior to my employment with Jared's, I obtained my Bachelors of Administration degree in Legal Studies and worked for Service Merchandise in jewelry sales. Due to my experience in jewelry sales and education, I was able to produce substantial sales for Jared's while employed as a seasonal sales representative. For example, during the month of December in 2004, I accumulated over $100,000 in jewelry sales. Even though Jared's considered me a top performer, my persistent requests for review as a seasonal sales representative were denied.

In February 2005, I obtained a full-time sales representative position at Jared's. During this process, my store manager, Eric Wolff expressed to me what a substantial raise I was receiving by becoming a full-time employee and how proud I should be. He also told me I was an excellent sales person and an asset to Jared's. Mr. Wolff then informed me that my hourly rate as a full-time employee would be $10.25 per hour. I recently became aware that other male sales representatives with no jewelry sales experience, hired within months of my hire date, were paid substantially more than me.

From at least September 2004 until as recently as June 2005, Jared's paid me and other female sales representatives at hourly rates that are less than similarly-situated male sales representatives for substantially equal work that required equal skill, effort, and responsibility under similar working conditions. For example, such similarly-situated male sales representatives paid a higher starting hourly rate than female sales representatives include, but are not limited to, Grant "Billy" Laing (paid $14.50 hourly as a full-time sales representative, hired in August 2004); Alan Mong (paid $13.50 hourly as a full-time sales representative, hired in July 2004); and Michael Duggan (paid $11.50 hourly as a full-time sales representative, hired in May 2005). I am not aware of all the male sales representatives who were paid more than female sales representatives during these years because Jared's prohibits its employees from discussing their pay rates.

I make this charge for myself and on behalf of all similarly-situated female employees of Jared's. Female employees employed with Jared's are and have been subject to a continuing policy or pattern and practice of gender wage discrimination.

*Charge of Discrimination of Jacquelyn Boyle*
*Initials _____*                                                    *Page 2 of 3*

II.    <u>Respondent's Articulated Reason for Adverse Action</u>

    Respondent denies any adverse action.

III.    <u>Statement of Discrimination</u>

    I believe that I, and other female employees similarly-situated, have been discriminated against because of our sex in violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and the Florida Civil Rights Act, Chapter 760, Florida Statutes.

    I declare under penalty of perjury that the foregoing is true and correct.

    I also request that this charge be filed with the FCHR.



Jacquelyn Boyle

**Affidavit**

STATE OF FLORIDA      )
                      ) ss:
COUNTY OF HILLSBOROUGH  )

    BEFORE ME, the undersigned authority, personally appeared Jacquelyn Boyle, who after first being duly sworn acknowledged that aforementioned answers are true and correct to the best of her knowledge and belief.

    WITNESS my hand and official seal in the State and County last aforesaid this 15th day of Sept. , 2005.

Notary Public, State of Florida
Print Name: _Gwen E Kirkpatrick_

My Commission Expires:

GWEN E. KIRKPATRICK
Notary Public • State of Florida
My Commission Expires Oct 4, 2008
Commission # DD 360186
Bonded By National Notary Assn.

*Charge of Discrimination of Jacquelyn Boyle*
*Initials* _____

*Page 3 of 3*

## DECLARATION OF ALAN MONG

1.    I, Alan Mong, am over the age of 18, am competent to testify to the following from my personal experience and knowledge, and declare as follows:

2.    I was employed by Sterling Jewelers, Inc. ("Sterling") as a jewelry sales associate from approximately July 2004 until approximately October 11, 2005. During that time, I worked with Jacquelyn Boyle, Carol King, Dawn Souto-Coons, and Marie Wolf at Sterling owned and operated Jared The Galleria of Jewelry in Brandon, Florida.

3.    I was hired as a sales associate by the former general manager Auron Scott at an hourly rate of $13.50. When I discovered that I was hired at a higher hourly rate than Jacquelyn Boyle, Carol King, and Marie Wolf, I was more than surprised. I had no prior jewelry experience before working for Sterling whereas each of these women had substantial experience and established track records working in the jewelry sales industry.

4.    Prior to my employment with Sterling, my only commission sales and retail sales experience involved the selling of laminate floors. I performed this line of work for about a year and a half. Prior to that, I worked as a traffic reporter. I had no prior experience in the jewelry industry and limited experience with commission and retail sales before working for Sterling.

5.    Jacquelyn Boyle and I were hired a few months apart and went through the Sterling training program together. Ms. Boyle had wonderful customer service skills and was also quite knowledgeable about jewelry due to her prior employment selling fine jewelry for Service Merchandise. Additionally, Ms. Boyle was well-educated and frequently received high standard performance ratings from Sterling managers. Ms.

Boyle and I were similarly situated in that we performed substantially equal work that required equal skill, effort, and responsibility under similar working conditions. This included generating jewelry sales, providing customer service, processing credit payment protection plans and warranties, generating repair sales, and assisting other sales associates in the completion of a sale.   Because of Ms. Boyle's education and prior experience, I was surprised to learn that Ms. Boyle was earning less than I was. I do not believe there is any non-discriminatory justification for paying Ms. Boyle less than me.

6.      Carol King has over twenty-five years of experience selling fine jewelry and managing stores in the jewelry industry. I typically sought out Ms. King when I had questions about jewelry sales or any work-related procedures. Ms. King is by far the most knowledgeable and experienced sales associate at the Brandon, Florida Sterling store. Ms. King and I were similarly situated in that we performed substantially equal work that required equal skill, effort, and responsibility under similar working conditions. This included generating jewelry sales, providing customer service, processing credit payment protection plans and warranties, generating repair sales, and assisting other sales associates in the completion of a sale.   I was surprised to learn that Ms. King was paid less per hour than I was. I do not believe there is any non-discriminatory justification for paying Ms. King less than me.

7.      Marie Wolf is the top producer in the Brandon, Florida Sterling store. She has reached the million dollar mark in jewelry sales; an outstanding accomplishment. I mistakenly believed Ms. Wolf was the highest pay sales associate in our store and was surprised to learn that Ms. Wolf was earning less per hour than the three male sales associates she frequently out performed. Ms. Wolf and I were similarly situated in that

2

FEB.28.2006 10:17                                              #1789 P.005/005

we performed substantially equal work that required equal skill, effort, and responsibility
under similar working conditions.  This included generating jewelry sales, providing
customer service, processing credit payment protection plans and warranties, generating
repair sales, and assisting other sales associates in the completion of a sale.  I do not
believe there is any non-discriminatory justification for paying Ms. Wolf less than me.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on this 28th day of February, 2006.

ALAN MONG

3

Step 1                          **CLAIM FORM**

Directions:     You must submit your claim in this format in order for it to be accepted.
                Once completed (please print or type), return to Sterling Jewelers Inc. in the
                enclosed envelope postmarked within one (1) year of the date of the alleged
                unlawful activity/conduct. For assistance call **1-800-394-4205**

---

EMPLOYEE DATA

Judy Reed                                              October 2000
Name                        Employee Number            Date of Hire


Asst. Manager                     #443
Position (last)             Location Number            Last Date Worked
                                                       (If applicable)

---

A.    **EXPLAIN CLAIM**

    1.    Describe the unlawful activity/conduct that you allege you have been subjected
        to:

    I, and other female employees similarly-situated, have been discriminated against
because of our gender. I believe Sterling has a continuing policy or pattern and practice of
paying its female sales associates, including myself, less than their male comparators and has
denied female employees, including myself, promotion opportunities in favor of less qualified
male employees. To the extent information is not provided for in this response, please see Exh.
E, Judy Reed, Charge of Discrimination.

    2.    What laws were violated?

    Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and the Florida
Civil Rights Act, Chp. 760, Florida Statutes.

    3.    When did this begin? October 2000                    #440, #443 and #444
                            Date            Time    Location

Page 1 of 4

4.    When did this end?    Present _____    #443 and #444 _____
                            Date        Time        Location

**B.**    **Identify witnesses and what they have personally observed or experienced:**

Name_____    Address_____    Phone #_____

_____Marie Wolf_____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender._____

Name_____    Address_____    Phone #_____

_____Jacquelyn Boyle_____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender._____

Name_____    Address_____    Phone #_____

_____Carol King_____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender._____

Name_____    Address_____    Phone #_____

_____Dawn Souto-Coons_____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender._____

**C.** Did you report your claim to any member of Sterling Jewelers Inc. management? (If yes, cite to whom, when, and where your reported the unlawful activity.)

| Name and Title | Date Reported | Where |
|---|---|---|

No. _____

_____

_____

_____

_____

_____

**D.** Provide names of employees (current or ex-employees) who have experienced similar activity/conduct (if applicable).

| Name and Title | What did they experience? |
|---|---|
| Marie Wolf – sales assoc. | gender wage discrimination |
| Carol King – sales assoc. | gender wage discrimination |
| Carolyn Morse – sales assoc. | gender wage discrimination |
| Jacquelyn Boyle – sales assoc. | gender wage discrimination |
| Dawn Souto-Coons – asst. mgr. | denied promotion based on gender |
| Laryssa Jock – sales assoc. | gender wage discrimination |
| Lisa Follett – sales assoc. | gender wage discrimination/ denied promotion |
| Linda Rhodes – sales assoc. | gender wage discrimination |

**E.** Provide names of employees (current or ex-employees) who have been treated "differently" than you (if applicable).

| Name and Title | Describe different treatment |
|---|---|
| Avind Molhip | promotion |
| Eric Wolff | promotion |

F.    **List your current address and phone number:**

        Address:                Telephone Number:

Burr & Smith, LLP           Phone: 813/253-2010

442 West Kennedy Blvd., Suite    Fax:   813/254-8391

Tampa, FL 33606

G.    **Describe the remedy that you are seeking:**

Seeking class certification regarding remedies provided by Title VII and the Equal Pay Act,

including, back pay, compensatory and punitive damages, injunctive relief, reasonable attorney

fees and costs, and pre-post judgment interest.

H.    **EVIDENCE**

        Do you have any documents/recordings/photographs/statements or other evidence to
support your allegations? If so, please submit copies with this claim and list them below.

Please see Exhibit E, Judy Reed Charge of Discrimination.

I.    **SIGN**

        Under penalty of perjury, I do hereby attest that the information I have provided is true. I
understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will
occur and my cooperation is required. I may be asked to provide additional information.
I will receive a written response within 30 day of Sterling Jewelers Inc.'s receipt of my
claim.

_Judy A Reed_           _4-17-06_
Claimant's Signature           Date

**REDACTED**

## CHARGE OF DISCRIMINATION

| CHARGING PARTY INFORMATION | CHARGE NO. |
|---|---|

<div align="center">

Florida Commission on Human Relations and EEOC
(State or Local Agency, if any)

</div>

| Name (Indicate Mr., Ms. or Mrs.) | |
|---|---|
| Ms. Judy Reed | |

| Address | Telephone Number |
|---|---|
| c/o Burr & Smith, LLP | (813) 253-2010 |
| 442 W. Kennedy Blvd., Suite 300 | |
| Tampa, Florida 33606-1495 | |

| SSN | Date of Birth |
|---|---|
| | . |

| Dates of Discrimination | Supervisor (Name and Title) |
|---|---|
| Earliest   October 2000 | Avind Molhip, Store Manager |
| Latest   Present | |

**Discrimination Based On**

☐ Race ☐ Color ☐ National Origin ☒ Sex ☐ Age ☐ Religion ☐ Retaliation ☐ Disability

Other:

### RESPONDENT INFORMATION

| Company Name | |
|---|---|
| Sterling Jewelers, Inc. | |

| Company Address (where claimant worked) | |
|---|---|
| 375 Ghent Road | |
| Akron, OH 44333 | |

| Telephone Number | No. of Employees |
|---|---|
| ( 800 ) 877-8812 | 15+ |
| (800) 877- 3616 | |

| Company Name | |
|---|---|
| Jared The Galleria Of Jewelry | |

| Company Address (where claimant worked) | |
|---|---|
| 8104 Citrus Park Drive | |
| Tampa, FL 33625 | |

| Telephone Number | No. of Employees |
|---|---|
| | |

| Company Name | |
|---|---|
| Signet Group, plc | |

| Company Address (where claimant worked) | |
|---|---|
| Zenith House | |
| The Hyde | |
| London NW9 6EW | |
| United Kingdom | |

| Telephone Number | No. of Employees |
|---|---|
| +44 (0) 870 909-0301 | 15+ |

| Address Where Charge to Be Served (if different than above) |
|---|
| Sterling Jewelers, Inc. |
| 375 Ghent Road |
| ⸻ on, OH 44333 |

*Charge of Discrimination of Judy Reed*
*Initials*  JR

---

## STATEMENT

I.    **Statement of Personal Harm**

In or around October 2000, I was hired by Sterling Jewelers, Inc. and Jared The Galleria of Jewelry (collectively "Sterling"), which are wholly-owned subsidiary companies of Signet Group, plc., as an assistant manager in Appleton, Wisconsin. I held this position until July 2001. In July 2001, I transferred to a Sterling's Citrus Park store in Tampa, Florida to be closer to my family. Unfortunately, at this time, Sterling had no general manager or assistant manager positions available in the Tampa, Florida area. I accepted a position as diamond department manager of Sterling's Citrus Park store until another management position became available. One year later, in July 2002, Sterling promoted me to assistant manager for the Citrus Park store at a salary of approximately $33,000.00 per year.

Assistant managers for Sterling typically earn a starting salary ranging from $32,000.00 to $36,000.00 per year. Prior to my employment with Sterling, I had over twenty-five (25) years of experience in jewelry sales and management working for Finley's a fine jewelry store in Appleton, Wisconsin. Even though I had substantial experience in the jewelry industry, Sterling started me at the lower end of its pay scale at approximately $32,600.00 per year. Although I do not know for certain, I believe male assistant managers with less experience were earning more than I was.

This past summer, Jason May ("May") obtained the position of assistant manager for Sterling's Jacksonville, Florida store even though he had only two years of experience working for Sterling and had no prior experience in jewelry sales. I believe May's starting salary was over $36,000.00 per year. In October 2005, after working for Sterling as an assistant manager for almost five (5) years, I was given an annual raised to $36,400.00. I have reason to believe that female assistant managers are not paid equally to similarly-situated male assistant managers even though we perform substantially equal work that requires equal skill, effort, and responsibility under similar working conditions.

Likewise, I have reason to believe Sterling's female sales representatives are also subject to unequal pay. Female sales representatives at Sterling's Citrus Park store have discussed pay discrepancies in my presence. They have also spoken about pay inequities in other Sterling stores they have worked for, including Sterling owed Kay's and Belden's located along the upper east coast. Further, I have reason to believe that similar pay inequalities were also present in Sterling stores in Appleton, Wisconsin.

Throughout my employment, Sterling has failed to promote me to the position of general manager on three occasions. Around 2003, the general manager position in Sterling's Clearwater, Florida store became available. I was not granted an interview for this position even though I was more than qualified. David Dion, a male employee who worked for Sterling for about three years and had less jewelry experience than I did, was awarded the position. In January 2005, the general manager position in Sterling's Brandon, Florida store became available. Again, I was not asked to interview for this position. Eric Wolff, a male employee who had only worked for Sterling for two years, was given the position even though Sterling expressed that they were recruiting an individual with extensive jewelry experience. About two months later, in March 2005, the general manager position in Sterling's Citrus Park store also became available. I had been assistant manager for this

*Charge of Discrimination of Judy Reed*
*Initials*

*Page 2 of 4*

Sterling store for approximately four years. During this time period, I had occasionally performed the duties of general manager and did so successfully. Although I was granted an interview for this position, the job was given to Avind Molhip, a male employee whose resume reflects two years of jewelry experience and a shared management position in a clothing store. I had over thirty (30) years of experience in the jewelry industry with five (5) of those years being a management position with Sterling. I also received excellent semi-annual reviews and personal email correspondences from District Manager, Michael Molonare, expressing that he was pleased with my performance as assistant manager.

Around January 2005, Sterling also failed to promote Dawn Souto-Coons, a former manager for Sterling in Waldorf, Maryland and an assistant manager in Sterling's Brandon, Florida store in favor of a less qualified male employee.

I believe Sterling has a continuing policy or pattern and practice of denying females promotions in favor of less qualified males. I also have reason to believe Sterling pays female assistant managers and sales representatives less than their male comparators. Throughout my employment with Sterling, I have observed the continual inequity of their promotion and pay practices between male and female employees and have reason to believe these practices are occurring company-wide.

I make this charge for myself and on behalf of all similarly-situated female employees of Sterling. Female employees employed with Sterling are and have been subject to a continuing policy or pattern and practice of gender wage discrimination.

II.    **Respondent's Articulated Reason for Adverse Action**

Respondent denies any adverse action.

III.    **Statement of Discrimination**

I believe that I, and other female employees similarly-situated, have been discriminated against because of our sex in violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and the Florida Civil Rights Act, Chapter 760, Florida Statutes.

I declare under penalty of perjury that the foregoing is true and correct.

I also request that this charge be filed with the FCHR.

Judy Reed

**Affidavit**

STATE OF FLORIDA          )
                          ) ss:
COUNTY OF HILLSBOROUGH    )

*Charge of Discrimination of Judy Reed*
*Initials*

*Page 3 of 4*

BEFORE ME, the undersigned authority, personally appeared Judy Reed, who after first being duly sworn acknowledged that aforementioned answers are true and correct to the best of her knowledge and belief.

WITNESS my hand and official seal in the State and County last aforesaid this 23rd day of November, 2005.

Notary Public, State of Florida
Print Name: VIRIL C. LOWE

My Commission Expires

| Step 1 | CLAIM FORM |
|--------|------------|

Directions:   You must submit your claim in this format in order for it to be accepted. Once completed (please print or type), return to Sterling Jewelers Inc. in the enclosed envelope postmarked within one (1) year of the date of the alleged unlawful activity/conduct.  For assistance call **1-800-394-4205**

---

EMPLOYEE DATA

Dawn Souto-Coons
Name

Employee Number

September 1, 1991
Date of Hire

Asst. Manager
Position (last)

#444
Location Number

May 27, 2005
Last Date Worked
(If applicable)

---

**A.    EXPLAIN CLAIM**

  1.    Describe the unlawful activity/conduct that you allege you have been subjected to:

I, and other female employees similarly-situated, have been discriminated against because of our gender.  I believe Sterling has a continuing policy or pattern and practice of paying its female sales associates less than their male comparators and has denied female employees promotion opportunities, including myself, in favor of less qualified male employees. To the extent information is not provided for in this response, please see Exh. D, Dawn Souto-Coons of Discrimination.

  2.    What laws were violated?

Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and the Florida Civil Rights Act, Chp. 760, Florida Statutes.

  3.    When did this begin? January 2005                      #444 and #443
                                          Date                    Time            Location

Page 1 of 4

4.    When did this end?    May 2005                                #444 and #443
                                    Date                    Time        Location

**B.    Identify witnesses and what they have personally observed or experienced:**

Name                    Address                Phone #

        Marie Wolf

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

Name                    Address                Phone #

        Jacquelyn Boyle

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

Name                    Address                Phone #

        Carol King

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

Name                    Address                Phone #

        Judy Reed

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

**C.  Did you report your claim to any member of Sterling Jewelers Inc. management?
(If yes, cite to whom, when, and where your reported the unlawful activity.)**

| Name and Title | Date Reported | Where |
|---|---|---|

No.

**D.  Provide names of employees (current or ex-employees) who have experienced similar activity/conduct (if applicable).**

| Name and Title | What did they experience? |
|---|---|
| Marie Wolf – sales assoc. | gender wage discrimination |
| Carol King – sales assoc. | gender wage discrimination |
| Carolyn Morse – sales assoc. | gender wage discrimination |
| Jacquelyn Boyle – sales assoc. | gender wage discrimination |
| Judy Reed – asst. mgr. | denied promotion based on gender |
| Laryssa Jock – sales assoc. | gender wage discrimination |
| Lisa Follett – sales assoc. | gender wage discrimination/ denied promotion |
| Linda Rhodes – sales assoc. | gender wage discrimination |

**E.  Provide names of employees (current or ex-employees) who have been treated "differently" than you (if applicable).**

| Name and Title | Describe different treatment |
|---|---|
| Avind Molhip | promotion |
| Eric Wolff | promotion |

**F.**  **List your current address and phone number:**

Address:                              Telephone Number:

Burr & Smith, LLP                     Phone: 813/253-2010

442 West Kennedy Blvd., Suite         Fax:   813/254-8391

Tampa, FL 33606

**G.**  **Describe the remedy that you are seeking:**

Seeking class certification regarding remedies provided by Title VII and the Equal Pay Act,

including, back pay, compensatory and punitive damages, injunctive relief, reasonable attorney

fees and costs, and pre-post judgment interest.

**H.**  **EVIDENCE**

Do you have any documents/recordings/photographs/statements or other evidence to
support your allegations? If so, please submit copies with this claim and list them below.

Please see Exhibit D, Dawn Souto-Coons Charge of Discrimination.

**I.**  **SIGN**

Under penalty of perjury, I do hereby attest that the information I have provided is true. I
understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will
occur and my cooperation is required. I may be asked to provide additional information.
I will receive a written response within 30 day of Sterling Jewelers Inc.'s receipt of my
claim.

_____          4/21/06
Claimant's Signature                      Date

Page 4 of 4

**REDACTED**

## CHARGE OF DISCRIMINATION

| CHARGING PARTY INFORMATION | CHARGE No. |
|---|---|

Florida Commission on Human Relations and EEOC
(State or Local Agency, if any)

Name (Indicate Mr., Ms. or Mrs.)
Mrs. Dawn Souto-Coons

Address
c/o Burr & Smith, LLP
442 W. Kennedy Blvd., Suite 300
Tampa, Florida 33606-1495

Telephone Number
(813) 253-2010

SSN

Date of Birth

Dates of Discrimination
Earliest  September 1, 1991
Latest    May 27, 2005

Supervisor (Name and Title)
Aaron Scott, General Manager
Eric Wolff, General Manager

Discrimination Based On
[ ] Race  [ ] Color  [ ] National Origin  [X] Sex  [ ] Age  [ ] Religion  [ ] Retaliation  [ ] Disability
Other:

### RESPONDENT INFORMATION

Company Name
Jared The Galleria Of Jewelry

Company Address (where claimant worked)
Regency Square
2206 W. Brandon Blvd.
Brandon, FL 33511

Telephone Number
(813) 657-5913

No. of Employees
15+

Company Name
Sterling Jewelers, Inc.

Company Address (where claimant worked)
375 Ghent Road
Akron, OH 44333

Telephone Number
( 800 ) 877-8812
(800) 877- 3616

No. of Employees
15+

Company Name
Signet Group, plc

Company Address (where claimant worked)
Zenith House
The Hyde
London NW9 6EW
United Kingdom

Telephone Number
+44 (0) 870 909-0301

No. of Employees
15+

Address Where Charge to Be Served (if different than above)
Sterling Jewelers, Inc.
375 Ghent Road
Akron, OH 44333

## STATEMENT

Charge of Discrimination of Dawn Souto-Coons
Initials _____

Page 1 of 3

## I.    Statement of Personal Harm

I began working for Sterling Jewelers, Inc. ("Sterling"), a wholly-owned subsidiary of Signet Group, in September 1991 as a sales representative in Waldorf, Maryland. My starting salary was $8.00 an hour plus commission and bonuses. In December 1992, I was promoted by Sterling to assistant store manager and shortly thereafter was promoted to store manager. I was very successful as a Sterling store manager. My awards and distinctions included a $10,000.00 award as one of Sterling's ten top managers, seven incentive trips, and bonuses up to $58,000.00. In 2001, my store had one of the highest volume sales, $3.6 million, in Sterling's mall division. I was a Sterling store manager in Maryland for about seven years and successfully managed two different Sterling locations before applying for a transfer to Florida. In July 2001, my transfer was granted and I accepted the position of assistant manager at Jared The Galleria Of Jewelry ("Jared's"), which is a division of Sterling stores, in its Brandon, Florida location. I took the lesser position of assistant manager only because I was eager to relocate to Florida.

In January 2005, two general manager positions, one for Jared's Brandon store and one for Jared's Citrus Park store, became available. The General Manager in the Brandon store, Aaron Scott ("Scott"), was being promoted to district manager. I was highly qualified for the general manager position and expressed to the District Manager, Michael Molonare ("Molonare"), and the Regional Vice President, Dave Everton ("Everton"), through email correspondence that I was interested in interviewing for the general manager positions. Throughout 2004, I frequently took the lead role in managing the Brandon store while Scott trained for the district manager position. I held the position of assistant manager for the Brandon store for over three years, and had developed positive working relationships and mutual respect with the Brandon store staff. Molonare and Everton were both aware of my extensive experience managing other Sterling stores and my role in managing Jared's Brandon store in Scott's absence. Regardless, I was denied the opportunity to interview for the general manager positions.

In February 2005, I was told a male employee, Eric Wolff ("Wolff"), was given the general manager position for the Brandon store. Wolff had only worked for Jared's for two years. Jared's also promoted Avind Molhip, a male employee with only two years of jewelry experience and a shared management position in a clothing store, to the general manager position of the Citrus Park store. I had worked for Sterling and Jared's for over thirteen years, had prior store management experience with Sterling, and was not even granted an interview for either position.

I believe Sterling and Jared's promotes male employees more often than female employees and gives male employees preferential treatment. Around January 2005, Jared's failed to promote Judy LNU, an assistant manager in Jared's Citrus Park store, to the general manager position even though she had over seven years of experience working for Jared's. Throughout my employment with Sterling and Jared's, I observed the continual inequity of their promotion practices between male and female employees.

I further observed that Jared's paid female sales representatives and assistant managers substantially less than similarly-situated male sales representatives and assistant managers for substantially equal work that required equal skill, effort, and responsibility under similar working conditions. On May 27, 2005, I was constructively discharged from my position with Jared's after more than thirteen years of service because of its disparate promotion and pay practices.

*Charge of Discrimination of Dawn Souto-Coons*
*Initials*/

*Page 2 of 3*

I make this charge for myself and on behalf of all similarly-situated female employees of Jared's. Female employees employed with Jared's are subject to a continuing pattern and practice of gender discrimination.

II.    **Respondent's Articulated Reason for Adverse Action**

Respondent denies any adverse action.

III.    **Statement of Discrimination**

I believe that I, and other female employees similarly-situated, have been discriminated against because of our gender in violation of Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act, Chapter 760, Florida Statutes.

I declare under penalty of perjury that the foregoing is true and correct.

I also request that this charge be filed with the FCHR.

Dawn Souto-Coons

**Affidavit**

STATE OF FLORIDA          )
                          ) ss:
COUNTY OF HILLSBOROUGH     )

BEFORE ME, the undersigned authority, personally appeared Dawn Souto-Coons, who after first being duly sworn acknowledged that aforementioned answers are true and correct to the best of her knowledge and belief.

WITNESS my hand and official seal in the State and County last aforesaid this __30th__ day of September , 2005.

Notary Public/State of Florida/Maryland
Print/Name: Jennifer E. Horner

My Commission Expires: August 30, 2005

*Charge of Discrimination of Dawn Souto-Coons*
*Initials* _____          *Page 3 of 3*

*Step 1  Issued  5/23/06*

*Reported*

Step 1 _____ __CLAIM FORM__ _____

Directions:    You must submit your claim in this format in order for it to be accepted.
Once completed (please print or type), return to Sterling Jewelers Inc. in the
enclosed envelope postmarked within one (1) year of the date of the alleged
unlawful activity/conduct. For assistance call 1-800-394-4205

| EMPLOYEE DATA | | |
|---|---|---|
| Marie Wolf _____ <br> Name | _____ <br> Employee Number | April 2002 _____ <br> Date of Hire |
| Sales Associate _____ <br> Position (last) | #444 _____ <br> Location Number | _____ <br> Last Date Worked <br> (If applicable) |

A.    **EXPLAIN CLAIM**

1.    Describe the unlawful activity/conduct that you allege you have been subjected
to:

I, and other female employees similarly-situated, have been discriminated against
because of our gender. I believe Sterling has a continuing policy or pattern and practice of
paying its female sales associates, including myself, less than their male comparators and has
denied female employees promotion opportunities in favor of less qualified male employees. To
the extent information is not provided for in this response, please see Exh. A, Marie Wolf Charge
of Discrimination.

2.    What laws were violated?

Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and the Florida
Civil Rights Act, Chp. 760, Florida Statutes.

3.    When did this begin? April 2002 _____        #444 _____
                                          Date          Time        Location

Page 1 of 5

4.    When did this end?    September 2005 _____    _____ #444 _____
                           Date              Time         Location

B.    **Identify witnesses and what they have personally observed or experienced:**

Name                    Address              Phone #

___Marty Perry_____

Observation/Experiences:    Believes there is no justifiable reason why female sales associates,

including Marie Wolf, Carol King, Carolyn Morse, and Jacqueline Boyle, were earning a lower

hourly wage than male comparators.

Name                    Address              Phone #

___Alan Mong_____

Observation/Experiences:    Believes there is no justifiable reason why female sales associates,

including Marie Wolf, Carol King, and Jacqueline Boyle, were earning a lower hourly wage than

male comparators.

Name                    Address              Phone #

___Carol King_____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

Name                    Address              Phone #

___Dawn Souto-Coons_____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

Page 2 of 5

Name                    Address              Phone #

Jacqueline Boyle

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender.

C.    **Did you report your claim to any member of Sterling Jewelers Inc. management?**
**(If yes, cite to whom, when, and where your reported the unlawful activity.)**

Name and Title               Date Reported              Where

Aaron Scott – District Manager          March 2005               Clearwater, FL

D.    **Provide names of employees (current or ex-employees) who have experienced**
**similar activity/conduct (if applicable).**

| Name and Title | What did they experience? |
| --- | --- |
| Carol King – sales assoc. | gender wage discrimination |
| Jacqueline Boyle – sales assoc. | gender wage discrimination |
| Carolyn Morse – sales assoc. | gender wage discrimination |
| Dawn Souto-Coons – asst. mgr. | denied promotion based on gender |
| Judy Reed – asst. mgr. | denied promotion based on gender |
| Laryssa Jock – sales assoc. | gender wage discrimination |

Page 3 of 5

Lisa Follett – sales assoc.                    gender wage discrimination/ denied promotion

Linda Rhodes – sales assoc.                   gender wage discrimination

E.    **Provide names of employees (current or ex-employees) who have been treated "differently" than you (if applicable).**

Name and Title                     Describe different treatment

Alan Mong                              pay rate

Grant Laing                             pay rate

Steve Harrington                       pay rate

F.    **List your current address and phone number:**

Address:                              Telephone Number:

Burr & Smith, LLP                    Phone: 813/253-2010

442 West Kennedy Blvd., Suite      Fax:    813/254-8391

Tampa, FL  33606

G.    **Describe the remedy that you are seeking:**

Seeking class certification regarding remedies provided by Title VII and the Equal Pay Act,

including, back pay, compensatory and punitive damages, injunctive relief, reasonable attorney

fees and costs, and pre-post judgment interest.

H.    **EVIDENCE**

Do you have any documents/recordings/photographs/statements or other evidence to

support your allegations? If so, please submit copies with this claim and list them below.

Please see Exhibit A, Marie Wolf Charge of Discrimination and Exhibit J, Declaration of Alan

Mong.

I.    **SIGN**

Under penalty of perjury, I do hereby attest that the information I have provided is true. I understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will occur and my cooperation is required. I may be asked to provide additional information. I will receive a written response within 30 day of Sterling Jewelers Inc.'s receipt of my claim.

_____        4-20-06
Claimant's Signature                    Date

REDACTED

## CHARGE OF DISCRIMINATION

| CHARGING PARTY INFORMATION | CHARGE NO. |
|---|---|

Florida Commission on Human Relations and EEOC
(State or Local Agency, if any)

| | |
|---|---|
| Name (Indicate Mr., Ms. or Mrs.)<br>Mrs. Marie Wolf | |
| Address<br>c/o Burr & Smith, LLP<br>442 W. Kennedy Blvd., Suite 300<br>Tampa, Florida 33606-1495 | Telephone Number<br>(813) 253-2010 |
| SSN | Date of Birth |
| Dates of Discrimination<br>Earliest    April 2002<br>Latest    Present | Supervisor (Name and Title)<br>Aaron Scott, Store Manager<br>Eric Wolff, Store Manager |

Discrimination Based On

☐ Race  ☐ Color  ☐ National Origin  ☒ Sex  ☐ Age  ☐ Religion  ☐ Retaliation  ☐ Disability

Other:

### RESPONDENT INFORMATION

| | |
|---|---|
| Company Name<br>Jared The Galleria Of Jewelry | |
| Company Address (where claimant worked)<br>Regency Square<br>2206 W. Brandon Blvd.<br>Brandon, FL 33511 | |
| Telephone Number<br>(813) 657-5913 | No. of Employees<br>15+ |
| Company Name<br>Sterling Jewelers, Inc. | |
| Company Address (where claimant worked)<br>375 Ghent Road<br>Akron, OH 44333 | |
| Telephone Number<br>( 800 ) 877-8812<br>(800) 877- 3616 | No. of Employees<br>15+ |
| Company Name<br>Signet Group, plc | |
| Company Address (where claimant worked)<br>Zenith House<br>The Hyde<br>London NW9 6EW<br>United Kingdom | |
| Telephone Number<br>+44 (0) 870 909-0301 | No. of Employees<br>15+ |

| |
|---|
| Address Where Charge to Be Served (if different than above)<br>Sterling Jewelers, Inc.<br>375 Ghent Road<br>Akron, OH 44333 |

## STATEMENT OF ...

*Charge of Discrimination of Marie Wolf*
*Initials* JMW

I.      Statement of Personal Harm

I began working for Jared The Galleria Of Jewelry a division of Sterling Jewelers, Inc. and a wholly-owned subsidiary of Signet Group, plc. (hereinafter, collectively, "Jared's") in April 2002, as a sales representative in Brandon, Florida.  My starting hourly rate was $12.00 an hour plus commission and bonuses.  I have extensive jewelry sales experience.  Prior to my employment with Jared's, I sold over a million dollars in jewelry for my former employer and I provided the same results for Jared's. In fiscal year 2004, I sold over a million dollars in jewelry for Jared's and was coined a "million dollar employee."  In August 2003, I received an hourly raise to $12.72.  Then in August 2004, I received an hourly raise to $13.47.  I am currently employed with Jared's at $13.47 per hour.

My current hourly rate of $13.47 per hour is less than similarly-situated male sales representatives, even though all sales representatives perform substantially equal work.  For instance, Grant "Billy" Laing, Steven Harrington, and Alan Mong are three male sales representatives who are paid a higher hourly rate than I am, even though I produce substantially greater sales for Jared's and have worked for Jared's longer than they have.

From at least August 2001 until as recently as May 2005, Jared's paid me and other female sales representatives a starting hourly rate that was less than similarly-situated male sales representatives for substantially equal work that required equal skill, effort, and responsibility under similar working conditions.  For example, such similarly-situated male sales representatives paid a higher starting hourly rate than female sales representatives include, but are not limited to, Avind Mohip, Jr. (paid $12.50 hourly, hired in August 2002); Grant "Billy" Laing (paid $14.50 hourly, hired in August 2004); Steven Harrington (paid $15.00 hourly, hired in March 2004); Alan Mong (paid $13.50 hourly, hired in July 2004); and Michael Duggan (paid $11.50 hourly, hired in May 2005).  The starting salaries of female sales representatives of which I am aware are as follows: Carol King (paid $12.00 hourly, hired in August 2001); Paula McClure (paid $9.50 hourly, hired in September 2001); Nicole Smalley (paid $10.00 hourly, hired in September 2001); Jennifer Hogue (paid $9.00 hourly, hired in April 2002); Jessica Megna (paid $10.00 hourly, hired in April 2003); Susan Crump (paid $12.00 hourly, hired in July 2003); Jacquelyn Boyle (paid $10.25 hourly, hired in February 2005); and Jennifer LNU (paid $11.00 hourly, hired in June 2005).  Furthermore, most male sales employees had little to no jewelry experience before their employment with Jared's, whereas many of the female employees had year(s) of experience selling fine jewelry prior to their employment with Jared's.

I became especially concerned with Jared's pay practices when my niece, Jacquelyn Boyle, who worked part-time for Jared's and has a college degree, was hired into a full-time position at a starting hourly rate of $10.25 in February 2005.  Michael Duggan, hired on May 15, 2005 with no prior jewelry experience, received a starting hourly rate of $11.50.

I make this charge for myself and on behalf of all similarly-situated female employees of Jared's.  Female employees employed with Jared's are and have been subject to a continuing policy or pattern and practice of gender wage discrimination.

II.     Respondent's Articulated Reason for Adverse Action

Respondent denies any adverse action.

*Charge of Discrimination of Marie Wolf*
*Initials* ⟨MW⟩                                                                                         *Page 2 of 3*

**III.    Statement of Discrimination**

I believe that I, and other female employees similarly-situated, have been discriminated against because of our sex in violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and the Florida Civil Rights Act, Chapter 760, Florida Statutes.

I declare under penalty of perjury that the foregoing is true and correct.

I also request that this charge be filed with the FCHR.

_Marie Wolf_
Marie Wolf

**Affidavit**

STATE OF FLORIDA          )
                          ) ss:
COUNTY OF HILLSBOROUGH    )

**BEFORE ME**, the undersigned authority, personally appeared Marie Wolf, who after first being duly sworn acknowledged that aforementioned answers are true and correct to the best of her knowledge and belief.

**WITNESS** my hand and official seal in the State and County last aforesaid this 13 day of Sept, 2005.

_Notary Public, State of Florida_
Notary Public, State of Florida
Print Name: Dianne Holmes

My Commission Expires:

Dianne M Holmes
My Commission DD133226
Expires July 11, 2006

*Charge of Discrimination of Marie Wolf*
*Initials _____*

*Page 3 of 3*

| Step 1 | | **CLAIM FORM** |
|---|---|---|

Directions:   You must submit your claim in this format in order for it to be accepted.
Once completed (please print or type), return to Sterling Jewelers Inc. in the
enclosed envelope postmarked within one (1) year of the date of the alleged
unlawful activity/conduct. For assistance call **1-800-394-4205**

---

EMPLOYEE DATA

| Lisa Follett | 163264 | November 2004 |
|---|---|---|
| Name | Employee Number | Date of Hire |
| | | |
| Sales Associate | #331 | May/June 2005 |
| Position (last) | Location Number | Last Date Worked (If applicable) |

---

**A.   EXPLAIN CLAIM**

1. Describe the unlawful activity/conduct that you allege you have been subjected to:

I, and other female employees similarly-situated, have been discriminated against because of our gender. I believe Sterling has a continuing policy or pattern and practice of paying its female sales associates, including myself, less than their male comparators and has denied female employees promotion opportunities, including myself, in favor of less qualified male employees. To the extent information is not provided for in this response, please see Exh. H, Lisa Follett, Charge of Discrimination.

2. What laws were violated?

Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, the New York Human Rights Law, Article 15, Section 296(1)(a).

3. When did this begin?  November 2004          #331
                                             Date       Time          Location

4.    When did this end?    May/June 2005 _____    #331 _____
                           Date              Time      Location

B,    **Identify witnesses and what they have personally observed or experienced:**

Name                    Address              Phone #

_____ Linda Rhodes _____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender. _____

_____ Laryssa Jock _____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender. _____

_____ Christy Davies _____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender. _____

_____ Denise Smith _____

Observation/Experiences:    Female sales associates were and continue to be paid a lower

hourly wage than male comparators and were and continue to be denied promotion opportunities

based on gender. _____

C.    Did you report your claim to any member of Sterling Jewelers Inc. management?
      (If yes, cite to whom, when, and where your reported the unlawful activity.)

| Name and Title | Date Reported | Where |
|---|---|---|
| No. | | |

D.    Provide names of employees (current or ex-employees) who have experienced
      similar activity/conduct (if applicable).

| Name and Title | What did they experience? |
|---|---|
| Marie Wolf – sales assoc. | gender wage discrimination |
| Jacqueline Boyle – sales assoc. | gender wage discrimination |
| Carol King – sales assoc. | gender wage discrimination |
| Dawn Souto-Coons – asst. mgr. | denied promotion based on gender |
| Judy Reed – asst. mgr. | denied promotion based on gender |
| Carolyn Morse – sales assoc. | gender wage discrimination |
| Laryssa Jock – sales assoc. | gender wage discrimination |
| Linda Rhodes – sales assoc. | gender wage discrimination |

E.    Provide names of employees (current or ex-employees) who have been treated
      "differently" than you (if applicable).

| Name and Title | Describe different treatment |
|---|---|
| Troy Lawler | pay rate/ promotion |

Page 3 of 4

F.    **List your current address and phone number:**

    Address:                  Telephone Number:

Burr & Smith, LLP_____    Phone: <u>813/253-2010</u>_____

442 West Kennedy Blvd., Suite____    Fax:   <u>813/254-8391</u>_____

Tampa, FL 33606_____

G.    **Describe the remedy that you are seeking:**

<u>Seeking class certification regarding remedies provided by Title VII and the Equal Pay Act,_____</u>

<u>including, back pay, compensatory and punitive damages, injunctive relief, reasonable attorney__</u>

<u>fees and costs, and pre-post judgment interest._____</u>

H.    **EVIDENCE**

    Do you have any documents/recordings/photographs/statements or other evidence to support your allegations? If so, please submit copies with this claim and list them below.

<u>Please see Exhibit H, Lisa Follett Charge of Discrimination._____</u>

_____

_____

_____

_____

I.    **SIGN**

    Under penalty of perjury, I do hereby attest that the information I have provided is true. I understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will occur and my cooperation is required. I may be asked to provide additional information. I will receive a written response within 30 day of Sterling Jewelers Inc.'s receipt of my claim.

*Lisa M. Follett*_____    *4/14/06*_____

Claimant's Signature                           Date

**REDACTED**

## CHARGE OF DISCRIMINATION

| ARGING PARTY INFORMATION | CHARGE NO. 525-2006-00197 |
|---|---|

New York State Division of Human Rights and EEOC
(State or Local Agency, if any)

| Name (Indicate Mr., Ms. or Mrs ) | |
|---|---|
| Ms. Lisa Follett | |
| **Address** | **Telephone Number** |
| c/o Burr & Smith, LLP | (813) 253-2010 |
| 442 W. Kennedy Blvd., Suite 300 | |
| Tampa, Florida 33606-1495 | |
| **SSN** | **Date of Birth** |
| | |

| Dates of Discrimination | Supervisor (Name and Title) |
|---|---|
| Earliest  November 2004 | Janice Bond, General Manager |
| Latest  May/June 2005 | |

**Discrimination Based On**
☐ Race   ☐ Color   ☐ National Origin  ☒ Sex   ☐ Age   ☐ Religion   ☐ Retaliation   ☐ Disability
Other:

### RESPONDENT INFORMATION

| Company Name | |
|---|---|
| Belden Jewelers | |

Company Address (where claimant worked)
St. Lawrence Centre
Rte. 37
P. O. Box 6010
Massena, N.Y. 13662

**RECEIVED**
**0 8 FEB 2006**
**E.E.O.C. BULO**

| Telephone Number | No. of Employees |
|---|---|
| (315) 769-0264 | 15+ |

| Company Name | |
|---|---|
| Sterling Jewelers, Inc. | |

Company Address (where claimant worked)
375 Ghent Road
Akron, OH 44333

| Telephone Number | No. of Employees |
|---|---|
| ( 800 ) 877-8812 | 15+ |
| (800) 877- 3616 | |

| Company Name | |
|---|---|
| Signet Group, plc | |

Company Address (where claimant worked)
Zenith House
The Hyde
London NW9 6EW
United Kingdom

| Telephone Number | No. of Employees |
|---|---|
| +44 (0) 870 909-0301 | 15+ |

Address Where Charge to Be Served (if different than above)
Sterling Jewelers, Inc.
375 Ghent Road
Akron, OH 44333

*Charge of Discrimination of Lisa Follett*
*Initials* LF          *Page 1 of 4*

## STATEMENT

### I.    Statement of Personal Harm

I began working for Belden Jewelers, a division of Sterling Jewelers, Inc. and a wholly-owned subsidiary of Signet Group (hereinafter, collectively, "Sterling") in or around November 2004 as a part-time sales representative in Massena, New York. Sterling operates at least eleven store brands including, but not limited to, Kay Jewelers, Jared the Galleria of Jewelry, Marks and Morgan Jewelers, J.B. Robinson Jewelers, LeRoy's Jewelers, Osterman Jewelers, Goodman Jewelers, Weisfield Jewelers, Shaws Jewelers, Friedlanders Jewelers, Rogers Jewelers, and Belden Jewelers ("Belden"). During my first month with Sterling, I attended a training meeting for Sterling managers and new employees in Ithaca, New York. In attendance at the meeting were Sterling employees from several of Sterling's brand stores, including Belden, Kay Jewelers, and J.B. Robinson Jewelers. My training materials, as well as my paychecks, feature the Sterling name and insignia. Throughout my employment with Sterling, I worked approximately thirty (30) to forty (40) hours per workweek as a part-time sales representative at an hourly rate of $7.50 per hour plus commission.

In approximately March 2005, Troy Lawler ("Lawler") was hired as a part-time sales employee in Sterling's Massena store. Only two sales representatives at this time were categorized as full-time employees; the remaining sales representatives were categorized as part-time or seasonal employees. The full-time position in Sterling's Massena store is a coveted position. Full-time employees are scheduled to work more hours and are given full employee benefits, whereas part-time and seasonal employees are not eligible for these benefits.

Around May 2005, after working for Sterling for about two months, Lawler was promoted to a full-time position in the Massena store. Lawler had no prior jewelry sales experience and had no record of past performance in which to support his promotion. Even though I had worked for Sterling for about seven months and produced substantial sales for the company, I was not given consideration for the full-time position. Sterling failed to post a notice showing the availability of a full-time position and did not conduct interviews. Lawler, the only male sales representative in Sterling's Massena store at this time, was simply awarded the position. Sterling does not post its promotional opportunities, but instead uses a "tap on the shoulder" system for promotion to full-time and management positions. No objective criteria is posted or used for making such selections. I believe Sterling failed to promote me and other qualified part-time female sales representatives when it promoted a less qualified part-time male sales representative to the full-time position.

As a part-time sales representative my hourly rate of pay was less than a similarly-situated part-time male sales representative even though we performed substantially equal work. Lawler was hired at an hourly rate of $8.75, whereas I was hired about five months prior at an hourly rate of $7.50.

I also have reason to believe that Lawler was paid an unequal rate of pay in comparison to female sales representatives in Sterling's Massena store who had extensive jewelry experience. For example, Laryssa Jock ("Jock"), a full-time employee with Sterling, had worked for Sterling for almost ten years at the time Lawler was hired. She was a tremendous asset to the company as a substantial producer in sales and was well respected by her customers and peers. Jock received positive semi-annual reviews during this ten year period and received a raise each year based on these reviews. When Lawler was hired at an hourly rate of $8.75 with no prior experience, Jock was only earning $.10 more at $8.85 per hour. Lawler and Jock are currently earning $8.75 and $8.85 per hour, respectively.

I am not aware of all the male sales representatives who were paid more than female sales representatives throughout my employment because Sterling prohibits its employees from discussing their pay rates; however, I have reason to believe that Sterling paid me and other female sales representatives at hourly rates that are less than similarly-situated male sales representatives for substantially equal work that required equal skill, effort, and responsibility under similar working conditions.

I believe Sterling has a continuing policy or pattern and practice of denying females promotions in favor of less qualified males including promotions to full-time positions and also believe Sterling pays female sales representatives less than their male comparators. I have reason to believe these practices are occurring company-wide.

I make this charge for myself and on behalf of all similarly-situated female employees of Sterling. Female employees employed with Sterling are and have been subject to a continuing policy or pattern and practice of gender wage discrimination.

II.    **Respondent's Articulated Reason for Adverse Action**

Respondent denies any adverse action.

III.    **Statement of Discrimination**

I believe that I, and other female employees similarly-situated, have been discriminated against because of our sex in violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and the New York Human Rights Law, Article 15, Section 296(1)(a).

I declare under penalty of perjury that the foregoing is true and correct.

I also request that this charge be filed with the New York State Division of Human Rights.

*Lisa M. Follett*
Lisa Follett

*Charge of Discrimination of Lisa Follett*
*Initials ʟF*                                                    *Page 3 of 4*

**Affidavit**

STATE OF NEW YORK              )
                               ) ss:
COUNTY OF ST. LAWRENCE         )

BEFORE ME, the undersigned authority, personally appeared Lisa Follett, who after first being duly sworn acknowledged that aforementioned answers are true and correct to the best of her knowledge and belief.

WITNESS my hand and official seal in the State and County last aforesaid this 30th day of January, 2006.

Notary Public, State of New York
Print Name: JOAN SILVER

My Commission Expires:

JOAN E. SILVER
4685008
Notary Public, State of New York
Qualified in St. Lawrence County
Commission Expires Sept. 30, 2006

*Charge of Discrimination of Lisa Follett*
*Initials* ___

**EXHIBIT V**

**Counterclaim Defendant House's RESOLVE claim, dated October 6, 2006**

<u>Step 1</u>                 **CLAIM FORM**

Directions:     You must submit your claim in this format in order for it to be accepted.
Once completed (please print or type), return to Sterling Jewelers Inc. in the
enclosed envelope postmarked within one (1) year of the date of the alleged
unlawful activity/conduct.  For assistance call **1-800-394-4205**

---

EMPLOYEE DATA

<u>Maria House</u>            <u>#236524</u>           <u>July 13, 2005</u>
Name                     Employee Number       Date of Hire

<u>Sales Associate</u>         <u>#2198</u>             <u>n/a</u>
Position (last)                 Location Number        Last Date Worked
                                                         (If applicable)

**A.**     **EXPLAIN CLAIM**

     1.      Describe the unlawful activity/conduct that you allege you have been subjected
to:

     I, and other female employees similarly-situated, have been discriminated against
because of our gender.  I believe Sterling has a continuing policy or pattern and practice of
paying its female sales associates, including myself, less than their male comparators and has
denied female employees promotion opportunities in favor of less qualified male employees.  I
have also been subjected to sexual harassment.  To the extent information is not provided for in
this response, please see my enclosed Charge of Discrimination.

     2.      What laws were violated?

     Title VII of the Civil Rights Act of 1964, as amended, and the California Department of
Fair Employment and Housing.

---

     3.      When did this begin? <u>July 13, 2005</u>            <u>#2198</u>
                                 Date                 Time              Location

4.    When did this end?    n/a _____    #2198 _____
                            Date            Time         Location

**B.    Identify witnesses and what they have personally observed or experienced:**

   <u>Name</u>                    <u>Address</u>            <u>Phone #</u>

Carmen Shifler _____

Observation/Experiences:    <u>Female sales associates were and continue to be denied promotion</u>

<u>opportunities based on gender.</u> _____

_____

   <u>Name</u>                    <u>Address</u>            <u>Phone #</u>

Elizabeth Hubbel _____

Observation/Experiences:    <u>Female sales associates were and continue to be denied promotion</u>

<u>opportunities based on gender.</u> _____

_____

**C.    Did you report your claim to any member of Sterling Jewelers Inc. management?
        (If yes, cite to whom, when, and where your reported the unlawful activity.)**

   <u>Name and Title</u>              <u>Date Reported</u>        <u>Where</u>

Lupe Martinez, Store Manager _____    November 2005 ____    #2198 _____

Steve Cardamenis, District Manager __    January 2006 _____    #2198 _____

**D.    Provide names of employees (current or ex-employees) who have experienced
        similar activity/conduct (if applicable).**

   <u>Name and Title</u>                  <u>What did they experience?</u>

Marie Wolf – sales assoc. _____    <u>gender wage discrimination</u> _____

Jacqueline Boyle – sales assoc. ____    <u>gender wage discrimination</u> _____

Carol King – sales assoc. _____    <u>gender wage discrimination</u> _____

| | |
|---|---|
| Dawn Souto-Coons – asst. mgr. | denied promotion based on gender |
| Judy Reed – asst. mgr. | denied promotion based on gender |
| Laryssa Jock – sales assoc. | gender wage discrimination |
| Lisa Follett – sales assoc. | gender wage discrimination/ denied promotion |
| Linda Rhodes – sales assoc. | gender wage discrimination |
| Carolyn Morse – sales assoc. | gender wage discrimination |
| Christy Davies – sales assoc. | gender wage discrimination |
| Tana Shiver – sales assoc. | gender wage discrimination |
| Leighla Smith – sales assoc. | gender wage discrimination |
| Khristina Rodrigues – sales assoc. | gender wage discrimination |
| Gloria Pagan – sales assoc. | gender wage discrimination/ denied promotion |

E.    **Provide names of employees (current or ex-employees) who have been treated "differently" than you (if applicable).**

| Name and Title | Describe different treatment |
|---|---|
| Shawn McCalow, assistant manager | promotion |

F.    **List your current address and phone number:**

Address:                              Telephone Number:

Burr & Smith, LLP                 Phone: 813/253-2010

442 West Kennedy Blvd., Suite     Fax:    813/254-8391

Tampa, FL  33606

**G.    Describe the remedy that you are seeking:**

Seeking class certification regarding remedies provided by Title VII, including, back pay,

compensatory and punitive damages, injunctive relief, reasonable attorney fees and costs, and

pre-post judgment interest.

**H.    EVIDENCE**

Do you have any documents/recordings/photographs/statements or other evidence to support your allegations?  If so, please submit copies with this claim and list them below.

Please see my Charge of Discrimination.

_____

**I.    SIGN**

Under penalty of perjury, I do hereby attest that the information I have provided is true.  I understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will occur and my cooperation is required.  I may be asked to provide additional information. I will receive a written response within 30 day of Sterling Jewelers Inc.'s receipt of my claim.

_Maur Sacup_                                     9-26-06
Claimant's Signature                             Date

**REDACTED**

<table>
<tr><td colspan="2" align="center"><b>CHARGE OF DISCRIMINATION</b></td></tr>
</table>

| CHARGING PARTY INFORMATION | CHARGE NO. |
|---|---|

<div align="center">California Department of Fair Employment and Housing and EEOC (State or Local Agency, if any)</div>

Name (Indicate Mr., Ms. or Mrs.)
Ms. Maria House

| Address<br>c/o Burr & Smith, LLP<br>442 W. Kennedy Blvd., Suite 300<br>Tampa, Florida  33606-1495 | Telephone Number<br>(813) 253-2010 |
|---|---|

| SSN | Date of Birth |
|---|---|

| Dates of Discrimination<br>Earliest    June 13, 2005<br>Latest      Present | Supervisor (Name and Title)<br>Lupe Martinez, Former Store Manager<br>Ben Fox, Store Manager<br>Steve Cardamenis, Former District Manager<br>David Johnston, District Manager |
|---|---|

Discrimination Based On

☐ Race   ☐ Color   ☐ National Origin   ☒ Sex   ☐ Age   ☐ Religion   ☐ Retaliation   ☐ Disability

Other:

**RESPONDENT INFORMATION**

Company Name
K    Jewelers

Company Address (where claimant worked)
Valley Plaza Center
2701 Ming Avenue
Bakersfield, CA 93304

| Telephone Number<br>(661) 834-7692 | No. of Employees<br>15+ |
|---|---|

Company Name
Sterling Jewelers, Inc.

Company Address (where claimant worked)
375 Ghent Road
Akron, OH 44333

| Telephone Number<br>(800) 877-8812<br>(800) 877- 3616 | No. of Employees<br>15+ |
|---|---|

Address Where Charge to Be Served (if different than above)
Sterling Jewelers, Inc.
375 Ghent Road
Akron, OH 44333

<table>
<tr><td align="center"><b>STATEMENT</b></td></tr>
</table>

### I.    Statement of Personal Harm

I began working for Kay Jewelers, a division of Sterling Jewelers, Inc. and a wholly-owned subsidiary of Signet Group (hereinafter, collectively, "Sterling") in or around June 13, 2005 as a full-time sales associate in Bakersfield, California at an hourly wage of $12.50 plus commissions. Sterling operates at least eleven store brands including, but not limited to, Kay Jewelers ("Kay"), Jared the

Galleria of Jewelry, Marks and Morgan Jewelers, J.B. Robinson Jewelers, LeRoy's Jewelers, Osterman Jewelers, Goodman Jewelers, Weisfield Jewelers, Shaws Jewelers, Friedlanders Jewelers, Rogers Jewelers, and Belden Jewelers. My training materials, as well as my paychecks, feature the Sterling name and insignia.

Shortly after starting with the Company, I was promoted to the third-key position. A "third-key" is responsible for assisting management employees in the opening and closing of the store, and is placed in charge of the store when the assistant manager and store manager are absent. This position is typically a gateway position to management employment. In approximately November 2005, my District Manager Steve Cardamenis and the Store Manager Lupe Martinez approached me to discuss a promotion to assistant manager. As Sterling was aware, I was more than qualified for this position. I had twenty years of management and jewelry sales experience working for Macy's, Zales, and Michaels Jewelers. However, despite this experience, I was ultimately passed over for this promotion in favor of a less qualified male employee.

Sterling promoted Shawn McCalow, a male sales associate with no prior management experience and limited jewelry experience, to the assistant manager position. When I inquired as to why Mr. McCalow received the promotion over me, the Store Manager incorrectly stated that Mr. McCalow had more experience than I did. He also said that to qualify for the promotion I needed to work for Sterling for at least one year. Sterling managers did not mention this requirement to me when we first spoke about the promotion. Furthermore, I know of other employees promoted to the assistant manager position who had been employed by Sterling for less than a year.

Mr. McCalow was terminated around February or March 2006, when a customer called to complain that he was intoxicated on the job. I, in turn, went on to become the highest producer of sales in my district and a member of Sterling's President Club. The President Club is an organization Sterling created to recognize and reward the outstanding performance of its top sales associates throughout the country. There is no non-discriminatory reason to justify Sterling's decision to place Mr. McCalow, a less qualified male employee with poor judgment, in the position of assistant manager rather than me.

Moreover, on approximately May 11, 2006, our store manager Mr. Martinez was also terminated. Because Sterling had not yet replaced Mr. McCalow, I was thrust into the position of sole acting manager. I performed all management duties, including, but not limited to, training, scheduling, and payroll until approximately June 2006. In June 2006, Sterling hired Ben Fox to replace Mr. Martinez as store manager. Mr. Fox was a sales associate with only two years of experience in jewelry sales and no jewelry-related management experience. Even though I was performing store manager duties, I do not believe I was given equal consideration for the promotion to store manager. Nor do I believe that Mr. Fox was more qualified for the store manager position than me.

Many female employees are denied the mere opportunity to seek promotions because Sterling chooses to not post available positions. Therefore, I make this charge for myself and on behalf of all similarly-situated female employees of Sterling. Female employees employed with Sterling are and have been subject to a continuing policy or pattern and practice of gender discrimination.

I was also sexually harassed by Mr. McCalow while he was employed by Sterling as an assistant manager. Mr. McCalow made inappropriate comments about my chest on several occasions.

In approximately February 2006, he had the impropriety to say, "I would like to suck on your boobs." I immediately contacted the District Manager on a store telephone and relayed this statement. The District Manager told me to stop over reacting and to get back to work. When no action was taken by the District Manager, that same month, I made a formal complaint through Sterling's TIPS Hotline to report the harassment. Yet still nothing was done. In February 2006, I called Sterling's Employee Relations Department and again informed Sterling about the discrimination I was experiencing. To my knowledge, Sterling never investigated my claims. Overall, the Sterling environment is hostile toward women. Moreover, Sterling fails to take any action when they are told of discriminatory behavior and/or treatment of women.

I make this charge of sexual harassment on an individual basis.

## II.    Respondent's Articulated Reason for Adverse Action

Respondent denies any adverse action.

## III.    Statement of Discrimination

I believe that I, and other female employees similarly-situated, have been discriminated against because of our sex in violation of Title VII of the Civil Rights Act of 1964, as amended, and the California Department of Fair Employment and Housing, Title 3, Section 12921.

I also request that this charge be filed with the California Department of Fair Employment and Housing.

On this _26_ day of September, 2006, I declare under penalty of perjury that the foregoing is true and correct.

_Maria House_ (signature)

Maria House

**EXHIBIT W**

**Determination from RESOLVE on House's first step in RESOLVE program**

# The Resolve Program
## Alternative Dispute Resolution (ADR)

**[SENT VIA DHL OVERNIGHT DELIVERY]**

November 6, 2006

Ms. Maria House
C/O Sam J. Smith, Esq.
Law Offices
Burr & Smith
442 W. Kennedy Blvd., Suite 300
Tampa, Florida 33606

**Re:  *Resolve Program Step 1 Claim***
      ***Claim No. 062198SD56***

Dear Ms. House:

The following is in response to your Resolve Program Claim Form, which was received on October 6, 2006 ("Claim"). An investigation was conducted including, but not necessarily limited to, a review of your Claim, your personnel file, written statements including those submitted by you, and your TIPS complaint.  With respect to your Resolve Step 1 Claim, please note the following findings.

***Findings:***

The Resolve Program Step 1 investigation has been unable to confirm many of your allegations.  Similarly, the positions taken by Sterling Jewelers Inc. ("Sterling") may not represent each and every legal position Sterling may have in response to your Claim.

Sterling maintains strict policies regarding standards of conduct and business ethics. These standards are enunciated through a variety of sources, including:

- Posters
- Employment Application
- Equal Employment Opportunity Policy
- Sexual Harassment Policy
- Diversity Policy
- Employee Handbook
- Statements of Conduct and Business Ethics Policy.

Additionally, Sterling has an anonymous, toll-free line through which employees can report impermissible conduct, and an Open Door Communication Policy with the HR Department.

Sterling Jewelers Inc.
375 GHENT ROAD • AKRON, OH  44333-4600

Ms. Maria House
C/O Sam J. Smith, Esq.
RESOLVE Program Step 1 Claim
**Claim No. 062198SD56**
Page 2 of 4

Sterling's policy and practice is to base all employment decisions including compensation and promotions solely upon an individual's qualifications, performance history, and merit.

You were hired as a sales associate at Store 2198, a Kay Jewelers, located in Bakersfield, California. You began your employment on June 13, 2005.

In your Claim, you allege that you have been discriminated against because of your gender, female. You indicate you were hired as a sales associate in 2005 at an hourly wage of $12.50 plus commissions.[1] You indicate you were promoted to the position of 3rd Keyholder[2] and, in November 2005, your District Manager and Store Manager approached you to discuss promotion to the position of assistant manager. You indicate you were passed over for promotion in favor of Shawn McCalow,[3] whom you identify as a less qualified male.

You indicate that on or after May 11, 2006 until June 2006 you performed the duties of manager in your store. You indicate that in June 2006 Sterling filled the store manager position with Ben Fox, whom you identify as a less qualified male. You indicate you do not believe you were given equal consideration for promotion to store manager. You identify McCullough and Fox as your comparators.

You do not identify any male comparators you believe you were paid more favorably than you.

You also identified Jacqueline Boyle, Carol King, Carolyn Morse, Laryssa Jock, Christy Davies, Marie Wolf, Linda Rhodes, Tana Shiver, Leighla Smith, and Khristina Rodrigues as sales associates who experienced gender wage discrimination; Lisa Follett and Gloria Pagan as sales associates who experienced gender wage discrimination or were denied promotion based on gender, and Dawn Souto-Coons and Judy Reed as assistant managers denied promotion based on gender. Because these individuals have the opportunity to submit their own individual RESOLVE claims and for privacy reasons, those issues are not addressed in this response.

---

[1] Your claim does not allege gender discrimination against you in commissions or bonuses. Presumably this is because the commission structure is the same for all Sterling employees.

[2] Kay stores commonly assign keyholder duties to sales associates. However, there is no distinct position or job description for a sales associate assigned keyholder duties.

[3] Sterling has no record of an employee named "Shawn McCalow." Sterling has record of a Shaun McCullough ("McCullough"). McCullough was hired to store #533 on March 22, 2004 at an hourly rate of $9.00.

Ms. Maria House
C/O Sam J. Smith, Esq.
RESOLVE Program Step 1 Claim
Claim No. 062198SD56
Page 3 of 4

You also allege that you were sexually harassed by assistant manager Shaun McCullough. You indicate you reported McCullough's comment to your District Manager, who told you to stop overreacting and get back to work. You indicate your District Manager took no action and you then made a complaint through the TIPS line. You indicate nothing was done in response to your TIPS complaint. You also indicate that in February 2006 you called Sterling's Employee Relations Department to complain about discrimination. You claim Sterling never investigated your complaint.

*Analysis of your Step 1 Claim:*

**Pay Discrimination.**

The RESOLVE Program investigation has been unable to substantiate your Claim for gender discrimination with regard to your pay under Title VII, the Equal Pay Act ("EPA") and applicable state law. You do not identify any male comparators you believe were paid more favorably than you.

**Discrimination in Promotions.**

The RESOLVE Program investigation also has been unable to substantiate your Claim for gender discrimination with regard to promotions under Title VII and applicable state law. Your Claim indicates McCullough and Fox were treated more favorably than you because each was promoted to a management position in your store despite your possessing greater experience. Our investigation, however, indicated you were not promoted for, among other things, demonstrated inability to get along with and lead others.

Kay exercised reasonable business judgment in its promotions based on legitimate, non-discriminatory factors. Management was not influenced by, and did not consider, gender in making these decisions. Your Claim does not establish a violation of Title VII or applicable state law.

**Sexual Harassment.**

Your Claim indicates that you were sexually harassed by McCullough. You indicate McCullough made inappropriate comments about your chest on several occasions and, in February 2006, stated "I would like to suck on your boobs." You indicate you reported this comment to your District Manager, Steve Cardamenis, who told you to stop over-reacting and get back to work. You indicate that nothing was done about your complaint and in February 2006 you made a TIPS line complaint about this conduct. You indicate

Ms. Maria House
C/O Sam J. Smith, Esq.
RESOLVE Program Step 1 Claim
**Claim No. 062198SD56**
Page 4 of 4

nothing was done in response to your TIPS line complaint and you then called Sterling's Employee Relations Department to complain about McCullough's comment.

Our investigation indicates that you complained about a variety of matters during your employment. You had access to many avenues to raise any concerns you had regarding your employment. You provided inconsistent statements to your District Manager and Store Manager regarding your Assistant Manager's conduct. Sterling was unable to substantiate the conduct you allege in your Claim. We are unable to substantiate your Claim for sexual harassment and find no unlawful conduct in the handling of your complaints.

*Decision/Recommendation(s)*

We do not believe that any unlawful discrimination has occurred. We are unable to substantiate any incident of sexual harassment or unlawful conduct in the investigation of your complaint. Accordingly, there is no basis to award or even consider any relief under your Claim. Your requested remedy is hereby denied.

**According to the RESOLVE Program Rules, if you are not satisfied with the outcome of Step 1, you may proceed to Step 2. You must request, fully complete and return a Step 2 appeal form which must be postmarked within 30 days of the Step 1 determination.**

**If you have any questions about the RESOLVE process, please contact the Program Administrator at 1-800-394-4205.**

Thank you.

Sincerely,

Joseph L. Spagnola
RESOLVE Program Administrator

JLS/cj

# EXHIBIT X

## Counterclaim Defendant Maddox's RESOLVE claim, dated March 19, 2008

813 253 0695;    Mar-19-08  3:00PM;    Page 2

Sent by: Burr & Smith;

LAW OFFICES

# BURR & SMITH

LIMITED LIABILITY PARTNERSHIP

4442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

March 19, 2008

RESOLVE Program
Sterling Jewelers, Inc.
375 Ghent Rd
Akron, OH 44333

**VIA FACSIMILE/FEDERAL EXPRESS**

Re:    RESOLVE Program Step 1

Dear RESOLVE Program Administrator:

We represent Denise Maddox regarding claims of sex discrimination they have made on behalf of herself and others similarly situated against Sterling Jewelers, Inc. and/or any of the companies that are owned or controlled in whole or in part by Sterling Jewelers, Inc. We enclose a copy of the charge that each has timely filed with the EEOC.

We understand that, as of 1998, Sterling Jewelers implemented an alternative dispute resolution program, known as RESOLVE. We do not believe that the terms of the RESOLVE Program supersede or limit the rights that Title VII of the Civil Rights Act of 1964, as amended, conferred on our clients. To the extent our clients may also have to exhaust the procedures prescribed by the RESOLVE Program, however, we hereby submit these charges in satisfaction of Step 1 of the RESOLVE Program.

Feel free to contact me should you have any questions about the claims that our clients have initiated.

Very truly yours,

Sam Smith / cp

Sam J. Smith

Enclosures

Sent by: Dunn & Smith;                    813 253 0695;         Mar-19-08  3:01PM;        Page 3

Step 1                          **CLAIM FORM**

Directions:    You must submit your claim in this format in order for it to be accepted.
Once completed (please print or type), return to Sterling Jewelers Inc. in the
enclosed envelope postmarked within one (1) year of the date of the alleged
unlawful activity/conduct. For assistance call **1-800-394-4205**

EMPLOYEE DATA

Denise Maddox                   858862                1997
Name                            Employee Number       Date of Hire

Store Manager                   #444                  January 2007
Position (last)                 Location Number       Last Date Worked
                                                      (If applicable)

### A.    EXPLAIN CLAIM

1.    Describe the unlawful activity/conduct that you allege you have been subjected
to:

    I, and other female employees similarly-situated, have been discriminated against
because of our gender. I believe Sterling has a continuing policy or pattern and practice of
paying its female sales associates, including myself, less than their male comparators and has
denied female employees promotion opportunities in favor of less qualified male employees. In
addition to the company-wide pattern and practice of gender discrimination I experienced at
Sterling, I believe that I individually was subjected to discrimination based on my age, 51, when
I was demoted in October of 2006. To the extent information is not provided for in this
response, please see Exh. A, Denise Maddox Charge of Discrimination.

2.    What laws were violated?

    Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and applicable
state laws.

3.    When did this begin? 1999                              #483

Page 1 of 5

03/20/2008 14:44 FAX 3306665184         HUMAN RESOURCES                    ☒ 003

Sent by: DUNN & SMITH;                    813 253 0695;        Mar-19-08  3:01PM;           Page 4/10

4.    When did this end?    Date                Time          Location
                           October 31, 2006                  Jared—Dallas, TX
                           Date                Time          Location

**B.    Identify witnesses and what they have personally observed or experienced:**

Name                        Address                Phone #

_____

Observation/Experiences:    _____

Name                        Address                Phone #

_____

Observation/Experiences:    _____

Name                        Address                Phone #

_____

Observation/Experiences:    _____

Name                        Address                Phone #

_____

Observation/Experiences:    _____

Name                        Address                Phone #

_____

Observation/Experiences:    _____

**C.    Did you report your claim to any member of Sterling Jewelers Inc. management?
(If yes, cite to whom, when, and where your reported the unlawful activity.)**

Name and Title              Date Reported          Where

_____

_____

_____

Page 2 of 5

Sent By: Dunn & Smith;            813 253 0695;        Mar-19-08  3:02PM;        Page 5/10

**D.** Provide names of employees (current or ex-employees) who have experienced similar activity/conduct (if applicable).

| Name and Title | What did they experience? |
|---|---|
| Carol King – sales assoc. | gender wage discrimination |
| Jacqueline Boyle – sales assoc. | gender wage discrimination |
| Carolyn Morse – sales assoc. | gender wage discrimination |
| Dawn Souto-Coons – asst. mgr. | denied promotion based on gender |
| Judy Reed – asst. mgr. | denied promotion based on gender |
| Laryssa Jock – sales assoc. | gender wage discrimination |
| Lisa Follett – sales assoc. | gender wage discrimination/ denied promotion |
| Linda Rhodes – sales assoc. | gender wage discrimination |
| Christy Chadwick—sales assoc. | gender wage discriminatin |
| Maria House—sales assoc. | gender-based promotion denial |
| Lisa McConnell—store manager | gender wage discrimination |
| Gloria Pagan—sales associate | gender wage discrimination/denied promotion |
| Khristina Rodrigues—sales associate | gender wage discrimination |

The list of female employees known to me who experienced similar activity/conduct is not limited to those listed above. Additionally, I believe there are other females who I am unaware of that experienced similar activity/conduct.

**E.** Provide names of employees (current or ex-employees) who have been treated "differently" than you (if applicable).

      Name and Title             Describe different treatment

Page 3 of 5

| John Costello | promotion |
| John Kluber | promotion |
| Harvey Williams | promotion |

**F.**    **List your current address and phone number:**

Address:    Telephone Number:

c/o The Law Offices of Thomas Warren    Phone: (850)385-1551

2032-D Thomasville Rd.    Fax:    (850)385-6008

Tallahassee, FL  32308

**G.**    **Describe the remedy that you are seeking:**

Seeking class certification regarding remedies provided by Title VII and the Equal Pay Act,

including, back pay, compensatory and punitive damages, injunctive relief, reasonable attorney

fees and costs, and pre/post judgment interest.

**H.**    **EVIDENCE**

Do you have any documents/recordings/photographs/statements or other evidence to support your allegations? If so, please submit copies with this claim and list them below.

Please see Exhibit A, Denise Maddox Charge of Discrimination

**I.**    **SIGN**

Under penalty of perjury, I do hereby attest that the information I have provided is true. I understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will occur and my cooperation is required. I may be asked to provide additional information.

Page 4 of 5

Sent By: Bonn & Smith;                813 253 0695;         Mar-19-08  3:03PM;        Page 7/10

I will receive a written response within 30 day of Sterling Jewelers Inc.'s receipt of my claim.

Claimant's Signature

03-18-08
Date

03/20/2008 14:46 FAX 3306685184        HUMAN RESOURCES                ☒007

REDACTED

# CHARGE OF DISCRIMINATION

CHARGING PARTY INFORMATION

CHARGE NO.

Texas Commission on Human Rights and EEOC
(State or Local Agency, if any)

Name (Indicate Mr., Ms. or Mrs.)
Ms. Denise Maddox

Address
c/o The Law Office of Thomas A. Warren
2032-D Thomasville Rd.
Tallahassee, FL 32308

Telephone Number
(850) 385-1551

SSN

Date of Birth

Dates of Discrimination
Earliest 1997
Latest Present

Supervisor (Name and Title)
Kathy Honz, District Manager

Discrimination Based On
☐ Race ☐ Color ☐ National Origin ☒ Sex ☒ Age ☐ Religion ☐ Retaliation ☐ Disability
Other:

RESPONDENT INFORMATION

Company Name
Jared The Galleria Of Jewelry

Company Address (where claimant worked)
13149 Preston Rd.
Dallas, TX 75240

Telephone Number
(972) 960-9440

No. of Employees
15+

Company Name
Sterling Jewelers, Inc.

Company Address (home office)
375 Ghent Road
Akron, OH 44333

Telephone Number
(800) 877-8812
(800) 877-3616

No. of Employees
15+

Company Name
Signet Group, plc

Company Address (home office)
Zenith House
The Hyde
London NW9 6EW
United Kingdom

Telephone Number
+44 (0) 870 909-0301

No. of Employees
15+

Address Where Charge to Be Served (if different than above)
Sterling Jewelers, Inc.
375 Ghent Road
Akron, OH 44333

*Charge of Discrimination of Denise Maddox*
*Initials* DM

EXHIBIT A

---

## STATEMENT

### I.  Statement of Personal Harm

I began working for Sterling Jewelers, Inc. ("Sterling"), a wholly owned subsidiary of Signet Group, in 1997. I was hired as a Sales Associate at Store No. 483 in Westminster, Colorado. While there, I was the number one salesperson, yet I only made approximately $8.00 an hour. Male employees were being hired at hourly rates several dollars higher than what I was making. In approximately 1999, I asked my then-Store Manager, Mel Small, if I could have a raise that would put my pay comparable to these males, since I was the top performer. She agreed that I should have a raise, and asked the then-District Manager, Rick Schmidt if I could have one. The highest raise he would let her give me was an additional $1 per hour, so I quit. I returned to Sterling approximately three months later, and I was eventually promoted to Diamond Department Manager for the store. I was demoted back to a Sales position shortly thereafter because Schmidt wanted a new male whom he said had the "Jared Look" to have the position. Schmidt was fired for sexual harassment, and I moved back to the position of Diamond Department Manager. Around 2000, I was transferred to Store No. 482 in Englewood, Colorado as Diamond Department Manager.

Around 2001 or 2002, my then-District Manager, Kent Neider, wanted me to transfer to a Sterling store in Roseville, California, where they were in desperate need of an Assistant Manager. I agreed to do so, but I thought the Store Manager in Roseville was unethical, so I asked to move back to Colorado and I stepped down to a Sales position. Not too long after, in 2002, I was promoted to Assistant Manager at Store No. 422 in Lakewood, Colorado. I didn't think they were paying me enough money in light of the fact that the Christmas season was coming soon, but I took the job anyway and did well at it. In approximately 2003, the Store Manager at the Lakewood store left, and I wanted the position, and let my superiors know I was interested in it. Instead, Sterling gave it to a male in the Manager in Waiting program, who had no prior experience with the company.

I realized there were not going to be any promotional opportunities for me in the Denver area, so I asked to be transferred to Dallas. In August of 2005 I was promoted to Store Manager for a Jared store in Dallas, Texas. In approximately June or July of 2006, a higher-volume store became open in my area. I was interested in receiving a promotion to this store, but it was instead given to a male, John Costello, who had no Sterling experience.

On October 31 of 2006, I was demoted from my position as Store Manager, and my store was given to a male Sterling District Manager, John Kluber, who wanted to step down and move to Texas for family reasons. I was told I was demoted because I was not recruiting enough salespeople, however, I believe I was demoted simply because Kluber wanted my store. District Managers have the ability to hire salespeople, and mine had not helped me out by hiring any. Also, there were several other stores in the area doing worse on their sales figures for the year than my store was. Also, instead of being demoted to an Assistant Manager position, I was told I would have to take a position as Diamond Department Manager, because there were no other openings for me.

As a Store Manager, I observed male employees in my store being paid more than their female counterparts by the District Manager and Vice President who set their pay rates. Based on this, I believe that male management employees are also paid more than their similarly situated female counterparts. On information and belief, I allege that I am paid less than similarly situated male

*Charge of Discrimination of Denise Maddox*
*Initials*

*Page 2 of 3*

employees at Sterling. I also believe Sterling has a continuing policy or pattern and practice of promoting male employees over qualified female employees. Sterling does not post vacancies, and promotions are given via a "tap-on-the-shoulder" system, where management can pick and choose who they want to offer promotions to.

I make this charge for myself and on behalf of all similarly situated female employees of Sterling. Female employees at Sterling are and have been subject to a continuing policy or pattern and practice of discrimination against females in both pay and promotions.

In addition to the company-wide pattern and practice of gender discrimination that I experienced at Sterling, I feel that I individually was subjected to discrimination based on my age, 51, when I was demoted from Store Manager to Diamond Department Manager. There were several younger Store Managers in my area who were doing worse in sales than I was, and yet I was the one demoted.

**II.**    **Respondent's Articulated Reason for Adverse Action**

Respondent denies any adverse action.

**III.**    **Statement of Discrimination**

I believe that I, and other female employees similarly-situated, have been discriminated against because of our sex in violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, and applicable state laws. I also believe that I, individually, have been discriminated against based on my age, 51, in violation of the Age Discrimination in Employment Act and applicable state laws.

I also request that this charge be filed with the TCHR.

I declare on this 3 day of November, under penalty of perjury, that the foregoing is true and correct.

DENISE MADDOX

*Charge of Discrimination of Denise Maddox*
*Initials*

*Page 3 of 3*