**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                :
**LARYSSA JOCK, et al.,**                                       :
                                                                :
        Plaintiffs, on behalf of                      :
        themselves and others                         :
        similarly situated                            :
                         :    Index No.  1:08-cv-02875 (JSR)
     -against-                                :
                                                                :
**STERLING JEWELERS INC.,**                                    :
                                                                :
        Defendant.                                    :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR BIFURCATED SCHEDULING, CONSIDERATION, AND DISPOSITION OF LEGAL ISSUES RELATIVE TO THE WORKPLACE DISPUTE RESOLUTION AGREEMENT BETWEEN EACH PLAINTIFF AND DEFENDANT (DKT NO. 21)**</u>

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bressette v. International Talc Co.*,
    527 F.2d 211 (2d Cir. 1975)..................................................................................6

*Conticommodity Services, Inc. v. Philipp & Lion*,
    613 F.2d 1222 (2d Cir.1980).........................................................................6, 7, 8

*Dantz v. Apple Ohio LLC*,
    277 F. Supp. 2d 794 (N.D. Ohio 2003)..................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985).............................................................................................5

*Farsi v. Sterling Jewelers Inc.*,
    Case No. CV 07-131-PK (D. Or. 2007)..................................................................4

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444, 457 (2003)......................................................................................6

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001)..................................................................................6

*Howsam v. Dean Witter Reynolds Inc.*,
    537 U.S. 79 (2002).........................................................................................8, 10

*John Wiley & Sons, Inc., v. Livingston*,
    376 U.S. 543 (1964)..........................................................................6, 10, 11, 12

*Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*,
    88 F.3d 129 (2d Cir. 1996)....................................................................................6

*Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace &*
    *Agric. Implement Workers*,
    29 F.3d 83 (2d Cir. 1994) .................................................................................6, 7

STATUTES

Title VII of the Civil Rights Act of 1964.......................................................................2

## INTRODUCTION

As both parties now agree there is a valid agreement to arbitrate, this case should be immediately referred to arbitration.  Prevailing law mandates that the arbitrator adjudicate all procedural issues in the first instance once the court determines that the arbitration agreement entered into by the parties is enforceable.  Sterling's motion for bifurcated scheduling and disposition of legal issues relies entirely on language found in only one version of its Arbitration Agreement, which states that a court "may" decide procedural questions arising out of the dispute.  However, this language does not appear in the Arbitration Agreements to which at least nine of the Named Plaintiffs are bound, and even as to those Named Plaintiffs where such language appears in their Arbitration Agreements, this language is permissive, rather than mandatory.  Nor does such language provide a basis for this Court to disregard the strong federal policy in favor of arbitration and the well established case law dictating that the arbitrator should decide the procedural issues related to that arbitration.  Plaintiffs, therefore, oppose Defendant Sterling Jeweler's and Counterclaim Plaintiff's ("Sterling or Defendant") Motion for Bifurcated Scheduling, Consideration and Disposition of Legal Issues Relative to the Workplace Dispute Resolution Agreement and Memorandum in Support.  *See* Dkt. Nos. 21, 23 (hereinafter referred to as Def's Mem.).

Because an arbitrator has the authority to determine procedural issues with respect to all of the Named Plaintiffs, the Court should defer to an arbitrator so that a consistent, complete and expeditious resolution of these procedural issues may be achieved. Contrary to Sterling's representation, the procedural issues presented are not of such "complexity" as to necessitate the "special procedures" Sterling requests in its bifurcated

scheduling proposal.  *See* Def's Mem. at 4.  The American Arbitration Association

("AAA") has well established procedures that equip an arbitrator to resolve these issues

expeditiously.  Indeed, it is standard AAA procedure for the arbitrator to first determine

whether the claims may proceed as a class, along with other preliminary procedural

issues, before proceeding to the class certification or merits phase.  *See* AAA

Supplementary Rules for Class Arbitration, attached hereto as Ex. A. Sterling should thus

not be permitted to evade the procedures of the very organization it selected to administer

its mandatory arbitration program.

Plaintiffs respectfully request that this Court refer this case to arbitration for

adjudication of the procedural disputes presented by Sterling in accordance with

prevailing law and the Arbitration Agreements to which the parties are bound.

## FACTUAL BACKGROUND

Plaintiffs are current and former employees of Sterling Jewelers Inc. ("Sterling")

alleging gender discrimination on behalf of themselves and a class of female employees,

in violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act.  *See*

Amended Complaint, dated April 23, 2008, Dkt. No. 11.  In its Answer and

Counterclaims, Sterling seeks declaratory judgments, *inter alia*, on procedural issues

relating to Sterling's alternative dispute resolution program, the RESOLVE Program.

*See* Counterclaims, dated April 30, 2008 Dkt. 31, ¶¶ 50-60.[1]  Sterling has filed a motion

requesting that this Court bifurcate the case management schedule to first decide the

---

[1] Defendant's Answer and Counterclaim was stricken by the Court on May 6, 2008 and
refiled at Dkt. No. 30 on May 7, 2008. Plaintiffs intend to file a motion to strike or
dismiss these counterclaims in lieu of an answer.

issues raised in its counterclaims.  *See* Motion for Bifurcated Scheduling, dated May 2, 2008, Dkt. 21.  Implicit in Sterling's motion is that the Court subsequently refer any remaining issues to an arbitrator for adjudication on the merits of the case.  In total disregard of prevailing law, Sterling seeks to arbitrarily parse the adjudication of some issues while leaving the balance of issues to the arbitrator.

Plaintiffs initiated judicial proceedings because, prior to filing the Complaint, they identified two provisions of the Arbitration Agreement that appeared to deny Plaintiffs rights otherwise available to them in a judicial forum, thereby rendering the RESOLVE Program unenforceable.  Plaintiffs filed the Complaint to obtain a ruling from the Court as to the enforceability of the Arbitration Agreement.  After the filing of the Complaint, however, counsel for Sterling made representations that have satisfied Plaintiffs' concerns with the validity of the Arbitration Agreement.  As the parties are now in agreement that an enforceable arbitration agreement exists, Plaintiffs now seek to proceed directly to arbitration in accordance with the procedural rules mandated by the RESOLVE Program.[2]

The RESOLVE Program was developed by Sterling and implemented on June 1, 1998.  Any employee hired on or after June 1, 1998 was informed of the Program at or around the time of hire, and required to sign various documents agreeing to be bound by the Program.[3]  Those already employed as of June 1, 1998, were not required to sign any

---

[2] Sterling admits that the Arbitration Agreement is enforceable.  *See* Answer, ¶¶ 9, 403, 414, Dkt. No. 31.  For a more detailed discussion of the law requiring that this case be referred to arbitration, see Plaintiffs' Memorandum of Law in Support of Motion to Refer to Arbitration, Dkt. No. 26.

[3] Employees hired after June 1, 1998 were required to sign an acknowledgement form that accompanied the employee handbook that stated their understanding that they were bound by the terms of RESOLVE, as well as sign an Arbitration Agreement.  In addition,

documents relating to the RESOLVE program.  Instead, each employee's continued employment with Sterling after he or she had been informed of the terms of the RESOLVE Program served as the employee's agreement to be bound by the Program.

While no discovery has been conducted thus far in the litigation, documents obtained by Plaintiffs and documents attached to Sterling's Answer and Counterclaim show that the Arbitration Agreement has undergone several revisions, at least one of which added terms not found in previous versions.  Specifically, at some point between October 28, 2002 and June 20, 2005, the following language, *inter alia*, was added to the version of the Arbitration Agreement used by some of Sterling's stores:

> Questions of arbitrability…shall be decided by the arbitrator.  Likewise, procedural questions which grow out of the dispute and bear on the final disposition are also matters for the arbitrator.  However, where a party has already initiated a judicial proceeding, a court *may* decide procedural questions that grow out of the dispute and bear on the final disposition of the matter. (emphasis added)

*Compare* Arbitration Agreement signed by Plaintiff Marie House, dated June 20, 2005, attached hereto as Ex. B (which contains the language above) [4] *with* Arbitration Agreement signed by Mohamad Farsi, dated October 28, 2002, (which does not contain the language above) attached hereto as Ex. C. [5]  At least nine of the Plaintiffs were hired

---

any applicant to the store on or after that date was required to sign an application that included a statement agreeing to be bound by RESOLVE if hired by Sterling.
[4] The title of the version of the Agreement signed by House indicates it is the Arbitration Agreement for California.  Accordingly, Sterling has not established if or when this language was included in other versions of the Agreement in use in other states.  The earlier versions of the Agreement Plaintiffs have been able to obtain do not purport to apply to any state in particular, and in fact come from employees in various states, so it is plausible that the earlier versions were in use across the company.
[5] This document was filed by Sterling as an Exhibit to its Motion for Stay in *Farsi v. Sterling Jewelers Inc.*, Case No. CV 07-131-PK (D. Or. 2007).

before October 28, 2002, when the version of the agreement that did not include the language permitting the court to decide procedural issues was in effect.

Nonetheless, the permissive language found in only one version of the Arbitration Agreement is insufficient to overcome the strong federal policy and prevailing law in favor of arbitration.

## **ARGUMENT**

### I.    **THE PRELIMINARY ISSUES RAISED BY STERLING ARE APPROPRIATELY ADDRESSED BY AN ARBITRATOR, NOT THIS COURT**

Other than cite to general legal principles granting courts authority to manage cases, Sterling has provided no legal basis to support its unusual request to use Rule 16 to circumvent the well-established rule requiring procedural matters to be determined by an arbitrator in the first instance.  Accordingly, the Court should not embroil itself in adjudication of part of this case, but rather should refer the case in its entirety to arbitration.

The Federal Arbitration Act ("FAA") embodies the strong federal policy in favor of arbitration.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).  The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Id*. at 218.

Both Supreme Court and Second Circuit precedent dictate that once the existence of a valid agreement to arbitrate is confirmed, "procedural questions which grow of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide."  *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 457 (2003)

(quoting *John Wiley & Sons, Inc., v. Livingston*, 376 U.S. 543, 557 (1964)); *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001); *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). Procedural matters appropriately decided by an arbitrator include whether the arbitration agreement precludes class actions, whether prerequisites to arbitration have been satisfied, and whether particular filing deadlines have been met. *Bazzle*, 539 U.S. at 453 (whether an arbitration agreement allowed for arbitration on a class basis is an issue for the arbitrator); *John Wiley & Sons*, 376 U.S. at 557 (whether a party had properly invoked two steps of a union grievance procedure that were prerequisites to arbitration presented a procedural issue properly decided by the arbitrator); *Bressette v. International Talc Co.*, 527 F.2d 211, 215 (2d Cir. 1975) (whether the failure of the union to seek mediation, which preceded arbitration in the grievance procedure, barred arbitration was an issue for the arbitrator); *Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 29 F.3d 83, 88 (2d Cir. 1994) (whether time requirements within collective bargaining agreement were met and interpretation of the CBA were questions for the arbitrator); *Conticommodity Services, Inc. v. Philipp & Lion*, 613 F.2d 1222, 1226 (2d Cir.1980) (whether a party's demand to arbitrate was barred by the one-year provision in the contract was an issue for the arbitrator to decide).

Sterling admits that the Arbitration Agreement is enforceable. *See* Answer, ¶¶ 9, 403, 414, Dkt. 31. Plaintiffs no longer contest the enforceability of the Arbitration Agreement and have moved to enforce it. *See* Memorandum of Law in Support of Motion to Refer to Arbitration, Dkt. No. 26. Accordingly, since it has been established

that a valid agreement to arbitrate exists, this Court should refer the matter to arbitration consistent with the mandate of the FAA and prevailing law.

The three procedural issues Sterling has raised are precisely the type of issues to be resolved by an arbitrator in the first instance. First, Sterling seeks a declaratory judgment from the Court that any arbitration conducted pursuant to RESOLVE be on an individual basis. However, the RESOLVE Program's silence as to whether class arbitration is allowed causes this question to fall squarely within the purview of the arbitrator's authority. *Bazzle,* 539 U.S. at 453. The Supreme Court in *Bazzle* held that when an arbitration agreement is silent as to whether class actions are allowed, it is up to the arbitrator to decide whether arbitration can proceed on a class basis. *Id.*

Second, Sterling requests that this Court determine whether the claims of Plaintiffs Pagan, Contereas, Maddox, McConnell, and House are time-barred or waived pursuant to the terms of RESOLVE. This is another procedural issue long held to be for the arbitrator to decide in the first instance. The courts in *Schweizer Aircraft Corp.* and *Conticommodity Services* clearly held that issues relating to whether timeliness requirements have been met are for the arbitrator. *Schweizer Aircraft Corp.*, 29 F.3d at 88; *Conticommodity Services, Inc.*, 613 F.2d at 1226.

Third, Sterling asks the Court to determine whether the appropriate limitations period with respect to Plaintiffs' Equal Pay Act ("EPA") claims should be based on the February 27, 2006 filing of a RESOLVE claim alleging violations of the EPA. Again, adjudication of the applicable liability period with respect to the EPA claims is an issue that "grow[s] out of the dispute and bear[s] on its final disposition" and should thus be

decided by an arbitrator. *Bazzle*, 549 U.S. at 457; *see also Conticommodity Services*, 613 F.2d at 1226.

The Court's gatekeeper function is limited to determining whether an agreement to arbitrate is enforceable. *See Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 84-85 (2002) (discussing how gateway issues of substantive arbitrability, such as the enforceability of the agreement to arbitrate, are for the courts to decide, while the arbitrator should decide procedural issues such as the applicability of time limits). The logic and spirit of *Bazzle* and other precedent establish that once the threshold issue of enforceability is determined the arbitrator should decide the entirety of the case including any preliminary procedural issues. Thus, the Court should not embroil itself in adjudication of part of this case as Sterling seeks to have done, but rather refer the case in its entirety to an arbitrator.

## II. THE ARBITRATION AGREEMENT BINDING ON THE MAJORITY OF THE NAMED PLAINTIFFS DOES NOT CONTAIN LANGUAGE PERMITTING THE COURT TO DECIDE PROCEDURAL ISSUES

Plaintiffs do not believe that the procedural issues raised here are appropriate for resolution by a court. Sterling has not made even a threshold showing that the permissive language it relies upon is binding on all of the Named Plaintiffs. Sterling incorrectly asserts that "[e]ach of the individual RESOLVE agreements signed by Counterclaim Defendants" [*i.e.,* Named Plaintiffs] permits the court to decide procedural issues when a party has already initiated a judicial proceeding. Sterling cites to language in only one version of the agreement which provides: "where a party has already initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter." Def's Mem. at 4-5. Sterling relies on the

RESOLVE Arbitration Agreement signed by Marie House on June 20, 2005. However, most of the Plaintiffs never executed this version of the Agreement, and thus are not bound by it.

The Arbitration Agreements in effect between June 1, 1998 and at least October 18, 2002 *did not* contain this language.[6] *See* Factual Background, *supra*. Plaintiffs Jock, Maddox, Contreras, Shahmirzadi, and Souto-Coons were hired prior to the June 1, 1998 implementation of RESOLVE and have no recollection of signing any version of the Agreement.[7] These five plaintiffs, however, are bound by the version of the Agreement that was in effect at the time RESOLVE was implemented, as a consequence of their continued employment after Sterling notified them of the terms of the program.[8] *See Dantz v. Apple Ohio LLC*, 277 F. Supp. 2d 794, 801 (N.D. Ohio 2003) (holding that an employee's continued employment after the employer implements an alternative dispute resolution program constitutes the employee's consent to be bound by the program, so long as the terms of the program were effectively communicated to her). That version did not contain the language Sterling relies upon. Furthermore, Plaintiffs McConnell, Reed, Rodrigues, and Wolf were all hired prior to October 22, 2002, during which time

---

[6] Sterling also notes that this language appears in the RESOLVE program Arbitration Rules. Plaintiffs were never provided the version of these Rules in effect at the time of RESOLVE's implementation. However, it is reasonable to assume that this language was added to the Rules at the same time it was added to the Agreement; therefore earlier versions of the Rules likely did *not* contain such language.

[7] In fact, Sterling has only produced the signed Arbitration Agreements for Plaintiffs McConnell and House, despite a request from Plaintiffs counsel to produce the signed Agreements for all Plaintiffs. *See* Email from Joseph Sellers to Gerald Maatman dated May 1, 2008, attached hereto as Ex. D.

[8] Indeed, Sterling has made this argument in its counterclaim with respect to Plaintiffs Maddox and McConnell. *See* Conterclaim, Dkt. 31, ¶¶ 16-17.

the version of the Agreement that does not include the language upon which Sterling relies was in effect.[9]  Thus, they too are not bound by such language. [10]

As a result, most of the Named Plaintiffs did not sign and were not hired pursuant to an Arbitration Agreement containing the permissive language at issue.  For these Plaintiffs, the Court lacks the authority to determine procedural issues as the Supreme Court has clearly stated that absent a provision stating otherwise the Court must defer to the arbitrator with respect to procedural issues.  *See Bazzle*, 539 U.S. at 457; *John Wiley & Sons,* 376 U.S. at 557; *accord Howsam*, 537 U.S. at 84; *see also Troy Chem. Corp. v. Teamsters Union Local No.* 408, 37 F.3d 123, 128 (3rd Cir. 1994)  (vacating the district court's decision on declaratory judgment action where the district court erroneously determined a procedural question which should have been left for the arbitrator, and remanding to the district court with instructions to return the case to the arbitrator for de novo consideration).

Moreover, the language cited by Sterling only permits the court to decide procedural issues, but does not require it to do so.  Because the court must defer to the

---

[9] McConnell was hired on July 1, 2001.  Reed was hired on October 1, 2000.  Rodrigues was hired on November 26, 2001.  Wolf was hired on April 14, 2002.  Plaintiffs Boyle, Follett, and Smith were hired between October of 2002 (the latest date Plaintiffs are aware of the old Agreement being used) and June of 2005 (the earliest date Plaintiffs are aware of the new Agreement being used), so it is possible that some or all of them may be bound by the earlier version of the Agreement that does not permit court review of procedural issues.

[10] All versions of the Arbitration Agreement of which Plaintiffs are aware contain a provision stating that the Agreement can only be modified in writing, signed by both the Sterling Executive Committee and the employee.  Thus, once the Plaintiffs became bound to a particular version, each would only be bound by subsequent modifications if she signed an agreement to those modifications.

arbitrator for decisions on procedural issues for at least nine of the sixteen Plaintiffs [11]

and is not required to decide procedural issues for the remaining Plaintiffs, the proper

administration of this case requires the Court to defer to the arbitrator on all procedural

issues for all of the Plaintiffs.  To do otherwise would require extensive discovery to

determine: 1) which versions of the Agreement each Plaintiff was bound by, including

discovery relating to which version of the Arbitration Agreement, if any, each Plaintiff

signed; 2) when and why Sterling changed the agreement to include the language at issue

here; and 3) whether Sterling obtained written consent from each Plaintiff bound by the

previous version of the agreement once it made the changes.  Such time consuming and

costly discovery is unnecessary when the matter can be more expeditiously resolved by

simply referring this entire matter to arbitration.

### III.     RESOLUTION OF PROCEDURAL MATTERS SHOULD BE CONDUCTED AT THE ONSET OF THE ARBITRATION BY THE ARBITRATOR

Contrary to Sterling's assertion, the procedural issues presented are not of such

"complexity" as to necessitate "special procedures" for judicial resolution at the outset of

the case.  See Def's Mem. at 4.  The arbitrator will be well equipped to resolve the

procedural issues raised here, as such issues have long been routinely determined by the

arbitrator.  *See John Wiley & Sons,* 376 U.S. at 557; *see also,* Section III., *infra.*  Indeed,

the American Arbitration Association has rules in place to decide the very issues raised

here.   The Supplementary Rules for Class Arbitration promulgated by the American

---

[11] Those nine are Plaintiffs Jock, Contreras, Maddox, Shahmirzadi, Souto-Coons, McConnell, Reed, Rodrigues, and Wolf, who were all hired prior to October 2002, the latest date Plaintiffs know of the earlier version of the Agreement being in effect.  It is possible other Plaintiffs were bound by this earlier version as well, as Plaintiffs do not know when the language permitting the court to decide procedural issues was added to the Agreement.

Arbitration Association state that, "upon appointment, the arbitrator shall determine as a threshold matter, . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class ("the Clause Construction Award")." *See* Ex. A. If the case may proceed on a class basis, the arbitrator then issues a Class Certification Award, which "shall define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses." *Id.*

      Sterling fails to cite any case law or provide any evidence to show why arbitration on the procedural matters at issue would not "serve to achieve the orderly and expeditious disposition of this case." *See* Def's Memo at 7. The AAA clearly has procedures in place for deciding the matters Sterling is requesting this Court to adjudicate, and those procedures provide for disposition of these matters in nearly the same manner in which Sterling suggests this Court proceed.[12] Before an arbitrator, Sterling is provided the same opportunity to set forth its arguments on all of the procedural issues it has presented here. Hence, there is no need for the Court to embroil itself in adjudicating part of this case as Sterling seeks to have done. Nor should Sterling be permitted to arbitrarily parse adjudication of some of the issues in the Court and leave the balance to the arbitrator. The logic and spirit of Supreme Court and Second Circuit precedent dictate that once the threshold issue of enforceability of the agreement is determined, then the arbitrator should decide the entirety of the case including any preliminary procedural issues.

## IV.    CONCLUSION

      For the reasons stated above, Plaintiffs respectfully request that this Court deny Sterling's motion to bifurcate this litigation and decline to reach decisions on the

---

[12] The RESOLVE Program provides for arbitration by the American Arbitration Association. *See* Ex. B.

preliminary procedural issues presented.  The proper course of action is for the Court to

refer this case to arbitration.


Dated: New York, New York
  May 16, 2008


        Respectfully submitted,

        **COHEN, MILSTEIN, HAUSFELD**
         **& TOLL, P.L.L.C.**


          */s/ Joseph M. Sellers*
        Joseph M. Sellers
        Jenny R. Yang (JY-9667)
        Sahar F. Aziz
        1100 New York Avenue, N.W.
        West Tower, Suite 500
        Washington, D.C.  20005
        Telephone:  (202) 408-4600
        Facsimile:  (202) 408-4699
        jsellers@cmht.com
        jyang@cmht.com
        saziz@cmht.com


        Lynda J. Grant (LG-4784)
        150 East 52nd Street, 30th Floor
        New York, N.Y.  10022
        Telephone:  (212) 838-7797
        Facsimile:  (212) 838-7745
        lgrant@cmht.com


        Sam J. Smith
        Loren B. Donnell
        Burr & Smith, LLP
        442 W. Kennedy Boulevard
        Suite 300, Tampa, FL  33606
        Telephone:  (813) 253-2010
        Facsimile:  (813) 254-8391
        ssmith@burrandsmithlaw.com
        ldonnell@burrandsmithlaw.com

Thomas A. Warren
Thomas A. Warren Law Offices, P.L.
2032-D Thomasville Blvd.
Tallahassee, FL 32308
Telephone:  (850) 385-1551
Facsimile:  (850) 385-6008
tw@nettally.com

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2008, I electronically filed the foregoing *Memorandum of Points and Authorities In Opposition to Defendant's Motion for Bifurcated Scheduling, Consideration, and Disposition of Legal Issues Relative to the Workplace Dispute Resolution Agreement Between Each Plaintiff and Defendant (Dkt. No. 21)* with the Clerk of the United States District Court, Southern District of New York, using the CM/ECF system, which sent notification of such filing to the following:

Gerald L. Maatman, Jr. (GM-3201)
gmaatman@seyfarth.com

Lorie E. Almon (LA-4937)
lalmon@seyfarth.com

David Bennet Ross (DR-8613)
dross@seyfarth.com

Richard I. Scharlat (RS-5127)
rscharlat@seyfarth.com

620 Eighth Avenue, 32nd floor
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

and via first class mail to the following:

ZASHIN & RICH CO., L.P.A.
Stephen S. Zashin
ssz@zrlaw.com
55 Public Square, 4th floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618

*Attorneys for Defendant Sterling Jewelers Inc.*

                                        */s/ Sahar Aziz*
                                           Sahar Aziz

# Exhibit A

Search ®

Checkout ®

ABOUT US    DISPUTE RESOLUTION SERVICES    FILE A CASE    EDUCATION    NEUTRALS

CONTACT US

PRINT VERSION

## Supplementary Rules for Class ARBITRATIONS

Effective Date October 8, 2003

1. Applicability
2. Class Arbitration Roster and Number of Arbitrators
3. Construction of the Arbitration Clause
4. Class Certification
5. Class Determination Award
6. Notice of Class Determination
7. Final Award
8. Settlement, Voluntary Dismissal, or Compromise
9. Confidentiality; Class Arbitration Docket
10. Form and Publication of Awards
11. Administrative Fees and Suspension for Nonpayment
12. Applications to Court and Exclusion of Liablility

### 1. Applicability

(a) These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

(b) Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules will govern. The arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and these Supplementary Rules, and in doing so shall endeavor to avoid any prejudice to the interests of absent members of a class or purported class.

(c) Whenever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court.

### 2. Class Arbitration Roster and Number of Arbitrators

(a) In any arbitration conducted pursuant to these Supplementary Rules, at least one of the arbitrators shall be appointed from the AAA's national roster of class arbitration arbitrators.

(b) If the parties cannot agree upon the number of arbitrators to be appointed, the dispute shall be heard by a sole arbitrator unless the AAA, in its discretion, directs that three arbitrators be appointed. As used in these Supplementary Rules, the term "arbitrator" includes both one and three arbitrators.

### 3. Construction of the Arbitration Clause

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction

Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

4. Class Certification

(a) Prerequisites to a Class Arbitration

    If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration. For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration. In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described. The arbitrator shall permit a representative to do so only if each of the following conditions is met:

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class;

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.

(b) Class Arbitrations Maintainable

    An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and

(4) the difficulties likely to be encountered in the management of a class arbitration.

5. Class Determination Award

(a) The arbitrator's determination concerning whether an arbitration should proceed as a class arbitration shall be set forth in a reasoned, partial final award (the "Class Determination Award"), which shall address each of the matters set forth in Rule 4.

(b) A Class Determination Award certifying a class arbitration shall define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses. A copy of the proposed Notice of Class Determination (see Rule 6), specifying the intended mode of delivery of the Notice to the class members, shall be attached to the award.

(c) The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration. If an arbitrator concludes that some exceptional circumstance, such as the need to resolve claims seeking injunctive relief or claims to a limited fund, makes it inappropriate to allow class members to request exclusion, the Class Determination Award shall explain the reasons for that conclusion.

(d) The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Class Determination Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Class Determination Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

(e) A Class Determination Award may be altered or amended by the arbitrator before a final award is rendered.

## 6. Notice of Class Determination

(a) In any arbitration administered under these Supplementary Rules, the arbitrator shall, after expiration of the stay following the Class Determination Award, direct that class members be provided the best notice practicable under the circumstances (the "Notice of Class Determination"). The Notice of Class Determination shall be given to all members who can be identified through reasonable effort.

(b) The Notice of Class Determination must concisely and clearly state in plain, easily understood language:

(1) the nature of the action;

(2) the definition of the class certified;

(3) the class claims, issues, or defenses;

(4) that a class member may enter an appearance through counsel if the member so desires, and that any class member may attend the hearings;

(5) that the arbitrator will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded;

(6) the binding effect of a class judgment on class members;

(7) the identity and biographical information about the arbitrator, the class representative(s) and class counsel that have been approved by the arbitrator to represent the class; and

(8) how and to whom a class member may communicate about the class arbitration, including information about the AAA Class Arbitration Docket (see Rule 9).

## 7. Final Award

The final award on the merits in a class arbitration, whether or not favorable to the class, shall be reasoned and shall define the class with specificity. The final award shall also specify or describe those to whom the notice provided in Rule 6 was directed, those the arbitrator finds to be members of the class, and those who have elected to opt out of the class.

## 8. Settlement, Voluntary Dismissal, or Compromise

(a) (1) Any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of an arbitration filed as a class arbitration shall not be effective unless approved by the arbitrator.

(2) The arbitrator must direct that notice be provided in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(3) The arbitrator may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(b) The parties seeking approval of a settlement, voluntary dismissal, or compromise under this Rule must submit to the arbitrator any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(c) The arbitrator may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(d) Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires approval under this Rule. Such an objection may be withdrawn only with the approval of the arbitrator.

9. Confidentiality; Class Arbitration Docket

(a) The presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations. All class arbitration hearings and filings may be made public, subject to the authority of the arbitrator to provide otherwise in special circumstances. However, in no event shall class members, or their individual counsel, if any, be excluded from the arbitration hearings.

(b) The AAA shall maintain on its Web site a Class Arbitration Docket o f arbitrations filed as class arbitrations. The Class Arbitration Docket will provide certain information about the arbitration to the extent known to the AAA, including:

(1) a copy of the demand for arbitration;

(2) the identities of the parties;

(3) the names and contact information of counsel for each party;

(4) a list of awards made in the arbitration by the arbitrator; and

(5) the date, time and place of any scheduled hearings.

10. Form and Publication of Awards

(a) Any award rendered under these Supplementary Rules shall be in writing, shall be signed by the arbitrator or a majority of the arbitrators, and shall provide reasons for the award.

(b) All awards rendered under these Supplementary Rules shall be publicly available, on a cost basis.

11. Administrative Fees and Suspension for Nonpayment

(a) A preliminary filing fee of $3,250 is payable in full by a party making a demand for treatment of a claim, counterclaim, or additional claim as a class arbitration. The preliminary filing fee shall cover all AAA administrative fees through the rendering of the Clause Construction Award. If the arbitrator determines that the arbitration shall proceed beyond the Clause Construction Award, a supplemental filing fee shall be paid by the requesting party. The supplemental filing fee shall be calculated based on the amount claimed in the class arbitration and in accordance with the fee schedule contained in the AAA's Commercial Arbitration Rules.

(b) Disputes regarding the parties' obligation to pay administrative fees or arbitrator's compensation pursuant to applicable law or the parties' agreement may be determined by the arbitrator. Upon the joint application of the parties, however, an arbitrator other than the arbitrator appointed to decide the merits of the arbitration, shall be appointed by the AAA to render a partial final award solely related to any disputes regarding the parties' obligations to pay administrative fees or arbitrator's compensation.

(c) If an invoice for arbitrator compensation or administrative charges has not been paid in full, the AAA may so inform the parties in order that one of them may advance the required deposit. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

(d) If an arbitration conducted pursuant to these Supplementary Rules is suspended for nonpayment, a notice that the case has been

suspended shall be published on the AAA's Class Arbitration Docket.

12. Applications to Court and Exclusion of Liability

(a) No judicial proceeding initiated by a party relating to a class arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a class arbitration or potential class arbitration under these Supplementary Rules is a necessary or proper party in or to judicial proceedings relating to the arbitration. It is the policy of the AAA to comply with any order of a court directed to the parties to an arbitration or with respect to the conduct of an arbitration, whether or not the AAA is named as a party to the judicial proceeding in which the order is issued.

(c) Parties to a class arbitration under these Supplementary Rules shall be deemed to have consented that judgment upon each of the awards rendered in the arbitration may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these Supplementary Rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action seeking damages or injunctive relief for any act or omission in connection with any arbitration under these Supplementary Rules.

FILE A CASE    CONTACT US

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED

# Exhibit B

# CALIFORNIA
# RESOLVE PROGRAM
Alternative Dispute Resolution

---

## Arbitration Agreement

I, my heirs, spouse, successors, assigns, agents and representatives (collectively called "Employee"), hereby agree to utilize the Sterling RESOLVE Program to pursue any pre-employment, employment or post-employment dispute, claim, or controversy (collectively called "claim") against Sterling Jewelers Inc., its predecessors, successors, affiliates, parents, subsidiaries, divisions, related companies, current and former directors, officers, shareholders, representatives, employees, insureds, members and attorneys (collectively called "Sterling") regarding any alleged unlawful act regarding my application for employment, employment or the termination of my employment which could have otherwise been brought before an appropriate court including, but not limited to, claims under the Age Discrimination in Employment Act; Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act; the Americans with Disabilities Act; The Fair Labor Standard Act; The Family and Medical Leave Act; any state anti-discrimination statutes; wage and hour laws; equal pay laws; any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance; or any public policy, contract, tort or common law.

In consideration for signing this Agreement, Sterling agrees to: 1) utilize the RESOLVE Program for any claims against Employee (e.g., theft, embezzlement, restitution, trade secrets/propriety information, other willful misconduct, etc.); and 2) pay all costs of arbitration imposed by the American Arbitration Association ("AAA") including filing fees as set forth by AAA.

This Agreement waives the parties rights to obtain any legal or equitable relief (e.g., monetary, injunctive or reinstatement) through any court, and they also waive their right to commence any court action to the extent that is permissible under law provided that either party may seek equitable relief to preserve the status quo pending final disposition under the RESOLVE Program. The parties may seek and be awarded any remedy through the RESOLVE Program that they could receive in a court of law. Nothing in this Agreement precludes either party from filing a charge or complaint with appropriate governmental administrative agencies and to assist or cooperate with such agencies in their investigation or prosecution of charges or complaints, although the parties waive their right to any remedy or relief as a result of such charges or complaints brought by such governmental administrative agencies to the extent that is permissible under law.

The parties agree to follow the multi-step process outlined in the RESOLVE Program, which culminates in the use of arbitration. In such an event, the claim shall be arbitrated by one arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") as amended by the Sterling RESOLVE Program. The arbitrator's decision shall be final and binding. The arbitrator shall have the power to award any types of legal or equitable relief that would be available under applicable law.

Unless prohibited by law, a demand to use the RESOLVE Program must be made in writing and must be postmarked or delivered to the RESOLVE Program Administrator no later than one (1) year after the alleged unlawful conduct has occurred. Failure expressly to demand use of RESOLVE, in writing, within that time limitation shall serve as a waiver and release with respect to all such claims.

This Agreement is being made under the provision of the Federal Arbitration Act (9 U.S.C., Section 1-14) and will be construed and governed accordingly. Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator. Likewise, procedural questions, which grow out of the dispute and bear on the final disposition, are also matters for the arbitrator. However, where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

A copy of the RESOLVE Program Arbitration Rules are attached, and the AAA Employment Dispute Resolution Rules ("National Rules for the Resolution of Employment Disputes") are available for review on AAA's web site at www.adr.org. In the event of a conflict between the RESOLVE Program Arbitration Rules and the AAA Employment Dispute Resolution Rules, the RESOLVE Program Arbitration Rules will control.

Employment with Sterling is at-will and may be terminated at any time for any reason by either party with or without prior notice.

Any claim under this Agreement shall be governed by the law of the jurisdiction in which the claim arose. This Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Ohio. Absent an undue hardship as determined by arbitrator, the arbitration shall occur near where Employee worked for Sterling.

If any term or provision of this Agreement is declared illegal or unenforceable and cannot be modified to be enforceable, such term or provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

The terms of this Agreement cannot be orally modified. This Agreement may not be modified unless the Agreement is altered in writing and signed by Sterling's Executive Committee and Employee.

The parties understand and agree that this Agreement contains adequate consideration, the receipt and sufficiency of which is hereby acknowledged. Employee has been advised of his/her right to consult with an attorney of his/her choice regarding this Agreement.

Employee acknowledges that he/she has the right to opt out of this Agreement by sending a letter to RESOLVE Program Administration, c/o RESOLVE Program Administrator at 375 Ghent Road, Akron, Ohio 44333, and postmarked within 30 calendar days, stating Employee wishes to "opt-out" of this Agreement. Employee also acknowledges that he/she has an affirmative duty to report to the RESOLVE Program Administrator in writing if he/she has in any manner been threatened or coerced to enter into this Agreement.

Employee Signature                          Date    6/20/05

Print Name    MARIA HOUSE                   Store Number    2198

For Sterling Jewelers Inc.

# Exhibit C

# RESOLVE PROGRAM
## Alternative Dispute Resolution

### Arbitration Agreement

I hereby agree to utilize the Sterling RESOLVE Program to pursue any dispute, claim, or controversy ("claim") against Sterling, its predecessors, successors, affiliates, parent, subsidiaries, divisions, related companies, current and former directors, officers, shareholders, representatives, employees, insureds, members and servants ("Sterling") regarding any alleged unlawful act regarding my employment or the termination of my employment which could have otherwise been brought before an appropriate court including, but not limited to, claims under the Age Discrimination in Employment Act of 1967; The Older Workers Benefit Protection Act; Title VII of the Civil Rights Act of 1964; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States code; the Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; the Americans with Disabilities Act of 1990; The Fair Labor Standard Act; The Occupational Safety and Health Act; The Family and Medical Leave Act; any state Human Rights/Civil Rights Statutes; Minimum Wage Act; Equal Pay Law; any other federal, state or municipal civil or human rights law or any other municipal, state or federal law, regulation or ordinance; or any public policy, contract, tort or common law. **I understand that by signing this Agreement I am waiving my right to obtain any legal or equitable relief (e.g., monetary, injunctive or reinstatement) through any court, and I am also waiving my right to commence any court action to the extent that is permissible under law. I may, however, seek and be awarded equal remedy through the RESOLVE Program.** I also retain the right to file a charge or complaint with appropriate governmental administrative agencies, such as the National Labor Relations Board or the Equal Employment Opportunity Commission and to assist or cooperate with such agencies in their investigation or prosecution of charges, although I waive my right to any remedy or relief as a result of such charges or complaints brought by such governmental administrative agencies to the extent that is permissible under law.

I agree to follow the multi-step process outlined in the RESOLVE Program, which culminates in the use of arbitration. In this event the claim shall be arbitrated by one Arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") as amended by the Sterling RESOLVE Program. I understand that I will be required to pay the first $150 of the costs of commencing an arbitration with the AAA and that the remainder of these costs will be paid by Sterling. The decision or award of the Arbitrator shall be final and binding upon the parties. The Arbitrator shall have the power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to, the costs of arbitration, attorney fees and punitive damages for causes of action when such damages are available under law. An arbitration award may be entered as a judgment or order in any court of competent jurisdiction. I agree that any relief or recovery to which I am entitled from any claims

4

arising out of my employment or cessation of employment shall be limited to that awarded by the Arbitrator.

I understand that this Agreement is being made under the provision of the Federal Arbitration Act (9 U.S.C., Section 1-14) and will be construed and governed accordingly.

I understand that a copy of the RESOLVE Program Arbitration Rules and the AAA Employment Dispute Resolution Rules are available for my review.

I understand that neither the terms nor conditions described in the Agreement are intended to create a contract of employment for a specific duration of time. Since employment with Sterling is voluntarily entered into, I am free to resign at any time. Similarly, Sterling may terminate the employment relationship with me at any time.

This Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Ohio.

**If for any reason this Agreement is declared unenforceable, I agree to waive any right I may have to a jury trial with respect to any dispute or claim against Sterling relating to my employment, my termination, or any terms and conditions of my employment with Sterling.**

If any term or provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, such term or provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

The terms of this Agreement cannot be orally modified. Sterling reserves the right to modify this Agreement, if done so in writing, and only by the Sterling Executive Committee and the employee.

**I understand that I would not be or remain employed by Sterling absent of signing this Agreement.** I have been advised of my right to consult with an attorney of my choice, at my expense, regarding this Agreement. My agreement to accept arbitration can be revoked any time within seven (7) days of my signing this Agreement. Such revocation must be made in writing. My revocation of this agreement will result in immediate separation from Sterling. I have decided to sign knowingly, voluntarily, and free from duress or coercion.

_____     _____
Employee Signature                  Date  10 - 28 - 02

_____     _____
Print Name  MOHAMAD FARSI           Store Number  744

HR – Rev. 02/01

# Exhibit D

| | |
|---|---|
| **From:** | Sellers, Joe |
| **To:** | "Tommy Warren"; Sam J. Smith (ssmith@Burrandsmithlaw.com); "Loree Kovach"; Loren Donnell (ldonnell@burrandsmithlaw.com); |
| **cc:** | Aziz, Sahar; |
| **Subject:** | FW: Jock v. Sterling |
| **Date:** | Thursday, May 01, 2008 10:14:07 AM |

fyi

-----Original Message-----
**From:** Sellers, Joe
**Sent:** Thursday, May 01, 2008 10:10 AM
**To:** 'Maatman, Gerald'
**Cc:** Aziz, Sahar; Sarno, Lynnette
**Subject:** RE: Jock v. Sterling

Jerry,

   Sahar is contacting one your colleagues to propose we schedule a call with the Court tomorrow afternoon.  I'm tied up with something right now and can't join in arranging that call.  Sahar is available to do so.

   On a separate matter, I see from briefly reviewing your answer and attachments filed yesterday that you have attached and intend to ask the Court to interpret arbitration agreements in which the named plaintiffs entered.  As you know, Sterling has never provided copies of those agreements to us.  If you wish to ask the Court to interpret those agreements, then I expect you will make complete copies available to us immediately.

   Thanks.

   Joe

        -----Original Message-----
        **From:** Maatman, Gerald [mailto:GMaatman@seyfarth.com]
        **Sent:** Thursday, May 01, 2008 9:46 AM
        **To:** Sellers, Joe
        **Cc:** Aziz, Sahar; Sarno, Lynnette
        **Subject:** Jock v. Sterling

        Joe -

        I just left you a voicemail, and then I left one for Sahar too.

        We'll work immediately on taking care of the issues noted in your note below. I am copying Lynnette, as she and I called both you and Sahar to set up the call to the Court's chambers for the motions both sides wish to file.

        Thank you.