## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

|  | : | Index No. 1:08 CV 2875 (JSR) |
| **LARYSSA JOCK, et al.,** | : | |
|  | : | U.S. District Judge Jed S. Rakoff |
| Plaintiffs, | : | |
|  | : | |
| v. | : | |
|  | : | |
| **STERLING JEWELERS INC.,** | : | |
|  | : | |
| Defendant. | : | |
|  | : | |

-------------------------------------------------------- x

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REFER TO ARBITRATION AND STAY THE LITIGATION

SEYFARTH SHAW, LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
Telephone: (212) 218-5500
Facsimile:  (212) 218-5526
Gerald L. Maatman, Jr. (GM-3201)
gmaatman@seyfarth.com
Lorie E. Almon (LA-4937)
lalmon@seyfarth.com
David Bennet Ross (DR-8613)
dross@seyfarth.com
Richard I. Scharlat (RS-5127)
rscharlat@seyfarth.com

ZASHIN & RICH CO., L.P.A.
55 Public Square, 4th Floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Facsimile:  (216) 696-1618
Stephen S. Zashin (SZ7589)
ssz@zrlaw.com

*Attorneys for Defendant Sterling Jewelers Inc.*

## Table of Contents

Table of Authorities ..................................................................................................... ii

Preliminary Statement ................................................................................................. 4

Facts And Procedural History ...................................................................................... 7

I.      Sterling Employees Are Contractually Bound To Dispute Resolution
        Through RESOLVE ......................................................................................... 7

II.     As A Result Of Plaintiffs' Initiation Of Litigation Before This Court,
        RESOLVE Specifically Provides That This Court Should Decide
        Procedural Questions Arising From Plaintiffs' Time-Barred, Unripe, And
        Potential Class Or Collective Action Claims ................................................... 8

III.    Plaintiffs' Filing Of The Complaint And Amended Complaint, Which
        They Now Seek To Stay Only After Sterling Filed Its Answer And
        Counterclaim, Constitutes A Repudiation Of the Agreement to Arbitrate,
        Waiver Of The Right To Arbitrate, And Calls Into Question Plaintiffs'
        Motives For The Lawsuit ............................................................................... 9

Legal Argument ......................................................................................................... 11

I.      Plaintiffs' Motion For An Order Compelling Arbitration Should Be
        Denied  Because  Plaintiffs Are Not "Aggrieved" Parties Under The
        Federal Arbitration  Act, Plaintiffs Repudiated The Agreement To
        Arbitrate, And Because  Plaintiffs' Purported Basis For Filing A Lawsuit
        In Court Is Questionable ............................................................................... 11

        A.      Plaintiffs Are Not An "Aggrieved Party" Under The Federal
                Arbitration Act ................................................................................ 11

        B.      Plaintiffs Pre-Litigation Conduct And Court Filings Repudiated
                RESOLVE And They Have Forfeited The Right To Arbitrate ................ 12

II.     The Precise Provisions Of RESOLVE Provide For This Court's
        Determination Of Whether Plaintiffs' Claims Are Timely, Whether Class
        Or Collective Arbitration Are Permitted By Its Terms, And The Proper
        Equal Pay Act Limitations Period .................................................................. 16

CONCLUSION ............................................................................................................ 19

i

## Table of Authorities

### CASES

*American Savings Bank, FSB v. UBS Fin. Svcs., Inc.*,
  347 F.3d 436, 439 (2d Cir. 2003)........................................................................9

*Carpet et Cetera, Inc. v. Forde*,
  No. 06-CV-6993 (BSJ), 2006 WL 2959063, at *3 (S.D.N.Y. Oct. 16, 2006)..................13

*Champ v. Siegel Trading Co.*,
  55 F.3d 269, 275, 277(7th Cir. 1995) ...............................................................17

*Chatham Shipping Co. v. Fertex S.S. Corp.*,
  352 F.2d 291, 293 (2d Cir. 1965)......................................................................14

*Cotton v. Slone*,
  4 F.3d 176, 179 (2d Cir. 1993).........................................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213, 221 (1985)................................................................................17

*Downing v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  725 F.2d 192, 195 (2d Cir. 1984)......................................................................11

*Government of U.K. of Gr. Brit. v. Boeing*,
  998 F.2d 68, 72 (2d Cir. 1993);   ...................................................................17

*Green Tree Fin. Corp. v. Bazzle*,
  539 U.S. 444, 447, 451-52 (2003) ...........................................................4, 17, 18

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79, 83-86 (2002) .........................................................................17, 18

*Jacobs v. USA Track & Field*,
  374 F.3d 85, 88 (2d Cir. 2004).........................................................................11

*Kramer v. Hammond*,
  943 F.2d 176, 179 (2d Cir. 1991).......................................................................14

*Kulukundis  Shipping Co., S.A. v. Amtorg Trading Corp.*,
  126 F.2d 978, 988 (2d Cir. 1942)......................................................................12

*Leadertex, Inc., v. Morganton Dyeing & Finishing Corp.*,
  67 F.3d 20, 25-26 (2d Cir. 1995) .................................................................13, 14

*Marra v. Papandreou*,
    216 F.3d 1119, 1125 (D.C. Cir. 2000)................................................................13

*Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n., Local 38*,
    351 F.3d 43, 46 (2d Cir. 2003)..........................................................................9

*PPG Indus. v. Webster Auto Parts*,
    128 F.3d 103, 108 (2d Cir. 1997)......................................................................13

*Simmonds v. I.N.S.*,
    326 F.3d 351, 357 (2d Cir. 2003)......................................................................9

*Tassy v. Brunswick Hosp. Ctr.*,
    296 F.3d 65, 68 (2d Cir. 2002)..........................................................................9

*Volt Information Sciences v. Leland Stanford Jr. Univ.*,
    489 U.S. 468, 479 (1989)..............................................................................5, 17

*Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts.*,
    996 F.2d 1478, 1479 (2d Cir. 1993)..................................................................13

## STATUTES

9 U.S.C. § 3 .........................................................................................................12

9 U.S.C. § 4 .........................................................................................................11

**Preliminary Statement**

Defendant Sterling Jewelers Inc. ("Sterling") respectfully submits this Memorandum of Law in opposition to plaintiffs' motion to refer to arbitration and stay this litigation under Sterling's alternative dispute resolution program known as RESOLVE.[1]  Plaintiffs' motion should be denied because plaintiffs: (1) are not an "aggrieved party" under the Federal Arbitration Act; (2) repudiated their arbitration agreements with Sterling; (3) cannot "stay" their own litigation; and (4) have prejudiced Sterling by initiating this litigation in the first instance.

By filing the lawsuit in court and engaging in other pre-litigation conduct, plaintiffs have lost their contractual right to arbitration and repudiated the alternative dispute resolution agreement that they now seek to have this Court enforce.  At this juncture, Sterling, and only Sterling, has a contractual right to stay this litigation pending use of the RESOLVE Program. However, before Sterling decides whether to exercise this contractual right, Sterling is contractually entitled to have this Court decide certain procedural questions (*e.g.,* timeliness, the permissibility of a class or collective action in an arbitration, and the proper Equal Pay Act limitations period) related to plaintiffs' claims.

Sterling's counterclaim raises legal issues of first impression. Without specific contractual provisions directing otherwise, questions involving arbitration procedures (such as timeliness or the permissibility of a class or collective action in an arbitration) are normally the province of an arbitrator.  *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 447, 451-52 (2003).  Here, however, plaintiffs and Sterling voluntarily entered into a bilateral agreement

---

[1] Plaintiffs' motion incorrectly seeks to refer their litigation to "arbitration."  The motion should, and can only, seek referral specifically to Sterling's RESOLVE program to which plaintiffs agreed to submit claims.  The distinction is material because, among other reasons, certain plaintiffs have indisputably not met the requirements of RESOLVE and are not entitled to arbitrate their claims at this juncture in any event.

which specifically provides this Court with jurisdiction to decide such procedural questions when a party initiates a judicial proceeding -- exactly as plaintiffs have done here.  Although it may be a question of first impression whether parties can contract to have a court decide procedural questions following *Green Tree,* it is axiomatic that parties may "specify by contract the rules under which [an] arbitration will be conducted." *Volt Information Sciences v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989).  The parties to this litigation contractually set the rules by which procedural questions in connection with an arbitration would be conducted.  Plaintiffs triggered Sterling's contractual right to have the Court, and not an arbitrator, decide these procedural questions.  Plaintiffs' motion wholly ignores this contractual right.  For this reason alone, this Court should deny plaintiffs' motion.

Plaintiffs' motion incorrectly focuses on the issue of RESOLVE's enforceability. Plaintiffs initially contested RESOLVE's enforceability.  However, their present motion now concedes that point.  In focusing on RESOLVE's enforceability, plaintiffs' motion avoids the real issues created by the claims set forth in plaintiffs' complaint, amended complaint, and Sterling's counterclaim. This Court does not need to decide whether RESOLVE is enforceable, but whether: (1) certain counterclaim defendants are out of time to file claims for failure to meet filing requirements; (2) the plaintiffs may arbitrate under RESOLVE as a class or collective action; and (3) the limitations period for plaintiffs' claims under the Equal Pay Act is proper.  As set forth in Sterling's counterclaim and pending motion under Rule 16, this Court should resolve these threshold issues--not an arbitrator -- as plaintiffs triggered this unique feature of the RESOLVE Program when they initiated litigation in Court.

Specifically, Sterling's counterclaim seeks:

(1)     A declaration that this Court, and not an arbitrator, decide "procedural questions which grow out of the [parties'] dispute and bear on this matter" as agreed under the RESOLVE program (Counterclaim, ¶ 51(a));

(2)     Declarations as to certain "procedural questions," as follows:

    (a)     that counterclaim defendants' claims must be adjudicated under RESOLVE on an individual basis  (Counterclaim, ¶ 51(b));

    (b)     that counterclaim defendants are precluded from bringing or participating in any action under RESOLVE on behalf of a putative class or collective, pursuant to the terms of RESOLVE  (Counterclaim, ¶ 51(c));

    (c)     that the Court should decide whether counterclaim defendants Contreras, House, Maddox, McConnell and Pagan's claims are time barred pursuant to RESOLVE (Counterclaim, ¶ 58(a)); and

    (d)     that the limitations period for plaintiffs' Equal Pay Claims does not begin on February 27, 2003, but rather 2 or 3 years (depending on alleged willfulness) from the date each employee filed her own action or properly filed an opt-in notice of consent  (Counterclaim, ¶ 60(a)).

By initiating litigation, Sterling is entitled under RESOLVE to have its counterclaims adjudicated by this Court no matter whether one party determines the procedural issues raised to be significant, complex, or mundane.  RESOLVE does not distinguish the types of procedural issues a party may raise once a party initiates a lawsuit.  Rather, RESOLVE simply provides a party the contractual right to do so.  To that end, Sterling intends to enforce its contractual right by filing an appropriate motion pursuant to Rule 12(c) or 56 at the earliest appropriate opportunity to obtain the relief sought in its counterclaims on the merits.

Finally, plaintiffs' motion seeks most unusual relief: a "referral" to arbitration and a stay of the litigation initiated by plaintiffs themselves -- in which they unequivocally assert that RESOLVE is unenforceable.  In addition to plaintiffs' repudiation of RESOLVE and the attendant waiver of their rights to seek arbitration, plaintiffs' purported reasons for their belated election of the RESOLVE forum also call into question the propriety of plaintiffs' motivations for initiating the litigation in the first instance and mandate denial of plaintiffs' motion.

<u>**Facts And Procedural History**</u>

**I.     Sterling Employees Are Contractually Bound To Dispute Resolution Through <u>RESOLVE</u>**

Sterling operates approximately 1,300 retail jewelry stores nationwide, with at least one store in each of the fifty states.  *See http://www.sterlingcareers.com/about/whoweare.html*; Declaration of Gerald L. Maatman, Jr., Esq., dated May 19, 2008, submitted herewith ("Maatman Decl."), ¶ 2.  The operations of these stores are managed through two divisions, the In-mall division, which is comprised of in-mall stores (representing approximately 75% of all retail outlets) and the Jared Division, which is comprised of free-standing stores (representing the remaining 25% of Sterling's retail outlets).  Maatman Decl. ¶ 3.   Between the two divisions, there are several different store names, such as Kay Jewelers, Belden Jewelers, Jared the Galleria of Jewelry, and Osterman Jewelers.  Maatman Decl. ¶ 4.

Prospective employees can obtain employment by walking into any Sterling retail outlet and completing a written job application for a position at that store.  Maatman Decl. ¶ 5.  Prospective employees may apply for entry level jobs ranging from Office, Sales Support, and Inventory to more competitive positions, such as Sales, Diamond Department, and Store Manager.  Maatman Decl. ¶ 6.  The overwhelming number of applicants who are hired work in the stores in which they applied for employment.  Maatman Decl. ¶ 7.

Employees who accept an offer of employment with Sterling agree to resolve all employment-related claims, such as claims for discrimination or harassment based on gender or any other protected basis, under Sterling's alternative dispute resolution program known as RESOLVE.  As detailed in documents filed by plaintiffs in support of their motion, RESOLVE is a three-step dispute resolution process which affords Sterling employees the ability to obtain "any types of legal or equitable relief that would be available in a court of competent jurisdiction

including, but not limited to, the costs of arbitration, attorney's fees and punitive damages for causes of action when such damages are available as a matter of law." *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion to Refer to Arbitration and Stay the Litigation ("Pl. Mem."), Ex. B.

Under RESOLVE, Step 1 of the resolution process provides that an employee with a covered claim must contact the Program Administrator and file a Step 1 Claim Form. *See* Answer, Ex. G.  If the employee is not satisfied with the outcome of the review of the Step 1 Claim Form, the employee may file an appeal to Step 2 of RESOLVE within 30 days.  Step 2 of RESOLVE provides for an appeal to an outside mediator or an employee Review Panel.  *See* Answer, Ex. G.  If the employee is again dissatisfied with the outcome of the appeal process in Step 2, the employee, within 30 days, may invoke Step 3 of RESOLVE, which provides for binding arbitration in accordance with the rules of the American Arbitration Association ("AAA"), as amended by the RESOLVE program. *See* Answer, Ex. G.  As further detailed in plaintiffs' exhibits to their motion, employee/claimants need only pay a nominal filing fee to proceed with Step 3 of RESOLVE, and the "remainder of these costs will be paid by Sterling." *See* Pl. Mem., Ex. B.

## II.    As A Result Of Plaintiffs' Initiation Of Litigation Before This Court, RESOLVE Specifically Provides That This Court Should Decide Procedural Questions Arising From Plaintiffs' Time-Barred, <u>Unripe, And Potential Class Or Collective Action Claims</u>

RESOLVE specifically provides that if a party "initiates a lawsuit" -- as plaintiffs have in this matter -- the Court, having already been involved in the lawsuit, is empowered to decide "procedural questions" which might otherwise be decided by an arbitrator:

> Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator.  Likewise, procedural questions, which grow out [of] the dispute and bear on the final disposition, are also matters for the

8

> arbitrator.  However, where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

Pl. Mem., Ex. C. at p. 2 (emphasis added).  Plaintiffs' arguments that some of the plaintiffs are not bound by this language is belied by their pleadings; the RESOLVE program rules attached to plaintiffs' motion demonstrate that all Sterling employees are bound by the terms of RESOLVE and this "procedural questions" language in particular. Pl. Mem., Ex. C.

Based upon the parties' contractual agreement, Sterling filed counterclaims specifically seeking declarations on certain "procedural questions."  Such "procedural questions" include, without limitation, the timeliness of plaintiffs' claims, plaintiffs' ability to arbitrate as a class or collective action under RESOLVE, and the proper limitations period for plaintiffs' Equal Pay Act claims.  This express language evidences the intent of the parties to have the Court, and not an arbitrator, decide these issues.  Once plaintiffs filed this action in this Court, Sterling is contractually entitled to have this Court resolve these procedural issues before any determination about the propriety of arbitration.[2]

### III.    Plaintiffs' Filing Of The Complaint And Amended Complaint, Which They Now Seek To Stay Only After Sterling Filed Its Answer And Counterclaim, Constitutes A Repudiation Of the Agreement to Arbitrate, Waiver Of The Right To Arbitrate, And Calls Into Question Plaintiffs' Motives For The Lawsuit

Plaintiffs' motion — filed 65 days after initiating their lawsuit and 6 days after Sterling filed its answer and counterclaim to plaintiffs' amended complaint — now seeks to refer their claims to arbitration, but only after:

---

[2] With the filing of Sterling's answer and counterclaims, the relief sought by Sterling is properly before this Court for adjudication. The general rule is that where federal jurisdiction exists, a district court is bound to exercise it.  *See, e.g., Tassy v. Brunswick Hosp. Ctr*., 296 F.3d 65, 68 n.2 (2d Cir. 2002);  *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003); *American Savings Bank, FSB v. UBS Fin. Svcs., Inc.*, 347 F.3d 436, 439 (2d Cir. 2003).

(1)     Filing a complaint in which they specifically alleged that "the [RESOLVE]

        agreement is unenforceable."  Complaint, Amended Complaint ¶ 9;

(2)     Agreeing to extend defendant's time to answer, move or otherwise  respond to the

        Complaint;

(3)     Voluntarily filing an amended complaint, before the expiration of the extension to

        answer or otherwise move granted to Sterling, adding a plaintiff and again

        alleging "the [RESOLVE] agreement is unenforceable."  Complaint, Amended

        Complaint ¶ 9;

(4)     Used the press to publicize the filing of the lawsuit in federal court.  *See*

        *http://www.cmht.com/cases_sterling.php*; Maatman Decl., ¶ 8.

(5)     Expressly electing not to proceed in RESOLVE program; Counterclaim, Ex. H;

(6)     Attempting to alter the terms of the RESOLVE Program; and,

(7)     Setting up a website to advertise the filing of the lawsuit in federal court.  *Id.*

Plaintiffs' filing and maintenance of the litigation under these circumstances constitutes

repudiation of the RESOLVE program and has prejudiced Sterling such that plaintiffs have

forfeited their right to arbitration.  Accordingly, although Sterling has retained the right to stay

this matter pending the use of the RESOLVE Program, plaintiffs' motion to refer their claims to

arbitration and stay litigation should be denied.

10

## Legal Argument

I.    **Plaintiffs' Motion For An Order Compelling Arbitration Should Be Denied Because Plaintiffs Are Not "Aggrieved" Parties Under The Federal Arbitration Act, Plaintiffs Repudiated The Agreement To Arbitrate, And Because Plaintiffs' Purported Basis For Filing A Lawsuit In Court Is Questionable**

A.    **Plaintiffs Are Not An "Aggrieved Party" Under The Federal Arbitration Act**

In Section III of their motion, plaintiffs rely heavily on their contention that this Court must enter an order compelling arbitration of plaintiffs' claims because: (1) RESOLVE is an enforceable agreement to arbitrate; (2) and their claims fall within the scope of RESOLVE. Pl. Mem. at p. 4. In making this application, plaintiffs ignore the plain language of the Federal Arbitration Act which provides, in relevant part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added).

Sterling has never failed, neglected, or refused to arbitrate plaintiffs' claims as individuals under the provisions of RESOLVE. To the contrary, Sterling has at all times facilitated and maintained plaintiffs' claims through RESOLVE. Thus, plaintiffs are not "aggrieved" parties under the FAA and are not entitled to an order compelling (or referring to) arbitration, regardless of the general enforceability of RESOLVE or the scope of plaintiffs' claims. 9 U.S.C. § 4; *Downing v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 725 F.2d 192, 195 (2d Cir. 1984) ("Relief under Section 4 ... is available only to persons 'aggrieved by the ... refusal of another to arbitrate under a written agreement for arbitration.'")(citation omitted); *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004) (holding that petitioner could not

compel arbitration where opposing party did not refuse to arbitrate).  Accordingly, there is no

basis to grant plaintiffs' motion under 9 U.S.C. § 4 and their motion should be denied.

### B.    Plaintiffs Pre-Litigation Conduct And Court Filings Repudiated RESOLVE And They Have Forfeited The Right To Arbitrate

At the very end of Section III of their motion, plaintiffs, in their only citation to 9 U.S.C.

§ 3, contend that:  "[a]s there is evidence of a valid, enforceable agreement to arbitrate and

evidence that the claims at issue here fall within the scope of that agreement, the pending action

should be referred to arbitration before the AAA and the instant litigation stayed."  Pl. Br. p. 5-6.

Contrary to these contentions, plaintiffs are not entitled to a stay if they are "in default in

proceeding with such arbitration."  9 U.S.C. § 3.  Plaintiffs' argument simply ignores that, prior

to the filing of this motion, plaintiffs' conduct in connection with their claims repudiated

RESOLVE such that they are not entitled to a stay under 9 U.S.C. § 3.

Prior filing this lawsuit, plaintiffs repeatedly repudiated the RESOLVE agreement.

Plaintiffs wrote to Sterling, expressly repudiating RESOLVE.  Maatman Decl. ¶ 9.  Also, by

filing this lawsuit in contravention of specific RESOLVE provisions, plaintiffs openly repudiated

RESOLVE, which provides that each employee agrees as follows:

> I understand that by signing this [RESOLVE] agreement I am
> waiving my right to obtain any legal or equitable relief (e.g.
> monetary, injunctive, or reinstatement) thought any government
> agency or court, and <u>I am also waiving my right to commence any
> court action</u>.

Pl. Mem., Ex. B (emphasis added).

Moreover, within both the complaint and amended complaint plaintiffs unequivocally

repudiated RESOLVE, pleading twice that it was unenforceable, without caveat.  This conduct

by plaintiffs leaves them unable now by motion, or otherwise, to enforce the agreement they

have repeatedly repudiated -- but allows Sterling to enforce it if Sterling so chooses.  *Kulukundis*

*Shipping Co., S.A. v. Amtorg Trading Corp.*, 126 F.2d 978, 988 (2d Cir. 1942) ("A person who repudiates a contract wrongfully cannot sue upon it himself, but if he is sued upon it, he can be held liable only according to the terms of the contract."); *see also Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n., Local 38*, 351 F.3d 43, 46 (2d Cir. 2003) ("[u]pon repudiation, a contract does not cease to exist, but merely becomes voidable, and the non-repudiating party may enforce the contract or rescind it."); *Leadertex, Inc., v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25-26 (2d Cir. 1995) (refusing to compel arbitration where moving party's actions were inconsistent with an intent to enforce the arbitration agreement and therefore effected a waiver); *Carpet et Cetera, Inc. v. Forde*, No. 06-CV-6993 (BSJ), 2006 WL 2959063, at *3 (S.D.N.Y. Oct. 16, 2006) (noting that agreement becomes enforceable at option of non-repudiating party); *Marra v. Papandreou*, 216 F.3d 1119, 1125 (D.C. Cir. 2000) ("[o]nce a party repudiates a contract, it has no right to demand performance from the non-repudiating party.").

Additionally, by their myriad of litigation activities -- including filing the complaint, granting an extension of time to respond to the complaint, filing an amended complaint prior to the expiration of the extension of time to respond (alleging again that RESOLVE is unenforceable), forcing Sterling to spend time and money to go through the process of answering the amended complaint, publicizing the Court litigation in a press conference and advertising it on their website -- plaintiffs have "unfairly used litigation prior to commencing arbitration in a way that <u>might</u> prejudice the opposing party" and are thus in default of their RESOLVE agreements and have waived their right to arbitrate. *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts.*, 996 F.2d 1478, 1479 (2d Cir. 1993) (emphasis added).

Particularly now that Sterling has already filed its answer and counterclaim affirmatively seeking declaratory relief from this Court, and the looming unusual and undue prejudice to

13

Sterling by the threatened inability to have these matters resolved by the Court -- as they specifically contracted for with plaintiffs -- it is appropriate for this Court to consider plaintiffs' waiver of their right to arbitrate.  *PPG Indus. v. Webster Auto Parts*, 128 F.3d 103, 108 (2d Cir. 1997) (*citing Leadertex*, 67 F.3d at 25)("[w]hen a party has waived its right to arbitration the determination of waiver depends on the particular facts of each case."); *see also Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991); *Chatham Shipping Co. v. Fertex S.S. Corp.*, 352 F.2d 291, 293 (2d Cir. 1965) ("[t]he earliest point at which such preclusion may be found is when the other party files an answer on the merits.").

In assessing plaintiff's prior repudiation of RESOLVE and the waiver of their rights to arbitrate, the Court should also consider the self-serving procedural construct the plaintiffs have erected in front of Sterling and this Court.  Plaintiffs have put themselves in the highly unusual position of seeking to stay their <u>own</u> amended complaint and referring their claims to an arbitration program they have previously repudiated and pleaded is unenforceable.  And, they seek this unusual relief to "stay" their own action only after: (i) filing a complaint alleging RESOLVE was unenforceable (Complaint, ¶ 9); (ii) agreeing to extend Sterling's time to answer, move, or otherwise respond to the Complaint;  (iii) filing an amended complaint, again alleging that "the [RESOLVE] agreement is unenforceable" (Amended Complaint ¶ 9); (iv) conducting a press conference to publicize filing of the complaint in this Court; (v) expressly "electing" not to proceed in RESOLVE program; (vi) attempting to alter the terms of the RESOLVE Program; and, (v) establishing a website to advertise the litigation.

Moreover, plaintiffs' explanation for their conduct is questionable.  Plaintiffs' ostensible reasons for commencing litigation in Court, and not with the AAA under RESOLVE, were supposedly two-fold: that the "terms of the arbitration program impose [i] excessive expenses as

14

a condition of arbitration and [ii] restrict the discretion of the arbitrator to award relief expressly permitted by Title VII." Complaint, Amended Complaint ¶ 9. To explain their belated request to move the case to arbitration, plaintiffs offer only that they purportedly learned, after filing the complaint, that the two grounds on which they based their claim that RESOLVE is unenforceable were incorrect. Specifically, after filing the complaint, plaintiffs' claim that "Sterling recently represented" that RESOLVE provides that Sterling pays for costs associated with arbitration beyond the filing fee. Pl. Mem. at p. 6. Plaintiffs further claim that only after filing the complaint did they learn "in recent correspondence" from Sterling that all remedies available to them in Court were available under RESOLVE. Pl. Mem. at p. 7.

        Plaintiffs' claims are not credible. First, even assuming plaintiffs' contention that they did not know of certain RESOLVE provisions before filing the initial complaint is true, by plaintiffs' own admission they "learned" about these provisions before filing their amended complaint in which they again pleaded that RESOLVE was unenforceable. Even more significantly and further belying plaintiffs' contentions of supposed after-acquired knowledge of RESOLVE's provisions are the very exhibits which plaintiffs attached to their motion. Specifically, the RESOLVE Program Arbitration Rules attached to plaintiffs' memorandum of law in support of this motion -- not correspondence or other "recent" communications from Sterling as plaintiffs claim -- contains the following language which demonstrates that plaintiffs knew, or should have known, that their ostensible grounds for claiming RESOLVE was unenforceable (*i.e.*, excessive costs and limited relief) were without basis:

> I understand that I will be required to pay the first $250 of the costs of commencing an arbitration with the AAA and that the remainder of these costs will be paid by Sterling.
> . . . .
> The Arbitrator shall have the power to award any types of legal or equitable relief that would be available in a Court of competent jurisdiction ….

15

Pl. Mem., Ex. B.

In sum, plaintiffs improvidently brought their lawsuit without proper investigation (*i.e.,* reviewing the two documents which were in their possession and were attached to their own motion), based on a thinly-veiled excuse that they mistakenly thought RESOLVE was unenforceable.  They held a press conference to announce the lawsuit, advertised the litigation on their website, recently amended and expanded their complaint, added a new plaintiff, and forced Sterling to answer and file counterclaims to protect is rights.  Only then did plaintiffs seek to arbitrate their claims under RESOLVE.  Thus, in addition to not being an "aggrieved" party under the FAA, plaintiffs no longer maintain a contractual right to arbitration because they repudiated the contract by filing the litigation.

**II.**   **The Precise Provisions Of RESOLVE Provide For This Court's Determination Of Whether Plaintiffs' Claims Are Timely, Whether Class Or Collective Arbitration Are Permitted By Its Terms, And The Proper Equal Pay Act Limitations Period.**

Sterling and the plaintiffs entered into an agreement which permits the Court to resolve certain procedural questions in the event that one party filed suit in Court.  As evidenced in Exhibit C to their motion, plaintiffs are aware that RESOLVE provides that:

> However, where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

Pl. Mem., Ex. C. (emphasis added).  This incorporation of this specific language for the Court to decide certain procedural questions once litigation is commenced is well-within the parties' ability to contract under the Federal Arbitration Act:

> Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.  Just as they may limit by contract the issues which they will arbitrate [citation omitted] so too may they specify by contract the rules under which that arbitration will be conducted.

16

*Volt Information Sciences*, 489 U.S. at 479 (emphasis added).

In Section IV of their motion, plaintiffs ignore the specific provisions of RESOLVE which undercut their incorrect claim that "questions regarding 'contract interpretation and arbitration procedures' are the exclusive providence of the arbitrator." Pl. Mem. at p. 8 (*citing Green Tree*, 539 U.S. at 447, 451-52). This special language in RESOLVE, which specifically expressly provides for the Court to decide "procedural questions" like timeliness and class or collective arbitration, was specifically designed to address the Supreme Court's holdings in *Green Tree*, 539 U.S. at 447, 451-52, and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) and to return the decision-making authority to the court by contractual agreement.

Before the Supreme Court's ruling in *Green Tree*, courts, and not arbitrators, decided the permissibility of class arbitrations where an arbitration agreement, like RESOLVE, was silent as to class arbitrability. *Champ v. Siegel Trading Co.*, 55 F.3d 269, 277 (7th Cir. 1995) (holding that "'when contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial.'") (citation omitted). The Seventh Circuit in *Champ* further noted that the Federal Arbitration Act authorizes a district court to order arbitration on a class-wide basis only if the arbitration clause contains a provision for class-wide resolution of claims -- even if it results in "'piece-meal' litigation." *Id.* at 275, 277 (*citing Government of U.K. of Gr. Brit. v. Boeing*, 998 F.2d 68, 72 (2d Cir. 1993); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Due to the unique procedural posture of this litigation, Sterling submits that this authority is pertinent to the issues now pending before this Court on the interpretation of RESOLVE.

The Supreme Court in *Green Tree* held that, <u>absent</u> other contractual provisions, whether an arbitration agreement forbids class arbitration is not for the Court to decide but rather for an arbitrator to decide because it is not a "substantive" matter – *i.e.* whether there was an agreement

17

to arbitrate, but rather a "procedural" question of "what *kind of arbitration proceeding* the parties

agreed to." *Green Tree*, 539 U.S. at 452.  Notably, the Supreme Court *Green Tree* likened its

determination that the issue of class arbitration was a "procedural" matter for the arbitrator to

decide to a "procedural" matter presumptively for the arbitrator to decide as described in

*Howsam*, 537 U.S. at 84-85 (finding that, although the issue of "arbitrability" is for the court to

decide, the threshold issue of the "applicability of the NASD time limit rule" was a procedural

matter "which grow[s] out of the dispute and bear[s] on its final disposition . . . [is]

presumptively not for the judge, but for an arbitrator to decide").  In reaching this determination,

the Supreme Court in *Howsam* distinguished between "gateway" disputes which deal with

"'questions[s] of arbitrability'" and are for a court to decide, contrasted with procedural

"questions which grow out of the dispute and bear on its final disposition" – which are for the

arbitrator to decide.  *Id.* at 84 (emphasis added).  However, at the crux of this distinction in

*Howsam* is whether the question to be decided is one that, from the face of the arbitration

agreement, the parties "intended to have a court, rather than an arbitrator" interpret.  *Id.* at 86.

The parties to RESOLVE demonstrated their intent to move the determination of these

"procedural" issues, otherwise the province of arbitrators, to the province of this Court in cases

where one party, like plaintiffs in this case, has initiated a judicial proceeding to enforce their

rights.  *See* Answer, Ex. A.  Under RESOLVE, where the parties have demonstrated their

express intent to have "procedural" matters -- including, without limitation, the "kind" of

arbitration  proceeding which will be conducted -- determined by this Court, then this Court

should decide those issues.  *Howsam*, 537 U.S. at 86.  It is the determination of these issues by

the Court which Sterling seeks both in its motion under Fed R. Civ. P. 16, and in its

counterclaim, and to which is it contractually entitled before deciding whether to exercise its

right to arbitrate plaintiffs' claims.

**<u>Conclusion</u>**

For these reasons, this Court should deny plaintiffs' motion to refer this matter to arbitration and stay the proceedings.

Dated: New York, New York
      May 19, 2008           Respectfully submitted,

                            SEYFARTH SHAW LLP

                            By:   s/ Gerald L. Maatman, Jr.      
                              Gerald L. Maatman, Jr. (GM-3201)
                              gmaatman@seyfarth.com
                              Lorie E. Almon (LA-4937)
                              lalmon@seyfarth.com
                              David Bennet Ross (DR-8613)
                              dross@seyfarth.com
                              Richard I. Scharlat (RS-5127)
                              rscharlat@seyfarth.com
                        620 Eighth Avenue, 32nd Floor
                        New York, New York 10018-1405
                        Telephone: (212) 218-5500
                        Facsimile: (212) 218-5526

                        ZASHIN & RICH CO., L.P.A.
                              Stephen S. Zashin (SZ7589)
                              ssz@zrlaw.com
                        55 Public Square, 4th Floor
                        Cleveland, Ohio 44113
                        Telephone: (216) 696-4441
                        Facsimile: (216) 696-1618

                        *Attorneys for Defendant Sterling Jewelers Inc.*

19

**TAB 1**

Slip Copy                                                                                                          Page 1
Slip Copy, 2006 WL 2959063 (S.D.N.Y.)
**(Cite as: 2006 WL 2959063 (S.D.N.Y.))**

Carpet Et Cetera, Inc. v. Forde
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
CARPET ET CETERA, INC., Plaintiff,
v.
Michael J. FORDE and Paul O'Brien, as Trustees of
New York City District Council of Carpenters Wel-
fare Fund, New York City District Council of Car-
penters Vacation Fund, New York City District
Council of Carpenters Apprenticeship, Journeyman
Retraining Educational and Industry Fund, New
York City District Council of Carpenters Charity
Fund and New York City and Vicinity Carpenters
Labor-Management Corporation, Defendants.
**No. 06 CV 6993(BSJ).**

Oct. 16, 2006.

Steven M. Coren, Eric Su, Coren & Associates,
P.C., New York, NY, for Plaintiff.
Gary Silverman, O'Dwyer and Bernstein, L.L.P.,
New York, NY, for Defendants.

### Opinion and Order

BARBARA S. JONES, United States District
Judge.
**\*1** Plaintiff Carpet et Cetera ("Carpet") filed this
Complaint seeking an order to stay an arbitration
demand made by Defendants Michael J. Forde and
Paul O'Brien, as Trustees of the New York District
Council of Carpenters Pension Fund, New York
City District Council of Carpenters Welfare Fund,
New York City District Council of Carpenters Va-
cation Fund, New York City District Council of
Carpenters Apprenticeship, Journeyman Retraining
Educational and Industry Fund, New York City
District Council of Carpenters Charity Fund, and
New York City and Vicinity Carpenters Labor-
Management Corporation (jointly referred to as the
"Benefit Funds"). Defendants have cross-moved to
compel arbitration pursuant to the Federal Arbitra-

tion Act, 9 U.S.C. § 4. For the reasons set forth be-
low, Plaintiff's motion to stay arbitration is
DENIED and Defendants' motion to compel arbitra-
tion is GRANTED.

### Background

Plaintiff Carpet et Cetera is a retailer and installer
of carpeting and other flooring. On March 18, 2005,
Carpet entered into a collective bargaining agree-
ment, known as the Independent Resilient Floor
Coverers Agreement ("Collective Bargaining
Agreement" or "Agreement"), with the District
Council of New York and Vicinity of the United
Brotherhood of Carpenters and Joiners of America
("Carpenters Union" or "Union"). Article XIV of
the Agreement contains a broad arbitration clause
that provides that "[a]ll complaints, disputes and
differences concerning the application, interpreta-
tion, effect, purpose or breach of any term or condi-
tion of this Agreement, or in the event there shall
exist any claim, demand, dispute or controversy
between the parties hereto," not resolved by negoti-
ation, "shall be submitted to arbitration." (Keller
Decl., Ex. 2, Art. XIV.) In addition, Article XIV,
Section 3 states that "[i]t is the intent of the parties
hereto that all disputes between them, both within
and outside of the Agreement, shall be submitted to
arbitration and that no defense to prevent the hold-
ing of the arbitration shall be permitted."(*Id.*)

Pursuant to Article XI of the Agreement, Plaintiff
was required to make monetary contributions to the
Benefit Funds for each hour worked by its covered
employees. (See Keller Decl., Ex. 2, Art. XI, § A.)
Article XI also provides that upon request employ-
ers are required to produce their books and records
to the Trustees of the Benefit Funds or their desig-
nated auditing representative, to enable the auditor
to "ascertain and independently verify that the
proper contributions ... have been paid."(*Id.* § B.)
Failure to "furnish the proper records when reques-
ted, for the purpose of completing an audit" is a vi-

olation of the Agreement. (*Id.* § A .) Article XI also gives either party the right to seek arbitration "[s]hould any dispute or disagreement arise between the parties hereto, or between the Union and any Employer-member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due ..." (*Id.* § H.) Lastly, Article XI, Section G recognizes the right of the Benefit Funds to commence legal proceedings before a judge or arbitrator to enforce obligations as to the funds. (*Id.* § G.)

**\*2** Article XVII provides that the Agreement "shall continue until July 1, 2006 and shall be renewed automatically for one year intervals thereafter unless notice to the other ... has been provided by either party ... no more than ninety (90) days nor no less than sixty (60) days before the contract expiration that such party seeks to negotiate a new contract or modify or amend this Agreement through negotiations."(*Id.* Art. XVII.)

Plaintiff contends that the Carpenters Union materially breached and substantively repudiated the Agreement in February 2006. The Carpenters Union is not a party to this litigation.FN1 According to Carpet, the Union refused to provide workers for Carpenters Millennium Hilton project and demanded that Carpet provide an undertaking to guarantee payment of fringe benefits-a request which Carpet did not honor. Carpet prepaid the fringe benefits for two men and the Union referred two workers. After two days, the Union refused to refer any more members to Carpet, and ordered its members not to report for work at Carpet's Millennium Hilton project site. Plaintiff asserts that on or about February 23, 2006, it contacted the Carpenters Union to request that it refer workers to Plaintiff for the Millennium Hilton project. According to Plaintiff, in response to its request a Carpenters Union business agent informed Carpet that the Union was rescinding the Agreement and would not refer any members to Plaintiff. By letter dated April 17, 2006 Carpet notified the Carpenters Union of its intent to modify or terminate the Agreement.

FN1. Because the Carpenters Union is not a party to this litigation and neither party has submitted any documentary evidence describing the Union's version of the events that took place in February 2006, the Court's description is drawn solely from Plaintiff's papers.

Some time prior to April 7, 2006, Defendants requested to audit Plaintiff's books and records, and Plaintiff refused. By letter dated April 7, 2006 the Benefit Funds notified Carpet that their refusal to allow the auditing of their books and records audited for the period March 18, 2005 "to date" was in direct violation of the Collective Bargaining Agreement and "[u]nless permission is given within seven (7) days for an audit, either arbitration will be scheduled or a suit will be filed against your company in federal court seeking an order for your company to comply with the audit."(Keller Decl., Ex. 6.) On April 19, 2006 Defendants sent Carpet a Notice of Intention to Arbitrate. Carpet claims that it sought to amicably resolve the issue by offering an audit for the period March 18, 2005 to February 22, 2006, but Defendants' auditors repeatedly cancelled the scheduled audit. Defendants do not respond to this allegation. Both parties agree that the audit never took place, and on August 22, 2006 Defendants served a new Notice to Arbitrate seeking to compel Carpet to permit the Benefit Funds to "conduct an audit of its books and records for the period 3/18/2005 through date to determine whether is in (sic) compliance with its obligation to contribute to the Funds."(Keller Decl, Ex. 1.)

### Discussion

Carpet seeks this stay of arbitration on the grounds that the Carpenters Union materially breached and substantively repudiated the Collective Bargaining Agreement in February 2006, when it refused to refer members to Carpet and ordered its members not to report for work at Carpet's Millenium Hilton Project site. In addition, Plaintiff claims that in response to the Union's conduct, it sent a letter dated

April 17, 2006 to the Carpenters Union terminating the Agreement. Accordingly, Plaintiff argues it cannot be bound to the arbitration provisions in a terminated contract.FN2

> FN2. The Agreement at issue contains two arbitration provisions. Under Article XI, Carpet was required to arbitrate "any dispute or disagreement ... concerning any claim arising from payments to the Fund."(Keller Dec., Ex. 2, Art. XI, § H.) Under the arbitration clause in Article XIV, the Grievance Procedure section, Carpet was required to arbitrate "all complaints, disputes and differences concerning ... breach of any term or condition of this Agreement."(Ex. 2, Art. XIV, § 1.) Therefore, if Carpet believes the Union's conduct constitutes a material breach, the terms of the Agreement require it to arbitrate this claim.

**A. The Carpenters Union's Alleged Repudiation**

**\*3** Plaintiff's main argument is that the Agreement "with the Carpenters Union was no longer in effect when defendants demanded arbitration because the Agreement had been repudiated and rescinded by the Carpenters Union and terminated by the Company."(Pl. Memorandum of Law in Support of its Motion to Stay Arbitration 5.) Plaintiff asserts that the issue before the Court is whether "a collective bargaining agreement ever existed or if one ceased to exist."(*Id.* at 6.) The Court disagrees. As evidenced by Plaintiff's own Exhibit 2, Carpet was a signatory employer to the Collective Bargaining Agreement, which contained two arbitration provisions; therefore, there is no question that there was a valid agreement pursuant to which Carpet was obligated to arbitrate claims of a material breach of the Agreement or issues arising out of its contributions to the Benefit Funds. Thus, the issue in this case is whether the Union's conduct in February 2006 repudiated the Agreement and thereby discharged Carpet's obligation to arbitrate. As an initial matter the Court must decide whether the Car-

penters Union's alleged repudiation is a "question of arbitrability" to be decided by the Court unless the parties have clearly agreed otherwise, or whether it is a "gateway matter presumptively reserved for the arbitrator's resolution."See *Mulvaney Mechanical v. Sheet Metals Internat'l,* 351 F.3d 43,45 (2d Cir.2003).

In *Mulvaney Mechanical v. Sheet Metals International,* 351 F.3d 43 (2d Cir.2003), the Second Circuit held that "the issue of repudiation most closely resembles the defenses to arbitrability such as waiver, estoppel, or delay that the Supreme Court [in *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123, 124 S.Ct. 588 (2002) ] listed as questions properly decided by arbitrators ."*Mulvaney,* 351 F.3d at 46. The *Mulvaney* court acknowledged that "the issue of the union's alleged repudiation ... raises questions about the ongoing validity of the underlying contract and therefore presents a substantive challenge to the authority of the arbitrator."*Id.* at 46.Nevertheless, the court concluded that an alleged repudiation "presumes the one-time existence of a valid contract and goes to the enforcement of that contract. Upon repudiation, a contract does not cease to exist, but merely becomes voidable, and the non-repudiating party may enforce the contract or rescind it."*Id.* (citing 13 Richard A. Lord, *Williston on Contracts*§ 39:37, at 663-68 (4th ed.2000)). Therefore, the court concluded that determining whether the union repudiated the contract was a matter reserved for the arbitrators. *Id.*

In the present case, the court finds that Carpet was a signatory to a collective bargaining agreement containing a broadly worded arbitration provision. The "Grievance Procedure" in Article XIV of the Collective Bargaining Agreement states that

Section 1. All complaints, disputes, and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event here shall exist any claim, demand, dispute or controversy between the parties hereto, ... the parties shall first attempt to

settle and adjust such dispute, claim, demand, or controversy by negotiation.

**\*4** Section 2. Any grievance not resolved shall be submitted to arbitration.

(Keller Dec., Ex. 2, Art. XIV.)

Pursuant to this broadly worded grievance arbitration clause, the issue of whether Carpet repudiated the Agreement is itself subject to the arbitration clause. Furthermore, as stated by the *Mulvaney* court, the Union's alleged repudiation does not void contract and automatically discharge Carpet from its obligation to arbitrate. *Mulvaney,* 351 F.3d at 46. Instead, upon repudiation the contract is still in existence but is voidable by the non-repudiating party. Thus, the issue is "the ongoing enforceability of an agreement that the parties had unquestionably reached."*Id.* Accordingly, the Court concludes that determining whether the Union's conduct amounted to a complete repudiation of the Agreement such that Carpet was excused from its obligations to arbitrate, is a question properly answered by the arbitrators.

Plaintiff attempts to distinguish this case from *Mulvaney* by asserting that the issue here is not simply whether the Union repudiated the Agreement, but whether the contract was rendered void as a result of "repudiation plus other conduct," which revealed the intent of the parties not to rely on the Agreement.FN3 (Pl. Reply Memorandum at 2.) However, the means by which an agreement was repudiated does not transform the issue from one which is properly decided by the arbitrators to one reserved for the courts. According to the *Restatement (Second) of Contracts* a repudiation can be either a statement or a voluntary affirmative act indicating that the party will commit a breach. *Restatement (Second) of Contracts* § 250 (1981) ("A repudiation is (a) a *statement* by the obligor or obligee indicating that the obligor will commit a breach that would itself give the obligee a claim for damages for total breach under § 243, or (b) a *voluntary affirmative act* which renders the obligor unable or apparently

unable to perform without such a breach."(emphasis added)). Therefore, the Court concludes that whether the alleged repudiation is by a simple statement or by words and conduct indicating that the party does not intend to perform the contract, the rule enunciated in *Mulvaney* still applies: The question of whether an alleged contract has been repudiated is to be decided by the arbitrators.

> FN3. The Carpenter Union's alleged repudiation is a disputed issue of fact. Plaintiff claims that the Union repudiated the Agreement in February 2006 by refusing to refer members to Carpet, ordering its members not to report to Carpet's Millennium Hilton project site, and disclaiming its interest in the agreement. (Compl.¶¶ 11-12.) Defendants are trustees of the Benefit Funds and do not represent the Union, yet in their answer they have denied the Union's repudiation of the Agreement and the Union's receipt of the letter dated April 17, 2006. Answer ¶¶ 11, 13. Defendants aver that the removal of workers form the project site was not a repudiation because it was expressly provided for in the Collective Bargaining Agreement. Answer ¶ 12. Pursuant to the Court's holding, this is an issue to be resolved by the arbitrators.

**B. Carpet et Cetera's Alleged Termination**

Plaintiff also argues that the Court should stay the arbitration because Plaintiff terminated the Agreement by its letter dated April 17, 2006, in which Plaintiff gave notice to the Carpenters Union that it was seeking to modify or terminate the Agreement. Plaintiff argues that this letter formally terminated the Agreement pursuant to Section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158. Under Section 8(d) of the National Labor Relations Act, written notice served upon another party to a collective bargaining agreement does not automatically terminate the agreement. *See*29 U.S.C. § 158 (2000).Section 8(d) provides that a collective bar-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                      Page 5
Slip Copy, 2006 WL 2959063 (S.D.N.Y.)
**(Cite as: 2006 WL 2959063 (S.D.N.Y.))**

gaining agreement "continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later."*Id.* Thus, service of the letter upon the Carpenters Union did not automatically terminate the agreement. Moreover, Plaintiff presents no evidence that it fulfilled the other requirements of Section 8(d).[FN4] By shifting the emphasis from the Carpenters Union's conduct to its own termination, Carpet seeks to bring this case within the rule that questions of termination are presumptively reserved for the courts because "[ t] he question of whether [ a party's] conduct terminated the agreement is akin to the question of whether a binding agreement to arbitrate exists at all."*Mulvaney,* 351 F.3d at 45. The Court finds that Carpet's partitioning of the events in this way is a red herring. As stated above, Carpet's April 17, 2006 letter did not automatically terminate the agreement. Whether the Union's alleged repudiation, plus Carpet's letter terminated the agreement is an open question. The alleged repudiation and the April 17, 2006 letter must be viewed as a series of events in response to each other. Accordingly, the Court finds that determining the effect of Plaintiff's letter in response to the Union's conduct is an issue to be decided by the arbitrators.

> FN4.Section 8(d) of the National Labor Relations Act, a party seeking to terminate a collective bargaining agreement, must also offer "to meet and confer with the other party for the purpose of negotiating a new contract," and notify "the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute."29 U.S.C. § 158.

**\*5** Even assuming the Collective Bargaining Agreement was terminated, Carpet can still be obligated to arbitrate claims "arising under" the terminated Agreement. In *Nolde Brothers Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067 (1977), a union

brought suit under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to compel the employer to submit to arbitration. The employer in *Nolde* ceased operations four days after the termination of a collective bargaining agreement, and although the employer settled the employee wage claims, he refused to pay severance called for in the agreement. In addition, the employer refused to submit the dispute to arbitration. The Supreme Court held that "whatever the outcome, the resolution of the claim hinges on the interpretation ultimately given the contract clause providing for severance pay. The dispute, therefore, although arising *after* the expiration of the collective-bargaining contract, clearly arises *under* that contract."*Nolde,* 430 U.S. at 249, 97 S.Ct. at 1071 (emphasis in original). The Court thus found that the employer had to submit to arbitration. In reaching this conclusion, the Court stated that "the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship.... [W]here the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."*Id.* at 255.The collective bargaining agreement at issue in the present case contains a broadly worded arbitration provision that similarly fails to exclude from arbitration disputes arising after the termination of the agreement. Thus, the Court finds that the parties "intended to arbitrate all grievances arising out of the contractual relationship."*Id.*

In *Litton Financial Printing Division v. National Labor Relations Board,* 501 U.S. 190, 111 S.Ct. 2215 (1991), the Supreme Court reaffirmed its holding in *Nolde.*In *Litton* the Court held that layoffs, which took place after the collective bargaining agreement had expired, did not "arise under" and were thus not covered by the collective bargaining agreement. But in reaching this conclusion, the *Litton* Court explained that post-expiration

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2959063 (S.D.N.Y.)
**(Cite as: 2006 WL 2959063 (S.D.N.Y.))**

grievances arise under a collective bargaining agreement, and are therefore arbitrable where: 1. the dispute "involves facts and occurrences that arose before termination;" 2. "where an action taken after expiration infringes a right that accrued or vested under the agreement;" or 3. "where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the agreement."*Litton,* 501 U.S. 205-06, 111 S.Ct. 2225.In the case at bar, the demand for arbitration arises out of Plaintiff's obligation to permit the Benefit Funds to audit Carpet's books and records. The Benefit Funds' request pre-dates the April 17, 2006 letter by which Plaintiff claims it terminated the contract. The Benefit Funds' letter dated April 7, 2006, explained to Carpet that their refusal to turn over their books and records was in violation of the Agreement, and if they failed to permit the audit of their books within seven days the Benefit Funds would either schedule arbitration or would commence suit in federal court seeking an order for Carpet to comply with the audit. (Pl.Ex.5.) Thus, the Court finds that because the dispute involves facts and occurrences that arose before termination, Carpet et Cetera's obligation to arbitrate survives the alleged contract termination.

**\*6** Plaintiff argues that the Benefit Funds' request to audit Plaintiff's books and records post-dates the Union's alleged repudiation of the agreement; therefore, Carpet is not required to honor such a request. Pursuant to the Court's holding above, that is an argument to be presented to the arbitrators. Even if the Union's conduct amounts to a repudiation of the contract, "upon repudiation, a contract does not cease to exist, but merely becomes voidable, and the non-repudiating party may enforce the contract or rescind it."*Mulvaney,* 351 F.3d at 46. Therefore, the Court finds that at the time the Union made its request the Agreement was not yet terminated, thus the Benefit Funds' request "arose under" the Agreement and any dispute concerning such a request is to be resolved through arbitration.

**Conclusion**

For the foregoing reasons, Plaintiffs motion to stay the arbitration is DENIED and Defendants motion to compel Carpet et Cetera to arbitrate, pursuant to the Court's power under the Federal Arbitration Act, 9 U.S.C. § 4, is hereby GRANTED.

The Clerk of Court is hereby directed to CLOSE this case.

**SO ORDERED**

S.D.N.Y.,2006.
Carpet et Cetera, Inc. v. Forde
Slip Copy, 2006 WL 2959063 (S.D.N.Y.)

END OF DOCUMENT