UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

LARYSSA JOCK, et al.,

          Plaintiffs,

    v.

STERLING JEWELERS INC.,

          Defendant.

------------------------------------------------------------- x

    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :

Index No. 1:08 CV 2875 (JSR)

U.S. District Judge Jed S. Rakoff

**<u>DEFENDANT COUNTERCLAIM PLAINTIFF STERLING JEWELERS INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR BIFURCATED SCHEDULING, CONSIDERATION, AND DISPOSITION OF LEGAL ISSUES RELATIVE TO THE WORKPLACE DISPUTE RESOLUTION AGREEMENT BETWEEN EACH PLAINTIFF AND DEFENDANT</u>**

SEYFARTH SHAW, LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
Telephone: (212) 218-5500
Facsimile:  (212) 218-5526
Gerald L. Maatman, Jr. (GM-3201)
gmaatman@seyfarth.com
Lorie E. Almon (LA-4937)
lalmon@seyfarth.com
David Bennet Ross (DR-8613)
dross@seyfarth.com
Richard I. Scharlat (RS-5127)
rscharlat@seyfarth.com

ZASHIN & RICH CO., L.P.A.
55 Public Square, 4th Floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Facsimile:  (216) 696-1618
Stephen S. Zashin (SZ7589)
ssz@zrlaw.com

*Attorneys for Defendant Sterling Jewelers Inc.*

**Table of Contents**

Table of Authorities ......................................................................................................... ii

Preliminary Statement ....................................................................................................... 1

Legal Argument ................................................................................................................. 2

      I.      Plaintiffs Continue To Repudiate The Alternative Dispute Resolution
            Agreement (RESOLVE) ....................................................................................... 2

      II.    This Court Has The Authority To Decide The Procedural Issues Sterling
            Presents In Its Amended Counterclaim ................................................................. 4

            A.      The Federal Arbitration Act Permits This Court To Decide
                     Procedural Issues ..................................................................................... 5

            B.      All Plaintiffs Are Bound By The Terms Of The RESOLVE
                     Program ..................................................................................................... 6

            C.      The Parties' Bilateral Agreement Dictates This Court Should
                     Decide The Procedural Issues Sterling Has Presented, Not The
                     Purported "Logic And Spirit" Of Supreme Court And Second
                     Circuit Decisions ..................................................................................... 8

Conclusion ...................................................................................................................... 10

# Table of Authorities

## Cases

*Bank of New York Trust, N.A. v. Franklin Advisors, Inc.,*
    522 F. Supp. 2d 632, 636 (S.D.N.Y. 2007)........................................................................7

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213, 217 (1985)..................................................................................................5

*Green Tree Fin. Corp. v. Bazzle,*
    539 U.S. 444, 447, 451-52, 457 (2003) .....................................................................1, 5, 9

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79, 83 (2002)...................................................................................................5, 9

*Karas v. Katten Muchin Zavis Rosenman,*
    No. 04 Civ. 9570 (SHS), 2006 WL 20507, at *8 (S.D.N.Y. Jan. 3, 2006)........................7

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,*
    906 F.2d 884, 889 (2d Cir. 1990).....................................................................................7

*United States v. Int'l Bd. of Teamsters,*
    970 F.2d 1132, 1136 (2d Cir. 1992)..................................................................................7

*United Steel Workers of America v. Saint Gobain Ceramics & Plastics, Inc.,*
    505 F.3d 417, 424 (6th Cir. 2007) ............................................................................1, 6, 9

*Volt Information Sciences v. Leland Stanford Jr. Univ.,*
    489 U.S. 468, 479 (1989)..............................................................................................5, 9

**Preliminary Statement**

Defendant and counterclaim plaintiff Sterling Jewelers Inc. ("Sterling") respectfully submits this reply memorandum of law in further support of Sterling's Rule 16 motion for bifurcated scheduling, consideration, and disposition of legal issues relative to the workplace dispute resolution agreement between each plaintiff and Sterling.

The bilateral alternative dispute resolution agreement ("RESOLVE") unambiguously provides this Court, and not an arbitrator, the authority to decide procedural questions when plaintiffs initiated the present judicial proceeding. Sterling and the individual plaintiffs had the absolute right to contract to have a court decide procedural issues after the Supreme Court's ruling in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). *See United Steel Workers of America v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 424 (6th Cir. 2007) ("We do not establish a bright-line rule that timeliness questions must inexorably go to the arbitrator. As with all arbitration matters, the matter is one of contract: Just as two parties need not enter an arbitration contract in the first place, they need not enter an arbitration agreement that submits questions of timeliness to arbitration. Parties who wish to steer timeliness disputes to the courts remain free to do so, and nothing in this opinion is to the contrary.").

In its motion, Sterling seeks to have the Court rule upon the threshold issues which Sterling raises in its amended counterclaim and, in turn, opine on the validity of the parties' bilateral agreement to have a court decide the procedural issues Sterling has set forth in its amended counterclaim. The Court's ruling on these threshold issues will have a major impact on this case. Indeed, whether RESOLVE mandates that arbitrations must be conducted on an individual basis (not as a class or collective action) and the applicable Equal Pay Act limitations period will affect the entire dynamic of the litigation.

As Sterling's amended counterclaim is ripe for adjudication, Sterling respectfully submits that, pursuant to Rule 16, this Court should address and dispose of the legal issues stemming from RESOLVE and impacting the structure and viability of plaintiffs' lawsuit before any other aspects of this litigation.[1]

<u>**Legal Argument**</u>

**I.** **Plaintiffs Continue To Repudiate The Alternative Dispute Resolution Agreement (RESOLVE)**

As set forth in Sterling's memorandum of law in opposition to plaintiffs' motion to refer to arbitration and stay the litigation (Dkt. No. 34), at the time plaintiffs filed their complaint and amended complaint, plaintiffs knew, or should have known, that RESOLVE was enforceable. Nonetheless, plaintiffs contend that they originally believed RESOLVE was unenforceable because they were under the impression that RESOLVE "imposed excessive expenses as a condition to arbitration" and "restrict[s] the discretion of the arbitrator to award relief expressly permitted by Title VII." Complaint ¶ 9, Amended Complaint ¶ 9.

Contrary to plaintiffs' assertions, however, named plaintiff Lisa McConnell's signed RESOLVE agreement (attached to plaintiffs' memorandum of law in support of their motion to refer arbitration) undermines plaintiffs' contentions:

> I understand that I will be required to pay the first $250 of the costs of commencing an arbitration with the AAA and that the remainder of these costs will be paid by Sterling.
>
> .  .  .  .

---

[1]   On May 19, 2008, Sterling filed its response to plaintiffs' motion to refer to arbitration, requesting the Court deny plaintiffs' motion.  (Dkt. No. 34).  By asserting that the Court should decide Sterling's amended counterclaim first, Sterling in no way intends to imply that plaintiffs have the ability to arbitrate their claims.  *See* Def. Opposition, Dkt. No. 34.  Further, plaintiffs' motion incorrectly seeks to refer their litigation to "arbitration."  *See* Pl. Mem., Dkt. No. 26.  The motion should, and can only, seek referral specifically to Sterling's RESOLVE program to which plaintiffs agreed to submit claims.  The distinction is material because, among other reasons, certain plaintiffs have indisputably not met the requirements of RESOLVE and are not entitled to arbitrate their claims at this juncture in any event.

> The Arbitrator shall have the power to award any types of legal or equitable relief that would be available in a Court of competent jurisdiction ....

(Dkt. No. 26, Pl. Mem., Ex. B.)  Likewise, plaintiffs also attached the RESOLVE Program Arbitration Rules to their memorandum of law, which provide that:

> Damages and the award of attorney fees are not restricted but are to be in compliance with applicable law.

(Dkt. No. 26, Pl. Mem., Ex. C.)  Despite possession of facts that clearly demonstrate that RESOLVE was enforceable, plaintiffs nonetheless chose to repudiate RESOLVE and file their complaint and amended complaint.

Sixty-five days after plaintiffs filed their lawsuit (and 6 days after Sterling filed its answer and counterclaim to plaintiffs' amended complaint), plaintiffs forum shopped, "decided" that RESOLVE is enforceable, and filed their motion seeking to refer their claims to arbitration. (Dkt. No. 26).  However, plaintiffs' response to Sterling's present motion to bifurcate clarifies that plaintiffs only intend to be selectively bound by their bilateral agreement to resolve workplace claims in accordance with the RESOLVE program.

Plaintiffs conspicuously ignore that RESOLVE is also unambiguous as to the Court's ability to decide "procedural questions," which might otherwise be decided by an arbitrator, when a party initiates a lawsuit:

> Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator.  Likewise, procedural questions, which grow out of the dispute and bear on the final disposition, are also matters for the arbitrator.  However, where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

Dkt. No. 35, Def. Answer and Amended Counterclaim, Exs. A and S; Dkt. No. 26, Pl. Mem., Ex. C.  (emphasis added).  Asking this Court to refer this matter to "arbitration," plaintiffs seek to

repudiate certain terms of RESOLVE which do not suit their goals.  Plaintiffs cannot be allowed to have their contractual cake and eat it too.

The parties entered into a bilateral agreement to be bound by *all* of the RESOLVE program terms.  Plaintiffs triggered the condition precedent – initiating this lawsuit – which enabled Sterling to assert its contractual right to assert its amended counterclaim, and have those procedural issues decided by this Court and not an arbitrator.  This Court should prohibit plaintiffs from evading their contractual agreement by now insisting, contrary to the clear terms of RESOLVE, that an arbitrator should determine all procedural issues.

## II.     This Court Has The Authority To Decide The Procedural Issues Sterling Presents In Its Amended Counterclaim

As recognized in Sterling's opposition to plaintiffs' motion to refer to arbitration (Dkt. No. 34), the Supreme Court has determined that the Federal Arbitration Act ("FAA") provides that parties may contract the rules by which arbitration will be conducted:

> Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.  Just as they may limit by contract the issues which they will arbitrate [citation omitted] so too may they specify by contract the rules under which that arbitration will be conducted.

*Volt Information Sciences v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (emphasis added).

In RESOLVE, Sterling and the individual plaintiffs agreed to the rules under which arbitrations would be conducted, specifically:

> … where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim).

Dkt. No. 35, Def. Answer and Amended Counterclaim, Exs. A and S.  (emphasis added).  It is undisputed that plaintiffs "initiated a judicial proceeding" by filing this lawsuit, and, as such, this

Court now has the authority to decide the procedural issues Sterling has presented in its amended counterclaim.  Plaintiffs' arguments to the contrary fail as a matter of law.

A.      **The Federal Arbitration Act Permits This Court To Decide Procedural Issues**

Plaintiffs assert the Court should ignore the parties' bilateral agreement because:  (1) the FAA strongly favors arbitration; and (2) normally, procedural questions which grow out of a dispute are for an arbitrator to decide, not a court.  (Pl. Mem., p. 6, *citing Dean Witter Reynolds. v. Byrd*, 470 U.S. 213, 217 (1985) and *Green Tree Fin. Corp.,* 539 U.S. at 457.  Sterling agrees with the *general* propositions plaintiffs assert.  Plaintiffs, however, ignore the FAA permits parties to "specify by contract the rules under which that arbitration will be conducted," and ignore their bilateral RESOLVE agreement with Sterling.  *Volt Information Sciences*, 489 U.S. at 479.

The RESOLVE language at issue was specifically designed to address the Supreme Court's holdings in *Green Tree*, 539 U.S. at 447, 451-52, and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  Sterling and the individual plaintiffs agreed that, should a party initiate a lawsuit, the decision-making authority regarding procedural issues would revert to  a court where, as here, a procedural controversy has arisen among the parties.  Indeed, the Supreme Court in *Green Tree* recognized the parties' ability to contract to such terms when it held that, *absent* other contractual provisions, whether an arbitration agreement (which is silent to class arbitrability) forbids or allows class arbitration is for an arbitrator to decide.  *Green Tree*, 539 U.S. at 452.  *See also Howsam*, 537 U.S. at 86 (the crux of the substantive versus procedural distinction is whether the question to be decided is one that, *from the face of the arbitration agreement*, the parties "intended to have a court, rather than an arbitrator" interpret) (emphasis added); *Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d at 424 ("As with all arbitration matters, the matter is one of contract:  Just as two parties need not enter an arbitration contract in

the first place, they need not enter an arbitration agreement that submits questions of timeliness to arbitration. Parties who wish to steer timeliness disputes to the courts remain free to do so, and nothing in this opinion is to the contrary.").

The RESOLVE language at issue establishes the parties' intent to have a Court decide procedural issues when one of the parties has initiated a judicial proceeding. *See* Dkt. No. 35, Def. Answer and Amended Counterclaim, Exs. A and S. As such, plaintiffs should be bound by their contractual RESOLVE agreement to have this Court rule on the declaratory relief which Sterling seeks in its amended counterclaim.

## B. <u>All Plaintiffs Are Bound By The Terms Of The RESOLVE Program</u>

Plaintiffs attempt to circumvent RESOLVE by asserting that not all of the named plaintiffs signed RESOLVE agreements containing the language at issue. (Pl. Mem., p. 9). First, it is undisputed that named plaintiff Marie House's RESOLVE agreement empowers the Court to decide the procedural issues Sterling has presented. Dkt. No. 35, Def. Answer and Amended Counterclaim, Ex. A.[2] More importantly, however, the RESOLVE Program Arbitration Rules also empower the Court to decide the procedural issues presented. Dkt. No. 35, Def. Answer and Amended Counterclaim, Ex. S. Indeed, plaintiffs' own pleadings belie their assertion that some of them did not contract to have this Court decide procedural issues as plaintiffs attach the RESOLVE Program Arbitration Rules containing such language to their memorandum of law to refer to arbitration. Dkt. No. 26, Ex. C. Again, plaintiffs should not be allowed to rely upon their RESOLVE agreement when it suits their goals, only to repudiate selected terms they wish to avoid.

---

[2] Named plaintiffs Gloria Pagan (f/k/a Huff) and Lisa Follett have the identical language in their RESOLVE agreements as House, that is: "where a party already has initiated a judicial proceeding, a court may decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (e.g., one (1) year for filing a claim)."

Further, almost as an afterthought, plaintiffs assert the Court should ignore the parties'

contract because the parties stated "a court may decide procedural questions."  Pl. Mem., p. 11 -

12.  Plaintiffs' assertion is unpersuasive as the contractual language dictates the parties' clear

intent is to have a court decide procedural issues if a party initiates a judicial proceeding (i.e. "a

court [and not an arbitrator] may decide procedural questions …").  Indeed, if the parties did not

intend for a court to decide procedural issues upon the initiation of a judicial proceeding, the

entire contractual language would be superfluous.  A court cannot assume contractual language

is superfluous, and must give meaning to all of the contractual terms and the parties' intent.

*United States v. Int'l Bhd. of Teamsters,* 970 F.2d 1132, 1136 (2d Cir. 1992) (noting that courts

"must avoid an interpretation of an agreement that renders one of its provisions superfluous");

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889-890 (2d Cir. 1990) ("In a

contract action, the court's general objective should be to give effect to the intentions of the

parties entering into the agreements….Where the parties have expressly agreed that the

availability of a cure period shall be temporally limited, the court does not give effect to the

parties' intention by removing the time limitation.") (citations omitted); *Bank of New York Trust,

N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 635 (S.D.N.Y. 2007) ("Where a written

agreement clearly and unambiguously sets forth the parties' intent, a court called upon to

interpret the contract must give effect to the intent as indicated by the language used."); *Karas v.

Katten Muchin Zavis Rosenman*, No. 04 Civ. 9570 (SHS), 2006 WL 20507, at *8 (S.D.N.Y. Jan.

3, 2006) (same).

Plaintiffs also assert that the Court should ignore their RESOLVE agreement because

discovery may be necessary to determine issues related to the parties' agreement.  Pl. Mem., p.

12.  Sterling disagrees that discovery is necessary for the Court to make a determination as to its

amended counterclaim.  And, Sterling intends to enforce its contractual right by filing an

appropriate motion pursuant to Rule 12(c) or 56 at the earliest opportunity to obtain the relief

sought in the amended counterclaim on the merits.  Moreover, plaintiffs' red herring argument

fails because even if discovery is warranted, the parties' bilateral agreement cannot be ignored

simply because some discovery may be ordered.  The parties' RESOLVE agreement in no way

vitiates Sterling's contractual right to have this Court decide the claims set forth in the amended

counterclaim because the Court may determine that the parties may need to engage in discovery

concerning the scope of the arbitration provision.

> **C.    The Parties' Bilateral Agreement Dictates This Court Should Decide The
> Procedural Issues Sterling Has Presented, Not The Purported "Logic And
> Spirit" Of Supreme Court And Second Circuit Decisions**

Plaintiffs further argue that this Court should ignore the parties' bilateral agreement

because:  (1) an arbitrator will be "well equipped" to decide whether plaintiffs are precluded

from bringing or participating in any action under RESOLVE on behalf of a putative class or

collective, pursuant to the terms of RESOLVE; and (2) "logic and spirit" of Supreme Court and

Second Circuit decisions dictate that an arbitrator should decide the procedural issues Sterling

presented in its amended counterclaim.  Pl. Mem., p. 12 – 13.  Again, plaintiffs' arguments miss

the mark.

Whether an arbitrator utilizing the American Arbitration Association rules (as amended

by RESOLVE) is "well equipped" to decide Sterling's counterclaim is irrelevant to the parties'

bilateral agreement.  The parties did not agree that a court is empowered to decide the procedural

issues Sterling has raised only if the arbitrator is not "well equipped" to decide the issue.  The

only condition precedent the parties agreed upon is whether a party "initiated a judicial

proceeding," which has been satisfied by plaintiffs filing their action in this Court.

The "logic and spirit" of Supreme Court and Second Circuit decisions are only likewise

relevant in so far as the decisions pertain to the parties' bilateral agreement.  *None* of the

decisions plaintiffs rely upon prohibit parties from agreeing that a court is empowered to decide procedural issues in the event a party initiates a judicial proceeding. To the contrary, Supreme Court precedent dictates that parties may "specify by contract the rules under which that arbitration will be conducted." *Volt Information Sciences*, 489 U.S. at 479. The Supreme Court in the *Green Tree* decision itself only held that *absent* other contractual provisions, class arbitration is for an arbitrator, not a court, to decide. *Green Tree*, 539 U.S. at 452. *See also Howsam*, 537 U.S. at 85 ("*In the absence of any statement to the contrary in the arbitration agreement*, it is reasonable to infer that the parties intended [an arbitrator decide procedural issues])" (emphasis added); *Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d at 424 (applying *Green Tree* and *Howsam* contractual edict to procedural issue). Here, in accordance with *Green Tree*, *Howsam* and *Saint Gobain*, the parties entered into a bilateral agreement empowering the Court to determine the procedural issues Sterling has presented in its amended counterclaim. Sterling's motion should be granted.

## Conclusion

For these reasons, this Court should grant Sterling's motion for bifurcated scheduling, consideration, and disposition of legal issues relative to the workplace dispute resolution agreement between each plaintiff and defendant.

Dated: New York, New York
      May 23, 2008               Respectfully submitted,

SEYFARTH SHAW LLP

By:  s/ Gerald L. Maatman, Jr.
    Gerald L. Maatman, Jr. (GM-3201)
    gmaatman@seyfarth.com
    Lorie E. Almon (LA-4937)
    lalmon@seyfarth.com
    David Bennet Ross (DR-8613)
    dross@seyfarth.com
    Richard I. Scharlat (RS-5127)
    rscharlat@seyfarth.com
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

ZASHIN & RICH CO., L.P.A.
    Stephen S. Zashin (SZ7589)
    ssz@zrlaw.com
55 Public Square, 4th Floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Facsimile: (216) 696-1618

*Attorneys for Defendant Sterling Jewelers Inc.*

**TAB 1**

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.), 97 A.F.T.R.2d 2006-443
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.))**

Karas v. Katten Muchin Zavis Rosenman, a partnership
S.D.N.Y.,2006.

United States District Court,S.D. New York.
Aaron B. KARAS, Plaintiff,
v.
KATTEN MUCHIN ZAVIS ROSENMAN, A
PARTNERSHIP, Defendant.
**No. 04 Civ. 9570(SHS).**

Jan. 3, 2006.

*OPINION AND ORDER*

STEIN, J.

**\*1** This action involves a dispute over the interpretation and validity of an agreement between a patent lawyer and his former employer. Aaron B. Karas, a patent lawyer formerly working as counsel to the law firm Rosenman & Colin pursuant to terms set forth in a written agreement (the "Agreement"), brings this action *prose* against the law firm of Katten Muchin Zavis Rosenman ("Katten Muchin"), which is the successor in interest to Rosenman & Colin. Karas claims that defendant has breached the terms of the Agreement by withholding federal and state income taxes from payments Karas insists are not wages, and Karas challenges the validity of a non-compete clause which conditions his receipt of those same payments upon his refraining from the practice of law during the term of the Agreement.

The law firm moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the second amended complaint for lack of subject matter jurisdiction and failure to state a claim. Karas moves for summary judgment in his favor. Because two of Karas's claims-although styled as tortious interference and breach of contract-in fact seek to restrain the collection of taxes and to hold his former employer liable for withholding taxes, they are dismissed and Karas's mo-

tion for summary judgment on those claims is denied. Karas's third claim for restraint of trade challenging the validity of the non-compete clause in the Agreement survives defendant's motion to dismiss, but because there are outstanding issues of fact, Karas's motion for summary judgment on that claim is denied.

I. Factual Background

A. Parties

Aaron B. Karas, now a domiciliary of Florida, was formerly a partner in Helfgott & Karas, P.C., an intellectual property law firm located in New York City. (Second Am. Compl. ¶¶ 2, 7). Samson Helfgott was Karas's partner in that firm. (*Id.*).

Defendant Katten Muchin is a partnership with offices in eight cities in the U.S., including New York and Chicago. (*Id.* ¶ 3). None of the partners of Katten Muchin are now, or were residents of Florida at the time the complaint was filed. (*See* Aff. of Mark P. Broutman, dated June 23, 2005 ¶ 3). Karas alleges that Katten Muchin, formed by the merger of Katten Muchin Zavis of Chicago and Rosenman & Colin of New York, is the successor in interest to Rosenman & Colin. (*Id.* ¶ 4). Plaintiff invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

B. The Agreement

In the spring of 2001, while Helfgott & Karas was engaged in negotiations with several law firms in anticipation of possible merger, it was approached by a representative of Rosenman & Colin. (*Id.*). Karas alleges that Rosenman & Colin was seeking an intellectual property firm with a strong patent law section. (*Id.*). Negotiations between Helfgott & Karas and Rosenman & Colin began, and after four months of negotiation, on July 20, 2001 Karas and Helfgott entered into a written agreement with

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.), 97 A.F.T.R.2d 2006-443
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.))**

Rosenman & Colin pursuant to which Karas and Helfgott joined Rosenman & Colin as counsel and partner, respectively. (*Id.*). The Agreement set forth terms for their salaries and obligations and also provided that Rosenman & Colin would employ most of Helfgott & Karas, P.C.'s professional and clerical staff. (*Id.* ¶ 9).

**\*2** "To ensure that the [Helfgott & Karas] client base was not lost or depleted," the Agreement provided that Karas would be engaged for a three year period as counsel to Rosenman & Colin and paid an annual salary of $600,000 " 'to use his best efforts to maintain the existing practice of Helfgott & Karas at Rosenman & Colin" ' (*Id.* ¶ 11). In the second and third years covered by the Agreement, Karas's time devoted to the practice and his salary were to be reduced incrementally. (*Id.*). Karas was also to receive three fixed annual payments of $200,000 per year for an additional three years provided he did not work for another law firm during the period covered by the Agreement. (*Id.* ¶ 12). During those three years, Karas was not required to devote any time to Rosenman & Colin. (*Id.*).

It is the character of the three annual payments of $200,000 each that is at the crux of the dispute between the parties. Karas alleges that the three annual payments constitute "installment payments for the goodwill of the Helfgott & Karas practice which included but was not limited to client lists and client relationships brought to Rosenman & Colin by [Karas] and Helfgott."(*Id.*). Katten Muchin, however, asserts that the payments were intended as consideration for Karas's refraining from competition with Rosenman & Colin, and as such were taxable as wages and subject to withholding pursuant to federal and state tax laws. (*Id.* ¶ 13, 15).

Karas advised Katten Muchin on September 1, 2004 that his three-year employment period had terminated and requested that Katten Muchin cease all withholdings from future payments. (*Id.* ¶¶ 15-16). Katten Muchin responded that its accountants had determined that the payments were taxable and that

it was required to withhold taxes from those payments pursuant to federal and state law. (*Id.*). Katten Muchin has continued to withhold federal and state taxes from each of the payments made pursuant to the Agreement since August 31, 2004. (*Id.* ¶¶ 16, 17).

In his second amended complaint, Karas asserts three causes of action: (1) tortious interference with the contract; (2) breach of contract; and (3) restraint of trade. The tortious interference and breach of contract claims are premised on Karas's allegation that Katten Muchin has misinterpreted the terms of the Agreement as it relates to the purpose of the three annual $200,000 payments and that by failing to pay him the full amount-without a deduction for taxes-Katten Muchin has both breached the Agreement and interfered with the Agreement between Karas and Rosenman & Colin. In his third claim, Karas alleges that the Agreement's non-compete provision is void in violation of public policy as reflected in Disciplinary Rule 2-108(A) of the New York Code of Professional Responsibility, which prohibits lawyers from entering certain agreements that restrict the right of a lawyer to practice law.

As noted above, Katten Muchin moves to dismiss the second amended complaint in its entirety and Karas cross-moves for summary judgment. The Court turns first to Katten Muchin's motion to dismiss the claims of tortious interference and breach of contract, and then considers the cross motions on the restraint of trade claim.

## II. Breach of Contract and Tortious Interference

**\*3** Katten Muchin contends that insofar as Karas's claims for breach of contract and tortious interference seek a declaration or an injunction requiring Katten Muchin to refrain from future tax withholdings, the Anti-Injunction Act, 26 U.S.C. § 7421(a), the Declaratory Judgment Act, 28 U.S.C. § 2201, and the state Tax Anti-Injunction Act, 28 U.S.C. § 1341, divest this Court of jurisdiction over those claims. Katten Muchin further contends that be-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 3
Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.), 97 A.F.T.R.2d 2006-443
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.))**

cause it made the challenged withholdings pursuant to its obligations under federal and state tax laws, the Internal Revenue Code and New York's Tax Law shield it from liability on Karas's claims challenging those withholdings. *See* 26 U.S.C. § 3403; McKinney's Tax L. § 675. For the reasons set forth below, the Court agrees.

### A. Legal Standards on a Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The party invoking the court's jurisdiction bears the burden of establishing that it exists. *See Shenandoah v. Halbritter,* 366 F.3d 89, 91 (2d Cir.2004). In resolving a motion to dismiss for lack of subject matter jurisdiction the court may refer to evidence outside the pleadings. *See Makarova,* 201 F.3d at 113.

A different standard applies to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Dismissal will be granted pursuant to Rule 12(b)(6) only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Consistent with the pleading standards of Fed.R.Civ.P. 8, "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief," ' *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting Fed.R.Civ.P. 8(a)(2)). The complaint must " 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." ' *Id.* (quoting *Conley,* 355 U.S. at 47). In reviewing the motion, the court " 'must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." ' *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001)

(quoting *Conley,* 355 U.S. at 45-46).

### B. The Relevant Statutes

The Anti-Injunction Act, 26 U.S.C. § 7421, provides in relevant part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Section 7421 lists a number of exceptions to the bar it imposes, but none is applicable here. "The manifest purpose of [section] 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packaging & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); *see also Bob Jones Univ. v. Simon,* 416 U.S. 725, 736-37, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). While the Anti-Injunction Act expressly bars only the issuance of injunctive relief, the Declaratory Judgment Act, 28 U.S.C. § 2201, bars federal courts from issuing any declaratory relief "with respect to federal taxes." 28 U.S.C. § 2201. "There is no dispute ... that the federal tax exemption to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act." *Bob Jones Univ.,* 416 U.S. at 732, n. 7.

**\*4** In light of the Anti-Injunction Act's clear purpose of limiting judicial interference in the collection of taxes, the U.S. Supreme Court has carved out only a single narrow exception to its bar. *See Enochs,* 370 U.S. at 7; *see also United States v. American Friends Service Committee,* 419 U.S. 7, 10, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974). To fit within the exception, a party seeking to enjoin the collection of federal taxes must demonstrate that: (1) "under the most liberal view of the law and the facts, the United States cannot establish its claim"; (2) that collection of the taxes would cause irreparable harm and (3) that there is no alternative remedy available. *See Enochs,* 370 U.S. at 7. Otherwise, the only route available to challenge an allegedly

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

wrongful withholding is to commence a suit for a tax refund. *See id.*

An employer's act of withholding taxes from its employee's wages pursuant to 26 U.S.C. § 3402 is a method of "collection of taxes" within the meaning of section 7421(a); thus, an action that seeks to enjoin an employer from collecting federal taxes is barred by section 7421(a). *See American Friends,* 419 U.S. at 10. Accordingly, courts have consistently rejected plaintiffs' attempts to skirt the application of section 7421(a) by dressing up a challenge to tax withholdings as one for conversion or breach of contract against a former employer. *See Loglia v. United States,* No. 94 Civ. 7316, 1995 WL 408265, at *4-5 (S.D.N.Y. July 11, 1995); *Kupcho v. Steele,* 651 F.Supp. 797, 800 (S.D.N.Y.1986) (granting summary judgment); *see also Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766, 771-72 (9th Cir.1986); *Chandler v. Perini Power Constructors, Inc.,* 520 F.Supp. 1152, 1155 (D.N.H.1981).

In addition to the jurisdictional bar against injunctive and declaratory relief relating to the collection of federal taxes, the Internal Revenue Code ("IRC") expressly immunizes employers from liability for withholding federal taxes from wages. *See* 26 U.S.C. § 3403. Section 3403 of the IRC provides: "[t]he employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment." 26 U.S.C. § 3403; *see also* 26 C.F.R. § 31.3403-1. Pursuant to section 3403, courts denying injunctive relief have also dismissed claims for damages arising out of an alleged breach of contract that is in fact a claim seeking damages against employers for past withholdings of federal income taxes. *See Maxfield v. U.S. Postal Serv.,* 752 F.2d 433 (9th Cir.1984); *Edgar v. Inland Steel Co.,* 744 F.2d 1276, 1278 (7th Cir.1984).

Just as the Anti-Injunction Act bars courts from enjoining the collection of federal taxes, the Tax Anti-Injunction Act, 28 U.S.C. § 1341, bars federal courts from interfering with the collection of state

taxes. *Hibbs v. Winn,* 542 U.S. 88, 104, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004); *see also Fair Assessment in Real Estate Assoc., Inc. v. McNary,* 454 U.S. 100, 103, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (the Tax Anti-Injunction Act and prior Supreme Court jurisprudence "reflect the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation") (citation omitted). The Tax Anti-Injunction Act provides, in its entirety, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Tax Anti-Injunction Act is also jurisdictional, *see Hibbs,* 542 U .S. at 107, and the Supreme Court has clarified that it prohibits declaratory judgments as well as injunctions. *See California v.. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). Similarly, state law protects employers from suits by employees seeking to hold them liable for sums collected and turned over to the state. *See* New York Tax Law § 675. The New York Tax Law specifically provides that "[n]o employee shall have any right of action against his employer in respect to any moneys deducted and withheld from his wages and paid over to the tax commission in compliance or in intended compliance with this article ." *Id.*

## C. Application

**\*5** Katten Muchin asserts that these federal and state statutes require dismissal of Karas's claims for tortious interference and breach of contract because the Court lacks jurisdiction to issue any order restraining the future collection of tax, *see* 26 U.S.C. 7421(a); 28 U.S.C. § 1341, it cannot enter any declaratory judgment "with respect to federal taxes," *see* 28 U.S.C. § 2201, and federal and state law protect Katten Muchin from liability for the withholdings it has already made. *See* 26 U.S.C. § 3403; New York Tax Law § 675. Karas raises two points in opposition.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.), 97 A.F.T.R.2d 2006-443
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.))**

First, Karas insists that if the Agreement is construed as one granting him three annual payments as consideration for the goodwill of his firm, as he alleges it must be, then the statutes do not apply because Katten Muchin is not his employer and the annual payments do not constitute wages subject to withholding. Although this claim has some facial appeal, were the Court to accept Karas's argument, it would eviscerate the effect of the relevant anti-injunction statutes; as the Supreme Court explained in *Enochs,* "to permit even the maintenance of a suit in which an injunction could issue only after the taxpayer's nonliability had been conclusively established might 'in every practical sense operate to suspend collection of the taxes until the litigation is ended." *370 U.S. at 8.* A plaintiff-who has not first filed a proper suit for a refund-may invoke the jurisdiction of a federal court to restrain the collection of federal taxes only upon a demonstration that "under the most liberal view of the law and the facts," the taxes are not collectible. *Id.* at 7.

Karas has not met this burden. The contested portion of the Agreement does not unambiguously lend itself to the interpretation Karas proposes; thus Karas cannot meet the burden of demonstrating that the taxes are not collectible. Karas has not even attempted to demonstrate that there is no alternative remedy available to challenge Katten Muchin's withholding of federal taxes, or that there is no plain, speedy and efficient remedy to challenge its withholding of state taxes. Moreover, Karas specifically alleges that Katten Muchin made these withholdings in order to comply with its obligations under the federal and state tax laws. (*See* Second Am. Compl. ¶ 16).

Second, Karas contends that even if resolution of the claims now asserted would result in tax consequences, his claims are not barred because he does not directly seek to enjoin the collection of taxes, relying on *Stern & Co. v. State Loan and Finance Corp.,* 205 F.Supp. 702, 706 (D.C.Del.1962) and *Henshel v. Guilden,* 300 F.Supp. 470, 472 (S.D.N.Y.1969). Those cases,

however, are readily distinguishable from the facts here. *Henshel* involved a claim by one party that its assets were improperly levied to pay taxes that should have been paid out of the assets of another. *See Henshel,* 300 F.Supp. at 472; *see also Bullock v. Latham,* 306 F.2d 45, 47 (2d Cir.1962). Analogous claims are now permitted by a statutory exception to the general jurisdictional bar, *see* 26 U.S.C. §§ 7426(a)(1), (b) and (f), but that is not the type of claim raised by Karas.

**\*6** Although *Stern* involved facts arguably more similar to those here, it differs in one critical respect. In *Stern,* the plaintiff claimed a breach of a retail business sale contract, alleging that after purchasing the plaintiff's business the defendant breached the sale contract by claiming in its federal tax return that half of the purchase price was in consideration for a covenant not to compete. *See* 205 F.Supp. at 703-04. That claim resulted in an unfavorable tax determination for plaintiff, and plaintiff alleged that it was made in direct breach of specific terms in their contractual agreement. *Id.* The defendant interposed the Declaratory Judgment Act as a bar to the plaintiff's claim but the court concluded that even though it could not issue an interpretation that would be binding on the Tax Court's determination of the tax liabilities relating to the disputed funds, it could still resolve the plaintiff's contract claim. *See id.* at 706-07. *Stern* is similar to this case insofar it involved a challenge to one party's interpretation of contractual terms that led to tax consequences for the other. However, a critical distinction lies in the fact that the defendant in *Stern* was not itself withholding taxes pursuant to obligations imposed by the Internal Revenue Code; thus, the *Stern* court had no occasion to consider the implication of 26 U.S.C. § 7421 or 26 U.S.C. § 3403 on that plaintiff's claims.

The reality is that, no matter how hard or how often plaintiff attempts to repackage his claims against Katten Muchin, this action is one seeking to restrain the collection of taxes and thus it cannot succeed. Karas alleges a breach of the Agreement that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 6
Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.), 97 A.F.T.R.2d 2006-443
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.))**

amounts to no more nor less than Katten Muchin's withholding of taxes. He seeks a declaration that Katten Muchin has breached the contract and an order directing Katten Muchin to make payments pursuant to the terms of the Agreement. Because the only alleged breach is Katten Muchin's withholding of federal and state taxes, the relief requested would necessarily constitute a restraint on further withholding and would permit Karas to hold Katten Muchin liable for past withholdings. Because the declaratory relief and the order Karas seeks ineluctably constitute the very type of relief barred by the tax anti-injunction statutes and the Declaratory Judgment Act, this Court lacks jurisdiction to resolve them. See *American Friends,* 419 U.S. at 10-11; *Grace Brethren Church,* 457 U.S. at 408-411. Because Katten Muchin has withheld taxes pursuant to its obligations under the federal and state law, insofar as Karas seeks damages on his breach of contract and tortious interference claims, those cannot proceed against Katten Muchin.

Moreover, even if it were not barred by the relevant state and federal statutes, Karas's claim for tortious interference could not survive. Karas has alleged that Katten Muchin is the successor in interest to Rosenman & Colin. (Second Am. Compl. at ¶ 14). Thus, Katten Muchin is not a stranger to the contract and "cannot be liable in tort for inducing the breach of its own rights and obligations under the Agreement." *G. Golden Assocs. v. Arnold Foods Co.,* 870 F.Supp. 472, 480 (E.D.N.Y.1994); *see also Finley v. Giacobbe,* 79 F.3d 1285, 1294-95 (2d Cir.1996).

### III. Restraint of Trade

**\*7** Karas asserts that the clause in the Agreement that reads: "Karas will be entitled to the $200,000 per year payment during years 4 through 6 so long as he does not and has not worked for another law firm other than Rosenman & Colin during such six-year period," (*see* Second Am. Compl. ¶ 34; Agreement, Ex. 1 to Declaration of Aaron B. Karas, dated

January 5, 2005 ("Karas Decl.")), constitutes "an illegal restraint of trade" in violation of Disciplinary Rule 2-108(A) of the New York Code of Professional Responsibility. Karas also claims that the merger of Katten Muchin Zavis and Rosenman & Colin "unlawfully broadened the scope" of that non-compete provision. (*Id.* ¶¶ 34-5).

Karas seeks a declaration voiding the provision as unduly broad and in violation of the public policy reflected in Disciplinary Rule 2-108(A). Katten Muchin has moved to dismiss this claim contending that it is both legally and factually unintelligible, and Karas has cross-moved for summary judgment in his favor.

Although Katten Muchin characterizes Karas's claim as legally unintelligible, it has answered the claim on its merits, contending that the alleged non-compete provision is valid so long as the payments are construed as retirement payments. Because the complaint " 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," ' *Swierkiewicz,* 534 U.S. at 512, (quoting *Conley,* 355 U.S. at 47), and because Katten Muchin has not demonstrated that there are no set of facts in support of this claim that would entitle Karas to relief, the motion to dismiss Karas's third claim-for restraint of trade-must be denied. *See Conley,* 355 U.S. at 45-46.

Karas's motion for summary judgment may be granted only if the evidence shows that there is no genuine issue of material fact and that Karas is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995). In determining whether a genuine issue of material fact exists, the court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004).

Disciplinary Rule 2-108(A) prohibits a lawyer from

Not Reported in F.Supp.2d                                                                                                        Page 7
Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.), 97 A.F.T.R.2d 2006-443
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.))**

"be[ing] a party to or participat[ing] in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after termination of a relationship created by the agreement, except as a condition to payment of retirement benefits."Code Prof. Resp. DR 2-108. In *Cohen v. Lord, Day & Lord,* 75 N.Y.2d 95, 96, 551 N.Y.S.2d 157, 550 N.E.2d 410 (1989), the New York Court of Appeals applied Rule 2-108(A), holding unenforceable a law firm partnership agreement that conditioned payment of earned but uncollected revenues upon a withdrawing partner's agreement to refrain from practicing law in competition with the firm. *Seeid.*The New York Court of Appeals expanded on its interpretation of Rule 2-108(A) in its subsequent decision in *Denburg v. Parker Chapin Flattau & Klimpl,* 82 N.Y.2d 375, 380, 604 N.Y.S.2d 900, 624 N.E.2d 995 (1993), explaining that restrictions on the practice of law that "include 'financial disincentives' against competition as well as outright prohibitions, are objectionable primarily because they interfere with the client's choice of counsel."*Seeid.*Even a clause of limited duration-if it substantially impacts the ability of the departing partner to practice law in the period in which it operates-may be void. *Id .* at 382.Where the effect of an agreement is to "exact a penalty upon a withdrawing partner who competes with [the firm] by servicing its former clients," it is unenforceable. *SeePeroff v. Liddy, Sullivan, Galway, Begler & Peroff, P.C.,* 852 F.Supp. 239, 242 (S.D.N.Y.1994).

**\*8** Disciplinary Rule 2-180(A) includes an exception permitting agreements that restrict an attorney's practice of law "as a condition to payment of retirement benefits."DR 2-108(A). Katten Muchin contends that the contested provision in this case fits within that exception, asserting that the "payments were contemplated, at least in part, as retirement payments."(*See* Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1") ¶ 16; Affidavit of Howard S. Jacobs, dated April 5, 2005 ("Jacobs Aff.") ¶ 5-6). Karas offers a different interpretation of the same clause, asserting

that the three annual payments were intended as consideration for the goodwill of the Karas & Helfgott firm. (*See* Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶¶ 9-10, 16; Karas Decl. ¶¶ 10, 20).

When a court is called upon to interpret a disputed contract provision, "the court's general objective should be to give effect to the intentions of the parties in entering into the agreements."*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir.1990). If a contract is unambiguous on its face, its proper construction is a question of law, and the issue may be resolved by summary judgment. *Id.;seealsoOmni Quartz, Ltd. v. CVS Corp.,* 287 F.3d 61, 64 (2d Cir.2002). Contract language is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion."*Metropolitan Life Ins.,* 906 F.2d at 889. "If the language unambiguously conveys the parties' intent, extrinsic evidence may not properly be received."*Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992). However, "where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate."*Seiden Assoc.,* 959 F.2d at 428. A contract is not ambiguous "simply because the parties urge different interpretations," but "[i]f ambiguity is found, it must be resolved-as well as all inferences drawn-against the moving party."*Id.* at 428-29.The provision in dispute states:

Aaron Karas will join R & C as Counsel for a period of three years. In that capacity, he will receive a salary of $600,000 for the first twelve month period (1st year); a salary of $400,000 for the second twelve month period [2nd year]; and a salary of $200,000 for the third twelve month period [3rd year]. Thereafter, he shall receive

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.), 97 A.F.T.R.2d 2006-443
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.))**

$200,000 per year for the three years commencing [4th-6th years]. Karas agrees to use his best efforts to maintain the existing practice of Helfgott and Karas at R & C. In years 2 and 3, Karas's time devoted to the Helfgott & Karas practice will be reduced commensurate with the reduction in salary for those years. In addition, Karas will be entitled to the $200,000 per year payment during years 4 through 6 so long as he does not and has not worked for another law firm other than Rosenman & Colin during such six-year period.

**\*9** (*See* Agreement ¶ 1).

The relevant question is whether, when inferences are drawn in favor of Katten Muchin, this provision is susceptible to more than one reasonable reading. *See Seiden Assoc., 959 F.2d at 429.* Although there is nothing in the document explicitly referring to the payments as "retirement benefits," the Agreement does contemplate that Karas will decrease the amount of time spent in the active practice of law over the course of the Agreement, and that during the final three years, he would not obligated to spend any time devoted to practicing law with the firm. Thus, it would not strain the meaning of the terms of the contract to accept Katten Muchin's interpretation that the payments are intended, at least in part, as retirement benefits conditioned on Karas's actually retiring and not returning to the active practice of law. Because the language is ambiguous, and because both Katten Muchin and Karas have offered relevant extrinsic evidence of the parties' actual intent in the form of sworn affidavits of individuals involved in the negotiations leading to the Agreement, summary judgment is not appropriate. *See id. at 428-29;* (*see also* Def.'s 56.1 ¶ 16; Jacobs Aff. ¶¶ 2, 5-6; Pl.'s 56.1 ¶¶ 9-10, 16, 20; Karas Decl. ¶¶ 10). Because issues of fact remain as to whether the clause is valid, the Court does not resolve the dispute over whether its scope has been impermissibly broadened by the merger of Katten Muchin Zavis and Rosenman & Colin.

III. Conclusion

Katten Muchin's motion to dismiss is granted in part and denied in part and Karas's motion for summary judgment is denied. Katten Muchin's motion to dismiss the breach of contract and tortious interference claims is granted. Insofar as Karas seeks damages resulting from defendant's alleged breach of contract and tortious interference, his claims are barred by 26 U.S.C. § 3403 and New York Tax Law § 675. To the extent he seeks an order restraining defendant from future withholding of federal and state taxes, 26 U.S.C. § 7421(a) and 28 U.S.C. § 1341 deprive this court of jurisdiction, and the Declaratory Judgment Act, 28 U.S.C. § 2201 prohibits the issuance of any declaratory judgment to that effect. Because the breach of contract and tortious interference claims are dismissed, Karas's motion for summary judgment on those claims is denied. Katten Muchin's motion to dismiss Karas's third claim-for restraint of trade-is denied. Karas's restraint of trade claim survives, but because genuine issues of fact remain, his motion for summary judgment on that claim is denied.

SO ORDERED:

S.D.N.Y.,2006.
Karas v. Katten Muchin Zavis Rosenman, a partnership
Not Reported in F.Supp.2d, 2006 WL 20507 (S.D.N.Y.), 97 A.F.T.R.2d 2006-443

END OF DOCUMENT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2008, I electronically filed the foregoing Defendant

Counterclaim Plaintiff Sterling Jewelers Inc.'s Reply Memorandum of Law in Support of Its

Motion for Bifurcated Scheduling, Consideration, and Disposition of Legal Issues Relative to the

Workplace Dispute Resolution Agreement Between Each Plaintiff and Defendant, with the Clerk

of the United States District Court, Southern District of New York using the CM/ECF system,

which sent notification of such filing to the following:

> Joseph M. Sellers
> Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
> 1100 New York Avenue, N.W.
> Suite 500, West Tower
> Washington, D.C. 20005
>
> Sam J. Smith
> Burr & Smith, LLP
> 442 West Kennedy Blvd., Suite 300
> Tampa, FL 33606
>
> Thomas A. Warren
> The Law Offices of Thomas A. Warren
> 2032-D Thomasville Road
> Tallahassee, FL  32308
> P.O. Box 1657
> Tallahassee, FL  32302
>
> Attorney for Plaintiffs And On Behalf
> Of All Counsel for Plaintiffs

>    /s/ Gerald L. Maatman, Jr.
> Gerald L. Maatman, Jr.