**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X
                   :

**LARYSSA JOCK, et al.,**          :

        Plaintiffs,       :

        on behalf of themselves and  :   Index No.  1:08-cv-02875 (JSR)
        others similarly situated,   :

    -against-           :

**STERLING JEWELERS INC.,**    :

        Defendant.      :

------------------------------------- X

**<u>REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REFER TO ARBITRATION
AND STAY THE LITIGATION (Dkt. 26)</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A.  THIS LITIGATION SHOULD BE STAYED AND REFERRED TO ARBITRATION
        PURSUANT TO §§ 3 AND 4 OF THE FAA. ................................................................. 2

        1.  Plaintiffs Are "Aggrieved Parties" under § 4 of the FAA. .......................................... 2

        2.  The Litigation Should be Stayed under FAA § 3 as Plaintiffs have Neither Repudiated
            Nor Waived their Right to Enforce the Arbitration Agreement. .................................. 3

    B.  STERLING IS NOT "CONTRACTUALLY ENTITLED" TO HAVE THIS COURT
        DECIDE PROCEDURAL QUESTIONS ........................................................................... 6

        1.  A Court's Jurisdiction Cannot be Expanded by Contract ............................................ 6

        2.  The Majority of the Named Plaintiffs are Not Bound by the Agreement Permitting the
            Court to Decide Procedural Issues ............................................................................... 8

        3.  The Language of the Contract Does Not Mandate Court Determination of Procedural
            Issues ............................................................................................................................. 9

III. CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank of Am., N.A. v. Diamond State Ins. Co.*,
  2003 U.S. Dist. LEXIS 15075 (S.D.N.Y. 2003)........................................................2

*Brennan v. Bally Total Fitness*,
  153 F. Supp. 2d 408 (S.D.N.Y. 2001)......................................................................9

*Chatham Shipping Co. v. Fertex S.S. Corp.*,
  352 F.2d 291 (2d Cir. 1965)....................................................................................4

*Conticommodity Services Inc. v. Phillip & Lion*,
  613 F.2d 1222 (2d Cir. 1980)..................................................................................7

*G. F. Business Equipment, Inc. v. Liston*,
  7 Ohio App. 3d 223 (Ohio Ct. App., 1982) ...........................................................10

*Green Tree Fin. Corp. v. Bazzle*,
  539 U.S. 444 (2003)............................................................................................3, 6

*Hall St. Assocs. v. Mattel, Inc.*,
  128 S. Ct. 1396 (2008)...........................................................................................6

*In re S & R Co. of Kingston v. Latona Trucking, Inc.*,
  159 F.3d 80 (2d Cir. 1998)......................................................................................4

*Kramer v. Hammond*,
  943 F.2d 176 (2nd Cir. 1991)..................................................................................4

*Kulukundis Shipping Co. v. Amtorg Trading Corp.*,
  126 F.2d 978 (2d Cir. 1942)....................................................................................4

*Leadertex v. Morganton Dyeing & Finishing Corp.*,
  67 F.3d 20 (2d Cir. 1995) .......................................................................................5

*PPG Indus. v. Webster Auto Parts*,
  128 F.3d 103 (2d Cir. 1997)....................................................................................4

*Prima Paint Corp. v. Flood & Conkline Mfg. Co.*,
  388 U.S. 395 (1967)................................................................................................7

*Rush v. Oppenheimer & Co.*,
  779 F.2d 885 (2d Cir. 1985)....................................................................................4

*SDD99, Inc. v. ASA Int'l, Ltd.*,
  2007 U.S. Dist. LEXIS 23191 ................................................................................3

*Tepper Realty Co. v. Mosaic Tile Co.,*
    259 F. Supp. 688 (S.D.N.Y. 1966)..........................................................................7

**STATUTES**

9 U.S.C. § 3....................................................................................................................1, 3

9 U.S.C. § 4................................................................................................................1, 2, 3, 6

## I.     INTRODUCTION

Defendant Sterling Jewelers Inc. ("Sterling") attempts to override the well-established legal requirement that when a valid agreement to arbitrate exists, disputes over procedural issues are properly determined by an arbitrator and not the court.  This action should be stayed and referred to arbitration under §§ 3 and 4 of the Federal Arbitration Act ("FAA") because all statutory prerequistes have been met.  Plaintiffs are "aggrieved parties" under § 4 of the FAA due to Sterling's refusal to stipulate to refer the case to arbitration prior to the filing of this Motion.  Moreover, Plaintiffs have not repudiated the agreement to arbitrate or waived their rights to arbitrate, and thus are entitled to stay this litigation under § 3 of the FAA.

Sterling's assertion that it is "contractually entitled to have this Court decide certain procedural questions" is directly contradicted by the language of the contract and prevailing law.  Supreme Court jurisprudence does not permit a party to contract to expand judicial authority to decide procedural issues otherwise under the arbitrator's purview.  Even if, *arguendo*, such expansion of judicial authority is permitted, the undisputed facts here establish that the majority of the Named Plaintiffs are not bound by any such provision.  Further, the language at issue merely grants the Court discretion to decide procedural issues once a party has initiated a judicial proceeding; it does not create a "contractual right" to have the Court decide such issues.  Thus, this Court should enforce the mandate of the FAA, well established precedent, and the contractual language of the parties' Arbitration Agreements, and refer this case to arbitration.

## II.     ARGUMENT

### A.     THIS LITIGATION SHOULD BE STAYED AND REFERRED TO ARBITRATION PURSUANT TO §§ 3 AND 4 OF THE FAA.

Because all statutory requirements have been satisfied, the Court should stay the entire proceeding under § 3 of the FAA and refer the matter to arbitration pursuant to § 4. *See* Mem. in Support of Pls.' Mot. to Refer to Arbitration, ("Pls.' Mem.") Dkt. 26.

### 1.     Plaintiffs Are "Aggrieved Parties" under § 4 of the FAA.

The "party aggrieved" pursuant to § 4 of the FAA is the party seeking to "force a recalcitrant party to arbitrate." *Bank of Am., N.A. v. Diamond State Ins. Co.*, 2003 U.S. Dist. LEXIS 15075 (S.D.N.Y. 2003). Sterling challenges Plaintiffs' status as an "aggrieved" party based on the unfounded assertion that it has "never failed, neglected, or refused to arbitrate plaintiffs' claims as individuals under the provisions of RESOLVE." *See* Def.'s Opp. to Mot. to Refer Arbitration at 11 ("Def.'s Opp.") In fact, Sterling expressly refused to refer Plaintiffs' claims to arbitration, thereby making Plaintiffs "aggrieved parties" under § 4 of the FAA. *See* Emails between Joseph Sellers and Gerald Maatman, Jr. attached hereto as Ex. A (April 25-May 1, 2008). Sterling's alleged willingness to arbitrate, whether on an individual or class basis, is belied by arguments in its opposition brief and email correspondence sent before filing its Answer where Sterling consistently refused to proceed to arbitration. *See* Ex. A; Def's Opp.  On April 25, 2008, five days before Sterling filed its Answer, Plaintiffs' counsel requested that Sterling stipulate to refer the case to arbitration, and Sterling rejected this request. *See* Ex. A. Again, on April 29, 2008, Plaintiffs' counsel proposed that the parties stipulate to move the case to arbitration, and Sterling again refused. *Id.*

In seeking to stipulate to refer the case to arbitration, Plaintiffs did not require Sterling to agree on whether the case could proceed on a class basis, but were instead prepared to brief the

procedural issues before an arbitrator.  *See* Ex. A.  Still, Sterling's counsel rejected Plaintiffs'

proposal, and Sterling instead proceeded to file an Answer and Counterclaims in this Court on

April 30, 2008, the day after it rebuked Plaintiffs' offer.  *See* Decl. of Joseph Sellers, ¶ 6. As

Sterling concedes that the Arbitration Agreements are silent with respect to whether class

arbitration is allowed, Sterling may not unilaterally decide that arbitrations must proceed solely

on an individual basis.  *See Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 453 (2003) (holding

that when an arbitration agreement is silent as to class arbitration, an arbitrator decides the issue).

These events evince Sterling's unequivocal refusal to participate in arbitration, thereby making

Plaintiffs an aggrieved party pursuant to § 4.  *See SDD99, Inc. v. ASA Int'l, Ltd.*, 2007 U.S. Dist.

LEXIS 23191, at * 22-23 (W.D.N.Y. Mar. 29, 2007) (holding that respondent's opposition to a

motion to compel based on equitable bars of waiver or default constitutes a refusal to arbitrate

such that movant is an aggrieved party).

> **2.     The Litigation Should be Stayed under FAA § 3 as Plaintiffs have**
> **Neither Repudiated Nor Waived their Right to Enforce the**
> **Arbitration Agreement.**

Plaintiffs, as parties to the Arbitration Agreement, have properly moved the Court for a

stay of this action under § 3 of the FAA.  Contrary to Sterling's assertion, Plaintiffs have neither

repudiated RESOLVE nor waived their right to enforce the Agreement, and therefore are not in

default in proceeding with arbitration.  Section 3 provides that where a suit is brought "upon any

issue referable to arbitration," the court:

> shall on application of one of the parties stay the trial of the action
> until such arbitration has been had in accordance with the terms of
> the agreement, providing the applicant for the stay is not in default
> in proceeding with such arbitration.

9 U.S.C. § 3.  The Second Circuit has explained that a party is "in default in proceeding" with

arbitration under § 3 where a party "when requested, has refused to go to arbitration or who has

refused to proceed with the hearing before the arbitrators once it has commenced." *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 986, 989 (2d Cir. 1942). Indeed, the Second Circuit has recognized that filing a motion to stay the action pursuant to § 3 of the FAA is a "clear statement" of the party's "intention to arbitrate." *PPG Indus. v. Webster Auto Parts,* 128 F.3d 103, 109 (2d Cir. 1997). As Plaintiffs have neither repudiated RESOLVE nor waived their right to enforce the agreement, Plaintiffs are not in default in proceeding with arbitration.

Nor does Plaintiffs' commencement of this judicial action waive their ability to compel arbitration. *See, e.g., Chatham Shipping Co. v. Fertex S.S. Corp.*, 352 F.2d 291, 293 (2d Cir. 1965) (the "mere filing of an action for damages on a contract does not preclude a subsequent change in mind in favor of arbitration"). In determining whether waiver has occurred, courts consider the time elapsed since the commencement of litigation, the amount of litigation, and proof of prejudice to the other party. *In re S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 84 (2d Cir. 1998). A waiver of arbitration "is not to be lightly inferred." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). The minimal litigation proceedings that have occurred here do not approach the high standard for a finding of waiver. *Compare Rush,* 779 F.2d at 889 (defendant's eight-month delay, filing of a motion to dismiss, discovery conducted, and filing of an answer did not prejudice plaintiff such that it constituted waiver of the right to arbitrate) *with Kramer v. Hammond,* 943 F.2d 176, 179 (2nd Cir. 1991) (aggressive four-year litigation was sufficient prejudice to constitute waiver and preclude moving party from invoking arbitration).

Plaintiffs promptly moved to refer this action to arbitration after Sterling refused to Plaintiffs' offer to stipulate to refer the case to arbitration. *See* Sellers Decl. at ¶¶ 3-7. Less than two months passed between the filing of the Complaint and this Motion (not 65 days, as Sterling

stated).  Immediately upon learning of Plaintiffs' intention to move to refer the case to

arbitration, Sterling rushed to file its Answer on April 30, 2008 and its Motion for Bifurcated

Scheduling, although Plaintiffs had agreed to Sterling's request to extend its time to file an

Answer to May 8, 2008.  *Id*. at ¶ 3.  Sterling cannot now claim Plaintiffs caused it prejudice

based on Sterling's choice to prematurely expend resources.  Indeed, although Sterling chose to

file an Answer and Counterclaims, it need not have filed any responsive pleadings, but rather

could have stipulated to refer this entire matter to arbitration.

Nor does expending minimal litigation expenses to answer the Complaint support a

finding of waiver.  *See Leadertex v. Morganton Dyeing & Finishing Corp*., 67 F.3d 20, 26 (2d

Cir. 1995) (in attempting to demonstrate prejudice, a party must establish more than the fact that

it has incurred the expenses of litigation).  No discovery has been conducted, and the initial

scheduling conference has not yet occurred.  Likewise, Sterling's assertion of "the looming

unusual and undue prejudice to Sterling by the threatened inability to have these matters resolved

by the court,"  does not demonstrate prejudice, as this assumes rights Sterling does not have - the

Arbitration Agreements do not guarantee adjudication in a judicial forum.   Thus, there is no

evidence to show prejudice to Sterling sufficient to meet the high standard for waiver.  *See* Def.'s

Opp. at 13-14.

Sterling's attempt to cast aspersions on Plaintiffs' motives is equally unavailing.

Plaintiffs initiated litigation to protect their rights based on the information available to them

prior to filing this lawsuit.[1]  The RESOLVE program materials raised the valid concern that

initiating class arbitration may cause Plaintiffs to incur costs far in excess of those incurred in a

judicial proceeding.  Similarly, Plaintiffs were equally concerned with the limited injunctive

---

[1] Due to the uncertainty about the enforceability of the arbitration agreement, Plaintiffs filed a
demand for arbitration with the AAA at the same time that they initiated litigation.

relief available through the RESOLVE program.  Sterling conveniently neglects to acknowledge the following statement in the RESOLVE Arbitration Rules, "In reaching a decision, the arbitrator may not modify Company rules, policies, or procedures."  *See* Pls.' Mem., Dkt. No. 26, Ex. C.  This statement appears to preclude the arbitrator from awarding injunctive relief, in direct contradiction with the statement in the Agreement referenced by Sterling, which provides that the arbitrator may award legal and equitable relief.  Only after the filing of the Complaint did Sterling's counsel represent that Sterling would pay for any and all cost of arbitration assessed by the AAA related to the arbitration proceeding, other than a nominal filing fee, and that an arbitrator had authority to award all forms of injunctive relief available in a judicial forum.  *See* Sellers Decl. ¶2; Pls.' Mem., Dkt. No. 26, Ex. G.  Thus, Plaintiffs' initiation of litigation was entirely appropriate based upon the information available to them at the time.

## B.    STERLING IS NOT "CONTRACTUALLY ENTITLED" TO HAVE THIS COURT DECIDE PROCEDURAL QUESTIONS

### 1.    A Court's Jurisdiction Cannot be Expanded by Contract

Sterling concedes that "questions involving arbitration procedures . . . are normally, the province of an arbitrator."  Def.'s Opp. at 4.  Sterling further acknowledges that "it may be a question of first impression whether parties can contract to have a court decide procedural questions following *Green Tree.* " Def.'s Opp. at 5.  The Supreme Court recently addressed a very similar issue in *Hall St. Assocs. v. Mattel, Inc.***,** 128 S. Ct. 1396, 1405 (2008), in which it rejected an attempt by the parties to contractually expand judicial review of an arbitration award. The Court found that the mandatory language of § 9 of the FAA, which provides that the court "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected…" left no room for flexibility.  *Id.*  Section 4 of the FAA contains similarly inflexible language, as it states, "upon being satisfied that the making of the agreement for arbitration or

the failure to comply therewith is not an issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. §4 (emphasis added). Once the court is satisfied that the validity of the agreement or the respondent's failure to arbitrate is not an issue, the statute affords the court no authority to make further decisions relating to the proceedings, but instead mandates immediate referral to arbitration. *See Conticommodity Services Inc. v. Phillip & Lion*, 613 F.2d 1222, 1225-26 (2d Cir. 1980). Likewise, § 3 requires that the Court "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . *shall* on application of one of the parties stay the trial of the action . . ." 9 U.S.C. §3 (emphasis added). *See Prima Paint Corp. v. Flood & Conkline Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F. Supp. 688, 693 (S.D.N.Y. 1966) ("Section 3 makes no provision for preliminary trials of issues which have been, or may be, raised in an answer but commands a stay if the claim asserted in the complaint is one which is subject to the arbitration agreement").

Just as the mandatory language in § 9 of the FAA prohibited the parties in *Hall Street* from expanding judicial review of arbitration awards, the mandatory language of § 4 and § 3 of the FAA similarly bars the parties from contracting to expand judicial authority to permit court determinations of procedural issues that would otherwise be within the exclusive province of the arbitrator.

Even assuming *arguendo* that a contract may grant a Court discretion to decide procedural issues, the contractual language at issue does not "contractually entitle" Sterling to have the Court decide the procedural issues here because: a) the majority of the Named Plaintiffs are not bound by the version of the Agreement that contains such language; and b) such

language, when it appears in Agreements to which a Named Plaintiff is bound, is permissive, rather than mandatory.

### 2.    The Majority of the Named Plaintiffs are Not Bound by the Agreement Permitting the Court to Decide Procedural Issues

Sterling ignores the central fact that at least half of the Named Plaintiffs did not sign and are not bound by the version of the Arbitration Agreement that Sterling seeks to invoke. *See* Pls.' Opp to Def.'s Motion for Bifurcated Scheduling, Dkt. No. 33 pp. 5-6, 9-12.  Notably absent from Sterling's Opposition is any evidence to establish which version of the Arbitration Agreement, if any, was signed by or is binding on each Plaintiff.  Despite Plaintiffs' repeated requests for executed Arbitration Agreements for all 16 Named Plaintiffs, Sterling has thus far produced only two Agreements (Plaintiffs House and McConnell) as exhibits to its Answer and Counterclaims.  *See* Sellers Decl. at ¶¶ 8-10; Ex. A, (May 1, 2008 e-mail message from Sellers to Maatman requesting complete copies of all arbitration agreements for named plaintiffs); Pls.' Mem. Dkt. No. 26 Ex. D (March 6, 2008 correspondence from Plantiffs' counsel, Sam J. Smith, to RESOLVE Administrator, Joseph L. Spagnola, requesting all RESOLVE documents for Laryssa Jock); Apr. 15, 2008 correspondence from Smith to Spagnola, making a second request for all program documents for Ms. Jock, attached hereto as Ex. B.   Sterling has not provided any explanation for its failure to provide copies of each Plaintiff's executed agreements.

In its Opposition, Sterling makes the untenable assertion that Plaintiffs' mere reference in this Motion to the most recent version of the RESOLVE Program Rules, thereby renders all Named Plaintiffs bound by such language.  Def.'s Opp. at pp. 9, 16.   By virtue of the terms of the arbitration contract, Sterling lacks the right to unilaterally modify the Arbitration Agreement to add such language without written consent from the employee.  The RESOLVE Arbitration Agreement provides, "[t]he terms of this Agreement cannot be orally modified.  Sterling reserves

the right to modify this Agreement, if done so in writing, and only by the Sterling Executive

Committee and the employee." *See* Pls.'s Mem., Dkt. No. 26, Ex. B. All versions of the

Arbitration Agreement of which Plaintiffs are aware contain the same or a substantially similar

clause. Because Sterling has failed to produce any evidence to show written consent of the

Plaintiffs hired prior to the addition of this provision, Sterling cannot now claim they are bound

by the later version. *See Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 415 (S.D.N.Y.

2001). Just as Plaintiffs are only bound by the version of the Arbitration Agreement in effect at

the time they were hired, they are likewise only bound by the version of the Rules in effect at

that time. The version of the RESOLVE Program Rules that Sterling invokes is not applicable

to at least nine of the Named Plaintiffs who were hired before such language was added, and as a

result, these Plaintiffs have not contractually agreed to expand the court's authority to matters

within the province of an arbitrator.

> ### 3.    The Language of the Contract Does Not Mandate Court Determination of Procedural Issues

Sterling provides no legal or factual basis for converting permissive language into a

contractual entitlement to have the Court resolve "procedural questions that grow out of the

dispute and bear on the final disposition of the matter." *See* Def.'s Opp. at 9. The contract

provides:

> Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) **shall** be decided by the arbitrator. …. However, where a party already has initiated a judicial proceeding, a court **may** decide procedural questions that grow out of the dispute and bear on the final disposition of the matter (…).

Pls.' Mem., Dkt. No. 26, Ex. C. at 2 (emphasis added).

If Sterling intended to require the court to interpret all procedural questions once a party

initiates a judicial proceeding, Sterling, as the drafter of the agreement, should have used the

term "shall" as it did in the first sentence, which provides: "[q]uestions of arbitrability … *shall* be decided by the arbitrator." *Id.* Moreover, notwithstanding that the language is clearly discretionary, any doubts as to its meaning should be resolved against Sterling as the drafter. *See G. F. Business Equipment, Inc. v. Liston*, 7 Ohio App. 3d 223 (Ohio Ct. App.1982) (noting that Ohio courts resolve ambiguities against the author when interpreting form documents used in multiple transactions where the parties lacked equal bargaining power to select agreed language).[2] Sterling's hollow attempts to convert permissive language into mandatory rights should thus be rejected. The proper course of action is to resolve all pending procedural disputes before an arbitrator.

## III. CONCLUSION

For the reasons stated above, this Court should order the parties to proceed to arbitration and stay the instant proceedings pending the outcome of arbitration.

---

[2] The RESOLVE Arbitration Agreement states that the contract shall be interpreted in accordance with the laws of Ohio.

Dated: New York, New York
       May 27, 2008

Respectfully submitted,

**COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.**

By: */s/ Joseph M. Sellers*
    Joseph M. Sellers
    Jenny R. Yang (JY-9667)
    Sahar F. Aziz
    1100 New York Avenue, N.W.
    Suite 500, West Tower
    Washington, DC 20005
    Telephone:  (202) 408-4600
    Facsimile:  (202) 408-4699
    jsellers@cmht.com
    jyang@cmht.com
    saziz@cmht.com

    Lynda J. Grant (LG-4784)
    150 East 52nd Street, 30th floor
    New York, NY 10022
    Telephone:  (212) 838-7797
    Facsimile:  (212) 838-7745
    lgrant@cmht.com

    Sam J. Smith
    Loren B. Donnell
    Burr & Smith, LLP
    442 W. Kennedy Boulevard, Suite 300
    Tampa, FL 33606
    Telephone:  (813) 253-2010
    Facsimile:  (813) 254-8391
    ssmith@burrandsmithlaw.com
    ldonnell@burrandsmithlaw.com

    Thomas A. Warren
    Thomas A. Warren Law Offices, P.L.
    2032-D Thomasville Blvd.
    Tallahassee, FL  32308
    Telephone:  (850) 385-1551
    Facsimile:  (850) 385-6008
    tw@nettally.com

    *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2008, I electronically filed the foregoing REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REFER TO ARBITRATION AND STAY THE LITIGATION with the Clerk of the United States District Court, Southern District of New York, using the CM/ECF system, which sent notification of such filing to the following:

Gerald L. Maatman, Jr. (GM-3201)
gmaatman@seyfarth.com

Lorie E. Almon (LA-4937)
lalmon@seyfarth.com

David Bennet Ross (DR-8613)
dross@seyfarth.com

Richard I. Scharlat (RS-5127)
rscharlat@seyfarth.com

620 Eighth Avenue, 32nd floor
New York, New York 10018-1405
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

ZASHIN & RICH CO., L.P.A.
Stephen S. Zashin
ssz@zrlaw.com
55 Public Square, 4th floor
Cleveland, Ohio 44113
Telephone:  (216) 696-4441
Facsimile:  (216) 696-1618

**Attorneys for Defendant Sterling Jewelers Inc.**


          ___*/s/ Sahar Aziz*___ _____
                   Sahar Aziz

# EXHIBIT A

## Sellers, Joe

**From:** Maatman, Gerald [GMaatman@seyfarth.com]
**Sent:** Friday, April 25, 2008 12:04 AM
**To:** Sellers, Joe
**Subject:** Jock v. Sterling

Joe -

I got a heads up from the clerk of the court this evening of the filing of your amended complaint this afternoon. I see it has a new plaintiff, and 380 paragraphs as compared to 195 paragraphs in the original complaint.

This creates some difficulties at our end in terms of the 4/30 filing submission date and raises an issue of getting some additional time - say through May 6?

Is this acceptable to you and your colleagues?

Thanks, Jerry

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.

## Sellers, Joe

**From:**     Maatman, Gerald [GMaatman@seyfarth.com]
**Sent:**     Friday, April 25, 2008 3:26 PM
**To:**       Sellers, Joe
**Subject:**

Joe -

A call with you and me after your call at 4:30pm is fine for me. Just click me an email when you are ready.

My client isn't ready to enter into a stip.

Jerry


Gerald L. Maatman, Jr. | SEYFARTH SHAW LLP | 131 S. Dearborn Street, Suite 2400, Chicago, IL 60603 | Chicago Office Direct Line: (312) 460-5965 | Fax: (312) 460-7965 | E-mail: gmaatman@seyfarth.com | www.seyfarth.com | Assistants in Chicago: Natalie Keckler (312) 460-6322 and Heather Ahern (312) 460-6415 | New York Office Direct Telephone Line (For Jerry Maatman): (212) 218-3360 | Fax: (212) 218-5526 | Assistant in New York: Pauline Chung (212) 218-3362 | Boston Office Direct Telephone Line (For Jerry Maatman):  (617) 946-4800 | Fax: (617) 946-4801

-----Original Message-----
**From:** Sellers, Joe [mailto:JSellers@CMHT.com]
**Sent:** Friday, April 25, 2008 2:16 PM
**To:** Maatman, Gerald
**Subject:**

Jerry,

   Obviously, this call is taking longer to conclude that we expected.  I have another call at 3:30.  I have tentatively scheduled a call with my team for 4:30 today and could call you after that call.  does that work for you?

   i do have one question to which an answer would help my discussion with my team. have you come to any conclusions about your approach, aside from addressing the amended complaint, how you were planning to deal with the case management order and, if we agree that the case should proceed to arbitration, whether we should submit a stipulation to that effect.

   joe

-----Original Message-----
**From:** Maatman, Gerald [mailto:GMaatman@seyfarth.com]
**Sent:** Friday, April 25, 2008 2:33 PM
**To:** Sellers, Joe
**Subject:**

Thank you. Would appreciate hearing back today if possible.

Jerry

Gerald L. Maatman, Jr. | SEYFARTH SHAW LLP | 131 S. Dearborn Street, Suite 2400,
Chicago, IL 60603 | Chicago Office Direct Line: (312) 460-5965 | Fax: (312) 460-7965
| E-mail: gmaatman@seyfarth.com | www.seyfarth.com | Assistants in Chicago:
Natalie Keckler (312) 460-6322 and Heather Ahern (312) 460-6415 | New York Office
Direct Telephone Line (For Jerry Maatman): (212) 218-3360 | Fax: (212) 218-5526 |
Assistant in New York: Pauline Chung (212) 218-3362 | Boston Office Direct Telephone
Line (For Jerry Maatman):  (617) 946-4800 | Fax: (617) 946-4801

-----Original Message-----
**From:** Sellers, Joe [mailto:JSellers@CMHT.com]
**Sent:** Friday, April 25, 2008 1:30 PM
**To:** Maatman, Gerald
**Subject:**

-----Original Message-----
**From:** Maatman, Gerald [mailto:GMaatman@seyfarth.com]
**Sent:** Friday, April 25, 2008 12:43 PM
**To:** Sellers, Joe
**Subject:**

Gerald L. Maatman, Jr. | SEYFARTH SHAW LLP | 131 S. Dearborn Street,
Suite 2400, Chicago, IL 60603 | Chicago Office Direct Line: (312) 460-5965
| Fax: (312) 460-7965 | E-mail: gmaatman@seyfarth.com |
www.seyfarth.com | Assistants in Chicago: Natalie Keckler (312) 460-6322
and Heather Ahern (312) 460-6415 | New York Office Direct Telephone Line
(For Jerry Maatman): (212) 218-3360 | Fax: (212) 218-5526 | Assistant in
New York: Pauline Chung (212) 218-3362 | Boston Office Direct Telephone
Line (For Jerry Maatman):  (617) 946-4800 | Fax: (617) 946-4801

-----Original Message-----
**From:** Sellers, Joe [mailto:JSellers@CMHT.com]
**Sent:** Friday, April 25, 2008 11:28 AM

**To:** Maatman, Gerald
**Subject:** RE

sure

-----Original Message-----
**From:** Maatman, Gerald [mailto:GMaatman@seyfarth.com]
**Sent:** Friday, April 25, 2008 12:25 PM
**To:** Sellers, Joe
**Subject:** RE: Kroger mediation

OK by me.

I assume our Sterling call can go forward after the          call?

Jerry


Gerald L. Maatman, Jr. | SEYFARTH SHAW LLP | 131 S. Dearborn Street, Suite 2400, Chicago, IL 60603 | Chicago Office Direct Line: (312) 460-5965 | Fax: (312) 460-7965 | E-mail: gmaatman@seyfarth.com | www.seyfarth.com | Assistants in Chicago: Natalie Keckler (312) 460-6322 and Heather Ahern (312) 460-6415 | New York Office Direct Telephone Line (For Jerry Maatman): (212) 218-3360 | Fax: (212) 218-5526 | Assistant in New York: Pauline Chung (212) 218-3362  | Boston Office Direct Telephone Line (For Jerry Maatman):  (617) 946-4800 | Fax: (617) 946-4801

-----Original Message-----
**From:** Sellers, Joe [mailto:JSellers@CMHT.com]
**Sent:** Friday, April 25, 2008 11:23 AM
**To:**

**Subject:**


Joe

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.

_____

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.

_____

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.

_____

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.

## Sellers, Joe

| | |
|---|---|
| **From:** | Maatman, Gerald [GMaatman@seyfarth.com] |
| **Sent:** | Wednesday, April 30, 2008 5:05 PM |
| **To:** | Sellers, Joe |
| **Subject:** | RE: Sterling |

Joe:

Thanks for your note. Sterling respectfully disagrees with your position that questions relative to RESOLVE in this litigation are issues which an arbitrator must decide. The responsive pleadings and counterclaim filed by Sterling today with the Court sets forth those issues which we believe that the Court is to decide in light of the specific provisions of your clients' RESOLVE agreements. Thus, we are not in a position to agree to the stipulation you propose. We agree with you that these issues should be briefed before Judge Rakoff.

In terms of initiating a call to the Court for discussing appropriate motions, we are generally available the rest of this week.

Regards, Jerry

Gerald L. Maatman, Jr. | SEYFARTH SHAW LLP | 131 S. Dearborn Street, Suite 2400, Chicago, IL 60603 | Chicago Office Direct Line: (312) 460-5965 | Fax: (312) 460-7965 | E-mail: gmaatman@seyfarth.com | www.seyfarth.com | Assistants in Chicago: Natalie Keckler (312) 460-6322 and Heather Ahern (312) 460-6415 | New York Office Direct Telephone Line (For Jerry Maatman): (212) 218-3360 | Fax: (212) 218-5526 | Assistant in New York: Pauline Chung (212) 218-3362 | Boston Office Direct Telephone Line (For Jerry Maatman): (617) 946-4800 | Fax: (617) 946-4801

-----Original Message-----
**From:** Sellers, Joe [mailto:JSellers@CMHT.com]
**Sent:** Tuesday, April 29, 2008 5:23 PM
**To:** Maatman, Gerald
**Subject:** Sterling

Jerry,

    I wanted to follow up on my notice to you last Friday of our desire to file a motion to refer the pending action to arbitration. As I understand it, you are not prepared to enter a stipulation to refer the pending action to arbitration. Before we contact the Court to schedule a time on Thursday, April 1, for us to discuss our proposed motion to refer the case to arbitration, I wanted to be clear on the action we seek.

    I know the parties disagree whether we may pursue a class action in arbitration and whether the claimants have exhausted the prerequisites to arbitration. But the proper

course of action, as we interpret the *Greentree v. Bazzle* decision and others, is to refer those disputes to an arbitrator for resolution, as they involve interpretations of the RESOLVE Program.

Accordingly, by proposing that the parties stipulate to the referral of this action to arbitration, we do not seek Sterling's agreement with our position on the issues in dispute. Rather we are prepared to brief those issues for the arbitrator and have him/her decide the issue.

Please let me know whether Sterling is prepared to enter a stipulation to refer the pending case to arbitration where the issues identified above would be submitted to an arbitrator for adjudication. In the absence of such an agreement, we will ask the Court for such relief by filing our motion on the schedule set by the Court and ask that Sterling respond before the scheduled case management conference.

Thanks.

Joe

=00_____

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.

## Sellers, Joe

| | |
|---|---|
| **From:** | Sellers, Joe |
| **Sent:** | Thursday, May 01, 2008 10:10 AM |
| **To:** | 'Maatman, Gerald' |
| **Cc:** | Aziz, Sahar; Sarno, Lynnette |
| **Subject:** | RE: Jock v. Sterling |

Jerry,

Sahar is contacting one your colleagues to propose we schedule a call with the Court tomorrow afternoon. I'm tied up with something right now and can't join in arranging that call. Sahar is available to do so.

On a separate matter, I see from briefly reviewing your answer and attachments filed yesterday that you have attached and intend to ask the Court to interpret arbitration agreements in which the named plaintiffs entered. As you know, Sterling has never provided copies of those agreements to us. If you wish to ask the Court to interpret those agreements, then I expect you will make complete copies available to us immediately.

Thanks.

Joe

-----Original Message-----
**From:** Maatman, Gerald [mailto:GMaatman@seyfarth.com]
**Sent:** Thursday, May 01, 2008 9:46 AM
**To:** Sellers, Joe
**Cc:** Aziz, Sahar; Sarno, Lynnette
**Subject:** Jock v. Sterling

Joe -

I just left you a voicemail, and then I left one for Sahar too.

We'll work immediately on taking care of the issues noted in your note below. I am copying Lynnette, as she and I called both you and Sahar to set up the call to the Court's chambers for the motions both sides wish to file.

Thank you.

Jerry

Gerald L. Maatman, Jr. | SEYFARTH SHAW LLP | 131 S. Dearborn Street, Suite 2400, Chicago, IL 60603 | Chicago Office Direct Line: (312) 460-5965 | Fax: (312) 460-7965 | E-mail: gmaatman@seyfarth.com | www.seyfarth.com | Assistants in Chicago: Natalie Keckler (312) 460-6322 and Heather Ahern (312) 460-6415 | New York Office Direct Telephone Line (For Jerry Maatman): (212) 218-3360 | Fax: (212) 218-5526 | Assistant in New York: Pauline Chung (212) 218-3362 | Boston Office Direct Telephone Line (For Jerry Maatman):

# EXHIBIT B

LAW OFFICES

# BURR & SMITH

LIMITED LIABILITY PARTNERSHIP

442 W. KENNEDY BOULEVARD
SUITE 300
TAMPA, FLORIDA 33606

TELEPHONE (813) 253-2010
FACSIMILE (813) 254-8391
www.burrandsmithlaw.com

April 15, 2008

Sterling Jewelers Inc.                           **VIA FACSIMILE/FIRST CLASS MAIL**
Att: Joseph L. Spagnola
RESOLVE Program Administrator
375 Ghent Road
Akron, OH 44333

Re: *Second Request for RESOLVE Program Rules*

Dear Mr. Spagnola:

In our letter to you dated March 6, 2008, we requested any and all applicable documents in connection with the rules, procedures, and requirement for the RESOLVE Program, Step 1 through Step 3. We understand that it is your position that Ms. Jock has not completed Step 2 of the RESOLVE Program. As the parties have concluded months of mediation, including an early neutral evaluation that addressed Ms. Jock's claims, we contend that Ms. Jock has satisfied Step 2 of the RESOLVE Program.

Notwithstanding the parties' differences on the procedural posture of Ms. Jock's claims, it is Ms. Jock's right to receive relevant information about the RESOLVE Program so that she may proceed with her RESOLVE claims expeditiously. Accordingly, we request that you send all information related to the process, procedures, requirements, and rules set forth by RESOLVE to which she may be held.

Specifically, please send a copy of the following, and any other documents that could be relied upon by Sterling or enforced against Ms. Jock as procedural, substantive, and/or evidentiary rules for Step 1 through Step 3 of the RESOLVE Program in all applicable versions, including, but not limited to any other applicable rules, procedures, or documentation that refers or relates to the Resolve Program:

Step 1 Claim Form
Step 2 Appeal Claim Form
Step 3 Appeal Claim Form Request for Arbitration
Resolve Program Arbitration Rules
Arbitration Agreement
Employee Handbook
Waiver/Release Form

Joseph L. Spagnola
April 15, 2008
Page 2 of 3

In your April 1, 2008 letter, you stated that "Sterling previously provided to you extensive information about the RESOLVE program." If you are referring to the documents relating to RESOLVE that we received from Sterling pursuant to the terms of the Mediation and Confidentiality Agreement, Ms. Jock is precluded from using such documents for any purpose other than in that mediation process. *See* Mediation and Confidentiality Agreement, ¶6.[1] If Sterling agrees to waive confidentiality with respect to the documents produced for mediation, Ms. Jock will withdraw her document request above, conditioned upon written verification from Sterling that a) identifies by Bates Number all documents produced pursuant to the pre-mediation document exchange that relate to RESOLVE; b) confirms waiver of the Confidentiality Agreement with respect to those documents; and c) confirms that the identified documents constitute **all** documents that refer or relate to the RESOLVE program.

As we have stated previously, it is our position that the RESOLVE program is unenforceable because it requires the Charging Parties to incur costs above and beyond those that would be required in a judicial forum and the arbitrator is prohibited from awarding injunctive relief due to the rule that prevents him or her from changing a Sterling rule, policy, or procedure in making his/her decision. The letter you sent to my co-counsel Joseph Sellers on April 1, 2008 suggests that Sterling may in fact be willing to reimburse Ms. Jock and our other clients for arbitration filing costs in excess of the cost of filing a case in court, to pay any future fees and costs related to arbitration, and to elect not to invoke the RESOLVE Arbitration Rule that would effectively preclude our clients from receiving an award of injunctive relief. In your letter, you state,

> "[Charging Parties' contentions regarding the costs of arbitration and the arbitrator's authority] are in direct contradiction to the RESOLVE Program itself. RESOLVE has a nominal filing fee and the arbitrator is free to make any award that comports with applicable law."

If this is in fact Sterling's position, please confirm in writing that Sterling does not plan to invoke the RESOLVE Program Arbitration Rule which states "in reaching a decision, the arbitrator may not modify Company rules, policies, or procedures." In the alternative, please state the basis for your contention that such a rule would not serve to prohibit an arbitrator from making an award of injunctive relief, as any effective injunctive relief award would in this case undoubtedly change any number of Sterling's rules, policies, or procedures challenged by our clients.

Moreover, our clients paid the $3,250 class arbitration filing fee, which is $2,900 above the $350 filing fee paid to file their suit in the Southern District of New York. Please confirm that Sterling shall reimburse our clients for this cost, and pay all future fees and expenses related to the arbitration. If Sterling refuses to agree to such

---

[1] Paragraph 6 states, "The Parties further agree that any documents or information provided by the Parties their experts, or their counsel to the other, or to the mediator, in connection with any mediation sessions be confidential and inadmissible by the non-disclosing party in any court of law or any other proceedings outside of mediation."

Joseph L. Spagnola
April 15, 2008
Page 3 of 3

reimbursement, then your statement that "Resolve has a nominal filing fee" is clearly contradicted by the fact that it cost our clients significantly more to arbitrate their claims than to pursue them in a court of law, making the RESOLVE Program unenforceable.

　　　　Please send information responsive to this request by facsimile at (813) 254-8391 and/or by electronic mail to ssmith@burrandsmithlaw.com. Failure to provide this information will be deemed a waiver of your position that Step 2 of RESOLVE has not been satisfied.

　　　　　　　　　　　　　　Sincerely,

　　　　　　　　　　　　　　Sam J. Smith