UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARYSSA JOCK, et al.,

Plaintiffs,

-v-

STERLING JEWELERS, INC.,

Defendant.

08 Civ. 2875 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

Plaintiffs, current and former female employees of defendant Sterling Jewelers, Inc. ("Sterling"), a nationwide specialty jeweler, brought this class action alleging that Sterling discriminated against them in pay and promotion on the basis of their gender, in violation of Title VII, 42 U.S.C. § 2000e et seq., and the Equal Pay Act, 29 U.S.C. § 206(d). By summary Order dated June 18, 2008, the Court granted plaintiffs' motion to refer the dispute to arbitration and to stay the instant litigation pending conclusion of that arbitration. In a Memorandum Order dated July 15, 2008 that elucidated the reasons for that ruling, the Court determined that the arbitration agreement granted the Court discretion as to whether to decide or to refer to the arbitrator certain threshold issues, notably, whether the matter could proceed as a class action; and the Court decided that referral of such issues to the arbitrator made better sense. Jock v. Sterling Jewelers, Inc., 564 F. Supp. 2d 307, 311 (S.D.N.Y. 2008). Thereafter, the arbitrator, on June 1, 2009, issued a threshold ruling that the arbitration agreement did not prohibit class arbitration. After the arbitrator further clarified

this ruling on June 26, 2009, Sterling moved this Court to vacate this determination or, in the alternative, to stay the arbitration proceedings. By summary Order dated August 31, 2009, the Court denied Sterling's motion in its entirety. This Opinion gives the reasons for that ruling and directs the parties to update the Court on the status of the arbitration.

By way of background, in June 1998 Sterling put in place a three-step alternative dispute resolution program called "RESOLVE." Subsequently, the named plaintiffs in this action all signed agreements requiring them to use RESOLVE for all employment disputes, including the Title VII and Equal Pay Act claims asserted here. See Aff. of Joseph L. Spagnola (Ex. B to Sterling Clause Construction Br.) ¶ 11 & Tab 2. Under RESOLVE, when an employee believes she has been subjected to an unlawful employment action, her first step is to contact the RESOLVE program administrator and file a complaint. If the employee is unsatisfied with the company's response, her second step is to file an appeal, which the program administrator may assign either to an outside administrator or to a peer review panel. Finally, if the employee is still not satisfied, she may proceed to the third step, binding arbitration. See id. ¶ 8.

The RESOLVE arbitrations are to be conducted by the American Arbitration Association ("AAA") in accordance with AAA rules, as amended or modified by certain RESOLVE-specific provisions, including the requirements, among others, that each arbitration be held near where the employee worked and that the arbitration agreements are to

be construed according to Ohio law. Id. ¶¶ 14-15, 17, 19. Nowhere, however, is class arbitration expressly mentioned. Nonetheless, the arbitrator, in her ruling of June 1, 2009, determined that the RESOLVE agreements do not prohibit class arbitration. This, the arbitrator held, was because, under Ohio law, the RESOLVE agreements were contracts of adhesion that, as such, required Sterling to insert an express prohibition on class arbitration if it wished to bar resort to that procedural right. Clause Construction Award (Ex. F. to Sterling Mem. of Law in Support of Mot. to Vacate) at 4-5.

After receiving the June 1 ruling, Sterling sought clarification from the arbitrator as to, among other things, how class certification would proceed in light of the requirement that an employee exhaust RESOLVE Steps 1 and 2 before proceeding to arbitration and also in light of the provision requiring the arbitration to be held near where each employee worked. In response, the arbitrator specified that (1) "The RESOLVE Arbitration Agreements do not require that class claims be resolved separately within each local venue."; (2) "The RESOLVE Arbitration Agreements do not require that every claimant complete RESOLVE Steps 1 and 2 prior to participating in a class arbitration."; and (3) "Determination as to whether a class should be certified, and the scope of the class, will be made after the parties have had an opportunity to develop the record and brief the appropriate scope of any class that may be certified." Disposition of Application of Clarification of Clause Construction Award (Ex. J to Sterling Mem. of Law in Support of Mot.

to Vacate). Sterling then filed the instant motion to vacate the award and to stay the arbitration.

Preliminarily, plaintiffs contend that, because no class has yet been certified, Sterling's motion is premature and unripe. "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction' . . . ." Nat'l Park Hospitality Ass'n v. DOI, 538 U.S. 803, 808 (2003) (quoting Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993)). A case is ripe for Article III purposes when it presents "a real or concrete dispute affecting cognizable current concerns of the parties." Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003). However, even if a case is constitutionally ripe, it may not be prudentially ripe if it "will be better decided later and . . . [if] the parties will not have constitutional rights undermined by the delay." Id. (emphasis omitted).

Here, allowing further proceedings before the arbitrator directed at certifying a class presents a real dispute affecting the parties; indeed, it materially transforms every aspect of how the arbitration proceeds. Indeed, this is so obvious that in the recent case of Stolt-Nielsen SA v. Animalfeeds Int'l Corp., involving a challenge to an arbitrator's decision to permit class certification, first, this Court, 435 F. Supp. 2d 382 (S.D.N.Y. 2006), and then the Second Circuit, 548 F.3d 85 (2d Cir. 2008), proceeded to review the merits of the arbitrator's ruling without even remotely suggesting that the controversy was unripe. Moreover, the Supreme Court, in subsequently granting Stolt-Nielsen's petition for a writ of

certiorari, 129 S. Ct. 2793 (2009), only certified questions going to the merits of the dispute, thus implicitly making clear that the Court likewise sees no jurisdictional impediment to considering such issues.

As for "prudential" unripeness, the instant motion involves pure legal questions that will immediately impact the arbitration and, as such, is "eminently fit for judicial review." United States v. Quinones, 313 F.3d 49, 59 (2d Cir. 2002) (internal quotation marks omitted).[1]

Although the Court therefore chooses to exercise its jurisdiction to review the arbitrator's ruling on class certification, the scope of that review is narrow. Specifically,

---

[1] Plaintiffs also argue that Sterling waived its right to seek judicial review of the clause construction award through its "promise" in a RESOLVE program handbook that Sterling will not appeal arbitral decisions favoring employees. The relevant language appears in a chart contrasting the judicial system with the RESOLVE program: whereas, in the judicial system, "[d]ecisions can be appealed and overturned," under RESOLVE, "[the] [d]ecision is protected if for you. The Company cannot appeal." RESOLVE Handbook Chart (Ex. 4 to Claimants' Opp.) (emphasis omitted). The Second Circuit, however, has refused to enforce contractual provisions that purport to bar judicial review of arbitration awards, and has instead held that "private parties may not dictate to a federal court when to enter a judgment enforcing an arbitration award." Hoeft v. MVL Group, Inc., 343 F.3d 57, 65 (2d Cir. 2003), overruled on other grounds, Hall Street Assocs. v. Mattel, Inc., 128 S. Ct. 1396, 1403-04 (U.S. 2008). While plaintiffs attempt to distinguish Hoeft on the basis that it did not involve a contract of adhesion, nothing about that holding was based on the relative sophistication or degree of bargaining power of the parties. Furthermore, the purported "waiver" of judicial review in the RESOLVE handbook is far less clear than that at issue in Hoeft; it is at best ambiguous whether the clause construction award should be interpreted as a "[d]ecision . . . for you" that Sterling cannot appeal under the vague terms of the handbook.

Sterling concedes that the arbitrator's decision to permit possible class certification may be overturned only if it exceeded the arbitrator's powers, in violation of Section 10(a)(4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., or if it was made "in manifest disregard of the law," a doctrine that, while still recognized in the Second Circuit, is "severely limited," Stolt-Nielsen, 548 F.3d at 91, to cases where there is not even a "barely colorable justification for the outcome reached." Telenor Mobile Commc'ns AS v. Storm, LLC, 584 F.3d 396, 407 (2d Cir. 2009).

Here, Sterling first argues that vacatur is warranted under Section 10(a)(4) of the FAA because the arbitrator "exceeded [her] powers" by effectively nullifying certain provisions of the RESOLVE agreements. Specifically, Sterling contends that the award permitting class arbitration disregards RESOLVE's requirements that the arbitration take place in a local venue, that the arbitrator be licensed to practice law in the applicable state, that all claimants submit to Steps 1 and 2 prior to initiating Step 3 arbitration, and that claims under RESOLVE be adjudicated under the law of the jurisdiction in which the claims arose. None of this, however, raises an issue of exceeding arbitral powers under Section 10(a)(4) of the FAA, because that section "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 220 (2d Cir. 2002) (internal quotation marks omitted). Here, where the arbitration clause was broad, the

arbitrator clearly had the power to reach the issues now in question. Indeed, in its prior decision in this case, this Court already determined that the arbitrator (rather than the Court) should resolve the question of whether class arbitration should proceed. See Jock, 564 F. Supp. 2d at 310-12.

Sterling's challenges under the heading of "manifest disregard" likewise rest on the assertions that class certification is irreconcilable with the RESOLVE provisions regarding venue, arbitrator licensing, pre-arbitration procedures, and choice of law. Specifically, Sterling argues that, by reading the possibility of class arbitration into an agreement that nowhere expressly authorizes such a possibility, the arbitrator "nullifies" the foregoing provisions by (1) allowing the instant arbitrator, who is licensed only in New York and Oregon, to adjudicate a potentially nationwide dispute; (2) forcing many putative class members to arbitrate their claims in a distant venue; (3) permitting putative class members to circumvent Steps 1 and 2 of the RESOLVE program; and (4) rendering it impractical to arbitrate a nationwide class action based on the law of the jurisdictions in which each claim arose. Sterling adds that the arbitrator's award violated the provision of Ohio law that requires that a contract be construed in a way that gives meaning to all its provisions.

To the extent that Sterling's papers may be read to assert that the arbitrator manifestly disregarded the law by construing an agreement that is silent on class arbitration to permit such arbitration to proceed, such an argument contravenes the holding of

the Second Circuit in Stolt-Nielsen. The arbitration panel in Stolt-Nielsen construed the agreement as "bespeak[ing] an intent not to preclude class arbitration," and the Second Circuit held that "[t]hat reading . . . is at least 'colorable,'" and therefore not subject to vacatur for manifest disregard. 548 F.3d at 99. Although the lower court (the undersigned) had to some extent disagreed, 435 F. Supp. 2d at 387, and although the Supreme Court has since granted certiorari, the Second Circuit's decision in Stolt-Nielsen remains binding at this time. Moreover, the oral argument in the Supreme Court at least suggests that the particular context of Stolt-Nielsen, a maritime dispute, may limit is applicability to other contexts. See Transcript of Oral Argument at 41:17-19, 58:2-3, Stolt-Nielsen, No. 08-1198 (U.S. Dec. 9, 2009).

But, in fairness, Sterling does not rely simply on the fact that the RESOLVE agreements are silent on class arbitration, but rather emphasizes the alleged inconsistency between class arbitration and the aforementioned provisions regarding venue, choice of law, etc. To be sure, these provisions might have supported a conclusion by the arbitrator that no class arbitration was intended. But the opposite result is not so completely beyond the pale of law and reason as to constitute manifest disregard of law. In any class action, only the individually named plaintiffs are required to meet the various threshold requirements to bringing suit, and, if they are met, a court may then appoint them to represent a class that includes persons over whom the Court might not otherwise have proper venue or the like. The analogy may be imperfect, but it is not so

indefensible as to violate what little is left of the "manifest disregard" doctrine.

Moreover, class treatment has its historic roots in the very kind of claims here made, with the Supreme Court even going so fair as to quote approvingly, in dictum, legislative history declaring that "[T]itle VII actions are by their very nature class complaints," United Airlines, Inc. v. McDonald, 432 U.S. 385, 393 n.13 (1977) (quoting S. Rep. No. 92-415, at 27 (1971)). The arbitrator's decision to allow unnamed class members to eschew certain RESOLVE requirements is arguably similar to Title VII cases holding that procedural requirements applicable to individuals need not be complied with by unnamed members. See id. at 389 n.6 (1977) ("[F]ull relief under Title VII 'may be awarded on a class basis . . . without exhaustion of administrative procedures by the unnamed class members.'" (omission in original)); Snell v. Suffolk County, 782 F.2d 1094, 1100 (2d Cir. 1986) (adopting "single filing rule," whereby when "one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims 'aris[e] out of similar discriminatory treatment in the same time frame'" (alteration in original)). It may also be noted, as the arbitrator observed, that Sterling "has deliberately not revised the RESOLVE Arbitration Agreement to include an express prohibition [of class arbitration], despite numerous arbitral decisions that class claims are permitted in the absence of an express prohibition." Clause Construction Award at 5; see also In re Am. Express Merchants' Litig., 554 F.3d 300, 302-04 (2d Cir. 2009) (discussing the recent

proliferation of class action waivers in arbitration agreements). Thus, there is a colorable argument that under Ohio law, this failure to clarify an ambiguity in the arbitration agreement is to be construed against the drafter. See, e.g., Davidson v. Bucklew, 629 N.E.2d 456, 458 (Ohio App. 1992) (because "appellee could have drafted the arbitration clause in a more limited manner but did not," "any ambiguity must be resolved in appellant's favor"). Taken together, the above arguments are more than sufficient for concluding that the arbitrator did not act in "manifest disregard" of the law.

Finally, as a fall-back, Sterling requests that the Court at least grant a stay of arbitration pending the Supreme Court's decision in Stolt-Nielsen. Assuming the Court has the power to grant such a stay,[2] this relief would not be proper unless "the suppliant for a stay [can] make out a clear case of hardship or inequity in being required to go forward." Landis v. N. Am. Co., 299 U.S. 248, 255 (1936); see also Paine, Webber, Jackson & Curtis Inc. v. Malon S.

---

[2] Whether a district court has power to stay arbitration proceedings pending litigation is an "open question" in this Circuit. United States v. Eberhard, 2004 WL 616122, at *3 (S.D.N.Y. Mar. 30, 2004) (citing Westmoreland Capital Corp. v. Findlay, 100 F.3d 263, 266 n.3 (2d Cir. 1996)). However, cases that have found that courts have such power to stay "appear to have done so only in those circumstances where a stay would be incidental to the court's power under the FAA to enforce contractual agreements calling for arbitration" -- for example, where an arbitration proceeding was not authorized by contract or where the stay is granted in aid of a separate arbitration. Id. These situations are entirely different from the grounds for a stay that Sterling presses here. Therefore, this Court's power to stay, if any, must derive from "the power inherent in every court to control the disposition of the causes on its docket," Landis v. N. Am. Co., 299 U.S. 248, 254 (1936), and not from the provisions of the FAA.

Andrus, Inc., 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) ("Absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim."). In fact, Sterling points to no substantial harm that would justify further delay. While there will undoubtedly be added litigation costs that will be occasioned by going forward with class arbitration proceedings (which is one of the reasons that the instant motion is ripe), the amount of these additional costs may be modest given that discovery would also be necessary for individual claims. Furthermore, as already noted, it is uncertain whether the decision in Stolt-Nielsen will dispose of the issues raised here. The eventual decision might be distinguishable on the basis that the agreements in Stolt-Nielsen arose in the maritime context, were standard industry contracts, and/or were entered into by sophisticated commercial parties. Finally, of course, there is no way to predict when the Supreme Court will decide Stolt-Nielsen, other than that it is likely to be no later than the end of the term in June. Given all of this, it makes better sense to "get on with the show." Delay is the bane of the American legal system, and this Court is loath to contribute to further delay.

The Court therefore reaffirms its August 31 ruling and denies the motion to vacate the arbitrator's ruling or stay the arbitration proceedings. The parties are, however, directed to apprise the Court in writing, every three months beginning January 15, 2010, of the status of the arbitration.

SO ORDERED.

Dated: New York, NY
December 28, 2009

JED S. RAKOFF, U.S.D.J.