USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/10

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
LARYSSA JOCK, et al.,               :
                                    :
              Plaintiffs,           :
                                    :
         -v-                        :     08 Civ. 2875 (JSR)
                                    :
STERLING JEWELERS, INC.,            :     MEMORANDUM ORDER
                                    :
              Defendant.            :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

By an Opinion and Order dated December 28, 2009 (the "December 28 Order," reported at 677 F. Supp. 2d 661), the Court denied the motion of defendant Sterling Jewelers, Inc. ("Sterling") to vacate the arbitrator's determination that the arbitration agreements between Sterling and its employees, including the plaintiffs in the above-captioned class action lawsuit, permitted class arbitration of plaintiffs' employment discrimination claims. On January 26, 2010, Sterling filed a notice of appeal of the December 28 Order. That appeal is presently pending before the Second Circuit. Thereafter, Sterling, pursuant to Federal Rule of Civil Procedure 62.1, filed a motion in this Court seeking an "indicative ruling" as to whether the Court would reconsider its December 28 Order in light of the Supreme Court's recent decision in Stolt-Nielsen, S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758 (2010). The Court received full briefing on this motion and held oral argument on June 30, 2010. For the following reasons, the Court hereby indicates that if jurisdiction were restored, it would reconsider its December 28 Order and vacate the arbitrator's ruling

permitting class arbitration.

By way of background, in June 1998 Sterling put in place a three-step program called "RESOLVE," which provides an alternative dispute resolution mechanism for employment disputes and which requires arbitration of such disputes after the employee in question exhausts certain preliminary "steps." See December 28 Order, 677 F. Supp. 2d at 663. Thereafter, the plaintiffs in this action, who are current and former female Sterling employees, brought this class action lawsuit alleging that Sterling discriminated against them in pay and promotion on the basis of their gender, in violation of Title VII, 42 U.S.C. § 2000e et seq., and the Equal Pay Act, 29 U.S.C. § 206(d), and then moved to refer this dispute to arbitration. Sterling objected to that motion on the ground that the Court, rather than the arbitrator, should resolve certain preliminary issues, including whether the arbitration clauses permit class arbitration. The Court nonetheless referred these matters to the arbitrator (former Magistrate Judge Kathleen A. Roberts), finding that the parties' contract granted the Court discretion to refer such issues to the arbitrator and that it made good sense for the arbitrator to decide these issues in the first instance. Jock v. Sterling Jewelers, Inc., 564 F. Supp. 2d 307, 311 (S.D.N.Y. 2008).

The parties then briefed the issue of class arbitrability to the arbitrator. Sterling argued, among other things, that certain provisions of the RESOLVE agreements, including requirements that each arbitration be held near where the employee worked and that the

2

arbitrator apply local law, were incompatible with class arbitration. The plaintiffs responded chiefly by arguing that under then-applicable Second Circuit precedent, where, as in the RESOLVE agreements, the arbitration clauses do not expressly preclude class arbitration, class arbitration may be permitted. See Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 101 (2d Cir. 2008), rev'd, 130 S. Ct. 1758 (2010).

On June 1, 2009, the arbitrator ruled that the RESOLVE agreements did not prohibit class arbitration, and for that reason allowed class arbitration to proceed. Pursuant to the choice-of-law clause contained in the agreements, this ruling (as amended, the "June 1 Award") applied Ohio law to the issue of whether class claims were authorized under the arbitration contract, and noted that the question of whether class arbitration is permitted by an agreement that does not expressly so provide had not been addressed by the Ohio courts. The arbitrator then reasoned:

> Under Ohio law, contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language. Skivolocki v. East Ohio Gas Co., 38 Ohio St. 2d 244, 247 (1974). "The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract." Montgomery v. Bd. of Educ. of Liberty Township, Union Cty., 102 Ohio St. 189, 193 (1921).
>
> Applying these principles, I find that the RESOLVE Arbitration Agreements do not prohibit class claims.
>
> Sterling argues that RESOLVE's unique contractual provisions for local venues, the application of local laws, and the selection of locally-licensed arbitrators establish that the parties never intended class arbitration of employee claims. Sterling further argues that ignoring the terms of

> RESOLVE that are inconsistent with class arbitration would "rewrite" the parties' Agreement.
>
> I note at the outset that the very concept of intent is problematic in the context of a contract of adhesion. Because this contract was drafted by Sterling and was not the product of negotiation, it was incumbent on Sterling to ensure that all material terms, especially those adverse to the employee, were clearly expressed. Notably, Sterling acknowledges . . . that it has deliberately not revised the RESOLVE Arbitration Agreement to include an express prohibition, despite numerous arbitral decisions that class claims are permitted in the absence of an express prohibition. Under these circumstances, construing the Agreement to contain a waiver of a significant procedural right would impermissibly insert a term for the benefit of one of the parties that it has chosen to omit from its own contract. Montgomery, 102 Ohio St. at 193; cf. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 US 53,64 (1995).[1]
>
> I further find that agreeing to a step process for individual claims does not manifest an intent to waive the right to participate in a collective action, where, as here, the Agreement expressly gives the Arbitrator the "power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction."

Sterling Rule 62.1 Mem., 5/13/10, Ex. A (June 1 Award), at 4-5. Accordingly, the arbitrator concluded that the RESOLVE agreements could not be construed to prohibit class arbitration.

On June 30, 2009, Sterling filed a motion before this Court to vacate the June 1 Award. Sterling also moved to stay arbitration proceedings pending the Supreme Court's decision in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., which presented the question of whether permitting class arbitration where the relevant arbitration clauses were "silent" on class arbitration was consistent

---

[1] In a footnote, the arbitrator added: "Arbitrators faced with agreements containing similar provisions have found them insufficient to reflect any mutual intent to preclude arbitration of class claims." Sterling Rule 62.1 Mem., 5/13/10, Ex. A (June 1 Award), at 5 n.1.

4

with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. This Court denied the motion to stay for the reason, among others, that the Supreme Court's "eventual decision might be distinguishable on the basis that the agreements in Stolt-Nielsen arose in the maritime context, were standard industry contracts, and/or were entered into by sophisticated commercial parties." December 28 Order, 677 F. Supp. 2d at 667-78.[2] Applying the then-binding Second Circuit decision in Stolt-Nielsen, the Court denied the motion to vacate the June 1 Award, holding that the arbitrator's determination was not in excess of her powers or in "manifest disregard" of the law. Id. at 665-67.

On April 27, 2010, the Supreme Court issued its decision in Stolt-Nielsen, reversing the Second Circuit decision relied upon by this Court in the December 28 Order and by the arbitrator in her June 1 Award. The opinion of the Court held that the arbitration panel in Stolt-Nielsen exceeded its powers by "simply . . . impos[ing] its own view of sound policy regarding class arbitration" rather than "interpret[ing] and enforc[ing] [the] contract." 130 S. Ct. at 1767-68. This holding was founded on the "basic precept" that arbitration "'is a matter of consent, not coercion.'" Id. at 1773 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)). Thus, the Court held that the arbitrator's

---

[2] This Court had particular familiarity with the Stolt-Nielsen case because the case was originally assigned to the undersigned. It was the decision of this Court denying class arbitration, see Stolt-Nielsen SA v. Animalfeeds Int'l Corp., 435 F. Supp. 2d 382 (S.D.N.Y. 2006), that the Second Circuit reversed in the decision that was in turn reversed by the Supreme Court.

task is to "to give effect to the intent of the parties" with respect to their agreement to arbitrate, including their specification of "<u>with whom</u> they choose to arbitrate their disputes." <u>Id.</u> at 1774-75.

The parties in <u>Stolt-Nielsen</u> stipulated that they had reached "no agreement" on the issue of class arbitration. <u>Id.</u> at 1775. The Supreme Court held that the arbitration panel there impermissibly required Stolt-Nielsen, S.A., the party seeking to avoid class arbitration, to "establish that the parties to the charter agreements intended to <u>preclude</u> class arbitration." <u>Id.</u> (internal quotation marks omitted). In passages highly relevant to the instant motion, the Supreme Court reasoned as follows:

> An implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator. In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes. But the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration.
>
> Consider just some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration. An arbitrator chosen according to an agreed-upon procedure no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties. . . . The arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well. And the commercial stakes of class-action arbitration are comparable to those of class-action litigation, even though the scope of judicial review is much more limited.

Id. at 1775-76 (citations omitted). For these reasons, the Court rejected the arbitration panel's presumption that "the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." Id. at 1776.[3]

Against this background, Sterling argues in its Rule 62.1 motion that the arbitrator here permitted class arbitration to go forward based on the kind of reasoning rejected by the Supreme Court in Stolt-Nielsen, and, in any event, that there is no indication in the record that the parties affirmatively intended to permit class arbitration. Thus, Sterling contends, a straightforward application of Stolt-Nielsen's holding requires the June 1 Award to be vacated. Plaintiffs resist on the grounds that Stolt-Nielsen is factually distinguishable in important respects, and, in any event, that the record here, unlike the record in Stolt-Nielsen, supports the inference that the parties implicitly agreed to permit arbitration of class claims. For the following reasons, the Court concludes, in light of Stolt-Nielsen, that the arbitrator's construction of the

---

[3] The Court in Stolt-Nielsen also rejected the threshold argument, also advanced at earlier stages by the plaintiffs in this matter, that an arbitral award permitting class arbitration to go forward was constitutionally unripe for review. See 130 S. Ct. at 1767 n.2. The Court expressly declined to reach the related question of when judicial review of such an award might be unripe as a prudential matter. Id. In their opposition to Sterling's Rule 62.1 motion, plaintiffs assert that there "remains serious question" as to whether the June 1 Award is ripe for judicial review. Pls' Rule 62.1 Resp., 5/28/10, at 22 n.8. Plaintiffs made this same argument as to prudential ripeness in opposing Sterling's prior motion to vacate the June 1 Award. The Court squarely rejected that argument in its December 28 Order, see 677 F. Supp. 2d at 664, and sees no reason to revisit that holding now.

RESOLVE agreements as permitting class arbitration was in excess of her powers and therefore cannot be upheld.

Plaintiffs concede, as they must, that the June 1 Award did not by its terms rest upon a finding that the parties manifested any affirmative intention to permit class arbitration. See Transcript, 6/30/10, at 24 ("MR. SELLERS: . . . I will concede that there's nothing explicit in the [arbitrator's] clause construction that provides for a finding of assent by the parties; and that the arbitrator, based on the legal standards that were applicable then, was focused on whether there was any intention to preclude it."). Rather, consistent with the arbitral award upheld by the Second Circuit in Stolt-Nielsen, Arbitrator Roberts started from the premise that an arbitration clause silent on class arbitration may be construed to permit such arbitration, devoted her analysis to determining whether there was any indication that the parties intended to preclude class arbitration, and ultimately concluded that the agreements "do not prohibit" class arbitration. This approach is plainly incompatible with the Supreme Court's subsequent pronouncements in Stolt-Nielsen.

Nonetheless, plaintiffs urge the Court to leave the arbitrator's ruling undisturbed because, they argue, the record before the arbitrator evinces the parties' shared intent to permit class arbitration. Specifically, plaintiffs focus on the following aspects of the record before the arbitrator: (1) the broad language of the RESOLVE agreements' arbitration clauses, which provide for the arbitration of "any dispute, claim or controversy . . . against

8

Sterling," and empower the arbitrator to award "any types of legal or equitable relief that would be available in a court of competent jurisdiction"; (2) that under Ohio law, any ambiguities in the arbitration agreements, which are contracts of adhesion, must be construed against the drafter (Sterling); (3) that there is a tradition of class claims in the context of employment discrimination litigation; (4) that Sterling deliberately chose not to amend the RESOLVE agreements to expressly preclude class claims; and (5) that certain consumer arbitration agreements drafted by Sterling, unlike the RESOLVE agreements, do include an express preclusion of class claims. Assuming arguendo that the June 1 Award may be sustained, notwithstanding its silence on many of these issues, as long as the record before the arbitrator provides some indication that the parties intended to permit arbitration of class claims,[4] the Court finds that the record here does not so indicate.

First, as to the broad language of the arbitration clauses,

---

[4] In this regard, the plaintiffs rely on Duferco International Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383 (2d Cir. 2003), which, in explicating the "manifest disregard" standard for vacatur of an arbitral award, held that "[e]ven where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case," id. at 390. Accord, e.g., Stolt-Nielsen, 548 F.3d at 97 ("Even where an arbitrator's explanation for an award is deficient, we must confirm it if a justifiable ground for the decision can be inferred from the record."), rev'd on other grounds, 130 S. Ct. 1758. It should be noted, however, that the opinion of the Court in Stolt-Nielsen expressly declined to reach the issue of whether the "manifest disregard" standard remains a viable basis for vacatur, 130 S. Ct. at 1767-68, and did not suggest that the reviewing court had any obligation or discretion to go beyond the arbitrator's decision in determining whether the parties had assented to class arbitration.

9

the clauses at issue in <u>Stolt-Nielsen</u> contained similarly broad wording, providing for the arbitration of "[a]ny dispute arising from the making, performance or termination of this Charter Party." 130 S. Ct. at 1765. Second, as to the claim that the RESOLVE agreements are contracts of adhesion, while this might be a "colorable argument" in the abstract, <u>see</u> December 28 Order, 677 F. Supp. 2d at 667, an Ohio intermediate appellate court, construing the very agreement here in issue, has expressly reached the contrary result, <u>W.K. v. Farrell</u>, 167 Ohio App. 3d 14, 26-27 (2006) (rejecting Sterling employee's claim that RESOLVE agreement was adhesive or unconscionable), and there is no Ohio case to the contrary. Third, while many Title VII lawsuits are litigated as class claims (and many are not), there is no basis for asserting that there is any long-standing custom of class <u>arbitration</u> of such claims. Last, with respect to Sterling's final two arguments, these contentions presume that Sterling had some obligation to affirmatively clarify that the RESOLVE agreements precluded class arbitration, which is directly contrary to <u>Stolt-Nielsen</u>'s rejection of the notion that "parties' mere silence on the issue . . . constitutes consent to resolve their disputes in class proceedings." 130 S. Ct. at 1776.

Even when the most persuasive aspects of the foregoing arguments are taken together, plaintiffs still fail to identify any concrete basis in the record for the arbitrator to conclude that the parties manifested an intent to arbitrate class claims.[5] At most,

---

[5] The Court is unpersuaded by plaintiffs' argument that it should remand this matter to the arbitrator to determine in the

10

the record supports a finding that the agreements do not <u>preclude</u> class arbitration, but under <u>Stolt-Nielsen</u>, this is not enough. And while <u>Stolt-Nielsen</u> does not foreclose the possibility that parties may reach an "implicit" -- rather than express -- "agreement to authorize class-action arbitration," <u>id.</u> at 1775, the record here provides no support for such an implied agreement.

Finally, plaintiffs attempt to distinguish <u>Stolt-Nielsen</u> from this case on its facts. Plaintiffs emphasize that <u>Stolt-Nielsen</u> arose in the context of an antitrust dispute between two commercially sophisticated parties: Stolt-Nielsen, S.A., the owner and operator of parcel tankers, and AnimalFeeds International Corp., a cargo-shipper. Moreover, the arbitration clauses in <u>Stolt-Nielsen</u> were contained in maritime charter party agreements, and evidence in the record there showed that it is "customary in the shipping business for parties to resolve their disputes through bilateral arbitration." <u>Id.</u> at 1769 n.6. And in <u>Stolt-Nielsen</u>, unlike here, the parties stipulated to the arbitrators that their agreement was "silent" on the question of class arbitration. <u>Id.</u> at 1766. These and other distinguishable

---

first instance whether the record can support a finding of an intent to arbitrate class claims. First, a remand for this purpose appears to be barred by the <u>functus officio</u> doctrine, which "dictates that, once arbitrators have fully exercised their authority to adjudicate the issues submitted to them, 'their authority over those questions is ended,' and "'the arbitrators have no further authority, absent agreement by the parties, to redetermine th[ose] issue[s].'" <u>T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.</u>, 592 F.3d 329, 342 (2d Cir. 2010) (alterations in original). Second, even if a remand to the arbitrator were not so barred, the Court sees no reason at this point to exercise its discretion to refer these questions to the arbitrator when the Court now has full familiarity with the record of this case as well as with the legal questions raised in the instant motion.

facts manifestly played some role in the Supreme Court's reasoning, see, e.g., id. at 1775, and, indeed, the dissenting Justices read these distinctions as limitations on the Court's holding, id. at 1783 (Ginsburg, J., dissenting) ("[B]y observing that 'the parties [here] are sophisticated business entities,' and 'that it is customary for the shipper to choose the charter party that is used for a particular shipment,' the Court apparently spares from its affirmative-authorization requirement contracts of adhesion presented on a take-it-or-leave-it basis.").

This Court, however, does not read Stolt-Nielsen so narrowly, and instead finds that these distinctions cannot cure the defects in the June 1 Award in light of Stolt-Nielsen's essential holding. The opinion of the Court in Stolt-Nielsen clearly held, in unqualified terms, that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." Id. at 1775. While contextual factors such as the sophistication of the parties, their relative bargaining position with respect to the arbitration clauses, and any pertinent tradition of dispute resolution might aid in construing ambiguous manifestations of the parties' intentions, they cannot establish assent to class arbitration where, as here, the contract itself provides no reason to believe the parties reached any agreement on that issue.

Finally, although plaintiffs are correct that here, unlike in Stolt-Nielsen, there is no stipulation between the instant parties that the RESOLVE agreements are "silent" on class arbitration, this

12

is not a point that cuts in their favor. As noted, the RESOLVE agreements contain provisions that, among other things, require claimants to complete a multi-step process before submitting their disputes to an arbitrator, require the arbitration to take place in a local venue, and require the arbitrator to apply local law. While the June 1 Award concluded that these provisions were not incompatible with class arbitration, and this Court declined to vacate that award under the law of the Circuit at the time, these features, if anything, support the inference that the parties here may have intended to <u>preclude</u> class arbitration; they certainly do not evince any assent to permit arbitration of class claims. <u>Cf. Fensterstock v. Educ. Fin. Partners</u>, --- F.3d ---, 2010 WL 2729759, at *14 (2d Cir. July 12, 2010) (holding that an arbitration clause expressly purporting to waive the right to class arbitration was unconscionable as a matter of California law; severing that clause as unenforceable; but then concluding that the arbitration agreement, as severed, was "silent as to the permissibility of class-based arbitration, and under <u>Stolt-Nielsen</u> we have no authority to order class-based arbitration").

    For the foregoing reasons, if jurisdiction were restored to this Court, the Court would reconsider its December 28 Order and vacate the June 1 Award permitting class arbitration as having been made in excess of the arbitrator's powers. <u>See</u> <u>Stolt-Nielsen</u>, 130 S. Ct. at 1775 ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for

concluding that the party *agreed* to do so.").[6]

Pursuant to Rule 62.1(b), Sterling is directed bring this Memorandum Order to the attention of the Court of Appeals. The Clerk of this Court is directed to close documents 72 and 76 on the docket of this case.

SO ORDERED.

Dated: New York, NY
       July 26, 2010

JED S. RAKOFF, U.S.D.J.

---

[6] Sterling's motion for a stay pending the Court's determination of the Rule 62.1 motion, which was preliminarily addressed in an Order dated July 6, 2010 that granted the stay only until July 30, is hereby denied as moot.