**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x

LARYSSA JOCK, et al.,　　　　　　　　　:　　1:08 CV 2875 (JSR)
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　U.S. District Judge Jed S. Rakoff
　　　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
STERLING JEWELERS INC.,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　Defendant.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:

--------------------------------------------------------- x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO VACATE THE ARBITRATOR'S CLASS DETERMINATION AWARD**

19013095v.6

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      INTRODUCTION ......................................................................................................... 1

II.     FACTS AND PROCEDURAL HISTORY ................................................................... 2

        A.      The Parties' Class Certification Submissions And Hearing ................................. 2

        B.      The Arbitrator's Class Determination Award ...................................................... 2

III.    STANDARD OF REVIEW ........................................................................................... 4

IV.     ARGUMENT ................................................................................................................ 4

        A.      The Arbitrator Exceeded Her Authority By Purporting To Bind Absent
                Class Members Who Did Not Express Their Consent To Be Bound .................... 4

                1.      Absent Class Members Who Do Not Respond To Class Notice
                        Cannot Be Deemed To Have Consented To The Arbitrator's
                        Authority .................................................................................................... 5

                2.      The Arbitrator's Illegitimate Assertion Of Authority Opens The
                        Door To Collateral Lawsuits By Absent Class Members .......................... 7

                3.      Neither The Award Nor Plaintiffs' Contrary Arguments Establish
                        The Legitimacy Of The Arbitrator's Authority ........................................ 9

        B.      The Arbitrator Exceeded Her Authority By Permitting Opt-Out Rights In
                A Mandatory Rule 23(b)(2) Class ....................................................................... 11

                1.      No Procedural Rule Authorizes The Arbitrator To Certify A Rule
                        23(b)(2) Opt-Out Class ............................................................................ 12

                2.      The Arbitrator Also Exceeded Her Authority By Splintering An
                        Indivisible Remedy Contrary To *Wal-Mart Stores, Inc. v. Dukes* ............ 14

V.      CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*187 Concourse Assocs. v. Fishman*,
399 F.3d 524 (2d Cir. 2005)...................................................................4

*Am. Postal Workers Union v. United States Postal Serv.*,
754 F.3d 109 (2d Cir. 2013)...................................................................10

*Amara v. CIGNA Corp.*,
Nos. 13-447 & 13-526, 2014 U.S. App. LEXIS 24265 (2d Cir. Dec. 23, 2014)....................14

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.*,
344 F.3d 255 (2d Cir. 2003)...................................................................4

*First Options of Chicago, Inc. v. Kaplan*,
514 U. S. 938 (1995)...................................................................11, 1

*Fultz & Thatcher v. Burrows Group Corp.*,
No. CA 2005-11-126, 2006 WL 3833971 (Ohio Ct. App. Dec. 28, 2006) ...........................11

*Gardner v. Western Beef Props.*,
No. 07-CV-2345, 2011 U.S. Dist. LEXIS 146467 (E.D.N.Y. Sept. 26, 2011) ......................15

*Green Tree Financial Corp. v. Bazzle*,
539 U.S. 444 (2003)...................................................................9

*In Re Payment Card Interchange Fee & Merch. Disc. Antitrust. Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...................................................15

*Jefferson v. Ingersoll Int'l Inc.*,
195 F.3d 894 (7th Cir. 1999) ...................................................................15

*Long Island R.R. v. Long Island R.R. Police Benevolent Ass'n*,
No. 94 Civ. 2924, 1995 U.S. Dist. LEXIS 4176 (S.D.N.Y. Mar. 31, 1995)...........................7

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
672 F.3d 482 (7th Cir. 2011), *cert. denied*, 133 S. Ct. 338 (2012)........................15

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
No. 05-C-6583, 2012 WL 5278555 (N.D. Ill. July 13, 2012) ................................15

*Network Capital Funding Corp. v. Papke*,
No. G049172, 2014 Cal. App. LEXIS 907 (Cal. App. Oct. 9, 2014), *review pending*,
230 Cal. App. 4th 503 (Cal. Jan. 14, 2015) ...........................................7

*Ohio v. Gibson*,
   No. 10AP-1047, 2011 WL 5184211 (Ohio App. 10th Dist. Nov. 1, 2011)..............................5

*Oxford Health Plans LLC v. Sutter*,
   133 S. Ct. 2064 (2013) .................................................................................1, 6, 7, 8, 9, 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).........................................................................................................7

*Porter v. City of Columbus, Board of Indus. Relations*,
   675 N.E.2d 1329 (Ohio Ct. App. 1996)............................................................................11

*Reed Elsevier, Inc. v. Crockett*,
   734 F.3d 594 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 2291 (2014).......................................10

*Reliastar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*,
   564 F.3d 81 (2d Cir. 2009)...........................................................................................4, 5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)......................................................................................................8, 9

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989).........................................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*
   131 S. Ct. 2541 (2011)...............................................................................11, 12, 13, 14, 15

## STATUTES

9 U.S.C. § 10(a)(4)............................................................................................................1, 4

Equal Pay Act ("EPA")...........................................................................................................3

Federal Arbitration Act .........................................................................................................4

Judiciary Act of 1789 .........................................................................................................7, 8

Title VII of the Civil Rights Act of 1964............................................................................ *passim*

## OTHER AUTHORITIES

AAA Supplementary Rule 4 ....................................................................................................12

AAA Supplementary Rule 5 .................................................................................................4, 13

AAA Supplementary Rule 5(c).................................................................................................13

AAA Supplementary Rule 6 .................................................................................................4, 13

Fed. R. Civ. P. 23 .................................................................................................12, 13, 16

Fed. R. Civ. P. 23(b)(2) ................................................................................................. *passim*

Fed. R. Civ. P. 23 (b)(3) ...........................................................................................2, 13, 14

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................................13

Fed. R. Civ. P. 23(c)(4) ...........................................................................................2, 13, 15

Restatement (Second) of Contracts § 69(1) ......................................................................5

Restatement (Second) of Contracts §69(1) (1979) .......................................................11

19013095v.6

Defendant Sterling Jewelers Inc. ("Sterling") respectfully submits this memorandum of law in support of its motion to vacate the Arbitrator's Class Determination Award issued on February 2, 2015 ("Award") pursuant to 9 U.S.C. § 10(a)(4).

I.      **INTRODUCTION**

The Court should vacate the Award[1] because the Arbitrator exceeded her authority in two fundamental ways.

*First*, the Award purports to bind class members who have not consented to be a part of the arbitration.  As a result, if this arbitration moves forward, the claims of up to 44,000 individuals will be decided in a class arbitration to which only 254 of them consented to be bound, and the final decision of the Arbitrator will subject to collateral attack by tens of thousands of potential plaintiffs.  This problem was anticipated by Justice Alito, joined by Justice Thomas, in his concurring opinion in *Oxford Health Plans LLC v. Sutter*, in which he explained that "[c]lass arbitration is a matter of consent" and "[w]ith no reason to think that the absent class members ever agreed to class arbitration, it is far from clear that they will be bound by the arbitrator's ultimate resolution of this dispute."[2]  The Court should grant Sterling's motion on this ground alone.

*Second*, alternatively, if the Court finds that the Arbitrator possesses the authority to bind absent class members, the Court should grant Sterling's motion to vacate on the ground that the Award purports to certify a Rule 23(b)(2) injunctive and corresponding declaratory relief "opt-out" class, notwithstanding the clear holding of the Supreme Court that Rule 23(b)(2) does not permit an "opt out" class. The Arbitrator has no authority to create such a mechanism.

---

[1] The Award is attached as Exhibit 1 to the Declaration of Gerald L. Maatman, Jr., filed contemporaneously herewith ("Maatman Dec.").

[2] 133 S. Ct. 2064, 2071 (2013) (Alito, J., concurring).

II.     **FACTS AND PROCEDURAL HISTORY**

        In light of prior motion practice and joint reports to this Court, Sterling presumes the

Court's familiarity with the factual allegations and legal claims brought by Plaintiffs in this

gender-based discriminatory pay and promotion practices case.  However, this Section provides a

brief update regarding the events in the Arbitration relating to class certification and the Award.

        A.     **The Parties' Class Certification Submissions And Hearing**

        The Arbitrator established a discovery and briefing schedule for Plaintiffs' motion for

class certification, and both Plaintiffs and Sterling submitted lengthy briefs and supporting

evidentiary materials, including documents produced and deposition testimony taken during

discovery.  Additionally, both Plaintiffs and Sterling retained respective expert witnesses,

including economists who performed statistical analyses of Sterling's pay and promotion data,

and industrial psychology and sociology experts who opined on Sterling's pay and promotion

systems, along with its corporate culture.  Those expert witnesses submitted detailed written

reports, they were deposed by the Parties' counsel, and their opinions were the subject of

*Daubert* motions.  After full briefing on the class certification motion, the Parties appeared

before the Arbitrator for oral argument that lasted two days.

        B.     **The Arbitrator's Class Determination Award**

        On February 2, 2015, the Arbitrator granted Plaintiffs' motion for class certification in

part and denied it in part.  The Award certified Plaintiffs' Title VII disparate impact claims for

declaratory and injunctive relief only under Rules 23(b)(2) and 23(c)(4), with respect to specific

pay and promotion practices used by Sterling during the class period.[3]  The Award denied class

certification entirely on Plaintiffs' Title VII claims for monetary damages under Rule 23(b)(3),

---

[3] Award at 8.

including back pay and punitive damages (that had been sought by Claimants), and also denied class certification entirely on Plaintiffs' Title VII disparate treatment claim.[4]

The Arbitrator also denied Plaintiffs' request for certification of an opt-out class on their Equal Pay Act ("EPA") claims, finding they must proceed as an opt-in collective action if at all.[5] The Arbitrator further issued findings on the class period, tolling, and Sterling's non-Rule 23 related arguments lodged against class certification.

In addition, the Award denied Sterling's challenge to the Arbitrator's authority to bind anyone other than 254 consenting putative class members who affirmatively evidenced an intent to agree to the resolution of the arbitration proceeding.  In response to Sterling's argument that absent putative class members had never consented to the Arbitrator's authority to decide class issues, the Arbitrator held that by signing the RESOLVE arbitration agreement, absent putative class members had "clearly consented" to her authority to decide issues of arbitrability.[6]  In reaching this conclusion, the Arbitrator relied solely on the fact that the RESOLVE arbitration agreement provides for the application of American Arbitration Association ("AAA") Employment Arbitration Rules, and the AAA Supplementary Rules for Class Arbitrations "provide that the arbitrator shall determine 'whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.'"[7]

---

[4] *Id.*

[5] *Id.* at 113-115.

[6] *Id.* at 117.

[7] *Id.*

Finally, the Arbitrator ordered counsel for the parties to submit a proposed form of an "opt-out" class notice consistent with the Award and pursuant to AAA Supplementary Rules 5 and 6.[8]

## III.   STANDARD OF REVIEW

The Federal Arbitration Act provides that an arbitral award may be vacated "where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  Arbitrators exceed their powers where, as here, their awards do not draw their essence from the underlying agreement to arbitrate.  *See Reliastar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (citing *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005)).  "While a broad arbitration clause affords arbitrators considerable discretion …, they may not 'exceed the power granted to them by the contract itself.'"  *Reliastar*, 564 F.3d at 87-88 (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003)).

## IV.   ARGUMENT

### A.   The Arbitrator Exceeded Her Authority By Purporting To Bind Absent Class Members Who Did Not Express Their Consent To Be Bound

The Arbitrator exceeded her authority because the Award purports to bind absent putative class members who did not agree to join this class arbitration.  Unlike a judge in a court of law, an arbitrator has no source of legal power to assert over parties beyond the arbitration agreement they signed.  Arbitration is grounded in consent alone, and while Sterling and approximately 254 Plaintiffs[9] did agree to allow the Arbitrator to decide whether the arbitration agreement here precludes or allows class arbitration, the other approximately 44,000 alleged class members did

---

[8] *Id.* at 118.

[9] This figure includes those Plaintiffs who filed opt-in notices to join this proceeding, along with those represented by Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein") and its co-counsel in the AAA proceeding.

not.  Accordingly, if Sterling prevails on the merits in the arbitration, any one of the absent class members could collaterally attack the Arbitrator's final decision for lack of consent, an outcome made more likely by Plaintiffs' stipulation that they would not seek compensatory damages on behalf of class members.[10]  The Arbitrator's assertion of authority over individuals who did not agree to be part of this class arbitration is a prime example of awards that do not draw their essence from the underlying agreement to arbitrate.[11]  The Court should grant Sterling's motion to vacate on this ground alone.

### 1. Absent Class Members Who Do Not Respond To Class Notice Cannot Be Deemed To Have Consented To The Arbitrator's Authority

Arbitration "is a matter of consent, not coercion."[12]  The authority of an arbitrator to issue any order at all derives only from the agreement at hand and the consent of the parties to submit their dispute to arbitration.  The Arbitrator has already ruled that the agreement here ("RESOLVE") allows the Named Plaintiffs to bring a class arbitration, and Sterling is not re-litigating that question here.  Instead, the issue now is whether others have consented to join Named Plaintiff Laryssa Jock's class action.  Presumably the Arbitrator will deem class members who remain silent in response to the class opt-out notice to have consented to the authority of this Arbitrator to make decisions on their behalf.  But "[g]enerally, one party's silence after receiving an offer does not constitute acceptance of an offer."[13]

---

[10] Award at 106.

[11] *Reliastar*, 564 F.3d at 85.

[12] *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

[13] *Ohio v. Gibson,* No. 10AP-1047, 2011 WL 5184211, at *3 (Ohio App. 10th Dist. Nov. 1, 2011) (holding that in the absence of prior dealings or other special circumstances, silence does not constitute acceptance) (*citing* Restatement (Second) of Contracts § 69(1)).

Absent class members who receive the opt-out notice and do nothing will not have consented to the Arbitrator's authority to determine whether RESOLVE authorizes a class arbitration.  As the Supreme Court explained, "[a]n arbitrator may employ class procedures only if the parties have authorized them."[14]  An arbitrator's "erroneous interpretation of contracts that do not authorize class arbitration cannot bind someone who has not authorized the arbitrator to make that determination."[15]  Yet here, the Arbitrator purports to apply the Award to absent class members who do not even respond to the class notice with regard to Plaintiffs' Title VII disparate impact claims.[16]  Moreover, the Award does not appoint Cohen Milstein or any other law firm as class counsel, raising further questions as to whether the arbitration proceeding can resolve the claims of absent class members.  As Justice Alito, joined by Justice Thomas, explained while concurring in the Supreme Court's recent decision in *Oxford Health Plans LLC v. Sutter*,[17] absent class members like these may legitimately argue they are not bound by this Award:

> Where absent class members have not been required to opt-*in*, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a class-wide basis which arbitration procedures are to be used.[18]

Just as in the agreement at issue in *Oxford Health*, "the absent members of the plaintiff class have not submitted themselves to this arbitrator's authority in any way."[19]  The fact that they all signed a RESOLVE agreement is irrelevant because "an arbitrator's erroneous interpretation of

---

[14] *Oxford Health*, 133 S. Ct. at 2066.

[15] *Id.* at 2071(Alito, J., concurring).

[16] Award at 118 (directing issuance of class notice on an opt-out basis).

[17] 133 S. Ct. at 2071-72.

[18] *Id.* at 2072 (emphasis in original).

[19] *Id.* at 2071.

contracts that do not authorize class arbitration cannot bind someone who has not authorized the arbitrator to make that determination."[20]

In contrast, once a court of law decides to certify a class, its decisions operate to bind absent class members because it has judicial authority that stems from the common law and Congressional enactments such as the Judiciary Act of 1789 and the Federal Rules of Civil Procedure.[21]  No such extrinsic source of authority gives arbitrators power to bind anyone to their decisions.  In other words, the sources of legal legitimacy from which courts derive their authority to issue rulings that apply to absent class members are entirely absent in an arbitration, where an arbitrator's authority is derived solely from the contract.

> **2.     The Arbitrator's Illegitimate Assertion Of Authority Opens The Door To Collateral Lawsuits By Absent Class Members**

If the Arbitrator cannot rule upon the claims of absent class members legitimately, and the defense prevails in disproving class-wide disparate impact in the class arbitration, absent class members may seek to collaterally attack the Arbitrator's authority to bind them to a judgment favorable to Sterling.  "Class arbitrations that are vulnerable to collateral attack allow absent class members to unfairly claim the benefit of a favorable judgment without subjecting

---

[20] 133 U.S. at 2071.  Other courts have noted their agreement with Justice Alito's concerns.  *See, e.g., Network Capital Funding Corp. v. Papke*, No. G049172, 2014 Cal. App. LEXIS 907, at *22 (Cal. App. Oct. 9, 2014) (the court "echo[ed] the concerns of Justice Alito"), *review pending*, 230 Cal. App. 4th 503 (Cal. Jan. 14, 2015).  Other courts have reached analogous rulings, finding arbitrators to have exceeded their authority.  *See, e.g., Long Island R.R. v. Long Island R.R. Police Benevolent Ass'n*, No. 94 Civ. 2924, 1995 U.S. Dist. LEXIS 4176, at *9 (S.D.N.Y. Mar. 31, 1995) ("the arbitrator exceeded his authority by fashioning a remedy contrary to the CBA . . . and the formulation of the issues submitted to him").

[21] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985) ("As a class-action defendant petitioner is in a unique predicament. . . . The only way a class-action defendant like petitioner can assure itself of this binding effect of the judgment is to ascertain that the forum court has jurisdiction over every plaintiff whose claim it seeks to adjudicate, sufficient to support a defense of res judicata in a later suit for damages by class members.").

themselves to the binding effect of an unfavorable one."[22]  Sterling therefore could prevail before

the Arbitrator and still face up to 43,746 individual disparate impact claims.  And judges in this

District – and others around the country – could be asked by these absent class members to

consider *de novo* whether RESOLVE precludes class arbitration.

If Sterling prevails on the issues certified by the Arbitrator by demonstrating that its pay

and promotion policies do <u>not</u> have an adverse impact on women or that any practices having a

disparate impact are job-related and justified by business necessity, there is a risk that absent

class members who did not respond to the class opt-out notice will be allowed to challenge in

court the applicability of the Arbitrator's Final Award to them because they never consented to

be a part of the class arbitration in the first place.  Justice Alito's reasoning demonstrates the

significant risk to Sterling in the arbitration conceived by this Arbitrator:

> [P]etitioner consented to the arbitrator's authority by conceding that he should
> decide in the first instance whether the contract authorizes class arbitration. . . .
> But *unlike petitioner, absent members of the plaintiff class never conceded that*
> the contract authorizes the arbitrator to decide whether to conduct class
> arbitration.  It doesn't.  If we were reviewing the arbitrator's interpretation of the
> contract *de novo*, we would have little trouble concluding that he improperly
> inferred "[a]n implicit agreement to authorize class-action arbitration . . . from the
> fact of the parties' agreement to arbitrate."[23]

Here, a court considering an absent class member's collateral challenge to the Arbitrator's

decisions would review *de novo* whether she consented to allow the Arbitrator to bind her.

The unacceptable risk to Sterling in these circumstances demonstrates the fundamental

flaw in the Arbitrator's assertion of authority over issues certified under Title VII.  And it also is

contrary to the very efficiency gains supposed to be achieved through the use of class action

---

[22] *Oxford Health*, 133 S. Ct. at 2072 (internal quotation marks and citation omitted).

[23] *Id.* at 2071 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010))
(emphasis added).  Sterling's agreement to allow the Arbitrator to decide whether the contractual
terms of RESOLVE preclude class proceedings, therefore, is irrelevant to the issue presented
here.

mechanisms.  Because the foundation of arbitration – consent – is absent here as to putative class members beyond the 254 Plaintiffs who affirmatively evidenced an intent to agree to the resolution of the arbitration proceeding, the Award is invalid.

> ### 3. Neither The Award Nor Plaintiffs' Contrary Arguments Establish The Legitimacy Of The Arbitrator's Authority

The Arbitrator's analysis of these arguments in the Award is deeply flawed. [24]  The Arbitrator found that when Plaintiffs agreed to RESOLVE, they agreed to the AAA Rules, which authorizes class proceedings and therefore authorized the Arbitrator to decide whether the agreements permit class arbitration. [25]  She explained:

> [E]ach of the absent class members signed the RESOLVE arbitration agreement, which clearly provides for the application of the AAA Rules.  The AAA Supplementary Rules for Class Arbitrations, which "apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of [the AAA] where a party submits a dispute to arbitration on behalf of or against a class or purposes class," provide that the arbitrator shall determine "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class."  Accordingly, by signing the RESOLVE arbitration agreement, each of the absent class members agreed that the arbitrator would determine whether the RESOLVE arbitration agreement permits class arbitration. [26]

---

[24] The Supreme Court's jurisprudence in the area of consent to class arbitration is fast-developing.  This defense, if not raised now, may be deemed by a future court considering proceedings brought by non-consenting claimants and putative class members to have been waived.  Sterling therefore respectfully seeks vacatur at this time.  Indeed, the Supreme Court's decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), led observers to incorrectly believe "that the judgment in Bazzle requires an arbitrator, not a court, to decide whether a contract permits class arbitration."  *Stolt-Nielsen, S.A.*, 559 U.S. at 680.  After *Stolt-Nielsen* but before *Oxford Health*, district courts were divided about the significance of *Bazzle*.  The question as to whether the *Bazzle* plurality enjoyed precedential value was finally resolved in *Oxford Health*, where a unanimous Supreme Court concluded that "*Stolt-Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability."  133 S. Ct. at 2068 n.2.  In short, because these are complex issues likely to recur in an unsettled area of the law, Sterling is preserving its position in light of considerable uncertainty as to what will occur after the conclusion of the class arbitration.

[25] Award at 117.

[26] *Id.*

This is not sufficient to constitute consent to AAA class procedures and, in fact, the AAA Supplementary Rules themselves state their existence does not demonstrate assent to class arbitration.[27]   Moreover, this analysis sidesteps entirely the issue of whether absent putative class members have provided this Arbitrator authority to decide anything on their behalves, and they must consent in order to be drawn in and bound to the class arbitration.

The Order implicitly acknowledges that RESOLVE itself does not mention the AAA Supplementary Rules for Class Arbitrations.  A female employee of Sterling who agreed to RESOLVE, therefore, did not agree expressly to the AAA Supplementary Rules for Class Arbitrations.  Instead, she agreed to RESOLVE procedures, which the "Step 1, 2 and 3" procedures expressly provided for in the RESOLVE brochure.  She did not receive a copy of the AAA Supplementary Rules for Class Arbitrations when she signed RESOLVE.  Therefore, it exceeds the Arbitrator's authority to attempt to bind anyone except the 254 claimants who have affirmatively evidenced an intent to agree to the resolution of this proceeding.[28]

Plaintiffs' arguments in the class certification proceeding relating to these points are similarly unpersuasive.  During oral argument, Plaintiffs' counsel stated their view that opt-out notice rights would resolve this issue,[29] but as explained above, opting out does not provide

---

[27] *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599-600 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 2291 (2014) ("the Supplemental Rules expressly state that one should 'not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis'").

[28] For these reasons, too, the Second Circuit's recent decision in *Am. Postal Workers Union v. United States Postal Serv.*, 754 F.3d 109, 113-14 (2d Cir. 2013), is inapposite.  There, "all conced[ed]" that the question of whether RESOLVE authorizes class arbitration was properly submitted to the Arbitrator.  Here, that is precisely the issue to which the absent class members did not agree.

[29] Feb. 17, 2014 Class Certification Hearing Transcript Excerpts, attached to Maatman Dec. at Ex. 2 ("Tr."), at 525-26.

consent because it is mere silence.[30]   Second, even though as a concurring opinion, Justice

Alito's analysis is not the law of the land, absent class members' lack of response to the class

notice (*i.e.,* silence) cannot be construed as consent under well-established contract law

principles.[31]   The Award is structured so that this outcome is guaranteed here; approximately

43,750 current and former Sterling employees are bound by the class proceeding the Arbitrator

establishes, unless they expressly speak up and opt-out.

### B.   The Arbitrator Exceeded Her Authority By Permitting Opt-Out Rights In A Mandatory Rule 23(b)(2) Class

Alternatively, even if this Court finds that the Arbitrator had the authority to bind absent

class members with the Award, it should still vacate the Award because the Arbitrator exceeded

her authority by certifying Plaintiffs' Title VII disparate impact claim for declaratory and

injunctive relief on four issues as an ***opt-out*** class by relying on the AAA Supplementary Rules

for Class Arbitration and Federal Rule of Civil Procedure 23(b)(2).  Those rules do not allow for

exclusion from a Rule 23(b)(2) class.  The Award in this way directly also conflicts with the

Supreme Court's holding in *Wal-Mart Stores, Inc. v. Dukes* that injunctive relief classes certified

under Rule 23(b)(2) are ***mandatory*** classes from which class members cannot opt-out.[32]

According to the Supreme Court, "[t]he Rule provides no opportunity for . . . (b)(2) class

---

[30] *Oxford Health*, 133 S. Ct. at 2071 ("The distribution of opt-out notices does not cure this fundamental flaw in the class arbitration proceeding in this case. '[A]rbitration is simply a matter of contract between the parties,' and an offeree's silence does not normally modify the terms of a contract[.]") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U. S. 938, 943 (1995) (citing 1 Restatement (Second) of Contracts §69(1) (1979)).

[31] *See Fultz & Thatcher v. Burrows Group Corp.*, No. CA 2005-11-126, 2006 WL 3833971, at *6 (Ohio Ct. App. Dec. 28, 2006) (Ohio court may not rewrite contract that did not address a particular foreseeable contingency); *Porter v. City of Columbus, Board of Indus. Relations*, 675 N.E.2d 1329, 1332 (Ohio Ct. App. 1996) ("[C]ourts will exercise great caution not to include in the contract, by construction, something which was intended to be excluded.") (quotation omitted).

[32] 131 S. Ct. 2541, 2558 (2011).

members to opt out."[33]  Rather, following *Wal-Mart*, members of a Rule 23(b)(2) class must seek "indivisible" injunctive relief from which they cannot be excluded.[34]  Yet the Award expressly contemplates the opposite, allowing any injunction and corresponding declaratory relief here to be splintered by class members who choose to opt-out, which is contrary to the principle articulated by the Supreme Court.  In sum, the Arbitrator exceeded her authority by issuing an Award that ventures outside the bounds of what the Rules in the arbitration agreement, as interpreted by controlling precedent, allow her to impose.  The Arbitrator's use of an unauthorized opt-out device to obtain the veneer of consent suggests that the Arbitrator was concerned – rightly – with the *lack* of consent on the part of the great majority of class members in this case.[35]  Her ruling in this regard exceeds her authority.

### 1.  No Procedural Rule Authorizes The Arbitrator To Certify A Rule 23(b)(2) Opt-Out Class

The Arbitrator viewed AAA Supplementary Rule 4 as the source of her procedural power to conduct class proceedings, as Sterling's RESOLVE arbitration program invokes the AAA Employment Arbitration Rules, which reference the AAA Supplementary Rules.[36]  The Arbitrator then reasoned that the AAA Supplementary Rules should be construed as tracking Rule 23.[37]  However, no rule – neither Rule 23 nor any AAA Supplementary Rule – permits the Arbitrator to certify an "opt-out" class in these circumstances.

Here, the Arbitrator granted class certification only as to "Plaintiffs' Title VII disparate impact claims with respect to declaratory and injunctive relief" pursuant to "AAA

---

[33] *Id.*

[34] *Id.* at 2557.

[35] *See* Section IV.A. *supra.*

[36] Award at 5-6, 117.

[37] Award at 6.

19013095v.6

Supplementary Rule 4 and Rule 23(b)(2) and Rule 23(c)(4)"[38] and directed counsel to submit a proposed opt-out notice consistent with the Award and pursuant to AAA Supplementary Rules 5 and 6. [39]

First, Rule 23 refers only to a Rule 23(b)(3) class when it authorizes exclusion. [40] Yet the Award denied certification with respect to monetary damages pursuant to Rule 23(b)(3), permitting only a Rule 23(b)(2) class.[41] Rule 23(b)(2) also provides no opportunity to opt out because the "key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted.'" [42] Indeed, the Advisory Committee Notes to Rule 23 confirm that "[t]here is no right to request exclusion from a (b)(1) or (b)(2) class." [43] Thus, Rule 23 provides the Arbitrator no authority to grant opt-out rights in a Rule 23(b)(2) class.

Second, AAA Supplementary Rule 5(c) further suggests that "the need to resolve claims seeking injunctive relief . . . makes it inappropriate to allow class members to request exclusion . . . ." Yet the Award does just that, in supposed reliance upon that Rule and AAA Supplementary Rule 6. AAA Supplementary Rule 6, however, is concerned with the content and clarity of the *notice* provided to class members, it does not itself authorize exclusion in a class certified pursuant to Rule 23(b)(2). Thus, the Arbitrator did not have authority to permit Rule 23(b)(2) class members to opt out in her Award.

---

[38] Award at 8.

[39] Award at 118.

[40] Fed. R. Civ. P. 23(c)(2)(B).

[41] Award at 8.

[42] 131 S. Ct. at 2557.

[43] Fed. R. Civ. P. 23 Advisory Committee's Notes (2003).

**2.    The Arbitrator Also Exceeded Her Authority By Splintering An Indivisible Remedy Contrary To *Wal-Mart Stores, Inc. v. Dukes***

*Wal-Mart* teaches that it is impermissible to conduct a hybrid class proceeding by mixing and matching provisions from Rules 23(b)(2) and (b)(3):

> Classes certified under (b)(1) and (b)(2) share the most traditional justifications for class treatment – that individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that the relief sought must perforce affect the entire class at once, as in a (b)(2) class.  For that reason these are also mandatory classes: ***The Rule provides no opportunity for*** (b)(1) or ***(b)(2) class members to opt out***, and does not even oblige the District Court to afford them notice of the action.[44]

Given the indivisible nature of the only potential class remedies, a class-wide injunction and corresponding declaratory relief with opt-out rights is inappropriate.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."[45]  The reason is logical and straightforward: there can be no separate injunctions or corresponding declaratory relief applicable to different class members.[46]

Here, the Arbitrator found that Plaintiffs may pursue their claim for injunctive and declaratory relief on a class-wide basis.  Permitting absent class members to opt-out would potentially lead to multiple, inconsistent adjudications relating to the same policies and practices, thereby undermining the premise of the Award, which is an efficient, single proceeding on Plaintiffs' disparate impact claim for injunctive relief.  Sterling could hardly be enjoined to

---

[44] 131 S. Ct.  at 2558 (emphasis added.)

[45] *Id.* at 2557.

[46] *Id.*; *see also Amara v. CIGNA Corp.*, Nos. 13-447 & 13-526, 2014 U.S. App. LEXIS 24265, at *25-26 (2d Cir. Dec. 23, 2014) (noting that in *Wal-Mart*, the Supreme Court "emphasized that in a class action certified under Rule 23(b)(2), 'each individual class member' is not 'entitled to a different injunction'") (quoting *Wal-Mart*, 131 S. Ct. at 2557) (emphasis in original).

implement one set of policies with respect to all female employees except for any class members who opt-out. That being the case, the Award would effectively permit class members who "opt out" to enjoy the benefit of any injunctive relief without being bound by an unfavorable ruling. Given that injunctive relief in this matter will by its nature affect the entire class, an "opt out" notice is incompatible with the Award itself. "Rule 23(b)(2) is designed for all-or-none cases in which final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate."[47] In such cases, "individual suits would confound the interest of other plaintiffs."[48] Indeed, the Arbitrator purported to model the Award on the decision in *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, another Title VII discrimination suit in which the court certified a Rule 23(b)(2) and Rule 23(c)(4) class.[49] But in *McReynolds* – after full briefing on the issue – the district court refused to allow opt-outs, holding that class members should not be permitted "a second bite at the apple" and "[t]here will be a single ruling one way or another that will affect everybody in

---

[47] *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897-98 (7th Cir. 1999); *see also In Re Payment Card Interchange Fee & Merch. Disc. Antitrust. Litig.*, 986 F. Supp. 2d 207, 236 (E.D.N.Y. 2013) ("If merchants could opt out of the (b)(2) class, they would reap the benefits of that relief anyway, as the injunctive relief is generally applicable to all merchants. To allow them to opt out and pursue their own rules-based injunctive relief would eliminate the incentive to settle that Rule 23(b)(2) was designed in part to create."); *Gardner v. Western Beef Props.*, No. 07-CV-2345, 2011 U.S. Dist. LEXIS 146467, at *22 (E.D.N.Y. Sept. 26, 2011) ("To the extent plaintiffs seek to certify only the injunctive and declaratory claims, that effort fails as well because defendants' conduct is not 'such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'") (quoting *Wal-Mart*, 131 S. Ct. at 2557).

[48] *Id.*

[49] Award at 93-96, 111. In *McReynolds*, the district court initially denied certification, but was reversed by the U.S. Court of Appeals for the Seventh Circuit. 672 F.3d 482 (7th Cir. 2011), *cert. denied*, 133 S. Ct. 338 (2012). On remand, the district court certified a disparate impact class under Rule 23(b)(2) and Rule 23(c)(4). *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-C-6583, 2012 WL 5278555 (N.D. Ill. July 13, 2012) (order granting class certification).

15

the class."[50]  Whether viewed under Rule 23 or the AAA Supplementary Rules, the Arbitrator

exceeded her authority by certifying an "opt-out" Rule 23(b)(2) class that is not authorized under

any procedural rule.

## V.    CONCLUSION

For all of the foregoing reasons, Sterling respectfully requests that the Court grant its

motion for vacatur on the ground that the Arbitrator exceeded her authority in purporting to bind

absent class members, or alternatively, on the ground that the Arbitrator exceeded her authority

in granting an opt-out Rule 23(b)(2) class, and grant such other and further relief it deems just

and proper.


**Dated: March 3, 2015**

Respectfully submitted,

SEYFARTH SHAW LLP

By:   /s/ Gerald L. Maatman, Jr.
          Gerald L. Maatman, Jr.
            gmaatman@seyfarth.com
          Lorie E. Almon
            lalmon@seyfarth.com
          David Bennet Ross
            dross@seyfarth.com
          William F. Dugan
            wdugan@seyfarth.com
          620 Eighth Avenue, 32nd Floor
          New York, New York 10018-1405
          Telephone: (212) 218-5500
          Facsimile: (212) 218-5526

---

[50] Transcript of Proceedings at 3, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-C-6583 (N.D. Ill. June 12, 2012), attached as Exhibit 3 to Maatman Dec.; *see also* Class Certification Order and Approved Notice, No. 05-C-6583 (N.D. Ill. July 13, 2012), attached as Exhibit 4 to Maatman Dec.

16

WEIL, GOTSHAL & MANGES,  LLP
Jeffrey S. Klein
  jeffrey.klein@weil.com
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendant,*
*Sterling Jewelers Inc.*

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X

|  |  |  |
|---|---|---|
|  | : | 1:08 CV 2875 (JSR) |
|  | : |  |
| **LARYSSA JOCK, et al.,** | : | U.S. District Judge Jed S. Rakoff |
|  | : |  |
| , | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| **STERLING JEWELERS INC.,** | : |  |
|  | : |  |
| Defendant. | : |  |

----------------------------------------------------------- X

### CERTIFICATE OF SERVICE

      I hereby certify that on March 3, 2015, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE THE ARBITRATOR'S CLASS DETERMINATION AWARD with the Clerk of the United States District Court, Southern District of New York using the CM/ECF system, which sent notification of such filing to the following:

Joseph M. Sellers
Kalpana Kotagal
Shaylyn Cochran
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
scochran@cohenmilstein.com

John Douglas Richards
Cohen Milstein Sellers & Toll PLLC
88 Pine Street
14th Floor
New York, NY 10005
drichards@cohenmilstein.com

Sam J. Smith
Loren B. Donnell
Burr & Smith, LLP
442 West Kennedy Blvd., Suite 300
Tampa, FL 33606
ssmith@burrandsmithlaw.com
ldonnell@burrandsmithlaw.com

Thomas A. Warren
The Law Offices of Thomas A. Warren
2032-D Thomasville Road
Tallahassee, FL 32308
P.O. Box 1657
tw@nettally.com

*Attorneys for Plaintiffs*

/s/   Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.

19013095v.6