UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

LARYSSA JOCK, et al.,                      :  1:08 Civ. 2875 (JSR)
                                            :
            Plaintiffs,                     :  U.S. District Judge Jed S. Rakoff
                                            :
    v.                                      :
                                            :
STERLING JEWELERS INC.,                    :
                                            :
            Defendant.                      :
                                            :
                                            :
-------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION TO VACATE THE ARBITRATOR'S CLASS CERTIFICATION AWARD

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................1

II.     FACTS AND PROCEDURAL HISTORY ...........................................................2

        A.      The Arbitrator's Class Certification Award ............................................2

        B.      Sterling's Motion To Vacate And Subsequent Decisions ......................4

III.    STANDARD OF REVIEW ..................................................................................5

IV.     ARGUMENT ......................................................................................................5

        A.      The Arbitrator Exceeded Her Authority By Purporting To Bind More
                Than 70,000 Absent Class Members To This Arbitration Who Did Not
                Consent To Be Bound To Class Arbitration............................................5

                1.      The Authority Of An Arbitrator Is Constrained By Contract,
                        Consent, And Submission........................................................7

                2.      The Arbitrator's Erroneous Interpretation Of The RESOLVE
                        Agreement Cannot Bind Absent Class Members Who Never
                        Consented To The Arbitrator Making Such A Determination..............11

                3.      The Arbitrator's Improper Assertion Of Authority Opens The Door
                        To Collateral Lawsuits By Absent Class Members.................................13

V.      CONCLUSION ..................................................................................................15

40047730v.5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*187 Concourse Assocs. v. Fishman*,
399 F.3d 524 (2d Cir. 2005) ....................................................................5, 8

*Am. Postal Workers Union v. U.S. Postal Serv.*,
754 F.3d 109 (2d Cir. 2014) .......................................................................12

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.*,
344 F.3d 255 (2d Cir. 2003) ..........................................................................5

*Fahnestock & Co. v. Waltman*,
935 F.2d 512 (2d Cir. 1991) ..........................................................................8

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .........................................................................................7

*Jock, et al. v. Sterling Jewelers Inc.*,
No. 15-3947 (Summary Order), 2017 U.S. App. LEXIS 13243 (2d Cir. July
24, 2017) ................................................................................................*passim*

*Jock v. Sterling Jewelers Inc.*,
646 F.3d 113 (2d Cir. 2011) ...............................................................2, 4, 8

*Long Island R.R. v. Long Island R.R. Police Benevolent Ass'n*,
No. 94 Civ. 2924, 1995 U.S. Dist. LEXIS 4176 (S.D.N.Y. Mar. 31, 1995) .........................12

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*,
330 F.3d 843 (6th Cir. 2003) .....................................................................7, 9

*Network Capital Funding Corp. v. Papke*,
No. G049172, 2014 Cal. App. LEXIS 907 (Cal. App. Oct. 9, 2014), *review
pending*, 230 Cal. App. 4th 503 (Cal. Jan. 14, 2015).........................................12

*Ottley v. Schwartzberg*,
819 F.2d 373 (2d Cir. 1987) ..........................................................................8

*Oxford Health Plans LLC v. Sutter*,
133 S. Ct. 2064 (2013) .........................................................................*passim*

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .....................................................................................13

*Reed Elsevier, Inc. v. Crockett*,
734 F.3d 594 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 2291 (2014)......................................12

40047730v.5

*Reliastar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*,
   564 F.3d 81 (2d Cir. 2009) ...................................................................... 5, 10, 11

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ...................................................................... 7, 8, 15

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) .............................................................................. 8

*Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) .......................................................................... 7, 8

**Statutes**

9 U.S.C. § 10(a) .............................................................................................. 15

9 U.S.C. § 10(a)(4) ........................................................................................ 1, 5

Equal Pay Act of 1963, 29 U.S.C. § 206(d), *et seq.* ........................................... *passim*

Federal Arbitration Act, 9 U.S.C. §1, *et seq.* ...................................................... 5, 8

Judiciary Act of 1789 ........................................................................................ 13

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), *et seq.* ................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................... 3

Fed. R. Civ. P. 23(b)(2) ................................................................................... 3, 4

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 3

Fed. R. Civ. P. 23(c)(4) ...................................................................................... 3

Defendant Sterling Jewelers Inc. ("Sterling") respectfully submits this memorandum of law in support of its renewed motion to vacate the Arbitrator's Class Certification Award issued on February 2, 2015 ("Award")[1] pursuant to 9 U.S.C. § 10(a)(4).

I.    **INTRODUCTION**

The precise issue before this Court is a novel and critical issue of law that has never been decided, but would have a transformative impact on the size and scope of this arbitration – whether and to what extent the Arbitrator exceeded her authority by purporting to bind absent class members to a class arbitration in which those absent class members never consented to participate in the class arbitration. Sterling respectfully submits that the Arbitrator exceeded her authority by certifying a class that includes more than 70,000 absent class members who never consented to this class arbitration. As a result, this Court should vacate the Award's certification of a Title VII declaratory and injunctive relief class. Absent such relief from the Court, the Arbitrator's final award will purport to bind more than an estimated 70,000 individuals, when only a small fraction of individuals have either invoked arbitration or consented to be bound by rulings of this Arbitrator with respect to the Title VII claims. As the Second Circuit recognized in its remand order, the remaining individuals never consented to the Arbitrator determining if class arbitration was permissible in the first place. Further, in the absence of such a ruling, the final decision of the Arbitrator will be subject to collateral attack by any number of individuals among tens of thousands of potential plaintiffs across the country, who would be able to claim after the fact that they never consented to the class arbitration, and therefore, any adverse ruling against the class should not be binding as to those individuals.

---

[1] The Award (redacted pursuant to the Arbitrator's orders with respect to certain motions for protective order) is attached as Exhibits 1-3 to the Declaration of Gerald L. Maatman, Jr. in support of Sterling's Motion To Vacate The Arbitrator's Class Determination Award. ECF 137.

The issue now before the Court is not whether the Arbitrator has authority under Sterling's RESOLVE arbitration agreement to adjudicate a class arbitration that binds Sterling and those plaintiffs who have affirmatively consented to the Arbitrator's authority to decide the Title VII claims.  This Court already determined, and in its July 24, 2017 Summary Order the Second Circuit concurred, that "…it is law of the case that 'the issue of whether the agreement permitted class arbitration was squarely presented to the arbitrator.'"  *Jock, et al. v. Sterling Jewelers Inc.,* No. 15-3947, Summary Order ("Summary Order") at 3, 2017 U.S. App. LEXIS 13243, at *2 (2d Cir. July 24, 2017).   Sterling is not seeking to re-litigate that issue.  Rather, the Second Circuit clarified in its Summary Order that "[its] decision in *Jock I*, however, did not squarely address whether the arbitrator had the power to bind absent class members to class arbitration given that they, *unlike the parties here*, *never consented* to the arbitrator determining whether class arbitration was permissible under the agreement in [the] first place."  *Id*. at *2-3 (emphasis added).  Accordingly, the inquiry in these proceedings turns to, as the Second Circuit articulated in its Summary Order, whether the Arbitrator "exceeded her authority in certifying a class that contained absent class members who have not opted in."  *Id.* at *5.  The answer is plainly that the Arbitrator did exceed her authority in certifying such a class and, therefore, vacatur is required.

## II.    FACTS AND PROCEDURAL HISTORY

Given the Court's familiarity with the factual allegations and legal claims in this gender-based discrimination pay and promotion practices case, Sterling provides only a brief overview of the Award and related proceedings as they are relevant to the instant proceedings.

### A.    The Arbitrator's Class Certification Award

On March 18, 2008, 15 plaintiffs filed a complaint in this Court seeking, *inter alia*, class certification of claims of disparate impact and disparate treatment gender discrimination in pay

and promotions in violation of Title VII, and class certification of their Equal Pay Act claim.

ECF No. 1 ¶ 3.  Plaintiffs never alleged in either the Complaint or First Amended Complaint that

they were authorized to assert civil claims in a representative capacity on behalf of absent class

members in arbitration under RESOLVE.  ECF Nos. 1, 11.  On May 5, 2008, Plaintiffs moved

over Sterling's objection to refer their class claims to arbitration.  ECF No. 25.  On February 2,

2015, after certain appellate proceedings, and a certification phase including extensive fact and

expert discovery, briefing on *Daubert* and certification motions, and oral argument, the

Arbitrator granted Plaintiffs' motion for class certification in part and denied it in part.

     The Award certified Plaintiffs' Title VII disparate impact claims for declaratory and

injunctive relief only under Rules 23(b)(2) and 23(c)(4), with respect to specific pay and

promotion practices used by Sterling during the class period.  Award at 8.  The Award denied

class certification of: (i) Plaintiffs' Title VII claim for monetary damages under Rule 23(b)(3),

including back pay and punitive damages; (ii) Plaintiffs' Title VII disparate treatment claim; and

(iii) Plaintiffs' Rule 23 opt-out Equal Pay Act ("EPA") claim.[2]  *Id.* at 118.

     With respect to the certified Title VII claims, the Award purported to certify an "opt out"

class that included not only the Named Plaintiffs and those individuals who affirmatively

consented to participate in a class arbitration of the Title VII claims, but all other absent non-

consenting class members.  Award at 113-115.  In so doing, the Award stated that absent class

members had "clearly consented" to the Arbitrator's authority, and expressly rejected Sterling's

objection that the Arbitrator lacked authority to bind anyone other than those consenting putative

class members who affirmatively evidenced an intent to participate in the Title VII arbitration

---

[2] With respect to the EPA claim, the Arbitrator observed that such a claim could proceed as an
opt-out collective action, if at all.  Award at 113-115.  Plaintiffs subsequently sought conditional
certification of their EPA claim, which was granted by the Arbitrator concurrently with a tolling
order that tolled all EPA claims back to October 16, 2003.  ECF No. 148 at Exs. 1 and 2.

3

proceeding. *Id.* at 117. The Award further ordered counsel for the parties to submit a proposed form of an "opt-out" class notice consistent with the Award and pursuant to AAA Supplementary Rules 5 and 6. *Id.* at 118.

### B. Sterling's Motion To Vacate And Subsequent Decisions

On March 3, 2015, Sterling sought vacatur of the Award before this Court on the dual grounds that the Award purported to bind absent class members who have not consented to be a part of the Title VII class arbitration, and that the Award certified a Rule 23(b)(2) injunctive and corresponding declaratory relief "opt-out" class contrary to clear U.S. Supreme Court authority to the contrary. ECF Nos. 135-36. Finding the Arbitrator had exceeded her authority and acted in manifest disregard of the law, this Court vacated the Award as to the opt-out class mechanism argued by Plaintiffs – improperly – as sufficient protection for the rights of class members.[3] ECF No. 144 at 13. This Court, however, confirmed the remainder of the Award, finding that it need not reach Sterling's argument on the Arbitrator's authority over absent, non-consenting class members because the law of the case articulated in *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011) ("*Jock I*"), foreclosed Sterling's argument that the Arbitrator exceeded her authority in certifying a class consisting of absent, non-consenting class members. ECF No. 144 at 4, 13. Sterling timely appealed the partial denial of vacatur.

On July 24, 2017, the Second Circuit issued its unanimous Summary Order that held unequivocally that the absent class members in *Jock* "never consented" to the Arbitrator determining the permissibility of class arbitration under the agreements, and clarified that *Jock I* did not address the issue of whether the Arbitrator had the power to bind the absent class members to class arbitration. Summary Order at 3-4; 2017 U.S. App. LEXIS 13243, at *2-5.

---

[3] With the opt-out mechanism having been vacated, Plaintiffs have submitted no viable means for absent class members to consent to class arbitration.

The matter is now on remand to this Court for further proceedings to determine this limited but pivotal issue.

## III.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that an arbitral award may be vacated "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Arbitrators exceed their powers where, as here, their awards do not draw their essence from the underlying agreement to arbitrate. *See Reliastar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (citing *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005)). The Second Circuit has held that "[w]hile a broad arbitration clause affords arbitrators considerable discretion …, they may not 'exceed the power granted to them by the contract itself.'" *Reliastar*, 564 F.3d at 87-88 (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003)). Accordingly, "[i]f the parties agreed to submit an issue for arbitration, [the court] will uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached." *Reliastar*, 564 F. 3d at 86 (internal citations omitted).

Sterling submits that under this standard, the Award warrants vacatur.

## IV.    ARGUMENT

### A.    The Arbitrator Exceeded Her Authority By Purporting To Bind More Than 70,000 Absent Class Members To This Arbitration Who Did Not Consent To Be Bound To Class Arbitration

The Arbitrator exceeded her authority because the Award purports to bind absent putative class members who did not join the Title VII arbitration, did not agree to submit the question of whether class arbitration is permitted under their agreements, and did not otherwise consent to be bound by this class arbitration on the Title VII claims. As explicitly recognized and confirmed by the Second Circuit in its ruling, these absent class members "never consented to the arbitrator

determining whether class arbitration was permissible under the agreement in the first place."
Summary Order at 3; 2017 U.S. App. LEXIS 13243, at *3.  Thus, the Arbitrator does not, and
never had, any authority to bind these absent class members.

Fundamental to arbitration is the constraint that "an arbitrator may employ class
procedures only if the parties have authorized them."  *Id.* (citing *Oxford Health Plans LLC v.
Sutter*, 133 S. Ct. 2064, 2066 (2013)).  In class certification proceedings, Sterling objected to
Plaintiffs' pursuit of class relief that included absent class members because notwithstanding
their execution of substantially identical RESOLVE agreements, absent putative class members
never submitted themselves to this Arbitrator's specific authority in this specific proceeding and
never consented to this Arbitrator's authority to decide these specific class issues.  Award at 117
(rejecting arguments advanced in Sterling's Memorandum Of Law In Opposition To Claimants'
Motion For Class Certification at 91-93).[4]  In response, the Arbitrator certified a class that
included absent class members based on the Arbitrator's position that by signing RESOLVE
Program arbitration agreements, absent putative class members had somehow "clearly consented
to the authority of the arbitrator to determine whether the RESOLVE arbitration agreement
permits class arbitration."  *Id.*  The Second Circuit, however, rejected the Arbitrator's erroneous
position.  In its Summary Order, the Second Circuit expressly remanded the case to determine
"whether the arbitrator *had the power* to bind absent class members to class arbitration *given that*
*they, unlike the parties here, never consented* to the arbitrator determining whether class

---

[4] Sterling has persistently objected to the Arbitrator's exercise of authority over absent class
members in both the Title VII claims and EPA claim.  The Arbitrator had no authority to issue
her Award here or to conditionally certify Plaintiffs' EPA claim with "equitable" tolling of
absent class member claims to October 16, 2003, as Sterling argued in its Motion To Vacate The
Equal Pay Act Collective Action Conditional Certification Award And Order Re Claimants'
Motion For Tolling Of EPA Limitations Period.  ECF No. 147, at 1 n.2.  The tolling order in
particular purports to determine the rights of absent class members vis-a-vis Sterling regardless
of whether their claims were long-since time-barred under the applicable statute of limitations.

arbitration was permissible under the agreement in [the] first place."  Summary Order at 3; 2017 U.S. App. LEXIS 13243, at *3 (emphasis added).  Therefore, contrary to the Arbitrator's position and the arguments that Plaintiffs previously made to this Court in opposition to Sterling's motion to vacate, these absent class members indisputably **have not** consented to the Arbitrator's authority to determine whether the RESOLVE agreements permitted class arbitration that may include them.

The issue before this Court is novel, but the limitations of an arbitrator's authority are clearly established, and the Arbitrator's failure to adhere to those well-established parameters of her authority will have a significant impact on Sterling and the class.  The Supreme Court repeatedly has stated that arbitration "is a matter of consent, not coercion."  *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("This Court has determined that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'").  Arbitrators have authority to decide disputes only because the parties have agreed in advance to submit their disputes to arbitration.  *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682-83 (2010).  In this regard, "an arbitration panel may not determine the rights or obligations of non-parties to the arbitration."  *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003).  It is well-settled that an arbitrator has actual jurisdiction only over those parties, issues, and claims that are duly submitted to arbitration.

### 1. The Authority Of An Arbitrator Is Constrained By Contract, Consent, And Submission

Unlike an Article III judge in a court of law, an arbitrator has no source of legal power to assert over parties beyond the arbitration agreement they signed.  "A proper conception of the

arbitrator's function is basic.  He is not a public tribunal imposed upon the parties by superior authority.…  He has no general charter to administer justice for a community which transcends the parties.  He is rather part of a system of self-government created by and confined to the parties."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960). The purpose of the FAA is not to "mandate the arbitration of all claims, but merely the enforcement … of privately negotiated arbitration agreements."  *Volt*, 489 U.S. at 472 (citations omitted). "The FAA does not require parties to arbitrate when they have not agreed to do so." *Id*. at 478.

It is well-settled that an arbitrator has only *potential* jurisdiction over any claims that are encompassed by an enforceable arbitration agreement, but an arbitrator has *actual* jurisdiction only over those parties, issues, and claims that were duly submitted to arbitration.  An arbitrator has no independent adjudicatory power unless and until at least one of the parties has properly submitted the dispute to arbitration.  *Stolt-Nielsen*, 559 U.S. at 682-83 (citations omitted).  As the Second Circuit has explained, "[t]he scope of [the] authority of arbitrators . . . is determined by the agreement or submission," which "submission serves not only to define, but to circumscribe" the arbitrator's authority.  *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987).

Submission circumscribes the issues before the arbitration. *See, e.g.*, *Ottley*, 819 F.3d at 376 (finding the issue of compliance was not submitted to the arbitrator, who therefore was without authority to rule on it); *187 Concourse Assocs.*, 399 F.3d at 527 ("By the terms of the submission . . . the arbitrator had authority to proceed to the second question [of a remedy] only if he found no just cause for [the plaintiff's] termination"); *Jock I, supra,* 646 F.3d at 122 (holding that an arbitrator "exceed[s] her authority by . . . considering issues beyond those the parties have submitted for her consideration"); *see also Fahnestock & Co. v. Waltman*, 935 F.2d

8

512, 515 (2d Cir. 1991) (same).  The arbitral submission also circumscribes the parties over whom the arbitrator actually has the authority to assert jurisdiction.  In this regard, "an arbitration panel may not determine the rights or obligations of non-parties to the arbitration." *Nationwide Mut. Ins. Co.*, 330 F.3d at 846.  As a result, "an arbitrator exceed[s] his authority by ordering payment of punitive damages to non-parties."  *Id.* at 847.

Accordingly, the authority of an arbitrator to issue any order at all derives only from the agreement at hand and the consent of the parties to submit their dispute to arbitration.  As the Second Circuit recognized in its Summary Order, the Arbitrator did not have this consent from the overwhelming number of individuals the Award purports to bind.  While the Named Plaintiffs invoked arbitration for their class claims, only Sterling, the Named Plaintiffs, and a small number of putative class members agreed to allow the Arbitrator to decide whether the arbitration agreement here precludes or allows class arbitration on the Title VII claims.[5]  Absent, non-consenting class members, now estimated to exceed 70,000 in number, did not invoke arbitration, did not consent to the selection of this Arbitrator, did not consent to participate in the Title VII claims in the arbitration, did not authorize the Arbitrator to determine the permissibility of class arbitration for these claims, and did not manifest any consent to be bound by the Award's determination of Title VII class arbitration.  They are, in a word, absent, and the Second Circuit has confirmed as much in its Summary Order.  They also stand in stark contrast to the

---

[5] The Named Plaintiffs (or their representatives) who asserted Title VII claims for class-wide relief are: Laryssa Jock, Jacquelyn Boyle, Christy Chadwick, Lisa Follett, Maria House, Denise Maddox, Lisa McConnell, Gloria Pagan, Judy Reed (deceased), Linda Rhodes, Khristina Rodriguez, Nina Shahmirzadi, Leighla Smith, Marie Wolf, Kelly Contreras, and Dawn Souto-Coons.  In addition, a small number of putative class members arguably indicated their consent to Title VII class arbitration by filing consents early in the litigation and prior to submission of the class certification to the Arbitrator.  Sterling presumes, without conceding, that Plaintiffs' counsel accurately represented the position of its then-clients in submitting the Title VII class certification motion to the Arbitrator, and therefore presumes that those individuals consented to the Arbitrator deciding the question of class arbitration.

9

individuals who either expressly invoked arbitration of Title VII class claims, or affirmatively consented to participating in the arbitration of these Title VII claims.

Because the absent class members in *Jock* have not manifested consent to class arbitration of the Plaintiffs' Title VII claims, the Arbitrator has no contractual authority to bind them to the Award, and no dispositive legal authority to bind them. The significance of the Arbitrator nevertheless seeking to assert authority that she does not have over these absent, non-consenting class members is breathtaking in size (impacting now over 70,000 individuals) and also in substance. As Justice Alito, joined by Justice Thomas, explained while concurring in the Supreme Court's decision in *Oxford Health*, absent class members like these may legitimately argue that they are not bound by this Award or any other award by the Arbitrator:

> [W]here absent class members have not been required to opt *in*, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used.

133 S. Ct. at 2071-72 (emphasis in original). Justice Alito explained that "[c]lass arbitration is a matter of consent" and "[w]ith no reason to think that the absent class members ever agreed to class arbitration, it is far from clear that they will be bound by the arbitrator's ultimate resolution of this dispute." *Id.* at 2071.

The Arbitrator's assertion of authority over these absent class members who did not agree to be part of this class arbitration is a prime example of awards that do not draw their essence from the underlying agreement to arbitrate and cannot stand. *Reliastar*, 564 F.3d at 85. This Court should grant Sterling's motion to vacate on this ground alone.

10

    **2.**    ***The Arbitrator's Erroneous Interpretation Of The RESOLVE Agreement Cannot Bind Absent Class Members Who Never Consented To The Arbitrator Making Such A Determination***

In the Award, the Arbitrator wrongly assumed that her erroneous interpretation of the RESOLVE agreement applied to absent class members.  In so ruling, she exceeded her authority because as discussed above, the Arbitrator has no authority over non-consenting class members.

The Arbitrator dismissed the concerns of Justice Alito, explaining:

> I find that the consent/collateral attack concern expressed by Justice Alito (and by Sterling) has no application in this case because here the absent class members have clearly consented to the authority of the arbitrator to determine whether the RESOLVE arbitration agreement permits class arbitration.  It is undisputed that each of the absent class members signed the RESOLVE arbitration agreement, which clearly provides for the application of the AAA Rules.  The AAA Supplementary Rules for Class Arbitrations, which 'apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of [the AAA] where a party submits a dispute to arbitration on behalf of or against a class or purposes class,' provide that the arbitrator shall determine 'whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.'  Accordingly, by signing the RESOLVE arbitration agreement, each of the absent class members agreed that the arbitrator would determine whether the RESOLVE arbitration agreement permits class arbitration.

Award at 117.

In reaching this erroneous conclusion, the Arbitrator relied on the notion that the RESOLVE arbitration agreement provides for the application of American Arbitration Association ("AAA") Employment Arbitration Rules.  Observing that the AAA Supplementary Rules for Class Arbitrations "provide that the arbitrator shall determine 'whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class,'" *id.*, the Arbitrator stated that when Plaintiffs agreed to RESOLVE, they therefore agreed to authorize the Arbitrator to decide whether the RESOLVE agreements permit class arbitration.  *Id.*  The Second Circuit's Summary Order rejected this position.

This analytical framework is insufficient to constitute consent to AAA class procedures by the absent class members and, in fact, the AAA Supplementary Rules themselves state their existence does not demonstrate assent to class arbitration. *See Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599-600 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 2291 (2014) ("the Supplemental Rules expressly state that one should 'not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis'").

Further, the Award implicitly acknowledges that RESOLVE itself does not mention the AAA Supplementary Rules for Class Arbitrations. An employee of Sterling who agreed to The RESOLVE Program, therefore, agreed to RESOLVE procedures, being the "Step 1, 2 and 3" procedures expressly provided for in the RESOLVE brochure, and it exceeds the Arbitrator's authority to attempt to bind anyone except those individuals who have affirmatively evidenced an intent to agree to the resolution of this proceeding.[6]

Just as in the agreement at issue in *Oxford Health*, "the absent members of the plaintiff class have not submitted themselves to this arbitrator's authority in any way." *Oxford Health*, 133 S. Ct. at 2071. The fact that they all signed a RESOLVE agreement is irrelevant because "an arbitrator's erroneous interpretation of contracts that do not authorize class arbitration cannot bind someone who has not authorized the arbitrator to make that determination." *Id.*[7] The

---

[6] The Second Circuit's recent decision in *Am. Postal Workers Union v. U.S. Postal Serv.*, 754 F.3d 109, 113-14 (2d Cir. 2014), is inapposite as the matter at issue was not whether absent class members consented to arbitral authority.

[7] Other courts have noted their agreement with Justice Alito's concerns. *See, e.g., Network Capital Funding Corp. v. Papke*, No. G049172, 2014 Cal. App. LEXIS 907, at *22 (Cal. App. Oct. 9, 2014) (the court "echo[ed] the concerns [of] Justice Alito"), *review pending*, 230 Cal. App. 4th 503 (Cal. Jan. 14, 2015). Other courts have reached analogous rulings, finding arbitrators to have exceeded their authority. *See, e.g., Long Island R.R. v. Long Island R.R. Police Benevolent Ass'n*, No. 94 Civ. 2924, 1995 U.S. Dist. LEXIS 4176, at *9 (S.D.N.Y. Mar.

Arbitrator has no authority, contractual or as a matter of law, to make any determinations on behalf of the absent class members, and there is no dispute at this point that the absent class members did not consent to the Arbitrator making such determination on their behalf in the class arbitration.  For this independent reason, the Award should be vacated.

In contrast, once an Article III court decides to certify a class, its decisions operate to bind absent class members because it has judicial authority that stems from the common law and Congressional enactments such as the Judiciary Act of 1789 and the Federal Rules of Civil Procedure.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985) ("As a class-action defendant petitioner is in a unique predicament. . . . The only way a class-action defendant like petitioner can assure itself of this binding effect of the judgment is to ascertain that the forum court has jurisdiction over every plaintiff whose claim it seeks to adjudicate, sufficient to support a defense of res judicata in a later suit for damages by class members.").  No such extrinsic source of authority gives arbitrators power to bind anyone to their decisions.  In other words, the sources of legal legitimacy from which courts derive their authority to issue rulings that apply to absent class members are entirely absent in an arbitration, where an arbitrator's authority is derived solely from the contract and a party's consent.

### 3.   *The Arbitrator's Improper Assertion Of Authority Opens The Door To Collateral Lawsuits By Absent Class Members*

If the Arbitrator does not have the authority to rule upon the claims of absent class members, and Sterling prevails in disproving class-wide disparate impact in the class arbitration, absent class members may seek to collaterally attack the Arbitrator's authority to bind them to a judgment favorable to Sterling, or any other order affecting their rights.  The potential for

---

31, 1995) ("the arbitrator exceeded his authority by fashioning a remedy contrary to the CBA . . . and the formulation of the issues submitted to him").

collateral attack is reasonably high, given Plaintiffs' stipulation that they would not seek compensatory damages, thereby failing to seek those damages on behalf of class members including absent class members.  Award at 106.

"Class arbitrations that are vulnerable to collateral attack allow absent class members to unfairly claim the benefit of a favorable judgment without subjecting themselves to the binding effect of an unfavorable one."  *Oxford Health*, 133 S. Ct. at 2072 (internal quotation marks and citation omitted).  Sterling therefore could prevail before the Arbitrator and still face up to approximately 70,000 individual disparate impact claims.  And judges in this District – and other state court and federal court judges around the country – could be asked by these absent class members to consider *de novo* whether RESOLVE precludes class arbitration.

If the defense prevails, there is a risk that absent class members will be able to successfully challenge the applicability of the Arbitrator's Final Award to them because they never consented to be a part of the class arbitration in the first place.  Justice Alito's reasoning demonstrates the significant risk to Sterling in the arbitration conceived by this Arbitrator:

> [P]etitioner consented to the arbitrator's authority by conceding that he should decide in the first instance whether the contract authorizes class arbitration.
>
> . . .
>
> But *unlike petitioner, absent members of the plaintiff class never conceded that* the contract authorizes the arbitrator to decide whether to conduct class arbitration.  It doesn't.  If we were reviewing the arbitrator's interpretation of the contract *de novo*, we would have little trouble concluding that he improperly inferred '[a]n implicit agreement to authorize class-action arbitration . . . from the fact of the parties' agreement to arbitrate.'

*Id.* at 2071 (quoting *Stolt-Nielsen S.A.*, 559 U.S. at 685) (emphasis added).[8]  Here, a court considering an absent class member's collateral challenge to the Arbitrator's decisions would review *de novo* whether she consented to allow the Arbitrator to bind her.  This unacceptable risk to Sterling results from an arbitral decision in excess of arbitral authority such that a mutual, final, and definite award upon the subject matter cannot be made.  *See* 9 U.S.C. § 10(a).

Moreover, this risk to Sterling is contrary to the very efficiency gains supposed to be achieved through the use of class action mechanisms.  Because the foundation of arbitration – consent – is absent here as to putative class members beyond those individuals who affirmatively evidenced an intent to agree to this Arbitrator's resolution of the Title VII class claims, and because the Arbitrator exceeded her authority in rendering an invalid Award that subjects a party to collateral attack by the members of the class purportedly certified, the Award must be vacated.

## V.     CONCLUSION

For all of the foregoing reasons, Sterling respectfully requests that the Court grant its renewed motion for vacatur and vacate the Award, and grant such other and further relief it deems just and proper.

---

[8] Sterling's agreement to allow the Arbitrator to decide whether the contractual terms of RESOLVE preclude class proceedings, therefore, is irrelevant to the issue presented here.

40047730v.5

**Dated: August 7, 2017**

Respectfully submitted,

SEYFARTH SHAW LLP

By:  /s/ Gerald L. Maatman, Jr.
     Gerald L. Maatman, Jr.
      gmaatman@seyfarth.com
     Lorie E. Almon
      lalmon@seyfarth.com
     David Bennet Ross
      dross@seyfarth.com
     620 Eighth Avenue, 32nd Floor
     New York, New York 10018-1405
     Telephone: (212) 218-5500
     Facsimile: (212) 218-5526

     WEIL, GOTSHAL & MANGES,  LLP
     Jeffrey S. Klein
      jeffrey.klein@weil.com
     767 Fifth Avenue
     New York, New York 10153-0119
     Telephone: (212) 310-8000
     Facsimile: (212) 310-8007

     *Attorneys for Defendant,*
     *Sterling Jewelers Inc.*

40047730v.5

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

|  |  |
|---|---|
| **LARYSSA JOCK, et al.,** | : 1:08 CV 2875 (JSR) |
|  | : |
| Plaintiffs, | : U.S. District Judge Jed S. Rakoff |
|  | : |
| v. | : |
|  | : |
| **STERLING JEWELERS INC.,** | : |
|  | : |
| Defendant. | : |

---------------------------------------------------------- X

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2017 I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE THE ARBITRATOR'S CLASS DETERMINATION AWARD with the Clerk of the United States District Court, Southern District of New York using the CM/ECF system, which sent notification of such filing to the following:

Joseph M. Sellers
Kalpana Kotagal
Shaylyn Cochran
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
jsellers@cohenmilstein.com
kkotagal@cohenmilstein.com
scochran@cohenmilstein.com

John Douglas Richards
Cohen Milstein Sellers & Toll PLLC
88 Pine Street
14th Floor
New York, NY 10005
drichards@cohenmilstein.com

*Attorneys for Plaintiffs*

Sam J. Smith
Loren B. Donnell
Burr & Smith, LLP
442 West Kennedy Blvd., Suite 300
Tampa, FL 33606
ssmith@burrandsmithlaw.com
ldonnell@burrandsmithlaw.com

Thomas A. Warren
The Law Offices of Thomas A. Warren
2032-D Thomasville Road
Tallahassee, FL 32308
P.O. Box 1657
tw@nettally.com

/s/  Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.