UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
LARYSSA JOCK, et al.,           :
                                :
        Plaintiffs,             :      08 Civ. 2875
                                :
    -v-                         :      OPINION AND ORDER
                                :
STERLING JEWELERS INC.,         :
                                :
        Defendant.              :
------------------------------------x



JED S. RAKOFF, U.S.D.J.

Plaintiffs, current and former female employees of defendant Sterling Jewelers Inc. ("Sterling"), filed this putative class action on March 18, 2008 alleging that Sterling discriminated against them in pay and promotion on the basis of their gender. See Complaint, Dkt. 1. Subsequently, plaintiffs moved to compel arbitration pursuant to a dispute resolution agreement (the "RESOLVE agreement"), see Dkt. 25, which motion this Court granted by Order dated June 18, 2008, see Dkt. 52. There followed extensive proceedings before the Arbitrator, this Court, and the Second Circuit Court of Appeals, some of which are briefly summarized below and more specific familiarity with which is here presumed.

Now before the Court is Sterling's motion to vacate a Class Determination Award issued by the Arbitrator certifying, for plaintiffs' Title VII disparate impact claims for declaratory and injunctive relief, a class that, Sterling estimates, includes over 70,000 "absent" class members, i.e., Sterling employees other than

1

the named plaintiffs and several hundred individuals who have affirmatively opted in to the class proceedings before the Arbitrator. See Dkts. 137-1-3. According to Sterling, even though the Arbitrator is planning to permit members of the certified class to opt out, the Arbitrator exceeded her authority by purporting to bind this larger group in any way as they never submitted to her authority or presented to her the question of whether the RESOLVE agreement permits class action arbitration. See Defendant's Memorandum of Law in Support of its Renewed Motion to Vacate the Arbitrator's Class Certification Award ("Def. Mem.") at 5-7, Dkt. 163. Plaintiffs oppose Sterling's motion, arguing that the Court must defer to the Arbitrator's interpretation of the agreement and her decision to certify this larger class. See Opposition to Defendant's Renewed Motion to Vacate the Arbitrator's Class Certification Award ("Pl. Mem.") at 8-9, Dkt. 165.

As mentioned, this is but the latest chapter in a rather convoluted litigation. Briefly, in 2009, the Arbitrator determined that the RESOLVE agreement permitted class arbitration. Sterling moved to vacate that determination, and by bottom-line Order dated August 31, 2009, the Court initially denied Sterling's motion. See Dkt. 64; Opinion and Order dated December 28, 2009, Dkt. 66. Sterling timely appealed. See Dkt. 68. However, while Sterling's appeal was pending, the Supreme Court issued an opinion in Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., which reversed the Second

2

Circuit's reversal of the undersigned's decision holding that a class action proceeding is not available in arbitration unless the contracting parties so provide, Stolt-Nielsen SA v. Animalfeeds Int'l Corp., 435 F. Supp. 2d 382, 384 (S.D.N.Y. 2006), rev'd, 548 F.3d 85 (2d Cir. 2008), rev'd and remanded sub nom., 559 U.S. 662 (2010). Thereafter, Sterling moved pursuant to Federal Rules of Civil Procedure 62.1 and 60(b) for relief from the December 28, 2009 Opinion and Order (which had relied, inter alia, on the now reversed Second Circuit decision in Stolt-Nielsen), and the Second Circuit remanded the case to permit this Court to address Sterling's motion.

On August 6, 2010, this Court reversed its earlier decision and granted Sterling's motion to vacate, see Order dated August 6, 2010, Dkt. 87, finding in relevant part that plaintiffs had "fail[ed] to identify any concrete basis in the record for the arbitrator to conclude that the parties manifested an intent to arbitrate class claims." Memorandum Order dated July 27, 2010 at 10, Dkt. 85. Plaintiffs timely appealed, see Dkt. 88, and a divided panel of the Second Circuit reversed, with the majority finding that (1) the parties had squarely presented the question of whether the RESOLVE agreement allowed for class arbitration to the arbitrator and (2) "whether the arbitrator was right or wrong in her analysis, she had the authority to make the decision, and the

parties to the arbitration are bound by it." Jock v. Sterling Jewelers Inc., 646 F.3d 113, 124-127 (2d Cir. 2011) ("Jock I").

Several years later, on February 2, 2015, the Arbitrator issued a Class Determination Award, certifying, inter alia, an approximately 70,000-person class for plaintiffs' Title VII disparate impact claims. See Dkts. 137-1-3. On March 3, Sterling moved to vacate that Award, arguing that the Arbitrator exceeded her authority by purporting to bind employees other than the named plaintiffs and those who had affirmatively opted into the proceedings before the Arbitrator. See Dkts. 135, 136. On November 15, 2015, the Court denied Sterling's motion, finding that vacatur was "foreclosed by earlier rulings in this case." Opinion and Order at 4, Dkt. 144. Specifically, given Jock I, which affirmed the Arbitrator's prerogative to decide whether the RESOLVE agreement permitted class action procedures, the Court reasoned that there is "no basis for vacating the Class Determination Award on the ground that the Arbitrator has now exceeded her authority in purporting to bind absent class members." Id.

Sterling, once again, appealed. See Dkt. 145. On July 24, 2017, the Second Circuit vacated the November 2015 Opinion and Order, holding that the "decision in Jock I . . . did not squarely address whether the arbitrator had the power to bind absent class members to class arbitration given that they [the absent class members], unlike the parties here, never consented to the

4

arbitrator determining whether class arbitration was permissible under the agreement in [the] first place." Jock v. Sterling Jewelers, Inc., 703 F. App'x 15, 17 (2d Cir. 2017) ("Jock II") (emphasis added). The panel further instructed the parties and this Court that the issue "pertinent" on remand is: "whether an arbitrator, who may decide . . . whether an arbitration agreement provides for class procedures because the parties 'squarely presented' it for decision, may thereafter purport to bind non-parties to class procedures on this basis." Id. at 18.

For the reasons set forth below, the Court finds that the Arbitrator may not so bind non-parties to class action procedures where, as here, the Court has determined that the arbitration agreement does not, in fact, permit class action procedures.

**DISCUSSION**

The Federal Arbitration Act provides that a district court may vacate an arbitration award where the arbitrator has exceeded her powers. See 9 U.S.C. § 10(a). The Court's "inquiry under § 10(a)(4) thus focuses on whether the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[] correctly decided that issue." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 220 (2d Cir. 2002) (internal quotation omitted).

5

Plainly it is the law of the case that the Arbitrator does not have the authority, based on the <u>agreement</u>, to certify a 70,000-person class. The Court considered the question of whether the RESOLVE agreement authorizes class procedures in 2010 and decided that it does not.[1] See Memorandum Order dated July 27, 2010, Dkt. 85. Thus, those individuals who did not affirmatively opt in to the class proceeding here did <u>not</u> agree to permit class procedures by virtue of having signed RESOLVE agreements.[2]

---

[1] The RESOLVE agreements authorize arbitration to be conducted by the American Arbitration Association ("AAA") in accordance with AAA rules, as amended or modified by certain RESOLVE-specific provisions, including the requirement that the arbitration agreement be construed according to Ohio law. See Clause Construction Award, Ex. F. to Sterling Memorandum of Law in Support of Motion to Vacate, Dkt. 58. Nowhere do the RESOLVE agreements mention class procedures. The Arbitrator, however, decided that class procedures were nonetheless available as (1) the RESOLVE agreements did not <u>prohibit</u> class arbitration; (2) under Ohio law the RESOLVE agreements were contracts of adhesion; and in a contract of adhesion, (3) unless the drafter expressly prohibits class arbitration, plaintiffs may avail themselves of that procedural right. See <u>id.</u> at 4-5. But an Ohio intermediate appellate court construing the very same agreements expressly found that they were <u>not</u> adhesive or unconscionable. See W.K. v. Farrell, 167 Ohio App. 3d 14, 26-27 (2006) (rejecting Sterling employee's claim that the RESOLVE agreement was adhesive or unconscionable). Moreover, the AAA Supplementary Rules for Class Arbitrations, which the Arbitrator applied here, are not, by their own terms, to be automatically incorporated. See Reed Elsevier, Inc. v. Crockett, 734 F.3d 594, 599-600 (6th Cir. 2013).

[2] Note that, for the reasons stated below, the Court need not reach the question of whether, had the RESOLVE agreement, in fact, permitted class procedures, the Arbitrator would have had the authority to bind absent class members based on the fact that each absent class member agreed to such procedures by virtue of having signed the agreement.

Thus, the remaining question here is whether the Arbitrator had the authority to certify a 70,000-person class because the named plaintiffs and the defendant submitted the question of whether the RESOLVE agreement allowed for class procedures to the Arbitrator.

Whether a party has agreed to submit a dispute to an arbitrator is "typically an 'issue for judicial determination.'" Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)). Plaintiffs here see no difference between the Arbitrator's authority to decide that the named plaintiffs' RESOLVE agreements permitted class procedures, brought by these plaintiffs on behalf of themselves and all others who opted into the class, and the Arbitrator's authority to decide that the absent class members' RESOLVE agreements permitted class procedures that would bind these individuals unless they opted out. According to plaintiffs, the named and absent class members "have all executed the same arbitration agreement which the Arbitrator interpreted to permit the aggregate litigation . . . as long as the due process requirements of Rule 23, tracked in AAA Supplementary Rule 4, are satisfied." Pl. Mem. at 9.

Given the seeming tension between Jock I and Jock II, plaintiffs' position has some force. But plaintiffs overlook the fact that, unlike the named plaintiffs and defendants, these

7

"absent members of the plaintiff class [who have not chosen to opt-in to the class] have not submitted themselves" to the Arbitrator's authority "in any way." Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 574 (2013) (Alito, J., concurring); contrast Jock I, 646 F.3d at 124 (holding that the Arbitrator had authority to decide "the issue of whether the agreement permitted class arbitration" because it "was squarely presented to the arbitrator" by the parties). Although absent class members may have signed contracts with arbitration clauses "materially identical to those signed by the plaintiff who brought" suit, an "arbitrator's erroneous interpretation of contracts that do not authorize class arbitration cannot bind someone who has not authorized the arbitrator to make that determination." Id.

Moreover, were the Court to permit the Arbitrator to bind absent class members with an erroneous reading of the RESOLVE agreement, then her improper assertion of authority would open the door to collateral lawsuits by absent class members. That is because, given that the Arbitrator was wrong as a matter of law about whether the RESOLVE agreement permits opt-out classes, it is hard to see how courts could bind individuals who do not opt out, but who have not otherwise opted in, to her decisions. After all, arbitrators are not judges. Nowhere in the Federal Arbitration Act does Congress confer upon these private citizens the power to bind individuals and businesses except in so far as the relevant

8

individuals and businesses have bound themselves. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (arbitration is "simply a matter of contract between the parties"); Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989) (arbitration "is a matter of consent, not coercion"). Nor could Congress delegate to arbitrators such authority, as Article III of the federal Constitution entrusts the judicial power to the judicial branch.³

Therefore the Court finds that the Arbitrator here had no authority to decide whether the RESOLVE agreement permitted class action procedures for anyone other than the named parties who chose to present her with that question and those other individuals who chose to opt in to the proceeding before her. See Granite Rock, 561 U.S. at 299; see also Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 140-41 (2d Cir. 2007).

As the arbitrator exceeded her powers, see Porzig, 497 F.3d at 140 (an arbitrator exceeds her powers when she "goes beyond

---

³ Moreover, as Justices Alito and Thomas suggested in their concurring opinion in Oxford Health, the "distribution of opt-out notices does not cure this fundamental flaw in the class arbitration proceeding," because an "offeree's silence does not normally modify the terms of a contract." 569 U.S. at 574 (citing Restatement (Second) of Contracts § 69(1) (1979)). "Accordingly, at least where absent class members have not been required to opt in, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used." Id. at 574-75.

9

[the] self-limiting agreement between consenting parties"), the Court grants Sterling's motion to vacate the February 2, 2015 Award in so far as that Award certifies a class that includes individuals who have not affirmatively opted in to the arbitral proceedings.

The Clerk is directed to close docket entry number 162.

SO ORDERED.

Dated: New York, NY
January 15, 2018

JED S. RAKOFF, U.S.D.J.