Hagnstea

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LARYSSA JOCK, et al.,

                Plaintiffs,

        v.                              08 Civ. 2875 (JSR)

STERLING JEWELERS, INC.,

                Defendant.              Argument
------------------------------x
                                        New York, N.Y.
                                        October 16, 2017
                                        3:00 p.m.

Before:

                    HON. JED S. RAKOFF,

                                        District Judge


                        APPEARANCES

COHEN MILSTEIN
     Attorneys for Plaintiffs
BY:  JOSEPH M. SELLERS
     SHAYLYN COCHRAN

SEYFARTH SHAW
     Attorneys for Defendants
BY:  GERALD L. MAATMAN, JR.
     DAVID ROSS
```

1           (Case called)
2           MR. SELLERS:  Good afternoon, your Honor.  Joseph
3   Sellers for the claimants, the plaintiffs, along with Shaylyn
4   Cochran.
5           THE COURT:  Good afternoon.
6           MR. MAATMAN:  Good afternoon, your Honor.  Gerald
7   Maatman of Seyfarth Shaw, along with David Ross of Seyfarth
8   Shaw for Sterling.
9           MR. ROSS:  Good afternoon.
10          THE COURT:  Good afternoon.
11          So, this case is a lawyer's dream.  It just goes on
12  forever.
13          We are here on the defendant's renewed motion to
14  vacate the class certification award by the arbitrator.  Let me
15  hear first from defense counsel, then from plaintiffs' counsel.
16          MR. MAATMAN:  Good afternoon, your Honor.  Gerald
17  Maatman of Seyfarth Shaw for Sterling.
18          May it please the Court, and thank you for the
19  opportunity to be heard on Sterling's renewed motion to vacate
20  the class determination award issued in the arbitration.
21          We are here today on the Second Circuit's remand order
22  of July 24, 2017.  We believe the issue before you today is
23  novel, and to our knowledge has never been decided by any
24  court, and it is critical to the contours of the arbitration
25  going forward.

Hagnstea

         I would like to briefly address where we are now and how we got to where we are, and then turn to the four main points in our moving papers.

         The Second Circuit's order is four pages long.  We believe there are four passages that are very important to the issues to be decided by this court on the renewed motion.

         The first passage is on page 3, and the Second Circuit defined the question before the Court: "Whether the arbitrator had the authority to certify a class that included absent class members, *i.e.*, employees other than the named plaintiffs and those who had opted into the class."

         The named plaintiffs and those who had opted into the class is approximately 254 people

         THE COURT:  Out of a class of about 70,000.

         MR. MAATMAN:  That's correct, your Honor.

         The second passage is also on page 3.

         Here the Second Circuit made a factual finding with respect to those absent class members:  "Unlike the parties here, the absent class members never consented to the arbitrator determining whether class arbitration was permissible under the agreement in the first place."

         Then the third passage is the second to the last paragraph on page 4 where the Second Circuit describes the absent class members as nonparties for purposes of arbitration.

         The final passage, the fourth one, is on page 4 in the

Hagnstea

final paragraph. The Second Circuit describes what it was remanding to this court for further consideration. That was whether the arbitrator exceeded her authority in certifying a class that contained absent parties who have never opted in.

So we think that those four passages from the Second Circuit's argument will define the parameters of what we are dealing with today and in this motion.

In terms of our four points, the first is that it is a truism and axiomatic under the law that arbitration is based on consent, not coercion.

Here the nonparties did not consent. The Second Circuit found as much on page 3 of their order, and on page 4 it defined that class of individuals as nonparties.

As I mentioned, there were 254 who consented. The rest did not consent, and that coercion is the touchstone of arbitration. That is certainly established in the *Stolt-Nielsen* decision, which this Court is very much aware of, in terms of what ultimately went to the Supreme Court in the initial *Volt* decision of the Supreme Court from 1989 to establish those points.

Point two of our argument in our moving papers is the arbitrator here exceeded her authority because she purported to determine issues as to persons, these nonparties, who had not consented to her jurisdiction. That is because of the important distinction between the powers of an arbitrator,

Hagnstea

1    which derive from consent and from a contract, as compared to
2    an Article III judge, whose power is derived from the Federal
3    Rules of Civil Procedure and the Judiciary Act of 1789.
4            Hence, the arbitrator cannot determine the rights of
5    those nonparties who have not consented.  There was an
6    interesting cite on page 3 of the Second Circuit's summary
7    order.  It cited a case from the Sixth Circuit called
8    *Nationwide Home*, and it described in a parenthetical the
9    ruling.  It said an arbitrator exceeds his or her authority if
10   they determine rights and obligations of nonparties.
11           That's precisely what happened here in this case and
12   why we believe the award should be vacated.
13           Our third point is that the arbitrator cannot bind
14   nonparties by acting in excess of her authority.  The
15   plaintiffs say in this particular instance the arbitrator
16   simply was interpreting the workplace arbitration agreement; as
17   this Court knows, it goes by the acronym RESOLVE.  But I think
18   in this instance the Court simply assumed consent by virtue of
19   looking at it or the AAA rules, and certainly the AAA rules
20   were not a proxy that supplied consent where it never existed.
21           The Second Circuit said as much on page 3.  It
22   actually agreed with this Court's determination.  It was a long
23   time ago.  It was in July of 2010, when your Honor --
24           THE COURT:  It seems like just yesterday.
25           MR. MAATMAN:  When your Honor looked at the clause

Hagnstea

1    construction award, and you surveyed whether there was either

2    explicit consent or implied consent, and your Honor concluded

3    on pages 4 and 5 of your opinion that there was no consent.

4              So we think that the plaintiffs' argument that somehow

5    the AAA rules by reference to the supplementary class rules

6    somehow supplied consent, there was a proxy for consent is

7    certainly a stretch and in this case was a fiction.

8              In sum, by signing RESOLVE it is our position that

9    these nonparties didn't give carte blanche to some arbitrator

10   some years in the future to bind them to some future

11   determination to which they were not a party, especially in

12   circumstances where, as here, where it was a class where

13   someone who could not opt out.

14             Our fourth and final point is the dangers illustrated

15   by this award, that it confirms the basis of Justice Alito's

16   warning in the concurrence of *Oxford Health*, that you're

17   dealing with a heads-I-win-tails-you-lose situation in terms of

18   the ability these of nonparties, these absent class members, so

19   to speak, to attack the ultimate arbitration award on the

20   grounds that they are not bound by it.  Again, that

21   illustrates, we believe, the stark differences between what

22   happens when an Article III judge would make a determination as

23   compared to an arbitrator when that determination is grounded

24   in consent.

25             So we think there are three points which are very

1  clear here.

2  These absent class members were not parties to the
3  arbitration.  That's found on pages 3 and 4 of the Second
4  Circuit's order.

5  The absent class members never submitted this issue to
6  this particular arbitrator, and they never consented to be
7  bound by such a determination.

8  In those circumstances we believe based on the Federal
9  Arbitration Act and applicable Supreme Court precedent, there
10  are grounds for this Court to vacate that award.

11  THE COURT:  Thank you very much.

12  We will hear from plaintiffs' counsel.

13  MR. SELLERS:  Good afternoon, your Honor.

14  This is not a novel issue.  It may have been framed in
15  a novel way, but it is governed every bit as much by an
16  interpretation of the agreement that every woman signed who is
17  a member of this class.

18  I want to walk the Court through, if I may, what in
19  fact each woman agreed to, because I think in that context it
20  should be clear that each woman who executed a RESOLVE
21  agreement agreed to procedures that permitted her to be part of
22  a class to which she does not expressly consent to participate.

23  So let me turn to that, and then I have a few other
24  points, if I may.

25  First of all, each of them agreed to submit their

claims alleging unlawful discrimination, including those claims under Title VII, to a resolution in the RESOLVE program.

Second, they agreed to use the procedures for resolving that dispute that were provided by the RESOLVE program and the AAA employment rules.

Three, they agreed, as the arbitrator found in the class construction award, that they had intended to allow their claims to be part of the class action.

Fourth, they agreed that such class claims could be governed by the AAA supplementary class rules, which are published and are, by the AAA rules, intended to apply to any claims brought under the American Arbitration Association procedures in which a class claim is framed.

Those procedures, those supplementary rules, which are public and were available to them, pursuant to Rules 4 and 5, which are patterned after Rule 23, expressly provide that persons may be bound by a class without having to express their consent to participate in that particular class.

So this is really a matter of contract interpretation, and it is a matter of consent and not coercion because every single woman who is a member of this class executed the same agreement, the same agreement that the arbitrator interpreted and that arbitrator interpreted as permitting the pursuit of their claims in a class action.

In addition, Rule 6(a) of the employment rules of the

AAA expressly provide to the arbitrator, if I may quote, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."

Every one of the women who executed this agreement entered into an agreement pursuant to Rule 6(a) entrusting the arbitrator with the power to make a decision interpreting his or her jurisdiction.

I want to back up for a moment, if I could, and talk about the context in which all of this is being litigated, because sometimes we lose sight of that.

The Second Circuit made clear quite some time ago in the *Kern v. Siemens* decision -- we cite it in our brief, but it is at 393 F.3d 120, it is from 2004 -- in a case that did not arise under Title VII, but nonetheless presented the question whether Congress in establishing rules that apply, in this case the rule to Title VII, Rule 23, intended to foreclose the pursuit of claims brought that must be brought in through an opt-in process. The Second Circuit said it did, that in the context of, in this case of Title VII, which Congress has enacted to and applied Rule 23 procedures to, the ordinary method by which people may participate in a class action under Title VII is by being part of a class ordered by a court, unless the opportunity to opt out is provided.

By the way, I heard Mr. Maatman refer to the absence

Hagnstea

1  of an opt-out procedure.  The Court will recall, of course,
2  that the plaintiffs originally proposed an opt-out procedure,
3  and it was upon Sterling's objection that it was withdrawn.
4            Needless to say, we think the relief that is provided
5  here, which is just declaratory injunctive relief at this
6  juncture, doesn't require an opt-out procedure.
7            If at some point, as we think may happen, we may renew
8  our request for the arbitrator to certify in some fashion the
9  monetary claims to be adjudicated in some way other than
10 individually, you can be assured we would then ask the
11 arbitrator to allow for notice of the right to opt out from
12 that process.
13           That said, I think the statutory and broader context
14 in which this agreement operates, in which each woman has
15 committed to submitting her Title VII claims to arbitration and
16 in a context in which Congress has provided that ordinarily
17 opt-out procedures are intended to apply, not opt-in
18 procedures, the question ought to be there anything in this
19 agreement that reflects the parties' intentions to supersede
20 that normal procedure.  Because if it isn't, then the ordinary
21 way in which Title VII claims are adjudicated on a class basis,
22 and the fact that the arbitrator has already found that each
23 woman who executed the agreement contemplated allowing her
24 claims to be pursued as part of a class, ought to create a
25 presumption that that's the procedure that applies, that's the

1   procedure she intended to follow, and there's nothing in the
2   agreement that actually demonstrates otherwise.
3            Indeed, an important distinction is worth noting in
4   the context of the Equal Pay Act claim that was brought in this
5   case.  As the Court is well aware, in court Equal Pay Act
6   claims are governed by an opt-in procedure, not an opt-out
7   procedure.  The claimants nonetheless asked the arbitrator to
8   allow an opt-out procedure, the procedures of Rule 4 and 5 to
9   apply at the time they asked for certification, relying on the
10  supplementary class rules.
11           The arbitrator ruled against the claimants, finding
12  that there was nothing in the agreement that reflected
13  intention by the parties to override the rules that normally
14  were enacted by Congress.
15           Drawing that distinction, we think the arbitrator
16  properly ruled here that the procedures normally applicable to
17  Title VII, which are the procedures to which you are bound but
18  for an opt-out process, ordinarily apply.
19           So I submit to you that this is, as I said before, a
20  matter of consent and not coercion.
21           The *Nationwide* case to which Mr. Maatman referred is a
22  different case.  There the people as to whom there was an
23  effort to apply the arbitration had never consented, never
24  signed any arbitration agreement.  They were foreign to the
25  arbitration agreement altogether.

Hagnstea

Here the arbitrator was interpreting an agreement which every woman who was a member of this class had entered into. She was interpreting the same terms that are applicable to 70,000 women and construing them in a fashion, while she saw the agreement that the claimants executed, the parties have stipulated that there are no differences material to this in the terms of that arbitration agreement.

So her interpretation of that applies equally to the intentions of the other women; and, importantly, as I think I tried to make clear, without the need for them to consent to participate in this particular arbitration. That is the question of Second Circuit has asked this Court to address.

It does not foreclose the outcome that we are proposing, as Sterling argued, at least in its papers. What it does is direct this Court, and we think the record here is well developed in interpreting what the agreement was that the arbitrator interpreted and applied and which each woman who was a member of this class executed.

Finally, I might add, in the class determination award, I think it's page 117 of the class determination award, the arbitrator was faced with a version of this question, not presented actually the way the Second Circuit has presented it, but Sterling argued that the named claimants lacked standing to represent the interests of those women who had not been part of this, who had not opted in.

Hagnstea

           The arbitrator found, as we think was properly so, that each of them signed the same agreement.  The agreement reflected an intent that the plaintiffs be part of a class, be part of a claim.  The requirements of Rule 23 are satisfied, and the supplementary rules apply to each of those claims, and those supplementary rules make no provision for each of the signatories to consent or be required to consent to participate in the class.

           So we submit that the arbitrator has, in fact, reached a finding in the class determination award that warrants the continued certification of this, and she did not exceed her authority by certifying the class to include those women who executed the agreement, the same agreement, each of whom agreed to follow the AAA rules and to follow procedures that did not require them to consent to participate.

           In this respect it is very different than the agreement at issue that concerned Justice Alito in *Oxford Health*.  There that agreement simply referred certain matters to arbitration.  There was no evidence of any prescribed procedure, which was, as we have here, one that reflected an intention by the signatories to the agreement to refrain from any need to give their consent to participate in the particular arbitration.

           So we rely on the language of the agreement, the arbitrator's interpretation, which we think were sound and well

Hagnstea

1   within the scope of her authority.

2   THE COURT: Thank you very much.

3   We will hear briefly from defense counsel in rebuttal.

4   MR. MAATMAN: Thank you, your Honor. Very briefly.

5   I think that the arguments offered this afternoon by
6   plaintiffs' counsel don't distinguish between what was at issue
7   in Jock I and Jock II and the distinction where the Second
8   Circuit on page 3 very clearly says there's not consent here,
9   your finding of July 24, 2010, where you looked at the issue of
10  consent and said it wasn't there.

11  My reference to the supplementary rules, they run
12  headlong into both *Stolt-Nielsen* and read *Exelsor* from the
13  Sixth Circuit, that said the existence of those rules is a
14  neutral factor, not pro or con, that shows anyone consented to
15  the authority of the arbitrator.

16  The supplementary class rules, the last time I looked
17  them up on the AAA website I think didn't even come into
18  existence until 2003. People who signed this agreement in the
19  '90s who were part of the front end of the class wouldn't have
20  even known about those, so I think logically the progression
21  even breaks down for the plaintiff.

22  So at the end I think that plaintiffs' argument is a
23  bit circular in what the arbitrator didn't examine was her own
24  authority. We submit there's just one answer to the very
25  narrow question that was remanded by the Second Circuit to you,

Hagnstea

and that is that, insofar as the arbitrator determined rights and obligations of nonparties, she exceeded her authority, and that's based on Supreme Court precedent and the Federal Arbitration Act. So, as a result, we respectfully submit that the class determination award should be vacated.

THE COURT: All right.

I thank both counsel for very much for, as always, a very well presented and interesting argument.

I will take the matter sub judice. I took great heart from the fact that after losing their first five names the New York Giants won a game yesterday, so I'm confident that, however I come out, the Second Circuit will affirm me.

But, anyway, thanks again.

I'll get this out to you shortly.

Thanks.

MR. SELLERS: Thank you.

(Adjourned)