# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2017

Argued: May 7, 2018
Decided: November 18, 2019

Docket No. 18-153-cv

---

LARYSSA JOCK, CHRISTY CHADWICK, MARIA HOUSE, DENISE MADDOX, LISA MCCONNELL, GLORIA PAGAN, JUDY REED, LINDA RHODES, NINA SHAHMIRZADI, LEIGHLA SMITH, MARIE WOLF, DAWN SOUTO-COONS,

*Plaintiffs-Counter-Defendants - Appellants,*

JACQUELYN BOYLE, LISA FOLLETT, KHRISTINA RODRIGUEZ, KELLY CONTRERAS,

*Plaintiffs-Counter-Defendants,*

*v.*

STERLING JEWELERS INC.,

*Defendant-Counter-Claimant - Appellee.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 08-cv-2875, Rakoff, *Judge.*

---

CERTIFIED COPY ISSUED ON 11/18/2019

Before:    HALL AND CARNEY, *Circuit Judges*, AND KOELTL, *District Judge*.[*]

The arbitrator certified a class of Sterling Jewelers Inc. employees that included employees who did not affirmatively opt in to the arbitration proceeding. The District Court held that the arbitrator exceeded her authority in purporting to bind those absent class members to class arbitration because the arbitrator erred in determining that the arbitration agreement permits class arbitration. We hold that the arbitrator was within her authority in purporting to bind the absent class members to class proceedings because, by signing the operative arbitration agreement, the absent class members, no less than the parties, bargained for the arbitrator's construction of their agreement with respect to class arbitrability. We therefore reverse the judgment of the District Court. Because the issue of whether the arbitrator exceeded her authority in certifying an opt-out, as opposed to a mandatory, class is not before us in this appeal, we remand the case to the District Court to reexamine that issue in the first instance.

REVERSED AND REMANDED.

>JOSEPH M. SELLERS, Kalpana Kotagal, Shaylyn Cochran, Cohen Milstein Sellers & Toll PLLC, Washington, DC; Sam J. Smith, Loren B. Donnell, Burr & Smith LLP, St. Petersburgh, FL; Thomas A. Warren, Thomas A. Warren Law Offices, P.L., Tallahassee, FL; Jessica Ring Amunson, Benjamin M. Eidelson, Jenner & Block LLP, Washington, DC, *for Plaintiffs-Counter-Defendants-Appellants*.

>GERALD L. MAATMAN, JR., David Bennet Ross, Lorie E. Almon, Daniel B. Klein, Seyfarth Shaw LLP, New York, NY; Jeffrey S. Klein, Gregory Silbert, Weil, Gotshal & Manges LLP, New York, NY, *for Defendant-Counter-Claimant-Appellee*.

---

[*] Judge John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

2

HALL, *Circuit Judge*:

This is an appeal from the District Court's January 15, 2018 opinion and order vacating the arbitrator's certification of a class of Defendant-Counter-Claimant-Appellee's employees insofar as the class included employees who did not affirmatively opt in to the specific arbitration proceeding before the arbitrator. The District Court held that the arbitrator, Kathleen A. Roberts, exceeded her authority in purporting to bind those absent class members to class arbitration because the arbitrator erred in determining that the arbitration agreement permits class arbitration. We hold that the arbitrator's determination that the agreement permits class arbitration binds the absent class members because, by signing the RESOLVE Agreement, they, no less than the parties, bargained for the arbitrator's construction of that agreement with respect to class arbitrability. We therefore reverse the judgment of the District Court. The issue of whether the arbitrator exceeded her authority in certifying an opt-out, as opposed to a mandatory, class is not before us in this appeal, however. We therefore remand this case to the District Court to decide that issue in the first instance after allowing the parties an opportunity to present their renewed arguments with respect to that issue.

I.

Laryssa Jock ("Jock") and her co-Plaintiffs-Counter-Defendants-Appellants (collectively, "Appellants") are a group of current and former retail sales employees of Defendant-Counter-Claimant-Appellee Sterling Jewelers Inc. ("Sterling").[1] Jock filed the instant suit in 2008, alleging that she and other female employees were paid less than their male counterparts, on account of their gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206(d).

All Sterling employees were required, as a condition of employment, to sign a "RESOLVE Program" agreement ("RESOLVE Agreement") mandating that they participate in arbitration. J. App. 129. Under the RESOLVE Agreement, employees "waiv[e] [their] right to obtain any legal or equitable relief . . . through any government agency or court, and . . . also waiv[e] [their] right to commence any court action. [They] may, however, seek and be awarded equal remedy through the RESOLVE Program." *Id*. The RESOLVE Agreement also provides that "[t]he Arbitrator shall have the power to award any types of legal or equitable

---

[1] The underlying facts are set forth in *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011), and are briefly recited here only for orientation and as relevant to the instant appeal.

4

relief that would be available in a court of competent jurisdiction[,]" and that any claim arising thereunder will be arbitrated "in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association." *Id*.

## II.

This is the fourth time this case has come before this Court. *See Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011) ("*Jock I*"); *Jock v. Sterling Jewelers Inc.*, 703 F. App'x 15 (2d Cir. 2017) (summary order) ("*Jock II*"); *Jock v. Sterling Jewelers Inc.*, 691 F. App'x 665 (2d Cir. 2017) (summary order) ("*Jock III*").

In *Jock I*, the arbitrator issued an award in favor of the then-named plaintiffs, construing the RESOLVE Agreement to permit classwide arbitration. The District Court vacated that award, concluding that under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), "the arbitrator's construction of the RESOLVE agreements as permitting class certification was in excess of her powers." *Jock I*, 646 F.3d at 118 (quoting *Jock v. Sterling Jewelers, Inc.*, 725 F. Supp. 2d 444, 448 (S.D.N.Y. 2010)). We reversed, holding that the District Court impermissibly substituted its own legal analysis for that of the arbitrator instead of focusing its inquiry on whether the arbitrator was permitted to reach the question of class

5

arbitrability that had been submitted to her by the parties. *Id*. at 123–24. We explained, furthermore, that the arbitrator had a colorable justification under the law to reach the decision she did. We distinguished *Stolt-Nielsen* on the ground that the parties in *Stolt-Nielsen* stipulated that their arbitration agreement contained "no agreement" on the issue of class arbitration, whereas the plaintiffs in this case merely conceded that there was no *explicit* agreement to permit class arbitration, thus leaving open the possibility of an "implied agreement to permit arbitration." *Id*. at 119, 124.

Following our decision in *Jock I*, the arbitrator issued a class certification determination that certified a class of approximately 44,000 women, comprising the then-254 plaintiffs as well as other individuals who had neither submitted claims nor opted in to the arbitration proceeding ("the absent class members"). The arbitrator certified the class only with respect to Appellants' Title VII disparate impact claims for declaratory and injunctive relief.[2] The District Court denied

---

[2] The arbitrator denied the motion for class certification with respect to Appellants' Equal Pay Act claims, reasoning that the Equal Pay Act, unlike Title VII, provides for its own opt-in class procedures. The arbitrator also declined to certify a Title VII damages class, reasoning that monetary claims could not "be fairly adjudicated on a representative basis" because each employee's "eligibility will vary depending on their individual employment history, and the facts pertaining to similarly-situated males during their employment." J. App. at 594.

6

Sterling's motion to vacate the class determination award, reasoning that Sterling's argument that the arbitrator had exceeded her powers in "purporting to bind absent class members who did not express their consent to be bound" was "foreclosed" by this Court's holding in *Jock I* that "there is no question that the issue of whether the agreement permitted class arbitration was squarely presented to the arbitrator." *Jock v. Sterling Jewelers, Inc.*, 143 F. Supp. 3d 127, 128–29 (S.D.N.Y. 2015) (internal quotation marks omitted).

Sterling appealed from the District Court's decision, and in *Jock II* this Court reversed and remanded, clarifying that *Jock I* "did not squarely address whether the arbitrator had the power to bind absent class members to class arbitration given that they, unlike the parties here, never consented to the arbitrator determining whether class arbitration was permissible under the agreement in the first place." 703 F. App'x at 17. The *Jock II* panel identified the question to be considered on remand, and one not considered in *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013), as "whether an arbitrator, who may decide . . . whether an arbitration agreement provides for class procedures because the parties 'squarely presented' it for decision, may thereafter purport to bind *non-parties* to class

7

procedures on this basis." 703 F. App'x at 18.[3]

On remand, the District Court vacated the arbitrator's class determination ruling. The District Court's reasoning was twofold. First, it determined that the RESOLVE Agreement did not give the arbitrator the authority to certify the class because the District Court "considered the question of whether the RESOLVE agreement authorizes class procedures in 2010 and decided that it does not." Sp. App. 6. Second, the fact that "the named plaintiffs and the defendant submitted the question of whether the RESOLVE Agreement allowed for class procedures to the Arbitrator" also did not give the arbitrator such authority. *Id*. at 7. The District Court reasoned that, even if the arbitrator's "erroneous interpretation" of the RESOLVE Agreement could bind the 254 plaintiffs who had "authorized the arbitrator to make that determination" by submitting the question to her or opting into the proceeding, that erroneous interpretation could not bind absent class members. *Id*. at 8 (quoting *Oxford Health*, 569 U.S. at 574 (Alito, J., concurring)).

This appeal followed.

---

[3] *Jock III* dismissed an appeal from the District Court's decision that it lacked jurisdiction to consider Sterling's motion to vacate an interim decision of the arbitrator. 691 F. App'x at 665.

8

III.

"In considering a challenge to a district court's decision to vacate a portion of an arbitration award, we review its legal rulings *de novo* and its findings of fact for clear error." *ReliaStar Life Ins. Co. of New York v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009).

Courts are empowered to vacate arbitration awards only "where the arbitrator[] exceeded [his or her] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). This is an extremely deferential standard of review. *See Stolt-Nielson*, 559 U.S. at 671. When parties

> bargain[] for [an] arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits. Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination.

*Oxford Health*, 569 U.S. at 569 (internal quotation marks, citations, and alterations omitted); *accord Stolt-Nielson*, 559 U.S. at 672. The focus of our inquiry under Section 10(a)(4) is "'whether the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the*

9

*arbitrator[] correctly decided that issue.'"* *Jock I*, 646 F.3d at 122 (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)).

IV.

The District Court's decision rests on the premise that, because the absent class members did not affirmatively opt in to the arbitration proceeding and thereby consent to the arbitrator's authority to decide whether the RESOLVE Agreement permits class procedures, our usual deferential standard of review does not apply. In other words, as Sterling argues:

> It is one thing for this Court to sustain an incorrect arbitral ruling on a question properly submitted to the Arbitrator by parties who agreed to be bound by the Arbitrator's decision. It is another thing altogether to sustain an incorrect decision granting the Arbitrator authority over absent class members who did not submit that question to her. . . . [T]he Arbitrator's decision that she had authority over absent class members cannot be upheld on the ground that, despite being wrong, it was nonetheless within her authority.

Appellee Letter Br. (May 17, 2019), at 4. The District Court concluded that the individuals who did not affirmatively opt in to the arbitration proceeding did not agree to permit class procedures by virtue of having signed RESOLVE Agreements because "[p]lainly it is the law of the case that the Arbitrator does not have the authority, based on the agreement, to certify" a class. Sp. App. 6. The District Court thus relied on its original view that the arbitrator wrongly interpreted the

10

RESOLVE Agreement to permit class procedures. That view is not, however, "the law of the case," because this Court vacated the District Court's earlier decision that had reached that conclusion. *Jock I*, 646 F.3d 113. In *Jock I*, we had no occasion to decide whether the arbitrator "got it right" given our conclusion that such determination was not one for the courts to make. *Id*. at 124. The District Court further determined that the fact that the named plaintiffs and Sterling had submitted the class arbitrability question to the arbitrator also did not give the arbitrator the authority to certify the class. In doing so, the District Court relied on its own prior conclusion that the arbitrator's interpretation was "wrong as a matter of law." Sp. App. 8. That logic was largely based on Justice Alito's concurrence in *Oxford Health*, which states that an arbitrator's "erroneous interpretation" of a contract that does not authorize class procedures cannot bind absent class members who have "not authorized the arbitrator to make that determination." 569 U.S. at 574.

Appellants argue that the absent class members have, in fact, authorized the arbitrator to determine whether the RESOLVE Agreement permits class procedures. They contend that because all Sterling employees signed the RESOLVE Agreement, all Sterling employees "agreed that, if any of them initiated

11

a putative class proceeding, the arbitrator in *that* proceeding would be empowered to decide class-arbitrability—and, if he or she found it appropriate, to certify a class encompassing other employees' claims." Appellant Br. 23. According to Appellants, the District Court erred by "never ask[ing] what authority absent class members conferred on Arbitrator Roberts by joining the RESOLVE Program," a question that is a matter of contract interpretation. *Id*. at 26

We agree with Appellants. Although the absent class members have not affirmatively opted in to this arbitration proceeding, by signing the RESOLVE Agreement, they consented to the arbitrator's authority to decide the threshold question of whether the agreement permits class arbitration. As the arbitrator reasoned, "[i]t is undisputed that each of the absent class members signed the RESOLVE arbitration agreement, which clearly provides for the application of the [American Arbitration Association ('AAA')] Rules." J. App. 603; *see id*. at 129. The AAA Supplementary Rules for Class Arbitration ("Supplementary Rules") apply to "any dispute arising out of an agreement that provides for arbitration pursuant to" the AAA rules "where a party submits a dispute to arbitration on behalf of . . . a class or purported class." *Id*. at 434 (Supplementary Rule 1(a) (2010)). The Supplementary Rules provide that "the arbitrator shall determine as a threshold

12

matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of . . . a class." *Id*. at 434–35 (Supplementary Rule 3 (2010)). The RESOLVE Agreement's incorporation of the AAA Rules evinces agreement to have the arbitrator decide the question of class arbitrability. *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 (2d Cir. 2018) (when parties to an agreement explicitly incorporate rules that empower an arbitrator to decide an issue, "the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator" (internal quotation marks omitted)).[4]

Further supporting the conclusion that absent class members authorized the arbitrator to decide whether the arbitration may proceed on a class basis, the RESOLVE Agreement provides that "[q]uestions of arbitrability" and "procedural questions" "shall be decided by the arbitrator." J. App. 132.[5] The Supreme Court

---

[4] It is of no moment that the Supplementary Rules also provide that "the arbitrator should not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." J. App. 435 (Supplementary Rule 3). Here, we address whether the absent class members authorized the arbitrator to decide the threshold question of class arbitrability; we do not review the arbitrator's determination that the arbitration may proceed on a class basis.

[5] The sole exception to that delegation of authority is the provision that if a party initiates a lawsuit, "a court may decide procedural questions that grow out of the

13

has suggested, and this Court has assumed without deciding, that the availability of classwide arbitration is a "question of arbitrability." *Oxford Health*, 133 S. Ct. at 2068 n.2; *Sappington*, 884 F.3d at 394. The parties in this case have at times assumed that the availability of class procedures is a "procedural question." *See* Appellant Br. 3–4; J. App. 208–210 (Sterling Mem. of Law (May 19, 2008)). Regardless of whether the availability of class procedures is a question of arbitrability or merely a procedural question, it is a question for the arbitrator to decide under the terms of the RESOLVE Agreement.

That conclusion is consistent with Ohio law, which governs our interpretation of the RESOLVE Agreement. *See* J. App. 130. Under Ohio law, the issue of whether an arbitration agreement permits class procedures is a "question of arbitrability" that is presumptively for a court to decide. *Shakoor v. VXI Glob. Sols.*, 35 N.E.3d 539, 547 (Ohio Ct. App. 2015). But a question of arbitrability "is to be decided by the arbitrator" when the parties to an agreement "have clearly and unmistakably vested the arbitrator with the authority to decide the issue of arbitrability." *Belmont Cnty. Sheriff v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 820 N.E.2d 918, 921 (Ohio 2004); *cf. Shakoor*, 35 N.E.3d at 548–50 (agreement

---

dispute and bear on the final disposition of the matter." J. App. 132. That exception does not affect our analysis here.

14

did not provide evidence sufficiently clear and unmistakable to overcome presumption that questions of arbitrability are for court to decide). The RESOLVE Agreement "clearly and unmistakably" provides that "[q]uestions of arbitrability . . . shall be decided by the arbitrator." *Belmont Cnty. Sheriff*, 820 N.E.2d at 921; J. App. 132.

Because the absent class members, no less than the parties, thus "bargained for the arbitrator's construction of their agreement" with respect to class arbitrability, the arbitrator acted within her authority in purporting to bind the absent class members to class procedures. *Oxford Health*, 569 U.S. at 569 (internal quotation marks omitted). By virtue of the absent class members' contractually expressed consent, they, like the parties, may be bound by the arbitrator's determination that the RESOLVE Agreement permits class procedures regardless of whether that determination is, as the District Court believes, "wrong as a matter of law." Sp. App. 8. That is, our reasoning in *Jock I* applies with equal force to the absent class members. It is not for us, as a court, to decide whether the arbitrator's class certification decision was correct on the merits of issues such as commonality and typicality. We merely decide that the arbitrator had the authority to reach such issues even with respect to the absent class members.

The District Court's contrary conclusion is understandable in light of this Court's framing of the issue in *Jock II*.  In *Jock II*, we stated that *Jock I* "did not squarely address whether the arbitrator had the power to bind absent class members to class arbitration given that they, unlike the parties here, never consented to the arbitrator determining whether class arbitration was permissible under the agreement in the first place." 703 F. App'x at 17.  That observation referred to the fact that the absent class members, unlike the 254 plaintiffs, did not affirmatively opt in to the proceeding in which the question was submitted to the arbitrator.  Our use of "consent" as a shorthand for that fact may well have obscured the possibility that the absent class members consented in a different way to the arbitrator's authority to decide class arbitrability.

That those absent class members did not expressly submit themselves to this particular arbitrator's authority does not alter our analysis.  Class actions that bind absent class members as part of mandatory or opt-out classes are routinely adjudicated by arbitrators and in our courts.  *See* Supplementary Rule 4; Fed. R. Civ. P. 23; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361–63 (2011).  Since the RESOLVE Agreement provides for "the arbitrator" to decide the question of class arbitrability, J. App. 132, it must mean, as Appellants state, that if any Sterling

16

employee initiates a putative class proceeding, "the arbitrator in *that* proceeding [will] be empowered to decide class-arbitrability—and, if he or she [finds] it appropriate, to certify a class encompassing other employees' claims." Appellant Br. 23. To hold otherwise would be inconsistent with the nature of class litigation and would in effect negate the power of the arbitrator to decide the question of class arbitrability.[6]

Nor is our decision inconsistent with the principles affirmed in *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133 (2d Cir. 2007). In *Porzig*, we held that an arbitration panel was without jurisdiction to order a party's lawyer to pay back to the party, Porzig, the lawyer's contingency fee, reasoning that neither Porzig nor his lawyer had agreed to arbitrate a dispute over their fee contract. We explained that "a party cannot be forced to arbitrate any dispute that it has not obligated itself, by contract, to submit to arbitration," and that an arbitration panel

---

[6] This logic has implicitly underpinned decisions holding that because an arbitrator was within his authority in determining that class procedures were permitted under an agreement, it followed that the arbitrator was within his authority to certify a class. *See, e.g., Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 353 (4th Cir. 2008); *Jock*, 143 F. Supp. 3d at 129. In *Jock II*, we found this logic insufficient to uphold the arbitrator's class determination award because we determined, in light of the Supreme Court's decision in *Oxford Health*, that there was an unsettled question as to whether an arbitrator's authority to bind absent class members necessarily followed from her authority to determine that an agreement permitted class procedures.

17

"may not exceed the power granted to it by the parties in the contract." *Porzig*, 497 F.3d at 140 (internal quotation marks omitted). Here, the absent class members have "obligated [themselves], by contract, to submit to arbitration" the question of class arbitrability. *Id*. Indeed, our conclusion that the absent class members may be bound by the arbitrator's class arbitrability determination rests on the fact that the "self-limiting agreement between consenting parties" in this case authorizes the arbitrator to decide that question. *Id*.

Finally, because our decision rests in part on our reasoning in *Jock I*, we address Sterling's argument that *Jock I* is no longer good law in light of the Supreme Court's recent decision in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019).[7] In *Lamps Plus*, the Supreme Court held that "an ambiguous agreement can[not] provide the necessary 'contractual basis' for compelling class arbitration." 139 S. Ct. at 1415. *Lamps Plus* does not undermine our reasoning in *Jock I*. First, a crucial difference between the two cases is that the parties in *Lamps Plus* "agreed that a court, not an arbitrator, should resolve the question about class arbitration." *Id*. at 1417 n.4. The class arbitrability decision in *Lamps Plus* was therefore subject to *de*

---

[7] Because this Court was aware that the Supreme Court's decision in *Lamps Plus* would deal with class arbitrability issues similar to the ones presented in this case, we deferred issuing an opinion until *Lamps Plus* was decided.

18

*novo* scrutiny rather than the deferential standard of review that circumscribes courts' review of arbitrators' decisions. Second, *Lamps Plus* leaves undisturbed the proposition, affirmed in *Stolt-Nielsen*, that an arbitration agreement may be interpreted to include implicit consent to class procedures. Our reasoning in *Jock I* is, moreover, fully consistent with the Supreme Court's decision in the more analogous case of *Oxford Health*, 569 U.S. 564.

Having determined that the arbitrator acted within her authority in purporting to bind the absent class members to class proceedings, we note that it remains to be decided whether the arbitrator exceeded her authority in certifying an opt-out, as opposed to a mandatory, class for injunctive and declaratory relief. In the decision that we vacated in *Jock II*, the District Court held that in so doing the arbitrator exceeded her authority. *See Jock*, 143 F. Supp. 3d at 130–34. Applying the appropriate Section 10(a)(4) standard, the District Court concluded that under *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the arbitrator acted "outside her authority" and "in manifest disregard of the law" by providing putative class members with the opportunity to opt out. *Id*. at 130, 133. The correctness of that conclusion is not before us in this appeal. *See* Appellant Br. 30 n.13; Appellee Br. 9 n.2. We therefore remand this case to the District Court with directions to decide

19

that issue after allowing the parties an opportunity to present renewed argument in light of any subsequent developments in the law.

V.

We have considered all of Sterling's remaining arguments and conclude that they are without merit. The judgment of the District Court is reversed, and the case is remanded for further proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

20