IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARYSSA JOCK, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>STERLING JEWELERS Inc.,<br><br>    Defendant. | Civ. No. 1:08-cv-02875 |

**JOINT PETITION TO CONFIRM FINAL APPROVAL AWARD**

   Sterling Jewelers Inc. ("Sterling"), together with Laryssa Jock, Christy Meierdierks, Kelly Contreras, Maria House, Denise Maddox, Lisa McConnell, Gloria Pagan, Judy Reed, Linda Rhodes, Nina Shahmirzadi, Leighla Smith, Dawn Souto-Coons and Marie Wolf (collectively, the "Named Claimants") (and, together with Sterling, the "Parties"), on behalf of themselves and other members of the Equal Pay Act Settlement Class and the Title VII Settlement Class (collectively, "Settlement Class Members") in the American Arbitration Association ("AAA") arbitration, AAA Arbitration No. 11-160-00655-08, arising out of the above-captioned civil action, hereby respectfully petition this Court for an order confirming the Final Approval of Class Action Settlement ("Final Approval Award") dated November 15, 2022.

   In support of this Petition, the Parties state as follows:

**I.  STATEMENT OF FACTS**

   1.  On March 18, 2008, Named Claimants and other female Sterling employees filed a putative Class Action Complaint in this Court, alleging claims of sex discrimination arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII"), and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA") on behalf of a putative class of current and former female employees.  *See* Dkt. 001.

2. On May 5, 2008, Named Claimants filed a Motion to Refer to Arbitration and Stay the Litigation, requesting that the above-captioned civil action be referred to arbitration pursuant to the RESOLVE workplace arbitration agreement entered into between the parties. See Dkt. 025.

3. On June 19, 2008, this Court granted the motion to refer the matter to Arbitration, referred the action to arbitration pursuant to RESOLVE, and stayed the action for all purposes. Dkt. 052.

4. On June 26, 2008, Named Claimants filed their First Amended Class Arbitration Complaint before the AAA, alleging claims of a pattern or practice of sex discrimination in promotion and compensation committed against current and former female employees by Sterling, and asserted class claims of disparate impact and disparate treatment discrimination under Title VII and violations of the EPA and also alleged certain individual claimants' claims arising under Title VII or the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621. See Sellers Decl.[1] ("Settlement Agreement"), § II-III, Exh. A.

5. On June 1, 2009, the Arbitrator issued a Clause Construction Award authorizing Named Claimants to proceed as a putative class and to seek class certification in the arbitration with respect to their disparate impact and disparate treatment discrimination claims under Title VII and class claims under the Equal Pay Act. Id. at § II.

6. On February 2, 2015, the Arbitrator issued a Class Determination Award in which she evaluated Named Claimants' class and collective claims under Title VII and the Equal Pay Act against the procedural requirements of Federal Rule of Civil Procedure ("Rule") 23 and the AAA

---

[1] The Declaration of Joseph M. Sellers in Support of Confirmation of the Final Approval Award ("Sellers Decl.") is contemporaneously filed herewith.

Supplementary Rules for Class Proceedings ("AAA Supplementary Rules").[2]  In applying these procedural requirements, the Arbitrator: (1) certified Named Claimants' disparate impact claims with respect to declaratory and injunctive relief under Rules 23(b)(2) and 23(c)(4); (2) denied certification of Named Claimants' Title VII disparate impact claims with respect to monetary damages; (3) denied Named Claimants' motion for class certification of their Title VII disparate treatment claims; and (4) denied Named Claimants' motion for certification of a Rule 23 opt-out class for their Equal Pay Act claims (rather than an opt-in collective in accordance with Section 216(b)).  *Id.*

7. The Second Circuit upheld the arbitrator's Class Determination Award, and the Supreme Court denied certiorari.  *Id.*

8. Thereafter, the Parties engaged in merits-phase discovery and motion practice. During that time, the initial Arbitrator selected by the parties retired.  Accordingly, the parties selected the Honorable John Gleeson (ret.) to serve as the new Arbitrator in August 2021.  Judge Gleeson is currently a partner at Debevoise & Plimpton LLP and a resident of the firm's New York, New York office.  Judge Gleeson previously served as a United States District Judge in the Eastern District of New York for 22 years.

9. Judge Gleeson scheduled an evidentiary hearing to begin on September 6, 2022. *Id.*

---

[2] On June 1, 2009, the Arbitrator issued a Clause Construction Award interpreting the class and collective procedures available under Named Claimants' RESOLVE arbitration agreements. The Arbitrator held that the RESOLVE arbitration agreements do not prohibit class claims.  As a result, Named Claimants sought certification of their class and collective claims pursuant to the AAA Supplementary Rules, which provide that an Arbitrator must consider the criteria enumerated in AAA Supplementary Rule 4 when considering class certification.  AAA Supplementary Rule 4 tracks the procedural requirements of Rule 23.

10.     The Parties participated in mediation during May 2022, and over the course of a month and under the close supervision of Mediator Hunter R. Hughes, III, the Parties reached the Settlement, which resolves this highly adversarial and long-litigated case, for $175,366,000.00 and programmatic relief to continue and enforce positive changes Sterling Jewelers has made during the pendency of the Arbitration and will continue to make under the Settlement. *Id.* at V and VII. This was the Parties' sixth mediation since 2007. *Id.* at II.

11.     Judge Gleeson granted preliminary approval of the Settlement Agreement and on June 23, 2022, approved the issuance of notice to members of the Title VII and EPA Settlement Classes ("Class Notice"). *See* Sellers Decl. (Final Approval Award), ¶ 5, Exh. D. Judge Gleeson further certified the Class claims for settlement purposes, appointed class representatives, a Settlement Administrator, and Class Counsel, set deadlines for objections and opt-out responses, and set a hearing for final approval. *See id.*

12.     After Judge Gleeson issued the Preliminary Approval Award, on July 29, 2022, the Settlement Administrator mailed the Class Notice to more than 67,000 Settlement Class Members via First-Class USPS Mail. *Id.*; *see also* Sellers Decl. (Claimants' Mot. and Mem. in Supp. of Final Approval of Class Action Settlement), § III, Exh B.[3] The Class Notice apprised Settlement

---

[3] The Settlement Administrator implemented a robust notice program, which resulted in a 98% deliverable rate. *Id*. at 18; *Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) (finding notice sufficient with a 30% undeliverable rate because of breadth of time covered by the claims and the probability that class members may have moved or changed addresses during that time period). The Settlement Administrator established a dedicated post office box to mail and receive undeliverable mail, to allow Settlement Class Members to contact the Settlement Administrator, or to submit opt-out requests, objections, or other documents. Sellers Decl., § III, Exh. B. It promptly re-mailed returned notices to forwarding addresses and searched for updated addresses and re-mailed notices that did not have forwarding addresses. *Id*. The Settlement Administrator also established a settlement website for potential Settlement Class Members to obtain additional information about the proposed Settlement and important documents, including the Notice, Settlement Agreement, and Preliminary Approval Order. *Id*. The settlement website

Class Members of the Settlement terms and of their rights to opt out and object to the terms of the Settlement. Specifically, the Class Notice set forth the nature of the case; described the Settlement Classes, set forth the material terms of the Settlement Agreement including the method for allocation of the Settlement, the amounts sought for service payments, the amount sought for attorneys' fees and costs, and the releases; explained how to timely opt out of the Settlement; explained how to timely object to the Settlement; informed Settlement Class Members how they can obtain more information about the Settlement; and identified Class Counsel and explained Settlement Class Members' right to obtain their own attorney. Sellers Decl., Settlement Agreement, Exh. B.

13. All Settlement Class Members were provided 60 days to object to or opt out of the proposed settlement. *See* Sellers Decl., § III, Exh. B.

14. The Settlement Administrator received thirty-six (36) requests to opt-out — representing approximately 0.05% of the class — and the Parties accepted all requests to opt-out as valid. *See id*.

15. The Settlement Administrator also received two letters of concern — neither of which were objections to the terms, value, or fact of the Settlement. Rather, one of the individuals who submitted a letter styled as an "objection" simply asserted that she did not believe she had been subject to discriminatory conduct. The second letter was submitted by an individual inquiring about her eligibility for a service award, which led to the determination that she was qualified to receive a service award. *See id.* at §§ Intro., V.C.2.

---

contains a summary of options available to Settlement Class Members, deadlines to opt-out or file objections, and provides answers to frequently asked questions. *Id*. Settlement Class Members are also able to update their postal mailing address via the website. *Id*. The settlement website was provided to Settlement Class Members in the Class Notice. *Id*.

16. In addition, the Settlement Administrator mailed the Class Action Fairness Action ("CAFA") Notice packages to the Attorneys General of each of the fifty (50) states and the District of Columbia, and the Attorney General of the United States on June 17, 2022. *Id.*

17. As provided in the Class Notice, on November 15, 2022, at 10:00 a.m., Judge Gleeson held a Final Fairness Hearing at the New York offices of Debevoise & Plimpton LLP. Sellers Decl., Exh. B.

18. At the Final Fairness Hearing, Judge Gleeson set forth the basis for his decision to find the Settlement Agreement fair, adequate, and reasonable stating on the record: "To approve this settlement, I have to determine that the proposal is both procedurally and substantively fair and adequate and reasonable, and I do make that determination. It was reached following extensive proceedings, stretching over almost two decades, arm's-length negotiations by extremely able counsel on both sides. I find the agreement substantively fair under the so-called Grinnell factors considering the totality of those circumstances and all the circumstances." *See* Sellers Decl. (Tr. from Nov. 15, 2022, Final Fairness Hr'g) at 21:6-16), Exh. C.  Judge Gleeson also found the service payments, settlement administration fees, and attorneys' fees and costs appropriate and awarded the amounts requested and not opposed by Sterling Jewelers. *Id*. at 25:9-26:10.

19. Following the hearing, Judge Gleeson issued the Final Approval Award.  The Final Approval Award states:

> The terms of the settlement set forth in the Settlement Agreement are hereby approved. For the reasons set forth in Claimants' Motion, and after holding a Final Fairness Hearing on November 15, 2022, the Arbitrator finds that the Settlement Agreement is fair and adequate, and a reasonable and equitable compromise of the claims in this case; that the Settlement Agreement is the result of extensive, arms'-length bargaining between the parties, after Class Counsel had extensively investigated the class claims and become familiar with the strengths and weaknesses of the matter over fourteen years of litigation; that the Settlement Agreement is in the best interest of the Named Claimants and of the Settlement Classes they have been certified to represent; that the service awards for the Named Claimants and Special Claimants . . . are fair and reasonable in recognition of their

extensive efforts and time undertaken to advance the interests of the class; and that the terms of the Settlement are within the range of outcomes that would constitute a fair resolution of this matter. *See* Sellers Decl., Exh. D.

20. The Final Approval Award also expressly incorporates the term of the Settlement by which the parties agreed that if the Arbitrator granted final approval of the Settlement, the Parties would jointly seek confirmation of the Final Approval Award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, in this District Court. *See* Sellers Decl., § IV.A, Exh. A, ¶ 10, Exh. D.

21. Accordingly, an order by the Court granting this petition will confirm what the Parties and the Arbitrator intended, which is a final and binding award that conclusively resolves all settlement claims.

## II. JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over the instant matter pursuant to the FAA, 9 U.S.C. § 9, which authorizes the parties to apply for an order confirming the Final Approval Award, and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453, 1711–15, because: (i) the number of members of the settlement class exceeds 100, (ii) at least one member of the settlement class is a citizen of a state different from Sterling, and (iii) the matter in controversy exceeds $5,000,000. *See* Sellers Decl., § III, Exh. A, § III, Exh. B.

23. In addition, the Court has diversity jurisdiction over this Petition under 28 U.S.C. § 1332(a), because the Parties are citizens of different states, and the matter in controversy, based on the amount of the Final Approval Award, exceeds the sum or value of $75,000, exclusive of interest and costs. *Id.*

24. Venue is proper in this District, pursuant to Section 9 of the FAA, in that the Final Approval Award was made in this District, and thus this District has jurisdiction to enter an order confirming the Final Approval Award.

25. To that end, the Final Approval Award incorporates the Parties' agreement in the Settlement Agreement that the Parties will jointly ask the District Court to confirm the Final Approval Award. *See* Sellers Decl., ¶ 10, Exh. D.

### III. THE COURT SHOULD CONFIRM THE FINAL APPROVAL AWARD PURSUANT TO THE FAA.

26. The Parties timely seek confirmation of the Final Approval Award. 9 U.S.C. § 9 (requiring that a party seeking to confirm an arbitration award apply for confirmation within one year after the award was made). There is a presumption under the FAA that arbitration awards will be confirmed, and confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

27. "Under section 9 of the FAA, 'a court '**must**' confirm an arbitration award 'unless' it is vacated, modified or corrected 'as prescribed' in §§ 10 and 11.'" *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 78 (2d Cir. 2012) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (emphasis added); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997) (acknowledging "a party moving to vacate an arbitration award has the burden of proof… the showing required to avoid confirmation is very high"). Here, there is no basis for vacatur or modification of the Final Approval Award under Section 10 or 11 of the FAA.

28. Indeed, Section 10 of the FAA states that, "upon the application of a party to the arbitration," a court may make an order vacating an arbitration award only in four narrow circumstances:

> i. where the award was procured by corruption, fraud, or undue means;
> 
> ii. where there was evident partiality or corruption in the arbitrators, or either of them;

      iii.      where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

      iv.      where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (describing the narrow circumstances under which an arbitration award may be vacated upon application from a party to the Arbitration).

29. Section 11 of the FAA allows for modification of arbitration awards only "upon the application of any party to the arbitration" and:

      i.      where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

      ii.      where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

      iii.      where the award is imperfect in matter of form not affecting the merits of the controversy.

*Banco de Seguros del Estado v. Mut. Marine Offs., Inc.*, 257 F. Supp. 2d 681, 685 n.3 (S.D.N.Y. 2003) (citing 9 U.S.C. § 11).

30. None of the circumstances presented under Section 10 nor Section 11 of the FAA are applicable here. Further, no party or person has petitioned to vacate or modify the Final Approval Award; rather, all Parties from the Arbitration join in this Petition to confirm the Final Approval Award. Moreover, Judge Gleeson thoroughly examined the Parties' Settlement Agreement and issued the Final Approval Award after finding that the Settlement and Settlement notice process satisfied all of the fairness, reasonableness, and adequacy requirements for class action settlements, as set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 2000)

(setting forth this jurisdiction's standard for approval of class action settlements and how such settlements must be both procedurally and substantively fair), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d, 43, 48 (2d Cir. 2000). Sellers Decl., at 23:18-26:16, Exh. C; Exh. D.

31. At the Final Fairness Hearing, Judge Gleeson examined the Settlement using the Grinnell factors to determined substantive fairness and concluded that those factors weighed in favor of granting final approval to the parties' Settlement Agreement. See id.

    i. *Grinnell Factor 1* – Judge Gleeson found that this action has been incredibly complex, involving 67,000 class members with claims under Title VII and the EPA, litigated over the course of nearly two decades, with many more years of litigation to come, including likely appeals no matter the outcome of the trial. *See* Sellers Decl., at 23:21-24:8, Exh. C.

    ii. *Grinnell Factor 2* – Judge Gleeson noted the reaction "could hardly be more positive" and that "[a]dequate notice was supplied." *Id*. at 24:20-25:1. There was an absence of any objections to the overall fairness of the Settlement or to the allocation of settlement proceeds, further confirming that the terms of the Settlement are fair and reasonable for the Class as a whole.

    iii. *Grinnell Factor 3* – Judge Gleeson found that this factor also weighs heavily in favor of approving the Settlement because there was extensive discovery and indeed discovery had been completed before the Parties settled. *Id*.

    iv. *Grinnell Factors 4, 5, and 6* – Judge Gleeson found that these factors similarly highly weigh in favor of confirming the Final Approval Award because the case "was a difficult, complex case" . . . and "[t]here were considerable risks." *Id*. at 24:8-19. Claimants would face real risks if the case were to proceed to trial, especially with respect to establishing liability and damages and maintaining the class through trial.

    v. *Grinnell Factor* 7 – Sterling's ability to withstand a greater judgment is not determinative in assessing whether a settlement is fair.

    vi. *Grinnell Factors 8 and 9* – Finally, Judge Gleeson found that the settlement was within the range of reasonableness that is acceptable in this jurisdiction in light of the best possible recovery and attendant risks of litigation. *Id*. at 25:2-8.

32. Further, Judge Gleeson determined that the Settlement is procedurally fair because it was negotiated at arms' length by experienced counsel who had extensively investigated the class claims and engaged in meaningful discovery over fourteen years of litigation, prior to reaching the Settlement Agreement with the assistance of a mediator. *See* Sellers Decl., at 23:14-17, Exh. C; Sellers Decl., ¶ 3, Exh. D. Judge Gleeson also determined that Settlement Class Members were provided proper and adequate notice of the terms of the Settlement Agreement, as well as the applicable dates and procedure by which to submit any objections or elect to opt out of the Settlement Agreement. *See* Sellers Decl., ¶ 5, Exh. D. The Final Approval Award confirms "that the Notices constituted the best practicable notice to Settlement Class Members under the circumstances of this action, constituted reasonable, due, adequate, and sufficient notice to all persons and entities entitled to be provided with notice, and otherwise fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause)." *Id*.

33. Thus, there is substantially more than a mere "colorable justification for the outcome reached" by Judge Gleeson to approve of the Parties' Settlement and for this Court to confirm the Final Approval Award.

## IV. CONCLUSION

**WHEREFORE**, the Parties respectfully request that this Court enter an Order, pursuant to 9 U.S.C. § 9, confirming the Final Approval Award. A Proposed Order is attached as Exhibit 1.

Respectfully Submitted,

| | |
|---|---|
| */s/* Joseph M. Sellers | */s/* Michael L. Banks |
| Joseph M. Sellers | Michael L. Banks |
| Kalpana Kotagal | Sarah E. Bouchard |
| Harini Srinivasan | W. John Lee |
| COHEN MILSTEIN SELLERS & TOLL PLLC | MORGAN, LEWIS & BOCKIUS LLP |
| 1100 New York Avenue, N.W. | 1701 Market Street |
| Fifth Floor | Philadelphia, PA 19103 |
| Washington, D.C. 20005 | michael.banks@morganlewis.com |
| jsellers@cohenmilstein.com | sarah.bouchard@morganlewis.com |
| kkotagal@cohenmilstein.com | w.john.lee@morganlewis.com |
| hsrinivasan@cohenmilstein.com | |
| | Christina M. Janice |
| Sam J. Smith | BARNES & THORNBURG LLP |
| Loren B. Donnell | One North Wacker Drive, Suite 4400 |
| BURR & SMITH, LLP | Chicago, IL 60606 |
| 9800 4th Street N., Suite 200 | christina.janice@btlaw.com |
| St. Petersburg, FL 33702 | |
| ssmith@burrandsmithlaw.com | *Counsel for Sterling Jewelers Inc.* |
| ldonnell@burrandsmithlaw.com | |
| | Dated:  December 2, 2022 |
| Thomas A. Warren | |
| THOMAS A. WARREN LAW OFFICES, P.L. | |
| 2032-D Thomasville Road | |
| Tallahassee, FL 32308 | |
| tw@twarrenlaw.com | |
| | |
| Barry Goldstein | |
| 300 Lakeside Drive | |
| Suite 1000 | |
| Oakland, CA 94612 | |
| bgoldstein@gbdhlegal.com | |
| | |
| *Class Counsel* | |
| | |
| Dated:  December 2, 2022 | |